E-filing

ORIGINAL
FILED
NOV 2 9 2006
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1  Daniel Feinberg – CA State Bar No. 135983
   Todd F. Jackson – CA State Bar No. 202598
2  Margaret E. Hasselman – CA State Bar No. 228529
   LEWIS, FEINBERG, RENAKER & JACKSON, P.C.
3  1330 Broadway, Suite 1800
   Oakland, CA  94612
4  Telephone: (510) 839-6824
   Facsimile: (510) 839-7839
5  Email: dfeinberg@lewisfeinberg.com
        tjackson@lewisfeinberg.com
6        mhasselman@lewisfeinberg.com

7  Peter Rukin – CA State Bar No. 178336
   RUKIN HYLAND & DORIA LLP
8  100 Pine Street
   Suite 725
9  San Francisco, CA
   Telephone: (415) 421-1800
10 Facsimile: (415) 421-1700
   Email: peterrukin@rhddlaw.com
11
   Attorneys for Plaintiffs

ADR
MJJ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO AND OAKLAND DIVISION

| | |
|---|---|
| THOMAS FERNANDEZ and LORA SMITH, individually and on behalf of a class of all other persons similarly situated, ) ) ) | Case No.  C06-07339 |
| Plaintiffs, ) | |
| vs. ) | COMPLAINT – CLASS ACTION |
| K-M INDUSTRIES HOLDING CO., INC.; K-M INDUSTRIES HOLDING CO., INC. ESOP PLAN COMMITTEE; WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; TRUSTEES OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; ADMINISTRATOR OF THE ESTATE OF WILLIAM E. MOORE, DECEASED;  CIG ESOP PLAN COMMITTEE; and NORTH STAR TRUST COMPANY, ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants ) | |

## JURISDICTION AND VENUE

1.    This action arises under Title I of the Employee Retirement Income Security Act

1    of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., and is brought by Plaintiffs to enjoin acts and

2    practices which violate the provisions of Title I of ERISA, to make good to the Plan losses

3    resulting from fiduciary violations, restore to the Plan any profits which have been made by the

4    breaching fiduciaries through the use of Plan assets, and to obtain other appropriate equitable

5    and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.

6         2.       This Court has subject matter jurisdiction over this action pursuant to ERISA §

7    502(e)(2), 29 U.S.C. § 1132(e)(2).

8         3.       Venue is properly laid in this District pursuant to ERISA § 502(e)(2), 29 U.S.C.

9    § 1132(e)(2), because the employee benefit plan at issue was administered in this District during

10    the relevant time, some or all of the events or omissions giving rise to the claims occurred in

11    this District, and one or more of the Defendants may be found in this District.

**INTRA-DISTRICT ASSIGNMENT**

13         4.       This action arises in San Mateo County in that the employee benefit plan at issue

14    is administered in San Carlos, California, and some of the breaches alleged took place in San

15    Carlos, California.

**PARTIES**

17         5.       At all relevant times, Plaintiff Thomas Fernandez has been a participant, as

18    defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the K-M Industries Holding Co., Inc.

19    Employee Stock Ownership Plan ("the KMH Plan") or one of its predecessor plans, the

20    California Capital Insurance Company Employee Stock Ownership Plan ("the CIG Plan").

21    Plaintiff Fernandez resides in San Ramon, California. Plaintiff Fernandez was employed by

22    CIG from in or about July 1996, until in or about October 2005.

23         6.       At all relevant times, Plaintiff Lora Smith has been a participant, as defined in

24    ERISA § 3(7), 29 U.S.C. § 1002(7), in the KMH Plan or one of its predecessor plans, the CIG

25    Plan. Plaintiff Smith resides in Modesto, California. Plaintiff Smith was employed by CIG

26    from in or about September 1996, until in or about October 2001.

27         7.       At all relevant times, Defendant K-M Industries Holding Co., Inc. ("KMH") was

28    the Sponsor of the KMH Plan, within the meaning of ERISA § 3(16)(B). At some or all

COMPLAINT – CLASS ACTION                                         

1  relevant times, Defendant KMH was also the Administrator of the KMH Plan, within the

2  meaning of ERISA § 3(16)(A), and a fiduciary of the KMH Plan, within the meaning of ERISA

3  § 3(21)(A), 29 U.S.C. § 1002(21).  On information and belief, Defendant KMH was a fiduciary

4  under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or

5  discretionary control respecting management of the KMH Plan, and/or exercised authority or

6  control respecting management or distribution of the KMH Plan's assets, and/or had

7  discretionary authority or discretionary responsibility in the administration of the KMH Plan.

8  Under the terms of the KMH Plan, Defendant KMH was responsible for appointing the

9  Defendant K-M Industries Holding Co., Inc. ESOP Plan Committee ("KMH Plan Committee").

10      8.      At all relevant times, Defendant William E. and Desiree B. Moore Revocable

11  Trust ("Moore Trust") was a "party in interest" of the KMH Plan as defined in ERISA § 3(14),

12  29 U.S.C. § 1002(14).  Upon information and belief, William E. Moore, now deceased, was a

13  trustee and settlor of the Moore Trust.  Upon information and belief, Desiree B. Moore is and

14  was a trustee and settlor of the Moore Trust.

