1  Daniel Feinberg – CA State Bar No. 135983
   Todd F. Jackson – CA State Bar No. 202598
2  Margaret E. Hasselman – CA State Bar No. 228529
   Nina Wasow – CA State Bar No. 242047
3  LEWIS, FEINBERG, RENAKER & JACKSON, P.C.
   1330 Broadway, Suite 1800
4  Oakland, CA  94612
   Telephone: (510) 839-6824
5  Facsimile: (510) 839-7839
   Email: dfeinberg@lewisfeinberg.com
6         tjackson@lewisfeinberg.com
          mhasselman@lewisfeinberg.com
7         nwasow@lewisfeinberg.com

8  *Attorneys for Plaintiffs and the Proposed Class*
   (Counsel continued on next page)

9

### IN THE UNITED STATES DISTRICT COURT

10

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

### SAN FRANCISCO AND OAKLAND DIVISION

12

| | |
|---|---|
| 13  THOMAS FERNANDEZ and LORA SMITH, ) | Case No.  C 06-07339 MJJ |
| individually and on behalf of a class of all other ) | |
| 14  persons similarly situated, ) | |
|  ) | **FIRST AMENDED** COMPLAINT – |
| 15         Plaintiffs, ) | CLASS ACTION |
|  ) | |
| 16         vs. ) | |
|  ) | |
| 17  K-M INDUSTRIES HOLDING CO., INC.; ) | |
| K-M INDUSTRIES HOLDING CO., INC. ) | |
| 18  ESOP PLAN COMMITTEE; WILLIAM E. ) | |
| AND DESIREE B. MOORE REVOCABLE ) | |
| 19  TRUST; TRUSTEES OF THE WILLIAM E. ) | |
| AND DESIREE B. MOORE REVOCABLE ) | |
| 20  TRUST; CIG ESOP PLAN COMMITTEE; ) | |
| NORTH STAR TRUST COMPANY; ) | |
| 21  DESIREE B. MOORE REVOCABLE TRUST; ) | |
| WILLIAM E. MOORE MARITAL TRUST; ) | |
| 22  WILLIAM E. MOORE GENERATION- ) | |
| SKIPPING TRUST; and DESIREE MOORE, ) | |
| 23  BOTH IN HER INDIVIDUAL CAPACITY ) | |
| AND AS TRUSTEE OF THE WILLIAM E. ) | |
| 24  AND DESIREE B. MOORE REVOCABLE ) | |
| TRUST'S SUCCESSOR TRUSTS NAMED ) | |
| 25  ABOVE, ) | |
|  ) | |
| 26         Defendants. ) | |
|  ) | |
| 27 | |
| 28 | |

Peter Rukin – CA State Bar No. 178336
RUKIN HYLAND & DORIA LLP
100 Pine Street
Suite 725
San Francisco, CA
Telephone: (415) 421-1800
Facsimile: (415) 421-1700
Email: peterrukin@rhddlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

**JURISDICTION AND VENUE**

1.     This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., and is brought by Plaintiffs to enjoin acts and practices which violate the provisions of Title I of ERISA, to make good to the Plan losses resulting from fiduciary violations, restore to the Plan any profits which have been made by the breaching fiduciaries through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.

2.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

3.     Venue is properly laid in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the employee benefit plan at issue was administered in this District during the relevant time, some or all of the events or omissions giving rise to the claims occurred in this District, and one or more of the Defendants may be found in this District.

**INTRA-DISTRICT ASSIGNMENT**

4.     This action arises in San Mateo County in that the employee benefit plan at issue is administered in San Carlos, California, and some of the breaches alleged took place in San Carlos, California.

**PARTIES**

5.     At all relevant times, Plaintiff Thomas Fernandez has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the K-M Industries Holding Co., Inc. Employee Stock Ownership Plan ("the KMH Plan") or one of its predecessor plans, the California Capital Insurance Company Employee Stock Ownership Plan ("the CIG Plan"). Plaintiff Fernandez resides in San Ramon, California. Plaintiff Fernandez was employed by CIG from in or about July 1996, until in or about October 2005.

6.     At all relevant times, Plaintiff Lora Smith has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the KMH Plan or one of its predecessor plans, the CIG Plan. Plaintiff Smith resides in Modesto, California. Plaintiff Smith was employed by CIG from in or about September 1996, until in or about October 2001.

FIRST AMENDED COMPLAINT – CLASS ACTION                                          Page 3

1      7.     At all relevant times, Defendant K-M Industries Holding Co., Inc. ("KMH") was

2 the Sponsor of the KMH Plan, within the meaning of ERISA § 3(16)(B).  At some or all

3 relevant times, Defendant KMH was also the Administrator of the KMH Plan, within the

4 meaning of ERISA § 3(16)(A), and a fiduciary of the KMH Plan, within the meaning of ERISA

5 § 3(21)(A), 29 U.S.C. § 1002(21).  On information and belief, Defendant KMH was a fiduciary

6 under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or

7 discretionary control respecting management of the KMH Plan, and/or exercised authority or

8 control respecting management or distribution of the KMH Plan's assets, and/or had

9 discretionary authority or discretionary responsibility in the administration of the KMH Plan.

10 Under the terms of the KMH Plan, Defendant KMH was responsible for appointing the

11 Defendant K-M Industries Holding Co., Inc. ESOP Plan Committee ("KMH Plan Committee").

12      8.     At all relevant times, Defendant William E. and Desiree B. Moore Revocable

13 Trust ("Moore Trust") was a "party in interest" of the KMH Plan as defined in ERISA § 3(14),

14 29 U.S.C. § 1002(14).  Upon information and belief, William E. Moore, now deceased, was a

15 trustee and settlor of the Moore Trust.  Upon information and belief, Defendant Desiree B.

