Daniel Feinberg – CA State Bar No. 135983
Todd F. Jackson – CA State Bar No. 202598
Margaret E. Hasselman – CA State Bar No. 228529
Nina R. Wasow – CA State Bar No. 242047
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
Email: dfeinberg@lewisfeinberg.com
Email: tjackson@lewisfeinberg.com
Email: mhasselman@lewisfeinberg.com
Email: nwasow@lewisfeinberg.com

*Attorneys for Plaintiffs and the Proposed Class*
(Additional counsel listed within)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO AND OAKLAND DIVISION

| | |
|---|---|
| THOMAS FERNANDEZ and LORA SMITH, individually and on behalf of a class of all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>K-M INDUSTRIES HOLDING CO., INC.; K-M INDUSTRIES HOLDING CO., INC. ESOP PLAN COMMITTEE; WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; TRUSTEES OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; CIG ESOP PLAN COMMITTEE; NORTH STAR TRUST COMPANY; DESIREE B. MOORE REVOCABLE TRUST; WILLIAM E. MOORE MARITAL TRUST; WILLIAM E. MOORE GENERATION-SKIPPING TRUST; and DESIREE MOORE, BOTH IN HER INDIVIDUAL CAPACITY AND AS TRUSTEE OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST'S SUCCESSOR TRUSTS NAMED ABOVE,<br><br>Defendants. | Case No. C-06-07339 MJJ<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: December 11, 2007<br>Time: 9:30 AM<br>Courtroom: 11<br>Judge: Hon. Martin J. Jenkins<br><br>DISCOVERY MATTER |

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

2  NOTICE IS HEREBY GIVEN that on December 11, 2007, or as soon thereafter as
3  counsel may be heard, in Courtroom 11 of the above entitled Court, located at 450 Golden Gate
4  Avenue, San Francisco, California, Plaintiffs will, and hereby do, move this Court for an order
5  compelling Defendants K-M Industries Holding Co., Inc.; K-M Industries Holding Co., Inc.
6  ESOP Plan Committee; and CIG ESOP Plan Committee to produce documents.

7  Counsel have previously met and conferred on the discovery issues in this case.
8  Declaration of Nina Wasow at ¶¶ 3, 5. Efforts to resolve the discovery issues informally were
9  unsuccessful, necessitating this motion. Accordingly, Plaintiffs seek the relief set forth in the
10 Proposed Order filed herewith.

11 This motion is based on this Notice of Motion and Motion to Compel; the following
12 Memorandum of Points and Authorities in support thereof; the accompanying Declaration of
13 Nina Wasow and exhibits thereto; the pleadings and other documents in the Court's file in this
14 matter; and such other matters as may be presented to the Court at hearing.

16  Dated: November 2, 2007            Respectfully submitted,
17                                     LEWIS & FEINBERG, LEE
                                       RENAKER & JACKSON, P.C.
18
                              By:      /s/
19                                     Daniel Feinberg
                                       Attorneys for Plaintiff

**TABLE OF CONTENTS**

I.     Introduction..................................................................................................3

II.    Summary of Discovery Dispute....................................................................4

       a.     Background.........................................................................................4

       b.     The Disputed Documents From Defendants' Privilege Log.............5

       c.     Efforts to Meet and Confer.................................................................6

III.   Argument.......................................................................................................6

       a.     There is a Fiduciary Exception to the Attorney-Client Privilege.....6

       b.     The Communications Requested by Plaintiffs Are Subject to the Fiduciary
              Exception to the Attorney-Client Privilege......................................7

              i.     KM Defendants are Fiduciaries of the Plan........................7

              ii.    The Documents Pertain to Plan Administration.................8

              iii.   The Requested Communications do not Relate to the Fiduciaries'
                     Potential Personal Liability.................................................10

IV.    Conclusion..................................................................................................11

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiffs, who are participants in the K-M Industries Holding Co., Inc. Employee Stock Ownership Plan ("the ESOP" or "the Plan"), seek production of two documents that Defendants K-M Industries Holding Co., Inc.; K-M Industries Holding Co., Inc. ESOP Plan Committee; and CIG ESOP Plan Committee ("KM Defendants" or "KM entities") have withheld on grounds of attorney-client privilege. KM Defendants are fiduciaries of the Plan within the meaning of § 3(21)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(21)(A).[1]

