1  Daniel Feinberg – CA State Bar No. 135983
   Todd F. Jackson – CA State Bar No. 202598
2  Margaret E. Hasselman – CA State Bar No. 228529
   Nina R. Wasow – CA State Bar No. 242047
3  LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
   1330 Broadway, Suite 1800
4  Oakland, CA  94612
   Telephone: (510) 839-6824
5  Facsimile: (510) 839-7839
   Email: dfeinberg@lewisfeinberg.com
6  Email: tjackson@lewisfeinberg.com
   Email: mhasselman@lewisfeinberg.com
7  Email: nwasow@lewisfeinberg.com

8
   *Attorneys for Plaintiffs and the Proposed Class*
9  (Additional counsel listed within)

10

11              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
12             SAN FRANCISCO AND OAKLAND DIVISION

13
   THOMAS FERNANDEZ and LORA SMITH,      )  Case No. C-06-07339 MJJ
14 individually and on behalf of a class of all other )
   persons similarly situated,          )
15                                        )  **DECLARATION OF NINA WASOW**
                Plaintiffs,               )  **IN SUPPORT OF PLAINTIFFS'**
16                                        )  **MOTION TO COMPEL**
        vs.                               )  **PRODUCTION OF DOCUMENTS**
17                                        )
   K-M INDUSTRIES HOLDING CO., INC.;      )
18 K-M INDUSTRIES HOLDING CO., INC.       )
   ESOP PLAN COMMITTEE; WILLIAM E.        )
19 AND DESIREE B. MOORE REVOCABLE         )  DISCOVERY MATTER
   TRUST; TRUSTEES OF THE WILLIAM E.      )
20 AND DESIREE B. MOORE REVOCABLE         )
   TRUST; CIG ESOP PLAN COMMITTEE;        )  Date:   December 11, 2007
21 NORTH STAR TRUST COMPANY;              )  Time:  9:30 A.M.
   DESIREE B. MOORE REVOCABLE TRUST;      )  Courtroom: 11
22 WILLIAM E. MOORE MARITAL TRUST;        )  Judge: Hon. Martin J. Jenkins
   WILLIAM E. MOORE GENERATION-           )
23 SKIPPING TRUST; and DESIREE MOORE,     )
   BOTH IN HER INDIVIDUAL CAPACITY        )
24 AND AS TRUSTEE OF THE WILLIAM E.       )
   AND DESIREE B. MOORE REVOCABLE         )
25 TRUST'S SUCCESSOR TRUSTS NAMED         )
   ABOVE,                                 )
26                                        )
                Defendants.               )
27 _____)

28

PLAINTIFFS' MOTION TO COMPEL [CASE NO. C-06-07339 MJJ ]                    Page 1

1    1. I am a member in good standing of the State Bar of California and an attorney at

2    Lewis, Feinberg, Lee, Renaker & Jackson, P.C., which is co-counsel for Plaintiffs in this action.

3    I make this declaration of my personal knowledge, and if called as a witness I could and would

4    testify competently to the facts stated herein.

5    2. Defendants K-M Industries Holding Co., Inc.; K-M Industries Holding Co., Inc. ESOP

6    Plan Committee; and CIG ESOP Plan Committee ("KM Defendants") produced a privilege log

7    for documents responsive to Plaintiffs' document subpoena of the Menke Group, Inc. and

8    Sansome Street Appraisers on May 30, 2007. The KM Defendants produced an amended

9    privilege log for these documents on June 19, 2007. The KM Defendants produced a privilege

10   log for documents produced from the files of KMH and CIG on July 16, 2007. A first

11   supplemental privilege log was produced on July 25, 2007, and an amended first supplemental

12   privilege log was produced on July 26, 2007.

13   3. Counsel for Plaintiffs and the KM Defendants met to discuss each document on each

14   of the privilege logs on August 2, 2007, and August 9, 2007. Subsequent to those meetings,

15   many documents were produced to Plaintiffs and removed from the privilege log. KM

16   Defendants produced a combined amended privilege log on October 9, 2007, and a second

17   amended privilege log on October 18, 2007, reflecting those documents which they continued to

18   withhold after conferring with Plaintiffs.

19   4. Attached hereto as Exhibit 1 is a true and correct copy of the privilege log produced by

20   the KM Defendants on October 18, 2007.

21   5. On October 31, 2007, Plaintiffs confirmed telephonically that Defendants refused to

22   produce documents 2 and 4.

23   6. Attached hereto as Exhibit 2 is a true and correct copy of the K-M Industries Holding

24   Co., Inc. Employee Stock Ownership Plan Summary Plan Description, dated August 28, 2006.

25   I declare under penalty of perjury that the foregoing is true and correct. This declaration

26   was executed on November 2, 2007, at Oakland, California.

27                                    /s/
     _____

28                                    Nina Wasow

PLAINTIFFS' MOTION TO COMPEL [CASE NO. C-06-07339 MJJ ]

LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA  94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839

# Exhibit 1

al. v. K-M Industries Holding
Inc. et al
~C06-07339 MJJ

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

October 18, 2007
Page 1 of 17

| Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| KMH-CIG Privilege Log | 2 | Undated | Dan Stritmatter, Chief Financial Officer and Secretary of Kelly Moore | | | Handwritten notes | Attorney-Client | Notes of conversation with Mark Weisberg of Winston & Strawn, lawyers for KM, re DOL investigation | Kelly Moore |
| KMH-CIG Privilege Log | 6 | Undated | Margaret Sheneman - Lawyer, Winston & Strawn LLP | Kelly Moore | | Exhibit | Attorney-Client | Term Sheet for proposed asbestos settlement | CIG |
| KMH-CIG Privilege Log | 10 | Undated | Ed Mines - Vice President and Chief Financial Officer, CIG Ins. Coc. | | | Handwritten Notes | Attorney-Client | Notes of conversation with Forrest Lamminian of Lord Bissell Brook LLP, attorneys for CIG, re handling of drafts | CIG |
| KMH-CIG Privilege Log | 13 | Undated | Victor Alan - Corporate Counsel, Menke & Associates, Inc. | Edward Mines - CFO, CCIC | | Telephone Message Transcript | Attorney-Client | Upcoming contact with IRS re establishment of ESOP | CIG |
| KMH-CIG Privilege Log | 14 | Undated | Ed Mines - CFO, CCIC | Peter Cazzolla - President & CEO, CCIC | | E-Mail | Attorney-Client | Memo re conversation with Michael E. Pitts, Hannig Law Firm LLP, attorneys for KMPC, draft IRS Private Letter Ruling at formation of ESOP | CIG |
| KMH-CIG Privilege Log | 15 | 8/15/1996 | Cheryl Mills - Pillsbury Levinson & Mills | Joseph Cristiano - CFO, Kelly Moore Paint Co., Inc. | | Letter | Attorney-Client | Legal advice re Texas tort reform legislation re asbestos litigation | Kelly Moore |
| Amended 1st Supplemental KMH-CIG Privilege Log | 1 | 5/29/1997 | Cheryl Mills - Lawyer, Pillsbury, Levinson & Mills | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc.; Douglas Merrill - VP, Manufacturing - Kelly-Moore Paint Company, Inc.; Patrick McDonald - VP, Legal Human Resources & Loss Prevention - Kelly-Moore Paint Company, Inc. | | Letter | Attorney-Client | Planning for litigation meeting re asbestos litigation | Pillsbury Levinson LLP |
| KMH-CIG Privilege Log | 29 | 9/23/1998 | Ted Hannig - Lawyer, Hannig Law Firm LLP, attorneys for KMPC | Stephen Ferrari - VP Finance, Kelly Moore Paint Company, Inc. | Michael Pitts - Lawyer, Law Offices of Michael E. Pitts | Letter | Attorney-Client | Legal advice re FTC Notice requirements pertaining to ESOP's | Kelly Moore |
| KMH-CIG Privilege Log | 37 | 10/1/1998 | Victor Alann - Corporate Counsel, Law Offices of John D. Menke and Associates. | Stephen A. Ferrari - VP Finance Kelly Moore Paint Company, Inc. | | Letter draft | Attorney-Client | Draft of proposed K-M ESOP request to IRS for private letter ruling | Kelly Moore |

*Fernandes et al., v. K-M Industries Holding Company, Inc. et al.*
*Case No. C06-07339 MJJ*

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| Amended 1st Supplemental KMH-CIG Privilege Log | 2 | 10/1/1998 | Steve Ferrari - VP Finance, CFO, Kelly-Moore Paint Co., Inc. | | | Note to file | Attorney-Client | Note of communication with Kelly Cheryl Mills, attorney for Kelly Moore Paint Company re extent of insurance coverage for asbestos claims against Kelly Moore and effect on KMPC share prices; advice sought in connection with providing information to ESOP evaluator. | Kelly Moore |
| KMH-CIG Privilege Log | 12 | before 10/1/1998 | Ed Mines - Vice President and Chief Financial Officer, CIG Ins. Cos. | | | Handwritten Notes | Attorney-Client | Notes of conversation with Victor Alum - Corporate Counsel, Law Offices of John D. Menke & Associates re regulations governing ESOP formation | CIG |
| Amended 1st Supplemental KMH-CIG Privilege Log | 4 | 12/11/1998 | Cheryl Mills - Lawyer, Pillsbury, Levinson & Mills | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc. | | Letter with facsimile transmittal cover | Attorney-Client | Extent of insurance coverage for asbestos claims against Kelly Moore and effect on KMPC assets; information sought in connection with providing information to ESOP participants and ESOP Trustee. | Pillsbury Levinson LLP |
| KMH-CIG Privilege Log | 52 | 12/22/1998 | Michael Pitts - Lawyer, Hantig Law Firm LLP | Stephen Ferrari - K-M Industries Holding Co., Inc. | Victor Alam - Corporate Counsel, Law Offices of John D. Menke & Associates; Ted Hanig of the Hanig Law Firm LLP | Letter | Attorney-Client | Tax analysis re formation of California Capital Insurance Company and CCIC Employee Stock Ownership Plan | CIG |
| KMH-CIG Privilege Log | 53 | 12/28/1998 | Ed Mines - CFO, CCIC | Peter Cazzolla - President & CEO, CCIC | | Email | | REDACTION: Discussion of communication from Theresa Fitzgerald of LeBoeuf Lamb Greene & MacRae LLP; **Paragraph 2** re CIG ESOP Formation tax issue and **Paragraph 5** re: of analysis of tax issue by Michael Pitts of the Hanig Law Firm LLP | CIG |

*Fernandez et al. v. K-M Industries Holding*
*Company, Inc. et al.*
*Case No. C06-07339 MJJ*

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| KMH-CIG Privilege Log | 54 | 12/29/1998 | Michael Pitts - Lawyer, Hannig Law Firm LLP | Stephen Ferrari - VP Finance, K-M Industries Holding Co., Inc. | Victor Alam - Corporate Counsel, Law Offices of John D. Menke & Associates; Ted Hannig of the Hannig Law Firm LLP | Letter draft | Attorney-Client | Draft of letter providing legal advice and analysis of possible IRS Letter Ruling Re: California Capital Insurance Company | Kelly Moore |
| KMH-CIG Privilege Log | 57 | 12/29/1998 | Michael Pitts - Lawyer, Hannig Law Firm LLP | Stephen Ferrari - VP Finance, K-M Industries Holding Co., Inc. | Victor Alam - Corporate Counsel, Law Offices of John D. Menke & Associates; Ted Hannig of the Hannig Law Firm LLP | Letter draft | Attorney-Client | Draft of letter providing legal advice and analysis of possible IRS Letter Ruling Re: California Capital Insurance Company with hand-written notes re IRS review | CIG |
| KMH-CIG Privilege Log | 66 | 2/9/1999 | Michael Pitts - Lawyer, Law Office Of Michael E. Pitts | Victor Alam - Law Offices of John D. Menke & Associates; Stephen Ferrari - VP Finance, Kelly Moore Paint Co., Inc.; Edward Mines - CFO, CCIC | | Facsimile Transmission cover sheet | Attorney-Client | Cover sheet for Preliminary Draft of IRS Letter Ruling with advice re how it would be used | CIG |
| KMH-CIG Privilege Log | 67 | 2/9/1999 | Michael Pitts - Lawyer, Law Office Of Michael E. Pitts | Victor Alam - Law Offices of John D. Menke & Associates; Stephen Ferrari - VP Finance, Kelly Moore Paint Co., Inc.; Edward Mines - CFO, CCIC | | Facsimile Transmission cover sheet | Attorney-Client | Cover sheet for Preliminary Draft of IRS Letter Ruling with advice re how it would be used | CIG |
| KMH-CIG Privilege Log | 68 | 2/9/1999 | Michael Pitts - Lawyer, Law Office Of Michael E. Pitts | Victor Alam - Law Offices of John D. Menke & Associates; Stephen Ferrari - VP Finance, Kelly Moore Paint Co., Inc.; Edward Mines - CFO, CCIC | | Facsimile Transmission cover sheet | Attorney-Client | Cover sheet for Preliminary Draft of IRS Letter Ruling with advice re how it would be used | CIG |
| KMH-CIG Privilege Log | 70 | 2/25/1999 | Michael E. Pitts - Lawyer, Law Office of Michael E. Pitts | Stephen Ferrari - VP Finance, Kelly Moore Paint Company, Inc. | | Facsimile cover sheet with attached letter draft | Attorney-Client | Revised Draft of letter to IRS requesting private letter ruling re California Capital Insurance Company | Kelly Moore |
| KMH-CIG Privilege Log | 71 | 2/25/1999 | Michael E. Pitts - Lawyer, Law Office of Michael E. Pitts | Peter Cazzolla - President & CEO, CCIC; Edward Mines - CFO, CCIC | | Facsimile cover sheet with attached letter draft | Attorney-Client | Revised Draft of letter to IRS requesting private letter ruling re California Capital Insurance Company | CIG |
| KMH-CIG Privilege Log | 73 | 3/XX/99 | Michael E. Pitts - Lawyer, Law Office of Michael E. Pitts (no signature line or letterhead) | IRS - Associate Chief Counsel | | Letter draft | Attorney-Client | Draft of letter to IRS requesting private letter ruling re California Capital Insurance Company | Kelly Moore |
| Amended 1st Supplemental KMH-CIG Privilege Log | 5 | 6/4/1999 | Cheryl Mills - Lawyer, Mills & Larson | Jean Boehm - Employee, Kelly-Moore Paint Company, Inc. | | Letter with attachment | Attorney-Client | Handling new asbestos liability cases and list of asbestos counsel representing Kelly Moore | Pillsbury Levinson LLP |

