```
 1  Ronald Lovitt, Bar No. 040921
    J. Thomas Hannan, Bar No. 039140
 2  Henry I. Bornstein, Bar No. 75885
    Terence F. Young, Bar No. 069943
 3  LOVITT & HANNAN, INC.
    900 Front Street, Suite 300
 4  San Francisco, California 94111
 5  Telephone: (415) 362-8769
    Facsimile: (415) 362-7528
 6  rl@lh-sf.com, jth@lh-sf.com, hib@lh-sf.com, tfylaw@earthlink.net

 7  Attorneys for Defendants K-M Industries
    Holding Co. Inc.; K-M Industries Holding Co.
 8  Inc. ESOP Plan Committee; and CIG ESOP
    Plan Committee
 9
```

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| THOMAS FERNANDEZ and LORA SMITH, individually and on behalf of a class of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>K-M INDUSTRIES HOLDING CO., INC.; K-M INDUSTRIES HOLDING CO. INC. ESOP PLAN COMMITTEE; WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; ADMINISTRATOR OF THE ESTATE OF WILLIAM E. MOORE, DECEASED; CIG ESOP PLAN COMMITTEE; NORTH STAR TRUST COMPANY; DESIREE B. MOORE REVOCABLE TRUST; WILLIAM E. MOORE MARITAL TRUST; WILLIAM E. MOORE GENERATION-SKIPPING TRUST; and DESIREE B. MOORE, BOTH IN HER INDIVIDUAL CAPACITY AND AS TRUSTEE OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST'S SUCCESSOR TRUSTS NAMED ABOVE,<br><br>Defendants. | Case No. C06-07339 MJJ (BZ)<br><br>**DEFENDANTS' K-M INDUSTRIES HOLDING CO., INC.; K-M INDUSTRIES HOLDING CO. INC. ESOP PLAN COMMITTEE; AND CIG ESOP PLAN COMMITTEES' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Date:  December 5, 2007 (if necessary)<br>Time:  TBA<br>Courtroom: Courtroom G<br>Judge:  Magistrate Judge Bernard Zimmerman<br><br>DISCOVERY MATTER |

Case C06-07339 MJJ             1            KMH DEFENDANTS OPPOSTION TO
                                             MOTION TO COMPEL

Defendants K-M Industries Holding Co. Inc., K-M Industries Holding Co. Inc. ESOP Plan Committee, and CIG ESOP Plan Committee (collectively, "Kelly-Moore") hereby respond to plaintiffs' motion to compel production of documents.

This litigation involves the formation of the Kelly-Moore Paint Company Employee Stock Ownership Plan (the "Plan"). In October 1998, in the course of adopting the Plan, shares of Kelly-Moore were sold to the Plan at a value supported by an independent valuation of the shares. Plaintiffs claim that Kelly-Moore should have foreseen at the time of formation that future liability for injuries caused by asbestos exposure would have a material effect on Kelly-Moore's financial statements, and, accordingly, on the value of such shares, notwithstanding that it appeared at the time of formation of the Plan that such liability was covered adequately by insurance and would not have a material effect on the financial well-being of Kelly-Moore.

Plaintiffs seek the production of two documents comprising privileged communications between Kelly-Moore and its attorneys, claiming that such documents relate to the administration of the Plan, and accordingly, are subject to the fiduciary exception to the attorney-client privilege. Because the application of the fiduciary exception to these documents is not clear, and because a voluntary production of these documents by Kelly-Moore could create a subject matter waiver of the attorney client privilege that could seriously damage the interests of Kelly-Moore in other litigation if the documents were later found not to be subject to the fiduciary exception, Kelly-Moore seeks a judicial determination that the two documents in question are in fact subject to the fiduciary exception before producing them.

## I.     FACTUAL BACKGROUND

Most of the facts relevant to the issues raised by this motion are not in dispute. Kelly-Moore had been named as a defendant in numerous asbestos personal injury lawsuits in the mid and late 1990s. Fortunately, it had purchased insurance against such a contingency. It was not until 2001, when a large personal injury verdict was returned against Kelly-Moore, that the issue of liability for asbestos injuries became a more serious problem. As national asbestos litigation matured and many of the companies primarily involved in the production of asbestos filed for bankruptcy, that large

verdict caused Kelly-Moore to become a more visible target of plaintiffs claiming injuries due to asbestos exposure. Simultaneously, additional uncertainty arose when coverage issues were raised by Kelly-Moore's insurers. Kelly-Moore continues to be named in asbestos personal injury lawsuits and presently is engaged in coverage litigation with some of its insurers. Accordingly, the preservation of the attorney-client privilege protecting Kelly-Moore's communications with its attorneys, especially on issues related to insurance coverage of asbestos claims, is of vital importance.

