1  Daniel Feinberg – CA State Bar No. 135983
   Todd F. Jackson – CA State Bar No. 202598
2  Margaret E. Hasselman – CA State Bar No. 228529
   Nina R. Wasow – CA State Bar No. 242047
3  LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
   1330 Broadway, Suite 1800
4  Oakland, CA  94612
   Telephone: (510) 839-6824
5  Facsimile: (510) 839-7839
   Email:  dfeinberg@lewisfeinberg.com
6  Email:  tjackson@lewisfeinberg.com
   Email:  mhasselman@lewisfeinberg.com
7
   *Attorneys for Plaintiffs and the Proposed Class*
8  (Additional counsel listed within)

9

10                  IN THE UNITED STATES DISTRICT COURT

11             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO AND OAKLAND DIVISION

13

| | |
|---|---|
| 14  THOMAS FERNANDEZ and LORA SMITH, individually and on behalf of a class of all other | ) Case No. C-06-07339 MJJ |
| 15  persons similarly situated, | ) **STIPULATION RE: SECOND** |
| | ) **AMENDED COMPLAINT** |
| 16          Plaintiffs, | ) |
| | ) |
| 17       vs. | ) |
| | ) |
| 18  K-M INDUSTRIES HOLDING CO., INC.; | ) |
| K-M INDUSTRIES HOLDING CO., INC. | ) |
| 19  ESOP PLAN COMMITTEE; WILLIAM E. | ) |
| AND DESIREE B. MOORE REVOCABLE | ) |
| 20  TRUST; TRUSTEES OF THE WILLIAM E. | ) |
| AND DESIREE B. MOORE REVOCABLE | ) |
| 21  TRUST; CIG ESOP PLAN COMMITTEE; | ) |
| NORTH STAR TRUST COMPANY; | ) |
| 22  DESIREE B. MOORE REVOCABLE TRUST; | ) |
| WILLIAM E. MOORE MARITAL TRUST; | ) |
| 23  WILLIAM E. MOORE GENERATION- | ) |
| SKIPPING TRUST; and DESIREE MOORE, | ) |
| 24  BOTH IN HER INDIVIDUAL CAPACITY | ) |
| AND AS TRUSTEE OF THE WILLIAM E. | ) |
| 25  AND DESIREE B. MOORE REVOCABLE | ) |
| TRUST'S SUCCESSOR TRUSTS NAMED | ) |
| 26  ABOVE, | ) |
| | ) |
| 27          Defendants. | ) |
| | ) |
| 28 | |

1    IT IS HEREBY STIPULATED by and between the parties hereto though their respective

2  attorneys of record that Plaintiffs may file a Second Amended Complaint, a copy of which is

3  attached hereto.  In so stipulating, none of the parties are waiving or compromising any claim or

4  defense that any party may have.

5    I, Daniel Feinberg, attest, pursuant to General Order No. 45, Rule X, that counsel for all

6  parties concurred in the filing of this document.

7

8

9                                         Respectfully submitted,

10  Dated: December 4, 2007              LEWIS, FEINBERG, LEE,
                                         RENAKER & JACKSON, P.C.
11

12                         By:        /s/
                                      Daniel Feinberg
13
                                      LEWIS, FEINBERG, LEE,
14                                    RENAKER & JACKSON, P.C.

15                                    RUKIN HYLAND DORIA & TINDALL
                                      LLP
16
                                      *Attorneys for Plaintiffs*
17                                    *and the Proposed Class*

18
   Dated: December 4, 2007              LOVITT & HANNAN, INC.
19

20                         By:        /s/
                                      Henry Bornstein
21                                    *Attorneys for Defendant K-M Industries*
                                      *Holding Co., Inc.; K-M Industries Holding*
22                                    *Co., Inc. ESOP Plan Committee; and CIG*
                                      *ESOP Plan Committee*
23

24  Dated: December 4, 2007              HENNIGAN, BENNETT & DORMAN
                                         LLP
25

26                         By:        /s/
                                      Robert L. Palmer
27                                    *Attorneys for Defendant William E. and*
                                      *Desiree B. Moore Revocable Trust; Desiree*
28                                    *B. Moore Revocable Trust; William E.*

1

2

3

*Moore Marital Trust; William E. and*
*Desiree B. Moore Revocable Trust*
*Generation-Skipping Trust; and Desiree*
*Moore*

4

Dated: December 4, 2007____                MORGAN, LEWIS & BOCKIUS LLP

5

6                                By:        _____/s/_____

7                                           Nicole Diller
                                            *Attorneys for Defendant North Star Trust*
8                                           *Company*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel Feinberg – CA State Bar No. 135983
Todd F. Jackson – CA State Bar No. 202598
Margaret E. Hasselman – CA State Bar No. 228529
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA  94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
Email:  dfeinberg@lewisfeinberg.com
         tjackson@lewisfeinberg.com
         mhasselman@lewisfeinberg.com

Peter Rukin – CA State Bar No. 178336
RUKIN HYLAND & DORIA LLP
100 Pine Street
Suite 725
San Francisco, CA
Telephone: (415) 421-1800
Facsimile: (415) 421-1700
Email:  peterrukin@rhddlaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO AND OAKLAND DIVISION

| | |
|---|---|
| THOMAS FERNANDEZ, LORA SMITH, and TOSHA THOMAS,  individually and on behalf of a class of all other persons similarly situated, ) ) ) ) | Case No. C-06-07339 MJJ |
| Plaintiffs, ) ) | |
| vs. ) | SECOND AMENDED COMPLAINT – CLASS ACTION |
| ) | |
| K-M INDUSTRIES HOLDING CO., INC.; K-M INDUSTRIES HOLDING CO., INC. ESOP PLAN COMMITTEE; WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; TRUSTEES OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; ADMINISTRATOR OF THE ESTATE OF WILLIAM E. MOORE, DECEASED;  CIG ESOP PLAN COMMITTEE; and NORTH STAR TRUST COMPANY, ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants ) ) | |

## JURISDICTION AND VENUE

1.     This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., and is brought by Plaintiffs to enjoin acts and practices which violate the provisions of Title I of ERISA, to make good to the Plan losses resulting from fiduciary violations, restore to the Plan any profits which have been made by the breaching fiduciaries through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.

