HENNIGAN, BENNETT & DORMAN LLP

LAWYERS

865 SOUTH FIGUEROA STREET

SUITE 2900

LOS ANGELES, CALIFORNIA 90017

TELEPHONE (213) 694-1200

FACSIMILE (213) 694-1234

DIRECT PHONE (213) 694-1149

PALMER@HBDLAWYERS.COM

February 19, 2008

**By Electronic Filing**

Hon. Bernard Zimmerman
U.S. District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA  94102-3426

      **Re:**    *Fernandez, et al. v. K-M Industries Holding Co., Inc., et al.*
              *Case No. C 06-07339 CW (BZ)*

Dear Judge Zimmerman:

    Defendants William E. and Desiree B. Moore Revocable Trust, Trustees of the William E. and Desiree B. Moore Revocable Trust, Desiree B. Moore Revocable Trust, William E. Moore Marital Trust, William E. Moore Generation-Skipping Trust and Desiree B. Moore (the "Moore Trust defendants") respond to plaintiffs' letter dated February 14, 2008, wherein they seek production of certain attorney-client privileged communications between counsel for the Moore Trust defendants and counsel for Kelly Moore. The Moore Trust defendants write to join Kelly Moore in asserting the attorney-client privilege as to those communications and to explain the nature of the common interest that protects such communications between the attorneys representing Kelly Moore and the Moore Trust defendants.

    Among the privileged documents sought by plaintiffs are those logged as nos. 164-66 and 207-09 on the Kelly Moore privilege log. These were communications between, on one hand, Pillsbury Winthrop ("PW") representing Kelly Moore and, on the other hand, Hennigan Bennett & Dorman LLP ("HBD") counsel for the Moore Trust and certain members of the Kelly Moore board of directors, in connection with matters of common interest. As such these communications are privileged. *United States. v. Bergonzi*, 216 F.R.D. 487, 495 (N.D.Cal. 2003) ("The common interest privilege, frequently referred to as the joint defense privilege, applies where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived.").

    At the time of these communications, Kelly Moore was defending many personal injury lawsuits all over the country, had filed coverage litigation against many of its insurers, and was contemplating the need to file for Chapter 11 protection from its creditors. The communications at issue here were part of an on-going course of confidential consultations and information exchanges

HENNIGAN, BENNETT & DORMAN LLP

Hon. Bernard Zimmerman
February 19, 2008
Page 2

between counsel for these parties. A Kelly Moore bankruptcy would, in addition to the obvious impact on Kelly Moore itself, have major potential implications for its directors and the Moore Trust, Kelly Moore's majority shareholder.

Among the considerations discussed and analyzed by counsel for these parties were potential claims of the ESOP and ESOP Trustee against the Company, its directors and/or the Moore Trust. As this case now stands witness, in the event the Company's asbestos troubles were to result in litigation by or on behalf of the ESOP and/or its participants, the likelihood was that these parties would all be, in some significant way, embroiled in such a dispute. Accordingly, when appropriate to their respective representations, PW and HBD consulted each other and exchanged information so they could, among other things, determine the proper course of conduct for the their clients vis-a-vis the ESOP and ESOP Trustee and protect their clients against potential future claims. Protecting their clients against such claims entailed, among other things, understanding and anticipating the claims that might be brought against others.

Log nos. 164-66 are versions of an email from PW on behalf of Kelly Moore to HBD as counsel for certain board members including Company founder William Moore. The email conveys and seeks consultation concerning certain requests and/or demands then being made of Kelly Moore by the ESOP Trustee. The communication discusses the legal implications of various courses of action open to the Company in responding to the ESOP Trustee's requests and/or demands. Log nos. 207-09 are versions of a PW email to HBD as counsel for the Moore Trust discussing the source and nature of a potential claim by the ESOP Trustee against the Moore Trust.

Plaintiffs' erroneously suggest that there has been a privilege waiver because there was no "joint defense" agreement between these parties at the time. These communications occurred between the attorneys for these separate parties in the course of dealing with matters of common interest; the communications were designed to further such common interests; and the privilege has not been waived by disclosure to strangers to the common interest but instead the confidentiality of these communications has been scrupulously maintained. As such they are within the "common interest" privilege, a well-recognized form of the joint defense privilege. *Bergonzi*, 216 F.R.D. at 496 ("The ["common interest"] privilege does not require a complete unity of interests among the participants, and it may apply where the parties' interests are adverse in substantial respects."). *See also, e.g., Modesto Irrigation District v. Gutierrez*, 2007 U.S. Dist. LEXIS 21949 (E.D.Cal., 2007).

For these reasons, the Moore Trust defendants urge that the Court recognize and honor the privileged nature of the communications represented by log nos. 164-166 and 207-209.

Sincerely,

Robert L. Palmer

RLP/cy