Daniel Feinberg – CA State Bar No. 135983
Todd F. Jackson – CA State Bar No. 202598
Margaret E. Hasselman – CA State Bar No. 228529
Nina R. Wasow – CA State Bar No. 242047
Kirsten Gibney Scott – CA State Bar No. 253464
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA  94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
Email: dfeinberg@lewisfeinberg.com
Email: tjackson@lewisfeinberg.com
Email: mhasselman@lewisfeinberg.com
Email: nwasow@lewisfeinberg.com
Email: kscott@lewisfeinberg.com

*Attorneys for Plaintiffs and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO AND OAKLAND DIVISION

| | |
|---|---|
| THOMAS FERNANDEZ, LORA SMITH, and TOSHA THOMAS, individually and on behalf of a class of all other persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> K-M INDUSTRIES HOLDING CO., INC.; K-M INDUSTRIES HOLDING CO., INC. ESOP PLAN COMMITTEE; WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; TRUSTEES OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; CIG ESOP PLAN COMMITTEE; NORTH STAR TRUST COMPANY; DESIREE B. MOORE REVOCABLE TRUST; WILLIAM E. MOORE MARITAL TRUST; WILLIAM E. MOORE GENERATION-SKIPPING TRUST; and DESIREE MOORE, BOTH IN HER INDIVIDUAL CAPACITY AND AS TRUSTEE OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST'S SUCCESSOR TRUSTS NAMED ABOVE, <br><br> Defendants. | Case No. C-06-07339 CW <br><br> **SUPPLEMENTAL DECLARATION OF NINA WASOW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

1    I, Nina Wasow, declare as follows:

2    1.    I am a member in good standing of the State Bar of California and an attorney

3    with Lewis, Feinberg, Lee, Renaker & Jackson, P.C., which is counsel for Plaintiffs in this

4    action.  I have personal knowledge of the facts contained in this declaration and, if called to

5    testify, will testify as set forth below.

6    2.    Attached hereto as Exhibit 1 is a true and correct copy of excerpts from the

7    deposition of Thomas Fernandez taken April 21, 2008.

8    3.    Attached hereto as Exhibit 2 is a true and correct copy of excerpts from the

9    deposition of Lora D. Smith taken April 16, 2008.

10    4.    Attached hereto as Exhibit 3 is a true and correct copy of excerpts from the

11    deposition of Tosha Thomas taken April 18, 2008.

12    5.    Attached hereto as Exhibit 4 is a true and correct copy of Plaintiffs' Initial

13    Disclosures for Tosha Thomas, dated February 27, 2008.

14    I declare under penalty of perjury that the foregoing is true and correct. Executed on June

15    19, 2008 at Oakland, California.

16    _____/s/_____

17    Nina Wasow

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO AND OAKLAND DIVISION

---

| | |
|---|---|
| THOMAS FERNANDEZ, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. |
| vs. | ) |
| | ) C-06-07339 CW |
| K-M INDUSTRIES HOLDING CO., INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

---

VIDEOTAPED DEPOSITION OF THOMAS FERNANDEZ
April 21, 2008
San Francisco, California

Reported by:
EMI ALBRIGHT
RPR, CSR No. 13042
Job No. 79887

e4d659ab-3a1d-40ea-870f-849f9b148d90

1     A    I have never met her nor have I ever spoken

2  with her.  I was shown a copy of a legal form with her

3  name on it I believe last week in speaking with my

4  attorneys.

5     Q    Apart from Tosha Thomas, do you know the

6  name of any person who has ever worked for Kelly-Moore

7  Paint?

8          MS. HASSELMAN:   Objection.  Vague.

9     A    No.

10 BY MR. LOVITT:

11    Q    What is your understanding of your

12 responsibilities as a representative plaintiff in a

13 class action lawsuit?

14    A    My understanding is that I am not to

15 undertake any actions which would be detrimental to the

16 interest of any of the other class members.

17    Q    Who do you understand those class members

18 to be generically without referring to anybody's name?

19         MS. HASSELMAN:   Objection.  Vague and

20 ambiguous.  Calls for a legal conclusion.

21    A    All people who work for Kelly-Moore Paint

22 and all people who work for Capital Insurance Group.

23 BY MR. LOVITT:

24    Q    What do you understand your financial

25 responsibilities are with respect to this lawsuit?

e4d659ab-3a1d-40ea-870f-849f9b148d90

1   the complaint in this case was not filed until a little

2   over a year after you signed Exhibit 213?

3                MS. HASSELMAN:    Objection.  Calls for a

4   legal conclusion.  Calls for attorney work product.

5   Calls for attorney client communications.

6   BY MR. LOVITT:

7        Q    So what is your understanding of why it was

8   over a year later that the lawsuit was actually filed?

9                MS. HASSELMAN:    Same objections.  Calls

10  for speculation as well.

11       A    I do not know why there was a time period

12  lag between October 2005 and when the initial complaint

13  was filed.  I do not know why there was a time lag.

14  BY MR. LOVITT:

15       Q    I would like to show the witness

16  Exhibit 148.  Before I ask you any questions about

17  Exhibit 148, I would like to ask some questions about

18  how you maintain your files related to your employment.

19                And the first question is do you make it a

20  practice to retain copies of documents concerning your

21  employment?

22                MS. HASSELMAN:    Objection.  Vague.

23       A    Yes.

24  BY MR. LOVITT:

25       Q    And can you tell us generally what that

e4d659ab-3a1d-40ea-870f-849f9b148d90

1    practice is?

2            MS. HASSELMAN:   Objection.  Vague.

3        A    I try to save what I feel are relevant

4    documents.

5    BY MR. LOVITT:

6        Q    And how do you go about this?

7            MS. HASSELMAN:   Objection.  Vague.

8        A    Any documents that I feel are relevant, I

9    store at home.

10   BY MR. LOVITT:

11       Q    Now, do you store them in a particular

12   folder, a particular file?  How do you do that?

13           MS. HASSELMAN:   Objection.  Vague.

14       A    File folders, boxes.

15   BY MR. LOVITT:

16       Q    Now, when you left your employment at CIG,

17   did you have a folder or a file where you kept documents

18   that you wanted to retain concerning your employment at

19   CIG?

20       A    I did.

21       Q    And did you also keep documents -- excuse

22   me.  Let me withdraw that.

23           Now, where did you keep this file or

24   folder?

25       A    At my place of residence.

Page 52

1       Q    Now, did you also have a place at your

2   office where you kept documents concerning your

3   employment?

4       A    Are you defining office as a place other

5   than my residence?

6       Q    Yes.

7       A    No.

8       Q    By the way, I never really -- I don't have

9   a clear understanding of your work situation.  Did you

10  have an office at CIG?

11      A    I did not.

12      Q    Did you have a desk at CIG?

13      A    I did not.

14      Q    So did you have a telephone extension that

15  was dedicated to you at CIG?

16      A    I did.

17      Q    Did you have a cubicle or a chair or

18  anyplace where when you were at the branch in -- was it

19  Campbell -- when you were at the branch that you used

20  when you were on the premises?

21      A    Not that was specifically assigned to me.

22      Q    So would it be fair to say that you did

23  most of your paperwork kind of duties and task at home?

24      A    Yes.

25      Q    Now, where is that file or folder that you

e4d659ab-3a1d-40ea-870f-849f9b148d90

1    used to keep your documents concerning your employment

2    at CIG?

3         A    At my place of residence.

4         Q    Now, have you turned over that file or

5    folder to your attorneys in this case?

6         A    I have.

7         Q    Have you retained anything from that file

8    or folder that you did not turn over?

9              MS. HASSELMAN:    Objection.  Vague.

10        A    I have not.

11   BY MR. LOVITT:

12        Q    So it would be fair for us to conclude that

13   all the papers that you have retained from your

14   employment at CIG have been turned over to your lawyer?

15        A    That is correct.

16        Q    Now, periodically did you go through that

17   file or folder containing these CIG employment documents

18   and destroy certain of those documents or did you make

19   it a practice to keep everything?

20             MS. HASSELMAN:    Objection.  Compound.

21   Vague.

22        A    I generally do not keep all employment

23   related documents.

24   BY MR. LOVITT:

25        Q    So would there be occasions when you had

e4d659ab-3a1d-40ea-870f-849f9b148d90

Page 79

1  BY MR. LOVITT:

2      Q    216, this is another one of those printouts

3  of e-mails.  And this one was sent by island girl to

4  you.  You are beavis 666?

5      A    That's right.

6      Q    And it was sent apparently on October 16th

7  2005.  And this is just another one of those same

8  documents like 215 and 214; correct?

9      A    That's correct.

10      Q    Now, during this time frame that you were

11  getting these e-mails from Amy Roth, were you

12  contemplating filing some suit for something wrong with

13  the ESOP?

14      A    Yes, I was.

15      Q    And in your mind what did you think was

16  wrong with the ESOP that would cause you to want to file

17  suit?

18      A    Well, the asbestos lawsuits against the

19  parent company had a possibility of completely wiping

20  out the value of our ESOP.  And that was my main

21  concern.

22      Q    And did you hope to find some proof of that

23  in these e-mails?

24          MS. HASSELMAN:    Objection.  Vague.

25      A    Possibly.

e4d659ab-3a1d-40ea-870f-849f9b148d90

1        A    That's correct.

2   BY MR. LOVITT:

3        Q    Now, when you received a certain

4   entitlement to stock by virtue of your participation in

5   the ESOP, did you think the stock would always go up?

6             MS. HASSELMAN:   Objection.  Calls for --

7   excuse me.  Objection.  Misstates the terms of the plan.

8   Misstates.  Misleading.  Vague and ambiguous.

9        A    No, I did not.

10  BY MR. LOVITT:

11       Q    Did you -- was it your understanding that

12  it was possible that the stock would go down --

13            MS. HASSELMAN:   Same objections.

14  BY MR. LOVITT:

15       Q    -- in value?

16       A    Yes, it was.

17       Q    Now, you were concerned that because of the

18  asbestos liability that your stock might go down; is

19  that correct?

20       A    No.

21       Q    What was your concern relating to the

22  asbestos liability of the Paint Company and the value of

23  your stock?

24            MS. HASSELMAN:   Objection.  Vague.  Vague

25  as to time.

e4d659ab-3a1d-40ea-870f-849f9b148d90

Page 82

1        A    My concern was possible liquidation of the

2  entire company and the value of my stock being reduced

3  to zero.

4  BY MR. LOVITT:

5        Q    And did you think that was because somebody

6  at your company, that is, CIG or at the Paint Company

7  had done something wrong with respect to their dealings

8  with the ESOP?

9            MS. HASSELMAN:    Objection.  Vague and

10  ambiguous.

11        A    Yes.

12  BY MR. LOVITT:

13        Q    Can you tell me what was it that you

14  thought that somebody at the company or at the Holding

15  Company had done wrong that would expose your ESOP stock

16  to the risk that you just stated?

17            MS. HASSELMAN:    Objection.  Vague and

18  ambiguous.  Calls for a legal conclusion.

19        A    I had felt that the Moore family had taken

20  out 42 percent of the value of the company, which was

21  not subject to any of the losses created by the asbestos

22  lawsuits, whereas if the company would have been

23  completely liquidated, the Moores would still have had

24  the 40 percent value of the company whereas everybody

25  else who was vested in the ESOP company would have

e4d659ab-3a1d-40ea-870f-849f9b148d90

Page 83

1    nothing.

