

1  Ronald Lovitt, Bar No. 040921
   J. Thomas Hannan, Bar No. 039140
2  Henry I. Bornstein, Bar No. 075885
   Terence F. Young, Bar No. 069943
3  LOVITT & HANNAN, INC.
   900 Front Street, Suite 300
4  San Francisco, California  94111
   Telephone:  (415) 362-8769
5  Facsimile:  (415) 362-7528
6  *rl@lh-sf.com, jth@lh-sf.com, hib@lh-sf.com, tfylaw@earthlink.net*

7  Attorneys for Defendants K-M Industries
   Holding Co. Inc.; K-M Industries Holding Co.
8  Inc. ESOP Plan Committee; and CIG ESOP
9  Plan Committee

## UNITED STATES DISTRICT COURT

10

## NORTHERN DISTRICT OF CALIFORNIA

11

## OAKLAND DIVISION

12

13  THOMAS FERNANDEZ, LORA SMITH
    and TOSHA THOMAS, individually and on
14  behalf of a class of all others similarly
    situated,
15
              Plaintiffs,
16  v.
17  K-M INDUSTRIES HOLDING CO., INC.;
    K-M INDUSTRIES HOLDING CO. INC.
18  ESOP PLAN COMMITTEE; WILLIAM E.
    AND DESIREE B. MOORE REVOCABLE
19  TRUST; ADMINISTRATOR OF THE
    ESTATE OF WILLIAM E. MOORE,
20  DECEASED; CIG ESOP PLAN
    COMMITTEE; NORTH STAR TRUST
21  COMPANY; DESIREE B. MOORE
    REVOCABLE TRUST; WILLIAM E.
22  MOORE MARITAL TRUST;  WILLIAM E.
    MOORE GENERATION-SKIPPING
23  TRUST; and DESIREE B. MOORE, BOTH
    IN HER INDIVIDUAL CAPACITY AND
24  AS TRUSTEE OF THE WILLIAM E. AND
    DESIREE B. MOORE REVOCABLE
25  TRUST'S SUCCESSOR TRUSTS NAMED
    ABOVE,
26
27            Defendants.
28

Case No. C06-07339 CW

**NOTICE OF MOTION AND
MOTION FOR SUMMARY
JUDGMENT BY DEFENDANTS
K-M INDUSTRIES HOLDING
CO., INC., K-M INDUSTRIES
HOLDING CO. INC. ESOP PLAN
COMMITTEE AND CIG ESOP
PLAN COMMITTEE;
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT**

Hearing Date:   July 31, 2008
Hearing Time:  2:00 p.m.
Courtroom:       2, 4th Floor
Judge:               Hon. Claudia Wilken

1  TO PLAINTIFFS THOMAS FERNANDEZ, LORA SMITH AND TOSHA THOMAS AND

2  THEIR COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE that on July 31, 2008 at 2:00 p.m. or as soon thereafter as this

4  matter may be heard by the Honorable Claudia Wilken at 1301 Clay Street, 4th Floor, Courtroom 2,

5  Oakland, California, defendants K-M Industries Holding Co., Inc., K-M Industries Holding Co., Inc.

6  ESOP Plan Committee and CIG ESOP Plan Committee will and hereby do move this Court for

7  summary judgment against all of plaintiffs' claims.

8      This motion seeks the dismissal of all of plaintiffs' claims on the grounds that they are each

9  barred by the statute of limitations.

10     This Motion will be based on this Notice of Motion, the attached Memorandum of Points

11  and Authorities, the concurrently-filed Declarations of Henry I. Bornstein, Peter M. Cazzolla,

12  Joseph Cristiano, Stephen Ferrari and Dan Stritmatter in Support of K-M Industries Holding Co.,

13  Inc., K-M Industries Holding Co., Inc. ESOP Plan Committee and CIG ESOP Plan Committee's

14  Motion for Summary Judgment, and such other evidence that may be presented at or prior to the

15  hearing on this Motion.

16

17  DATED:  June 26, 2008                LOVITT & HANNAN, INC

18

19                                      By: _____

20                                          Henry I. Bornstein

21                                      Attorneys for Defendants K-M Industries Holding
                                        Co., Inc. and K-M Industries Holding Co., Inc.
22                                      ESOP Plan Committee

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT .................................................................1

II.   FACTUAL BACKGROUND.................................................................2

      A.    THE MOVING PARTIES AND FORMATION OF THE ESOP .................2

      B.    THE ESOP STOCK TRANSACTIONS .........................................4

III.  ALLEGATIONS OF THE COMPLAINT .........................................5

IV.   ARGUMENT .................................................................................5

      A.    STANDARD FOR GRANTING SUMMARY JUDGMENT ........................5

      B.    ALL CLAIMS AGAINST THE KMH DEFENDANTS ARE
            BARRED BY THE SIX YEAR STATUTE OF REPOSE.............................6

            1.    Plaintiffs' claims are time barred because the "date of the last
                  action which constituted a part of the breach or violation"
                  occurred more than six years before the original complaint
                  was filed .......................................................................7

            2.    The alleged breaches of duty are acts, not omissions .........................9

            3.    The six-year limitations period cannot be extended by
                  alleging that a "failure to cure" constituted a "continuing
                  violation"....................................................................11

            4.    There is no proof of "fraud or concealment".....................................12

                  a)    Legal Standard .................................................12

                  b)    There is no evidence of concealment of the facts
                        underlying the alleged breaches. .........................................14

                        (1)    Allegations relating to qualifications and
                               knowledge of valuators .............................................15

                        (2)    Allegations relating to the adequacy of the
                               valuations ......................................................15

                               (a)    Failure to properly discount the value of
                                      the stock..........................................................15

                               (b)    Failure to account for asbestos-related
                                      litigation............................................................16

V.    CONCLUSION.................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Barker v. American Mobil Power Corp.*, 64 F.3d 1397 (9th Cir. 1995)..........................13, 14

*Bergmann v. BMC Industries, Inc.*, 2006 WL 487864 (D.Minn. 2006) ................................ 12

*Davidson v. Cook*, 567 F.Supp. 225 (D.C.Va. 1983) ............................................................ 8

*DeFazio v. Hollister, Inc.*, 2008 WL 958185 (E.D.Cal. 2008) .......................................12, 13

*Delbon Radiology v. Turlock Diagnostic Center*, 839 F.Supp.1388 (E.D.Cal. 1993). ......... 6

*Henry v. Champlain Enterprises, Inc.*, 288 F.Supp.2d 202  (N.D.N.Y. 2003) ..................... 8

*Hunt v. Magnell*, 758 F.Supp. 1292 (D.Minn. 1991) ........................................................ 8n.