15      9.      At all relevant times, Defendant KMH delegated to Defendant KMH Plan

16  Committee the duties of acting as the plan administrator of the KMH Plan, and Defendant KMH

17  Plan Committee undertook these duties.  At all relevant times, therefore, Defendant KMH Plan

18  Committee was a fiduciary of the KMH Plan, within the meaning of ERISA § 3(21)(A), 29

19  U.S.C. § 1002(21)(A). On information and belief, Defendant KMH Plan Committee was also a

20  fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary

21  authority or discretionary control respecting management of the Plan, and/or exercised authority

22  or control respecting management or distribution of the Plan's assets, and/or had discretionary

23  authority or discretionary responsibility in the administration of the Plan.  On information and

24  belief, at some relevant times, the sole member of the KMH Plan Committee was William E.

25  Moore, who on information and belief was also a trustee and settlor of the Moore Trust.

26      10.     William E. Moore ("Moore"), decedent of Defendant Administrator of the Estate

27  of William E. Moore, Deceased, was a founder of Kelly-Moore Paint Co.  On information and

28  belief, at all relevant times until his death on November 21, 2004, Moore was the Chairman of

COMPLAINT – CLASS ACTION                                                              Page 3

1    Defendant KMH, the "plan sponsor" of the KMH Plan within the meaning of ERISA §

2    3(16)(B), 29 U.S.C. § 1002(16)(B). In addition, at all relevant times, Moore was a "party in

3    interest" as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). Upon information and belief,

4    Moore was a trustee and settlor of the Defendant Moore Trust. Upon information and belief, the

5    Administrator of the Estate of William E. Moore can be found in San Mateo County, California.

6    On information and belief, Defendant Willaim E. Moore was a fiduciary under ERISA §

7    3(21)(A), 29 U.S.C. § 1002(21)(A), in that he exercised discretionary authority or discretionary

8    control respecting management of the KMH Plan and its predecessors, and/or exercised

9    authority or control respecting management or distribution of the KMH Plan's assets and its

10    predecessors' assets, and/or had discretionary authority or discretionary responsibility in the

11    administration of the KMH Plan and its predecessors.

12        11.    Defendant CIG ESOP Plan Committee was the named fiduciary of the CIG Plan,

13    (one of the predecessor plans to the KMH Plan) within the meaning of ERISA § 402, 29 U.S.C.

14    § 1102, and the Administrator of the CIG Plan within the meaning of ERISA § 3(16)(A). At all

15    relevant times, therefore, Defendant Plan Committee was a fiduciary of the KMH Plan, within

16    the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). On information and belief,

17    Defendant CIG ESOP Plan Committee was a fiduciary under ERISA § 3(21)(A), 29 U.S.C. §

18    1002(21)(A), in that it exercised discretionary authority or discretionary control respecting

19    management of the KMH Plan and the CIG Plan, and/or exercised authority or control

20    respecting management or distribution of the KMH Plan's assets and the CIG Plan's assets,

21    and/or had discretionary authority or discretionary responsibility in the administration of the

22    KMH Plan. The CIG Plan was merged into the KMH Plan on or about July 16, 1999. On

23    information and belief, at some or all relevant times, the sole member of the Defendant CIG

24    Plan Committee was William E. Moore, who, on information and belief, was also a trustee and

25    settlor of the Moore Trust.

26        12.    Defendant North Star Trust Company ("North Star") is a company with its

27    principal place of business in Chicago, Illinois. On information and belief, Defendant North

28    Star acted as trustee of the KMH Plan following the death of prior trustee William E. Moore.

1    As trustee of the KMH Plan, Defendant North Star was a fiduciary of the KMH Plan pursuant to

2    ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or

3    discretionary control respecting management of the KMH Plan, and/or exercised authority or

4    control respecting management or distribution of the KMH Plan's assets, and/or had

5    discretionary authority or discretionary responsibility in the administration of the KMH Plan.

6          13.    Defendants KMH, KMH Plan Committee, CIG Plan Committee, Administrator

7    of the Estate of William E. Moore, and North Star are sometimes referred to as the "Defendant

8    Fiduciaries."

9                                        **FACTS**

10                                   **Company History**

11         14.    KMH is a California company that owns Kelly-Moore Paint Company ("Kelly-

12   Moore Paint"), a leading manufacturer and seller of paint and paint-related products. KMH also

13   owns Capital Insurance Group ("CIG"), formerly known as California Capital Insurance Group,

14   an insurance company that underwrites property and casualty risks for personal and commercial

15   businesses through independent agents, serving California and other western states. KMH and

16   Kelly-Moore Paint have their principal places of business in San Carlos, California, and CIG's

17   principal place of business is in Monterey, California.

18         15.    In the 1960's and 1970's, Kelly-Moore manufactured products that contained

19   asbestos provided by Union Carbide Corp. As a result, Kelly-Moore has been the target of over

20   48,000 lawsuits alleging that its products are responsible for causing cancer and other diseases

21   in their users. Kelly-Moore continues to face thousands of lawsuits over its use of asbestos, and

22   it argued in a 2004 lawsuit against Union Carbide in Texas that the lawsuits threaten its ongoing

23   viability.