16 Moore is and was a trustee and settlor of the Moore Trust.

17      9.     Upon information and belief, Defendants Desiree B. Moore Revocable Trust

18 ("Survivor Trust"), William E. Moore Marital Trust ("Marital Trust"), and William E. Moore

19 Generation-Skipping Trust ("Generation-Skipping Trust") are successors in interest to the

20 Moore Trust.  The Survivor Trust, Marital Trust, and Generation-Skipping Trust are referred to

21 collectively as the "Successor Trusts."  Upon information and belief, the Successor Trusts are

22 "parties in interest" of the KMH Plan as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).  On

23 information and belief, the Successor Trusts each received some of the proceeds of the sales of

24 KMH Series I and Series P tracking stock to the ESOP.  Upon information and belief,

25 Defendant Desiree Moore is a trustee and beneficiary of the Survivor Trust and the Marital

26 Trust and is presently entitled to receive money from the Survivor Trust and the Marital Trust.

27 On information and belief, Defendant Desiree Moore is a trustee of the Generation-Skipping

28 Trust.  By virtue of the Successor Trusts' possession of proceeds from the sales of KMH Series I

1   and Series P tracking stock to the ESOP, Defendant Desiree Moore holds assets that belong in

2   good conscience to the ESOP.  On information and belief, the Successor Trusts can be found in

3   San Mateo County, California.

4          10.    At all relevant times, Defendant KMH delegated to Defendant KMH Plan

5   Committee some or all of the duties of acting as the plan administrator of the KMH Plan, and

6   Defendant KMH Plan Committee undertook these duties.  At all relevant times, therefore,

7   Defendant KMH Plan Committee was a fiduciary of the KMH Plan, within the meaning of

8   ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). On information and belief, Defendant KMH Plan

9   Committee was also a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it

10  exercised discretionary authority or discretionary control respecting management of the Plan,

11  and/or exercised authority or control respecting management or distribution of the Plan's assets,

12  and/or had discretionary authority or discretionary responsibility in the administration of the

13  Plan.  On information and belief, at some relevant times, the sole member of the KMH Plan

14  Committee was William E. Moore, who on information and belief was also a trustee and settlor

15  of the Moore Trust.

16         11.    William E. Moore ("Moore") was a founder of Kelly-Moore Paint Co.  On

17  information and belief, at all relevant times until his death on November 21, 2004, Moore was

18  the Chairman of Defendant KMH, the "plan sponsor" of the KMH Plan within the meaning of

19  ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).  In addition, at all relevant times, Moore was a

20  "party in interest" as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).   Upon information and

21  belief, Moore was a trustee and settlor of the Defendant Moore Trust.  On information and

22  belief, William E. Moore was a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in

23  that he exercised discretionary authority or discretionary control respecting management of the

24  KMH Plan and its predecessors, and/or exercised authority or control respecting management or

25  distribution of the KMH Plan's assets and its predecessors' assets, and/or had discretionary

26  authority or discretionary responsibility in the administration of the KMH Plan and its

27  predecessors.

28         12.    Defendant CIG ESOP Plan Committee was the named fiduciary of the CIG Plan,

1   (one of the predecessor plans to the KMH Plan) within the meaning of ERISA § 402, 29 U.S.C.

2   § 1102, and the Administrator of the CIG Plan within the meaning of ERISA § 3(16)(A).  At all

3   relevant times, therefore, Defendant Plan Committee was a fiduciary of the KMH Plan, within

4   the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  On information and belief,

5   Defendant CIG ESOP Plan Committee was a fiduciary under ERISA § 3(21)(A), 29 U.S.C. §

6   1002(21)(A), in that it exercised discretionary authority or discretionary control respecting

7   management of the KMH Plan and the CIG Plan, and/or exercised authority or control

8   respecting management or distribution of the KMH Plan's assets and the CIG Plan's assets,

9   and/or had discretionary authority or discretionary responsibility in the administration of the

10   KMH Plan.  The CIG Plan was merged into the KMH Plan on or about July 16, 1999.  On

11   information and belief, at some or all relevant times, the sole member of the Defendant CIG

12   Plan Committee was William E. Moore, who, on information and belief, was also a trustee and

13   settlor of the Moore Trust.

14        13.     Defendant North Star Trust Company ("North Star")  is a company with its

15   principal place of business in Chicago, Illinois.  On information and belief, Defendant North

16   Star has acted as trustee of the KMH Plan from April 22, 2003, to the present.  As trustee of the

17   KMH Plan, Defendant North Star was a fiduciary of the KMH Plan pursuant to ERISA §

18   3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or discretionary

19   control respecting management of the KMH Plan, and/or exercised authority or control

20   respecting management or distribution of the KMH Plan's assets, and/or had discretionary

21   authority or discretionary responsibility in the administration of the KMH Plan.