---

[1] "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any

1    Under established law in this circuit, an ERISA fiduciary cannot invoke the attorney-
2  client privilege against Plan participants where the fiduciary seeks the advice of counsel
3  regarding matters of plan administration, and where the advice does not relate to the fiduciary's
4  potential personal liability. *United States v. Mett*, 178 F.3d 1058, 1063-64 (9th Cir. 1999). *See*
5  *also United States v. Evans*, 796 F.2d 264, 265-66 (9th Cir. 1986); *Fischel v. Equitable Life*
6  *Assurance*, 191 F.R.D. 606, 608-09 (N.D. Cal. 2000). This rule, which is often referred to as the
7  "fiduciary exception" to the attorney-client privilege, is based on the premise that the plan
8  participants hold the privilege where a fiduciary acts on behalf of the participants in seeking the
9  advice of counsel in matters of plan administration. *Fischel*, 191 F.R.D. at 609.
10   Here, the documents at issue were authored or received by Plan fiduciaries and concern
11  Plan administration, so the KM Defendants cannot validly withhold them from Plaintiffs on the
12  ground of attorney-client privilege. KM Defendants' descriptions of the documents – notes and
13  correspondence about the extent of Kelly-Moore Paint's asbestos liability, obtained for the
14  purpose of providing information to the ESOP valuator and Plan participants – state that they
15  were acting on behalf of the ESOP Plan at the time the documents at issue were created, and that
16  the communications concern fiduciary matters. There is no indication that the communications
17  concern the fiduciaries' efforts to defend themselves against potential litigation by plan
18  participants. As a result, the documents at issue are not privileged from disclosure to Plaintiffs.
19   Accordingly, Plaintiffs respectfully request that the Court order KM Defendants to
20  produce Document Nos. 2 and 4, identified on page 2 of their privilege log. *See* Declaration of
21  Nina Wasow in support of Plaintiffs' Motion to Compel (hereinafter "Wasow Dec.") Exh. 1 at 2.
22  In the alternative, Plaintiffs request that the Court conduct *in camera* review of these documents
23  to determine whether the fiduciary exception to the attorney-client privilege is applicable; if so,
24  the Court should order their production.

---

discretionary authority or any discretionary responsibility in the administration of such plan." 29
U.S.C. § 1002(21)(A).

1  **II.    SUMMARY OF DISCOVERY DISPUTE**

2      **a.    Background**

KMH is a holding company with two subsidiaries, Kelly-Moore Paint Co. and Capital Insurance Group ("CIG"). Prior to October 1998, KMH was wholly owned by William Moore. Mr. Moore formed an ESOP in order to sell a portion of his shares while maintaining control over the companies. KMH established "tracking stocks" to track separately the performance of its two main subsidiary businesses. In October 1998, the ESOP purchased 42% of the "Series P" stock (tracking the performance of Kelly-Moore Paint Co.) from the Moore Trust for approximately $232 million. In October 1999, the ESOP purchased 42% of the "Series I" stock (tracking the performance of CIG) from the Moore Trust for approximately $55 million. Mr. Moore acted as both the seller of stock from his family trust and the buyer in his role as Trustee of the ESOP.

Kelly-Moore Paint Co. sold asbestos-containing products during the 1960s and 1970s. It was first sued for asbestos-related bodily injuries in 1977, and cases began to surge in the late 1990s. By 2001, KMH was facing thousands of asbestos lawsuits and, as shown by one of the documents listed on KM Defendants' privilege log, began to contemplate bankruptcy in 2002. *See* Wasow Dec. Exh. 1 at 9. Plaintiffs allege that Defendants withheld information about KMH's potential asbestos liability from valuators retained to determine the value of KMH stock for purposes of the Plan transactions, and from participants and beneficiaries, until after 2001.