October 18, 2007
Page 4 of 17

Fernandez et al., v. K-M Industries Holding Company, Inc. et al.
Case No. C06-07339 MJJ

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| KMH-CIG Privilege Log | 92 | 7/28/1999 | Ed Mines - Vice President and Chief Financial Officer, CIG Ins. Coc. | | | Handwritten Notes | Attorney-Client | Notes of conference with Theresa Fitzgerald of LeBoeuf Lamb Greene & MacRae LLP, attorneys for CIG, re duties with respect to disclosures to Dept. of Insurance | CIG |
| KMH-CIG Privilege Log | 120 | 9/12/2000 | Stephen Ferrari - VP Finance, K-M Industries Holding Co., Inc. | Victor Alam - Corporate Counsel, Law Offices of John D. Menke & Associates | | Email | Attorney-Client | REDACTION: Reasons for amendments to K-M Industries Holding Co., Inc. ESOP plan | Kelly Moore |
| KMH-CIG Privilege Log | 122 | 10/26/2000 | Ed Mines - Vice President and Chief Financial Officer, CIG Ins. Coc. | | | Handwritten Note | Attorney-Client | Notes of conversation with John Menke, - Law Offices of John D. Menke & Associates re possible amendments to ESOP plan | CIG |
| Amended 1st Supplemental KMH-CIG Privilege Log | 9 | 11/22/2000 | Brenda Smith - Paralegal, Page, Mannino, Peresich & McDermott | Cheryl Mills - Lawyer, Mills & Larson | | Letter with attachment | Attorney-Client | Cover letter attaching spreadsheet showing litigation payments and accounts receivable | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 10 | 11/22/2000 | Kay Andrews - Lawyer, Brown McCarroll & Oaks Hartline LLP | Cheryl Mills - Lawyer, Mills & Larson | | Facsimile transmittal with attachments | Attorney-Client | Spreadsheets showing summary of unpaid invoices and summary of unpaid settlements | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 11 | 11/27/2000 | Sulzer Williams LLC | Cheryl Mills - Lawyer, Mills & Larson | | Letter | Attorney-Client | Review of attorneys fees and costs due and payable on asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 12 | 12/7/2000 | Richard S. Vale - Lawyer, Blue Williams LLP | Cheryl Mills - Lawyer, Mills & Larson | Richard P. Sulzer - Lawyer - Sulzer Williams LLC | Letter | Attorney-Client | Request for payment of attorneys fees and costs due and payable on asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 13 | 12/21/2000 | Cheryl Mills - Lawyer, Mills & Larson | Robert Thackson - Lawyer, Jenkens & Gilchrist | | E-mail | Attorney-Client | Transfer of cases and coverage issues | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 14 | 12/28/2000 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Cheryl Mills - Lawyer, Mills & Larson | | Letter with facsimile transmission cover | Attorney-Client | Kelly-Moore Coverage Issues and issues re defense under policy with CAN | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 15 | 12/29/2000 | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | | Letter | Attorney-Client | Upcoming discussions with insurers re coverage and defense | Pillsbury Levinson LLP |

Fernandez et al. v. K-M Industries Holding Company, Inc. et al.,
Case No. C06-07339 MLJ

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| Amended 1st Supplemental KMH-CIG Privilege Log | 16 | 1/10/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Cheryl Mills - Lawyer, Mills & Larson | | E-mail | Attorney-Client | Update on specific coverage and defense issues in asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 17 | 2/25/2001 | Cheryl Mills - Lawyer, Mills & Larson | Kyle Mansfield - Lawyer, Foley & Mansfield, P.L.L.P. | | E-mail string | Attorney-Client | Further discussion of problems with costs of defense and payment to attorneys in asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 18 | 3/6/2001 | Joann M. Piccardo - Paralegal to Philip Pillsbury, Pillsbury Levinson LLP | Cheryl Mills - Lawyer, Mills & Larson | | Facsimile transmittal with attachments | Attorney-Client | Planning for responses to new asbestos cases and arranging for defense/coverage | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 19 | 3/13/2001 | Cheryl Mills - Lawyer, Mills & Larson | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | | Letter | Attorney-Client | Report on meeting with counsel for plaintiffs in asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 20 | 3/15/2001 | Cheryl Mills - Lawyer, Mills & Larson | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joann M. Piccardo - Paralegal to Philip Pillsbury, Pillsbury Levinson LLP | E-mail string | Attorney-Client | Arrangements for litigation meeting and planning for mediation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 21 | 3/15/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Cheryl Mills - Lawyer, Mills & Larson | Jon Pendleton - Lawyer, Pillsbury Levinson LLP; Joann M. Piccardo - Paralegal to Philip Pillsbury, Pillsbury Levinson LLP | E-mail | Attorney-Client | Draft of demand on insurers regarding funding litigation settlements | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 22 | 3/19/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client | Asbestos litigation, coverage, and defense of claims | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 23 | 3/26/2001 | Jon Pendleton - Lawyer, Pillsbury Levinson LLP | Lisa Ramon - Legal Staff, Pillsbury Levinson LLP | | E-mail | Attorney-Client | Litigation counsel payments and funding litigation settlements | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 24 | 3/30/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Cheryl Mills - Lawyer, Mills & Larson | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Letter | Attorney-Client | Potential coverage litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 25 | 4/16/2001 | Cheryl Mills - Lawyer, Mills & Larson | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP; Jon Pendleton - Lawyer, Pillsbury Levinson LLP | | E-mail | Attorney-Client | Forwarding e-mail string with asbestos counsel for Kelly Moore re overdue invoices | Pillsbury Levinson LLP |

October 18, 2007
Page 6 of 17

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

Fernandez et al. v. K-M Industries Holding
Company, Inc. et al.
Case No. C06-07339 MJJ

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| Amended 1st Supplemental KMH-CIG Privilege Log | 26 | 4/25/2001 | Cheryl Mills - Lawyer, Mills & Larson | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | | Letter | Attorney-Client | Status of asbestos litigation | Pillsbury Levinson LLP |
| KMH-CIG Privilege Log | 126 | 4/26/2001 | Cheryl Mills - Lawyer, Mills & Larson | Stephen Ferrari - VP Finance, Kelly Moore Paint Company, Inc. | | Facsimile transmittal with attached draft of release | Attorney-Client | Proposed settlement with insurance company related to asbestos litigation | Kelly Moore |
| KMH-CIG Privilege Log | 127 | 4/30/2001 | Arlen Lombardi - Executive Assistant to Dan Stritmatter, Kelly Moore Paint Company, Inc. | Cheryl Mills - Lawyer, Mills & Larson | | Facsimile transmittal with attached letter re expert | Attorney-Client | Letter from company counsel re payment of asbestos expert witness fees | Kelly Moore |
| Amended 1st Supplemental KMH-CIG Privilege Log | 27 | 5/15/2001 | Jonathan Pendleton - Lawyer, Pillsbury Levinson LLP | Cheryl Mills - Lawyer, Mills & Larson; Philip Pillsbury - Lawyer, Pillsbury, Levinson | | Memorandum | Attorney-Client; attorney-work product | Preparation for federal litigation requirements including Rule 26 requirements and review of Kelly Moore claims | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 28 | 5/17/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client; attorney-work product | Status of federal litigation and coverage analysis re asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 29 | 6/5/2001 | Cheryl Mills - Lawyer, Mills & Larson | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP; John Pendleton - Lawyer, Pillsbury Levinson LLP | | Letter with attachments | Attorney-Client for cover letter, none for attachments | REDACTION: Information on insurance coverage and existence of certain policies of insurance | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 30 | 7/5/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client; attorney-work product | Status of coverage litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 31 | 7/25/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client; attorney-work product | Status of coverage litigation | Pillsbury Levinson LLP |

*Fernandez et al., v. K-M Industries Holding Company, Inc. et al.*
*Case No. C06-07339 MJJ*

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

October 18, 2007
Page 7 of 17

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| Amended 1st Supplemental KMH-CIG Privilege Log | 32 | 8/15/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter with facsimile transmittal cover | Attorney-Client; attorney-work product | Status of coverage litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 33 | 9/5/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter with facsimile transmittal cover | Attorney-Client; attorney-work product | Status of coverage litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 34 | 9/6/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client; attorney-work product | Status of coverage litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 35 | 9/7/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Steve Ferrari - VP Finance, CFO, Kelly-Moore Paint Co., Inc. | | Letter with facsimile transmittal cover | Attorney-Client | Evaluation of insurance coverage | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 36 | 9/14/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Cheryl Mills - Lawyer, Mills & Larson | | Letter with attachments | Attorney-Client | Status of policy limits and indemnity agreement related to asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 37 | 9/25/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client | Status of coverage litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 38 | 9/28/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter with facsimile transmittal cover | Attorney-Client | Report on deposition and status of asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 39 | 10/5/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client | Status of asbestos litigation and issues related to appeals bond | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 40 | 10/17/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client | Status of mediation, coverage litigation, bond issues, and asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 41 | 10/23/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson; David Goodwin - Lawyer, Heller Ehrman White & McAuliffe | Letter | Attorney-Client | Status of coverage litigation | Pillsbury Levinson LLP |

*Fernandez et al. v. K-M Industries Holding*
*Company, Inc. et al.*
*Case No. C06-07339 MJJ*

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| Amended 1st Supplemental KMH-CIG Privilege Log | 42 | 10/30/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter with attachments | Attorney-Client as to all but first attachment | REDACTIONS: Pages 1-2, 6-9: Status of issues related to appeals bond, potential exposure and coverage issues | Pillsbury Levinson LL? |
| Amended 1st Supplemental KMH-CIG Privilege Log | 43 | 10/31/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter with attachments | Attorney-Client | Status of coverage litigation, asbestos litigation, and bonding issues | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 44 | 11/2/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter with attachment | Attorney-Client | Settlement discussions re coverage litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 45 | 11/5/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client | Status of bonding issue in asbestos litigation and recommendations | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 46 | 11/9/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter with attachment | Attorney-Client | Analysis and recommendations re exposure to asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 47 | 11/14/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client | Status of coverage litigation and asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 48 | 12/3/2001 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client | Status of coverage litigation and asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 49 | 12/14/2001 | Robert J. Werner - Lawyer, Brown McCarroll LLP | Cheryl Mills - Lawyer, Mills & Larson | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc; Philip Pillsbury - Lawyer, Pillsbury Levinson LLP; [i]cc. Todd Wade - Lawyer, Brown McCarroll & Oaks Hartline LLP; Kay Andrews - Lawyer, Brown McCarroll & Oaks Hartline LLP; Tori Levine - Lawyer, Lawyer, Brown McCarroll & Oaks Hartline LLP; Thad Holt - Director of Administration, Brown McCarroll & Oaks Hartline LLP. | Letter with facsimile transmittal cover and attachments | Attorney-Client | Unpaid invoices and payment for defense of asbestos litigation | |

*Fernandez et al. v. K-M Industries Holding Company, Inc. et al.*
*Case No. C06-07339 MJJ*

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| Amended 1st Supplemental KMH-CIG Privilege Log | 50 | 1/7/2002 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client | Status of coverage litigation and asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 51 | 1/29/2002 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc. | Cheryl Mills - Lawyer, Mills & Larson; David Goodwin - Lawyer, Heller Ehrman White & McAuliffe; Jon Pendleton - Lawyer, Pillsbury Levinson LLP | Letter | Attorney-Client | Status of coverage litigation and asbestos litigation | Pillsbury Levinson LLP |
| KMH-CIG Privilege Log | 130 | 2/12/2002 | Kirkland & Ellis, Lawyers | Kelly Moore Paint Co., Inc. | | Power Point presentation | Attorney-Client | REDACTIONS: Pages 1-58 and Pages 71-95; Strategic Alternatives for Kelly-Moore re asbestos litigation and bankruptcy | Kelly Moore |
| Amended 1st Supplemental KMH-CIG Privilege Log | 52 | 4/5/2002 | Arnold Levinson - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson; Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Letter with attachment | Attorney-Client | Proposed fee agreement re asbestos-related litigation | Pillsbury Levinson LLP |
| KMH-CIG Privilege Log | 131 | 4/12/2002 | Cheryl Mills - Lawyer, Mills & Larson | Stephen A. Ferrari - VP Finance Kelly Moore Paint Company, Inc. | | Letter | Attorney-Client | Communication from counsel re outstanding asbestos expert witness fees | Kelly Moore |
| Amended 1st Supplemental KMH-CIG Privilege Log | 53 | 4/18/2002 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter with attachment | Attorney-Client | Proposed fee agreement re asbestos-related litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 54 | 4/23/2002 | Jonathon Pendleton - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Philip Pillsbury; Cheryl Mills - Lawyer, Mills & Larson; David B.Goodwin - Lawyer, Heller Ehrman White & McAuliffe; Michael S. Greenberg - Lawyer, Heller Ehrman White & McAuliffe | Letter | Attorney-Client | Status of coverage litigation | Pillsbury Levinson LLP |

*Fernandez et al. v. K-M Industries Holding Company, Inc. et al.*
*Case No. C06-07339 MJJ*