## II. ARGUMENT

### A. The Fiduciary Exception Applies to Fiduciary Communications Concerning the Administration of an ESOP

Kelly-Moore does not dispute the application of the fiduciary exception to communications related to the administration of an ESOP. It is established that certain communications between ERISA Plan administrators, acting as fiduciaries, and the attorneys retained by them, normally protected from discovery by the attorney-client privilege, are subject to a "fiduciary exception" to the attorney-client privilege. The consequence of the application of the fiduciary exception is that the attorney-client privilege does not bar the discovery by Plan beneficiaries of otherwise privileged communications.

Two primary rationales have been stated for the fiduciary exception. Some courts have justified the exception on the theory that the fiduciary, when performing its fiduciary functions, is duty-bound under ERISA to reveal all fiduciary communications to the beneficiaries. Other courts have based their justification for the fiduciary exception on the argument that the beneficiaries are the true clients being served by the attorneys when the fiduciary consults them on fiduciary matters and, accordingly, the attorney-client privilege belongs to the beneficiaries. *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999).

Not all attorney-client communications by the fiduciary are subject to the exception. For example, it is not enough that "otherwise privileged legal advice '<u>relates to</u>' fiduciary matters" for

such advice to fall under the exception. *United States v. Mett, supra*, 178 F.3d at 1064 [emphasis added]. The exception only applies to communications made when the administrator is acting as a fiduciary. So, for example, the Supreme Court has held that "Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. *See Adams v. Avondale Industries, Inc.*, 905 F. 2d 943, 947 (CA6 1990) ('[A] company does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefits plan')." *Curtis-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). Thus, under ERISA, persons and entities otherwise deemed fiduciaries are not acting as fiduciaries when adopting, amending or terminating a plan.

In addition, as plaintiffs acknowledge, the fiduciary exception does not apply to advice obtained by the fiduciary in protecting itself from potential claims.

> [W]hile the fiduciary exception does apply to advice on matters of plan administration, the attorney-client privilege reasserts itself as to any advice that a fiduciary obtains in an effort to protect herself from civil or criminal liability.

*United States v. Mett, supra*, 178 F.3d at 1066. Accordingly, in determining whether the fiduciary exception applies, the courts are required to consider each communication separately, on a document-by-document basis.

> In other words, it is not the terms of an engagement letter [establishing the attorney-client relationship], but rather <u>the nature of the particular attorney-client communication that is dispositive.</u> This communication-by-communication analysis, while perhaps untidy, is crucial if the attorney-client privilege and the fiduciary exception are to coexist.

*Id.* at 1064-1066. [emphasis added] Kelly-Moore proposes that it provide the documents in dispute to the Court for *in camera* review to aid it in making its determination should the Court deem this helpful.

**B.     The Application of the Fiduciary Exception to the Documents in Question is Unclear and Requires a Privilege Determination by this Court in Order to Prevent the Possibility of a Subject Matter Privilege Waiver that could Cause Needless Injury to Kelly-Moore**

Although the fiduciary exception to the attorney-client privilege is itself well established, its application is decided on a case-by-case basis. Examination of case law reveals that it is difficult to

establish clear parameters for application of the doctrine to the documents in question. As discussed above, Kelly-Moore is presently conducting crucial litigation with its asbestos insurance carriers concerning the extent of its coverage. Because the documents in question are attorney-client communications that relate to such coverage, Kelly-Moore is concerned that voluntarily producing the documents could provide an argument to the defendants in the coverage case that such production did not in fact fall within the fiduciary exception and therefore resulted in a wide subject matter waiver of the attorney-client privilege. The application of such a subject matter waiver to the files of the attorneys litigating the coverage litigation could cause serious injury to Kelly-Moore.

While the documents in question may fall under the fiduciary exception as claimed by the plaintiffs because the information being discussed was sought by the company in connection with determining what information to provide to the ESOP participants and the ESOP Trustee, the fact that the documents deal with matters relevant to insurance coverage for asbestos claims against Kelly-Moore, and thus do not deal directly with the administration of the ESOP, and the fact that the documents relate to the time period during which the Plan was in the process of adoption, makes this a borderline situation – it is impossible to predict with certainty whether the voluntary production of these documents could be later held to create a waiver that would extend beyond the documents in question.

### III.  CONCLUSION

Because it is important to Kelly-Moore, given the on-going coverage litigation, to insure that no such waiver argument is created by the voluntary production of these documents, Kelly-Moore joins plaintiffs in seeking a ruling by the Court concerning whether the documents fall under the fiduciary exception, and an order directing that the two documents in question be produced to the beneficiaries of the Plan in this litigation if it is found that they do fall within the fiduciary exception.

//
//
//

Case C06-07339 MJJ    5    KMH DEFENDANTS OPPOSTION TO MOTION TO COMPEL

| | | |
|---|---|---|
| 1 | Dated: November 19, 2007 | LOVITT & HANNAN, INC. |

By:_____/s/_____
        Terence F. Young
Attorneys for Defendants K-M Industries
Holding Co., Inc.; K-M Industries Holding Co.,
Inc. ESOP Plan Committee; and CIG ESOP Plan
Committee