2.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

3.     Venue is properly laid in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the employee benefit plan at issue was administered in this District during the relevant time, some or all of the events or omissions giving rise to the claims occurred in this District, and one or more of the Defendants may be found in this District.

## INTRA-DISTRICT ASSIGNMENT

4.     This action arises in San Mateo County in that the employee benefit plan at issue is administered in San Carlos, California, and some of the breaches alleged took place in San Carlos, California.

## PARTIES

5.     At all relevant times,  Plaintiff Thomas Fernandez has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the K-M Industries Holding Co., Inc. Employee Stock Ownership Plan ("the KMH Plan") or one of its predecessor plans, the California Capital Insurance Company Employee Stock Ownership Plan ("the CIG Plan"). Plaintiff Fernandez resides in San Ramon, California.  Plaintiff Fernandez was employed by CIG from in or about July 1996, until in or about October 2005.

6.     At all relevant times,  Plaintiff Lora Smith has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the KMH Plan or one of its predecessor plans, the CIG Plan.  Plaintiff Smith resides in Modesto, California.  Plaintiff Smith was employed by CIG from

1   in or about September 1996, until in or about October 2001.

2         7.     Since January 2001, Plaintiff Tosha Thomas has been a participant, as defined in

3   ERISA § 3(7), 29 U.S.C. § 1002(7), in the KMH Plan. Plaintiff Thomas resides in South San

4   Francisco, California. Plaintiff Thomas was employed by Kelly Moore Paint from in or about

5   July 2000, until in or about July 2007. She worked for Paint continuously during that time, with

6   the exception of a one week-period in 2001.

7         8.     At all relevant times, Defendant K-M Industries Holding Co., Inc. ("KMH") was

8   the Sponsor of the KMH Plan, within the meaning of ERISA § 3(16)(B). At some or all relevant

9   times, Defendant KMH was also the Administrator of the KMH Plan, within the meaning of

10   ERISA § 3(16)(A), and a fiduciary of the KMH Plan, within the meaning of ERISA § 3(21)(A),

11   29 U.S.C. § 1002(21). On information and belief, Defendant KMH was a fiduciary under

12   ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or

13   discretionary control respecting management of the KMH Plan, and/or exercised authority or

14   control respecting management or distribution of the KMH Plan's assets, and/or had

15   discretionary authority or discretionary responsibility in the administration of the KMH Plan.

16   Under the terms of the KMH Plan, Defendant KMH was responsible for appointing the

17   Defendant K-M Industries Holding Co., Inc. ESOP Plan Committee ("KMH Plan Committee").

18         9.     At all relevant times, Defendant William E. and Desiree B. Moore Revocable

19   Trust ("Moore Trust") was a "party in interest" of the KMH Plan as defined in ERISA § 3(14),

20   29 U.S.C. § 1002(14). Upon information and belief, William E. Moore, now deceased, was a

21   trustee and settlor of the Moore Trust. Upon information and belief, Desiree B. Moore is and

22   was a trustee and settlor of the Moore Trust.

23         10.     At all relevant times, Defendant KMH delegated to Defendant KMH Plan

24   Committee the duties of acting as the plan administrator of the KMH Plan, and Defendant KMH

25   Plan Committee undertook these duties. At all relevant times, therefore, Defendant KMH Plan

26   Committee was a fiduciary of the KMH Plan, within the meaning of ERISA § 3(21)(A), 29

27   U.S.C. § 1002(21)(A). On information and belief, Defendant KMH Plan Committee was also a

28

fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.  On information and belief, at some relevant times, the sole member of the KMH Plan Committee was William E. Moore, who on information and belief was also a trustee and settlor of the Moore Trust.

11.    William E. Moore ("Moore"), decedent of Defendant Administrator of the Estate of William E. Moore, Deceased, was a founder of Kelly-Moore Paint Co.  On information and belief, at all relevant times until his death on November 21, 2004, Moore was the Chairman of Defendant KMH, the "plan sponsor" of the KMH Plan within the meaning of  ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).  In addition, at all relevant times, Moore was a "party in interest" as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).   Upon information and belief, Moore was a trustee and settlor of the Defendant Moore Trust.  Upon information and belief, the Administrator of the Estate of William E. Moore can be found in San Mateo County, California. On information and belief, Defendant Willaim E. Moore was a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that he exercised discretionary authority or discretionary control respecting management of the KMH Plan and its predecessors, and/or exercised authority or control respecting management or distribution of the KMH Plan's assets and its predecessors' assets, and/or had discretionary authority or discretionary responsibility in the administration of the KMH Plan and its predecessors.