2    BY MR. LOVITT:

3        Q    So you thought that at the time that the

4    ESOP bought the stock that they paid too much for it?

5    Is that what you are saying?

6        A    No.

7        Q    Do you think that the ESOP paid too much

8    for the stock?

9            MS. HASSELMAN:    Objection.    Calls for a

10   legal conclusion.

11       A    I don't know.

12   BY MR. LOVITT:

13       Q    Can you explain to me the basis for your

14   thinking that the Moore family sold 42 percent of the

15   company to the employees at a time when they were able

16   to receive more money than they were entitled to?

17       A    More money?    I don't understand your

18   question.

19       Q    Well, then you can't --

20           MS. HASSELMAN:    I think the problem might

21   be with the word, they.    It's not clear if you are

22   referring to the Moore family or --

23   BY MR. LOVITT:

24       Q    That the Moore family received more money

25   than the Moore family was entitled to?

e4d659ab-3a1d-40ea-870f-849f9b148d90

Page 84

1          MS. HASSELMAN:    Object to the form.

2      A    I can't speak to the specific value of the

3  amount of money is that they received, why I felt that

4  they should have received that.  My feeling was that

5  that would have been -- would have been in their best

6  interest facing the possible liquidation of the entire

7  company, either losing all the value that they had in

8  the value of the company or retaining 40 percent of it.

9  A prudent person I would think would want to retain

10  42 percent versus zero.  So it seemed to me to be a

11  logical thing to do on their part.

12  BY MR. LOVITT:

13      Q    Do you know how the price that the Moore

14  family was paid was determined?

15      A    Not specifically, no.

16      Q    What do you know about it?

17          MS. HASSELMAN:    Objection.  Vague and

18  ambiguous.

19      A    That it was determined by some process that

20  I'm not completely familiar with.

21  BY MR. LOVITT:

22      Q    Were you aware or are you aware now that

23  the value that the Moore family received for the stock

24  was determined by independent appraiser?

25          MS. HASSELMAN:    Objection.  Vague and

e4d659ab-3a1d-40ea-870f-849f9b148d90

1    that it was acquired by the ESOP was to use a comparison

2    with comparable public companies?

3           A     I don't remember.

4           Q     No. 2, track -- before we get to that, it

5    says under response, among others there are two major

6    factors used to appraise the value of the shares.  And

7    then No. 1 was that comparable public company analysis.

8    No. 2, it says, tracking stock issues and overall

9    performance of CIG.

10          Do you know what tracking stock issues

11   refers to?

12          MS. HASSELMAN:  Objection.  Calls for

13   speculation.

14          A     I don't remember.

15   BY MR. LOVITT:

16          Q     Now, at some point before you filed suit,

17   were you aware of some issue with respect to tracking

18   stock that caused you to think that the ESOP might have

19   originally paid too much for the stock it purchased from

20   the Moore family?

21          MS. HASSELMAN:  Objection.  Vague and

22   ambiguous.  Calls for a legal conclusion.

23          A     No, I was not.

24   BY MR. LOVITT:

25          Q     Are you currently aware of any issues

e4d659ab-3a1d-40ea-870f-849f9b148d90

1    concerning tracking stock that might -- that might have

2    caused the ESOP to pay the Moores too much money for the

3    stock it purchased in 1999?

4            MS. HASSELMAN:    Same objections.

5        A    I am.

6    BY MR. LOVITT:

7        Q    And is that based on information that you

8    may have received from your lawyer?  If so, I don't want

9    to pry into it.

10       A    That's correct.

11       Q    Have you been made aware of any issue with

12   respect to tracking stock as it relates to the purchase

13   price of the stock purchased by the ESOP from the Moore

14   family?

15       A    I believe so.

16           MS. HASSELMAN:    Objection.  Asked and

17   answered.

18   BY MR. LOVITT:

19       Q    I beg your pardon?

20       A    I believe so, yes.

21       Q    And can you tell us what that is?

22           MS. HASSELMAN:    Objection.  Vague and

23   ambiguous.  Calls for a legal conclusion.

24       A    Something I discussed with my attorneys.

25   BY MR. LOVITT:

e4d659ab-3a1d-40ea-870f-849f9b148d90

1   and ambiguous.

2        A    I don't know.

3   BY MR. LOVITT:

4        Q    Isn't it true, sir, that the value of the

5   CIG stock purchased for the ESOP was, in fact, at a

6   price that reflected a discount for lack of

7   marketability and tracking stock issues?

8             MS. HASSELMAN:   Objection.  Calls for a

9   legal conclusion.  Calls for expert testimony.

10       A    I don't know.

11  BY MR. LOVITT:

12       Q    As you sit here today, do you have any

13  complaint about the price that the ESOP paid for

14  tracking stock of the Paint Company?

15            MS. HASSELMAN:   Objection.  Calls for a

16  legal conclusion.  Calls for expert testimony.

17       A    I do.

18  BY MR. LOVITT:

19       Q    You do?  What is --

20           MS. HASSELMAN:   Let me finish my

21  objection.

22           MR. LOVITT:   Okay.  He's already answered.

23           MS. HASSELMAN:   Well, never -- my

24  objections are still going to stand.  Calls for a legal

25  conclusion.  Calls for expert testimony.  And that will

e4d659ab-3a1d-40ea-870f-849f9b148d90

Page 172

1      A    I would have, yes.

2      Q    Can you explain to me the reasons that you

3   filed this lawsuit?

4      A    Well, I felt that the obligations of K-M

5   Industries, I guess, the parent company, in regards to

6   the outstanding amount of the asbestos lawsuits weren't

7   really properly taken into effect when the ESOP was

8   created -- or taken into account.  Excuse me.

9      Q    And what facts do you have to base that

10  understanding on that the asbestos wasn't properly taken

11  into account?

12     A    Well, at one point we were told that the

13  value of the ESOP could be zero.  And then that's when I

14  had first come to that conclusion.

15     Q    Other than when you were told that at one

16  point the value could be zero, do you have any other

17  facts to support the allegations?

18          MS. HASSELMAN:    Objection.  Calls for a

19  legal conclusion.

20     A    Not that I remember.

21  BY MR. SULLIVAN:

22     Q    Do you believe there are other facts that

23  you don't recall?

24          MS. HASSELMAN:    Objection.  Calls for a

25  legal conclusion.

e4d659ab-3a1d-40ea-870f-849f9b148d90

Page 176

1    were improper?

2              MS. HASSELMAN:    Objection.    Calls for a

3    legal conclusion.

4         A    No.

5              MS. HASSELMAN:    Calls for expert

6    testimony.    I'm sorry, I realize that was belated, but I

7    just want to get that in to the prior question as well.

8    BY MR. SULLIVAN:

9         Q    Do you have Exhibit 147 in front of you?

10   Have you seen this before?

11        A    Yes.

12        Q    Did you review this document before it was

13   filed on January 18, 2008?

14        A    No.

15        Q    Did you have an opportunity to review the

16   original complaint before it was filed?

17        A    No.

18        Q    Did you have any input into the contents of

19   the original complaint?

20             MS. HASSELMAN:    Objection.    Calls for

21   attorney client communications.

22   BY MR. SULLIVAN:

23        Q    I am just looking for a yes or no answer.

24             MS. HASSELMAN:    That calls for a legal

25   conclusion as well.

e4d659ab-3a1d-40ea-870f-849f9b148d90

1        A     Yes.

2   BY MR. SULLIVAN:

3        Q     And is there anything that you think should

4   be in the complaint, the original complaint, that

5   wasn't?

6              MS. HASSELMAN:    Objection.  Calls for a

7   legal conclusion.  You also have not shown him the

8   original complaint and he hasn't had an opportunity to

9   review that.

10  BY MR. SULLIVAN:

11       Q     Is there anything that you think should be

12  in the second amended complaint that is Exhibit 147 that

13  is not?

14             MS. HASSELMAN:    Same objections.  It's a

15  long document.  If you want him to review it, he should

16  have time to review that.  Also calls for a legal

17  conclusion.

18       A     I would say I am not sure.

19  BY MR. SULLIVAN:

20       Q     What losses do you claim that you have

21  suffered as a result of the actions of the defendants

22  that have been named in the complaint?

23             MS. HASSELMAN:    Objection.  Calls for a

24  legal conclusion.  Calls for expert testimony.

25       A     I'm not sure of the exact losses.

e4d659ab-3a1d-40ea-870f-849f9b148d90

# EXHIBIT 2

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

THOMAS FERNANDEZ, et al.,

    Plaintiffs,

    vs.          No.  C 06-07339 CW

K-M INDUSTRIES HOLDING CO.,
INC., et al.,

    Defendants.

_____

VIDEOTAPED DEPOSITION OF LORA D. SMITH

San Francisco, California

Wednesday, April 16, 2008

VOLUME 1

Reported by:
TRACY L. PERRY
CSR No. 9577
CHRIS TE SELLE
CSR No. 10836

JOB No. 84325

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

LORA D. SMITH                    04/16/08

Page 22

| 09:45:01 | 1 | What month did you -- did you terminate your |
| | 2 | employment at CIG in 2001? |
| 09:45:14 | 3 | A    October. |
| 09:45:19 | 4 | Q    Why did you -- why did you leave? |
| 09:45:21 | 5 | A    I had a baby and decided to stay home and raise |
| | 6 | him myself. |
| 09:45:26 | 7 | Q    Were you happy with your employment there?  Were |
| | 8 | you -- did you feel that you were appreciated and treated |
| | 9 | well? |
| 09:45:33 | 10 | MS. HASSELMAN:  Objection; vague and compound. |
| 09:45:35 | 11 | THE WITNESS:  Yes, very much. |
| 09:45:46 | 12 | BY MR. LOVITT: |
| 09:45:46 | 13 | Q    What caused you to have the idea that you should |
| | 14 | be a plaintiff in a lawsuit against the company -- |
| 09:45:54 | 15 | MS. HASSELMAN:  I'll just -- |
| 09:45:54 | 16 | BY MR. LOVITT: |
| 09:45:54 | 17 | Q    -- and others? |
| 09:45:56 | 18 | MS. HASSELMAN:  Just to clear up the parameters |
| | 19 | around the question, answer -- if you can answer in your |
| | 20 | own words without getting into any communications with |
| | 21 | counsel, you can answer that, but just make sure that you |
| | 22 | don't discuss any communications with your lawyers. |
| 09:46:18 | 23 | THE WITNESS:  Because I was told I would be paid for |
| | 24 | my shares on a certain date and wasn't. |
| 09:46:23 | 25 | BY MR. LOVITT: |

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

LORA D. SMITH                                04/16/08

Page 42

| | | |
|---|---|---|
| 10:11:32 | 1 | BY MR. LOVITT: |
| 10:11:32 | 2 | Q   Okay.  No one other than a lawyer has ever told |
| | 3 | you that there is a problem regarding asbestos and the |
| | 4 | value of your ESOP shares, correct? |
| 10:11:57 | 5 | MS. HASSELMAN:  Object to the form. |
| 10:11:59 | 6 | THE WITNESS:  Yes. |
| 10:12:03 | 7 | MS. HASSELMAN:  And it's -- the question is |
| | 8 | ambiguous.  I'll add that objection to the question, as |
| | 9 | well. |
| 10:12:23 | 10 | BY MR. LOVITT: |
| 10:12:23 | 11 | Q   Now, you understand you're a plaintiff in a |
| | 12 | class action lawsuit; is that correct? |
| 10:12:26 | 13 | A   Yes. |
| 10:12:27 | 14 | Q   And what do you consider your responsibilities |
| | 15 | to be as a plaintiff in a class action? |
| 10:12:41 | 16 | A   To represent the employees. |
| 10:12:44 | 17 | Q   Which employees? |
| 10:12:47 | 18 | A   Employees that have -- that are participants in |
| | 19 | the ESOP program. |
| 10:12:52 | 20 | Q   Now, do you mean employees at CIG? |
| 10:13:00 | 21 | MS. HASSELMAN:  Objection; calls for a legal |
| | 22 | conclusion. |
| 10:13:05 | 23 | THE WITNESS:  Employees or past employees like me. |
| 10:13:09 | 24 | BY MR. LOVITT: |
| 10:13:09 | 25 | Q   Past employees of CIG. |