*J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*,
     76 F.3d 1254 (1st Cir.1996)....................................................................................... 13

*Keen v. Lockheed Martin Corp.*, 486 F.Supp.2d 481 (E.D.Penn. 2007) ............................ 10

*Landwehr v. Dupree*, 72 F.3d 726 (9th Cir. 1995)............................................................... 6

*Larson v. Northrop Corp.*, 21 F.3d 1164 (D.C.Cir. 1994).............................9, 12, 13, 14, 15

*Librizzi v. Children's Memorial Medical Center*, 134 F.3d 1302 (7th Cir. 1998).........10, 12

*Lyon v. Agusta S.P.A.*, 252 F.3d 1078 (9th Cir. 2001). ....................................................... 7

*Phillips v. Alaska Hotel and Restaurant Employees Pension Fund*,
     944 F.3d 509 (9th Cir 1991).................................................................................11, 12

*Radford v. General Dynamics Corp.*, 151 F.3d 396 (5th Cir. 1998)..................................... 6

*Radiology Center v. Stifel, Nicolaus & Co.*, 919 F.2d 1216 (7th Cir. 1990) ..................... 13

*Schaefer v. Arkansas Medical Society*, 853 F.2d 1487 (8th Cir. 1988).............................. 13

*Tatum v. R.J. Reynolds Tobacco Company*, 2007 WL 1612580,
     40 Employee Benefits Cas. 2683 (M.D.N.C. 2007) ................................................... 4n.

*Zeigler v. Connecticut General Life Ins. Co.*, 916 F.2d 548 (9th Cir. 1990) .................... 7, 8

**Statutes**

29 U.S.C. § 1002(9)............................................................................................................ 4n.

29 U.S.C. § 1104 ................................................................................................................... 1

29 U.S.C. § 1104(A)(1) ......................................................................................................... 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

29 U.S.C. § 1106 ................................................................................................ 1, 5

29 U.S.C. § 1108(e) .......................................................................................... 1, 4, 5

29 U.S.C. § 1109(b). ............................................................................................. 4n.

29 U.S.C. § 1113 ..............................................................................................passim

29 U.S.C. § 1113(1) .................................................................................. 1, 6, 11, 12

29 U.S.C. § 1113(1)(A) .................................................................................... 9, 10

29 U.S.C. § 1113(1)(B) .................................................................................... 9, 10

29 U.S.C. § 1113(2) ........................................................................................ 6, 11

**Rules**

Federal Rule of Civil Procedure 9(b) ..................................................................... 12

Federal Rule of Civil Procedure 56(c) ..................................................................... 5

Federal Rule of Civil Procedure 56(e)(2) ................................................................ 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     PRELIMINARY STATEMENT

Plaintiffs filed their original complaint in November 2006.  The complaint concerns two transactions that occurred in October 1998 and October 1999, more than six years before the complaint was filed. In these transactions, the KMH Employee Stock Ownership Plan ("ESOP") purchased a 42% ownership interest in K-M Industries Holding Co., Inc. ("KMH") in the form of two classes of stock designed to track the performance of two of KMH's operating subsidiaries: Kelly-Moore Paint Company ("K-M Paint") and Capital Insurance Group ("CIG").[1] Plaintiffs are former employees of K-M Paint and CIG who are participants in the ESOP.

The gravamen of plaintiffs' Complaint is that the ESOP paid more than fair market value for the shares.  As stated by Plaintiffs' counsel in a brief recently filed in this action, "the basic allegation in this case [is] that the ESOP paid too much for the stock at the time of the initial transactions."  Reply Brief in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel, filed June 19, 2008.

Specifically, plaintiffs allege that the two stock sales were "prohibited transactions" under the Employee Retirement Income Security Act ("ERISA") because the ESOP paid more than fair market value for the shares (29 U.S.C. §§ 1106, 1108(e)), and that the defendants breached their fiduciary duties under ERISA by allowing a sale to the ESOP in excess of fair market value.  29 U.S.C. § 1104.

Except in the case of "fraud or concealment," a "statute of repose" applies to plaintiffs' claims that provides that they may not be brought later than:

> [S]ix years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation,

29 U.S.C. § 1113(1).

It is undisputed that the ESOP sales transactions each occurred considerably more than six years

---

[1] The latest version of plaintiff's complaint is the Second Amended Complaint – Class Action (Corrected) ("Complaint"), filed January 18, 2008.

1   before the original complaint was filed.  The original complaint was filed on November 29, 2006.

2   The six-year statute ran on October 12, 2004 as to the sale of the "P" stock that tracked the

3   performance of the K-M Paint subsidiary because the "last action which constituted a part of the

4   breach" was the completion of the sale of the "P" stock on October 13, 1998.  The six-year statute

5   ran on October  17, 2005 as to the sale of the "I" stock that tracked the performance of the CIG

6   insurance company subsidiary because the "last action" was the completion of the sale of the "I"

7   stock on October 18, 1999.

8          Because there is no evidence of "fraud or concealment," each of plaintiffs' claims is barred

9   by the applicable six year statute of repose.

10  **II.      FACTUAL BACKGROUND**

11         **A.      THE MOVING PARTIES AND FORMATION OF THE ESOP**

12         The Kelly-Moore Paint Company was founded in 1946 by William Moore and William

13  Kelly.  It manufactured and sold paint, primarily to contractors and builders.  The company was

14  incorporated in California in 1952, at which time Mr. Kelly retired and sold his interest in the

15  company to Mr. Moore.  Declaration of Dan Stritmatter in Support of Motion For Summary

16  Judgment by Defendants K-M Industries Holding Co., Inc., K-M Industries Holding Co. Inc. ESOP

17  Plan Committee and CIG ESOP Plan Committee ("Stritmatter Decl.") ¶¶ 3, 5, Ex 1 (Report of

18  Investigation: K-M Industries Holding Co. Inc ESOP, U.S. Department of Labor, Pension and

19  Welfare Benefits Administration, dated August 23, 2006 ("DOL Report"). [2]

20         At the times of the transactions at issue, Kelly-Moore Paint Company owned a subsidiary

21  named California Capital Insurance Company ("CCIC"). CCIC wrote property and casualty

---

[2] The DOL Report was created in connection with a review by the Department of Labor ("DOL") of
the KMH ESOP.  The DOL found, and KMH corrected, certain procedural and documentary issues.
The DOL closed its review with a letter that concluded that "no further action by the Department is
warranted … since you have taken the above noted corrective actions."  Stritmatter Decl. ¶ 6, Ex. 2.
Although the DOL was informed by plaintiffs' lawyer that he intended to file a complaint
challenging the propriety of the 1998 and 1999 transactions, the DOL declined to investigate the
transactions "since the stock transactions … are outside the statute of limitations." DOL Report at
16.