24         16.    In or around 1985, Kelly-Moore Paint Co. purchased the Calmutual Insurance

25   Company, which later grew through subsequent acquisitions and is now known as Capital

26   Insurance Group ("CIG").

27         17.    In 1998, the management of Kelly-Moore Paint formed KMH and transferred all

28   the common stock of Kelly-Moore Paint and CIG to KMH. KMH became the sole owner of

COMPLAINT – CLASS ACTION                                              Page 5

1    both Kelly-Moore Paint and CIG. Defendant Moore Trust was the largest shareholder in KMH

2    in 1998 and remains the largest shareholder.

3    18.    Also in 1998, KMH established "tracking stocks" to separately track the

4    performance of its two main subsidiary businesses. "Series P stock" was designed to track the

5    performance of Kelly-Moore Paint and its affiliates, and "Series I stock" was designed to track

6    the performance of CIG and its affiliates.

7    19.    In 2004, KMH sued Union Carbide in Texas for fraud in connection with its

8    provision of asbestos to KMH. In the lawsuit, KMH argued that Union Carbide concealed

9    information about asbestos's harmful effects from KMH. In Fall of 2004, a jury found that

10    KMH had been aware of asbestos's harmful effects since approximately 1964, before it ever

11    purchased asbestos from Union Carbide.

**ESOP History**

13    20.    In 1998, CIG established the CIG ESOP as an employee stock ownership plan, as

14    defined in Internal Revenue Code § 4975(e)(7).

15    21.    Also in 1998, Kelly-Moore Paint established the Kelly-Moore Paint Company

16    ESOP (the "Paint Plan") as an employee stock ownership plan, as defined in Internal Revenue

17    Code § 4975(e)(7).

18    22.    On July 16, 1999, the CIG Plan was merged into the Paint Plan and renamed the

19    K-M Industries Holding Co., Inc. ESOP ("KMH Plan"), also an employee stock ownership plan,

20    as defined in Internal Revenue Code § 4975(e)(7). At all relevant times, the KMH Plan was an

21    employee pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2). At

22    all relevant times, the Plan was administered in San Carlos, California. The KMH Plan

23    provides for allocation of different tracking stocks to plan participants depending on the

24    participants' employer. Series P stock of KMH (tracking the performance of Kelly-Moore

25    Paint) is allocated only to the accounts of employees of Kelly-Moore Paint and its affiliates.

26    Series I stock (tracking the performance of CIG) is allocated only to the accounts of employees

27    of CIG and its affiliates.

**ESOP Transactions**

1    23.    Upon information and belief, William Moore acted on behalf of both the Moore

2  Trust and the Plans in the transactions alleged herein.

3    24.    Upon information and belief, on or about October 13, 1998, the Paint Plan

4  purchased approximately 33,745,455 shares of KMH Series P stock from the Defendant Moore

5  Trust for approximately $6.88 per share, for a total purchase price of approximately $232

6  million. To fund the purchase, the Paint Plan borrowed the entire approximately $232 million

7  from KMH, which had in turn borrowed $136 million from CIG. The share price for the

8  October 13, 1998 purchase of KMH Series P stock was established by a valuation report of the

9  Kelly-Moore Paint Co., purporting to value the company as of October 13, 1998.

10    25.    Upon information and belief, the Defendant Fiduciaries failed to ensure that they

11  secured an independent expert assessment of the fair market value of the KMH Series P stock

12  purchased by the Paint Plan on October 13, 1998.

13    26.    Upon information and belief, the Defendant Fiduciaries failed to investigate

14  adequately the qualifications of any valuation expert retained to prepare the valuation of KMH

15  in connection with the October 13, 1998 purchase of KMH Series P stock by the Paint Plan.

16    27.    Upon information and belief, the Defendant Fiduciaries failed to provide

17  complete and accurate information regarding KMH to any valuation expert for use in the

18  valuation prepared in connection with the purchase of KMH Series P stock by the Paint Plan.

19    28.    Upon information and belief, the Defendant Fiduciaries failed to make certain

20  that reliance on any valuation expert's advice was reasonably justified under the circumstances

21  of the purchase of KMH Series P stock by the Paint Plan.

22    29.    Upon information and belief, the valuation report of Kelly-Moore Paint Co.

23  prepared in connection with the October 13, 1998 transaction failed to take into account KMH's

24  potential liability in asbestos-related litigation, even though information that the company faced

25  significant liability was known to KMH management, including Moore and other fiduciaries, at

26  the time.

27    30.    Upon information and belief, the valuation report also failed to discount the

28  purchase price of the stock to account for the fact that the stock purchased by the Paint Plan was

1    tracking stock, which generally trades at a discount relative to ordinary common stock.

2        31.    On or about October 13, 1999, following the merger of the plans described

3    above, the KMH Plan purchased approximately 8,400,000 million shares of KMH Series I stock

4    from the Defendant Moore Trust for $6.54 per share, for a total purchase price of approximately

5    $55 million. To fund the purchase, the KMH Plan borrowed approximately $55 million from

6    KMH. The share price for this transaction was established by a valuation report of CIG

7    purporting to value CIG as of October 13, 1999.