22        14.     At all relevant times, Defendant Desiree Moore was a  "party in interest" of the

23   KMH Plan as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).  On information and belief, Ms.

24   Moore is a trustee and beneficiary of Defendant Survivor Trust and of Defendant Marital Trust,

25   and a trustee of Defendant Generation-Skipping Trust, and therefore holds assets belonging in

26   good conscience to the KMH Plan.  At some or all relevant times, Defendant Desiree Moore

27   was also a fiduciary of the KMH Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. §

28   10029(21)(A), in that she exercised discretionary authority or discretionary control respecting

FIRST AMENDED COMPLAINT – CLASS ACTION            Page 6

1  management of the KMH Plan, and/or exercised authority or control respecting management or

2  distribution of the KMH Plan's assets, and/or had discretionary authority or discretionary

3  responsibility in the administration of the KMH Plan.

4      15.    Defendants KMH, KMH Plan Committee, CIG Plan Committee, Desiree Moore

5  in her individual capacity, and North Star are sometimes referred to as the "Defendant

6  Fiduciaries."

7                              **FACTS**

8                          **Company History**

9      16.    KMH is a California company that owns Kelly-Moore Paint Company ("Kelly-

10  Moore Paint"), a leading manufacturer and seller of paint and paint-related products.  KMH also

11  owns Capital Insurance Group ("CIG"), formerly known as California Capital Insurance Group,

12  an insurance company that underwrites property and casualty risks for personal and commercial

13  businesses through independent agents, serving California and other western states.  KMH and

14  Kelly-Moore Paint have their principal places of business in San Carlos, California, and CIG's

15  principal place of business is in Monterey, California.

16      17.    In the 1960's and 1970's, Kelly-Moore manufactured products that contained

17  asbestos provided by Union Carbide Corp.  As a result, Kelly-Moore has been the target of over

18  48,000 lawsuits alleging that its products are responsible for causing cancer and other diseases

19  in their users.  Kelly-Moore continues to face thousands of lawsuits over its use of asbestos, and

20  it argued in a 2004 lawsuit against Union Carbide in Texas that the lawsuits threaten its ongoing

21  viability.

22      18.    In or around 1985, Kelly-Moore Paint Co. purchased the Calmutual Insurance

23  Company, which later grew through subsequent acquisitions and is now known as Capital

24  Insurance Group ("CIG").

25      19.    In 1998, the management of Kelly-Moore Paint formed KMH and transferred all

26  the common stock of Kelly-Moore Paint and CIG to KMH.  KMH became the sole owner of

27  both Kelly-Moore Paint and CIG.  Defendant Moore Trust was the largest shareholder in KMH

28  in 1998 and remains the largest shareholder.

20.    Also in 1998, KMH established "tracking stocks" to separately track the performance of its two main subsidiary businesses. "Series P stock" was designed to track the performance of Kelly-Moore Paint and its affiliates, and "Series I stock" was designed to track the performance of CIG and its affiliates.

21.    In 2004, KMH sued Union Carbide in Texas for fraud in connection with its provision of asbestos to KMH. In the lawsuit, KMH argued that Union Carbide concealed information about asbestos's harmful effects from KMH. In Fall of 2004, a jury found that KMH had been aware of asbestos's harmful effects since approximately 1964, before it ever purchased asbestos from Union Carbide.

**ESOP History**

22.    In 1998, CIG established the CIG ESOP as an employee stock ownership plan, as defined in Internal Revenue Code § 4975(e)(7).

23.    Also in 1998, Kelly-Moore Paint established the Kelly-Moore Paint Company ESOP (the "Paint Plan") as an employee stock ownership plan, as defined in Internal Revenue Code § 4975(e)(7).

24.    On July 16, 1999, the CIG Plan was merged into the Paint Plan and renamed the K-M Industries Holding Co., Inc. ESOP ("KMH Plan"), also an employee stock ownership plan, as defined in Internal Revenue Code § 4975(e)(7). At all relevant times, the KMH Plan was an employee pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2). At all relevant times, the Plan was administered in San Carlos, California. The KMH Plan provides for allocation of different tracking stocks to plan participants depending on the participants' employer. Series P stock of KMH (tracking the performance of Kelly-Moore Paint) is allocated only to the accounts of employees of Kelly-Moore Paint and its affiliates. Series I stock (tracking the performance of CIG) is allocated only to the accounts of employees of CIG and its affiliates.

**ESOP Transactions**

25.    Upon information and belief, William Moore acted on behalf of both the Moore Trust and the Plans in the transactions alleged herein.

26.    Upon information and belief, on or about October 13, 1998, the Paint Plan purchased approximately 33,745,455 shares of KMH Series P stock from the Defendant Moore Trust for approximately $6.88 per share, for a total purchase price of approximately $232 million.  To fund the purchase, the Paint Plan borrowed the entire approximately $232 million from KMH, which had in turn borrowed $136 million from CIG.

27.    Upon information and belief, the Defendant Fiduciaries failed to ensure that they secured an independent expert assessment of the fair market value of the KMH Series P stock purchased by the Paint Plan on October 13, 1998.

28.    Upon information and belief, the Defendant Fiduciaries failed to investigate adequately the qualifications of any valuation expert retained to prepare the valuation of KMH in connection with the October 13, 1998 purchase of KMH Series P stock by the Paint Plan.

29.    Upon information and belief, the Defendant Fiduciaries failed to provide complete and accurate information regarding KMH to any valuation expert for use in the valuation prepared in connection with the purchase of KMH Series P stock by the Paint Plan.

30.    Upon information and belief, the Defendant Fiduciaries failed to make certain that reliance on any valuation expert's advice was reasonably justified under the circumstances of the purchase of KMH Series P stock by the Paint Plan.