This case was filed in November 2006. Plaintiffs allege that Defendants breached their fiduciary duties by causing the ESOP to pay more than adequate consideration for the KMH stock purchased in 1998 and 1999, and by failing to discharge their duties with respect to the Plan solely in the interest of participants and beneficiaries and with the requisite care, skill, prudence and diligence. Discovery has been ongoing since approximately February 2007, and document production is not yet complete.

    **b.    The Disputed Documents from KM Defendants' Privilege Log.**

Plaintiffs contend that KM Defendants improperly withheld the following documents on

1  the ground of attorney-client privilege:

2  Document 2 is a note to file dated October 1, 1998, by Steve Ferrari, the Vice President
3  and CFO of Kelly-Moore Paint Co., Inc. It is described in Defendants' privilege log as "Note of
4  communication with Cheryl Mills, attorney for Kelly-Moore Paint Company re extent of
5  insurance coverage for asbestos claims against Kelly Moore and effect on KMPC share prices;
6  advice sought in connection with providing information to ESOP evaluator." Wasow Dec. Exh.
7  1 at 2.

8  Document 4 is a letter (with facsimile transmittal cover) from Cheryl Mills, an attorney at
9  Pillsbury, Levinson & Mills, to Joseph Cristiano, the CEO of Kelly-Moore Paint Co., Inc., dated
10 December 11, 1998. It is described in the privilege log as "Extent of insurance coverage for
11 asbestos claims against Kelly Moore and effect on KMPC assets; information sought in
12 connection with providing information to ESOP participants and ESOP Trustee." Wasow Dec.
13 Exh. 1 at 2.

14     **c.     Efforts to Meet and Confer**.

15 KMH produced a privilege log for documents responsive to Plaintiffs' document
16 subpoena of the Menke Group, Inc. and Sansome Street Appraisers on May 30, 2007. KMH
17 produced an amended privilege log for these documents on June 19, 2007. KMH produced a
18 privilege log for documents produced from the files of KMH and CIG on July 16, 2007. A first
19 supplemental privilege log was produced on July 25, 2007, and an amended first supplemental
20 privilege log was produced on July 26, 2007. Wasow Dec. ¶ 2.

21 The parties met to discuss each document on each of the privilege logs on August 2,
22 2007, and August 9, 2007. Subsequent to those meetings, some documents were produced to
23 Plaintiffs and removed from the privilege log. KM Defendants, however, refused to produce the
24 two documents that are the subject of this motion. KM Defendants produced a combined
25 amended privilege log on October 9, 2007, and a second amended privilege log on October 18,
26 2007, reflecting those documents which they continued to withhold after conferring with
27 Plaintiffs. Wasow Dec. ¶ 3.

28

On October 31, 2007, Plaintiffs confirmed telephonically that Defendants refused to produce documents 2 and 4.  Wasow Dec. ¶ 5.

### III.   ARGUMENT

**a.   There Is a Fiduciary Exception to the Attorney-Client Privilege.**

It is "well established" that an ERISA plan fiduciary may not assert the attorney-client privilege against plan participants with regard to matters of plan administration.  *See Geissal v. Moore Med. Group*, 192 F.R.D. 620, 624 (E.D. Mo. 2000) (collecting cases and citing *Mett* approvingly).  A plan fiduciary acts on behalf of the plan's participants and beneficiaries in seeking advice of counsel on matters relating to plan administration.  *See Washington-Baltimore Newspaper Guild v. Washington Star Co.*, 543 F. Supp. 906, 909 (D.D.C. 1982).  In such instances, the true client is the participant or beneficiary.  *United States v. Evans*, 796 F.2d 264, 265-66 (9th Cir. 1986).  In a sense, therefore, the fiduciary exception is not really an *exception* at all; rather, "it merely reflects the fact that, at least as to advice regarding plan administration, a trustee is not 'the real client' and thus never enjoyed the privilege in the first place."  *Mett*, 178 F.3d at 1063.[2]  Thus, a fiduciary seeking legal advice in matters of plan administration may not later claim attorney-client privilege as to that communication.