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| Amended 1st Supplemental KMH-CIG Privilege Log | 55 | 5/31/2002 | Cheryl Mills - Lawyer, Mills & Larson | William Mills - Lawyer, Porter Harper & Mills; Frank Poff - Lawyer, Crisp, Boye & Poff; Gary Sharp - Lawyer, Foley & Mansfield; Peter F. Jones - Lawyer, Hall & Evans, J.LC; M. Stephen Smith - Lawyer, Rumberger, Kirk & Caldwell; H. Lane Young - Lawyer, Hawkins & Parnell; Robert J. Brummond - Lawyer,Foley & Mansfield; Kevin Night - Lawyer, Ice Miller Donadio & Ryan; Steve Foley - Lawyer,Foley & Mansfield; Richard P. Sulzer - Lawyer,Sulzer & Williams, LLC; Richard B. Kirby - Lawyer, Lecomte Emanuelson Motejunas & Doyle; Gary D. Sharp - Lawyer, Foley & Mansfield PLLP; Kyle Mansfield - Lawyer, Foley & Mansfield; Ronald G. Peresich - Lawyer, Page Mannino peresich Dickinson & McDermott; Robert J. Brummond -Lawyer, Foley & Mansfield; John D. Stephenson - Lawyer, Jardine Stephenson Blewett & Weaver; Tom Mack - Lawyer, Miller Stratverg & Torgerson; Julie Evans -Lawyer, WilsonElser Moskowitz Edelman & Dicker LLP; Reed Fountain - Lawyer, Young Moore & Henderson; Paul Ziegler - Lawyer, McNeal Schick Archibald & Biro; Steven V. Rizzo - Lawyer, Reed Smith LLP; Andrew J. Revelise - Lawyer, Reed Smith LLP ; Thomas F. Dougall - Lawyer, Law Office of Thomas S. Dougall; Kay Andrews & Todd Wade - Lawyers, Brown McCarroll; Gary D. Elliston - Lawyer, DeFRay & Elliston LLP | | Letter | Attorney-Client | Request for Litigation information from counsel for Kelly Moore in asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 56 | 5/31/2002 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc | Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client | Status of coverage litigation | Pillsbury Levinson LLP |

*Fernandez, et al., v. K-M Industries Holding Company, Inc., et al.*
*Case No. C06-07339 MJJ*

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| Amended 1st Supplemental KMH-CIG Privilege Log | 57 | 6/14/2002 | Cheryl Mills - Lawyer, Mills & Larson | William Mills - Lawyer, Porter Harper & Mills; Frank Poff - Lawyer, Crisp, Boye & Poff; Gary Sharp - Lawyer, Foley & Mansfield; Peter F. Jones - Lawyer, Hall & Evans, LLC; M. Stephen Smith - Lawyer, Rumberger, Kirk & Caldwell; H. Lane Young - Lawyer, Hawkins & Parnell; Robert J. Brummond - Lawyer, Foley & Mansfield; Kevin Night - Lawyer, Ice Miller Donadio & Ryan; Steve Foley - Lawyer, Foley & Mansfield; Richard P. Sulzer - Lawyer, Sulzer & Williams, LLC; Richard B. Kirby - Lawyer, Lecomte Emanuelson Motejunas & Doyle; Gary D. Shrp - Lawyer, Foley & Mansfield PLLP; Kyle Mansfield - Lawyer, Foley & Mansfield; Ronald G. Peresich - Lawyer, Page Mannino peresich Dickinson & McDermott; Robert J. Brummond -Lawyer, Foley & Mansfield; John D. Stephenson - Lawyer, Jardine Stephenson Blewett & Weaver; Tom Mack - Lawyer, Miller Stratverg & Torgerson; Julie Evans -Lawyer, WilsonElser Moskowitz Edelman & Dicker LLP; Reed Fountain - Lawyer, Young Moore & Henderson; Paul Ziegler - Lawyer, McNeal Schick Archibald & Biro; Steven V. Rizzo - Lawyer, Reed Smith LLP;Andrew J. Revelise - Lawyer, Reed Smith LLP ; Thomas F. Dougall - Lawyer, Law Office of Thomas S. Dougall; Kay Andrews & Todd Wade - Lawyers, Brown McCarroll; Gary D. Elliston - Lawyer, DeHay & Elliston LLP | | Letter | Attorney-Client | Request for Litigation information from counsel for Kelly Moore in asbestos litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 58 | 7/17/2002 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Mr. And Mrs. William E. Moore - Shareholders and Directors of Kelly Moore Paint Company, Inc. | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc; Cheryl Mills - Lawyer, Mills & Larson | Letter | Attorney-Client | Status of coverage litigation and asbestos litigation; received information as directors of K-M Industries Holding Co., Inc. | Pillsbury Levinson LLP |

*Fernandez et al. v. K-M Industries Holding Company, Inc. et al.*
*Case No. C06-07339 MJJ*

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

| Original Log Doc# | | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| Amended 1st Supplemental KMH-CIG Privilege Log | 59 | 7/29/2002 | Joanne Piccardo - Paralegal to Philip Pillsbury, Pillsbury Levinson LLP | Mr. And Mrs. William E. Moore - Shareholders and Directors of Kelly Moore Paint Company, Inc. | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc; Cheryl Mills - Lawyer, Mills & Larson | facsimile with attachments | Attorney-Client | Summary of meeting with counsel re asbestos litigation planning; received information as directors of K M Industries Holding Co., Inc. | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 60 | 8/7/2002 | Jane Heath - Legal Assistant to Cheryl Mills, Mills & Larson | William Mills - Lawyer, Porter Harper & Mills; Frank Poff - Lawyer, Crisp, Boye & Poff; Gary Sharp - Lawyer, Foley & Mansfield; Peter F. Jones - Lawyer, Hall & Evans, LLC; M. Stephen Smith - Lawyer, Rumberger, Kirk & Caldwell; H. Lane Young - Lawyer, Hawkins & Parnell; Robert J. Brummond - Lawyer,Foley & Mansfield; Kevin Night - Lawyer, Ice Miller Donadio & Ryan; Steve Foley - Lawyer,Foley & Mansfield; Richard P. Sulzer - Lawyer,Sulzer & Williams, LLC; Richard B. Kirby - Lawyer, Lecomte Emanuelson Motejunas & Doyle; Gary D. Sharp - Lawyer, Foley & Mansfield PLLP; Kyle Mansfield - Lawyer, Foley & Mansfield; Ronald G. Peresich - Lawyer, Page Mannino peresich Dickinson & McDermott; Robert J. Brummond -Lawyer, Foley & Mansfield; John D. Stephenson - Lawyer, Jardine Stephenson Blewett & Weaver; Tom Mack - Lawyer, Miller Stratverg & Torgerson; Julie Evans -Lawyer, WilsonElser Moskowitz Edelman & Dicker LLP; Reed Fountain - Lawyer, Young Moore & Henderson; Paul Ziegler - Lawyer, McNeal Schick Archibald & Biro; Steven V. Rizzo - Lawyer, Reed Smith LLP; Andrew J. Revelise - Lawyer, Reed Smith LLP ; Thomas F. Dougall - Lawyer, Law Office of Thomas S. Dougall; Kay Andrews & Todd Wade - Lawyers, Brown McCarroll; Gary D. Elliston - Lawyer, DeHay & Elliston LLP | | Letter with attachments | Attorney-Client | Request for Litigation information directed to asbestos counsel for Kelly Moore | Pillsbury Levinson LLP |

*Fernandez et al. v. K-M Industries Holding Company, Inc. et al.*
*Case No. C06-07339 MJJ*

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

| Original Log | Doc# | Date | Author | Recipient | cc | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|
| Amended 1st Supplemental KMH-CIG Privilege Log | 61 | 8/15/2002 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Mr. And Mrs. William E. Moore - Shareholders and Directors of Kelly Moore Paint Company, Inc. | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc; Cheryl Mills - Lawyer, Mills & Larson | Attorney-Client | Status report on coverage litigation and asbestos-related litigation; received information as directors of K M Industries Holding Co., Inc. | Pillsbury Levinson LLP |
| KMH-CIG Privilege Log | 135 | 9/11/2002 | Jane Heath - Legal Assistant to Cheryl Mills, Mills & Larson | Stephen A. Ferrari - VP Finance Kelly Moore Paint Company, Inc. | | Attorney-Client | Kelly Moore Asbestos Legal Bills | Kelly Moore |
| Amended 1st Supplemental KMH-CIG Privilege Log | 62 | 9/30/2002 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Mr. And Mrs. William E. Moore - Shareholders and Directors of Kelly Moore Paint Company, Inc. | Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc; Cheryl Mills - Lawyer, Mills & Larson | Attorney-Client | Status report on coverage litigation and asbestos-related litigation; received information as directors of K M Industries Holding Co., Inc. | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 63 | 10/10/2002 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Steven Ferrari - VP Finance, CFO, Kelly Moore Paint Co., Inc. | Mr. And Mrs. William E. Moore - Owners of Kelly Moore Paint Company, Inc.; Herb Giffins;Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc; Michael S. Greenberg- Lawyer, Heller Ehrman White & McAuliffe; Cheryl Mills - Lawyer, Mills & Larson | Attorney-Client | Status report on coverage litigation; received information as directors of K M Industries Holding Co., Inc. | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 64 | 11/1/2002 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Steven Ferrari - VP Finance, CFO, Kelly Moore Paint Co., Inc. | Mr. And Mrs. William Moore; Herb Giffins - President, Kelly Moore Paint Co., Inc.;Joseph Cristiano - CEO - Kelly-Moore Paint Company, Inc; Michael S. Greenberg- Lawyer, Heller Ehrman White & McAuliffe; Cheryl Mills - Lawyer, Mills & Larson | Attorney-Client | Status of settlement discussions re asbestos litigation; received information as directors of K M Industries Holding Co., Inc. | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 65 | 11/8/2002 | Jane Heath - Legal Assistant to Cheryl Mills, Mills & Larson | Counsel | | Attorney-Client | Directions regarding litigation reports and billing to asbestos counsel | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 66 | 12/4/2002 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Mr. And Mrs. William E. Moore - Shareholders and Directors of Kelly Moore Paint Company, Inc. | Herb Giffins - President, Kelly Moore Paint Co, Inc; Stephen A. Ferrari - VP Finance, CFO, Kelly Moore Paint Co., Inc.; Cheryl Mills - Lawyer, Mills & Larson; Jonathon D. Pendleton - Lawyer, Pillsbury Levinson LLP | Attorney-Client | Status report on coverage litigation and asbestos-related litigation; received information as directors of K M Industries Holding Co., Inc. | Pillsbury Levinson LLP |

*Fernandez et al. v. K-M Industries Holding Company, Inc. et al.*
*Case No. C06-07339 MJJ*

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| Amended 1st Supplemental KMH-CIG Privilege Log | 67 | 2/17/2003 | Patrick N. Haines - Lawyer, The Lanier Law Firm | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | | Memorandum | Attorney-Client; Attorney Work-Product | Status report re Union Carbide litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 68 | 2/24/2003 | Ana N. Damonte - Lawyer, Pillsbury Winthrop LLP | Andrea Wirum - Lawyer, Pillsbury Winthrop LLP; Nathaniel Cartmell - Lawyer, Pillsbury Winthrop LLP; Gregor Baer - Lawyer, Pillsbury Winthrop LLP | | Memorandum | Attorney-Client | Potential Reorganization and analysis of company liability | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 69 | 2/26/2003 | Vedica S. Puri, Lawyer, Pillsbury Levinson LLP | Pillsbury Levinson K-M File | | Memorandum | Attorney-Client; Attorney Work-Product | Report on status of asbestos litigation reform | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 71 | 2/28/2003 | Matthew Africa - Lawyer, Pillsbury Winthrop LLP | Andrea Wirum - Lawyer, Pillsbury Winthrop LLP; Nathaniel Cartmell - Lawyer, Pillsbury Winthrop LLP; Gregor Baer - Lawyer, Pillsbury Winthrop LLP | | Memorandum | Attorney-Client; Attorney Work-Product | Duties of directors and reorganization issues | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 72 | 2/28/2003 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Board of Directors - Kelly Moore Paint Co., Inc. | | Report | Attorney-Client; Attorney Work-Product | Summary report on pending litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 73 | 2/28/2003 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Board of Directors - Kelly Moore Paint Co., Inc. | | Draft report with handwritten notes | Attorney-Client; Attorney Work-Product | Draft summary report on pending litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 74 | 3/19/2003 | Finance Department, K-Moore Paint Co., Inc. | Pillsbury Levinson LLP | | Draft report with handwritten notes | Attorney-Client | Draft Audit Report | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 75 | 5/7/2003 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Board of Directors - Kelly Moore Paint Co., Inc. | | Report with attachments | Attorney-Client; Attorney Work-Product | Summary report on pending litigation | Pillsbury Levinson LLP |
| Amended 1st Supplemental KMH-CIG Privilege Log | 76 | 5/7/2003 | Philip Pillsbury - Lawyer, Pillsbury Levinson LLP | Board of Directors - Kelly Moore Paint Co., Inc. | | Draft report | Attorney-Client; Attorney Work-Product | Summary report on pending litigation | Pillsbury Levinson LLP |

Fernandez et al. v. K-M Industries Holding
Company, Inc. et al.
Case No. C06-07339 MJJ