12.    Defendant CIG ESOP Plan Committee was the named fiduciary of the CIG Plan, (one of the predecessor plans to the KMH Plan) within the meaning of ERISA § 402, 29 U.S.C. § 1102, and the Administrator of the CIG Plan within the meaning of ERISA § 3(16)(A).  At all relevant times, therefore, Defendant Plan Committee was a fiduciary of the KMH Plan, within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  On information and belief, Defendant CIG ESOP Plan Committee was a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or discretionary control respecting

1    management of the KMH Plan and the CIG Plan, and/or exercised authority or control

2    respecting management or distribution of the KMH Plan's assets and the CIG Plan's assets,

3    and/or had discretionary authority or discretionary responsibility in the administration of the

4    KMH Plan.  The CIG Plan was merged into the KMH Plan on or about July 16, 1999.  On

5    information and belief, at some or all relevant times, the sole member of the Defendant CIG Plan

6    Committee was William E. Moore, who, on information and belief, was also a trustee and settlor

7    of the Moore Trust.

8        13.    Defendant North Star Trust Company ("North Star")  is a company with its

9    principal place of business in Chicago, Illinois.  On information and belief, Defendant North Star

10    acted as trustee of the KMH Plan following the death of prior trustee William E. Moore.  As

11    trustee of the KMH Plan, Defendant North Star was a fiduciary of the KMH Plan pursuant to

12    ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or

13    discretionary control respecting management of the KMH Plan, and/or exercised authority or

14    control respecting management or distribution of the KMH Plan's assets, and/or had

15    discretionary authority or discretionary responsibility in the administration of the KMH Plan.

16        14.    Defendants KMH, KMH Plan Committee, CIG Plan Committee, Administrator of

17    the Estate of William E. Moore, and North Star are sometimes referred to as the "Defendant

18    Fiduciaries."

19                                  **FACTS**

20                              **Company History**

21        15.    KMH is a California company that owns Kelly-Moore Paint Company ("Kelly-

22    Moore Paint"), a leading manufacturer and seller of paint and paint-related products.  KMH also

23    owns Capital Insurance Group ("CIG"), formerly known as California Capital Insurance Group,

24    an insurance company that underwrites property and casualty risks for personal and commercial

25    businesses through independent agents, serving California and other western states.  KMH and

26    Kelly-Moore Paint have their principal places of business in San Carlos, California, and CIG's

27    principal place of business is in Monterey, California.

28

16.     In the 1960's and 1970's, Kelly-Moore manufactured products that contained asbestos provided by Union Carbide Corp.  As a result, Kelly-Moore has been the target of over 48,000 lawsuits alleging that its products are responsible for causing cancer and other diseases in their users.  Kelly-Moore continues to face thousands of lawsuits over its use of asbestos, and it argued in a 2004 lawsuit against Union Carbide in Texas that the lawsuits threaten its ongoing viability.

17.     In or around 1985, Kelly-Moore Paint Co. purchased the Calmutual Insurance Company, which later grew through subsequent acquisitions and is now known as Capital Insurance Group ("CIG").

18.     In 1998, the management of Kelly-Moore Paint formed KMH and transferred all the common stock of Kelly-Moore Paint and CIG to KMH.  KMH became the sole owner of both Kelly-Moore Paint and CIG.  Defendant Moore Trust was the largest shareholder in KMH in 1998 and remains the largest shareholder.

19.     Also in 1998, KMH established "tracking stocks" to separately track the performance of its two main subsidiary businesses.  "Series P stock" was designed to track the performance of Kelly-Moore Paint and its affiliates, and "Series I stock" was designed to track the performance of CIG and its affiliates.

20.     In 2004, KMH sued Union Carbide in Texas for fraud in connection with its provision of asbestos to KMH.  In the lawsuit, KMH argued that Union Carbide concealed information about asbestos's harmful effects from KMH.  In Fall of 2004, a jury found that KMH had been aware of asbestos's harmful effects since approximately 1964, before it ever purchased asbestos from Union Carbide.

### ESOP History

21.     In 1998, CIG established the CIG ESOP as an employee stock ownership plan, as defined in Internal Revenue Code § 4975(e)(7).

22.     Also in 1998, Kelly-Moore Paint established the Kelly-Moore Paint Company ESOP (the "Paint Plan") as an employee stock ownership plan, as defined in Internal Revenue

1    Code § 4975(e)(7).

2        23.    On July 16, 1999, the CIG Plan was merged into the Paint Plan and renamed the

3    K-M Industries Holding Co., Inc. ESOP ("KMH Plan"), also an employee stock ownership plan,

4    as defined in Internal Revenue Code § 4975(e)(7).  At all relevant times, the KMH Plan was an

5    employee pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2).  At all

6    relevant times, the Plan was administered in San Carlos, California.  The KMH Plan provides for

7    allocation of different tracking stocks to plan participants depending on the participants'

8    employer.  Series P stock of KMH (tracking the performance of Kelly-Moore Paint) is allocated

9    only to the accounts of employees of Kelly-Moore Paint and its affiliates.  Series I stock

10   (tracking the performance of CIG) is allocated only to the accounts of employees of CIG and its

11   affiliates.