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

LORA D. SMITH                        04/16/08

Page 44

| | | |
|---|---|---|
| 10:14:31 | 1 | A   Yes. |
| 10:14:44 | 2 | Q   Now, we were talking about your duties as a -- |
| | 3 | as a plaintiff in a class action.  You said to represent |
| | 4 | the interest of the -- of the employees and past |
| | 5 | employees; is that correct? |
| 10:14:54 | 6 | MS. HASSELMAN:  Objection; misstates prior |
| | 7 | testimony. |
| 10:15:00 | 8 | THE WITNESS:  That have interest in the plan. |
| 10:15:02 | 9 | BY MR. LOVITT: |
| 10:15:02 | 10 | Q   That have interest in the plan.  And -- and |
| | 11 | you're talking about CIG and -- CIG past and present |
| | 12 | employees? |
| 10:15:14 | 13 | MS. HASSELMAN:  Objection; calls for a legal |
| | 14 | conclusion. |
| 10:15:15 | 15 | THE WITNESS:  That have -- that are involved in the |
| | 16 | shares, the ESOP. |
| 10:15:21 | 17 | BY MR. LOVITT: |
| 10:15:21 | 18 | Q   So -- okay.  But the answer is yes, those people |
| | 19 | who are involved in the ESOP; is that right? |
| 10:15:26 | 20 | A   Correct. |
| 10:15:27 | 21 | Q   Okay.  Now, as a plaintiff in a class action, |
| | 22 | could you tell me who is paying the cost of -- that |
| | 23 | you're incurring in bringing this lawsuit? |
| 10:15:50 | 24 | MS. HASSELMAN:  Objection; assumes facts not in |
| | 25 | evidence. |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

LORA D. SMITH                    04/16/08

Page 45

| | | |
|---|---|---|
| 10:16:04 | 1 | THE WITNESS:  That's between my attorney and me. |
| 10:16:06 | 2 | BY MR. LOVITT: |
| 10:16:06 | 3 | Q   Are you paying the cost? |
| 10:16:13 | 4 | A   No. |
| 10:16:15 | 5 | Q   And do you -- who is paying the cost? |
| 10:16:20 | 6 | MS. HASSELMAN:  I'll -- I'll caution the witness not |
| | 7 | to reveal communications with counsel or the terms of |
| | 8 | retainer agreements. |
| 10:16:26 | 9 | Ron, it's -- you're fine to ask if we're |
| | 10 | advancing the cost or not, but I'm not going to let you |
| | 11 | get into any details of the retainer -- |
| 10:16:34 | 12 | MR. LOVITT:  I don't want to. |
| 10:16:34 | 13 | MS. HASSELMAN:  -- or the terms of the retainer |
| | 14 | agreement. |
| 10:16:36 | 15 | BY MR. LOVITT: |
| 10:16:36 | 16 | Q   Is it your understanding your attorney is |
| | 17 | advancing the costs of the litigation? |
| 10:16:44 | 18 | A   Yes. |
| 10:16:49 | 19 | Q   Now, do you have any understanding as to what |
| | 20 | the cost might be if you lose the lawsuit? |
| 10:16:58 | 21 | MS. HASSELMAN:  I'll -- same objection; that this is |
| | 22 | very close to attorney-client communication issues.  So |
| | 23 | if you have an understanding out of your own |
| | 24 | understanding, then you can answer the question, but if |
| | 25 | you have -- I would caution you not to get into any |

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

LORA D. SMITH                           04/16/08

Page 46

1    communications with counsel.

10:17:12    2        THE WITNESS:  I can't answer that.

10:17:25    3    BY MR. LOVITT:

10:17:25    4        Q    You understand that if the lawsuit is lost on

5    your side that the attorneys representing the defendants

6    would -- might claim an entitlement to a reimbursement of

7    their cost in defending the lawsuit.  Are you aware of

8    that?

10:17:43    9        MS. HASSELMAN:  Objection; calls for speculation and

10    calls for a legal conclusion.

10:17:49   11        THE WITNESS:  I don't know.

10:17:51   12    BY MR. LOVITT:

10:17:51   13        Q    You don't.  Can you tell me whether you have an

14    understanding as to -- whether you have an understanding

15    as to your -- your responsibility to pay the entire cost

16    of defending this lawsuit should you lose this lawsuit?

10:18:23   17        MS. HASSELMAN:  Same objections.  Calls for

18    speculation, calls for a legal conclusion, and it assumes

19    facts that aren't in evidence.

10:18:30   20    BY MR. LOVITT:

10:18:30   21        Q    Do you have an awareness of that?

10:18:32   22        MS. HASSELMAN:  Same objections.

10:18:40   23        THE WITNESS:  I don't know.

10:18:41   24    BY MR. LOVITT:

10:18:41   25        Q    Do you care?

SARNOFF  COURT  REPORTERS  AND  LEGAL  TECHNOLOGIES
877.955.3855

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

LORA D. SMITH                    04/16/08

Page 47

| | | |
|---|---|---|
| 10:18:41 | 1 | MS. HASSELMAN:  Same objections and argumentative. |
| 10:18:58 | 2 | THE WITNESS:  Can you repeat the question? |
| 10:19:00 | 3 | BY MR. LOVITT: |
| 10:19:00 | 4 | Q   I withdraw the question. |
| 10:19:12 | 5 | Are you prepared to pay the cost of the lawsuit |
| | 6 | to the opposing parties if, in fact, you lose the |
| | 7 | lawsuit? |
| 10:19:17 | 8 | MS. HASSELMAN:  Same objections.  Calls for |
| | 9 | speculation, calls for a legal conclusion, and assumes |
| | 10 | facts that aren't in evidence. |
| 10:19:28 | 11 | THE WITNESS:  Can you repeat the question? |
| 10:19:29 | 12 | MR. LOVITT:  Tracy, read it back, please. |
| 10:19:13 | 13 | (The record was read as follows: |
| 10:19:13 | 14 | "QUESTION:  Are you prepared to pay the cost |
| | 15 | of the lawsuit to the opposing parties if, |
| | 16 | in fact, you lose the lawsuit?") |
| 10:19:38 | 17 | MS. HASSELMAN:  Same objections. |
| 10:19:45 | 18 | THE WITNESS:  No. |
| 10:19:59 | 19 | MS. HASSELMAN:  Ron, do you think we could take a |
| | 20 | short restroom break before we get to that, please. |
| 10:20:04 | 21 | MR. LOVITT:  Sure.  Sure. |
| 10:20:05 | 22 | THE VIDEOGRAPHER:  The time is 10:20.  We are going |
| | 23 | off record. |
| 10:20:09 | 24 | (Recess taken:  10:20 until 10:42 a.m.) |
| 10:20:13 | 25 | (Deposition Exhibit 147 was marked.) |

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

LORA D. SMITH                04/16/08

Page 50

| | | |
|---|---|---|
| 10:20:13 | 1 | MR. LOVITT: Yes. Okay. |
| 10:20:13 | 2 | Q Ms. Smith, I've handed you -- at least I think |
| | 3 | the reporter has handed you the -- the package of papers |
| | 4 | that's marked Exhibit Number 147. Exhibit Number 147 is |
| | 5 | the second amended complaint, class action, corrected, |
| | 6 | and it's a 24-page document. |
| 10:20:13 | 7 | If you could just thumb through this, I have a |
| | 8 | couple of very general questions. Well, let me just ask, |
| | 9 | have you ever seen this document before? |
| 10:20:13 | 10 | A Yes. |
| 10:20:13 | 11 | Q Did you see it before it was filed? |
| 10:20:13 | 12 | A No. |
| 10:20:13 | 13 | Q When did you -- when did you first see it? |
| 10:20:13 | 14 | A April 15th of 2008. |
| 10:20:13 | 15 | Q Oh, that means like yesterday? |
| 10:20:13 | 16 | A Correct. |
| 10:20:13 | 17 | Q Okay. Do you know what this document is? |
| 10:20:13 | 18 | A Yes. |
| 10:20:13 | 19 | MS. HASSELMAN: Objection; vague. |
| 10:20:13 | 20 | BY MR. LOVITT: |
| 10:20:13 | 21 | Q I'd like you to turn to page 3 of the document |
| | 22 | and look at paragraph number 6 and read it to yourself, |
| | 23 | and I have just a couple of questions about it. |
| 10:20:13 | 24 | Is that -- is paragraph 6 correct to the best of |
| | 25 | your knowledge? |

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

Page 53

|  |  |  |
|---|---|---|
|  | 1 | at line 12. |
| 10:20:13 | 2 | MS. HASSELMAN:  Do you want her to read the entire |
|  | 3 | paragraph or -- it's a long paragraph. |
| 10:20:13 | 4 | BY MR. LOVITT: |
| 10:20:13 | 5 | Q   Yeah, why don't you read lines 12 through 15 -- |
|  | 6 | excuse me -- 12 through 17. |
| 10:20:13 | 7 | MS. HASSELMAN:  Henry, do we have any additional |
|  | 8 | copies of this for Kirsten and Aliah? |
| 10:20:13 | 9 | MR. LOVITT:  No.  You know, if you would have told |
|  | 10 | me I would have had them, but I -- I didn't. |
| 10:20:13 | 11 | MS. HASSELMAN:  Okay.  I just figured it's worth |
|  | 12 | asking. |
| 10:20:13 | 13 | BY MR. LOVITT: |
| 10:20:13 | 14 | Q   Tell me when you've gotten through paragraph -- |
|  | 15 | lines 12 through 17. |
| 10:20:13 | 16 | A   Okay. |
| 10:20:13 | 17 | Q   Okay, you have, or okay, you'll tell me? |
| 10:20:13 | 18 | A   Mm-hmm.  No.  Yes, I have. |
| 10:20:13 | 19 | Q   Okay.  Is the statement in this -- in these |
|  | 20 | lines, is that correct to the best of your ability? |
| 10:20:13 | 21 | A   Yes. |
| 10:20:13 | 22 | Q   Okay.  You mentioned that "Plaintiff Smith," |
|  | 23 | that -- that's you, "have no knowledge that the plan's |
|  | 24 | purchase KMH stock" -- "purchases of KMH stock may have |
|  | 25 | been for more than fair market value, including but not |

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

Page 54

1    limited to knowledge that more than fair market value may

2    have been paid due to potential asbestos liability until

3    she was informed by letter in February of 2005 that no

4    valuation of the plan's stock had been completed for 2003

5    due to issues related to potential asbestos liability."

10:20:13    6         Now, is that a true statement?

10:20:13    7         MS. HASSELMAN:  Objection; compound.

10:20:13    8    BY MR. LOVITT:

10:20:13    9         Q    Is that a true statement?

10:20:13    10        MS. HASSELMAN:  Well, you just -- you're referring

11   to a long sentence, that's all.

10:20:13    12        MR. LOVITT:  Yeah.

10:20:13    13        Q    Is everything in that sentence correct?  I'll

14   withdraw my previous question.