1  insurance policies in the states of California, Oregon and Nevada. The management of CCIC and

2  the Paint Company were totally independent. Stritmatter Decl. ¶ 4; Declaration of Peter Cazzolla in

3  Support of Motion For Summary Judgment by Defendants K-M Industries Holding Co., Inc., K-M

4  Industries Holding Co. Inc. ESOP Plan Committee and CIG ESOP Plan Committee ("Cazzolla

5  Decl.") ¶¶ 3-4; DOL Report at page 3.

6          During 1998, two ESOPs were established, one for the Paint Company and one for CCIC.

7  Cazzolla Decl. ¶ 5, Ex 1; Stritmatter Decl. ¶ 7, 8, Ex. 3; Declaration of Stephen Ferrari in Support of

8  Motion For Summary Judgment by Defendants K-M Industries Holding Co., Inc., K-M Industries

9  Holding Co. Inc. ESOP Plan Committee and CIG ESOP Plan Committee ("Ferrari Decl.") ¶ 4, Ex

10  1.

11          In 1999, the transaction was restructured and the two ESOPs were merged. As part of the

12  restructuring process, the Kelly-Moore Paint Company changed its name to K-M Industries Holding

13  Co., Inc. and formed a new subsidiary named Kelly-Moore Paint Company, Inc. to which it

14  transferred all of its paint operations. Stritmatter Decl. ¶ 8, Ex. 3; Cazzolla Decl. ¶ 3. The newly-

15  formed KMH had two classes of stock, "P" stock and "I" stock, designed to track the performance

16  of what became the two KMH "first tier" operating subsidiaries: Kelly-Moore Paint Company and

17  California Capital Insurance Company.[3] Stritmatter Decl. ¶ 7, Ex. 3 (attached Amended and

18  Restated Articles of Incorporation of Kelly-Moore Paint Company, Inc.)

19          The original Paint Company ESOP was renamed the K-M Industries Holding Co., Inc.

20  Employee Stock Ownership Plan ("KMH ESOP" or "KMH Plan") and the CCIC ESOP was merged

21  into the KMH ESOP and thereafter ceased to exist. Stritmatter Decl. ¶ 8, Ex 4 at page 1 ("KMH

22  Plan document"). Defendant KMH became the sponsor of the KMH Plan. KMH Plan document at

23  page 1.

24

25  _____

26  [3] California Capital Insurance Company was later renamed California Insurance Group, and then

27  again renamed Capital Insurance Group. For the purposes of this motion, the company will be
    referred to as Capital Insurance Group or CIG. Cazzolla Decl. ¶ 1; see DOL Report at 2.

28

1    When the CCIC Plan and the Paint Company Plan were established in 1998, two Committees

2 had been established to administer the ESOPs. William Moore was named as each Committee's

3 sole fiduciary member. Cazzolla Decl. ¶ 5, Ex 1; Stritmatter Decl. ¶ 9, Ex 5.

4    When the CCIC Plan was merged into the Paint Company Plan, the CCIC Plan Committee

5 ceased to exist. The Paint Company Plan Committee continued in existence as the Committee

6 administering the KMH Plan. KMH Plan document at page 56. The sole member of the KMH Plan

7 Committee remained William Moore until he was replaced as Committee member in February 2003.

8 Stritmatter Decl. ¶ 9, Ex 5.

9    This motion is made on behalf of defendant KMH, as well as on behalf of defendants K-M

10 Industries Holding Co., Inc. ESOP Plan Committee and CIG ESOP Plan Committee (the "Plan

11 Committees."[4] (KMH and the Plan Committees are sometimes collectively referred to herein as

12 "KMH defendants.")

13    **B.    THE ESOP STOCK TRANSACTIONS**

14    The final structure of the ESOP called for it to purchase 42% of the KMH "P" stock on

15 behalf of the participating K-M Paint employees and 42% of the KMH "I" stock on behalf of the

16 participating CIG employees. In order to comply with the requirement that the purchase price not

17 exceed "fair market value," the Plan's Trustee secured outside valuations of the stock to be

18 purchased. *See* 29 U.S.C. § 1108(e).

---

20 [4] Even if the statute of limitations had not run on the claims against the two Committee defendants,
these claims would have to be dismissed. A Plan committee is as a matter of law not a proper
21 defendant in a breach of fiduciary duty case under ERISA because it is not a "person" as defined
under ERISA § 3(9), 29 U.S.C. § 1002(9). *Tatum v. R.J. Reynolds Tobacco Company*, 2007 WL
22 1612580, 40 Employee Benefits Cas. 2683 (M.D.N.C. 2007). Moreover, there was never an entity
called the "CIG Plan Committee." The only entity to which this could refer is the Committee
23 appointed to administer the CCIC Plan, which ceased to exist when the Plan was merged into the
KMH Plan. Moreover, the only member of either Committee during the time of the 1998 and 1999
24 transactions was William Moore. Mr. Moore died in 2004, well before plaintiffs filed their initial
complaint. DOL Report at page 5. Assuming that the plaintiffs intended to sue the Committee
25 members themselves, subsequent members of the KMH Committee cannot be held liable under
ERISA for the acts of prior Committee members that took place before they joined the Committee.
26 29 U.S.C. § 1109(b). With no individuals that may be held liable and the Committees themselves
not proper defendants, the claims against the two Committee defendants would have to be dismissed
27 even they were not barred by the statute of limitations.