8        32.    On December 31, 1999, KMH Series I stock was valued at $3.66 per share, or

9    approximately 56 percent of what the KMH Plan had paid only six weeks earlier.

10       33.    Upon information and belief, the Defendant Fiduciaries failed to ensure that they

11   secured an independent expert assessment of the fair market value of the KMH Series I stock

12   purchased by the KMH Plan on October 13, 1999.

13       34.    Upon information and belief, the Defendant Fiduciaries failed to investigate

14   adequately the qualifications of any valuation expert retained to prepare the valuation of KMH

15   in connection with the October 13, 1999 purchase of KMH Series I stock by the KMH Plan.

16       35.    Upon information and belief, the Defendant Fiduciaries failed to provide

17   complete and accurate information regarding KMH to any valuation expert for use in the

18   valuation prepared in connection with the purchase of KMH Series I stock by the KMH Plan.

19       36.    Upon information and belief, the Defendant Fiduciaries failed to make certain

20   that reliance on any valuation expert's advice was reasonably justified under the circumstances

21   of the purchase of KMH Series I stock by the KMH Plan.

22       37.    Upon information and belief, the valuation report of CIG prepared in connection

23   with the October 13, 1999 transaction failed to take into account KMH's potential liability in

24   asbestos-related litigation, even though information that the company faced significant liability

25   was known to KMH management, including Moore and other fiduciaries, at the time.

26       38.    Upon information and belief, the valuation report of CIG also failed to properly

27   discount the purchase price of the KMH Series I stock to account for the fact that the stock

28   purchased by the Plan was tracking stock, which generally trades at a discount relative to

1   ordinary common stock.

2        39.    Upon information and belief, neither KMH, nor the fiduciaries of the Plans,

3   appointed an independent fiduciary to represent the Paint Plan or the KMH Plan in the

4   transactions alleged above. Upon information and belief, William Moore acted on behalf of

5   both buyer and seller in both transactions.

6        40.    On information and belief, at the times of the Plans' purchases of KMH Series P

7   and Series I stock from the Defendant Moore Trust, KMH management, including William

8   Moore and the other Defendant Fiduciaries, was aware of the potential liabilities facing the

9   company as a result of asbestos-related litigation. Upon information and belief, KMH

10  management, including Moore and other fiduciaries of the Plans, withheld information about

11  KMH's potential asbestos liability from the valuators retained to determine the value of KMH

12  stock for purposes of the Plan transactions until in or about late 2002 or early 2003.

13       41.    Upon information and belief, the Defendant Fiduciaries failed to make an honest,

14  objective effort to read the valuation reports, understand them, and question the methods and

15  assumptions that did not make sense.

16       42.    In Plan Years 2003 and 2004, the Defendant Fiduciaries failed to obtain a

17  valuation of the Series I and Series P stock held by the KMH Plan, failed to file IRS Form 5500s

18  on behalf of the KMH Plan as required by law, and failed to provide Summary Annual Reports

19  of the KMH Plan to KMH Plan participants as required by law.

20       43.    Valuations of KMH's Series I stock as of December 31, 2003, and December 31,

21  2004, performed in 2005, failed to consider the impact of KMH's asbestos liability on Series I

22  stock of KMH. Valuation reports of Series I stock prepared for plan years 2000 and 2001 do not

23  mention potential asbestos liability at all, and the valuation report for plan year 2002 contains

24  only a brief mention of potential asbestos liability.

25       44.    Upon information and belief, in or about 2005, the KMH Plan Committee, KMH,

26  and/or CIG re-negotiated the terms of the loan to the Plan used to purchase KMH shares.

27       45.    Since KMH stock is and was not readily tradable on an established market, IRC §

28  409(h)(4) requires and has required at all relevant times that KMH give terminated participants

the right to have KMH repurchase the KMH securities held in their Plan accounts pursuant to a put option. In the event that a participant terminates for a reason other than death, disability, or normal retirement, IRC § 409(o)(1)(A)(ii) also requires and has required at all relevant times that the Plan commence distribution of the participant's account not later than 1 year after the close of the fifth plan year following the plan year in which the participant separates from service.

46.     When Plaintiff Smith contacted CIG regarding her put option in 2006, she was informed by CIG that KMH would not be able repurchase her shares until 2014 because of new loan terms.

47.     Upon information and belief, Defendant Fiduciaries have not informed Plan participants that re-negotiated loan terms impair their put option rights.

48.     The Plan paid substantially more than fair market value for the KMH stock purchased from the Moore Family Trust in 1998 and 1999. The Defendant Fiduciaries could have corrected the Plans' overpayment for KMH stock at any time since October 13, 1998, by obtaining an independent valuation based on all relevant information, including but not limited to full disclosure of KMH's financial state, including KMH's potential asbestos liabilities, and then seeking a refund from the Moore Trust of any amount by which such a valuation demonstrated that the Plans had overpaid for KMH stock. Despite this opportunity, Defendant Fiduciaries failed to take any action to cure the breaches of fiduciary duty and prohibited transactions, and in fact continued to intentionally withhold information about KMH's potential asbestos liabilities from valuators, thereby continuing the breaches of fiduciary duty that began in 1998.