31.    Upon information and belief, the valuation report of Kelly-Moore Paint Co. prepared in connection with the October 13, 1998 transaction failed to take into account KMH's potential liability in asbestos-related litigation, even though information that the company faced significant liability was known to KMH management, including Moore and other fiduciaries, at the time.

32.    Upon information and belief, the valuation report also failed to discount the purchase price of the stock to account for the fact that the stock purchased by the Paint Plan was tracking stock, which generally trades at a discount relative to ordinary common stock.

33.    On or about October 13, 1999, following the merger of the plans described above, the KMH Plan purchased approximately 8,400,000 shares of KMH Series I stock from the Defendant Moore Trust for $6.54 per share, for a total purchase price of approximately $55

1   million.  To fund the purchase, the KMH Plan borrowed approximately $55 million from KMH.

2   The share price for this transaction was established by a valuation report of CIG purporting to

3   value CIG as of October 13, 1999.

4        34.    On December 31, 1999, KMH Series I stock was valued at $3.66 per share, or

5   approximately 56 percent of what the KMH Plan had paid only six weeks earlier.

6        35.    Upon information and belief, the Defendant Fiduciaries failed to ensure that they

7   secured an independent expert assessment of the fair market value of the KMH Series I stock

8   purchased by the KMH Plan on October 13, 1999.

9        36.    Upon information and belief, the Defendant Fiduciaries failed to investigate

10  adequately the qualifications of any valuation expert retained to prepare the valuation of KMH

11  in connection with the October 13, 1999 purchase of KMH Series I stock by the KMH Plan.

12       37.    Upon information and belief, the Defendant Fiduciaries failed to provide

13  complete and accurate information regarding KMH to any valuation expert for use in the

14  valuation prepared in connection with the purchase of KMH Series I stock by the KMH Plan.

15       38.    Upon information and belief, the Defendant Fiduciaries failed to make certain

16  that reliance on any valuation expert's advice was reasonably justified under the circumstances

17  of the purchase of KMH Series I stock by the KMH Plan.

18       39.    Upon information and belief, the valuation report of CIG prepared in connection

19  with the October 13, 1999 transaction failed to take into account KMH's potential liability in

20  asbestos-related litigation, even though information that the company faced significant liability

21  was known to KMH management, including Moore and other fiduciaries, at the time.

22       40.    Upon information and belief, the valuation report of CIG also failed to properly

23  discount the purchase price of the KMH Series I stock to account for the fact that the stock

24  purchased by the Plan was tracking stock, which generally trades at a discount relative to

25  ordinary common stock.

26       41.    Upon information and belief, neither KMH, nor the fiduciaries of the Plans,

27  appointed an independent fiduciary to represent the Paint Plan or the KMH Plan in the

28  transactions alleged above.  Upon information and belief, William Moore acted on behalf of

FIRST AMENDED COMPLAINT – CLASS ACTION                                    Page 10

1  both buyer and seller in both transactions.

2      42.    On information and belief, at the times of the Plans' purchases of KMH Series P

3  and Series I stock from the Defendant Moore Trust, KMH management, including William

4  Moore and the other Defendant Fiduciaries, was aware of the potential liabilities facing the

5  company as a result of asbestos-related litigation.  Upon information and belief, KMH

6  management, including Moore and other fiduciaries of the Plans, withheld information about

7  KMH's potential asbestos liability from the valuators retained to determine the value of KMH

8  stock for purposes of the Plan transactions until in or about late 2002 or early 2003.

9      43.    Upon information and belief, the Defendant Fiduciaries failed to make an honest,

10  objective effort to read the valuation reports, understand them, and question the methods and

11  assumptions that did not make sense.

12      44.    In Plan Years 2003 and 2004, the Defendant Fiduciaries failed to obtain a

13  valuation of the Series I and Series P stock held by the KMH Plan, failed to file IRS Form 5500s

14  on behalf of the KMH Plan as required by law, and failed to provide Summary Annual Reports

15  of the KMH Plan to KMH Plan participants as required by law.

16      45.    Valuations of KMH's Series I stock as of December 31, 2003, and December 31,

17  2004, performed in 2005, failed to consider the impact of KMH's asbestos liability on Series I

18  stock of KMH.  Valuation reports of Series I stock prepared for plan years 2000 and 2001 do not

19  mention potential asbestos liability at all, and the valuation report for plan year 2002 contains

20  only a brief mention of potential asbestos liability.

21      46.    Upon information and belief, in or about 2005, the KMH Plan Committee, KMH,

22  and/or CIG re-negotiated the terms of the loan to the Plan used to purchase KMH shares.

23      47.    Since KMH stock is and was not readily tradable on an established market, IRC §

24  409(h)(4) requires and has required at all relevant times that KMH give terminated participants

25  the right to have KMH repurchase the KMH securities held in their Plan accounts pursuant to a

26  put option.  In the event that a participant terminates for a reason other than death, disability, or

27  normal retirement, IRC § 409(o)(1)(A)(ii) also requires and has required at all relevant times

28  that the Plan commence distribution of the participant's account not later than 1 year after the

1  close of the fifth plan year following the plan year in which the participant separates from

2  service.

3      48.    When Plaintiff Smith contacted CIG regarding her put option in 2006, she was

4  informed by CIG that KMH would not be able to repurchase her shares until 2014 because of

5  new loan terms.

6      49.    Upon information and belief, Defendant Fiduciaries have not informed Plan

7  participants that re-negotiated loan terms impair their put option rights.