Under *Mett*, communications remain subject to the privilege if they implicate the fiduciary in a personal capacity.  178 F.3d at 1064.  In other words, if the fiduciaries obtain the advice of counsel to protect themselves from potential civil or criminal liability in either then-pending or anticipated litigation by plan participants (or the government), the advice is protected from disclosure to plan participants.  *Id*. at 1064-66.

Thus, to determine whether the communications at issue are subject to the fiduciary exception, a court must examine whether the communications addressed matters of plan administration, and whether the communications related to the potential personal liability of the fiduciaries.

---

[2] An alternate theory justifies the fiduciary exception to the attorney client privilege.  "[S]ome courts have held that the exception derives from an ERISA trustee's duty to disclose to plan beneficiaries all information regarding plan administration."  *Mett*, 178 F.3d at 1063.

    **b.**     **The Communications Requested by Plaintiffs Are Subject to the Fiduciary Exception to the Attorney-Client Privilege**.

Documents 2 and 4 fall within the fiduciary exception because they are communications by or to fiduciaries, relate to matters of plan administration – specifically, provision of information to valuators and participants – and do not relate to the personal liability of the fiduciaries.

    **i.**     **KM Defendants are Fiduciaries of the Plan.**

Document 2 was authored by Stephen Ferrari, the Vice President for Finance and CFO of Kelly-Moore Paint Co., Inc. Document 4 was received by Joseph Cristiano, who was the CEO of Kelly-Moore Paint Co. Kelly-Moore Paint Co. is a wholly-owned subsidiary of Defendant K-M Industries Holding Co., Inc ("KMH"). Mr. Cristiano and Mr. Ferrari were Plan fiduciaries by virtue of the fact that they were corporate executives who carried out functions of the entities named as the fiduciaries of the Plan – namely, the K-M entities.

As stated above, ERISA § 3(21)(A) defines a fiduciary as anyone having discretionary authority or control over the management or administration of the Plan. KMH identifies itself as the administrator of the Plan in the Summary Plan Description, and states that "[t]he Plan Administrator's duties may be delegated to the Plan Committee." Wasow Dec. Exh. 2 at 3. Further, the Summary Plan Description states that the Plan Committee has discretionary authority to construe the terms of the Plan and make determinations on eligibility for benefits. *Id*. Thus, the K-M entities are fiduciaries of the Plan to the extent that they acted as plan administrators. *See Cunha v. Ward Foods, Inc*., 804 F.2d 1418, 1432 (9th Cir. 1986) (stating that an employer assumes fiduciary status when it functions in its capacity as plan administrator, citing *Amato v. Western Union Int'l, Inc.*, 596 F. Supp. 963, 968 (S.D.N.Y. 1984)). *See also* Amended Answer of KM Defendants at ¶¶ 9, 11 (admitting that the K-M Defendants have, at relevant times, been named fiduciaries of the Plan). Further, corporate officers who carry out the functions of a committee or entity named as a plan fiduciary are themselves fiduciaries. *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1156 (9th Cir. 2000). *See also Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1459-61 (9th Cir. 1995) (same).

1   According to KM Defendants' descriptions of the documents, Ferrari and Cristiano were involved in providing information to the valuation expert, the ESOP participants, and the Trustee; as discussed further below, these are fiduciary functions.  Thus, Ferrari and Cristiano were corporate officers who carried out functions of the Plan fiduciary, and communications made or received by them are subject to the fiduciary exception.

### ii.   The Documents Pertain to Plan Administration.

Documents 2 and 4 relate to fiduciary matters: provision of information to ESOP valuators and Plan participants are fiduciary functions.  Although "matters of plan administration" has been used as a shorthand, the fiduciary exception as fully articulated requires disclosure of matters related to fiduciary functions.  As one court put it, "an employer acts as an ERISA fiduciary only in plan management or administration, not in the plan's design or amendment.  The employer's ability to invoke the attorney-client privilege to resist disclosure sought by plan beneficiaries turns on whether or not the communication concerned a matter as to which the employer owed a fiduciary obligation to the beneficiaries." *In re Long Island Lighting Co.*, 129 F.3d 268, 271 (2nd Cir. 1997).[3]

Document 2, by KM Defendants' own description, deals with a fiduciary function: provision of information to an ESOP evaluator.  A fiduciary has the duty to provide complete and accurate information to an expert retained to value a company prior to sale of some portion of

---

[3] Thus, attorney-client communications solely relating to "settlor" functions – such as the decisions to establish, amend, or terminate a plan – are outside of the fiduciary exception.  However, Defendants' description of documents 2 and 4 gives no indication that they relate to settlor functions.