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| KMH-CIG Privilege Log | 1 | 2005 | Dan Stritmatter, Chief Financial Officer and Secretary of Kelly Moore | | | Handwritten Notes | Attorney-Client | Notes of conversation with Mark Weisberg and Michael Falk of Winston & Strawn, lawyers for KM, re Checklist of what needed to be done re DOL audit | Kelly Moore |
| KMH-CIG Privilege Log | 169 | 2/2/2005 | Ed Mines - Vice President and Chief Financial Officer, CIG Ins. Coo. | | | Handwritten Notes | Attorney-Client | Notes re: conversation with Forrest Lamminan of Lord Bissell Brook LLP, attorneys for CIG, re accounting issues unrelated to ESOP | CIG |
| KMH-CIG Privilege Log | 170 | 2/3/2005 | Ed Mines - Vice President and Chief Financial Officer, CIG Ins. Coo. | | | Handwritten Notes | Attorney-Client | Notes re: conversation with Forrest Lamminan and Norris Clark of Lord Bissell Brook LLP, attorneys for CIG, re CIG accounting practices and Dept of Insurance requirements | CIG |
| KMH-CIG Privilege Log | 9 | 2/7/05 (approx) | Ed Mines - Vice President and Chief Financial Officer, CIG Ins. Coo. | | | Handwritten Notes | Attorney-Client | Notes of conversation with Norris Clark of Lord Bissell Brook LLP, attorneys for CIG, re Dept of Insurance requirements | CIG |
| KMH-CIG Privilege Log | 172 | 2/7/2005 | Ed Mines - Vice President and Chief Financial Officer, CIG Ins. Coo. | | | Handwritten Notes | Attorney-Client | Notes re conversation with four lawyers (Forrest Lamminan, Norris Clark, Timothy Brink, and Carey Barney)at Lord Bissell Brook LLP, CIG's attorneys, re loan payments and Dept of Insurance requirements | CIG |

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

*Fernandez et al. v. K-M Industries Holding Company, Inc. et al.*
*Case No. C06-07339 MJJ*

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| KMH-CIG Privilege Log | 183 | 2/24/2005 | Pat Murphy - Lawyer, Winston & Strawn LLP | Bruce Bennett - Lawyer, Hennigan, Bennett & Dorman LLP; Herb Giffins - President, Kelly Moore Paint Co., Inc...; Christine McCall - Member of the Board of Directors of K-M Industries Holding Co. Inc. and Kelly Moore Paint Co., Inc.; Bill Moore - Member of the Board of Directors of Kelly Moore Paint Co., Inc.; D. Moore - Member of the Board of Directors of Kelly Moore Paint Co., Inc.; Dan Stritmatter - CFO, Kelly Moore Paint Co., Inc. | Robert Julian - Lawyer, Winston & Strawn LLP; Peggy Sheneman - Lawyer, Winston & Strawn LLP | Memorandum | Attorney-Client | Proposed asbestos litigation settlement | CIG |
| KMH-CIG Privilege Log | 8 | before 3/18/05 | Ed Mines - Vice President and Chief Financial Officer, CIG Ins. Coc. | CIG | | Handwritten Notes | Attorney-Client | Notes of telephone conversation with Emily Bateman, Forrest Lammiman and Laurence Hansen of Lord Bissell Brook LLP; attorneys for CIG, re loan payments | CIG |
| KMH-CIG Privilege Log | 217 | 5/5/2005 | Timothy Brink - Lawyer, Lord Bissell Brook LLP | Peter Cazzolla - President & CEO, CCIC | Carey Barney - Lawyer, Lord Bissell Brook LLP, Robert Erickson - CFO, CCIC; Forrest Lammiman - Lawyer, Lord Bissell Brook LLP | Letter | Attorney-Client | K-M draft asbestos settlement plan | CIG |
| KMH-CIG Privilege Log | 242 | 6/7/2005 | Emily Bateman - Lawyer Lord Bissell Brook LLP | Forrest Lammiman - Lawyer, Lord Bissell Brook LLP; Timothy Brink - Lawyer, Lord Bissell Brook LLP; Peter Cazzolla - President & CEO, CCIC; Bob Erickson - CFO, CCIC | Larry Hansen - Lawyer, Lord Bissell Brook LLP | Memorandum | Attorney-Client | Legal advice re: possible lawsuits involving CCIC; information received from company lawyers in recipients' capacity as corporate officers. | CIG |
| KMH-CIG Privilege Log | 243 | 6/7/2005 | Timothy Brink - Lawyer, Lord Bissell Brook LLP | Peter Cazzolla - President & CEO, CCIC; Bob Erickson - CFO, CCIC | | E-mail cover transmitting 6/7/05 memorandum to client | Attorney-Client | Legal advice re: possible lawsuits involving CCIC; information received from company lawyers in recipients' capacity as corporate officers. | CIG |
| KMH-CIG Privilege Log | 247 | 6/17/2005 | Peter Cazzolla - President & CEO, CCIC | Forrest Lammiman - Lawyer, Lord Bissell Brook LLP | | Email string | Attorney-Client | Tax Agreement and tax deductions related to asbestos losses | CIG |
| KMH-CIG Privilege Log | 251 | 6/22/2005 | Emily Bateman - Lawyer, Lord Bissell Brook LLP | Timothy Brink - Lawyer, Lord Bissell Brook LLP ; Forrest Lammiman - Lawyer, Lord Bissell Brook LLP; Peter Cazzolla - President & CEO, CCIC; Bob Erickson - CFO, CCIC | Laurence Hansen - Lawyer, Lord Bissell Brook LLP | Memorandum | Attorney-Client | Analysis and advice re: potential liability of CCIC | CIG |

Fernandez et al. v. K-M Industries Holding Company, Inc. et al.
Case No. C06-07339 MJJ

K-M Industries Holding Co., Inc.,
Combined Second Amended
PRIVILEGE LOG

| Original Log | Doc# | Date | Author | Recipient | cc | Document Type | Privilege | Re: | Location |
|---|---|---|---|---|---|---|---|---|---|
| KMH-CIG Privilege Log | 252 | 6/23/2005 | Forrest Lamminan - Lawyer, Lord Bissell Brook LLP | Peter Cazzolla - President & CEO, CCIC; Bob Erickson - CFO, CCIC | | E-Mail transmitting 6/22/05 memorandum to client | Attorney-Client | Analysis and advice re: potential liability of CCIC | CIG |
| KMH-CIG Privilege Log | 262 | 8/2/2005 | Emily Bateman - Lawyer, Lord Bissell Brook LLP | Timothy Brink - Lawyer, Lord Bissell Brook LLP ; Forrest Lamminan - Lawyer, Lord Bissell Brook LLP; Peter Cazzolla - President & CEO, CCIC; Bob Erickson - CFO, CCIC | Laurence Hansen - Lawyer, Lord Bissell Brook LLP | Memorandum | Attorney-Client | Analysis and advice re: legal obligations of company re: potential lawsuit against company | CIG |
| KMH-CIG Privilege Log | 263 | 8/3/2005 | Timothy Brink - Lawyer, Lord Bissell Brook LLP | Peter Cazzolla - President & CEO, CCIC; Bob Erickson - CFO, CCIC | | E-Mail transmitting 8/2/05 memorandum to client | Attorney-Client | Analysis and advice re: legal obligations of company re: potential lawsuit against company | CIG |
| KMH-CIG Privilege Log | 268 | 1/24/2006 | Forrest Lamminan - Lawyer, Lord Bissell Brook LLP | Peter Cazzolla - President & CEO, CCIC; Bob Erickson - CFO, CCIC; T. Scherff - VP, KMI Asbestos Claims Management, CIG Insurance | | E-Mail | Attorney-Client | Analysis of California Appellate Court decision and its effect on possible asbestos settlement | CIG |
| KMH-CIG Privilege Log | 269 | 2/7/2006 | Robert Julian - Lawyer, Winston & Strawn LLP | Peter Cazzolla - President & CEO, CCIC; Dan Strimatter - CFO, Kelly Moore Paint Co., Inc. | | E-Mail | Attorney-Client | Claims made in the Fernandez lawsuit | CIG |
| KMH-CIG Privilege Log | 274 | 2/8/2007 | Arleen Lombardi - Executive Assistant to Dan Strimatter, Kelly Moore Paint Company, Inc. | Bruce Bennett - Lawyer, Hennigan, Bennett & Dorman LLP | | Letter | Attorney-Client | Insurance information re: pending litigation | Kelly Moore |
| Amended 1st Supplemental KMH-CIG Privilege Log | 77 | 4/5/2007 | Cheryl Mills - Lawyer, Mills & Larson | Kelly Moore Paint Co., Inc. | | Chart | Attorney-Client; Attorney Work-Product | Time Line of events re: counsel activities pertaining to litigation | Pillsbury Levinson LLP |

# Exhibit 2

**K-M INDUSTRIES HOLDING CO., INC.**

**EMPLOYEE STOCK OWNERSHIP PLAN**

**SUMMARY PLAN DESCRIPTION**

**(Amended and Restated Effective August 1, 2006)**

Prepared: August 28, 2006

1363restSPD.wpd

CIG 004170

# **CONTENTS**

Article                                                                                                 Page

I.      WHAT IS THE PURPOSE OF THE PLAN? . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     GENERAL INFORMATION ABOUT YOUR PLAN . . . . . . . . . . . . . . . . . . . . . 2
        A.      General Plan Information. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        B.      Plan Sponsor/Employer Information. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        C.      Plan Administrator Information. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        D.      Plan Trustee Information. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        E.      Service of Legal Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.    HOW DOES THE PLAN WORK? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.     ELIGIBILITY AND PARTICIPATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        A.      When Am I Eligible to Participate? . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        B.      Excluded Employees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        C.      How Long Will I Be Eligible to Share in the Allocation of Employer
                Contributions and Forfeitures? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        D.      Will I Receive Credit for Service in the Military? . . . . . . . . . . . . . . . . . 7

V.      CONTRIBUTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        A.      How Are Contributions to the Plan Determined? . . . . . . . . . . . . . . . . . 7
        B.      How Is My Share of the Contribution Determined? . . . . . . . . . . . . . . . . 7
        C.      How Will Contributions Received by the Plan Be Invested? . . . . . . . . . . 8
        D.      How Do I Know the Value of My Account? . . . . . . . . . . . . . . . . . . . . . . . 8
        E.      How Is the Stock Valued? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VI.     VESTING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        A.      What Is Vesting? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        B.      What Are the Year of Service Rules? . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
                1.      Year of Service and Hour of Service . . . . . . . . . . . . . . . . . . . . . . 9
                2.      1-Year Break in Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        C.      Are There Other Ways I Can Become Fully Vested? . . . . . . . . . . . . . . . 11
        D.      What If My Employment Ends? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        E.      What Happens to My Forfeited Amount? . . . . . . . . . . . . . . . . . . . . . . . 11
        F.      What If I Am Reemployed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        G.      What If I Am Terminated With a 0% Vested Account? . . . . . . . . . . . . . . 12

VII.    BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        A.      What Do I Get at Retirement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        B.      Can I Continue to Participate After the Normal Retirement Age? . . . . . . . 13
        C.      What If I Die Before Retirement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

CIG 004171

D.     What If I Have to Terminate Employment Because of Disability? . . . . . . . . 13
E.     What Benefits Do I Get If My Employment Is Terminated Prior to the
       Last Day of the Plan Year for Reasons Other than Death, Disability or
       Retirement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VIII.  WHEN WILL PLAN BENEFITS BE DISTRIBUTED? . . . . . . . . . . . . . . . . . . . . . 13
A.     Death, Disability or Retirement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
B.     Other Termination of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       1.     Company Stock Account and Other Investments Account
              (Exceeding $3,500). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       2.     Company Stock Account and Other Investments Account
              ($3,500 or Less). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
C.     Pre-Retirement Diversification Distributions. . . . . . . . . . . . . . . . . . . . . . . . . 15
D.     In What Form Will Distributions Be Made from the Plan? . . . . . . . . . . . . . . 15

IX.    TREATMENT OF DISTRIBUTIONS FROM YOUR PLAN  . . . . . . . . . . . . . . . . 16

X.     MUST I CONSENT BEFORE DISTRIBUTION OF MY PLAN BENEFIT
       BEGINS? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

XI.    WHEN IS THE PLAN REQUIRED TO BEGIN DISTRIBUTING YOUR
       PLAN BENEFITS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

XII.   WHAT HAPPENS TO MY ACCOUNTS IF DISTRIBUTION IS DEFERRED? . . 19

XIII.  ARE THERE ANY RESTRICTIONS ON MY PLAN BENEFIT  . . . . . . . . . . . . . 19
A.     Indebtedness to the Trust. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
B.     Is There a Market for the Stock? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
C.     Are There Any Restrictions on the Stock After It Is Distributed to Me? . . . . 20

XIV.   WHAT IF THE PLAN BECOMES TOP HEAVY? . . . . . . . . . . . . . . . . . . . . . . . . 20

XV.    HOW THE PLAN IS ADMINISTERED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
A.     Who Administers the Plan? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
B.     How Are the Shares of the Trust Voted? . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XVI.   HOW IS MY ACCOUNT SET UP? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XVII.  MAY I DESIGNATE A BENEFICIARY? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XVIII. RESTRICTIONS ON PLAN BENEFITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
A.     May I Assign or Transfer My Account? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
B.     In the Case of A Qualified Domestic Relations Order, Can My Account
       Balances Be Paid To Someone Other Than Myself Or My Beneficiary? . . . 23
C.     Lost Participants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
D.     Are My Benefits Under the Plan Insured by the PBGC? . . . . . . . . . . . . . . . . 24

ii

CIG 004172

XIX.   HOW YOUR ACCOUNTS GROW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XX.    WHAT IS THE FUTURE OF THE PLAN? . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XXI.   CLAIMS BY PARTICIPANTS AND BENEFICIARIES. . . . . . . . . . . . . . . . . . 26

XXII.  STATEMENT OF ERISA RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

BENEFICIARY DESIGNATION FORM (INDIVIDUAL) . . . . . . . . . . . . . . . . . . . . . . . 31

BENEFICIARY DESIGNATION FORM (INSTITUTIONAL) . . . . . . . . . . . . . . . . . . . . . 34

1363restSPD.wpd

CIG 004173

### SUMMARY
### EXPLANATION
### OF
### K-M INDUSTRIES HOLDING CO., INC.
### EMPLOYEE STOCK OWNERSHIP PLAN
#### Introduction

Dear Fellow Employees:

We are pleased to present to you this restated Summary Plan Description ("SPD") of the K-M Industries Holding Co., Inc. Employee Stock Ownership Plan ("Plan"). The Plan described in this SPD, was adopted effective as of July 16, 1999, as an amendment and restatement of the Kelly-Moore Paint Company, Inc. Employee Stock Ownership Plan, which was originally effective as of January 1, 1998. On July 16, 1999, the California Capital Insurance Company Employee Stock Ownership Plan (which was effective January 1, 1998) was merged with and into the Kelly-Moore Paint Company, Inc. Employee Stock Ownership Plan. Effective as of July 16, 1999, K-M Industries Holding Co., Inc. became the sponsor of the Kelly-Moore Paint Company, Inc. Employee Stock Ownership Plan and that plan was amended and restated to be the K-M Industries Holding Co., Inc. Employee Stock Ownership Plan.