12                                    **ESOP Transactions**

13       24.    Upon information and belief, William Moore acted on behalf of both the Moore

14   Trust and the Plans in the transactions alleged herein.

15       25.    Upon information and belief, on or about October 13, 1998, the Paint Plan

16   purchased approximately 33,745,455 shares of KMH Series P stock from the Defendant Moore

17   Trust for approximately $6.88 per share, for a total purchase price of approximately $232

18   million.  To fund the purchase, the Paint Plan borrowed the entire approximately $232 million

19   from KMH, which had in turn borrowed $136 million from CIG.  The share price for the

20   October 13, 1998 purchase of KMH Series P stock was established by a valuation report of the

21   Kelly-Moore Paint Co., purporting to value the company as of October 13, 1998.

22       26.    Upon information and belief, the Defendant Fiduciaries failed to ensure that they

23   secured an independent expert assessment of the fair market value of the KMH Series P stock

24   purchased by the Paint Plan on October 13, 1998.

25       27.    Upon information and belief, the Defendant Fiduciaries failed to investigate

26   adequately the qualifications of any valuation expert retained to prepare the valuation of KMH in

27   connection with the October 13, 1998 purchase of KMH Series P stock by the Paint Plan.

28

1        28.      Upon information and belief, the Defendant Fiduciaries failed to provide complete

2  and accurate information regarding KMH to any valuation expert for use in the valuation

3  prepared in connection with the purchase of KMH Series P stock by the Paint Plan.

4        29.      Upon information and belief, the Defendant Fiduciaries failed to make certain that

5  reliance on any valuation expert's advice was reasonably justified under the circumstances of the

6  purchase of KMH Series P stock by the Paint Plan.

7        30.      Upon information and belief, the valuation report of Kelly-Moore Paint Co.

8  prepared in connection with the October 13, 1998 transaction failed to take into account KMH's

9  potential liability in asbestos-related litigation, even though information that the company faced

10  significant liability was known to KMH management, including Moore and other fiduciaries, at

11  the time.

12        31.      Upon information and belief, the valuation report also failed to discount the

13  purchase price of the stock to account for the fact that the stock purchased by the Paint Plan was

14  tracking stock, which generally trades at a discount relative to ordinary common stock.

15        32.      On or about October 13, 1999, following the merger of the plans described

16  above, the KMH Plan purchased approximately 8,400,000 million shares of KMH Series I stock

17  from the Defendant Moore Trust for $6.54 per share, for a total purchase price of approximately

18  $55 million.  To fund the purchase, the KMH Plan borrowed approximately $55 million from

19  KMH.  The share price for this transaction was established by a valuation report of CIG

20  purporting to value CIG as of October 13, 1999.

21        33.      On December 31, 1999, KMH Series I stock was valued at $3.66 per share, or

22  approximately 56 percent of what the KMH Plan had paid only six weeks earlier.

23        34.      Upon information and belief, the Defendant Fiduciaries failed to ensure that they

24  secured an independent expert assessment of the fair market value of the KMH Series I stock

25  purchased by the KMH Plan on October 13, 1999.

26        35.      Upon information and belief, the Defendant Fiduciaries failed to investigate

27  adequately the qualifications of any valuation expert retained to prepare the valuation of KMH in

28

2ᴺᴰ AMENDED COMPLAINT – CLASS ACTION      C-06-07339 MJJ

1    connection with the October 13, 1999 purchase of KMH Series I stock by the KMH Plan.

2        36.    Upon information and belief, the Defendant Fiduciaries failed to provide complete

3    and accurate information regarding KMH to any valuation expert for use in the valuation

4    prepared in connection with the purchase of KMH Series I stock by the KMH Plan.

5        37.    Upon information and belief, the Defendant Fiduciaries failed to make certain that

6    reliance on any valuation expert's advice was reasonably justified under the circumstances of the

7    purchase of KMH Series I stock by the KMH Plan.

8        38.    Upon information and belief, the valuation report of CIG prepared in connection

9    with the October 13, 1999 transaction failed to take into account KMH's potential liability in

10   asbestos-related litigation, even though information that the company faced significant liability

11   was known to KMH management, including Moore and other fiduciaries, at the time.

12       39.    Upon information and belief, the valuation report of CIG also failed to properly

13   discount the purchase price of the KMH Series I stock to account for the fact that the stock

14   purchased by the Plan was tracking stock, which generally trades at a discount relative to

15   ordinary common stock.

16       40.    Upon information and belief, neither KMH, nor the fiduciaries of the Plans,

17   appointed an independent fiduciary to represent the Paint Plan or the KMH Plan in the

18   transactions alleged above.  Upon information and belief, William Moore acted on behalf of both

19   buyer and seller in both transactions.

20       41.    On information and belief, at the times of the Plans' purchases of KMH Series P

21   and Series I stock from the Defendant Moore Trust, KMH management, including William

22   Moore and the other Defendant Fiduciaries, was aware of the potential liabilities facing the

23   company as a result of asbestos-related litigation.  Upon information and belief, KMH

24   management, including Moore and other fiduciaries of the Plans, withheld information about

25   KMH's potential asbestos liability from the valuators retained to determine the value of KMH

26   stock for purposes of the Plan transactions until in or about late 2002 or early 2003.

27       42.    Upon information and belief, the Defendant Fiduciaries failed to make an honest,

28

2ND AMENDED COMPLAINT – CLASS ACTION        C-06-07339 MJJ

1   objective effort to read the valuation reports, understand them, and question the methods and

2   assumptions that did not make sense.

3         43.    In Plan Years 2003 and 2004, the Defendant Fiduciaries failed to obtain a

4   valuation of the Series I and Series P stock held by the KMH Plan, failed to file IRS Form 5500s

5   on behalf of the KMH Plan as required by law, and failed to provide Summary Annual Reports of

6   the KMH Plan to KMH Plan participants as required by law.