10:20:13    15        Is everything in that sentence correct?

10:20:13    16        A    No.

10:20:13    17        Q    Tell me the parts that are incorrect.

10:20:13    18        A    Let's see.  Parts that are incorrect, saying no

19   knowledge until I was informed by the letter in February

20   2005.

10:20:13    21        Q    Mm-hmm.  So -- so did you -- do you have a

22   recollection of receiving some letter in 2005, in

23   February of 2005?

10:20:13    24        A    Yes.

10:20:13    25        Q    And do you remember what the letter informed you

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

LORA D. SMITH                    04/16/08

Page 55

| | 1 | of? |
|---|---|---|
| 10:20:13 | 2 | A    Yes. |
| 10:20:13 | 3 | Q    What did it inform you of? |
| 10:20:13 | 4 | A    Of asbestos litigation from Kelly -- against |
| | 5 | Kelly-Moore. |
| 10:20:13 | 6 | Q    Okay.  So why is that -- why is that phrase |
| | 7 | incorrect in your view? |
| 10:20:13 | 8 | A    Because -- |
| 10:20:13 | 9 | MS. HASSELMAN:  I'm sorry.  Do you mean the phrase |
| | 10 | in the complaint? |
| 10:20:13 | 11 | MR. LOVITT:  The phrase -- yeah, I'm asking her if |
| | 12 | everything in this paragraph, this sentence that we're |
| | 13 | reading is correct, and she said no.  And then she said |
| | 14 | the part about until she was informed by letter of |
| | 15 | 2000 -- February of 2005. |
| 10:20:13 | 16 | Q    What's incorrect about that? |
| 10:20:13 | 17 | A    I wasn't under the understanding that |
| | 18 | Kelly-Moore Paint's stock had anything to do with the |
| | 19 | insurance company's stock.  My understanding was that |
| | 20 | they had theirs and we had ours. |
| 10:20:13 | 21 | Q    Mm-hmm. |
| 10:20:13 | 22 | A    So, to me, when I read the letter I thought, |
| | 23 | well, that's their -- that's affecting their shares, not |
| | 24 | ours. |
| 10:20:13 | 25 | Q    Okay.  Is there anything else in this sentence |

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

LORA D. SMITH                    04/16/08

Page 56

|  |  |  |
|---|---|---|
| | 1 | that's incorrect? |
| 10:20:13 | 2 | A    No. |
| 10:20:13 | 3 | Q    So your earlier testimony I believe, and tell me |
| | 4 | if I'm incorrect in this, you said you didn't -- you were |
| | 5 | never made aware of any relationship between asbestos |
| | 6 | litigation and the value of your ESOP shares until you |
| | 7 | met with a lawyer; is that correct? |
| 10:20:13 | 8 | MS. HASSELMAN:  Objection; misstates prior |
| | 9 | testimony. |
| 10:20:13 | 10 | You can answer. |
| 10:20:13 | 11 | THE WITNESS:  Correct. |
| 10:20:13 | 12 | BY MR. LOVITT: |
| 10:20:13 | 13 | Q    Okay.  Is -- is there anything else in that |
| | 14 | sentence that's incorrect on page 13, lines 12 through |
| | 15 | 17? |
| 10:20:13 | 16 | A    No. |
| 10:20:13 | 17 | MS. HASSELMAN:  Did you -- |
| 10:20:13 | 18 | BY MR. LOVITT: |
| 10:20:13 | 19 | Q    So let me ask you this.  Did you -- have you |
| | 20 | ever learned up until this very minute that the shares of |
| | 21 | your ESOP were priced at more than fair market value at |
| | 22 | the time that they were bought by the ESOP? |
| 10:20:13 | 23 | MS. HASSELMAN:  Objection; vague and -- |
| 10:20:13 | 24 | THE WITNESS:  Can you rephrase the question? |
| 10:20:13 | 25 | BY MR. LOVITT: |

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

LORA D. SMITH                04/16/08

Page 61

| | | |
|---|---|---|
| 10:20:13 | 1 | Q   You've named Mr. Moore's estate and trust as a |
| | 2 | defendant in this lawsuit.  What did -- what did |
| | 3 | Mr. Moore do wrong? |
| 10:20:13 | 4 | MS. HASSELMAN:  Objection; calls for a legal |
| | 5 | conclusion, it's argumentative. |
| 10:20:13 | 6 | BY MR. LOVITT: |
| 10:20:13 | 7 | Q   What, if anything, to your knowledge Mr. Moore |
| | 8 | did wrong? |
| 10:20:13 | 9 | MS. HASSELMAN:  Same objections. |
| 10:20:13 | 10 | THE WITNESS:  He borrowed money from the insurance |
| | 11 | company to purchase the stock for the paint company. |
| 10:20:13 | 12 | BY MR. LOVITT: |
| 10:20:13 | 13 | Q   Did he do anything else? |
| 10:20:13 | 14 | MS. HASSELMAN:  Same objections.  Calls for a legal |
| | 15 | conclusion, calls for speculation. |
| 10:20:13 | 16 | THE WITNESS:  He didn't get outside evaluators or -- |
| | 17 | to evaluate the company's stock value. |
| 10:20:13 | 18 | BY MR. LOVITT: |
| 10:20:13 | 19 | Q   When did he do that? |
| 10:20:13 | 20 | MS. HASSELMAN:  Objection; I'm going to object to |
| | 21 | the form. |
| 10:20:13 | 22 | BY MR. LOVITT: |
| 10:20:13 | 23 | Q   Do you -- you don't -- when did he do that? |
| 10:20:13 | 24 | A   I don't know. |
| 10:20:13 | 25 | MS. HASSELMAN:  Same objections. |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

Page 66

| | | |
|---|---|---|
| 10:20:13 | 1 | Q   Is the reason that you can't answer it is that |
| | 2 | everything that you -- all the information you need to |
| | 3 | answer the question has come from your attorney? |
| 10:20:13 | 4 | MS. HASSELMAN:  Same objections. |
| 10:20:13 | 5 | THE WITNESS:  I can't answer that. |
| 10:20:13 | 6 | BY MR. LOVITT: |
| 10:20:13 | 7 | Q   Well, you're in a deposition and if you have any |
| | 8 | information, you have to say yes or no or some answer. |
| 10:20:13 | 9 | MS. HASSELMAN:  Objection.  Ron, if there's a |
| | 10 | problem -- it may be that there's a problem with the |
| | 11 | question.  It may be that there's an attorney-client |
| | 12 | problem here.  You can ask her other questions to try to |
| | 13 | clarify why she can't answer the question that you've |
| | 14 | asked her, but you can't force her to answer a question |
| | 15 | she doesn't understand. |
| 10:20:13 | 16 | BY MR. LOVITT: |
| 10:20:13 | 17 | Q   Why can't you answer the question? |
| 10:20:13 | 18 | A   Because there's more than just information I've |
| | 19 | received from my attorney that have led me to believe |
| | 20 | that there was something wrong. |
| 10:20:13 | 21 | Q   And would you -- what is it that led you to |
| | 22 | believe -- apart from anything your attorneys told you, |
| | 23 | what is it in your life experience that has led you to |
| | 24 | believe that there was something wrong with the way the |
| | 25 | ESOP treated you? |

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

Page 67

| | | |
|---|---|---|
| 10:20:13 | 1 | MS. HASSELMAN:  Objection to the characterization, |
| | 2 | but -- |
| 10:20:13 | 3 | THE WITNESS:  Because I was told on several |
| | 4 | occasions that I would be paid for my shares in the |
| | 5 | beginning of 2007.  Then when that time came around, the |
| | 6 | story changed to no, you wouldn't be paid until 2014. |
| | 7 | There -- it wasn't right to me.  Something was wrong. |
| 10:20:13 | 8 | BY MR. LOVITT: |
| 10:20:13 | 9 | Q    Anything else that you -- that you felt was |
| | 10 | wrong with the way your participation in the ESOP was |
| | 11 | being handled? |
| 10:20:13 | 12 | A    Besides that? |
| 10:20:13 | 13 | Q    Yeah. |
| 10:20:13 | 14 | A    No. |
| 10:20:13 | 15 | MR. LOVITT:  Okay.  Let's mark this one -- this one |
| | 16 | as 148. |
| 10:20:13 | 17 | (Deposition Exhibit 148 was marked.) |
| 10:20:13 | 18 | THE VIDEOGRAPHER:  Okay.  The time is 11:27.  We're |
| | 19 | going off record. |
| 10:20:13 | 20 | // |
| 10:20:13 | 21 | // |
| 10:20:13 | 22 | // |
| | 23 | // |
| | 24 | // |
| | 25 | // |

Page 73

| | | |
|---|---|---|
| 13:37:31 | 1 | Q.   Okay. |
| 13:37:32 | 2 | And could you describe for us your |
| 13:37:36 | 3 | procedures in filing and storing documents that you |
| 13:37:44 | 4 | receive from CIG pertaining to your ESOP. |
| 13:37:48 | 5 | A.   I had a clear Velcro on both sides shut |
| 13:37:53 | 6 | folder that I put the information in, and then they |
| 13:37:57 | 7 | went into a, like a leather attache case that I had |
| 13:38:03 | 8 | all my other healthcare and important documents, |
| 13:38:06 | 9 | paperwork, Social Security, things, stuff like that, |
| 13:38:10 | 10 | into. |
| 13:38:10 | 11 | Q.   So were the CIG documents kept along with |
| 13:38:14 | 12 | other documents, or were they segregated in their |
| 13:38:18 | 13 | own classification? |
| 13:38:20 | 14 | A.   They were -- |
| 13:38:21 | 15 | MS. HASSELMAN:  Objection.  Compound. |
| 13:38:23 | 16 | THE WITNESS:  They were separated. |
| 13:38:26 | 17 | BY MR. LOVITT: |
| 13:38:26 | 18 | Q.   Now, have you turned all those documents |
| 13:38:29 | 19 | over to your attorney? |
| 13:38:30 | 20 | A.   Yes. |
| 13:38:32 | 21 | Q.   And did you try, as best you could, to |
| 13:38:38 | 22 | make sure that all the mail that you received |
| 13:38:41 | 23 | concerning your ESOP at CIG was saved in that file? |
| 13:38:47 | 24 | A.   Yes. |
| 13:38:47 | 25 | MS. HASSELMAN:  Objection.  Vague and |

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

LORA D. SMITH                      04/16/08

Page 77

| | | |
|---|---|---|
| 13:42:42 | 1 | A.    Yes. |
| 13:42:44 | 2 | Q.    And right in the middle of the letter, |
| 13:42:49 | 3 | that middle paragraph, it says, Mr. Moore, |
| 13:42:51 | 4 | Mr. William E. Moore sold shares to us to create a |
| 13:42:55 | 5 | market for the stock he owns, without a sale to |
| 13:42:58 | 6 | outside interests, and to recognize the loyalty, |
| 13:43:01 | 7 | dedication and hard work of CIG team members. |
| 13:43:06 | 8 | Does that refresh your recollection as to |
| 13:43:10 | 9 | who sold the stock to the ESOP? |
| 13:43:12 | 10 | A.    Yes. |
| 13:43:12 | 11 | Q.    So it was in fact Mr. Moore? |
| 13:43:14 | 12 | A.    Yes. |
| 13:43:16 | 13 | Q.    Now, did you have any reason to believe at |
| 13:43:18 | 14 | this time that ESOP didn't get a fair deal, that the |
| 13:43:22 | 15 | ESOP -- strike that question. |
| 13:43:24 | 16 | Did you have any reason to believe that |
| 13:43:25 | 17 | the ESOP paid too much for the stock? |
| 13:43:28 | 18 | MS. HASSELMAN:  Vague as to time. |
| 13:43:29 | 19 | BY MR. LOVITT: |
| 13:43:30 | 20 | Q.    During this time period. |
| 13:43:31 | 21 | A.    At this time when I received this letter? |
| 13:43:32 | 22 | Q.    Yeah. |
| 13:43:33 | 23 | A.    No. |
| 13:43:33 | 24 | Q.    Did you ever come to the opinion that the |
| 13:43:36 | 25 | ESOP paid too much for its 42 percent? |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