1    Based on the values determined by the appraisers, the following two transactions took place:

2    1. On October 13, 1998, the ESOP purchased 42% of the shares of KMH "P" stock for $232

3    million ("the 1998 ESOP sales transaction");

4    2. On October 18, 1999, the ESOP purchased 42% of the shares of KMH "I" stock for $55

5    million ("the 1999 ESOP sales transaction").

6    **III.    ALLEGATIONS OF THE COMPLAINT**

7    Each of the allegations against the KMH defendants contained in plaintiffs' two claims for

8    relief concern breaches of duty relating to the ESOP's two purchases of KMH stock that occurred in

9    1998 and 1999, more than six years before the plaintiffs filed their original complaint.  As to each of

10    these two stock purchase transactions, the plaintiffs allege:

11    1) that the defendants caused the Plans to pay more than fair market value for KMH stock in

12    violation of ERISA § 404(A)(1), 29 U.S.C. § 1104(A)(1); and

13    2) that the defendants engaged in a "prohibited transaction" by failing to ensure that the

14    KMH Plan paid fair market value for the stock in violation of ERISA §§ 406, 408(e), 29 U.S.C. §§

15    1106, 1108(e).

16    Complaint, ¶¶ 67, 74, 75.

17    Although the plaintiffs' Complaint also includes a list of acts performed while preparing for

18    the two ESOP transactions that are alleged to be breaches of duty, the only injury claimed flows

19    entirely from the two alleged breaches stated above.  See Complaint, ¶¶ 67, 74, 75.

20    **IV.    ARGUMENT**

21    **A.    STANDARD FOR GRANTING SUMMARY JUDGMENT**

22    Summary judgment "should be rendered if the pleadings, the discovery and disclosure

23    materials on file, and any affidavits show that there is no genuine issue as to any material fact and

24    that the movant is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c).  If a properly

25    supported motion for summary judgment is made, "an opposing party may not rely merely on

26    allegations or denials in its own pleading; rather, its response must … set out specific facts showing

27    a genuine issue for trial." Fed.R.Civ. Pro. 56(e)(2).

28

Summary judgment is appropriate to resolve an issue of law such as application of the statute of limitations in a case in which resolution of the issue does not involve disputed material facts. *See Delbon Radiology v. Turlock Diagnostic Center*, 839 F.Supp.1388, 1391 (E.D.Cal. 1993).

It is undisputed that the present case was filed more than six years after the 1998 and 1999 ESOP transactions that form the basis of plaintiffs' claim of injury to the ESOP. The KMH defendants are therefore entitled to summary judgment on each of plaintiffs' claims on the ground that they are barred by the six-year ERISA statute of repose.

### B.    ALL CLAIMS AGAINST THE KMH DEFENDANTS ARE BARRED BY THE SIX YEAR STATUTE OF REPOSE

Both of plaintiffs' claims for relief arise under ERISA provisions governed by 29 U.S.C. § 1113, which provides (emphasis added):

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, <u>after the earlier of</u> -
>
> > (1) <u>six years after (A) the date of the last action which constituted a part of the breach or violation,</u> or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> >
> > (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> <u>except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.</u>

The six year period created by section 1113 is a "statute of repose," establishing an outside limit of six years within which to file suit and serving as "an absolute barrier to an untimely suit." *Radford v. General Dynamics Corp.*, 151 F.3d 396, 400 (5th Cir. 1998). As the Ninth Circuit has recognized, while the 3-year statute of limitation of section 1113(2) does not run until the plaintiff possesses actual knowledge of the alleged breaches, the defendants' "interest in repose" is protected by the six year time period of section 1113(1), whether or not the plaintiffs ever discovered the alleged breaches. *Landwehr v. Dupree*, 72 F.3d 726, 733 (9th Cir. 1995).

In discussing the manner in which statutes of limitations and statutes of repose such as contained in section 1113 interact, the Ninth Circuit has explained that unlike a statute of

1    limitations, which "bars a plaintiff from proceeding because he has slept on his rights, or otherwise

2    been inattentive … a statute of repose proceeds on the basis that it is unfair to make somebody

3    defend an action long after something was done or some product was sold. It declares that nobody

4    should be liable at all after a certain amount of time has passed, and that it is unjust to allow an

5    action to proceed after that." *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1087 (9th Cir. 2001).

6        Therefore, unlike an analysis involving a statute of limitations, application of a statute of

7    repose such as the six-year period within which to sue created by section 1113 does not involve

8    questions concerning when the plaintiffs had knowledge of the breach, or when they were injured.

9    Instead, a statute of repose focuses solely on the length of time that has passed since the acts which

10   form the basis of plaintiffs' complaint.  In this case, Congress has decided that except in a case

11   involving fraud or concealment, a defendant has a right to repose that prevents suits from being

12   brought more than six years after the ESOP transactions in question.

13       It is undisputed that the original complaint in this action was filed on November 29, 2006,

14   more than 6 years after the 1998 and 1999 transactions that are alleged to constitute violations of

15   ERISA.  There is no evidence of fraud or concealment by the KMH defendants. Plaintiffs' claims

16   are therefore barred by section 1113.

      **1.    Plaintiffs' claims are time barred because the "date of the last action which constituted a part of the breach or violation" occurred more than six years before the original complaint was filed**

19       Application of section 1113 requires the Court to define "the last action" that constituted part

20   of the alleged breach of duty.  "To apply the limitations period, we must first isolate and define the

21   underlying violation upon which … [plaintiff's] claim is founded." *Zeigler v. Connecticut General*

22   *Life Ins. Co.*, 916 F.2d 548 (9th Cir. 1990).

23       Each of the allegations in plaintiffs' two claims for relief concern breaches of duty relating to

24   the ESOP's two purchases of KMH stock in 1998 and 1999, more than six years before the plaintiffs

25   filed their original complaint.  As to each of these transactions, the plaintiffs allege: 1) that the

26   defendants caused the Plans to pay more than fair market value for KMH stock; and 2) that the

27

28

1  defendants engaged in a "prohibited transaction" by failing to ensure that the KMH Plan paid fair

2  market value for the stock. Complaint, ¶¶ 67, 74, 75.[5]

3      Both of plaintiffs' claims for relief are based upon a single allegation – that the defendants

4  breached their fiduciary duties by causing the Plan to pay more than fair market value when it

5  purchased the stock in 1998 and 1999. *See Henry v. Champlain Enterprises, Inc.*, 288 F.Supp.2d

6  202, 226 f.11  (N.D.N.Y. 2003) [noting that the basis of a claim of a prohibited ESOP sales

7  transaction "seems to largely, if not entirely, mirror" the basis of a claim of breach of fiduciary duty

8  by causing the ESOP to pay more than fair market value].