49.     Upon information and belief, until the Fall of 2004, Defendant Fiduciaries and KMH management intentionally withheld information about the extent of KMH's potential asbestos liability from participants who were active employees, including Plaintiff Fernandez, that would have shown Plaintiff Fernandez and other participants that the Plans overpaid for KMH stock. The Defendant Fiduciaries have intentionally withheld information about the extent of KMH's potential asbestos liability from participants who are terminated employees,

1  including Plaintiff Smith.

2      50.    Plaintiff Fernandez had no knowledge that the Plans' purchases of KMH stock

3  may have been for more than fair market value, including but not limited to knowledge that

4  more than fair market value may have been paid due to potential asbestos liability, until he was

5  informed of the jury verdict in the Union Carbide lawsuit in October of 2004.  Plaintiff Smith

6  had no knowledge that the Plans' purchases of KMH stock may have been for more than fair

7  market value, including but not limited to knowledge that more than fair market value may have

8  been paid due to potential asbestos liability, until she was informed by letter in February of 2005

9  that no valuation of the Plan's stock had been completed for 2003 due to issues related to

10  potential asbestos liability.  Plaintiffs had no knowledge that the Plans' purchase of KMH stock

11  may have been for more than fair market value due to the failure to discount the purchase price

12  of the stock to account for the fact that the stock purchased by the Plan was tracking stock until

13  the Plan Committee provided copies of valuation reports to Plaintiffs' counsel in 2006.

14  Plaintiffs have never had any knowledge regarding any steps taken by any Plan fiduciaries to

15  determine the share price for the October 13, 1998 transaction or the October 13, 1999

16  transaction.

**CLASS ALLEGATIONS**

18      51.    Plaintiffs bring the First and Second Claims for Relief for violations of ERISA

19  §§ 503(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), as a class action pursuant

20  to Fed. R. Civ. P. 23 (a) and (b), on behalf of all persons other than Defendants who were

21  participants in the KMH Plan on October 13, 1998, or at any time thereafter, and/or

22  beneficiaries of KMH Plan participants on October 13, 1998 or at any time thereafter

23  (hereinafter "Class Plaintiffs").

24      52.    The Plaintiff Class is so numerous that joinder of all members is impracticable.

25  Plaintiff is informed and believes, and on that basis alleges, that over 2,500 employees and

26  former employees were participants, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the

27  KMH Plan and held shares of KMH stock in their individual accounts as of December 31, 2004.

28  Although the exact number and identities of Class Members are unknown to Plaintiff at this

1  time, this information is easily ascertainable from the KMH Plan through discovery of its

2  records.

3      53.    Questions of law and fact common to the Plaintiff Class as a whole include, but

4  are not limited to, the following:

5          i.    Whether William E. Moore acted on behalf of both the Moore Trust and

6  the Kelly-Moore Paint Plan in the October 13, 1998 sale of Series P stock of KMH by the

7  Moore Trust to the Paint Plan;

8          ii.    Whether William E. Moore acted on behalf of both the Moore Trust and

9  the CIG Plan in the October 13, 1999 sale of Series I stock of KMH by the Moore Trust to the

10  CIG Plan;

11         iii.   Whether Defendant Moore Trust was a party in interest to the Paint Plan

12  at the time of the October 13, 1998 sale of Series P stock in KMH by the Moore Trust to the

13  Paint Plan and at other times thereafter;

14         iv.    Whether Defendant Moore Trust was a party in interest to the CIG Plan at

15  the time of the October 13, 1999 sale of Series I stock in KMH by the Moore Trust to the CIG

16  Plan and at other times thereafter;

17         v.    Whether Defendants engaged in a prohibited transaction under ERISA by

18  permitting the Paint Plan to purchase Series P stock of KMH from Defendant Moore Trust in

19  October 1998 for more than adequate consideration;

20         vi.    Whether Defendants engaged in a prohibited transaction under ERISA by

21  permitting the CIG Plan to purchase Series I stock of KMH from Defendant Moore Trust in

22  October 1999 for more than adequate consideration;

23         vii.   Whether Defendant Fiduciaries engaged in a prudent investigation of the

24  proposed sale of Series P KMH stock by Defendant Moore Trust to the Paint Plan;

25         viii.  Whether Defendant Fiduciaries engaged in a prudent investigation of the

26  proposed sale of Series I KMH stock by Defendant Moore Trust to the KMH Plan;

27         ix.    Whether Defendant Fiduciaries breached a fiduciary duty to Paint Plan

28  participants by purchasing Defendant Moore Trust's KMH Series P stock in October 1998 for

COMPLAINT – CLASS ACTION                                          Page 12

1    more than fair market value;

2        x.    Whether Defendant Fiduciaries breached their fiduciary duties to KMH

3    Plan participants by failing to obtain a proper valuation of KMH Series I and Series P stock held

4    by the KMH Plan from January 1, 1998, to the present;

5        xi.    Whether Defendant Fiduciaries breached their fiduciary duties to KMH

6    Plan participants by failing to obtain a timely valuation of the KMH stock held by the KMH

7    Plan, and failing to timely file IRS Form 5500s, for plan years 2003-2004;

8        xii.    Whether Defendant Fiduciaries breached their fiduciary duties to KMH

9    Plan participants by failing to correct the overpayments by the KMH Plan and its predecessor

10    plans for Series I and Series P KMH stock from October 13, 1998, to the present.