8      50.    The Plan paid substantially more than fair market value for the KMH stock

9  purchased from the Moore Family Trust in 1998 and 1999.  The Defendant Fiduciaries could

10  have corrected the Plans' overpayment for KMH stock at any time since October 13, 1998, by

11  obtaining an independent valuation based on all relevant information, including but not limited

12  to full disclosure of KMH's financial state, including KMH's potential asbestos liabilities, and

13  then seeking a refund from the Moore Trust of any amount by which such a valuation

14  demonstrated that the Plans had overpaid for KMH stock.  Despite this opportunity, Defendant

15  Fiduciaries failed to take any action to cure the breaches of fiduciary duty and prohibited

16  transactions, and in fact continued to intentionally withhold information about KMH's potential

17  asbestos liabilities from valuators, thereby continuing the breaches of fiduciary duty that began

18  in 1998.

19      51.    Upon information and belief, until the Fall of 2004, Defendant Fiduciaries and

20  KMH management intentionally withheld information about the extent of KMH's potential

21  asbestos liability from participants who were active employees, including Plaintiff Fernandez,

22  that would have shown Plaintiff Fernandez and other participants that the Plans overpaid for

23  KMH stock.  The Defendant Fiduciaries have intentionally withheld information about the

24  extent of KMH's potential asbestos liability from participants who are terminated employees,

25  including Plaintiff Smith.

26      52.    Plaintiff Fernandez had no knowledge that the Plans' purchases of KMH stock

27  may have been for more than fair market value, including but not limited to knowledge that

28  more than fair market value may have been paid due to potential asbestos liability, until he was

1   informed of the jury verdict in the Union Carbide lawsuit in October of 2004. Plaintiff Smith

2   had no knowledge that the Plans' purchases of KMH stock may have been for more than fair

3   market value, including but not limited to knowledge that more than fair market value may have

4   been paid due to potential asbestos liability, until she was informed by letter in February of 2005

5   that no valuation of the Plan's stock had been completed for 2003 due to issues related to

6   potential asbestos liability. Plaintiffs had no knowledge that the Plans' purchase of KMH stock

7   may have been for more than fair market value due to the failure to discount the purchase price

8   of the stock to account for the fact that the stock purchased by the Plan was tracking stock until

9   the Plan Committee provided copies of valuation reports to Plaintiffs' counsel in 2006.

10  Plaintiffs have never had any knowledge regarding any steps taken by any Plan fiduciaries to

11  determine the share price for the October 13, 1998 transaction or the October 13, 1999

12  transaction, nor any knowledge of the matters alleged in Paragraphs 66, 73, and 74 below.

13                          **CLASS ALLEGATIONS**

14      53.     Plaintiffs bring the First and Second Claims for Relief for violations of ERISA

15  §§ 503(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), as a class action pursuant

16  to Fed. R. Civ. P. 23 (a) and (b), on behalf of all persons other than Defendants who were

17  participants in the KMH Plan on October 13, 1998, or at any time thereafter, and/or

18  beneficiaries of KMH Plan participants on October 13, 1998 or at any time thereafter

19  (hereinafter "Class Plaintiffs").

20      54.     The Plaintiff Class is so numerous that joinder of all members is impracticable.

21  Plaintiff is informed and believes, and on that basis alleges, that over 2,500 employees and

22  former employees were participants, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the

23  KMH Plan and held shares of KMH stock in their individual accounts as of December 31, 2004.

24  Although the exact number and identities of Class Members are unknown to Plaintiff at this

25  time, this information is easily ascertainable from the KMH Plan through discovery of its

26  records.

27      55.     Questions of law and fact common to the Plaintiff Class as a whole include, but

28  are not limited to, the following:

i.     Whether William E. Moore acted on behalf of both the Moore Trust and the Kelly-Moore Paint Plan in the October 13, 1998 sale of Series P stock of KMH by the Moore Trust to the Paint Plan;

ii.     Whether William E. Moore acted on behalf of both the Moore Trust and the CIG Plan in the October 13, 1999 sale of Series I stock of KMH by the Moore Trust to the CIG Plan;

iii.     Whether Defendant Moore Trust was a party in interest to the Paint Plan at the time of the October 13, 1998 sale of Series P stock in KMH by the Moore Trust to the Paint Plan and at other times thereafter;

iv.     Whether Defendant Moore Trust was a party in interest to the CIG Plan at the time of the October 13, 1999 sale of Series I stock in KMH by the Moore Trust to the CIG Plan and at other times thereafter;

v.     Whether Defendants engaged in a prohibited transaction under ERISA by permitting the Paint Plan to purchase Series P stock of KMH from Defendant Moore Trust in October 1998 for more than adequate consideration;

vi.     Whether Defendants engaged in a prohibited transaction under ERISA by permitting the CIG Plan to purchase Series I stock of KMH from Defendant Moore Trust in October 1999 for more than adequate consideration;

vii.     Whether Defendant Fiduciaries engaged in a prudent investigation of the proposed sale of Series P KMH stock by Defendant Moore Trust to the Paint Plan;

viii.     Whether Defendant Fiduciaries engaged in a prudent investigation of the proposed sale of Series I KMH stock by Defendant Moore Trust to the KMH Plan;

ix.     Whether Defendant Fiduciaries breached a fiduciary duty to Paint Plan participants by purchasing Defendant Moore Trust's KMH Series P stock in October 1998 for more than fair market value;

x.     Whether Defendant Fiduciaries breached their fiduciary duties to KMH Plan participants by failing to obtain a proper valuation of KMH Series I and Series P stock held by the KMH Plan from January 1, 1998, to the present;