Further, even if the documents at issue did relate in part to settlor functions, for a communication to remain confidential, it must relate *solely* to such non-fiduciary matters.  *See Long Island Lighting*, 129 F.3d at 273.  *Long Island Lighting* expressly distinguished between (a) cases in which "the administrator of the plan failed to show that any of the disputed documents 'relate *solely* to its nonfiduciary activities or the formation, amendment or termination of the pension plan,'" and (b) cases in which "disputed documents clearly relate to non-fiduciary matters *only*," holding that the former are *not* privileged and the latter are.  *Id.* (emphases added) (quoting *Everett v. USAir Group, Inc.*, 165 F.R.D. 1, 4 (D.D.C. 1995)).  Thus, communications that have a dual purpose—addressing fiduciary and non-fiduciary matters—are still subject to the fiduciary exception and not privileged.

that company to an ESOP. *See Howard v. Shay*, 100 F.3d 1484, 1489 (9th Cir. 1996) (holding that a fiduciary who engages in a self-dealing transaction must prove that he fulfilled his duty of care and loyalty and that the ESOP received adequate consideration and, to that end, must "(1) investigate the expert's qualifications, (2) provide the expert with complete and accurate information, and (3) make certain that reliance on the expert's advice is reasonably justified under the circumstances") (citations omitted). Thus, provision of information to a valuator is a "fiduciary function" related to plan management and/or administration, and communications related thereto are not covered by the attorney-client privilege.

Document 4 also relates to a fiduciary function: communication with Plan participants. KM Defendants' description of the document states that it contains information "sought in connection with providing information to ESOP participants." Communication with plan beneficiaries is a classic fiduciary function. *See, e.g.*, *Varity Corp. v. Howe*, 516 U.S. 489, 504 (1996) ("While it may be true that amending or terminating a plan (or a common-law trust) is beyond the power of a plan administrator (or trustee) – and, therefore, cannot be an act of plan 'management' or 'administration' – it does not follow that making statements about the likely future of the plan is also beyond the scope of plan administration."). *See also Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1071-72 (9th Cir. 2005) (holding that ERISA's fiduciary duty provisions require a plan administrator to provide information to participants beyond that expressly required in the statute's reporting and disclosure provisions). Thus, advice of counsel regarding information to be conveyed to participants is subject to the fiduciary exception to the attorney-client privilege.

### iii. The Requested Communications do not Relate to the Fiduciaries' Potential Personal Liability

Finally, the documents at issue are not privileged under *Mett*, because they do not relate to KM Defendants' *personal* liability. In *Mett*, the court observed that the documents at issue were prepared when participants "had begun asking difficult questions regarding the financial condition of the plans. Trouble was in the air." 178 F.3d at 1064. Further, "[t]he memoranda were plainly 'defensive on the trustees' part,' and aimed at advising the trustees 'how far they

were in peril.'" *Id*. (citations omitted). Here, in contrast, there was no existing or contemplated litigation by the beneficiaries against the fiduciaries in 1998, when the documents in question were prepared. Nothing in the description of the documents indicates that they contain advice about KM Defendants' personal civil or criminal liability; rather, the documents are about the extent of the company's insurance coverage for asbestos claims. Thus, they are not subject to the attorney-client privilege under *Mett*.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court compel KM Defendants to produce the disputed documents.

Dated: November 2, 2007

Respectfully submitted,

LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.

By: /s/
Daniel Feinberg
LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839

Peter Rukin – CA State Bar No. 178336
RUKIN HYLAND DORIA
& TINDALL LLP
100 Pine Street, Suite 725
San Francisco, CA
Telephone: (415) 421-1800
Facsimile: (415) 421-1700
Email: peterrukin@rhddlaw.com

*Attorneys for Plaintiffs
and the Proposed Class*