This restated SPD incorporates all prior material modifications which have been made to your SPD since the SPD was last restated effective as of July 16, 1999.

The Plan is a defined contribution plan, and is intended to qualify as an employee stock ownership plan, as defined in Section 4975(e)(7) of the Internal Revenue Code of 1986, as amended (hereinafter referred to as the "Code").

You may wish to make a notation on your old SPD as a reminder that it has been superseded by this amended and restated SPD.

The continued success of the Plan is dependent upon our individual and team efforts to improve performance.

1363restSPD.wpd

CIG 004174

## I. <u>WHAT IS THE PURPOSE OF THE PLAN?</u>

       The primary purpose of this Plan is to enable the Employees of the Kelly-Moore Paint Company, Inc. (and its participating affiliates) and California Capital Insurance Company (and its participating affiliates) to share in the growth and prosperity of K-M Industries Holding Co., Inc.'s ("Company") respective operating companies (Kelly-Moore Paint Company, Inc. and California Capital Insurance Company), and to provide Participants with an opportunity to accumulate capital for their retirement needs.  The Plan is designed to do this at no cost to you whatsoever.

       The success of the Company depends on the teamwork and positive attitudes of all Employees.  At every level of job responsibility, the efforts and devotion of many individuals have created the success thus far achieved and will help guarantee that the Company remains successful.  There are many ways in which you can help.  Just a few examples are:

- ✔ Reduce waste and inefficiencies to the barest minimum.
- ✔ Make suggestions to your supervisor as to how the Company can do a better job.
- ✔ Take an active interest in solving problems of the Company.
- ✔ Communicate with your fellow "employee-owners."
- ✔ Get involved: It's *your* Company!

       Participation in the Plan is an especially appropriate way to recognize individual and team efforts.

       This SPD of the Plan has been prepared to summarize the provisions of the Plan.  You should read all parts of this SPD carefully so that you will not only understand the ways in which the Plan may benefit you, but certain exclusions to coverage and limitations on the receipt of benefits which may apply to you.  If you wish additional information concerning this Plan, the section of this SPD entitled "Statement of ERISA Rights" tells you how to obtain that information.

       This SPD summarizes the main provisions of the Plan.  It is not the complete Plan.  A complete copy of the Plan can be obtained by following the directions in the section of this SPD entitled "Statement of ERISA Rights."  In case of any conflict between the provisions of the complete Plan and this description, the provisions of the complete Plan will control.

1363restSPD.wpd

CIG 004175

Please note that the Plan Committee has final and exclusive authority to decide all questions arising in connection with the Plan. Capitalized terms used in this SPD have the same meaning as given them in the Plan, unless specifically defined in the SPD.

The information in this SPD may be modified by a Material Modification attached at the end. Be sure to check the Material Modification, if any, when you refer to this SPD.

## II. GENERAL INFORMATION ABOUT YOUR PLAN.

There is certain general information which you need to know about your Plan. This information has been summarized for you in this Article.

### A. General Plan Information.

The K-M Industries Holding Co., Inc. Employee Stock Ownership Plan is the name of your Plan.

Your Employer has assigned Plan Number 002 to your Plan.

The provisions of your Plan became originally effective on January 1, 1998, which is called the original Effective Date of the Plan. The Effective Date of the restated Plan is July 16, 1999.

Your Plan's records are maintained on a twelve-month period of time. This is known as the Plan Year.

Certain valuations and distributions are made based on the Anniversary Date of your Plan. This date is December 31.

The contributions made to your Plan will be held and invested by the Trustee of your Plan.

Your Plan and its related Trust will be governed by applicable provisions of the Code, the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and to the extent not superseded by Federal laws, the laws of the State of California.

1363restSPD.wpd

CIG 004176

**B.**   **Plan Sponsor/Employer Information.**

Your Employer's name, address and identification number are:

K-M Industries Holding Co., Inc.
987 Commercial Street
San Carlos, California  94070
EIN: 94-1230192

Your Plan allows Participating Employers to adopt its provisions.  The Participating Employers who have adopted the provisions of the Plan are:

| | |
|---|---|
| California Capital Insurance Company | Kelly-Moore Paint Company, Inc. |
| Monterey Insurance Company | K-M Universal Paint Company, Inc. |
| Eagle West Insurance Company | Preservative Paint Co. |
| Nevada Capital Insurance Company | Premier Drywall Tool Co. |

**C.**   **Plan Administrator Information.**

The Plan Administrator keeps the records for the Plan and is responsible for the administration of the Plan.

The name, address and business telephone number of your Plan's Administrator are:

K-M Industries Holding Co., Inc.
987 Commercial Street
San Carlos, California  94070
Tel.:  (650) 592-8337

The Plan Administrator's duties may be delegated to the Plan Committee.  The Plan Committee is appointed by the Board of Directors of the Company.  The Plan Committee has discretionary authority to construe the terms of the Plan and make determinations on questions which may affect your eligibility for benefits.  The Plan Committee will also answer any questions you may have about your Plan.  The Plan Committee has no discretionary authority with respect to the investment or retention of Plan assets, including employer stock.  The names of the Plan Committee members are:

| | |
|---|---|
| Pete Cazzolla | Steve Devoe |
| Dan Stritmatter | Bob Erickson |

3

1363restSPD.wpd

CIG 004177

You can contact the Plan Committee members at:

> K-M Industries Holding Co., Inc.
> 987 Commercial Street
> San Carlos, California  94070
> Tel.: (650) 592-8337

For more information about your Plan, you may contact the Human Resources Department of either Kelly-Moore Paint Company, Inc. or California Capital Insurance Company.  The respective address and telephone number of the two companies are:

> K-M Industries Holding Co., Inc.        California Capital Insurance Company
> 987 Commercial Street                   2300 Garden Road
> San Carlos, California  94070           Monterey, California  93940
> Tel.: (650) 592-8337                    Tel.: (831) 649-1155

**D.**    **Plan Trustee Information.**

The Trustee is appointed by the Board of Directors of the Company and has been designated to hold and invest Plan assets for the benefit of you and other Plan Participants, pursuant to the terms of the Plan and the K-M Industries Holding Co., Inc. Employee Stock Ownership Trust ("Trust").  The Trust fund established by the Plan's Trustee will be the funding medium used for the accumulation of assets from which benefits will be distributed. The Trust has independent discretionary authority in connection with the investment, retention, custody and disposal of Plan assets, including employer stock, and is not subject to the direction of the Company or the Plan Committee.

The name, address and telephone number of your Plan's Trustee are:

> North Star Trust Company
> 500 West Madison Street, Suite 3630
> Chicago, IL  60661
> Telephone:  (312) 559-9763
> c/o John Hommel

4

1363restSPD.wpd

CIG 004178

E.    **Service of Legal Process**.

The name and address of your Plan's agent for service of legal process are:

> K-M Industries Holding Co., Inc.
> 987 Commercial Street
> San Carlos, California  94070

Service of legal process may also be made upon the Trustee.

## III.  HOW DOES THE PLAN WORK?

The Board of Directors of the Company has adopted the Plan as an amendment and restatement of the Kelly-Moore Paint Company, Inc. Employee Stock Ownership Plan.  Prior to the restatement of the Kelly-Moore Paint Company, Inc. Employee Stock Ownership Plan, the California Capital Insurance Company Employee Stock Ownership Plan was merged with and into the Kelly-Moore Paint Company, Inc. Employee Stock Ownership Plan.  Under the Plan, there is an Employee Stock Ownership Trust which holds the investments of the Plan. The Plan is designed to allocate separate benefits, rights and features among the Plan's Participants, in accordance with IRS regulations.  The Participating Employers in this Plan are (1) Kelly-Moore Paint Company, Inc. (and its participating Affiliates) and California Capital Insurance Company (and its participating Affiliates).  The Employer Securities acquired by this Plan shall consist of two classes of common stock of the Parent:  Class P-B and Class I-B.  The Company Stock Accounts of Participants employed by Kelly-Moore Paint Company, Inc. (and its related participating affiliates), shall receive an allocation of only Class P-B common stock.  The Company Stock Accounts of Participants employed by California Capital Insurance Company (and its related participating affiliates), shall receive an allocation of only Class I-B common stock.

Each year the Company may make Contributions to the Trust in Company stock or cash.  The Trust may also enter into loans for the purpose of purchasing stock of the Company.  The investments are held by the Trust for your benefit.  The Company stock will gain or lose value, as determined annually by an independent appraiser, based on the financial performance of the Company.

5

1363restSPD.wpd

Your ESOP accounts will be increased by your share of the Company's contributions and your share of forfeitures from the accounts of Employees who leave before they are fully vested.

Contributions to the Plan are tax-deductible by the Company. You pay no tax on any amounts allocated to your Accounts until they are distributed to you. This tax treatment enables the Plan to combine the Company's interest with yours by allowing the Company to finance its growth while building your beneficial ownership.

Of course, there are never any guarantees that the value of investments, even investments in Company Stock, will increase. However, the Plan provides you with an opportunity to influence this growth. By working efficiently and effectively, you may help increase the value of your Plan accounts.

## IV.  ELIGIBILITY AND PARTICIPATION.

### A.    When Am I Eligible to Participate?

You will be eligible to participate in the Plan retroactively to the first day of the Plan Year (each January 1) during the Plan Year in which you first complete 1,000 Hours of Service.

Upon so becoming eligible, your participation shall be based on the total Covered Compensation paid to you for the entire Plan Year during which you become eligible to participate.

### B.    Excluded Employees.

The following Employees shall not be eligible to participate in the Plan, and shall be known as "Ineligible Employees":

- An Employee whose terms of employment with the Employer are covered by a collective bargaining agreement;
- An Employee who is a Leased Employee; and
- An Employee who is a nonresident alien who do not receive any earned income (as defined in Code § 911(d)(2)) from the Employer which constitutes United States source income (as defined in Code § 861(a)(3)).

6

1363restSPD.wpd

If you are an Ineligible Employee, who has otherwise met the Plan's eligibility requirements as described above, and would otherwise have become eligible to participate in the Plan, and if you go from a classification of an Ineligible Employee to an eligible Employee, you shall become eligible to participate in the Plan on the date you become an eligible Employee or, if later, the date you would have otherwise entered the Plan had you always been an eligible Employee.

C.    **How Long Will I Be Eligible to Share in the Allocation of Employer Contributions and Forfeitures?**

You will continue to share in the allocation of contributions and forfeitures only for each Year of Service during which you complete 1,000 or more Hours of Service.

Please review the Article in this Summary entitled "What Are the Year of Service Rules?" which further explains the Year of Service and Hours of Service requirements.

D.    **Will I Receive Credit for Service in the Military?**

As required by the Uniformed Services Employment and Reemployment Rights Act of 1994, the Plan will provide benefits with respect to Participants who perform qualified military service, in accordance with Section 414(u) of the Code.

## V.  CONTRIBUTIONS.

A.    **How Are Contributions to the Plan Determined?**

Each year, the Board of Directors of the Company will decide how much to contribute for that Plan Year. Although not required, their decision is normally based on the Company's financial performance and condition. Contributions may be made in cash, Company stock, or a combination of both.

B.    **How Is My Share of the Contribution Determined?**

The contribution for each Plan Year will be divided among the Accounts of eligible Participants in the proportion that each such Participant's Covered Compensation, as defined in the Plan, for that year bears to the Covered Compensation of all such Participants.

1363restSPD.wpd

CIG 004181

**CAUTION:**  Since your Company also has a 401(k) plan, please note that your contribution to the 401(k) plan may reduce the allocation you receive under the Plan.  If you are considering making a large contribution to the 401(k) plan, please be aware of this fact and please contact the Plan Committee.

**C.    How Will Contributions Received by the Plan Be Invested?**

Cash contributions received by the Trust may be used either to purchase shares of Company stock or to make payments on loans used by the Plan to acquire Company stock.  In both cases an equivalent number of shares of Company stock will be allocated to the Company Stock Accounts of eligible Participants, in accordance with Plan provisions.  As described earlier in this SPD, the class of stock representing Kelly-Moore Paint Company, Inc. will only be allocated to Employees of Kelly-Moore Paint Company, Inc. and its participating affiliates.  The class of stock representing California Capital Insurance Company will only be allocated to Employees of California Capital Insurance Company and its participating affiliates.  Any contributions in the form of Company stock will also be allocated to Participants' Company Stock Accounts.  Any cash assets in the Trust which are not invested in Company stock may be used to purchase other investments.  These investments will be allocated to your Other Investments Account.

**D.    How Do I Know the Value of My Account?**

As soon as administratively feasible after the end of each Plan Year, each participating Employee will receive a statement showing the total number of shares allocated to your Company Stock Account and the dollar value of your Company Stock Account.  The statement will also indicate the value of your Other Investments Account, if applicable.

**E.    How Is the Stock Valued?**

Each year an appraisal of the value of the Company's stock is made by an Independent Appraiser.  The profits and growth of the Company during that year will generally affect the value of the Company stock.