7         44.    Valuations of KMH's Series I stock as of December 31, 2003, and December 31,

8   2004, performed in 2005, failed to consider the impact of KMH's asbestos liability on Series I

9   stock of KMH.  Valuation reports of Series I stock prepared for plan years 2000 and 2001 do

10   not mention potential asbestos liability at all, and the valuation report for plan year 2002 contains

11   only a brief mention of potential asbestos liability.

12   .    45.    Upon information and belief, in or about 2005, the KMH Plan Committee, KMH,

13   and/or CIG re-negotiated the terms of the loan to the Plan used to purchase KMH shares.

14         46.    Since KMH stock is and was not readily tradable on an established market, IRC §

15   409(h)(4) requires and has required at all relevant times that KMH give terminated participants

16   the right to have KMH repurchase the KMH securities held in their Plan accounts pursuant to a

17   put option.  In the event that a participant terminates for a reason other than death, disability, or

18   normal retirement, IRC § 409(o)(1)(A)(ii) also requires and has required at all relevant times that

19   the Plan commence distribution of the participant's account not later than 1 year after the close

20   of the fifth plan year following the plan year in which the participant separates from service.

21         47.    When Plaintiff Smith contacted CIG regarding her put option in 2006, she was

22   informed by CIG that KMH would not be able repurchase her shares until 2014 because of new

23   loan terms.

24         48.    Upon information and belief, Defendant Fiduciaries have not informed Plan

25   participants that re-negotiated loan terms impair their put option rights.

26         49.    The Plan paid substantially more than fair market value for the KMH stock

27   purchased from the Moore Family Trust in 1998 and 1999.  The Defendant Fiduciaries could

28

1   have corrected the Plans' overpayment for KMH stock at any time since October 13, 1998, by

2   obtaining an independent valuation based on all relevant information, including but not limited to

3   full disclosure of KMH's financial state, including KMH's potential asbestos liabilities, and then

4   seeking a refund from the Moore Trust of any amount by which such a valuation demonstrated

5   that the Plans had overpaid for KMH stock.  Despite this opportunity, Defendant Fiduciaries

6   failed to take any action to cure the breaches of fiduciary duty and prohibited transactions, and in

7   fact continued to intentionally withhold information about KMH's potential asbestos liabilities

8   from valuators, thereby continuing the breaches of fiduciary duty that began in 1998.

9       50.    Upon information and belief, until the Fall of 2004, Defendant Fiduciaries and

10  KMH management intentionally withheld information about the extent of KMH's potential

11  asbestos liability from participants who were active employees, including Plaintiffs Fernandez and

12  Thomas, that would have shown them and other participants that the Plans overpaid for KMH

13  stock.  The Defendant Fiduciaries have intentionally withheld information about the extent of

14  KMH's potential asbestos liability from participants who are terminated employees, including

15  Plaintiff Smith.

16      51.    Plaintiff Fernandez had no knowledge that the Plans' purchases of KMH stock

17  may have been for more than fair market value, including but not limited to knowledge that more

18  than fair market value may have been paid due to potential asbestos liability, until he was

19  informed of the jury verdict in the Union Carbide lawsuit in October of 2004.  Plaintiff Smith had

20  no knowledge that the Plans' purchases of KMH stock may have been for more than fair market

21  value, including but not limited to knowledge that more than fair market value may have been

22  paid due to potential asbestos liability, until she was informed by letter in February of 2005 that

23  no valuation of the Plan's stock had been completed for 2003 due to issues related to potential

24  asbestos liability.  Plaintiff Thomas was unaware that Kelly Moore was liable to numerous

25  plaintiffs for asbestos litigation until in or about 2005, and had no knowledge that the Plans'

26  purchase of KMH stock may have been for more than fair market value, including but not limited

27  to knowledge that more than fair market value may have been paid due to potential asbestos

28  liability, until 2007.  Plaintiffs Fernandez and Smith had no knowledge that the Plans' purchase

1  of KMH stock may have been for more than fair market value due to the failure to discount the

2  purchase price of the stock to account for the fact that the stock purchased by the Plan was

3  tracking stock until the Plan Committee provided copies of valuation reports to Plaintiffs'

4  counsel in 2006.  Plaintiff Thomas had no knowledge of this until 2007.  Plaintiffs have never had

5  any knowledge regarding any steps taken by any Plan fiduciaries to determine the share price for

6  the October 13, 1998 transaction or the October 13, 1999 transaction.

7                                    **CLASS ALLEGATIONS**

8         52.     Plaintiffs bring the First and Second Claims for Relief for violations of ERISA §§

9  503(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), as a class action pursuant to

10  Fed. R. Civ. P. 23 (a) and (b), on behalf of all persons other than Defendants who were

11  participants in the KMH Plan on October 13, 1998, or at any time thereafter, and/or beneficiaries

12  of KMH Plan participants on October 13, 1998 or at any time thereafter (hereinafter "Class

13  Plaintiffs").

14        53.     The Plaintiff Class is so numerous that joinder of all members is impracticable.