LORA D. SMITH                04/16/08

Page 78

| | | |
|---|---|---|
| 13:43:41 | 1 | A.   Yes. |
| 13:43:41 | 2 | Q.   When did you reach that opinion? |
| 13:43:45 | 3 | A.   In 2006. |
| 13:43:49 | 4 | Q.   In 2006. |
| 13:43:52 | 5 | What caused you to think in 2006 that the |
| 13:43:55 | 6 | ESOP might have paid too much for the stock? |
| 13:43:59 | 7 | MS. HASSELMAN:  Objection.  This is, first of |
| 13:44:00 | 8 | all, this is ground we've already been over.  But, |
| 13:44:03 | 9 | second of all, I just want to caution the witness |
| 13:44:05 | 10 | that you can answer to the extent that your answer |
| 13:44:09 | 11 | comes from your own knowledge and not communications |
| 13:44:11 | 12 | with counsel, but don't get into any communications |
| 13:44:13 | 13 | with counsel. |
| 13:44:17 | 14 | THE WITNESS:  It came to my knowledge in 2006. |
| 13:44:20 | 15 | BY MR. LOVITT: |
| 13:44:21 | 16 | Q.   How so? |
| 13:44:22 | 17 | A.   I can't answer. |
| 13:44:22 | 18 | MS. HASSELMAN:  Same objection. |
| 13:44:23 | 19 | BY MR. LOVITT: |
| 13:44:23 | 20 | Q.   You can't answer in 2006? |
| 13:44:27 | 21 | MS. HASSELMAN:  Ron, I think I can clarify |
| 13:44:29 | 22 | here, but -- |
| 13:44:30 | 23 | MR. LOVITT:  Go ahead. |
| 13:44:31 | 24 | MS. HASSELMAN:  This is, in conjunction with |
| 13:44:32 | 25 | the correction about when the conversation with |

25b71117-a0fb-4182-9f9a-6e3ec3d4cb86

Page 203

| | | |
|---|---|---|
| 17:45:25 | 1 | THE VIDEOGRAPHER: The time is 5:45. We are |
| 17:45:27 | 2 | going off the record. |
| 17:45:31 | 3 | (Recess: 5:45 p.m. to 5:52 p.m.) |
| 17:52:46 | 4 | THE VIDEOGRAPHER: The time is 5:52. We are |
| 17:52:48 | 5 | back on record. |
| 17:52:51 | 6 | MR. SULLIVAN: After a brief conference among |
| 17:52:54 | 7 | counsel, we have agreed to withdraw Exhibit 181. |
| 17:52:58 | 8 | MS. HASSELMAN: So we are going to take the |
| 17:53:00 | 9 | sticker off the document, and the exhibit number |
| 17:53:02 | 10 | will be available for the next exhibit. |
| 17:53:05 | 11 | MR. SULLIVAN: Correct. |
| 17:53:05 | 12 | (Exhibit 181 unmarked.) |
| 17:53:05 | 13 | MS. HASSELMAN: I just have a couple of quick |
| 17:53:05 | 14 | questions to clarify some earlier testimony. Ms. |
| 17:53:05 | 15 | Smith will be done soon. |
| 17:53:05 | 16 | |
| 17:53:05 | 17 | EXAMINATION |
| 17:53:08 | 18 | BY MS. HASSELMAN: |
| 17:53:08 | 19 | Q. Ms. Smith, just a couple of quick |
| 17:54:06 | 20 | questions. |
| 17:54:11 | 21 | Do you understand that if you become a |
| 17:54:12 | 22 | class representative, that you represent the |
| 17:54:15 | 23 | participants in the K-M Industries Holding Company |
| 17:54:20 | 24 | ESOP? |
| 17:54:21 | 25 | A. Yes. |

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO AND OAKLAND DIVISION

---

THOMAS FERNANDEZ, et al.,          )
                                   )
            Plaintiffs,            )
                                   ) Case No.
       vs.                         )
                                   ) C-06-07339 CW
K-M INDUSTRIES HOLDING CO., INC., et al.,  )
                                   )
            Defendants.            )
                                   )
                                   )
                                   )

---

VIDEOTAPED DEPOSITION OF TOSHA THOMAS
April 18, 2008
San Francisco, California

Reported by:
EMI ALBRIGHT
RPR, CSR No. 13042
Job No. 79885

90f5190b-486a-4b74-9fb8-49aa5254bc3b

Page 22

1      Mr. Cristiano?

2                  MS. HASSELMAN:    Objection.  Vague and

3      ambiguous.

4           A     Sorry.  Can you repeat it, please?

09:54  5      BY MR. HANNAN:

6           Q     Sure.  Did you have any business dealings

7      with Mr. Cristiano?

8           A     No.

9           Q     May we show the witness Exhibit 60, please?

09:55  10     Ms. Thomas, can you tell us what Exhibit 60 is?

11                 MS. HASSELMAN:    Objection.  Vague.

12          A     Is your question for me to explain what

13     this document is?  Or --

14     BY MR. HANNAN:

09:56  15          Q     Yes.

16                 MS. HASSELMAN:    Objection.  Vague and

17     calls for speculation.

18          A     Again it's a document pertaining to the

19     ESOP plan.

09:56  20     BY MR. HANNAN:

21          Q     And have you seen this document before?

22          A     No, I have not.

23          Q     Would you turn back to Exhibit 59, please.

24     I will ask you the same question.  Can you tell us what

09:56  25     this is?

90f5190b-486a-4b74-9fb8-49aa5254bc3b

1    is that?

2         A    That was my relative of mine, that was her

3    employer at the time.

4         Q    I see.  And how did you come to prepare

10:10    5    these two pages of Exhibit 184?

6              MS. HASSELMAN:    Objection.  Vague.

7         A    Sorry.  Can you repeat it, please?

8    BY MR. HANNAN:

9         Q    How is it that you went through the process

10:10   10    of preparing these two pages, Exhibit 184?

11        A    I just created the resume myself.

12        Q    And had you seen some posting that

13    indicated a position might be available with

14    Kelly-Moore?

10:11   15        A    Yes, it was in a newspaper at the time.

16        Q    Now, you were employed with Kelly-Moore

17    until I believe July 2 of '07; is that correct?

18        A    Yes.

19        Q    And what happened that caused you to leave

10:11   20    Kelly-Moore?

21        A    At the time when I left, I was -- I felt I

22    was or I received discriminatory actions against myself

23    and I worked in a hostile environment so I left the

24    company.

10:11   25        Q    All right.  And what individual or

1           A      Yes.

2           Q      And would you remind us with whom that

3      conversation was?

4           A      Steve DeVoe.

10:46  5           Q      All right.  And I believe you said that you

6      explained to Mr. DeVoe your view of what had happened

7      and how the harassment had not ceased.  What is it that

8      Dr. DeVoe said to you?

9           A      Well, at the time he just basically, I

10:46  10     wouldn't say offer his apologies.  That would be

11     acknowledging the situation, I think.  Just basically

12     left it up to me if I wanted to come back or not.  That

13     was basically the end result of it.  I don't know if

14     this would be going backwards, but there's a couple

10:47  15     other things that I did want to mention being that we

16     are talking about it.  Harassment or discrimination,

17     that wasn't the only reason.  There were racial comments

18     that were brought to my attention as well from upper

19     management.  And that was one of the other reasons.

10:47  20          Q      Have you told us everything that Mr. DeVoe

21     said to you in that telephone conversation?

22          A      Yes.

23          Q      And did you have any further conversation

24     with anyone from Kelly-Moore about the subject matter of

10:47  25     your conversations with Mr. DeVoe?

90f5190b-486a-4b74-9fb8-49aa5254bc3b

Page 53

1            MS. HASSELMAN:    Yes or no would be an

2    acceptable answer.

3    BY MR. HANNAN:

4            Q    Would you give us a yes or no?  Do you

10:59    5    recall the question?

6            A    Can you repeat the question again, please?

7            Q    Sure.  Did Mr. Rukin undertake to represent

8    you with respect to the subject matter of harassment at

9    Kelly-Moore?  Yes or no?

10:59    10           A    No, not at this time, no.

11           Q    Did he at any time undertake to represent

12   you with regard to that subject?

13   .         A    No.

14           Q    Have you taken any action, any legal action

11:00    15   of any sort with respect to that subject matter?

16           A    Yes.

17           Q    And what action have you taken?

18           A    I contacted the EEOC.

19           Q    And when did you do that?

11:00    20           A    I believe it was maybe September of '07.

21           Q    All right.  And as a result of contacting

22   them, did you take any further action?

23           MS. HASSELMAN:    Objection.  Vague and

24   ambiguous.

11:00    25           A    I'm sorry.  As of -- can you repeat it,

90f5190b-486a-4b74-9fb8-49aa5254bc3b

1    please?

2    BY MR. HANNAN:

3        Q    Sure.  Did you do anything as a result of

4    having contacted the EEOC?

11:00  5            MS. HASSELMAN:    Same objection.

6        A    I provided whatever information, but --

7    BY MR. HANNAN:

8        Q    Did you file a complaint?

9        A    Yes.

11:00  10        Q    All right.  And when did you file the

11    complaint?

12        A    I don't have an exact date, but I would say

13    maybe September of '07.

14        Q    All right.  And what is the status of that

11:01  15    complaint?

16            MS. HASSELMAN:    Objection.  Vague.

17        A    Well, it's still in process.

18    BY MR. HANNAN:

19        Q    And have you had any discussion with anyone

11:01  20    about the subject matter of that complaint?

21        A    I'm sorry.  Discussion meaning?

22        Q    With anyone about the subject matter of

23    your EEOC complaint?

24        A    No, just the EEOC themselves.

11:01  25        Q    And with whom did you have that discussion

90f5190b-486a-4b74-9fb8-49aa5254bc3b

Page 61

1           MR. HANNAN:  Now, I want to put the

2    complaint in front of the witness.  It's Exhibit 147.

3    Do we have a copy for the witness, in this book?

4           MS. HASSELMAN:    I think it's here.

11:08    5    BY MR. HANNAN:

6        Q    Ms. Thomas, I have asked you to look on

7    Exhibit 147, and you can take as long as you wish.  I

8    want to ask you whether you recognize Exhibit 147?

9        A    Yes.

11:08   10        Q    When did you first see Exhibit 147 in any

11    form?

12        A    I believe the end of October 2007.

13        Q    And when you first saw it, did you read it?

14        A    Yes.

11:09   15        Q    And did you attempt to understand it?

16        A    Yes.

17        Q    Did you understand that this document in

18    whatever form it was in October of '07 would ultimately

19    constitute a legal claim filed by you against the

11:09   20    defendants including the Kelly-Moore defendants?

21           MS. HASSELMAN:    Objection.  Vague and

22    ambiguous.