9      As counsel for the Plaintiffs put it in a brief recently filed in this action, "the basic allegation

10  in this case [is] that the ESOP paid too much for the stock at the time of the initial transactions."

11  Reply Brief in Support of Plaintiffs' Motion for Class Certification and Appointment of Class

12  Counsel, filed June 19, 2008.

13      Once the purchases had been consummated, the alleged breaches of duty had occurred and

14  were actionable. *Davidson v. Cook*, 567 F.Supp. 225, 234 (D.C.Va. 1983) [six-year statute began to

15  run at date of loans on claims based on allegations that loans were prohibited transactions]; *also see*

16  *Zeigler, supra*, 916 F.2d at 551 [breaches of fiduciary duty arising out of terms of investment

---

18  [5] Although the Complaint recites a long list of alleged breaches of fiduciary duty, such as failing to

19  undertake an adequate and independent valuation of the KMH stock prior to the transactions, failing to investigate adequately the qualifications of the valuation experts retained and failing to ensure

20  that they secured an independent expert assessment of the fair market value of KMH stock prior to the transactions, these alleged breaches all occurred before the transactions in question. See, e.g.,

21  Complaint, ¶¶ 67, 74-76.  The two exceptions are the allegations contained in paragraph 48-50 that CIG's alleged failure in 2006 to honor its "put option" to purchase plaintiff Smith's shares

22  constitutes a breach of duty, and the allegations in paragraph 45 that in 2003 and 2004, the defendants failed to obtain a proper valuation of the Series I and Series P stock held by the KMH

23  Plan and file IRS Form 5500s.  These afterthought allegations cannot act to change the fact that the plaintiffs' claims are barred because they are brought more than 6 years after the transactions

24  claimed to have caused damage to the Plan.  The relief sought by the Complaint is in connection with the alleged "overpayment" by the ESOP for the shares of KMH stock.  See Complaint, ¶¶ 69,

25  81.  Allegations of unrelated breaches of duty that occurred after the stock transactions in question cannot act to toll the statute of limitations on claims that the transactions themselves constituted

26  violations of law. *Cf. Hunt v. Magnell*, 758 F.Supp. 1292, 1299 (D.Minn. 1991) [Breaches of duty allegedly occurring after the purchase of a trust asset do not toll the statute of limitations for claims

27  of fiduciary breach arising out of trustee's failure to adequately investigate prior to purchase].

28

1 | agreement occur at time of agreement]; *Larson v. Northrop Corp.*, 21 F.3d 1164, 1170 (D.C.Cir.

2 | 1994) [six-year statute began to run at date of purchase of allegedly inadequate annuity].

3 |     The "last acts" that constituted a part of the alleged breaches were the completion of the

4 | sales transactions in 1998 and 1999. Once these transactions had closed, the price that the ESOP was

5 | to pay had been established. If the ESOP ended up paying more than fair market value, as the

6 | plaintiffs allege, then this happened more than six years before the original complaint was filed in

7 | November 2006.

8 |     **2.**    **The alleged breaches of duty are acts, not omissions**

9 |     Plaintiffs attempt to plead around the fact that they sued more than six years after the

10 | transactions in question by characterizing a list of acts done as part of the process of setting the price

11 | at which the stock would be sold as separate duties that the defendants allegedly "failed" to

12 | accomplish. These allegations include such preparatory tasks as obtaining an adequate and

13 | independent valuation of the KMH stock prior to those transactions, adequately investigating the

14 | qualifications of valuation experts retained to prepare the valuations of KMH stock in connection

15 | with the transactions and securing an independent expert assessment of the fair market value of

16 | KMH stock prior to those transactions. Complaint, ¶¶ 28-33, 36-44. Plaintiffs also allege that the

17 | defendants failed to "correct" or "cure" the alleged violations. See Complaint, ¶¶ 51, 67, 74, 75.

18 |     The KMH defendants expect that plaintiffs will argue that these "failures" trigger the

19 | provisions of subsection 1113(1)(B), which states that "in the case of an omission," a plaintiff must

20 | sue "six years after … the latest date on which the fiduciary could have cured the breach or

21 | violation."

22 |     First of all, it should be clear that simply alleging that a defendant "failed to cure" a breach

23 | of fiduciary duty such as engaging in a prohibited transaction cannot convert that transaction into an

24 | "omission." If this were true, any participant could defeat the six-year statutory limitation of

25 | subsection (1)(A) by simply recasting the alleged breach of duty into a subsequent failure to cure.

26 | Any defendant who was accused of acting in violation of fiduciary duties who did not agree with the

27 | accusation would have "failed to cure" the alleged breach, thus effectively reading the six year time

28 | limit of subsection 1113(1)(A) out of the statute.

1    Subsection (1)(B) must be read to require that the "omission" that tolls the running of the

2    six-year period during the time in which the omission could be "cured" be an independent violation

3    of ERISA – not merely the "failure to remedy" an act concerning which the time to sue would

4    otherwise have run from the date of the act itself. *See Librizzi v. Children's Memorial Medical*

5    *Center*, 134 F.3d 1302, 1307 (7th Cir. 1998) [holding that "cure" as used in subsection (1)(B) cannot

6    be interpreted as meaning the failure to "provide a remedy" for a breach that has already occurred,

7    "lest §1113(1)(B) mean that the time never runs out."]

8    As for the other "failures to act" alleged by the plaintiffs, there were many tasks done by

9    many people in preparation for and as part of the two stock transactions that comprise the gravamen

10    of plaintiffs' Complaint.  Together, these acts resulted in and led to the allegedly damage-causing

11    event itself, the sale of the stock.  The plaintiffs cannot wait more than six years after these two sales

12    and then attempt to plead around the statute of repose merely by converting allegations that

13    defendants' performance of certain acts was "inadequate" into allegations that defendants "failed to

14    perform" these acts.