11        54.    Plaintiffs' claims are typical of those of the Plaintiff Class. Plaintiffs, like other

12    Plan participants in the Plaintiff Class, suffered a diminution in the values of their KMH and

13    predecessor plan accounts when the Plans purchased KMH stock owned by Defendant Moore

14    Trust for more than fair market value, and continue to suffer such losses in the present because

15    Defendant Fiduciaries have failed to correct the overpayment by the KMH Plan and its

16    predecessor plans.

17        55.    Plaintiffs will fairly and adequately represent and protect the interests of the

18    Plaintiff Class. Plaintiffs have retained counsel competent and experienced in complex class

19    actions, ERISA, and employee benefits litigation.

20        56.    Class certification of Plaintiffs' First and Second Claims for Relief for violations

21    of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate

22    actions by individual Class members would create a risk of inconsistent or varying adjudications

23    which would establish incompatible standards of conduct for Defendants, and/or because

24    adjudications with respect to individual Class members would as a practical matter be

25    dispositive of the interests of non-party Class members.

26        57.    In addition, Class certification of Plaintiffs' First and Second Claims for Relief

27    for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants

28    have acted or refused to act on grounds generally applicable to the Class, making appropriate

1    declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole. The

2    members of the Class are entitled to declaratory and injunctive relief to remedy Defendants'

3    fiduciary violations.

4         58.    The names and addresses of the Plaintiff Class are available from the KMH Plan.

5    Notice will be provided to all members of the Plaintiff Class to the extent required by Rule 23.

6

7    **FIRST CLAIM FOR RELIEF**
          **[Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3),**

8            **29 U.S.C. §§ 1132(a)(2) and (a)(3), Against All Defendant Fiduciaries]**

9         59.    Plaintiffs incorporate Paragraphs 1-58 as though set forth herein.

10        60.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia,* that a plan

11   fiduciary discharge his or her duties with respect to a plan solely in the interest of the

12   participants and beneficiaries and with the care, skill, prudence, and diligence under the

13   circumstances then prevailing that a prudent person acting in a like capacity and familiar with

14   such matters would use in the conduct of an enterprise of a like character and with like aims.

15        61.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a

16   fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or

17   duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the

18   plan any losses to the plan resulting from each such breach, and additionally is subject to such

19   other equitable or remedial relief as the court may deem appropriate, including removal of the

20   fiduciary.

21        62.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an

22   action for relief under ERISA § 409.

23        63.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an

24   action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to

25   enforce the terms of a plan.

26        64.    Defendant Fiduciaries have breached their duties of loyalty and prudence under

27   ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). These breaches include but are not limited to the

28   following: causing the Plans to pay more than fair market value for KMH stock; failing to

1  conduct a thorough and independent review and adequately consider whether the October 13,

2  1998 purchase of KMH Series P stock, and the October 13, 1999 purchase of KMH Series I

3  stock from Defendant Moore Trust was in the best interests of the Plan participants; failing to

4  undertake an adequate and independent valuation of the KMH stock prior to those transactions;

5  failing to ensure that they secured an independent expert assessment of the fair market value of

6  KMH stock prior to those transactions; failing to investigate adequately the qualifications of any

7  and all valuation experts retained to prepare the valuations of KMH stock in connection with the

8  transactions; failing to provide complete and accurate information regarding KMH to such

9  valuation experts for use in the valuations prepared in connection with the transactions; failing

10  to make certain that reliance on any and all valuation experts' advice was reasonably justified

11  under the circumstances of the transactions; failing adequately to consider how KMH's potential

12  asbestos liabilities affected the value of KMH Series I and Series P stock; failing adequately to

13  consider that the status of KMH Series I and Series P stock as "tracking stock" affected its

14  value; failing to make an honest, objective effort to read the valuation reports, understand them,

15  and question the methods and assumptions that did not make sense; failing to seek a refund of

16  the KMH Plan's overpayment for KMH stock at any time between 1998 and the present;

17  overvaluing the KMH stock purchased from Defendant Moore Trust by the KMH Plan in

18  October 1998 and October 1999; withholding information about KMH's potential asbestos

19  liabilities from valuators; and violating the terms of the plan document of the KMH Plan by

20  refusing to redeem Plaintiff Smith's put option on the schedule established by the KMH Plan.

21  Defendants' repeated failures to seek a refund of the Paint Plan's overpayment for KMH Series I

22  stock at any time between 1999 and the present constitute part of the 1999 prohibited

23  transaction. Defendants could have cured the breaches at any time since October 13, 1998, by

24  securing an independent valuation of the KMH Series I and Series P stock purchased by the

25  Plans and seeking a refund from the Moore Trust of any amount by which such valuation

26  determined the Plans overpaid the Moore Trust.