1   xi.    Whether Defendant Fiduciaries breached their fiduciary duties to KMH

2   Plan participants by failing to obtain a timely valuation of the KMH stock held by the KMH

3   Plan, and failing to timely file IRS Form 5500s, for plan years 2003-2004;

4   xii.    Whether Defendant Fiduciaries breached their fiduciary duties to KMH

5   Plan participants by failing to correct the overpayments by the KMH Plan and its predecessor

6   plans for Series I and Series P KMH stock from October 13, 1998, to the present;

7   xiii.    Whether Defendants Desiree Moore and the Successor Trusts were

8   parties in interest to the Paint Plan at the time of the October 13, 1998 sale of Series P stock in

9   KMH by the Moore Trust to the Paint Plan and at other times thereafter, and are now parties in

10  interest to the KMH Plan;

11  xiv.    Whether Defendants Desiree Moore and the Successor Trusts were

12  parties in interest to the CIG Plan at the time of the October 13, 1999 sale of Series I stock in

13  KMH by the Moore Trust to the CIG Plan and at other times thereafter, and are now parties in

14  interest to the KMH Plan.

15  56.    Plaintiffs' claims are typical of those of the Plaintiff Class.  Plaintiffs, like other

16  Plan participants in the Plaintiff Class, suffered a diminution in the values of their KMH and

17  predecessor plan accounts when the Plans purchased KMH stock owned by Defendant Moore

18  Trust for more than fair market value, and continue to suffer such losses in the present because

19  Defendant Fiduciaries have failed to correct the overpayment by the KMH Plan and its

20  predecessor plans.

21  57.    Plaintiffs will fairly and adequately represent and protect the interests of the

22  Plaintiff Class.  Plaintiffs have retained counsel competent and experienced in complex class

23  actions, ERISA, and employee benefits litigation.

24  58.    Class certification of Plaintiffs' First and Second Claims for Relief for violations

25  of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate

26  actions by individual Class members would create a risk of inconsistent or varying adjudications

27  which would establish incompatible standards of conduct for Defendants, and/or because

28  adjudications with respect to individual Class members would as a practical matter be

FIRST AMENDED COMPLAINT – CLASS ACTION                                    Page 15

1    dispositive of the interests of non-party Class members.

2    59.    In addition, Class certification of Plaintiffs' First and Second Claims for Relief

3    for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants

4    have acted or refused to act on grounds generally applicable to the Class, making appropriate

5    declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.  The

6    members of the Class are entitled to declaratory and injunctive relief to remedy Defendants'

7    fiduciary violations.

8    60.    The names and addresses of the Plaintiff Class are available from the KMH Plan.

9    Notice will be provided to all members of the Plaintiff Class to the extent required by Rule 23.

10

11                                   **FIRST CLAIM FOR RELIEF**
                            **[Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3),**
12                    **29 U.S.C. §§ 1132(a)(2) and (a)(3), Against All Defendant Fiduciaries]**

13    61.    Plaintiffs incorporate Paragraphs 1-60 as though set forth herein.

14    62.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia,* that a plan

15    fiduciary discharge his or her duties with respect to a plan solely in the interest of the

16    participants and beneficiaries and with the care, skill, prudence, and diligence under the

17    circumstances then prevailing that a prudent person acting in a like capacity and familiar with

18    such matters would use in the conduct of an enterprise of a like character and with like aims.

19    63.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a

20     fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or

21    duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the

22    plan any losses to the plan resulting from each such breach, and additionally is subject to such

23    other equitable or remedial relief as the court may deem appropriate, including removal of the

24    fiduciary.

25    64.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an

26    action for relief under ERISA § 409.

27    65.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an

28    action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to

1    enforce the terms of a plan.

2        66.    Defendant Fiduciaries have breached their duties of loyalty and prudence under

3    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).  These breaches include but are not limited to the

4    following:  causing the Plans to pay more than fair market value for KMH stock; failing to

5    conduct a thorough and independent review and adequately consider whether the October 13,

6    1998 purchase of KMH Series P stock, and the October 13, 1999 purchase of KMH Series I

7    stock from Defendant Moore Trust was in the best interests of the Plan participants; failing to

8    undertake an adequate and independent valuation of the KMH stock prior to those transactions;

9    failing to ensure that they secured an independent expert assessment of the fair market value of

10   KMH stock prior to those transactions; failing to investigate adequately the qualifications of any

11   and all valuation experts retained to prepare the valuations of KMH stock in connection with the

12   transactions; failing to provide complete and accurate information regarding KMH to such

13   valuation experts for use in the valuations prepared in connection with the transactions; failing

14   to make certain that reliance on any and all valuation experts' advice was reasonably justified

15   under the circumstances of the transactions; failing adequately to consider how KMH's potential

16   asbestos liabilities affected the value of KMH Series I and Series P stock; failing adequately to

17   consider that the status of KMH Series I and Series P stock as "tracking stock" affected its

18   value; failing to make an honest, objective effort to read the valuation reports, understand them,

19   and question the methods and assumptions that did not make sense; failing to seek a refund of

20   the KMH Plan's overpayment for KMH stock at any time between 1998 and the present;

21   overvaluing the KMH stock purchased from Defendant Moore Trust by the KMH Plan in

22   October 1998 and October 1999; withholding information about KMH's potential asbestos

23   liabilities from valuators; and violating the terms of the plan document of the KMH Plan by

24   refusing to redeem Plaintiff Smith's put option on the schedule established by the KMH Plan.