1363restSPD.wpd

CIG 004182

## VI.  VESTING

### A.    What Is Vesting?

Vesting refers to the percentage of your Accounts that is yours and cannot be forfeited.  However, as will be explained later, the value of your vested Accounts can vary. The Plan provides that your Accounts vest at the following rate:

| Years of Service | Percentage of Accounts Vested |
|---|---|
| Less than Three Years | 0 |
| Three Years | 20 |
| Four Years | 40 |
| Five Years | 60 |
| Six Years | 80 |
| Seven Years | 100 |

### B.    What Are the Year of Service Rules?

1.    Year of Service and Hour of Service.

The term "Year of Service" is used throughout this Summary Plan Description and throughout your Plan as follows:

- You will have completed a Year of Service for vesting purposes if you are credited with 1,000 Hours of Service during a Plan Year, even if you were not employed on the first or last day of the Plan Year.

- Years of Service in the restate Plan also include, for purposes of vesting, all Years of Service credited to you under the K-M Industries Holding Co., Inc. Employee Stock Ownership Plan prior to the Plan's restatement.

An "Hour of Service" has a special meaning for Plan purposes.  You will be credited with an Hour of Service for:

*a)*    each hour for which you are directly or indirectly compensated by your Employer for the performance of duties during the Plan Year;

*b)*    each hour for which you are directly or indirectly compensated by your Employer for reasons other than performance of duties (such as vacation, holidays, sickness, disability, lay-off, military duty, jury duty or leave of absence during the Plan Year); and

9

1363restSPD.wpd

c)      each hour for back pay awarded or agreed to by your Employer.

You will not be credited for the same Hours of Service both under *a*) or *b*), as the case may be, and under *c*).

Service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.

2.      <u>1-Year Break in Service</u>.

A 1-Year Break in Service is a computation period during which you have not completed more than 500 Hours of Service with your Employer.

A 1-Year Break in Service does NOT occur, however, in the computation period in which you enter or leave the Plan for reasons of:

a)      an authorized leave of absence;

b)      certain maternity or paternity absences.

The Plan Committee will be required to credit you with Hours of Service for a maternity or paternity absence. These are absences taken on account of pregnancy, birth, or adoption of your child. No more than 501 Hours of Service will be credited for this purpose and these Hours of Service will be credited solely to avoid your incurring a 1-Year Break in Service. The Plan Committee may require you to furnish proof that your absence qualifies as a maternity or paternity absence.

These break in service rules may be illustrated by the following examples:

- Employee A works 300 hours in a Plan Year. At the end of the Plan Year, Employee A will have a 1-Year break in Service because she has worked less than 501 hours in a Plan Year. Employee B works 300 hours in a Plan Year and takes an authorized leave of absence for which he is credited with an additional 250 hours. Employee B will NOT have a 1-Year Break in Service because he is credited with more than 500 hours in a Plan Year.

If you are reemployed after a 1-Year Break in Service and were vested in any portion of your account derived from Employer contributions, you will receive credit for all Years of Service credited to you before your 1-Year Break in Service.

If you do not have a "vested interest" in the Employer contributions allocated to your account when you terminate your employment, you will lose credit for your pre-break

10

CIG 004184

Years of Service when your consecutive 1-Year Breaks in Service equal or exceed the greater of five (5) years, or your pre-break Years of Service. For example:

- Employee B terminated employment on January 1, 2000 with 2 years of Service. Employee B was not vested at the time of his termination or employment. Employee B returns to work on January 1, 2003. Employee B will be credited with his 2 pre-break Years of Service because his period of termination (3 years) did not exceed 5 years.

**C.   Are There Other Ways I Can Become Fully Vested?**

Your Accounts become fully vested once you reach the Normal Retirement Age, which is defined as the day on which you attain age sixty-five (65). Your Accounts also become fully vested if your employment is terminated because of death or Disability.

**D.   What If My Employment Ends?**

Except as just described, if you separate from service with the Employer and you are not fully vested, the nonvested portion of your Accounts will be subject to forfeiture ("Forfeiture").

**E.   What Happens to My Forfeited Amount?**

The nonvested portion of your Accounts will be allocated as a Forfeiture. The timing of the allocation of these Forfeitures will depend on whether or not you received a "cash-out distribution." A "cash-out distribution" is a distribution of the entire vested portion of your Accounts that is made prior to the date you incur five (5) consecutive 1-Year Breaks in Service.

If you incurred five consecutive one-year Breaks in Service, and you did <u>not</u> receive a "cash-out distribution," the nonvested portion of your Accounts will be allocated as a Forfeiture as soon as possible after the close of the Plan Year in which you incur your five-year Break in Service.

If you are partially vested and you receive a "cash-out distribution," you shall incur a Forfeiture immediately upon receipt of the "cash-out distribution". The nonvested portion of your Accounts will be allocated as of the Anniversary Date coinciding with or following the

1363restSPD.wpd

CIG 004185

date you incurred a 1-Year Break in Service or received your "cash-out distribution," whichever is later.

**F.    What If I Am Reemployed?**

If you are reemployed by the Employer and you have not received a "cash-out distribution" and you have not incurred five consecutive 1-Year Breaks in Service, you will not incur a Forfeiture.

If, however, you received a "cash-out distribution" of your partially vested Accounts, and you are reemployed by the Employer prior to the date you incur five consecutive 1-Year Breaks in Service, the forfeited portion of your Accounts will be restored only after you repay in full the amount that had been distributed to you. You must repay this amount before you incur five consecutive 1-Year Breaks in Service following the date you received the distribution and before the five-year anniversary of your reemployment.

**G.    What If I Am Terminated With a 0% Vested Account?**

If you separate from service and you are zero percent (0%) vested in your Accounts, you shall be deemed to have received a "cash-out distribution" as of the day on which you separated from service with the Employer. For purposes of applying the repayment provisions mentioned above, the Plan Committee will treat a zero percent (0%) vested Participant as repaying the cash-out distribution on the first day of reemployment with the Employer.

## VII.    BENEFITS.

**A.    What Do I Get at Retirement?**

Under the Plan, the Normal Retirement Age occurs at age sixty-five (65). Upon attaining the Normal Retirement Age, you will be fully vested in all of your Accounts. The form and manner of distribution of your Accounts to you is described later.

1363restSPD.wpd

CIG 004186

**B.**     <u>Can I Continue to Participate After the Normal Retirement Age</u>?

Subject to the requirements under Article IV, if you continue to be employed with the Company after your Normal Retirement Age, you will continue to participate in the Plan during any Plan Year following your Normal Retirement Age.

**C.**     <u>What If I Die Before Retirement</u>?

If you die before Normal Retirement Age, your Account balances will become fully vested, and your Beneficiary will receive all of them, pursuant to the terms of the Plan.

In the event of your death after your employment has terminated but before you have received all of your vested benefit, your Beneficiary will receive the undistributed balance.

**D.**     <u>What If I Have to Terminate Employment Because of Disability</u>?

If you incur a Disability, your Accounts will become fully vested.  Disability shall mean your entitlement to Social Security disability benefits.

**E.**     <u>What Benefits Do I Get If My Employment Is Terminated Prior to the Last Day of the Plan Year for Reasons Other than Death, Disability or Retirement</u>?

When your employment is so terminated, a percentage of your Account balances will be vested based upon the number of Years of Service you have at the time your employment terminates.

**VIII.**  <u>WHEN WILL PLAN BENEFITS BE DISTRIBUTED?</u>

**A.**     <u>Death, Disability or Retirement</u>.

In the event you separate from service with the Employer because of death, Disability or Retirement, subject to your consent, if required, distribution of your Plan Benefits will commence during the Plan Year which follows the Plan Year in which you separated from service.  Distribution of benefits under this paragraph will be made in a lump sum.

1363restSPD.wpd

CIG 004187

Notwithstanding the foregoing, the Committee may, in its sole discretion exercised in a uniform and nondiscriminatory manner, direct that the distribution be made in substantially equal annual installments over a period of five (5) years.

**B.      Other Termination of Service.**

In the event you separate from service with the Employer for reasons other than death, Disability or Retirement, subject to your consent if required, distribution of your Plan Benefits will commence as described below:

1.      Company Stock Account and Other Investments Account (Exceeding $3,500).

If you are not reemployed before the end of the fifth (5th) Plan Year following the Plan Year in which you separate from service, distribution of your Accounts will commence as soon as administratively feasible during the sixth (6th) Plan Year following the Plan Year in which you separated from service.  Distribution of your benefits under this paragraph will be made in a lump sum.

Notwithstanding the foregoing, the Committee may, in its sole discretion exercised in a uniform and nondiscriminatory manner, direct that the distribution be made in substantially equal annual installments over a period of five (5) years.

Notwithstanding the other provisions, the Plan shall not be required to distribute any Company stock acquired with the proceeds of a Securities Acquisition Loan until the close of the Plan Year in which such Securities Acquisition Loan has been repaid in full.

Notwithstanding any of the foregoing distribution provisions to the contrary, in the event your employment is terminated for reasons other than death, Disability or Retirement, distribution of your Plan Benefits shall commence no later than one (1) year after the close of the Plan Year in which the earliest of the following events occurs:

    *a)*  you attain the Normal Retirement Age; or

    *b)*  you die; or

    *c)*  you incur a Disability.

2.      Company Stock Account and Other Investments Account ($3,500 or Less).

If the total vested value of your Company Stock Account and Other Investments Account is three thousand five hundred dollars ($3,500) or less, distribution shall

14

1363restSPD.wpd

CIG 004188

be made in a lump sum as soon as administratively feasible after the close of the Plan Year in which your employment terminates.

**C.     Pre-Retirement Diversification Distributions.**

Under the terms of the Plan, Participants who meet certain age and participation requirements are allowed the option of diversifying the investment of their Company Stock Account.

Participants who are allowed this option must be "qualified." To be "qualified" you must be fifty-five (55) years old and must have participated in the Plan for at least ten (10) years. If you are fifty-five (55) but have not been a Participant for 10 years, you will be allowed the option when you have ten (10) years' participation.

The option is available to you during the Plan Year after the Plan Year in which you are qualified and is available to you for the five consecutive years after that. The option allows you to diversify up to twenty-five percent (25%) of your Company Stock Account. In the last, or sixth (6th), year in which the diversification option is available, you may elect a distribution of a cumulative amount up to fifty percent (50%) of your Company Stock Account. The Plan Committee will either permit you to diversify your Accounts and offer at least three investment options to each Participant who makes an election under this provision, or in lieu of offering such investment options, the Plan Committee may direct that all amounts subject to Participant elections be distributed. Before any such distribution is made to you your consent will be necessary.

Please Note: If you receive a distribution prior to attaining age fifty-nine and one-half (59½), and do not elect to roll over such distribution to an Individual Retirement Account (IRA), your distribution will be subject to a ten percent (10%) penalty tax, in addition to ordinary income taxation.

**D.     In What Form Will Distributions Be Made from the Plan?**

The Trustee may distribute your Plan Benefits entirely in cash or entirely in the form of Company stock. Provided that the Company's charter or bylaws restrict ownership of substantially all outstanding Company stock to Employees or to a trust under a qualified plan under Section 401(a) of the Code, Participants shall not be entitled to demand distribution of

1363restSPD.wpd

CIG 004189

their Plan Benefits in the form of Company stock. If a distribution is made to you in the form of Company stock, such distribution shall be made in the form of whole shares of Company stock with the value of any fractional shares paid in cash. Company stock distributed by the Trustee shall be subject to the requirement that the Employer (or the Trust) shall immediately repurchase such stock. If you receive distribution of your Plan Benefits in the form of Company stock, and if the stock is not immediately purchased by the Employer (or the Trust), the stock will be subject to certain restrictions as described under the Article in the SPD entitled, "Are There Any Restrictions on My Plan Benefit?"

Any shares purchased by the Employer (or the Trust) pursuant to this Article shall be purchased at their fair market value. Fair market value shall be based upon the appraised fair market value determined as of the Anniversary Date coinciding with or immediately preceding the date such shares are purchased. The appraised fair market value shall be determined by the Trustee pursuant to a valuation report prepared by an Independent Appraiser. Such shares shall be purchased by notifying you (or your Beneficiary) in writing. The terms of payment for the purchase of such shares of stock shall be set forth in the written statement delivered to you (or your Beneficiary) and may be either in a single payment or in up to five (5) equal annual installments (with interest on the unpaid principal balance at a reasonable rate of interest), as determined by the Trustee. Payment for the purchase of such shares must commence within thirty (30) days after the Employer (or the Trust) notifies you (or your Beneficiary) of its intent to purchase the shares. If payment is made in installments, adequate security and a reasonable rate of interest must be provided.

The Trustee will make distributions from the Trust in accordance with instructions from the Plan Committee.

## IX. TREATMENT OF DISTRIBUTIONS FROM YOUR PLAN.

Whenever you receive a distribution from your Plan, it will normally be subject to income taxes. You may, however, reduce, or defer entirely, the tax due on your distribution through use of one of the following methods:

1.    The rollover of all or a portion of the distribution to an IRA or another qualified employer plan. This will result in no tax being due until you begin withdrawing

1363restSPD.wpd

CIG 004190

funds from the IRA or other qualified employer plan.  The rollover of the distribution, however, MUST be made within strict time frames (normally, within sixty (60) days <u>after you receive</u> your distribution).  Under certain circumstances all or a portion of a distribution may not qualify for this rollover treatment.  In addition, most distributions will be subject to mandatory federal income tax withholding at a rate of twenty percent (20%).  This will reduce the amount you actually receive.  For this reason, if you wish to roll over all or a portion of your distribution amount, <u>the direct rollover</u> described in paragraph 2 below would be the better choice.

2.     You may request for most distributions that a direct transfer of all or a portion of your distribution amount be made to either an IRA or another qualified employer plan willing to accept the transfer.  A direct transfer will result in no tax being due until you withdraw funds from the IRA or other qualified employer plan.  Like the rollover, under certain circumstances all or a portion of the amount to be distributed may not qualify for this direct transfer.  If you elect to actually receive the distribution rather than request a direct rollover, then in most cases (other than a distribution in the form of employer securities) twenty percent (20%) of the distribution amount will be withheld for federal income tax purposes.