15  Plaintiff is informed and believes, and on that basis alleges, that over 2,500 employees and former

16  employees were participants, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the KMH Plan

17  and held shares of KMH stock in their individual accounts as of December 31, 2004.  Although

18  the exact number and identities of Class Members are unknown to Plaintiff at this time, this

19  information is easily ascertainable from the KMH Plan through discovery of its records**.**

20        54.     Questions of law and fact common to the Plaintiff Class as a whole include, but

21  are not limited to, the following:

22               i.      Whether William E. Moore acted on behalf of both the Moore Trust and

23  the Kelly-Moore Paint Plan in the October 13, 1998 sale of Series P stock of KMH by the Moore

24  Trust to the Paint Plan;

25               ii.     Whether William E. Moore acted on behalf of both the Moore Trust and

26  the CIG Plan in the October 13, 1999 sale of Series I stock of KMH by the Moore Trust to the

27  CIG Plan;

28               iii.    Whether Defendant Moore Trust was a party in interest to the Paint Plan

1   at the time of the October 13, 1998 sale of Series P stock in KMH by the Moore Trust to the

2   Paint Plan and at other times thereafter;

3           iv.   Whether Defendant Moore Trust was a party in interest to the CIG Plan at

4   the time of the October 13, 1999 sale of Series I stock in KMH by the Moore Trust to the CIG

5   Plan and at other times thereafter;

6           v.    Whether Defendants engaged in a prohibited transaction under ERISA by

7   permitting the Paint Plan to purchase Series P stock of KMH from Defendant Moore Trust in

8   October 1998 for more than adequate consideration;

9           vi.   Whether Defendants engaged in a prohibited transaction under ERISA by

10  permitting the CIG Plan to purchase Series I stock of KMH from Defendant Moore Trust in

11  October 1999 for more than adequate consideration;

12          vii.  Whether Defendant Fiduciaries engaged in a prudent investigation of the

13  proposed sale of Series P KMH stock by Defendant Moore Trust to the Paint Plan;

14          viii. Whether Defendant Fiduciaries engaged in a prudent investigation of the

15  proposed sale of Series I KMH stock by Defendant Moore Trust to the KMH Plan;

16          ix.   Whether Defendant Fiduciaries breached a fiduciary duty to Paint Plan

17  participants by purchasing Defendant Moore Trust's KMH Series P stock in October 1998 for

18  more than fair market value;

19          x.    Whether Defendant Fiduciaries breached their fiduciary duties to KMH

20  Plan participants by failing to obtain a proper valuation of KMH Series I and Series P stock held

21  by the KMH Plan from January 1, 1998, to the present;

22          xi.   Whether Defendant Fiduciaries breached their fiduciary duties to KMH

23  Plan participants by failing to obtain a timely valuation of the KMH stock held by the KMH Plan,

24  and failing to timely file IRS Form 5500s, for plan years 2003-2004;

25          xii.  Whether Defendant Fiduciaries breached their fiduciary duties to KMH

26  Plan participants by failing to correct the overpayments by the KMH Plan and its predecessor

27  plans for Series I and Series P KMH stock from October 13, 1998, to the present.

28          55.   Plaintiffs' claims are typical of those of the Plaintiff Class. Plaintiffs, like other

2ND AMENDED COMPLAINT – CLASS ACTION        C-06-07339 MJJ

1   Plan participants in the Plaintiff Class, suffered a diminution in the values of their KMH and

2   predecessor plan accounts when the Plans purchased KMH stock owned by Defendant Moore

3   Trust for more than fair market value, and continue to suffer such losses in the present because

4   Defendant Fiduciaries have failed to correct the overpayment by the KMH Plan and its

5   predecessor plans.

6          56.     Plaintiffs will fairly and adequately represent and protect the interests of the

7   Plaintiff Class.  Plaintiffs have retained counsel competent and experienced in complex class

8   actions, ERISA, and employee benefits litigation.

9          57.     Class certification of Plaintiffs' First and Second Claims for Relief for violations

10  of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate

11  actions by individual Class members would create a risk of inconsistent or varying adjudications

12  which would establish incompatible standards of conduct for Defendants, and/or because

13  adjudications with respect to individual Class members would as a practical matter be dispositive

14  of the interests of non-party Class members.

15         58.     In addition, Class certification of Plaintiffs' First and Second Claims for Relief for

16  violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have

17  acted or refused to act on grounds generally applicable to the Class, making appropriate

18  declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.  The members

19  of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary

20  violations.

21         59.     The names and addresses of the Plaintiff Class are available from the KMH Plan.

22  Notice will be provided to all members of the Plaintiff Class to the extent required by Rule 23.

23

24                              **FIRST CLAIM FOR RELIEF**
                  **[Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3),**
25             **29 U.S.C. §§ 1132(a)(2) and (a)(3), Against All Defendant Fiduciaries]**

26         60.     Plaintiffs incorporate Paragraphs 1-59 as though set forth herein.

27         61.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia,* that a plan

28  fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants

2ND AMENDED COMPLAINT – CLASS ACTION          C-06-07339 MJJ

1  and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then

2  prevailing that a prudent person acting in a like capacity and familiar with such matters would

3  use in the conduct of an enterprise of a like character and with like aims.

4      62.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a

5  fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or

6  duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the

7  plan any losses to the plan resulting from each such breach, and additionally is subject to such

8  other equitable or remedial relief as the court may deem appropriate, including removal of the

9  fiduciary.

10     63.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring

11 an action for relief under ERISA § 409.

12     64.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring

13 an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or

14 to enforce the terms of a plan.