23        A    Yes.

24    BY MR. HANNAN:

11:09   25        Q    And did you make any edits to the document

90f5190b-486a-4b74-9fb8-49aa5254bc3b

Page 65

1          Q    Yes.  As you sit here right now, do you

2     have any problem with the way the shares in Kelly-Moore

3     were valued?

4               MS. HASSELMAN:    Objection.  Same

11:14  5     objections.

6          A    Yes.

7     BY MR. HANNAN:

8          Q    What is your problem?

9               MS. HASSELMAN:    Objection.  Vague.

11:14 10         A    That there was too much paid into the plan.

11    BY MR. HANNAN:

12         Q    I see.  And what amount was paid that was

13    too much?

14              MS. HASSELMAN:    Objection.  Vague and

11:14 15    ambiguous and calls for a legal conclusion.

16         A    I don't know.

17    BY MR. HANNAN:

18         Q    Well, how much too much was it?

19              MS. HASSELMAN:    Objection.  Calls for a

11:14 20    legal conclusion.  You are asking her to testify about

21    damages.  It's an issue for experts.

22         A    I don't know.  Can't answer that question.

23    BY MR. HANNAN:

24         Q    Do you have any idea at all how much too

11:15 25    much you believe was paid?

90f5190b-486a-4b74-9fb8-49aa5254bc3b

Page 66

```
 1                    MS. HASSELMAN:    Objection.  Asked and

 2       answered.

 3            A    No.

 4       BY MR. HANNAN:

 5            Q    Now, you also -- in this paragraph the

 6       complaint also says that money was borrowed from

 7       Kelly-Moore, 232 million.  Do you have some problem with

 8       that?

 9                    MS. HASSELMAN:    Objection.  Misstates what

10       the document says.  Vague and ambiguous.  Argumentative.

11            A    You are asking me if I had any problem with

12       it?

13       BY MR. HANNAN:

14            Q    Yeah, is that a problem for you?

15                    MS. HASSELMAN:    Same objections.

16            A    I don't know.

17       BY MR. HANNAN:

18            Q    And then it also says here that Kelly-Moore

19       in turn borrowed 136 million from CIG.  What is CIG?

20            A    California Insurance Group, I believe.

21            Q    All right.  And do you have a problem of

22       any sort with Kelly-Moore allegedly borrowing

23       136 million from CIG?

24                    MS. HASSELMAN:    Same objections.  Vague

25       and ambiguous.  Calls for a legal conclusion.
```

11:15  (line 5)
11:15  (line 10)
11:15  (line 15)
11:16  (line 20)
11:16  (line 25)

1 Argumentative.

2   A I don't know.

3 BY MR. HANNAN:

4   Q All right.  Would you look at paragraph 28.

11:17 5   A Okay.

6   Q And in part, paragraph 28 says that the

7 defendant fiduciaries.  Who are they?

8     MS. HASSELMAN:  Objection.  Calls for a

9 legal conclusion.  Are you asking her or potentially ask

11:17 10 her to characterize a part of the document that you

11 haven't shown to her?

12 BY MR. HANNAN:

13   Q Who did you think they were when you read

14 this in or about October of '07?

11:17 15     MS. HASSELMAN:  Objection.  Misstates

16 prior testimony.  Assumes facts not in evidence.

17   A I don't know.  I have no idea.

18 BY MR. HANNAN:

19   Q Then it says whoever these fiduciaries

11:17 20 were, that they failed to investigate adequately the

21 qualifications of any valuation expert.  Is that true?

22   A Is this line -- paragraph 28?

23   Q Yes, where it says -- the particular

24 portion that says that the fiduciaries failed to

11:18 25 investigate adequately the qualifications of any

90f5190b-486a-4b74-9fb8-49aa5254bc3b

Page 137

1          A     Could have been after July.

2     BY MR. HANNAN:

3          Q     What is your best recollection of when you

4     first viewed this document?

14:04     5          MS. HASSELMAN:    Objection.   Misstates

6     prior testimony.

7          A     Maybe August sometime.

8     BY MR. HANNAN:

9          Q     Now, you already testified that you had a

14:05    10     conversation in 2003 in which you learned some pertinent

11     information.

12          MS. HASSELMAN:    Objection.   Vague.

13     BY MR. HANNAN:

14          Q     Well, let's get it exactly straight.   Do

14:05    15     you know what conversation I am referring to?

16          A     With Pat --

17          MS. HASSELMAN:    Objection.   Calls for

18     speculation.

19     BY MR. HANNAN:

14:05    20          Q     Yes, with Pat McDonald?

21          A     Yes.

22          Q     All right.   Where did that conversation

23     take place?

24          A     In the HR department.

14:05    25          Q     All right.   And who was present?

Page 138

```
 1            A    I don't remember everyone exactly.   I
 2     believe it was Linda, Lizzy -- Lizzy Fernandez, Linda
 3     Hazelton.
 4            Q    Anyone else?
 5            A    No, not that I remember, no.
 6            Q    Linda Hazelton, you said?
 7            A    Yes.
 8            Q    What was her employment position?
 9            A    She was an HR clerk there at the time.
10            Q    And who initiated the conversation?
11            A    Pat McDonald.
12            Q    So the conversation involved Mr. McDonald,
13     Ms. Hazelton, Ms. Fernandez, and yourself?
14            A    Yes.
15            Q    And how did it come to pass that
16     Mr. McDonald initiated this conversation?
17                 MS. HASSELMAN:    Objection.   Calls for
18     speculation.
19            A    Well, from what I remember at the time we
20     had received numerous amounts of asbestos claims or
21     lawsuits.
22     BY MR. HANNAN:
23            Q    When you say we, to whom do you refer?
24            A    Well, not we.   Kelly-Moore.
25            Q    Kelly-Moore had?
```

14:05  (line 5)
14:06  (line 10)
14:06  (line 15)
14:06  (line 20)
14:06  (line 25)

Page 139

1        A     Yes.

2        Q     And how did you know that?

3        A     He -- well, he brought them in and kind of

4    mentioned it to the group.

14:07    5        Q     Would you tell us as best you recall what

6    it is that Mr. McDonald said on that occasion?

7        A     Basically that I can remember is that the

8    asbestos lawsuits could affect the ESOP.  We really

9    didn't get into too much of a discussion about it.

14:07   10        Q     Anything else that he said?

11        A     No.

12        Q     What, if anything, did Linda Hazelton say?

13        A     I don't remember exactly what she said.

14        Q     What, if anything, did Lizzy Fernandez say?

14:07   15        A     I don't remember.

16        Q     And what, if anything, did you say?

17        A     I just listened to what he said.  I didn't

18    make any comment about it.

19        Q     So this was simply a matter that

14:08   20    Mr. McDonald came in with this stack of papers and said

21    to you that in sum and substance that asbestos lawsuits

22    could affect the ESOP?

23        A     Yes.

24        Q     And nobody said anything in response to

14:08   25    that?

90f5190b-486a-4b74-9fb8-49aa5254bc3b

1    the ESOP's purchase of KMH stock may have been for more

2    than fair market value?

3                    MS. HASSELMAN:    Objection.    Asked and

4    answered.    Calls for a legal conclusion.

14:22    5        A    Can you please repeat the question, please?

6    BY MR. HANNAN:

7        Q    All right.    When did you first learn that

8    the ESOP's purchase of Kelly-Moore stock may have been

9    for more than fair market value?

14:22   10                    MS. HASSELMAN:    Objection.    Asked and

11    answered.    Calls for a legal conclusion.

12        A    I don't recall.    I don't remember.

13    BY MR. HANNAN:

14        Q    Let me read to you a portion of

14:22   15    paragraph 53 of the complaint.    And I am reading from

16    line 17.    Plaintiff Thomas was unaware that Kelly-Moore

17    was liable to numerous plaintiffs for asbestos

18    litigation until in or about 2005.

19                    And I will skip now to the portion that

14:23   20    pertains to the question.    And let me read it so that it

21    is limited and eliminates that portion.

22                    Plaintiff Thomas had no knowledge that the

23    plan's purchase of KMH stock may have been for more than

24    fair market value, including but not limited to

14:23   25    knowledge that more than fair market value may have been

90f5190b-486a-4b74-9fb8-49aa5254bc3b

1    paid due to potential asbestos liability, until 2007.

2              Do you see where I just read?

3         A    Yes.

4         Q    Is that a true statement?

14:23    5              MS. HASSELMAN:    Objection.    Calls for a

6    legal conclusion.    Asked and answered.

7         A    Yes.

8    BY MR. HANNAN:

9         Q    All right.    And what is it that occurred in

14:24   10    2007 that caused you for the first time to realize those

11    alleged facts?

12              MS. HASSELMAN:    Objection.    We have been

13    over this area.    This calls for attorney client

14    communications.    If you can answer the question without

14:24   15    getting into any communications from your counsel or to

16    your counsel, you can answer.    And if you need to get

17    into attorney client communications to answer the

18    question, then you shouldn't answer it.

19         A    I can't answer the question.

14:24   20    BY MR. HANNAN:

21         Q    Well, let's parse it a bit then.    You were

22    aware well prior to 2007 that the value of your ESOP

23    shares may have been affected by potential asbestos

24    liability; true?

14:24   25              MS. HASSELMAN:    Object to the form of the

Page 174

1    valuation of your ESOP shares?

2              MS. HASSELMAN:    Objection.   Calls for a

3    legal conclusion.   Vague and ambiguous and assumes facts

4    not in evidence.

15:17    5         A    Yes.

6    BY MR. HANNAN:

7         Q    I'm sorry?

8         A    Yes.

9         Q    Thank you.   Did you also learn in 2005 in

15:17   10    August that an independent trustee had been appointed?

11              MS. HASSELMAN:    Objection.   Vague and

12    ambiguous.

13    BY MR. HANNAN:

14         Q    I'm sorry.   I did say 2005.   Let me

15:17   15    withdraw the question.

16              Did you learn in or about August of 2006

17    that an independent trustee had been appointed as

18    trustee for the ESOP?

19         A    Not that I recall, no.

15:17   20         Q    Do you see that set forth under the title,

21    trustee, on the second page?

22         A    Yes, I see it.

23         Q    All right.   Now, you are suing North Star,

24    aren't you?

15:18   25              MS. HASSELMAN:    Objection.   Calls for a

90f5190b-486a-4b74-9fb8-49aa5254bc3b

1    legal conclusion.

2         A    Yes.

3    BY MR. HANNAN:

4         Q    Why are you suing North Star?

15:18   5         MS. HASSELMAN:    Objection.  Calls for a

6    legal conclusion.  And if you are able to answer the

7    question from your own knowledge without getting into

8    any communications to or from counsel, then you can

9    answer.  And if you need to get into attorney client

15:18  10    communications to answer the question, then you

11    shouldn't answer.

12         A    Can't answer that question.

13    BY MR. HANNAN:

14         Q    Do you have any understanding as you sit

15:18  15    here now why you are suing North Star?

16         MS. HASSELMAN:    Same objection and the

17    same caution to only answer if you can answer without

18    getting into any attorney client communications.

19    BY MR. HANNAN:

15:18  20         Q    It's a different question.  It could be

21    answered yes or no.  As you sit here right now, do you

22    have any idea regardless of where you obtained the idea

23    why you are suing North Star?

24         MS. HASSELMAN:    Same objections.

15:19  25         A    Yes, somewhat, yes.

90f5190b-486a-4b74-9fb8-49aa5254bc3b

BY MR. HANNAN:

Q    You have some idea why you are suing them?

A    Yes.

Q    Apart from anything your lawyer has said to you, can you give me any reason why you are suing North Star?