15    This was the conclusion reached in *Keen v. Lockheed Martin Corp.*, 486 F.Supp.2d 481

16    (E.D.Penn. 2007), in which the district court held that subsection 1113(1)(A) barred a claim that

17    failing to provide benefits to contingent employees violated ERISA.  Confronted with an argument

18    that the breach of duty being sued upon was not the decision about providing benefits, but the

19    "failure to individually assess their eligibility as common law employees and to inform plaintiffs of

20    this possible eligibility" (486 F.Supp.2d at 492), the court held that the plaintiff could not transform

21    through artful pleading a decision not to provide benefits into an "omission":

22    > This argument obfuscates the real issue: that defendants made a categorical decision
23    > to deny benefits to contingent workers who were common law employees, even
     > though this decision purportedly violated the very terms of defendants' benefit
24    > plans.... In other words, defendants' "failure" to assess is tantamount to defendants'
     > decision not to provide benefits to any contingent workers....

25    There are no allegations suggesting that the defendants "simply overlooked" doing these so-

26    called "omitted acts." For example, the defendants here did not "fail" to get a valuation of the KMH

27    stock prior to the transactions, and did not "fail" to investigate the qualifications of independent

28

1  valuation experts retained to prepare the valuations of KMH stock in connection with the

2  transactions. Such valuations and investigations were indeed performed.

3      An allegation that defendants "failed to adequately perform" these acts does not convert the

4  acts into "omissions."

### 3. The six-year limitations period cannot be extended by alleging that a "failure to cure" constituted a "continuing violation"

6      Plaintiffs repeatedly allege that defendants failed to "correct" or "cure" the alleged

7  violations, thereby "continuing the breaches of fiduciary duty that began in 1998," and that these

8  failures to cure are in fact "part of" the 1998 and 1999 stock transactions. See Complaint, ¶¶ 51, 67,

9  74, 75.

10      These allegations may presage an argument that such "failures to cure" can act to re-start the

11  six year time period as "continuing violations." Such an argument must be rejected for an obvious

12  reason: in a case involving an allegation that an ESOP overpaid for shares that it purchased, a

13  plaintiff could wait 10, 20 or even 50 years to allege that the action constituted a breach of fiduciary

14  duty, simply claiming that the defendant fiduciary "failed to cure the breach" and that such failure

15  "continues the breach" and is "part of" the breach. Any such argument must be rejected as an

16  exception that swallows the six-year rule.

17      The application of a "continuing violation" theory to extend the ERISA limitations period

18  based merely on a failure to remedy an alleged violation  was rejected by the Ninth Circuit in

19  *Phillips v. Alaska Hotel and Restaurant Employees Pension Fund*, 944 F.2d 509, 520 (9th Cir 1991).

20      Although *Phillips* involved an attempt to use a "failure to cure" to trigger the application of

21  the "continuing violation" theory to the three-year period of subsection (2), and not the six-year

22  period of subsection (1), the rationale behind the court's decision is equally applicable to the present

23  situation. The concurring opinion of Circuit Judge O'Scannlain describes this rationale:

24        In response to these arguments, the plaintiffs insist - and the district court held - that
25        this suit involves allegations of a "continuing violation" and that the applicable
         limitations period therefore never expired. As our opinion correctly points out,
26        however, this argument is overbroad. *See ante* at 521-22. If the "continuing
         violation" rationale that we have applied in other contexts were as broad as the
27        plaintiffs and the district court suggest, the "actual knowledge" provision in the
         statute would be superfluous and virtually no breach would ever grow stale so long as

28

it remained unremedied.  The plaintiffs and the district court have confused the failure to *remedy* the alleged breach of an obligation with the commission of an alleged *second* breach, which, as an overt act of its own, recommences the limitations period.

*Phillips, supra,* 944 F.2d at 522-523, O'Scannlain, Justice (concurring), emphasis in original.

The same would be true if a mere "failure to cure" were enough to continually re-trigger the provision of subsection (1) regarding the "last act" that was part of the breach: "virtually no breach would ever grow stale so long as it remained unremedied."  A <u>failure</u> <u>to</u> <u>remedy</u> is not the same as a <u>separate</u> <u>breach</u> <u>of</u> <u>duty</u>. *Librizzi v. Children's Medical Center, supra,* 134 F.3d at 1307.

In *Bergmann v. BMC Industries, Inc.,* 2006 WL 487864 at *3 (D.Minn.), the district court agreed, rejecting the application of the "continuing violation" theory to the six-year period of subsection (1). The district court cited *Phillips* in holding that the mere failure to correct an alleged breach of duty does not constitute a "continuing violation" that restarts the statute of limitations in the absence of a new and independent violation inflicting a new injury.  *Id.* at *3.

Any invitation to interpret the time period within which to sue under ERISA as completely open ended in every case in which the defendant has not "cured" the alleged breach of duty must be rejected.

### 4.    There is no proof of "fraud or concealment"

#### a)    Legal Standard

Section 1113 provides an exception to the rule that a breach of fiduciary claim is barred if brought more than six years after the date of the last action which constituted a part of the violation: "except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation."

The "fraud and concealment" exception to section 1113 triggers the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Larson v. Northrop Corp.,* 21 F.3d 1164, 1170, 1173 (D.C.Cir. 1994); *DeFazio v. Hollister, Inc.,* 2008 WL 958185, at *3 (E.D.Cal.).  In order to rely on the "fraud and concealment" exception to section 1113, Rule 9(b) requires a plaintiff to plead the specific content, time and place of any statements involved in the fraud or active concealment. *DeFazio v. Hollister, Inc., supra.*  At the very least, Rule 9(b) requires that plaintiffs

1  "differentiate their allegations when suing more than one defendant ... and inform each defendant

2  separately of the allegations surrounding his alleged participation in the fraud." *DeFazio v.*

3  *Hollister, Inc., supra.*

4       Plaintiffs' allegations fall far short of meeting this standard. In fact, the Complaint makes no

5  attempt to state specific instances of fraud or concealment or to tie any instance of fraud and

6  concealment to a specific defendant or defendants. KMH defendants, and the Court, are left with

7  the task of sorting through the Complaint to match various allegations with possible claims against

8  specific defendants.

9       The Ninth Circuit joins the majority of courts in interpreting the "fraud or concealment"

10  language of section 1113 as incorporating the federal common law of fraudulent concealment.