27        65.     Each Defendant Fiduciary is also liable as a co-fiduciary with respect to each

28  fiduciary violation by each other fiduciary of the Plan under ERISA § 405, 29 U.S.C. § 1105, to

the extent that: (a) any fiduciary has participated knowingly in, or has knowingly undertaken to

conceal, an act or omission of any other fiduciary, knowing such action is a breach; (b) by his,

her, or its failure to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), he, she, or it has

enabled such other fiduciary to commit a breach; or (c) if he, she, or it has had knowledge of a

breach by any other fiduciary, unless he, she, or it has made reasonable efforts under the

circumstances to remedy the breach.

66.     Defendant Fiduciaries' actions caused millions of dollars of losses to the Plan in

an amount to be proven more specifically at trial.

## SECOND CLAIM FOR RELIEF
**[Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(a)-(b),
29 U.S.C. §§ 1106(a)-(b), Against All Defendants]**

67.     Plaintiffs incorporate Paragraphs 1-58 as though set forth herein.

68.     ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not

cause the plan to engage in a transaction, if he knows or should know that such transaction

constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and

a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any

assets of the plan."

69.     ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not

"act in any transaction involving the plan on behalf of a party (or represent a party) whose

interests are adverse to the interests of the plan or the interests of its participants," or "deal with

the assets of the plan in his own interest or for his own account," or "receive any consideration

for his own personal account from any party dealing with such plan in connection with a

transaction involving the assets of the plan."

70.     ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the

prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for

adequate consideration. ERISA § 3(18)(B) defines adequate consideration as "the fair market of

the asset as determined in good faith by the trustee or named fiduciary." ERISA's legislative

history and existing case law make clear that ERISA § 3(18)(B) requires that the price paid must

reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation

to determine the fair market value of the asset.

1    71.    Defendants engaged in a prohibited transaction in violation of ERISA §§ 406(a)-

2    (b), 29 U.S.C. §§ 1106(a)-(b), by failing to ensure that the Paint Plan paid fair market value for

3    Series P stock of KMH held by the Moore Trust on October 13, 1998.  Specifically, the Paint

4    Plan paid more than fair market value for shares sold by the Moore Trust, and Defendants failed

5    to conduct an independent and prudent investigation into the fair market price before entering

6    into the stock purchase agreement with Defendant Moore Trust.  Defendants' repeated failures

7    to seek a refund of the Paint Plan's overpayment for KMH Series P stock at any time between

8    1998 and the present constitute part of the 1998 prohibited transaction.  Defendants could have

9    cured the prohibited transaction at any time since October 13, 1998, by securing an independent

10    valuation of KMH Series P stock as of October 13, 1998, and seeking a refund from the Moore

11    Trust of any amount by which such valuation determined the Paint Plan overpaid the Moore

12    Trust.

13    72.    Defendants engaged in a prohibited transaction in violation of ERISA §§ 406(a)-

14    (b), 29 U.S.C. §§ 1106(a)-(b), by failing to ensure that the KMH Plan paid fair market value for

15    Series I stock of KMH held by the Moore Trust on October 13, 1999.  Specifically, the KMH

16    Plan paid more than fair market value for shares sold by the Moore Trust, and Defendants failed

17    to conduct an independent and prudent investigation into the fair market price before entering

18    into the stock purchase agreement with Defendant Moore Trust.  Defendants' repeated failures

19    to seek a refund of the Paint Plan's overpayment for KMH Series I stock at any time between

20    1999 and the present constitute part of the 1999 prohibited transaction.  Defendants could have

21    cured the prohibited transaction at any time since October 13, 1999, by securing an independent

22    valuation of KMH Series I stock as of October 13, 1999, and seeking a refund from the Moore

23    Trust of any amount by which such valuation determined the KMH Plan overpaid the Moore

24    Trust.

25    73.    With respect to both the October 13, 1998 transaction and the October 13, 1999

26    transaction Defendants failed to, among other things, ensure that they secured an independent

27    expert assessment of the fair market value of KMH stock prior to those transactions; investigate

28    adequately the qualifications of any and all valuation experts retained to prepare the valuations

1  of KMH stock in connection with the transactions; provide complete and accurate information

2  regarding KMH to any valuation experts for use in the valuations prepared in connection with

3  the transactions; and make certain that reliance on any and all valuation experts' advice was

4  reasonably justified under the circumstances of the transactions.

5      74.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a

6  fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or

7  duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the

8  plan any losses to the plan resulting from each such breach, and additionally is subject to such

9  other equitable or remedial relief as the court may deem appropriate, including removal of the

10  fiduciary.

11      75.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a

12  suit for relief under ERISA § 409.

13      76.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a

14  suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to

15  enforce the terms of a plan.

16      77.    Defendant Moore Trust has profited in an amount to be proven at trial from the

17  prohibited transaction by receiving more than fair market value for the KMH stock it sold to the

18  Paint Plan on October 13, 1998, and to the KMH Plan on October 13, 1999.

19      78.    Defendant Fiduciaries have caused millions of dollars of losses to the KMH Plan

20  by the prohibited transactions in an amount to be proven more specifically at trial.