25   Defendants' repeated failures to seek a refund of the Paint Plan's overpayment for KMH Series

26   P stock at any time between 1998 and the present constitute part of the 1998 prohibited

27   transaction.  Defendants' repeated failures to seek a refund of the KMH Plan's overpayment for

28   KMH Series I stock at any time between 1999 and the present constitute part of the 1999

prohibited transaction.  Defendants could have cured the breaches at any time since October 13, 1998, by securing an independent valuation of the KMH Series I and Series P stock purchased by the Plans and seeking a refund from the Moore Trust and the Successor Trusts of any amount by which such valuation determined the Plans overpaid the Moore Trust.

67.     Each Defendant Fiduciary is also liable as a co-fiduciary with respect to each fiduciary violation by each other fiduciary of the Plan under ERISA § 405, 29 U.S.C. § 1105, to the extent that:  (a) any fiduciary has participated knowingly in, or has knowingly undertaken to conceal, an act or omission of any other fiduciary, knowing such action is a breach; (b) by his, her, or its failure to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), he, she, or it has enabled such other fiduciary to commit a breach; or (c) if he, she, or it has had knowledge of a breach by any other fiduciary, unless he, she, or it has made reasonable efforts under the circumstances to remedy the breach.

68.     Defendant Fiduciaries' actions caused millions of dollars of losses to the Plan in an amount to be proven more specifically at trial.

**SECOND CLAIM FOR RELIEF**
**[Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(a)-(b),**
**29 U.S.C. §§ 1106(a)-(b), Against All Defendants]**

69.     Plaintiffs incorporate Paragraphs 1-60 as though set forth herein.

70.     ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

71.     ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "deal with the assets of the plan in his own interest or for his own account," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

72.     ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the

1    prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for

2    adequate consideration.  ERISA § 3(18)(B) defines adequate consideration as "the fair market of

3    the asset as determined in good faith by the trustee or named fiduciary."  ERISA's legislative

4    history and existing case law make clear that ERISA § 3(18)(B) requires that the price paid must

5    reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation

6    to determine the fair market value of the asset.

7        73.    Defendants engaged in a prohibited transaction in violation of ERISA §§ 406(a)-

8    (b), 29 U.S.C. §§ 1106(a)-(b), by failing to ensure that the Paint Plan paid fair market value for

9    Series P stock of KMH held by the Moore Trust on October 13, 1998.  Specifically, the Paint

10   Plan paid more than fair market value for shares sold by the Moore Trust, and Defendants failed

11   to conduct an independent and prudent investigation into the fair market price before entering

12   into the stock purchase agreement with Defendant Moore Trust.  Defendants' repeated failures

13   to seek a refund of the Paint Plan's overpayment for KMH Series P stock at any time between

14   1998 and the present constitute part of the 1998 prohibited transaction.  Defendants could have

15   cured the prohibited transaction at any time since October 13, 1998, by securing an independent

16   valuation of KMH Series P stock as of October 13, 1998, and seeking a refund from the Moore

17   Trust and the Successor Trusts of any amount by which such valuation determined the Paint

18   Plan overpaid the Moore Trust.

19       74.    Defendants engaged in a prohibited transaction in violation of ERISA §§ 406(a)-

20   (b), 29 U.S.C. §§ 1106(a)-(b), by failing to ensure that the KMH Plan paid fair market value for

21   Series I stock of KMH held by the Moore Trust on October 13, 1999.  Specifically, the KMH

22   Plan paid more than fair market value for shares sold by the Moore Trust, and Defendants failed

23   to conduct an independent and prudent investigation into the fair market price before entering

24   into the stock purchase agreement with Defendant Moore Trust.  Defendants' repeated failures

25   to seek a refund of the KMH Plan's overpayment for KMH Series I stock at any time between

26   1999 and the present constitute part of the 1999 prohibited transaction.  Defendants could have

27   cured the prohibited transaction at any time since October 13, 1999, by securing an independent

28   valuation of KMH Series I stock as of October 13, 1999, and seeking a refund from the Moore

1    Trust <u>and the Successor Trusts</u> of any amount by which such valuation determined the KMH

2    Plan overpaid the Moore Trust.

3        <u>75.</u>    With respect to both the October 13, 1998 transaction and the October 13, 1999

4    transaction Defendants failed to, among other things, ensure that they secured an independent

5    expert assessment of the fair market value of KMH stock prior to those transactions; investigate

6    adequately the qualifications of any and all valuation experts retained to prepare the valuations

7    of KMH stock in connection with the transactions; provide complete and accurate information

8    regarding KMH to any valuation experts for use in the valuations prepared in connection with

9    the transactions; and make certain that reliance on any and all valuation experts' advice was

10   reasonably justified under the circumstances of the transactions.

11       <u>76.</u>    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a

12   fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or

13   duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the

14   plan any losses to the plan resulting from each such breach, and additionally is subject to such

15   other equitable or remedial relief as the court may deem appropriate, including removal of the

16   fiduciary.

17       <u>77.</u>    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a

18   suit for relief under ERISA § 409.

19       <u>78.</u>    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a

20   suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to

21   enforce the terms of a plan.

22       <u>79.</u>    Defendant Moore Trust <u>and Defendant Successor Trusts have</u> profited in an

23   amount to be proven at trial from the prohibited transaction by receiving more than fair market

24   value for the KMH stock <u>the Moore Trust</u> sold to the Paint Plan on October 13, 1998, and to the

25   KMH Plan on October 13, 1999.

26       <u>80.</u>    Defendant Fiduciaries have caused millions of dollars of losses to the KMH Plan

27   by the prohibited transactions in an amount to be proven more specifically at trial.