3.     The election of favorable income tax treatment under "capital gains" method of taxation, if you qualify.

WHENEVER YOU RECEIVE A DISTRIBUTION, THE PLAN COMMITTEE WILL DELIVER TO YOU A MORE DETAILED EXPLANATION OF THESE OPTIONS.  HOWEVER, THE RULES WHICH DETERMINE WHETHER YOU QUALIFY FOR FAVORABLE TAX TREATMENT ARE VERY COMPLEX.  YOU SHOULD CONSULT WITH A QUALIFIED TAX CONSULTANT BEFORE MAKING A CHOICE.

1363restSPD.wpd

CIG 004191

**X.**  **MUST I CONSENT BEFORE DISTRIBUTION OF MY PLAN BENEFIT BEGINS?**

If the value of your Plan Benefits exceeds one thousand dollars ($1,000) at the time of the distribution (determined by including that portion of your Plan Benefits, if any, attributable to a rollover account), any distribution prior to the later of age sixty-two (62) or your Normal Retirement Age may be made only with your written consent. The distribution of your Plan Benefits which does not exceed one thousand dollars ($1,000), which is made without your consent, shall be referred to as an "involuntary distribution." For purposes of an involuntary distribution, your Plan Benefits shall be determined by including that portion of your Plan Benefits, if any, attributable to a rollover account. The Committee shall provide you with a written notice which explains this requirement, not less than thirty (30) days nor more than ninety (90) days before the distribution date. Such distribution may commence less than thirty (30) days after such notice is given, provided that:

(1)    the Plan Committee clearly informs you that you have a right to a period of at least thirty (30) days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and

(2)    after receiving the notice, you affirmatively elect a distribution.

If you fail to consent to an immediate distribution within the applicable time limit (other than an involuntary distribution), the Employer may treat that as an election by you to defer distribution of the benefits to the later of age sixty-two (62) or your attainment of the Normal Retirement Age.

**XI.**  **WHEN IS THE PLAN REQUIRED TO BEGIN DISTRIBUTING YOUR PLAN BENEFITS?**

Pursuant to Section 401(a)(9) of the Code, distribution of your Plan Benefits is required to begin by April 1 of the calendar year following the later of (1) the calendar year in which you attain age seventy and one-half (70½) or (2) the calendar year in which you separate from service with the Employer. However, in the case of a five-percent (5%) owner (as defined in Section 416(i)(1)(B)(i) of the Code), distributions are required to begin no later

1363restSPD.wpd

CIG 004192

than April 1 following the calendar year in which you attain age seventy and one-half (70½). All distributions made under this paragraph shall be determined and made in accordance with the treasury regulations under Section 401(a)(9) of the Code.

## XII. WHAT HAPPENS TO MY ACCOUNTS IF DISTRIBUTION IS DEFERRED?

Any part of your Company Stock Account and Other Investments Account which is retained in the Trust after the Anniversary Date coinciding with or immediately following the date on which you terminate employment will continue to be treated as a Company Stock Account or as an Other Investments Account, as the case may be. Except in the case of reemployment, none of your Accounts will be credited with any further Employer contributions or Forfeitures.

## XIII. ARE THERE ANY RESTRICTIONS ON MY PLAN BENEFIT?

### A. Indebtedness to the Trust.

Yes. If, at the time of distribution, you are indebted to the Trust, or have retained in your possession money or property which properly belongs to the Trust, the Trust shall have a lien on such distribution pending the resolution of such ownership rights. The Trustee may exercise such lien either by directing the Company secretary to withhold any stock transfer of title, or by withholding distribution of any Company Stock or the value of any Company Stock, pending resolution of such ownership rights.

### B. Is There a Market for the Stock?

If the distribution of your Plan Benefits is made in the form of shares of Company stock, the Plan Committee will offer you (or your Beneficiary) a "put" option which will give you the right for sixty (60) days after the stock is distributed to require the Company or the Trust to purchase your stock at fair market value. If you do not exercise your "put" option within this first sixty (60) days, you will have an additional sixty (60) days in the following Plan Year.

1363restSPD.wpd

CIG 004193

The terms of payment for the purchase of such shares of stock shall be set forth in the written statement delivered to you (or your Beneficiary) and may be either in a single payment or in up to five (5) equal annual installments (with interest on the unpaid principal balance at a reasonable rate of interest), as determined by the Trustee. Payment for the purchase of such shares must commence within thirty (30) days after the Employer (or the Trust) notifies you (or your Beneficiary) of its intent to purchase the shares. If payment is made in installments, adequate security and a reasonable rate of interest must be provided.

C.    <u>Are There Any Restrictions on the Stock After It Is Distributed to Me?</u>

If the distribution of your Plan Benefits is made in the form of shares of Company stock, such shares shall be subject to a "right of first refusal," provided that the shares are not publicly traded. If you should wish to sell or transfer your shares after they are distributed to you, they must first be offered by written offer to the Trust, and then, if refused by the Trust, to the Company. In the event that the proposed transfer constitutes a gift or other such transfer at less than fair market value, the price per share shall be determined by an independent appraiser as of the latest fiscal year end. In the event of a proposed purchase by a prospective bona fide purchaser, the offer to the Trust and the Company shall be at fair market value, as determined by the Trustee pursuant to a report prepared by an independent appraiser as of the preceding Plan Year end, or at the price offered by the prospective bona fide purchaser, whichever is greater.

## XIV.  <u>WHAT IF THE PLAN BECOMES TOP HEAVY?</u>

If the Account balances of "Key Employees" exceed sixty percent (60%) of the total Account balances, the Plan will be deemed to be a "Top Heavy Plan." "Key Employees" are generally owners, officers, shareholders, or highly compensated individuals.

If the Plan becomes Top Heavy in any year, then if you complete one or more Hours of Service in that year you may be entitled to certain minimum benefits, and special rules will apply. Among these Top Heavy rules are the following:

1363restSPD.wpd

CIG 004194

1.      The Company may be required to allocate a minimum allocation of at least three percent (3%) of your Total Compensation to your Account if the Company makes a contribution.

2.      Your nonforfeitable right to benefits or contributions derived from Company contributions made to the Plan shall be determined according to the following schedule:

| Years of Service | Percentage |
|---|---|
| Two | 20 |
| Three | 40 |
| Four | 60 |
| Five | 80 |
| Six | 100 |

## XV.  HOW THE PLAN IS ADMINISTERED.

### A.      Who Administers the Plan?

The Plan will be administered by the Plan Committee appointed by the Board of Directors of the Company.  Subject to the limitations set forth under the Plan, the Plan Committee will make such rules, regulations, computations, interpretations and decisions, and shall maintain such records and accounts, as may be necessary to administer the Plan. The Plan Committee has no discretionary authority with respect to the investment or retention of Plan assets, including employer stock.

### B.      How Are the Shares of the Trust Voted?

The Company stock acquired by the Plan is owned by the Trust.  The Trustee of the Trust, appointed by the Board of Directors of the Company, is the legal representative of the Trust's assets.  The voting of shares held by the Trust is described below.

All Company stock held by the Trust shall be voted by the Trustee.  Notwithstanding the foregoing, you (or your Beneficiary) shall be entitled to direct the voting of any voting shares of Company stock allocated to your Company Stock Account with respect to any vote required for the approval or disapproval of any corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, or sale of substantially all the assets

1363restSPD.wpd

CIG 004195

of a trade or business. The Trustee shall vote any unallocated shares held by the Trust as well as any allocated shares for which a Participant has failed to give timely voting direction.

## XVI.  HOW IS MY ACCOUNT SET UP?

Separate record-keeping accounts are kept in your name.

As of each Anniversary Date, an allocation of shares of Company stock contributed or purchased for that year is made to each Participant's Company Stock Account.

The balance of cash Contributions used to invest in assets other than Company stock will be allocated to your Other Investments Account.

As soon as administratively feasible after each Anniversary Date, you will be notified of your Account balances resulting from Contributions, gains and losses, and also of the number of shares of Company stock allocated to your Company Stock Account.

## XVII.  MAY I DESIGNATE A BENEFICIARY?

Yes.  Attached to this summary description is a form to be completed by each Participant to designate a Beneficiary, in case of his or her death.  A Beneficiary Designation Form should be completed by each Participant to designate a beneficiary, in case of his or her death.  The form can be obtained from the Plan Committee members.  If you have not previously completed this form, or if you wish to change or update your designation, please complete this form and give it to the Plan Committee.  If you are married, you must designate your spouse as your beneficiary, unless your spouse signs the consent form (consenting to a different beneficiary) and such consent form is witnessed by a Plan representative or notary public.  Any time you desire to change the Beneficiary, you should procure new forms from the Plan Committee.

22

1363restSPD.wpd

**XVIII.  RESTRICTIONS ON PLAN BENEFITS.**

**A.  May I Assign or Transfer My Account?**

No, your interest under the Plan cannot be sold, assigned or transferred prior to a distribution to you.  Furthermore, prior to distribution, your interest is not subject to any debts or claims against you except indebtedness to the Trust and orders to make payments or assign benefits to a spouse, former spouse, child or other dependent, pursuant to a Qualified Domestic Relations Order.

**B.  In the Case of A Qualified Domestic Relations Order, Can My Account Balances Be Paid To Someone Other Than Myself Or My Beneficiary?**

Yes, in very limited circumstances.  The Plan Committee may receive a court order directing it to pay all or a portion of your Plan Benefits to another person for child support or alimony or as part of a marital property settlement.  If the order meets certain legal requirements, it will be considered a *Qualified Domestic Relations Order* ("QDRO").  In that case, benefits must be paid in accordance with the terms of the Plan and the QDRO.  The Plan Committee will notify you and any other interested persons that it has received the order, and inform you of procedures for determining if the order is a QDRO and administering distributions made pursuant to the Plan and the QDRO.  Participants and Beneficiaries can obtain a copy of the Plan's QDRO procedures (without cost) by making a request to the Plan Committee.

**C.  Lost Participants.**

If at the time you (or your Beneficiary) are entitled to a distribution, you (or your Beneficiary) cannot be located and after the Plan Committee has made reasonable efforts to locate you, the Plan Committee may choose to forfeit your Plan Benefits and treat such amounts as a Forfeiture in accordance with the terms of the Plan at the time specified below.  The Plan Committee cannot forfeit a missing Participant's Plan Benefit (or, in the case of a deceased Participant, his or her Beneficiary) unless each of the methods described below proves ineffective in locating the missing Participant.

The search methods for the missing Participants shall be as follows:

1363restSPD.wpd

CIG 004197

1)  Use of certified mail.
2)  Check related plan records.
3)  Check with designated Beneficiary.
4)  Use of either Internal Revenue Service ("IRS") or Social Security
    Administration ("SSA") letter-forwarding service.

If the search methods listed above prove unsuccessful, the Plan Committee may forfeit your Plan Benefits. Such forfeiture will occur as of the close of the Plan Year in which the Employer has completed all four of the search methods; provided that the forfeiture will not occur prior to the close of the 60th day after the letter has been submitted under the missing participant service of the IRS or SSA.

If you or your Beneficiary makes a written claim for the forfeited Plan Benefits subsequent to the Forfeiture, the Employer shall cause the Plan Benefits to be reinstated in the following manner:

(A)  first from current Plan Year Forfeitures;

(B)  second from current Plan Year Trust earnings; and

(C)  third from current Plan Year Contributions.

To the extent the amounts described in clauses (A), (B) and (C) are insufficient to enable the Plan Committee to make the required restoration, the Employer must contribute the additional amount necessary to enable the Plan Committee to make the required restoration.

**D.**    **Are My Benefits Under the Plan Insured by the PBGC?**

Under federal law, benefits promised under certain types of plans are insured by a federal agency known as the Pension Benefit Guaranty Corporation, or **PBGC**. Benefits under "individual account plans" such as this Plan are not covered.

## XIX.  HOW YOUR ACCOUNTS GROW.

Your Accounts reflect all of the factors which can affect the value of your Accounts:

1.    Employer Contributions: Your Accounts are credited with a portion of your Employer's contribution.

1363restSPD.wpd

CIG 004198

2.    <u>Income of the Trust</u>:  The Trust may also receive dividends and interest on other investments which it may hold as well as earnings attributable to the Company stock held by the Plan.

3.    <u>Expenses of the Trust</u>:  Interest expense payable on loans and installment purchases of stock if and when they are necessary for stock purchases is an expense of the Trust.  Expenses of administering the Plan and Trust are also expenses of the Trust <u>and</u> will be paid by the Trust if they are not paid by the Company.

4.    <u>Change in Value of Trust Assets</u>:  The current value of Company stock held by the Trust is reflected by the earnings and asset value of the Company.  The price of the stock will fluctuate each year depending largely on the value of the Company.

Once a year, the Plan Committee will tell you the value of your Company Stock Account based on the number of shares allocated to your Account.  If the Company's stock increases in value, your Company Stock Account will increase in value.  On the other hand, if the stock decreases in value, it will reduce the value of your Company Stock Account.  The concept of the Plan is to substantially increase the value of the Company stock held in the Trust over an extended period of time by constantly improving our business operation.

5.    <u>Forfeitures</u>:  Your Accounts receive a share of the Forfeitures when Employees leave the Company before becoming fully vested in their Accounts.  The portion of their Accounts which they forfeit is determined by the vesting schedule.  Forfeitures increase the allocation to your Accounts.

## XX.  <u>WHAT IS THE FUTURE OF THE PLAN?</u>

The Company hopes that the Plan will accumulate a significant amount of Company stock, so that the Employees will own a portion of the Company.  However, it is possible that government regulations, legal considerations, or other unforeseen factors may make the continuation or expansion of the Plan undesirable at some future point.  Accordingly, neither the Company nor its officers guarantee or warrant that the Plan will be continued, or that the Plan will acquire any specified percentage of the ownership of the Company.  In the event of any conflict between oral representations made by the Company's officers and this written

1363restSPD.wpd

CIG 004199

disclaimer, this written disclaimer shall prevail over any such oral representation. The Company has the right to terminate or amend the Plan at any time, but such action will not act to deprive any of you of the nonforfeitable Plan Benefits which have accrued to you under the Plan at the time of such an event. If the Plan is terminated, the Accounts of all affected Participants will become one hundred percent (100%) vested. After termination of the Plan, the Trust will be maintained until the Plan Benefits of all Participants have been distributed in accordance with the terms of the Plan. Plan Benefits may be distributed as soon as administratively feasible following termination of the Plan or distributions may be made following your separation from service with the Employer, in accordance with the terms of the Plan, as the Company shall determine. If Plan Benefits will be distributed after the Plan is terminated, the distribution may be delayed until IRS approval of the Plan's termination is received. In the event that Company stock is sold in connection with the termination of the Plan or the amendment of the Plan to become a qualified plan that is not a stock bonus plan, all Plan Benefits will be distributed in cash.