15     65.    Defendant Fiduciaries have breached their duties of loyalty and prudence under

16 ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).  These breaches include but are not limited to the

17 following:  causing the Plans to pay more than fair market value for KMH stock; failing to

18 conduct a thorough and independent review and adequately consider whether the October 13,

19 1998 purchase of KMH Series P stock, and the October 13, 1999 purchase of KMH Series I

20 stock from Defendant Moore Trust was in the best interests of the Plan participants; failing to

21 undertake an adequate and independent valuation of the KMH stock prior to those transactions;

22 failing to ensure that they secured an independent expert assessment of the fair market value of

23 KMH stock prior to those transactions; failing to investigate adequately the qualifications of any

24 and all valuation experts retained to prepare the valuations of KMH stock in connection with the

25 transactions; failing to provide complete and accurate information regarding KMH to such

26 valuation experts for use in the valuations prepared in connection with the transactions; failing to

27 make certain that reliance on any and all valuation experts' advice was reasonably justified under

28 the circumstances of the transactions; failing adequately to consider how KMH's potential

2ND AMENDED COMPLAINT – CLASS ACTION        C-06-07339 MJJ

asbestos liabilities affected the value of KMH Series I and Series P stock; failing adequately to

consider that the status of KMH Series I and Series P stock as "tracking stock" affected its

value; failing to make an honest, objective effort to read the valuation reports, understand them,

and question the methods and assumptions that did not make sense; failing to seek a refund of

the KMH Plan's overpayment for KMH stock at any time between 1998 and the present;

overvaluing the KMH stock purchased from Defendant Moore Trust by the KMH Plan in

October 1998 and October 1999; withholding information about KMH's potential asbestos

liabilities from valuators; and violating the terms of the plan document of the KMH Plan by

refusing to redeem Plaintiff Smith's put option on the schedule established by the KMH Plan.

Defendants' repeated failures to seek a refund of the Paint Plan's overpayment for KMH Series I

stock at any time between 1999 and the present constitute part of the 1999 prohibited

transaction. Defendants could have cured the breaches at any time since October 13, 1998, by

securing an independent valuation of the KMH Series I and Series P stock purchased by the

Plans and seeking a refund from the Moore Trust of any amount by which such valuation

determined the Plans overpaid the Moore Trust.

    66.    Each Defendant Fiduciary is also liable as a co-fiduciary with respect to each

 fiduciary violation by each other fiduciary of the Plan under ERISA § 405, 29 U.S.C. § 1105, to

the extent that:  (a) any fiduciary has participated knowingly in, or has knowingly undertaken to

conceal, an act or omission of any other fiduciary, knowing such action is a breach; (b) by his,

her, or its failure to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), he, she, or it has

enabled such other fiduciary to commit a breach; or (c) if he, she, or it has had knowledge of a

breach by any other fiduciary, unless he, she, or it has made reasonable efforts under the

circumstances to remedy the breach.

    67.    Defendant Fiduciaries' actions caused millions of dollars of losses to the Plan in

an amount to be proven more specifically at trial.

**SECOND CLAIM FOR RELIEF**
**[Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(a)-(b),**
**29 U.S.C. §§ 1106(a)-(b), Against All Defendants]**

    68.    Plaintiffs incorporate Paragraphs 1-59 as though set forth herein.

69.     ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

70.     ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "deal with the assets of the plan in his own interest or for his own account," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

71.     ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration.  ERISA § 3(18)(B) defines adequate consideration as "the fair market of the asset as determined in good faith by the trustee or named fiduciary."  ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B) requires that the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

72.     Defendants engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), by failing to ensure that the Paint Plan paid fair market value for Series P stock of KMH held by the Moore Trust on October 13, 1998.  Specifically, the Paint Plan paid more than fair market value for shares sold by the Moore Trust, and Defendants failed to conduct an independent and prudent investigation into the fair market price before entering into the stock purchase agreement with Defendant Moore Trust.  Defendants' repeated failures to seek a refund of the Paint Plan's overpayment for KMH Series P stock at any time between 1998 and the present constitute part of the 1998 prohibited transaction.  Defendants could have cured the prohibited transaction at any time since October 13, 1998, by securing an independent valuation of KMH Series P stock as of October 13, 1998, and seeking a refund from the Moore

1    Trust of any amount by which such valuation determined the Paint Plan overpaid the Moore

2    Trust.

3           73.     Defendants engaged in a prohibited transaction in violation of ERISA §§ 406(a)-

4    (b), 29 U.S.C. §§ 1106(a)-(b), by failing to ensure that the KMH Plan paid fair market value for

5    Series I stock of KMH held by the Moore Trust on October 13, 1999.  Specifically, the KMH

6    Plan paid more than fair market value for shares sold by the Moore Trust, and Defendants failed

7    to conduct an independent and prudent investigation into the fair market price before entering

8    into the stock purchase agreement with Defendant Moore Trust.  Defendants' repeated failures

9    to seek a refund of the Paint Plan's overpayment for KMH Series I stock at any time between

10    1999 and the present constitute part of the 1999 prohibited transaction.  Defendants could have

11    cured the prohibited transaction at any time since October 13, 1999, by securing an independent

12    valuation of KMH Series I stock as of October 13, 1999, and seeking a refund from the Moore

13    Trust of any amount by which such valuation determined the KMH Plan overpaid the Moore

14    Trust.

15           74.     With respect to both the October 13, 1998 transaction and the October 13, 1999

16    transaction Defendants failed to, among other things, ensure that they secured an independent

17    expert assessment of the fair market value of KMH stock prior to those transactions; investigate

18    adequately the qualifications of any and all valuation experts retained to prepare the valuations of

19    KMH stock in connection with the transactions; provide complete and accurate information

20    regarding KMH to any valuation experts for use in the valuations prepared in connection with

21    the transactions; and make certain that reliance on any and all valuation experts' advice was

22    reasonably justified under the circumstances of the transactions.