A    Well, to retain back money from what was paid into the plan.

MR. HANNAN:    I'm sorry.    Could I have that back?

(Record read by the reporter.)

BY MR. HANNAN:

Q    All right.    And apart from what your lawyers may have told you, why do you think North Star owes you money for that reason?

MS. HASSELMAN:    Same objection.    Also mischaracterizes prior testimony and assumes facts not in evidence.

A    I don't know.

BY MR. HANNAN:

Q    Why are you suing Kelly-Moore, K-M Industries Holding Company?

MS. HASSELMAN:    Same objections as to the last line of questions regarding North Star.    If you can

90f5190b-486a-4b74-9fb8-49aa5254bc3b

1    answer from your own knowledge, that's fine.  And if you

2    need to get into attorney client communications in order

3    to answer, then you should not answer the question.

4           A    Can't answer the question.

15:20    5    BY MR. HANNAN:

6           Q    Apart from whatever your lawyers may have

7    told you, are you aware of any reason at all why you are

8    suing K-M Industries Holding Company Inc.?

9                MS. HASSELMAN:    Same objections and also

15:20    10   argumentative.

11          A    Yes.

12   BY MR. HANNAN:

13          Q    I'm sorry?

14          A    Yes.

15:20    15         Q    What are those reasons?

16          A    For the reason that I stated before, that

17   the plan paid too much.

18          Q    Okay.  Any other reason?

19          A    No.

15:21    20         Q    And why are you suing the William E. and

21   Desiree B. Moore revocable trust?

22                MS. HASSELMAN:    Same objections.  If you

23   can answer from your own knowledge, then go ahead.  And

24   if you need to get into attorney client communications

15:21    25   to do so, then don't answer.

90f5190b-486a-4b74-9fb8-49aa5254bc3b

1          A     Can't answer it.

2     BY MR. HANNAN:

3          Q     And apart from what your attorneys have

4     told you, do you have any understanding or reason

15:21     5     whatsoever for suing that revocable trust?

6               MS. HASSELMAN:    Same objections.

7     Argumentative.

8          A     Somewhat, yes.

9     BY MR. HANNAN:

15:21    10          Q     And tell us what the reason or reasons may

11     be.

12          A     It would be the same reason.

13               MR. HANNAN:    All right.    Mark as

14     Exhibit 206 what appears to be a copy of a Mind Our Own

15:22    15     Business newsletter dated July 2007, production Nos. P

16     1113 through 16.

17                         (Exhibit No. 206 marked

18                          for identification.)

19

20     BY MR. HANNAN:

21          Q     Can you identify Exhibit 206 for us,

22     please?

23               MS. HASSELMAN:    Objection.    Calls for

24     speculation.

15:23    25          A     It is a Mind Our Own Business document.

90f5190b-486a-4b74-9fb8-49aa5254bc3b

1           A     Yeah.

2           Q     Okay.  Now, what is a class representative?

3           A     Me representing a group as a whole.

4           Q     And do you want to be a class

15:54   5   representative?

6           A     Yes.

7           Q     And what class do you want to represent?

8           A     I just want to represent the class

9   basically for any payback or entitlement from the ESOP

15:55   10  plan.

11          Q     Anybody at all who might be entitled to

12  some, as you put it, payback from the ESOP plan?

13          A     Yes.

14          Q     Does that include former employees?

15:55   15          MS. HASSELMAN:     Objection.  Calls for a

16  legal conclusion and lacks foundation.

17          A     I would say so, yes.

18  BY MR. HANNAN:

19          Q     And does it include present employees?

15:55   20          MS. HASSELMAN:     Same objection.

21          A     Yes.

22  BY MR. HANNAN:

23          Q     And you are no longer a present employee,

24  though; correct?

15:55   25          A     Correct.

90f5190b-486a-4b74-9fb8-49aa5254bc3b

1         Q    But you believe you can represent the

2    present employees?

3              MS. HASSELMAN:    Objection.  Calls for a

4    legal conclusion.

15:56    5         A    Yes.

6    BY MR. HANNAN:

7         Q    What are your duties as a class

8    representative?

9         A    My duties?  I believe to basically maybe

15:56   10    step in and do whatever I can to receive anything that

11    was entitled to myself and others.

12         Q    Yourself and others?

13         A    Yes.

14         Q    Anything you are entitled to?

15:56   15         A    Yes.

16         Q    All right.  What is a fiduciary duty?

17              MS. HASSELMAN:    Objection.  Calls for a

18    legal conclusion.  Vague and ambiguous.

19         A    I don't know.

20    BY MR. HANNAN:

21         Q    Do you understand that you if appointed as

22    a class representative would be undertaking a fiduciary

23    duty?

24         A    No, I don't know.

15:56   25              MS. HASSELMAN:    Same objections to the

90f5190b-486a-4b74-9fb8-49aa5254bc3b

1    second question as to the original question of what is a

2    fiduciary duty.

3    BY MR. HANNAN:

4        Q    Now, do you expect to receive anything for

15:57    5    your services as a class representative?

6            MS. HASSELMAN:    Objection.    Vague and

7    ambiguous.

8        A    I would say so, yes.

9    BY MR. HANNAN:

15:57    10    Q    What is it you expect to receive?

11        A    Whatever money that was paid into the plan,

12    I expect to receive that back.

13        Q    Anything else?

14        A    No.

15:57    15    Q    Now, do you understand that if your lawsuit

16    is unsuccessful that you may be required to pay the

17    costs -- the defense costs of the lawsuit?

18            MS. HASSELMAN:    Objection.    Calls for a

19    legal conclusion.

15:57    20    A    Yes.

21    BY MR. HANNAN:

22        Q    And are you prepared to do that?

23        A    No, not at this time, no.

24            MR. HANNAN:    Now, in the course of

15:58    25    questioning, on several occasions you have instructed

90f5190b-486a-4b74-9fb8-49aa5254bc3b

1          Q    And you don't know because you have no

2    facts to support that allegation; true?

3               MS. HASSELMAN:    Objection.    Calls for a

4    legal conclusion and misstates prior testimony.

16:15    5          A    Yes.

6    BY MR. HANNAN:

7          Q    All right.    And what facts, if any, do you

8    state your allegation upon that you had no knowledge

9    that more than fair market value had been paid due to

16:16    10   potential asbestos liability until 2007?

11              MS. HASSELMAN:    Objection.    Asked and

12   answered.    Calls for a legal conclusion.    Vague and

13   ambiguous.    We just -- you just asked her almost the

14   exact same question.

16:16    15         A    I don't know.

16   BY MR. HANNAN:

17         Q    That's because you have no facts to support

18   that particular assertion concerning potential liability

19   until 2007; true?

16:16    20              MS. HASSELMAN:    Objection.    Vague and

21   ambiguous.    Misleading.    Calls for a legal conclusion.

22         A    Yes.

23   BY MR. HANNAN:

24         Q    All right.    And tell me each and every fact

16:17    25   upon which you base your allegation upon information and

90f5190b-486a-4b74-9fb8-49aa5254bc3b

1    record.  The time is 4:47 p.m.

2

3

4                        EXAMINATION

16:47    5    BY MR. SULLIVAN:

6         Q    Ms. Thomas, my name is Andrew Sullivan.  I

7    am an attorney for North Start Trust Company.  I only

8    have a few questions for you.  I know it's been a long

9    day.

16:47    10        Do you know who North Start Trust Company

11    is?

12        A    I am somewhat familiar with it, yes.

13        Q    And can you describe your understanding of

14    who they are?

16:47    15        A    That North Star basically stepped in as a

16    temporary like sort of a trustee for the ESOP plan.

17        Q    And do you know when they stepped in as a

18    trustee for the ESOP plan?

19        A    No, I don't remember.

16:47    20        Q    Did you know at one time and you just don't

21    remember today or you weren't sure when they stepped in?

22        A    I don't remember the exact date today.

23        Q    Okay.  What claims do you believe that you

24    are asserting against North Star in the second amended

16:48    25    complaint?

```
 1                    MS. HASSELMAN:   Objection.  Calls for a
 2       legal conclusion.
 3            A     Like I had stated earlier, that the plan
 4       paid too much.
16:48    5       BY MR. SULLIVAN:
 6            Q     And do you believe you have any other
 7       claims against North Star, whether they have been
 8       asserted or not?
 9            A     No.
16:48   10                    MS. HASSELMAN:   Objection.  Vague and
11       ambiguous and calls for a legal conclusion.
12       BY MR. SULLIVAN:
13            Q     And do you think that you personally have
14       sustained any losses because you weren't a participant
16:48   15       back in 1998?
16                    MS. HASSELMAN:   Objection.  Calls for a
17       legal conclusion and vague and ambiguous.
18            A     I don't know.
19       BY MR. SULLIVAN:
16:48   20            Q     Do you think the subsequent valuations
21       after the initial transaction were appropriate?
22                    MS. HASSELMAN:   Objection.  Calls for a
23       legal conclusion.
24            A     I don't know.
16:49   25       BY MR. SULLIVAN:
```

90f5190b-486a-4b74-9fb8-49aa5254bc3b

1              Do you recall that you said earlier, you

2       testified earlier that you were on a first name basis

3       with Dan Stritmatter?

4              A    It wasn't just myself.  It was everyone in

16:50   5       the company.

6              Q    Were you friends with Mr. Stritmatter?

7              A    No.

8              Q    When you left Kelly-Moore in July of 2007,

9       were you angry at the company?

16:51   10             A    No, I was not.

11             Q    And you mentioned earlier a conversation

12      with Mr. DeVoe after the time that you left the company.

13      Do you remember that discussion?

14             A    Yes.

16:51   15             Q    And I believe you were asked earlier -- I'm

16      sorry.  Let me rephrase that.

17             I believe you indicated earlier that

18      Mr. DeVoe suggested that you could return to the company

19      if you wished; is that correct?

16:51   20             A    Yes.

21             Q    And in that conversation did Mr. DeVoe give

22      you the impression that if you did return that the

23      circumstances would be any better than they had been

24      before you left?

16:52   25             MR. HANNAN:  Object as leading.

90f5190b-486a-4b74-9fb8-49aa5254bc3b

Page 210

1       A    No, he did not.

2            MS. HASSELMAN:    I have one other thing,

3       but I actually need to go off the record for just one

4       second and just fix something in one of the documents.

16:52   5            THE VIDEOGRAPHER:    Off the record at

6       4:52 p.m.

7                    (Recess 4:52 p.m.-4:53 p.m.)

8            THE VIDEOGRAPHER:    We are back on the

9       record at 4:53 p.m.

10

11

12                    EXAMINATION (Continuing)

13      BY MS. HASSELMAN:

14      Q    Ms. Thomas, I am going to ask you to take a

16:53   15      look back at the exhibit that were introduced earlier

16      that was 193.  It should be in the little pile just in

17      front of you.  Do you remember discussing this document

18      earlier today?

19      A    Yes.

16:54   20      Q    And do you recall that you said your best

21      estimate of when you first saw this document was in

22      approximately April of 2002?