11  *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995) ("*Barker*"); *see J. Geils*

12  *Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1254, 1253 (1st Cir.1996);

13  *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172 (D.C. Cir. 1994); *Radiology Center v. Stifel, Nicolaus*

14  *& Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990); *Schaefer v. Arkansas Medical Society*, 853 F.2d 1487,

15  1491 (8th Cir. 1988). One consequence is that "the exception applies only when <u>the defendant</u>

16  <u>himself</u> has taken steps to hide his breach of fiduciary duty." *Id.*, emphasis added.

17       In order to prove the "fraud" necessary to toll the statute, it must be proven that the KMH

18  defendants "made knowingly false misrepresentations with the intent to defraud the plaintiffs."

19  *Barker, supra*, 64 F.3d at 1401. In order to prove "concealment," the plaintiff must produce

20  evidence of "affirmative steps by [the KMH defendants] to conceal any alleged fiduciary breaches."

21  *Id.*

22       The "active concealment" required by section 1113 "is more than merely failure to disclose,"

23  and requires that "defendants engaged in a course of conduct designed to conceal evidence of their

24  alleged wrongdoing," and that plaintiffs "were not on actual or constructive notice of that evidence,

25  despite their exercise of due diligence." *Schaefer v. Arkansas Medical Society, supra*, 853 F.2d at

26  1491-1492.

27

28

In order to toll the six-year limitations period of section 1113, "[t]here must be active concealment – i.e., some trick or contrivance intended to exclude suspicion and prevent inquiry. *Concealment by mere silence is not enough.*" *Larson v. Northrop Corp.*, *supra*, 21 F.3d at 1173, emphasis in original.

The Complaint contains no allegations that the KMH defendants "made knowingly false misrepresentations with the intent to defraud the plaintiffs" (*see Barker*, *supra*, 64 F.3d at 1401), and no evidence exists that such representations were made. After extensive discovery, production of over 43,000 documents by parties and third party witnesses and depositions of the key witnesses and company employees, no evidence of "fraud or concealment" has been uncovered.

> **b)** **There is no evidence of concealment of the facts underlying the alleged breaches.**

The first step in any analysis of whether facts concerning an alleged breach of duty were actively concealed must be the identification of the facts that underlie the alleged breaches. As explained above, although plaintiffs allege a myriad of separate breaches of duty, they all relate to the two purchases of stock by the ESOP in 1998 and 1999. The gravamen of plaintiffs' Complaint is the allegation that the stock purchases involved a breach of fiduciary duty (and constituted "prohibited transactions") because "the Plan paid substantially more than fair market value for the KMH stock purchased from the Moore Family Trust in 1998 and 1999." Complaint, ¶ 51. This is the only allegation that plaintiffs claim caused injury to the ESOP.

Even if one were to assume solely for the purposes of this motion that this allegation were true, the statute of limitations requires that summary judgment be granted on each of plaintiffs' claims. In order to avoid ERISA's six-year time limitation, plaintiffs would have to prove that the KMH defendants knowingly made false statements concerning the alleged overpayments or actively concealed information upon which plaintiffs' allegations are based. There is no evidence to support any such misrepresentation or active concealment on the part of the KMH defendants.

**(1)    Allegations relating to qualifications and knowledge of valuators**

Plaintiffs' allegations of breaches of duty connected with the qualifications of the independent valuators are simply a rote laundry list of all of the possible ways that such a duty can be breached. These include: (1) failure to secure an independent expert assessment of the fair market value of the stock (¶¶ 28, 36); (2) failure to adequately investigate the qualifications the valuators (¶¶ 29, 37); (3) failure to provide complete and accurate information to the valuators (¶¶ 30, 38); and (4) failure to make certain that reliance on the valuations was justified (¶¶ 31, 39).

Plaintiffs' Complaint does not allege a single instance of fraud or concealment in connection with any of these allegations. There is no evidence that would support a finding that the KMH defendants used "some trick or contrivance intended to exclude suspicion and prevent inquiry" into these allegations, or pursued "a course of conduct designed to conceal evidence of their alleged wrongdoing." There certainly is no evidence of any intentional misrepresentations of the qualifications of these valuators or the specific information provided to them. In fact, there is no evidence of any representations to the Plan participants at all concerning any of these matters. "Mere silence is not enough" to establish concealment under section 1113. *Larson v. Northrop Corp.*, *supra*, 21 F.3d at 1173.

Summary judgment must be granted as to these alleged breaches of duty.

**(2)    Allegations relating to the adequacy of the valuations**

In order to support their contention that the KMH defendants both breached their fiduciary duties and caused the ESOP to enter into a "prohibited transaction" because the sale of the stock was for more than its fair market value, the plaintiffs must show that the valuations that supported the sales prices were incorrect. Plaintiffs' Complaint makes two attacks on these valuations. Both of these are barred by the six year time limit of section 1113.

(a)    Failure to properly discount the value of the stock

Plaintiffs allege that the valuations improperly inflated the value of the stock by failing to "discount the purchase price of the stock to account for the fact that the stock purchased … was

1  tracking stock, which generally trades at a discount relative to ordinary common stock." Complaint,

2  ¶¶ 33, 41.

3         Again, there are no allegations in the Complaint alleging fraud or concealment concerning

4  this allegation, or any other subject matter related to the methodologies used by the valuators in

5  reaching their conclusions. There is no evidence of any representations, true or false, made to the

6  Plan participants concerning discount rates or specific methodologies employed in the valuations.

7  There was no fraud or concealment of the facts upon which this allegation is based.

8         The KMH defendants are entitled to summary judgment on any claims of breach of fiduciary

9  duty based upon allegations concerning the use of discount rates or any other methodologies

10  employed by the valuators.

11                      (b)    Failure to account for asbestos-related litigation

12         Plaintiffs' final attack on the valuations, and the final basis for their allegation that the stock

13  was sold to the ESOP at more than fair market value, is that the valuations "failed to take into

14  account KMH's potential liability in asbestos-related litigation, even though information that the

15  company faced significant liability was known to KMH management...." Complaint, ¶¶ 32, 40.

16         In an effort to plead around the six-year statute of repose, plaintiffs allege "upon information

17  and belief" that "KMH management intentionally withheld information about the extent of KMH's

18  potential asbestos liability from [Plan] participants." Complaint, ¶ 52. KMH defendants assume that

19  plaintiffs will argue that by "withholding this information" from the participants, the KMH

20  defendants engaged in the type of "fraud or concealment" that will toll the statute of limitations.