21      79.    Each Defendant Fiduciary is also liable as a co-fiduciary with respect to each

22  fiduciary violation by each other fiduciary of the Plan under ERISA § 405, 29 U.S.C. § 1105, to

23  the extent that:  (a) any fiduciary has participated knowingly in, or has knowingly undertaken to

24  conceal, an act or omission of any other fiduciary, knowing such action is a breach; (b) by his,

25  her, or its failure to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), he, she, or it has

26  enabled such other fiduciary to commit a breach; or (c) if he, she, or it has had knowledge of a

27  breach by any other fiduciary, unless he, she, or it has made reasonable efforts under the

28  circumstances to remedy the breach.

1

**PRAYER FOR RELIEF**

2       Wherefore, Plaintiffs pray for judgment against the Defendants on each Claim for Relief

3    and for the following relief:

4    **As to the First Claim for Relief:**

5       A.    Certify this action as a class action pursuant to F.R.Civ.P.23;

6       B.    Declare that the Defendant Fiduciaries, and each of them, have breached their

7    fiduciary duties to the Plaintiff Class;

8       C.    Enjoin Defendant Fiduciaries, and each of them, from further violations of their

9    fiduciary responsibilities, obligations and duties;

10      D.    Issue a preliminary and permanent injunction removing the Defendant

11   Fiduciaries, and each of them, as members of the KMH Plan Committee and Trustees of the

12   KMH Plan and/or barring the Defendant Fiduciaries, and each of them, from serving as

13   members of the KMH Plan Committee or Trustees of the KMH Plan in the future, and

14   appointing independent fiduciaries as Trustees and members of the KMH Plan Committee;

15      E.    Order that Defendant Fiduciaries and each of them, make good to the KMH Plan

16   and/or to any successor trust(s) the losses resulting from their breaches and restoring any profits

17   they have made through use of assets of the KMH Plan;

18      F.    Order that Defendant Fiduciaries provide other appropriate equitable relief to the

19   KMH Plan, including but not limited to, by forfeiting their KMH Plan accounts, providing an

20   accounting for profits, imposing a constructive trust and/or equitable lien on any funds

21   wrongfully held by any of the Defendant Fiduciaries;

22      G.    Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein

23   pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the

24   common fund;

25      H.    Order Defendant Fiduciaries to pay prejudgment interest; and

26      I.    Award such other and further relief as the Court deems equitable and just.

27   **As to the Second Claim for Relief:**

28      A.    Certify this action as a class action pursuant to F.R.Civ.P.23;

COMPLAINT – CLASS ACTION                                        Page 19

1    B.    Declare that the Defendants, and each of them, have breached their

2   fiduciary responsibilities and/or duties as parties in interest to the Plaintiff Class;

3    C.    Enjoin Defendants, and each of them, from further prohibited transactions and

4   violations of their fiduciary responsibilities, obligations and duties.

5    D.    Issue a preliminary and permanent injunction removing the Defendant

6   Fiduciaries, and each of them, as members of the KMH Plan Committee and Trustees of the

7   KMH Plan and/or barring the Defendant Fiduciaries, and each of them, from serving as

8   members of the KMH Plan Committee or Trustees of the KMH Plan in the future, and

9   appointing independent fiduciaries as Trustees and members of the KMH Plan Committee;

10    E.    Declare that the Defendants and each of them engaged in  prohibited transactions

11   in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), by causing the Plan to purchase

12   KMH stock from Defendant Moore Trust for more than adequate consideration.

13    F.    Order Defendants, and each of them, make good to the KMH Plan and/or to

14   any successor trust(s) the losses resulting from their breaches and restoring any profits they have

15   made through use of assets of the KMH Plan,

16    G.    Order that Defendant Fiduciaries provide other appropriate equitable relief to the

17   KMH Plan, including but not limited to, by forfeiting their KMH Plan accounts, providing an

18   accounting for profits, imposing a constructive trust and/or equitable lien on any funds

19   wrongfully held by any of the Defendants, and/or tracing the KMH Plan assets received by

20   parties-in-interest;

21    H.    Order Defendant Moore Trust and/or other parties-in-interest to return the

22   payments it received for its KMH stock in October 1998 and October 1999 to the KMH Plan

23   along with any profits that it has earned on these payments, order Defendants to disgorge their

24   profit from the prohibited transactions to the KMH Plan, impose a constructive trust upon the

25   profits earned by any of the Defendants from violations of fiduciary obligations and duties as

26   parties in interest, order an accounting for profits by Defendants, trace the KMH Plan assets

27   received by the Defendant Moore Trust, and/or order other appropriate equitable relief.

28    I.    Order Defendants to pay prejudgment interest.

1    J.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein

2    pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the

3    common fund; and

4    K.      Award such other and further relief as the Court deems equitable and just.

5

6    Dated: November 2A, 2006                    Respectfully submitted,

7

8                                                LEWIS, FEINBERG,
                                                 RENAKER & JACKSON, P.C.
9
                                          By:    [signature]
10                                               Daniel Feinberg
                                                 Attorneys for Plaintiffs
11

12

13   [S:\Cases\Fernandez 05-64\Pleadings\complaint.final.wpd]

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT – CLASS ACTION