28       <u>81.</u>    Each Defendant Fiduciary is also liable as a co-fiduciary with respect to each

<u>FIRST AMENDED</u> COMPLAINT – CLASS ACTION                                    Page 20

1  fiduciary violation by each other fiduciary of the Plan under ERISA § 405, 29 U.S.C. § 1105, to

2  the extent that:  (a) any fiduciary has participated knowingly in, or has knowingly undertaken to

3  conceal, an act or omission of any other fiduciary, knowing such action is a breach; (b) by his,

4  her, or its failure to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), he, she, or it has

5  enabled such other fiduciary to commit a breach; or (c) if he, she, or it has had knowledge of a

6  breach by any other fiduciary, unless he, she, or it has made reasonable efforts under the

7  circumstances to remedy the breach.

8                                    **PRAYER FOR RELIEF**

9         Wherefore, Plaintiffs pray for judgment against the Defendants on each Claim for Relief

10  and for the following relief:

11  **As to the First Claim for Relief:**

12        A.    Certify this action as a class action pursuant to F.R.Civ.P.23;

13        B.    Declare that the Defendant Fiduciaries, and each of them, have breached their

14  fiduciary duties to the Plaintiff Class;

15        C.    Enjoin Defendant Fiduciaries, and each of them, from further violations of their

16  fiduciary responsibilities, obligations and duties;

17        D.    Issue a preliminary and permanent injunction removing the Defendant

18  Fiduciaries, and each of them, as members of the KMH Plan Committee and Trustees of the

19  KMH Plan and/or barring the Defendant Fiduciaries, and each of them, from serving as

20  members of the KMH Plan Committee or Trustees of the KMH Plan in the future, and

21  appointing independent fiduciaries as Trustees and members of the KMH Plan Committee;

22        E.    Order that Defendant Fiduciaries and each of them, make good to the KMH Plan

23  and/or to any successor trust(s) the losses resulting from their breaches and restoring any profits

24  they have made through use of assets of the KMH Plan;

25        F.    Order that Defendant Fiduciaries provide other appropriate equitable relief to the

26  KMH Plan, including but not limited to, by forfeiting their KMH Plan accounts, providing an

27  accounting for profits, imposing a constructive trust and/or equitable lien on any funds

28  wrongfully held  by any of the Defendant Fiduciaries;

FIRST AMENDED COMPLAINT – CLASS ACTION                                Page 21

1    G.    Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein

2    pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the

3    common fund;

4    H.    Order Defendant Fiduciaries to pay prejudgment interest; and

5    I.    Award such other and further relief as the Court deems equitable and just.

6    **As to the Second Claim for Relief:**

7    A.    Certify this action as a class action pursuant to F.R.Civ.P.23;

8    B.    Declare that the Defendants, and each of them, have breached their

9    fiduciary responsibilities and/or duties as parties in interest to the Plaintiff Class;

10    C.    Enjoin Defendants, and each of them, from further prohibited transactions and

11    violations of their fiduciary responsibilities, obligations and duties.

12    D.    Issue a preliminary and permanent injunction removing the Defendant

13    Fiduciaries, and each of them, as members of the KMH Plan Committee and Trustees of the

14    KMH Plan and/or barring the Defendant Fiduciaries, and each of them, from serving as

15    members of the KMH Plan Committee or Trustees of the KMH Plan in the future, and

16    appointing independent fiduciaries as Trustees and members of the KMH Plan Committee;

17    E.    Declare that the Defendants and each of them engaged in  prohibited transactions

18    in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), by causing the Plan to purchase

19    KMH stock from Defendant Moore Trust for more than adequate consideration.

20    F.    Order Defendants, and each of them, make good to the KMH Plan and/or to

21    any successor trust(s) the losses resulting from their breaches and restoring any profits they have

22    made through use of assets of the KMH Plan,

23    G.    Order that Defendant Fiduciaries provide other appropriate equitable relief to the

24    KMH Plan, including but not limited to, by forfeiting their KMH Plan accounts, providing an

25    accounting for profits, imposing a constructive trust and/or equitable lien on any funds

26    wrongfully held by any of the Defendants, and/or tracing the KMH Plan assets received by

27    parties-in-interest;

28    H.    Order Defendant Moore Trust, <u>Defendant Successor Trusts,</u> and/or other parties-

1  in-interest to return the payments <u>they</u> received for KMH stock <u>sold to the Plan</u> in October 1998

2  and October 1999 to the KMH Plan along with any profits that <u>they have</u> earned on these

3  payments, order Defendants to disgorge their profit from the prohibited transactions to the KMH

4  Plan, impose a constructive trust upon the profits earned by any of the Defendants from

5  violations of fiduciary obligations and duties as parties in interest, order an accounting for

6  profits by Defendants, trace the KMH Plan assets received by the Defendant Moore Trust,

7  and/or order other appropriate equitable relief.

8       I.    Order Defendants to pay prejudgment interest.

9       J.    Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein

10  pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the

11  common fund; and

12       K.    Award such other and further relief as the Court deems equitable and just.

13

14  Dated: June 5, 2007               Respectfully submitted,

15

16                          LEWIS, FEINBERG,
                        RENAKER & JACKSON, P.C.

17

18            By:     /s/
                        Todd Jackson
                        Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28