## XXI.    CLAIMS BY PARTICIPANTS AND BENEFICIARIES.

(1)    Procedure. Claims for benefits under the Plan shall be made in writing to the Plan Committee. (See the Article in this Summary entitled "General Information About Your Plan" for the name(s) and address of the Plan Committee.) The Plan Committee shall have full discretion to render a decision with respect to any claim. If a claim for benefits is wholly or partially denied by the Plan Committee, then the Plan Committee must provide notice of its denial to the claimant (a "Notice of Denial"), which shall be written in a manner calculated to be understood by the claimant and which shall set forth: (i) the specific reason or reasons for denial of the claim; (ii) a specific reference to the pertinent Plan provisions upon which the denial is based; (iii) a description of any additional material or information necessary for the claimant to perfect the claim, together with an explanation of why the material or information is necessary; and (iv) appropriate information regarding the steps to be taken if the claimant wishes to submit his or her claim for review.

(i)    Disability Claims. If a claim is related to any distribution or rights to which a Participant or other claimant may be entitled in connection with the Participant's

26

CIG 004200

termination of employment by reason of becoming disabled ("Disability Plan Benefits") and the claim is wholly or partially denied by the Plan Committee, then the Plan Committee shall provide the Notice of Denial within a reasonable period of time, not to exceed 45 days after receipt of the claim. This period within which the Plan Committee must provide a Notice of Denial may be extended twice, for up to 30 days per extension, provided that the Plan Committee (i) determines that an extension is needed and beyond the control of the Plan, and (ii) notifies the claimant prior to the expiration of the initial 45-day period or of the first 30-day extension period. If the Plan Committee shall fail to notify the claimant either that his or her claim for benefits has been granted or that it has been denied within the initial 45-day period or prior to the expiration of an extension, if applicable, then the claim shall be deemed to have been denied as of the last day of the applicable period, and the claimant then may request a review of his or her claim.

(ii) <u>Other Claims</u>. The Plan Committee shall notify a claimant in writing of the denial of any claim not related to Disability Plan Benefits within a reasonable period of time, not to exceed 90 days after receipt of the claim. If the Plan Committee shall fail to notify the claimant either that his or her claim has been granted or that it has been denied within 90 days after the claim is received by the Plan Committee, then the claim shall be deemed to have been denied.

(2) <u>Procedure for Review of a Denied Claim</u>. (i) <u>Disability Claims</u>. If a claim is denied, a claimant may file a written request with the Plan Committee that it conduct a full and fair review of his or her claim, and the Plan Committee then must make a determination with respect to its review of the denied claim. A claimant must file a written request for a review of a claim for Disability Plan Benefits with the Plan Committee within 180 days after the receipt by the claimant of a Notice of Denial of his or her claim or within 180 days after the claim is deemed to have been denied. The Plan Committee's decision with respect to its review of the denied claim shall be rendered not later than 45 days after the receipt of the claimant's request for a review, unless special circumstances require an extension of time for processing, in which case the 45-day period may be extended to 90 days if the Plan Committee shall notify the claimant in writing within the initial 45-day period and shall state the reason for the extension.

27

CIG 004201

(ii)    Other Claims.  A claimant must file a written request for a review of any claim not related to Disability Plan Benefits with the Plan Committee within 60 days after the receipt by the claimant of a Notice of Denial of his or her claim or within 60 days after the claim is deemed to have been denied.  The Plan Committee's decision with respect to its review of the denied claim shall be rendered not later than 60 days after the receipt of the claimant's request for a review, unless special circumstances require an extension of time for processing, in which case the 60-day period may be extended to 120 days if the Plan Committee shall notify the claimant in writing within the initial 60-day period and shall state the reason for the extension.

(3)    Review of Documents.  In connection with a claimant's appeal of a denial of his or her benefits (including Disability Plan Benefits), the claimant may review pertinent documents and may submit issues and comments in writing.  The Plan Committee shall have full discretion to fully and fairly review the claim, and the Plan Committee's decision upon review shall (i) include specific reasons for the decision, (ii) be written in a manner calculated to be understood by the claimant, and (iii) contain specific references to the pertinent Plan provisions upon which the decision is based.

## XXII.  STATEMENT OF ERISA RIGHTS.

As a Participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 ("ERISA").  ERISA provides that all Plan Participants shall be entitled to:

1.    Examine, without charge, at the Plan Administrator's office and at other locations, all Plan documents, including insurance contracts, collective bargaining agreements and copies of all documents filed by the Plan with the U.S. Department of Labor, such as annual reports (Form 5500 Series) and updated Summary Plan Description.

2.    Obtain copies of all Plan documents and other Plan information upon written request to the Plan Administrator.  The Plan Administrator may make a reasonable charge for the copies.

1363restSPD.wpd

CIG 004202

3.    Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary financial report.

4.    Obtain, once a year, a statement of the total benefits accrued and the nonforfeitable (vested) benefits (if any) or the earliest date on which benefits will become nonforfeitable (vested). The Plan may require a written request for this statement, but it must provide the statement free of charge.

5.    If your claim for a benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in Federal court. If it should happen that plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim frivolous.

In addition to creating rights for Plan Participants, ERISA imposes obligations upon the persons who are responsible for the operation of the Plan. These persons are referred to as "fiduciaries" in the law. Fiduciaries must act solely in the interest of the Plan Participants and they must exercise prudence in their performance of their Plan duties. Fiduciaries who violate ERISA may be removed and required to make good any losses they have caused the Plan. Your Employer may not fire you or discriminate against you to prevent you from obtaining a benefit or exercising your rights under ERISA.

1363restSPD.wpd

CIG 004203

If Plan fiduciaries are misusing the Plan's money, you have a right to file suit in a federal court or request assistance from the U.S. Department of Labor.  If you are successful in your lawsuit, the court may, if it so decides, require the other party to pay your legal costs, including attorneys' fees.

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or your rights under ERISA, you may contact the nearest area office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in the telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210 with respect to any questions you may have regarding your ERISA rights.  You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

1363resiSPD.wpd

CIG 004204

**K-M Industries Holding Co., Inc. Employee Stock Ownership Plan**

BENEFICIARY DESIGNATION FORM (INDIVIDUAL)

Name of Participant: _____  Date: _____, 20__

Date of Birth: _____

    I hereby revoke any Beneficiary Designation I may previously have made under the above Plan and designate the following as my Beneficiary(ies) under the Plan:

| Name | Share (or %)<br>(if applicable) | Relationship | Current Address |
|------|------|------|------|

Primary Beneficiary(ies):

_____

_____

_____

    (If more than one person is designated above and all but one die, state whether survivor shall receive 100%. See attached sheet for examples of common beneficiary designation: _____.)

    In the event said primary Beneficiary(ies) does not survive me, or dies before receiving full payment, the undistributed benefits shall be paid to the following-named secondary Beneficiary(ies):

| Name | Share (or %) | Relationship | Current Address |
|------|------|------|------|

_____

_____

_____

    (Again, if more than one person is designated as secondary Beneficiary, state whether survivor shall receive 100%. See attached example sheet:_____.)

Current marital status (check one):

[ ]    I AM NOT married. I understand that if I become married in the future, this form automatically ceases to apply and I should file a new Designation of Beneficiary.

[ ]    I AM married. If my spouse is not the only Primary Beneficiary, my spouse has signed the consent on page 2 of this form. (If consent of your spouse cannot be obtained [e.g., cannot be located, is incapacitated, etc.], contact the Company for information about possible alternatives.)

    I reserve the right to change my Beneficiary at any time by signing a new Designation of Beneficiary and filing it with the Committee.

    Neither this Designation nor any future change of Designation will be effective for any purpose unless filed with the Company prior to the death of the Participant.

1363restSPD.wpd

This Designation is subject to the terms of the Plan, which the Company has the right to amend at any time.

_____
(Signature of Participant)

FOR COMPANY USE ONLY:    Received for filing on _____, _____

By _____

Title: _____

INSTRUCTIONS TO PARTICIPANT:  Please sign two copies of this Designation of Beneficiary form and deliver both copies to the Plan Administrator.  The Company will complete the receipt and return one copy to you for your records.

CONSENT BY SPOUSE (Signature must be witnessed by Plan official or by notary public.)

I certify that I am the spouse of the Participant named on page 1 of this form.  I have read the form as completed and signed by my spouse.  I hereby consent to the Designation of Beneficiary.  I acknowledge that, to the extent anyone other than me is designated as a Primary Beneficiary, I am waiving any rights that I may otherwise have to receive benefits under the Plan after my spouse's death.

Date: _____, 20__    _____
(Signature of Spouse)

Signature witnessed by:

_____    Notary Seal, if applicable

Title: _____

1363restSPD.wpd

CIG 004206

**EXAMPLES**
**OF**
**COMMON BENEFICIARY DESIGNATIONS**

| Example | Primary Beneficiary | Secondary Beneficiary - If Any |
|---|---|---|
| | **ONE BENEFICIARY ONLY** | |
| 1 | Mary E. Jones, my wife<br>2000 Ridge Avenue<br>Burlingame, CA 94010 | |
| | **TWO PRIMARY BENEFICIARIES** | |
| 2 | Mary E. Jones, my mother----25%<br>Alfred H. Jones, my father--75%<br><br>2000 Ridge Avenue<br>Burlingame, CA 94010<br><br>Unequally, as shown, or the<br>Survivor | |
| 3 | Mary E. Jones, my mother<br>Alfred H. Jones, my father<br><br>2000 Ridge Avenue<br>Burlingame, CA 94010<br><br>Equally or the Survivor | |
| | **PRIMARY AND SECONDARY BENEFICIARIES** | |
| 4 | Mary E. Jones, my wife<br>2000 Ridge Avenue<br>Burlingame, CA 94010 | Edith H. Jones, my daughter<br>Robert B. Jones, my son<br>or any children born sub-<br>sequently of my present<br>marriage - Equally or the<br>Survivor of Survivors |
| 5 | Alfred H. Jones, my husband<br>101 West Road<br>Burlingame, CA 94010 | Mary E. Smith, my mother<br>205 First Street<br>Redwood City, CA 94063 |

1363restSPD.wpd

CIG 004207

**K-M Industries Holding Co., Inc. Employee Stock Ownership Plan**

<u>BENEFICIARY DESIGNATION FORM (INSTITUTIONAL)</u>

Participant's Name: _____

Address: _____

City: _____  State: _____  Zip Code: _____

Payroll or Employee Number: _____

Employment Location: _____

Date of Birth: ____/____/____  Social Security Number: _____-____-_____

Marital Status: ☐ unmarried/divorced  ☐ married  ☐ separated

**Instructions:**  Use this form to designate a trust, an institution or a similar entity as the party to whom benefits are to be paid from your interest in the **K-M Industries Holding Co., Inc. Employee Stock Ownership Plan** (the "Plan") in the event of your death prior to distribution to you of your entire interest in the Plan.  Do not use this form if benefits are to be paid to one or more individuals. (The proper form can be obtained from your Plan Administrator.)  If you are married or separated (but not divorced) at the time of your death, and if you wish to have benefits paid to the entity(ies) you have designated, your spouse must consent to the beneficiary designation(s) you have made herein.  If you are not married now, become married, and are married at the time of your death, this Beneficiary Designation will not be valid unless your spouse has added his or her consent to this designation.

       I name the following as the Beneficiary or Beneficiaries to receive any benefits payable upon my death in the proportions indicated:

1.     Payee: _____

       Address: _____

       Percentage of benefit to be paid to this beneficiary _____%

2.     Payee: _____

       Address: _____

       Percentage of benefit to be paid to this beneficiary _____%

3.     Payee: _____

       Address: _____

       Percentage of benefit to be paid to this beneficiary _____%

If I have designated more than one Beneficiary, and if one or more of those Beneficiaries ceases to exist prior to my death, I direct that the amount payable by reason of my death be divided among my remaining designated Beneficiaries in the ratio established by the percentages indicated with respect to those remaining beneficiaries. If the percentages do not add up to 100%, the benefit payable shall be allocated by the ratio of the percentages.

       The execution of this form and delivery thereof to the Plan Administrator revokes all prior beneficiary designations that I have made.  The beneficiary designations made hereby shall become invalid if I am married at the time of my death unless my spouse has consented in writing to my

1363restSPD.wpd

CIG 004208

designation of nonspousal beneficiaries (if any such be made herein), and, if appropriate, has waived any Qualified Preretirement Survivor or Qualified Joint and Survivor Annuity benefits that would otherwise be in effect under the default provisions of the Plan.

Date: _____        _____
                                      Signature

Witnesses:

_____        _____

SPOUSAL CONSENT MAY BE REQUIRED.

CONSENT BY SPOUSE (Signature must be witnessed by Plan official or by notary public.)

I certify that I am the spouse of the Participant named on page 1 of this form. I have read the form as completed and signed by my spouse. I hereby consent to the Designation of Beneficiary. I acknowledge that, to the extent anyone other than me is designated as a Primary Beneficiary, I am waiving any rights that I may otherwise have to receive benefits under the Plan after my spouse's death.

Date: _____, _____        _____
                                      (Signature of Spouse)

Signature witnessed by:

_____        Notary Seal, if applicable

Title: _____

1363restSPD.wpd

CIG 004209