23           75.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a

24    fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or

25    duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the

26    plan any losses to the plan resulting from each such breach, and additionally is subject to such

27    other equitable or remedial relief as the court may deem appropriate, including removal of the

28    fiduciary.

2ND AMENDED COMPLAINT – CLASS ACTION      C-06-07339 MJJ

76.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

77.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

78.    Defendant Moore Trust has profited in an amount to be proven at trial from the prohibited transaction by receiving more than fair market value for the KMH stock it sold to the Paint Plan on October 13, 1998, and to the KMH Plan on October 13, 1999.

79.    Defendant Fiduciaries have caused millions of dollars of losses to the KMH Plan by the prohibited transactions in an amount to be proven more specifically at trial.

80.    Each Defendant Fiduciary is also liable as a co-fiduciary with respect to each fiduciary violation by each other fiduciary of the Plan under ERISA § 405, 29 U.S.C. § 1105, to the extent that:  (a) any fiduciary has participated knowingly in, or has knowingly undertaken to conceal, an act or omission of any other fiduciary, knowing such action is a breach; (b) by his, her, or its failure to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), he, she, or it has enabled such other fiduciary to commit a breach; or (c) if he, she, or it has had knowledge of a breach by any other fiduciary, unless he, she, or it has made reasonable efforts under the circumstances to remedy the breach.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against the Defendants on each Claim for Relief and for the following relief:

**As to the First Claim for Relief:**

A.    Certify this action as a class action pursuant to F.R.Civ.P.23;

B.    Declare that the Defendant Fiduciaries, and each of them, have breached their fiduciary duties to the Plaintiff Class;

C.    Enjoin Defendant Fiduciaries, and each of them, from further violations of their fiduciary responsibilities, obligations and duties;

D.    Issue a preliminary and permanent injunction removing the Defendant

2ND AMENDED COMPLAINT – CLASS ACTION        C-06-07339 MJJ

Fiduciaries, and each of them, as members of the KMH Plan Committee and Trustees of the KMH Plan and/or barring the Defendant Fiduciaries, and each of them, from serving as members of the KMH Plan Committee or Trustees of the KMH Plan in the future, and appointing independent fiduciaries as Trustees and members of the KMH Plan Committee;

E.      Order that Defendant Fiduciaries and each of them, make good to the KMH Plan and/or to any successor trust(s) the losses resulting from their breaches and restoring any profits they have made through use of assets of the KMH Plan;

F.      Order that Defendant Fiduciaries provide other appropriate equitable relief to the KMH Plan, including but not limited to, by forfeiting their KMH Plan accounts, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held  by any of the Defendant Fiduciaries;

G.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

H.      Order Defendant Fiduciaries to pay prejudgment interest; and

I.      Award such other and further relief as the Court deems equitable and just.

**As to the Second Claim for Relief:**

A.      Certify this action as a class action pursuant to F.R.Civ.P.23;

B.      Declare that the Defendants, and each of them, have breached their fiduciary responsibilities and/or duties as parties in interest to the Plaintiff Class;

C.      Enjoin Defendants, and each of them, from further prohibited transactions and violations of their fiduciary responsibilities, obligations and duties.

D.      Issue a preliminary and permanent injunction removing the Defendant Fiduciaries, and each of them, as members of the KMH Plan Committee and Trustees of the KMH Plan and/or barring the Defendant Fiduciaries, and each of them, from serving as members of the KMH Plan Committee or Trustees of the KMH Plan in the future, and appointing independent fiduciaries as Trustees and members of the KMH Plan Committee;

E.      Declare that the Defendants and each of them engaged in  prohibited transactions

1  in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), by causing the Plan to purchase

2  KMH stock from Defendant Moore Trust for more than adequate consideration.

3      F.    Order Defendants, and each of them, make good to the KMH Plan and/or to

4  any successor trust(s) the losses resulting from their breaches and restoring any profits they have

5  made through use of assets of the KMH Plan,

6      G.    Order that Defendant Fiduciaries provide other appropriate equitable relief to the

7  KMH Plan, including but not limited to, by forfeiting their KMH Plan accounts, providing an

8  accounting for profits, imposing a constructive trust and/or equitable lien on any funds

9  wrongfully held by any of the Defendants, and/or tracing the KMH Plan assets received by

10  parties-in-interest;

11     H.    Order Defendant Moore Trust and/or other parties-in-interest to return the

12  payments it received for its KMH stock in October 1998 and October 1999 to the KMH Plan

13  along with any profits that it has earned on these payments, order Defendants to disgorge their

14  profit from the prohibited transactions to the KMH Plan, impose a constructive trust upon the

15  profits earned by any of the Defendants from violations of fiduciary obligations and duties as

16  parties in interest, order an accounting for profits by Defendants, trace the KMH Plan assets

17  received by the Defendant Moore Trust, and/or order other appropriate equitable relief.

18     I.    Order Defendants to pay prejudgment interest.

19     J.    Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein

20   pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the

21  common fund; and

22     K.    Award such other and further relief as the Court deems equitable and just.

23  Dated: November ___, 2007                Respectfully submitted,

24

25                                          LEWIS, FEINBERG, LEE,
                                            RENAKER & JACKSON, P.C.
26

27                              By: _____
                                            Daniel Feinberg
28                                          Attorneys for Plaintiffs