23      A    Yes.

24      Q    And in April of 2002 when you believe you

16:54   25      first saw this document, do you recall whether you read

90f5190b-486a-4b74-9fb8-49aa5254bc3b

# EXHIBIT 4

1 Daniel Feinberg – CA State Bar No. 135983
  Todd F. Jackson – CA State Bar No. 202598
2 Margaret E. Hasselman – CA State Bar No. 228529
  Nina R. Wasow – CA State Bar No. 242047
3 Kirsten G. Scott – CA State Bar No. 253464
  LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
4 1330 Broadway, Suite 1800
  Oakland, CA  94612
5 Telephone: (510) 839-6824
  Facsimile: (510) 839-7839
6 Email: dfeinberg@lewisfeinberg.com
  Email: tjackson@lewisfeinberg.com
7 Email: mhasselman@lewisfeinberg.com
  Email: nwasow@lewisfeinberg.com
8 Email: kscott@lewisfeinberg.com

9 Peter Rukin – CA State Bar No. 178336
  RUKIN HYLAND DORIA & TINDALL LLP
10 100 Pine Street, Suite 725
  San Francisco, CA
11 Telephone: (415) 421-1800
  Facsimile: (415) 421-1700
12 Email: peterrukin@rhddlaw.com

13 *Attorneys for Plaintiffs and the Proposed Class*

14

15     IN THE UNITED STATES DISTRICT COURT

16    FOR THE NORTHERN DISTRICT OF CALIFORNIA

17     SAN FRANCISCO AND OAKLAND DIVISION

18

19 THOMAS FERNANDEZ *et al.*,   Case No. C-06-07339 CW

20    Plaintiffs,

21  vs.

22 K-M INDUSTRIES HOLDING CO., INC., **PLAINTIFFS' INITIAL DISCLOSURES**
  *et al.*,        **FOR TOSHA THOMAS**

23

24    Defendants.

25

26   Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiffs provide the following

27 initial disclosures for Tosha Thomas.  These disclosures are based on the information reasonably

28 available to Plaintiffs as of the date of service of these disclosures.  Plaintiffs reserve the right to

1    supplement these disclosures at a later time.

2                                    **DISCLOSURES**

3    A.    **PERSONS LIKELY TO HAVE DISCOVERABLE INFORMATION RELEVANT
           TO DISPUTED FACTS ALLEGED IN THE PLEADINGS.**

4
            The following persons are likely to have discoverable information relevant to disputed

5    facts:

6          •    Named Plaintiff Tosha Thomas, who may be contacted through Plaintiffs' counsel.

7          •    Desiree B. Moore, trustee of the William E. Moore Marital Trust, reachable
8               through counsel for KMH and the William E. Moore Marital Trust.

9          •    Dan Stritmatter, Chief Financial Officer of K-M Industries Holding Co., Inc.
                ("KMH"), reachable through counsel for KMH.
10
11         •    Peter M. Cazzolla, President and CEO of Capital Insurance Group ("CIG"),
                reachable through counsel for KMH.

12         •    Herb Giffins, President and Chief Executive Officer of Kelly-Moore Paint Co.,
                reachable through counsel for KMH.
13
           •    Edward T. Mines, former Vice President and Chief Financial Officer of CIG,
14              reachable through counsel for KMH.

15         •    Stephen Ferrari, former Chief Financial Officer of Kelly-Moore Paint Co.,
                reachable through counsel for KMH.
16
           •    Joseph Cristiano, former President and Chief Executive Officer of Kelly-Moore
17              Paint Co., reachable through counsel for KMH.

18         •    Thomas H. Scherff, Vice President of Claims, CIG, reachable through counsel for
                KMH.
19
           •    Walter Leclerc, Director of Risk Management and Auditing, Kelly-Moore Paint
20              Co., reachable through counsel for KMH.

21         •    Other employees or former employees of KMH, CIG, and/or Kelly-Moore Paint
                Co. with knowledge of (a) the transactions in which the KMH ESOP or its
22              predecessor plans, the CIG ESOP and the Kelly-Moore Paint Co. ESOP,
                purchased stock of KMH, and/or (b) administration of the ESOPs, and/or (c)
23              communications with employees and/or participants about the ESOPs.

24         •    Principals and Employees of Sansome Street Appraisers (names unknown), who
                prepared or assisted in preparing valuations of Kelly-Moore Paint Co. and KMH,
25              255 California Street, Floor 10, San Francisco, CA 94111-4924; Tel: 415-362-
                5200.
26
           •    Principals and Employees of Ireland Associates, who prepared or assisted in
27              preparing valuations of Kelly-Moore Paint Co. and KMH, 255 California Street,
                Floor 10, San Francisco, CA 94111-4924; Tel: 415-362-5200.
28

1

- Principals and Employees of Menke & Associates, Inc., who designed, implemented and administered the KMH ESOP or its predecessor plans, the CIG ESOP and the Kelly-Moore Paint Co. ESOP, 255 California Street, Floor 10, San Francisco, CA 94111-4924; Tel: 415-362-5200.

2

3

- John G. Hommel, Senior Vice President & Trust Officer, North Star ESOP & Fiduciary Services, North Star Trust Company, reachable through counsel for Defendant North Star Trust Company.

4

5

- Employees of Defendant North Star Trust Company (names unknown), 500 W. Madison Street, Suite 3630, Chicago, IL 60661; reachable through counsel for Defendant North Star Trust Company.

6

7

- Employees of BSI Consultants (names unknown), who are or were involved in administration of the KMH ESOP; 12121 Wilshire Blvd., Suite 555, Los Angeles, CA 90025; Tel: 310-207-8776, Fax: 310-207-3556.

8

9

- Employees of Brach, Neal, Daney & Spence, LLP (names unknown), who are or were involved in audits of the KMH ESOP; 333 West Santa Clara Street, Suite 920, San Jose, CA 95113; Tel: 408-298-7676, Fax: 408-298-6324.

10

11

- Employees of Ernst & Young, LLP (names unknown) who are or were involved in audits of the KMH ESOP; 1331 North California Blvd., Suite 200, Walnut Creek, California 94596; Tel: 925-977-2900, Fax: 925-977-2994.

12

13

- Robert S. Socol, Managing Director, Stout Risius Ross, One South Wacker Drive, Suite 1900, Chicago, Illinois 60606; Tel: 312-857-9000, Fax: 312-857-9001.

14

15

- Andrew S. Ward, Director, Stout Risius Ross, One South Wacker Drive, Suite 1900, Chicago, Illinois 60606; Tel: 312-857-9000, Fax: 312-857-9001.

16

17

- Scott D. Levine, Managing Director, Stout Risius Ross, 1600 Tyson's Boulevard, 8th Floor, McLean, VA 22102; Tel: 703-637-3700, Fax: 866-808-7621.

18

19

- Other employees of Stout Risius Ross (names unknown) who are or were involved in performing valuations of KMH, CIG, or Kelly-Moore Paint Co. stock; One South Wacker Drive, Suite 1900, Chicago, Illinois 60606; Tel: 312-857-9000, Fax: 312-857-9001; and 1600 Tyson's Boulevard, 8th Floor, McLean, VA 22102; Tel: 703-637-3700, Fax: 866-808-7621.

20

21

- Any past or present "fiduciary," within the meaning of ERISA § 3(21), of the KMH ESOP or its predecessor plans, the CIG ESOP and the Kelly-Moore Paint Co. ESOP.

22

23

- Any past or present "party in interest," within the meaning of ERISA § 3(14), to the KMH ESOP or its predecessor plans, the CIG ESOP and the Kelly-Moore Paint Co. ESOP.

24

25

- Any person who, currently or in the past, has provided services to the KMH ESOP or its predecessor plans, the CIG ESOP and the Kelly-Moore Paint Co. ESOP.

26

27

- Any past or present "administrator," within the meaning of ERISA §3(16)(A), of the KMH ESOP or its predecessor plans, the CIG ESOP and the Kelly-Moore Paint Co. ESOP.

28

1      •     Any individual listed in any defendant's initial disclosures.

2

**B.     DOCUMENTS RELEVANT TO DISPUTED FACTS ALLEGED IN THE**
3          **PLEADINGS.**

4        Plaintiffs have produced herewith unprivileged documents bates-stamped P1109 - 1133,

5 which constitute correspondence and other documents received by Tosha Thomas relating to the

6 above-listed plans.

7        Plaintiffs have also previously produced unprivileged documents bates-stamped P094 -

8 1108, which are documents produced in response to document requests made pursuant to ERISA

9 § 104 prior to the institution of this lawsuit and in the possession of Plaintiffs. Plaintiffs have no

10 additional documents to produce in response to this request at this time. However, Plaintiffs do

11 not possess a complete set of all such documents. Because those documents no longer in

12 Plaintiffs' possession are in the custody or control of one or more Defendants, they have been or

13 will be produced by Defendants in initial disclosures or in response to a document request for

14 such documents by Plaintiffs. Therefore, Plaintiffs may also rely on such documents. Plaintiffs

15 may also rely on documents that have or may be produced by the Department of Labor pursuant

16 to requests under the Freedom of Information Act, and any documents produced by Defendants in

17 this lawsuit.

18 **C.     COMPUTATION OF DAMAGES.**

19        Damages recovered in this litigation will flow to the K-M Industries Holding Co., Inc.

20 Employee Stock Ownership Plan ("the ESOP"). The ESOP is entitled to recover an amount

21 equal to (a) any and all gains by any fiduciary or party in interest as a result of the breaches of

22 fiduciary duty and prohibited transactions alleged in the Complaint; (b) the difference between

23 what the ESOP paid for stock in K-M Industries Holding Co., Inc. and the fair market value of

24 that stock at the time of the transaction; (c) any losses suffered by the ESOP as a result of the

25 breaches of fiduciary duty alleged in the Complaint; and/or (d) losses measured by any other

26 method that the Court finds fair and equitable. These amounts will be proved at trial. Plaintiffs

27 are also entitled to recover their attorneys' fees and costs of suit.

28

1    **D.    INSURANCE AGREEMENTS.**

2        Plaintiffs do not know whether any Defendant carries insurance coverage for the conduct

3    at issue in this case.

4    Dated: February 27, 2008

5                                                LEWIS, FEINBERG, LEE,
                                                RENAKER & JACKSON, P.C.

6                                    By:    _Kirsten Scott_____

7                                                Kirsten G. Scott
                                                *Attorneys for Plaintiffs*

8                                                *and the Proposed Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                      **PROOF OF SERVICE**

2           I, Candice Elder, declare:

3           My business address is 1330 Broadway, Suite 1800, Oakland, California 94612.  I am

4 over the age of 18 years and not a party to the above-entitled action.

5           On February 27, 2008, I served:

6     **PLAINTIFFS' INITIAL DISCLOSURES FOR TOSHA THOMAS**

7 on the persons listed below by placing a true and correct copy thereof in a United States Postal

8 Service Mail Box, with First Class with postage prepaid, addressed as follows:

9 Ronald Lovitt                                Nicole A. Diller
   J. Thomas Hannan                          Lisa Serebin

10 Henry I. Bornstein                        Andrew C. Sullivan
   LOVITT & HANNAN, INC.               MORGAN, LEWIS BOCKIUS LLP

11 900 Front Street, Suite 300            One Market, Spear Street Tower
   San Francisco, CA 94111             San Francisco, CA 94105

12 Telephone: 415-362-8769            Telephone: 415-442-1000
   Facsimile: 415-362-7528             Facsimile: 415-442-1001

13

14 Robert L. Palmer
   Lauren A. Smith

15 Caroline Walters
   Paul B. Derby

16 HENNIGAN, BENNETT & DORMAN LLP
   865 South Figueroa Street

17 Suite 2900
   Los Angeles, CA 90017

18 Telephone: 213-694-1200
   Facsimile: 213-694-1234

19

20 **Attorneys for Defendants**

21

22           I declare under penalty of perjury that the foregoing is true and correct.  Executed on

23 February 27, 2008, at Oakland, California.

24                                        Candice Elder

25

26

27

28