21         Although not at issue here, KMH defendants deny that the valuations failed to take into

22  account the asbestos liabilities of the company. Although the issue of the knowledge of the KMH

23  defendants in 1998 and 1999 concerning Kelly-Moore's potential asbestos liability will certainly be

24  contested should this case proceed to trial, this issue is also not before the Court at this time.[6]

25  _____

26  [6] Although primarily a company that manufactured and sold paint products, in 1968 Kelly-Moore

27  purchased a company by the name of Paco that manufactured drywall sealing materials and patching
    compounds. Until the late 1970s, these products contained asbestos. Declaration of Henry I.

28  Bornstein in Support of Motion For Summary Judgment by Defendants K-M Industries Holding

CASE NO. C 06-07339 CW              -16-        KMH DEFENDANTS' NOTICE OF
                                                MOTION AND MOTION FOR SUMMARY JUDGMENT

1    Whatever may have been known by the company about its potential asbestos liability and

2    insurance coverage in 1998 and 1999, the relevant question here is whether the KMH defendants

3    made any intentional misrepresentations about what they knew then about the asbestos situation and

4    whether there was any scheme to conceal the state of affairs as they understood them.  In order to

5    invoke the "fraud or concealment" exception to the statute of repose, there must be evidence that the

6    KMH defendants either lied to the ESOP participants about or actively concealed facts about what

7    they knew in 1998 or 1999 about the company's asbestos liabilities with the intent to conceal the

8    alleged breaches of duty, i.e., the alleged overpayments for the stock.

9        There is no evidence of any misstatements (or any statements at all) by the KMH defendants

10   to the ESOP participants about the asbestos situation as it existed in 1998 and 1999.  There is also

11   no evidence of any scheme to conceal information about the company's knowledge concerning the

12   asbestos situation at the time of the ESOP transactions.[7]

---

14   Co., Inc., K-M Industries Holding Co. Inc. ESOP Plan Committee and CIG ESOP Plan Committee
15   ("Bornstein Decl.") ¶ 4, Ex. 1,  Deposition of Herbert R. Giffins, March 28, 2008 ("Giffins Depo.")
     pages 47:13-48:13.  As a result of its ownership of Paco, at the time of the 1998 and 1999 ESOP
16   transactions, the company was the defendant in numerous asbestos liability cases.

17   Should this case proceed to trial, the evidence will show that at the time of the ESOP formation,
     these cases were considered a minor problem and just another product liability issue similar to those
18   faced by the company every day.  They were being defended by the company's insurers, and were
     typically being dismissed without payment or settled for small amounts, typically no more than
19   $500. Bornstein Decl. ¶ 5, Ex. 2, Deposition of Joseph Cristiano, April 8, 2008 ("Cristiano Depo."),
     page 109:12-22; Declaration of Joseph Cristiano in Support of Motion For Summary Judgment by
20   Defendants K-M Industries Holding Co., Inc., K-M Industries Holding Co. Inc. ESOP Plan
     Committee and CIG ESOP Plan Committee ("Cristiano Decl.") ¶ 3.  In 1998 and 1999, the company
21   had numerous layers and levels of primary and excess insurance coverage in amounts of hundreds of
22   millions of dollars to protect its assets against asbestos claims, and reasonably believed that it had
     ample insurance coverage to prevent the asbestos lawsuits from having a material effect on the
23   company's finances.  Ferrari Decl. ¶¶ 5, 6, 8, 11.

24   [7] If this case were to proceed to trial, the evidence will show that at the time of the two ESOP
25   transactions, Kelly-Moore management believed that the company had ample insurance to cover any
     future asbestos liabilities.  The evidence will also show that as this conclusion began to be called
26   into doubt, far from concealing this information, the company took great pains to disclose to the
     ESOP participants the state of affairs with respect to the potential asbestos liability and how it could
27   affect the value of the ESOP shares.  See Ferrari Decl., Cristiano Decl., Stritmatter Decl, Cazzolla
     Decl.

28

1    The three plaintiffs agree. Plaintiff Thomas Fernandez answered "no" when asked if

2  anything has come to his attention "that causes you to believe that the company, CIG, that is,

3  attempted to conceal the concerns that the CIG ESOP stock might be negatively impacted by the

4  asbestos litigation." Bornstein Decl. ¶ 6, Ex. 3, Deposition of Thomas Fernandez, April 21, 2008, at

5  pages 103:23-104:16. Plaintiff Lora Smith agreed, testifying that it was not her impression that CIG

6  "was trying to be sneaky and hide something" from her about the asbestos situation. Bornstein

7  Declaration ¶ 7, Ex. 4, Deposition of Lora Smith, April 16, 2008, pages 163:22-164:4. Plaintiff

8  Tosha Thomas, when asked if Kelly-Moore was doing the best it could to keep former employees

9  such as her "informed about matters pertaining to the Kelly-Moore ESOP," replied "To the best of

10 my knowledge, yes." Bornstein Decl. ¶ 8, Ex. 5, Deposition of Tosha Thomas, April 18, 2008, at

11 pages 164:24-165:7.

12    In the absence of any evidence that the KMH defendants lied to the participants about what

13 they knew in 1998 and 1999 about Kelly-Moore's asbestos liability, or that they embarked upon

14 some scheme to conceal this information, the six year statute of repose mandates that summary

15 judgment be granted on plaintiffs' claims to the extent they are based upon the issue of whether the

16 1998 and 1999 valuations adequately considered the company's potential asbestos liability.

17 **V.    CONCLUSION**

18    It is undisputed that the two transactions upon which Plaintiffs sue occurred more than six

19 years before the complaint was filed. There is no evidence of fraud or concealment of the facts

20 underlying the alleged violations of duty. Plaintiffs' claims are barred by ERISA's six year statute

21 of repose and the KMH defendants are entitled to summary judgment on all of plaintiffs' claims.

22 Dated: June 26, 2008                           Respectfully submitted,

23                                               LOVITT & HANNAN, INC.

24

25                         By:_____

26                                               Henry I. Bornstein
                                                 Attorneys for Defendants K-M Industries
27                                               Holding Co., Inc.; K-M Industries Holding Co.,
                                                 Inc. ESOP Plan Committee; and CIG ESOP
28                                               Plan Committee