1  HENNIGAN, BENNETT & DORMAN LLP
   J. Michael Hennigan (SBN 59491)
2  Robert L. Palmer (SBN 181462)
   Lauren A. Smith (SBN 94343)
3  Allison Chock (SBN 206015)
   Caroline Walters (SBN 239054)
4  865 South Figueroa Street, Suite 2900
   Los Angeles, California 90017
5  Telephone: (213) 694-1200
   Fax: (213) 694-1234
6  Email:    hennigan@hbdlawyers.com
              palmer@hbdlawyers.com
7             smithl@hbdlawyers.com
              chocka@hbdlawyers.com
8             waltersc@hbdlawyers.com

9  Attorneys for Defendants William E. and Desiree B. Moore
   Revocable Trust; Trustee of The William E. and Desiree B. Moore
10 Revocable Trust; Desiree B. Moore Revocable Trust;
   William E. Moore Marital Trust; William E. Moore
11 Generation-Skipping Trust; and Desiree Moore

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14         SAN FRANCISCO AND OAKLAND DIVISION

15 THOMAS FERNANDEZ, LORA SMITH and      ) Case No. C 06-07339 CW
   TOSHA THOMAS, individually and on behalf of a )
16 class of all other persons similarly situated, )
                                                  )
17              Plaintiff,                         ) **NOTICE OF MOTION AND**
                                                  ) **MOTION FOR SUMMARY**
18         vs.                                     ) **JUDGMENT BY DEFENDANTS**
                                                  ) **WILLIAM E. AND DESIREE B.**
19 K-M INDUSTRIES HOLDING CO., INC.; K-M          ) **MOORE REVOCABLE TRUST,**
   INDUSTRIES HOLDING CO., INC. ESOP PLAN        ) **TRUSTEES OF THE WILLIAM E.**
20 COMMITTEE; WILLIAM E. AND DESIREE B.           ) **AND DESIREE B. MOORE**
   MOORE REVOCABLE TRUST; TRUSTEES OF            ) **REVOCABLE TRUST, DESIREE**
21 THE WILLIAM E. AND DESIREE B. MOORE            ) **B. MOORE REVOCABLE TRUST,**
   REVOCABLE TRUST; CIG ESOP PLAN                ) **WILLIAM E. MOORE MARITAL**
22 COMMITTEE; NORTH STAR TRUST COMPANY;          ) **TRUST, WILLIAM E. MOORE**
   DESIREE B. MOORE REVOCABLE TRUST;             ) **GENERATION-SKIPPING TRUST**
23 WILLIAM E. MOORE MARITAL TRUST;                ) **AND DESIREE B. MOORE;**
   WILLIAM E. MOORE GENERATION-SKIPPING         ) **MEMORANDUM OF POINTS**
24 TRUST; and DESIREE MOORE, BOTH IN HER          ) **AND AUTHORITIES IN**
   INDIVIDUAL CAPACITY AND AS TRUSTEE OF         ) **SUPPORT**
25 THE WILLIAM E AND DESIREE B. MOORE             )
   REVOCABLE TRUST'S SUCCESSOR TRUSTS            )
26 NAMED ABOVE,                                   ) Date:    July 31, 2008
                                                  ) Time:    2:00 p.m.
27              Defendants.                        ) Ctrm:    2, 4th Floor
   _____) Judge:   Hon. Claudia Wilkin

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1      TO PLAINTIFFS THOMAS FERNANDEZ, LORA SMITH, AND TOSHA THOMAS

2  AND THEIR COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE that on July 31, 2008 at 2.00 p.m. or as soon thereafter as this

4  matter may be heard by the Honorable Claudia Wilken at 1301 Clay Street, 4th Floor, Courtroom 2,

5  Oakland, California, the following parties: (i) William E. and Desiree B. Moore Revocable Trust,

6  Trustees of the William E. and Desiree B. Moore Revocable Trust, (ii) Desiree B. Moore Revocable

7  Trust, William E. Moore Martial Trust, and William E. Moore Generation-Skipping Trust, and

8  (iii) Desiree B. Moore, will and hereby do move this Court for summary judgment against all of

9  Plaintiffs' claims on the grounds that they are barred by the statute of repose.

10      This Motion will be based on this Notice of Motion, the attached Memorandum of Points

11  and Authorities, the concurrently-filed Declaration of Caroline Walters in support of the Moore

12  Trust, the Successor Trusts and Desiree B. Moore's Motion for Summary Judgment, and such other

13  evidence that may be presented at or prior to the hearing on this Motion.

14

15  DATED:  June 26, 2008                    HENNIGAN, BENNETT & DORMAN LLP

16

17

18      By: _____
            J. Michael Hennigan

19      Attorneys for Defendant William E. and Desiree B.
    Moore Revocable Trust, Trustees of the William E.

20      and Desiree B. Moore Revocable Trust, Desiree B.
    Moore Revocable Trust, William E. Moore Marital

21      Trust, William E. Moore Generation-Skipping Trust
    and Desiree B. Moore

22

23

24

25

26

27

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1

## TABLE OF CONTENTS

2
**Page**

3

4   I.     INTRODUCTION ................................................................................................ 1

5   II.    FACTUAL BACKGROUND ............................................................................. 2

6           A.     Background of Kelly-Moore. .................................................................. 2

7           B.     The Formation of the ESOP. ................................................................. 3

8

9           C.     The 1998 and 1999 ESOP Stock Transactions ..................................... 3

            D.     The Moving Parties. ............................................................................... 4

10  III.   ARGUMENT ..................................................................................................... 5

11           A.     Applicable Legal Standards. .................................................................. 5

12           B.     Plaintiffs' Claims Are Barred by the Statute of Repose. ...................... 5

13

14                1.     The "Last Action" Six-Year Statute of Repose Applies Here, Barring Plaintiffs' Claims Under Sections 1104 and 1106. ..................... 8

15                2.     The "Failure to Remedy" the Alleged Breach in 1998 and 1999 Transactions Does Not Eliminate the Six-Year Statute of Repose. .......................................................................................... 9

16

17                3.     The "Fraud or Concealment" Exception to the Statute of Repose Does Not Apply. .................................................................. 14

18

19                4.     Plaintiffs' Conclusory Contentions that Desiree Moore-Individual Is Liable as a Co-Fiduciary Are Unsupported By Evidence and Cannot Save Their Claims From the Statute of Repose. .......................................................................................... 15

20

21

22  IV.   CONCLUSION ................................................................................................ 17

23

24

25

26

27

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-i-

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aikens v. U.S. Transformer, Inc.*,
  No. CV-07-138-E-EJL-LMB, 2008 U.S. Dist. LEXIS 19285 (D. Idaho March 11, 2008)........ 15

*Angell v. John Hancock Life Ins. Co*,
  421 F. Supp. 1168, 1175-76 (E.D. Mo. 2006),
  *aff'd*, 2007 U.S. App. LEXIS 6918 (8th Cir. 2007) ................................................................. 12

*Aull v. Cavalcade Pension Plan*,
  988 F. Supp. 1360 (D. Colo. 1997)......................................................................................... 9

*Barker v. American Mobil Power Corp.*,
  64 F.3d 1397 (9th Cir. 1995)................................................................................................ 14

*Bergmann v. BMC Indus.*,
  No. 05-963 (JNE/SRN), 2006 U.S. Dist. LEXIS 4847 (D. Minn. 2006).................................. 12

*Chase Sec. Corp. v. Donaldson*,
  325 U.S. 304, 65 S. Ct. 1137 (1945) ....................................................................................... 5

*Christensen v. Northrop Grumman Corp.*,
  No. 97-1096, 1997 U.S. App. LEXIS 28565 (4th Cir. 1997) .................................................. 12

*Davidson v. Cook*,
  567 F. Supp. 225 (E.D. Va. 1983), *aff'd* 734 F.2d 10 (4th Cir. 1984) .................................... 9

*DeFazio v. Hollister*, No. S-04-1358 WBS GGH,
  2007 U.S. Dist. LEXIS 84706 (E.D. Cal. Nov. 1, 2007) ....................................................... 15

*Delbon Radiology v. Turlock Diagnostic Ctr.*,
  839 F. Supp. 1388 (E.D. Cal. 1993)......................................................................................... 5

*Devito v. Pension Plan of Local 819 I.B.T. Pension Fund*,
  975 F. Supp. 258 (S.D.N.Y. 1997).................................................................................... 2, 8

*Edes v. Verizon Communs., Inc.*,
  288 F. Supp. 2d 55 (D. Mass. 2003) ..................................................................................... 12

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004)................................................................................................ 15

*Estate of Kennedy v. Bell Helicopter Textron*,
  283 F.3d 1107 (9th Cir. 2002)................................................................................................ 1

*Fields v. Legacy Health System*,
  413 F.3d 943 (9th Cir. 2005)................................................................................................... 6

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-ii-

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION FOR SUMMARY JUDGMENT

**TABLE OF AUTHORITIES (CONT.)**

Page

*First United Methodist Church of Hyattsville v. United States Gypsum Co.,*
   882 F.2d 862 (4th Cir. 1989) ............................................................................ 7

*Goad v. Celotex Corp.,*
   831 F.2d 508 (4th Cir. 1987) ............................................................................ 7

*Guaranty Trust Co. v. United States,*
   304 U.S. 126, 58 S. Ct. 785 (1938) .................................................................. 5

*Hunt v. Magnell,*
   758 F. Supp. 1292 (D. Minn. 1991) ................................................................ 13

*In re Sprint Corp. ERISA Litig.,*
   No. 03-2202-JWL, 2004 U.S. Dist. LEXIS 19125 (D. Kan. September 24, 2004) ................... 16

*In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.,*
   242 F.3d 497 (3d Cir. 2001) ............................................................................. 7

*International Union of Elec. Workers v. Murata Erie N.A. Inc.,*
   980 F.2d 889 (3d Cir. 1992) ........................................................................... 13

*Japan Whaling Assoc. v. American Cetacean Soc.,*
   478 U.S. 221, 106 S. Ct. 2860 (1986) .............................................................. 5

*Kaliszewski v. Sheet Metal Worker' Nat'l Pension Fund,*
   2005 U.S. Dist. LEXIS 23059 (W.D. Pa. July 19, 2005) .................................... 8

*Keen v. Lockheed Martin Corp.,*
   486 F. Supp. 2d 481 (E.D. Pa. 2007) .......................................................... 9, 12

*Landwehr v. Dupree,*
   72 F.3d 726 (9th Cir. 1995) ...................................................................... 6, 7, 11

*Larson v. Northrop Corporation,*
   21 F.3d 1164 (D.C. Cir. 1994) ............................................................. 8, 14, 15

*Larson v. Women's Health Pension Plan,*
   971 F. Supp. 398 (D. Minn. 1997) .................................................................. 13

*Lyon v. Agusta S.P.A.,* 252 F.3d 1078 (9th Cir. 2001),
   *cert. denied,* 151 L. Ed. 2d 694, 122 S. Ct. 809 (U.S. Jan. 7, 2002) (No. 01-569) ............. 1

*Masengill v. Rye,*
   747 F. Supp. 362, 366 (E.D. Kan. 1990),
   *rev'd as to other parties in* 1992 U.S. App. LEXIS 5278 (6th Cir. 1992) ................... 13

*McChesney v. Pension Plan of Bethlehem Steel Corp.,*
   No. 92-7457, 1994 U.S. Dist. LEXIS 3967 (E.D. Pa 1994) ............................... 13

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-iii-

**TABLE OF AUTHORITIES (CONT.)**

**Page**

*Meagher v. International Assoc. of Machinists & Aerospace Workers' Pension Plan,*
856 F.2d 1418 (9th Cir. 1988).................................................................................... 13

*Ocean Ins. Co. v. Fields,*
18 F. Cas. 532 (C.C.D. Mass. 1841) ........................................................................... 7

*Phillips v. Alaska Hotel & Restaurant Empl. Pension Fund,*
944 F.2d 509 (9th Cir. 1991)............................................................................... 11, 12

*Pisciotta v. Teledyne Indus.,*
91 F.3d 1326 (9th Cir. 1996)...................................................................................... 11

*Radford v. General Dynamics Corp.,*
151 F.3d 396 (5th Cir. 1998)..................................................................................... 6, 7

*Ranke v. Sanofi-Synthelabo Inc.,*
436 F.3d 197 (3rd Cir. 2006) ..................................................................................... 14

*Scripps Clinic & Res. Found. v. Genentech, Inc.,*
927 F.2d 1565 (Fed. Cir. 1991) ................................................................................... 5

*United States v. Kubrick,*
444 U.S. 111, 100 S. Ct. 352  (1979) .......................................................................... 5

*Ziegler v. Connecticut General Life Ins. Co.,*
916 F.2d 548 (9th Cir. 1990)...................................................................................... 6, 8

**Statutes**

29 U.S.C. § 1002 ............................................................................................................ 4

29 U.S.C. § 1102 ............................................................................................................ 3

29 U.S.C. § 1104 ................................................................................................... passim

29 U.S.C. § 1105 .......................................................................................................... 16

29 U.S.C. § 1106 ................................................................................................... passim

29 U.S.C. § 1108 ............................................................................................................ 5

29 U.S.C. § 1113 ................................................................................................... passim

**Rules**

9th Cir. Rule 36 ............................................................................................................ 12

Fed. R. Civ. Proc. 56 ...................................................................................................... 5

-iv-

MEMORANDUM OF POINTS AND AUTHORITIES<br>ISO MOTION FOR SUMMARY JUDGMENT

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case is a perfect example of why statutes of repose exist: "A statute of repose proceeds on the basis that it is unfair to make somebody defend an action long after something was done or some product was sold. It declares that nobody should be liable at all after a certain amount of time has passed, and that it is unjust to allow an action to proceed after that." *Estate of Kennedy v. Bell Helicopter Textron*, 283 F.3d 1107, 1111 (9th Cir. 2002), quoting *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1086 (9th Cir. 2001), *cert. denied*, 151 L. Ed. 2d 694, 122 S. Ct. 809 (U.S. Jan. 7, 2002) (No. 01-569). Indeed, the unusual age and circumstances of this case caused the parties and Judge Jenkins to recognize early the serious timeliness issues inherent in Plaintiffs' claims—issues that should be resolved now, after the end of fact discovery but before the further substantial expense of expert discovery and full-blown "merits" summary judgment motions.

Plaintiffs' claims arise out of two transactions, in October 1998 and October 1999, between The William E. and Desiree B. Moore Revocable Trust (the "Moore Trust") and the K-M Industries Holding Co., Inc. Employee Stock Ownership Plan (the "KMH ESOP"). In those transactions, the KMH ESOP purchased a 42% interest in K-M Industries Holding Co., Inc. ("KMH") from the Moore Trust in the form of two classes of stock structured to track the performance of KMH's two subsidiaries: Kelly Moore Paint Company ("KM Paint") and California Insurance Group ("CIG"). The gravamen of Plaintiffs' claims is that the KMH ESOP paid more than fair market value for the stock based on allegedly flawed valuations. Plaintiffs allege the transactions were therefore "prohibited transactions" under ERISA Section 406, 29 U.S.C. § 1106 ("Section 1106"), and that various defendants, including Desiree Moore, breached their fiduciary duties under ERISA Section 404, 29 U.S.C. § 1104 ("Section 1104"), in approving the transactions.[1]

The defendants dispute that any provisions of ERISA were violated upon sale of the KMH shares to the KMH ESOP. It is *undisputed*, however, that the 1998 and 1999 ESOP transactions each occurred more than seven years before the filing of the Complaint. The statute of repose applicable

---

[1] All references to "Sections" refer to sections of Title 29 of the United States Code.

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION FOR SUMMARY JUDGMENT

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    to all of Plaintiffs' ERISA claims provides that in the absence of fraud or concealment, an action for

2    violation of ERISA may not be filed:

> [S]ix years after (A) the date of the last action which constituted a part of the breach
> or violation, or (B) in the case of an omission, the latest date on which the fiduciary
> could have cured the breach or violation. . . .

5    29 U.S.C. § 1113(1) ("Section 1113").[2]

6        Plaintiffs have no evidence of fraud or concealment by the moving parties. Therefore, as the

7    Complaint was filed on November 29, 2006, more than six years after the 1998 and 1999

8    transactions, the moving parties are entitled to summary judgment because all of Plaintiffs' claims

9    are barred by the six-year statute of repose.[3]

10   **II.    FACTUAL BACKGROUND**

11       **A.    Background of Kelly-Moore.**

12       The original Kelly Moore Paint Company ("Kelly-Moore") was founded in 1946 by William

13   "Bill" Moore and William Kelly. In 1952, Mr. Kelly retired and Bill Moore bought out his interest.

14   That ownership interest was later transferred into the Moore Trust. Mr. Moore and his wife, Desiree

15   Moore, were the settlors and trustees of the Moore Trust,[4] which had become the sole owner of

16   Kelly-Moore prior to the first ESOP transaction in October 1998.[5]

17       Kelly-Moore's operations were primarily related to manufacturing and distribution of paint

18   and painting products until 1986, when it acquired CIG, a property/casualty insurance company.

---

20   [2] Section 1113(2) provides the statute of limitations (in contrast to the statute of repose): where the plaintiff has actual knowledge of the violation, the statute commences three years after such date. Defendants believe that Plaintiffs' claims are also barred by their "actual knowledge" of the relevant facts more than three years prior to the filing of the complaint, but the moving parties have chosen to not present that statutory issue at this time. *See Devito v. Pension Plan of Local 819 I.B.T. Pension Fund,* 975 F. Supp. 258, 265 n.10 (S.D.N.Y. 1997) ("If a claim is not filed within the [6-year] time limit prescribed by § 1113(1), there is no need to undertake an analysis under § 1113(2).").

24   [3] The moving parties expressly reserve their rights to bring other summary judgment motions at the close of expert discovery, should Plaintiffs' claims against them survive this motion.

25   [4] Second Amended Complaint (Corrected) (Docket No. 86) ("Compl.") ¶ 9; Trust Defendants and Desiree Moore's Answer to Second Amended Complaint (Corrected) (Docket No. 88) ("Answer") ¶ 9.

27   [5] Declaration of Caroline Walters ("Walters Decl."), Exhibit B (Ex. 3: 1998 ESOP Purchase Agreement) at p. 1.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-2-

**B.    The Formation of the ESOP.**

In September 1998, as part of a corporate re-structuring to facilitate the ESOP formation, Kelly-Moore formed a new subsidiary into which it transferred all of the paint operations.[6] Kelly-Moore changed its name to KMH, and the new paint subsidiary became KM Paint.[7] KMH had two classes of stock: "P" and "I" stock, tracking the performance of KM Paint and CIG, respectively.[8]

**C.    The 1998 and 1999 ESOP Stock Transactions**

As finally structured, the KMH ESOP was to purchase approximately 42% of the P stock on behalf of KM Paint employees and 42% of the I stock on behalf of CIG employees.[9] The purchase price for the KMH stock could not exceed "adequate consideration" under ERISA's "fair market value" definition. 29 U.S.C. § 1102(18).

Bill and Desiree Moore were the trustees of the Moore Trust, which then owned 100% of KMH and sold the KMH stock to the KMH ESOP in 1998 and 1999.[10] Mr. Moore was also the sole trustee of the KMH ESOP, and the sole member of the ESOP Committee.[11] Because Mr. Moore was on both sides of the ESOP Transactions, independent appraisers were retained to determine the value of KM Paint in 1998 and then CIG in 1999. As a result:

- On October 12, 1998, B.J. Brooks, the appraiser retained to value the paint operations of KMH, updating his earlier (higher) valuation opined to a lowered enterprise value of $550 million.[12] On October 13, 1998, the ESOP purchased approximately 42% of the shares of P

---

[6] Walters Decl. Ex. A (9/20/1998 Unanimous Written Resolutions of the Board of Directors of Kelly Moore).

[7] *Id.*

[8] Compl. ¶ 25; Answer ¶ 25.

[9] Walters Decl. Ex. G (Ex. 139: 10/18/1999 Letter from Duff & Phelps re Valuation Update of KMH I-Stock).

[10] Walters Decl. Ex. B (Ex. 3: 1998 ESOP Purchase Agreement); Ex. E (Ex. 25: 1999 ESOP Purchase Agreement).

[11] Compl. ¶ 11; Answer ¶ 11.

[12] Walters Decl. Ex. D (Ex. 55: 10/12/1998 Letter from B. J. Brooks re Evaluation Update of the Common Stock of Kelly-Moore); Ex C (Ex. 9: 7/31/1998 Evaluation of the Common Stock of

-3-

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION FOR SUMMARY JUDGMENT

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

stock from the Moore Trust for $6.875 per share, for $232 million (the "1998 ESOP Transaction").[13]

- On October 18, 1999, Duff & Phelps, the independent appraisal firm retained to appraise the I stock, bringing current its June 1999 appraisal, valued a 42% interest in the I stock at $55 million.[14] That same day, the ESOP purchased a 42% interest in the I stock for $55 million (the "1999 ESOP Transaction").[15]

Bill Moore resigned as ESOP trustee in 2003. North Star Trust Company, an experienced independent institutional trustee, was later appointed as the ESOP trustee.[16] Mr. Moore died on November 21, 2004.

### D.    The Moving Parties.

As the majority shareholder of KM Paint and CIG (later merged to become KMH), the Moore Trust was a "party in interest" of the KMH Plan at the time of its formation.[17] The remaining trust defendants in this case are alleged to be successors in interest to the Moore Trust (together with the Moore Trust, the "Trust Defendants").[18] Desiree Moore is the trustee of each of the Trust Defendants, and has been named as a defendant in her trustee capacity as well as in her individual capacity.[19] Desiree Moore-Individual is and was a member of the board of directors of KMH, KM

Kelly-Moore Paint Company by B. J. Brooks).

[13] Walters Decl. Ex B (Ex. 3: 10/13/1998 ESOP Purchase Agreement).

[14] Walters Decl. Ex. G (Ex. 139: 10/18/1999 Letter from Duff & Phelps re Valuation Update of the KMH I-stock); Ex. F (Ex. 18: 6/30/1999 Valuation of KMH Class-I Stock by Duff & Phelps, LLC).

[15] Walters Decl. Ex. E (Ex. 25: 10/18/1999 ESOP Purchase Agreement). Plaintiffs do not dispute that the 1998 and 1999 transactions occurred at the prices established in the appraisers' valuations.

[16] Walters Decl. Ex. H (Ex. 255: 4/22/2003 Trustee Engagement Agreement).

[17] 29 U.S.C. § 1002(14); Compl. ¶ 9; Answer ¶ 9.

[18] Compl. ¶ 10. The remaining trusts are the William E. Moore Marital Trust, the Desiree B. Moore Revocable Trust, and the William E. Moore Generation-Skipping Trust.

[19] Complaint ¶¶ 9-10, 15-16; Answer ¶¶ 9-10; 15. Hereinafter, "Desiree Moore-Trustee" shall denote any discussion of Desiree Moore in her capacity as trustee of the Trust Defendants, and "Desiree Moore-Individual" shall denote any discussion of Desiree Moore in her individual capacity.

MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION FOR SUMMARY JUDGMENT

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  Paint, and CIG in 1998 and 1999 when the KMH ESOP was formed and the stock purchase

2  transactions took place.

3  **III.    ARGUMENT**

4      **A.    Applicable Legal Standards.**

5      Summary judgment is a tool to promote judicial economy and avoid unnecessary trials.

6  *Scripps Clinic & Res. Found. v. Genentech, Inc.*, 927 F.2d 1565, 1570 (Fed. Cir. 1991). It should be

7  rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

8  that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

9  matter of law." Fed. R. Civ. Proc. 56(c). Where the facts bearing on the application of law are

10  undisputed, the application of the law to those facts is a pure legal question ripe for summary

11  judgment. *Delbon Radiology v. Turlock Diagnostic Ctr.*, 839 F. Supp. 1388, 1391 (E.D. Cal. 1993).

12      As this motion for summary judgment is based solely on the statute of repose, it presents

13  purely legal questions for this Court. *See Japan Whaling Assoc. v. American Cetacean Soc.*, 478

14  U.S. 221, 230, 106 S. Ct. 2860 (1986) (statutory interpretation presents a "purely legal question").

15  The substantive merit (or lack thereof) of Plaintiffs' claims is not under consideration here. *See*

16  *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S. Ct. 1137 (1945) (noting limitation statutes

17  "are by definition arbitrary, and their operation does not discriminate between the just and the unjust

18  claim, or the voidable and unavoidable delay. […] They represent a public policy about the privilege

19  to litigate."). A statute of repose is a meritorious defense, "in itself serving a public interest." *United*

20  *States v. Kubrick*, 444 U.S. 111, 117, 100 S. Ct. 352 (1979) (quoting *Guaranty Trust Co. v. United*

21  *States*, 304 U.S. 126, 136, 58 S. Ct. 785 (1938)).

22      **B.    Plaintiffs' Claims Are Barred by the Statute of Repose.**

23      Plaintiffs allege that all of the defendants engaged in transactions prohibited under Section

24  1106, which forbids fiduciaries from engaging in sales of employer securities to a plan if the sale is

25  for more than adequate consideration.[20] 29 U.S.C. § 1106, 1108(e). Plaintiffs also allege that the

26

27  _____

28  [20] Although the Trust Defendants and Desiree Moore-Trustee are not sued as fiduciaries (Compl. ¶ 16), they are sued as "parties in interest" for participating in a "prohibited transaction." Compl. ¶ 9.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-5-

1  "Defendant Fiduciaries," defined to include Desiree Moore-Individual, collectively breached their

2  fiduciary duties under Section 1104 in approving the sales.

3      Plaintiffs' claims under Section 1104 and Section 1106 are barred by Section 1113, which

4  imposes both a statute of limitations and a statute of repose on claims to enforce the fiduciary

5  standards, prohibited transaction restrictions, and other provisions of Part 4 of ERISA.[21] Section

6  1113 provides:

7      [N]o action may be commenced under this [ERISA] title [1] with respect to a
    fiduciary's breach of any responsibility, duty or obligation under this part [4], or with
8      respect to a violation of this part, after the earlier of:

9          (1) six years after (A) the date of the last action which constituted a
        part of the breach or violation, or (B) in the case of an omission, the
10          latest date on which the fiduciary could have cured the breach or
        violation, or
11

12          (2) three years after the date on which the plaintiff had actual
        knowledge of the breach or violation.

13      Except that in the case of fraud or concealment, such action may be commenced not
    later than six years after the date of discovery of such breach or violation.
14

15      Put simply, except in the case of fraud or concealment, Section 1113(1) sets a six-year

16  statute of repose, and a three-year statute of limitations. *Landwehr*, 72 F.3d at 733 (recognizing the

17  six-year statute protects an ERISA defendant's interest in repose, by protecting defendants from

18  untimely claims); *Radford v. General Dynamics Corp.*, 151 F.3d 396 (5th Cir. 1998) (holding that

19  Section 1113(1) is a statute of repose, establishing an outside limit of six years in which to file suit).

20  The difference between the statutes is critical.

21      A statute of limitations differs from a statute of repose because the former "bars plaintiff[s]

22  from bringing an already accrued claim after a specified period of time," whereas the latter

23  "terminates a right of action after a specific time, even if the injury has not yet occurred." *Fields v.*

24  *Legacy Health System*, 413 F.3d 943, 952 (9th Cir. 2005) (citation omitted). As the Ninth Circuit

25  ably explained:

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

26  [21] *Ziegler v. Connecticut General Life Ins. Co.*, 916 F.2d 548 (9th Cir. 1990) (applying Section 1113
27  to Section 1104 and 1106 claims against fiduciary defendants); *Landwehr v. Dupree*, 72 F.3d 726
(9th Cir. 1995) (applying Section 1113 to a Section 1106 prohibited transaction claim against a non-
28  fiduciary party in interest).

-6-

**The focus of a statute of repose is entirely different from the focus of a statute of limitations.** The latter bars a plaintiff from proceeding because he has slept on his rights, or otherwise been inattentive. [...] However, **a statute of repose proceeds on the basis that it is unfair to make somebody defend an action long after something was done or some product was sold. It declares that nobody should be liable at all after a certain amount of time has passed, and that it is unjust to allow an action to proceed after that.** [...] While an injured party might feel aggrieved by the fact that no action can be brought, repose is a choice that the legislature is free to make.

*Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1086 (9th Cir. 2001) (emphasis added).[22]

In the case of ERISA violations of the type alleged here, Congress has determined that the statute of repose is six years from the violation. *Landwehr*, 72 F.3d at 733; *see also In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.*, 242 F.3d 497, 504 (3d Cir. 2001) (refusing to import the doctrine of equitable tolling onto Section 1113, particularly given that "ERISA's statute makes a single express exception for cases of 'fraud or concealment'"); *Radford*, 151 F.3d at 400 (5th Cir. 1998) ("Section [1113(1)] of ERISA is a statute of repose, establishing an outside limit of six years in which to file suit.").[23] Although Section 1113 provides a tolling exception that is applicable to both the statute of limitations and the statute of repose solely in cases of fraud or concealment, as will be demonstrated below, no fraud or concealment exists to exempt Plaintiffs' claims from the six-year statute of repose imposed by Congress. Accordingly, the moving parties should be granted summary judgment.

---

[22] *See also First United Methodist Church of Hyattsville v. United States Gypsum Co.*, 882 F.2d 862, 865-66 (4th Cir. 1989) ("A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time. [...] Statutes of repose are based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists."); *Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir. 1987) ("In contrast to statutes of limitation, statutes of repose serve primarily to relieve potential defendants from anxiety over liability for acts committed long ago. Statutes of repose make the filing of suit within a specified time a substantive part of plaintiff's cause of action.").

[23] Notably, the person most knowledgeable about the disputed transactions, Kelly Moore founder Bill Moore, died in November 2004, after the expiration of the six-year statute of repose applicable to the primary ESOP stock transaction challenged by Plaintiffs: the October 1998 ESOP Transaction. As Justice Story remarked, "[i]t is for the public interest and policy to make an end to litigation ...." so that "suits may not be immortal, while men are mortal." *Ocean Ins. Co. v. Fields*, 18 F. Cas. 532, 539 (C.C.D. Mass. 1841).

-7-

1      1.      **The "Last Action" Six-Year Statute of Repose Applies Here, Barring**
               **Plaintiffs' Claims Under Sections 1104 and 1106.**

There are no disputed material facts that alter straightforward application of Section 1113(1)(A)'s six-year statute of repose to Plaintiffs' claims under both Sections 1104 and 1106. The "last action which constituted the breach" occurred when the KMH Stock sales were completed in October 1998 and 1999, more than six years prior to the November 2006 filing of the Complaint.

The first step in analyzing accrual of an ERISA action is to isolate and define the underlying violation upon which the plaintiff's claim is founded. *Ziegler*, 916 F.2d at 550-51; *see also Kaliszewski v. Sheet Metal Worker' Nat'l Pension Fund*, No. 03-216E, 2005 U.S. Dist. LEXIS 23059, *13 (W.D. Pa. July 19, 2005) (looking to the gravamen of the complaint for purposes of statute of limitations analysis). Here, the core of Plaintiffs' Section 1104 claim is that the Defendant Fiduciaries breached their fiduciary duties of loyalty and prudence under Section 1104 by "causing the Plans to pay more than fair market value for KMH Stock."[24] Similarly, the core of Plaintiffs' 1106 claim is that all Defendants "engaged in a prohibited transaction" under Section 1106 by failing to ensure the ESOP paid fair market value for the KMH stock.[25]   Plaintiffs themselves admit that the gravamen of their Complaint is the alleged overpayments in 1998 and 1999.[26]

Under the plain language of Section 1113(1)(A), the six-year statute of repose begins to run on the date of the closing of the transaction: the "last action" constituting the alleged violation.[27]

_____

[24] Compl. ¶ 67.

[25] Compl. ¶¶ 74, 75.

[26] Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel (Docket No. 127) at p. 5 ("Plaintiffs... all understand the basic allegation in this case: that the ESOP paid too much for the stock at the time of the initial transactions") and p. 4 n.2 (Plaintiffs "all understand that the gravamen of the claims is that the ESOP overpaid for stock").

[27] *See, e.g., Ziegler*, 916 F.2d at 551 (holding breaches of fiduciary duties arising out of entering into investment agreements occur at the time of the agreement); *DeFazio v. Hollister Employee Share Ownership Trust*, 406 F. Supp. 2d 1085, 1093 (E.D. Cal. 2005) ("The ERISA breach or violation, if any, occurred upon the creation and execution of the Plan's Articles of Incorporation, because it is the instrument that provides that JDS may purchase stock from HolliShare and which establishes the stock's book value as the fair market value."); *Devito*, 975 F. Supp. at 265 ("the amendment of the Plan to include the provision challenged... represents 'the last action which constituted a part of the breach or violation.'"); *Larson v. Northrop Corporation*, 21 F.3d 1164, 1171 (D.C. Cir. 1994) (holding the "last action constituting the breach" occurred when defendant purchased an allegedly

-8-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Here, the 1998 and 1999 ESOP Transactions were completed more than six years prior to the November 29, 2006 filing of the Complaint, and thus Plaintiffs' claims are barred by the six-year statute of repose in Section 1113(1)(A).

Moreover, Plaintiffs' allegations regarding a series of purportedly inadequate acts taken by the "Defendant Fiduciaries" leading up to the allegedly overpriced purchases of the KMH Stock[28] do not change the fact that the "last action which constituted a part of the breach or violation" occurred when the stock purchases closed on October 13, 1998 and October 18, 1999, more than six years prior to the filing of the Complaint.[29]

### 2. The "Failure to Remedy" the Alleged Breach in 1998 and 1999 Transactions Does Not Eliminate the Six-Year Statute of Repose.

The only acts concerning the 1998 and 1999 ESOP transactions alleged to occur after the closings are purported ongoing failures to remedy the initial breaches by seeking an independent valuation with proper disclosure of the asbestos issue, and thereafter seeking a refund.[30] Plaintiffs

---

inadequate annuity to fund liabilities required by law, as there "was no further action left to be taken by way of completing the alleged breach"); *Davidson v. Cook*, 567 F. Supp. 225, 234 (E.D. Va. 1983) (the six-year statute of repose began to run on claims against fiduciaries based on alleged "sweetheart" loans made to a party in interest on the date the final loan funds were disbursed to the party in interest), *aff'd* 734 F.2d 10 (4th Cir. 1984).

[28] These alleged acts consist of inadequate investigation into the valuators' independence and qualifications, the provision of inadequate information to the valuators, including information concerning asbestos, inadequate consideration of the impact of asbestos and the tracking stock nature on the value of the KMH Stock, and inadequate review, understanding, and questioning of the valuation reports. *See, e.g.,* Compl. ¶¶ 28-32, 36-40, 43, 45, 67, 74-76.

[29] *See, e.g. Keen v. Lockheed Martin Corp.*, 486 F. Supp. 2d 481, 492 (E.D. Pa. 2007) ("defendants' 'failure' to assess is tantamount to defendants' decision not to provide benefits to any contingent worker"); *Aull v. Cavalcade Pension Plan*, 988 F. Supp. 1360, 1362-63 (D. Colo. 1997) (where alleged breaches of fiduciary duty under Sections 1104 and 1106 arose from failure to transfer sufficient assets from the old plan to a new plan, the last action constituting the breach occurred on the date the money was transferred).

[30] For example, Plaintiffs allege: "Defendant Fiduciaries could have corrected the Plans' overpayment for KMH stock at any time since October 13, 1998, by obtaining an independent valuation based on all relevant information, including but not limited to full disclosure of KMH's financial state, including KMH's potential asbestos liabilities, and seeking a refund from the Moore Trust of any amount by which such a valuation demonstrated that the Plans had overpaid for KMH stock. Despite this opportunity, Defendant Fiduciaries failed to take any action to cure the breaches of fiduciary duty and prohibited transactions, and in fact continued to intentionally withhold information about KMH's potential asbestos liabilities." Compl. ¶ 51; *see also* Compl. ¶¶ 52, 67, 74 and 75; Walters Decl. Ex. J (Plaintiffs' Supplemental Responses to K-M Industries Holding Co.,

-9-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    apparently hope to avoid the absolute bar of Section 1113(1)(A)'s six-year statute of repose by

2    alleging ongoing "failures to remedy." This strategy should be rejected.

3        As discussed above, the alleged overpayments for the KMH Stock by the KMH ESOP Plan

4    that allegedly harmed the Plan were plainly "acts," rather than "omissions." Plaintiffs do not even

5    appear to contend otherwise. As Section 1113's "latest date on which the fiduciary could have cured

6    the breach or violation" language only applies to omissions (see Section 1113(1)(B)), not to actions

7    (see Section 1113(1)(A)), Plaintiffs cannot hope to rescue their claims in this manner.

8        Rather, Plaintiffs allege that the subsequent failures to obtain a new valuation and seek a

9    refund of the alleged overpayments in 1998 and 1999 relate back and themselves "constitute part of

10   the 1998 [and 1999] prohibited transaction[s]."[31] These allegations, however, are nothing more than

11   re-cast allegations of a failure to remedy the breaches of fiduciary duty that allegedly occurred in

12   1998 and 1999.[32] Thus the question is, assuming some sort of breach or violation occurred in the

---

Inc.'s First Set of Interrogatories ("Responses to KMH Rogs")), Response Nos. 23-25; Ex K (Plaintiffs' Second Supplrmental Reponses to Defendant K-M Industries Holding Co., Inc. ESOP Plan Committee's First Set of Interrogatories ("Responses to Committee Rogs")), Response Nos. 1, 13-15, 18, 20.

[31] Compl. ¶¶ 67, 74, 75. For example, Plaintiffs allege at ¶ 67: "Defendants' repeated failures to seek a refund of the Paint Plan's overpayment for KMH Series P stock at any time between 1998 and the present constitute part of the 1998 prohibited transaction. Defendants' repeated failures to seek a refund of the KMH Plan's overpayment for KMH Series I stock at any time between 1999 and the present constitute part of the 1999 prohibited transaction. Defendants could have cured the breaches at any time since October 13, 1998, by securing an independent valuation of the KMH Series I and Series P stock purchased by the Plans and seeking a refund from the Moore Trust and the Successor Trusts of any amount by which such valuation determined the Plans overpaid the Moore Trust."

But in response to a defense interrogatory seeking identification of all facts underlying their claims in Paragraph 67 of the Complaint that "Defendant Fiduciaries' repeated failures to seek a refund" of the 1998 and 1999 overpayments "constitute part of the 1998 [and 1999] prohibited transaction[s]," Plaintiffs respond solely with testimony by various Paint and CIG Company executives that they were unaware of *North Star* ever investigating whether the ESOP paid too high a price in 1998 and 1999. Plaintiffs' identical response to defense interrogatories seeking the facts supporting Plaintiffs' allegations in Paragraphs 74 and 75 of the Complaint that defendants "could have cured the prohibited transaction[s]" at any time since they occurred in 1998 and 1999, similarly presents no facts vis-à-vis the moving parties. Walters Decl. Ex K (Responses to Committee Rogs) Response Nos. 13-15, 18, 20.

[32] In fact, Plaintiffs' theory proves too much. If the alleged post-transaction failures were indeed "part of the 1998 [and 1999] prohibited transaction[s]," Compl. ¶¶ 67, 74, 75, they should be barred by the six-year statute of repose.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   first instance, does a fiduciary's failure to remedy a breach or violation create a separately actionable

2   breach? The answer to this question must be no.

3        Under Plaintiffs' "failure to remedy" theory, every accused fiduciary that has not self-

4   reported and corrected an alleged breach will have failed to remedy that same breach. If Plaintiffs'

5   theory were correct, every breach would have an echo of a "failure to remedy" the breach, and

6   Section 1113(1)(A)'s six-year period would never bar any claim, whether one argues the "failure to

7   remedy" the original breach is an "omission" that can always be "cured" (resulting in no limit under

8   Section 1113(1)(B)), or whether one argues the ongoing "failure to remedy" the original breach is a

9   "part of" the original breach and thus the six-year statute of repose under Section 1113(1)(A) never

10  commences to run. This concept that any unremedied breach is actionable *ad infinitum*

11  impermissibly reads the six-year limitation out of the statute, and is antithetical to the purposes of

12  the six-year statute of repose: to protect defendants from untimely claims. *Landwehr*, 72 F.3d at 733.

13       To be sure, though Plaintiffs' theory has not been considered in a published Ninth Circuit

14  court decision relating to Section 1113(1)(A)'s six-year statute of repose, it has been considered and

15  rejected with respect to the accrual of a claim subject to Section 1113(2)'s three-year statute of

16  limitations. In *Phillips v. Alaska Hotel & Restaurant Empl. Pension Fund*, Judge Wright, writing for

17  the Ninth Circuit, rejected the use of a "continuing violation" theory to toll the three-year limitation

18  under Section 1113(2), recognizing that a contrary result would "read the 'actual knowledge'

19  requirement out of the statute." 944 F.2d 509, 520-21 (9th Cir. 1991). In *Phillips*, the breaches

20  alleged were a repeated series of breaches of the same kind and nature. The Ninth Circuit held that

21  the clock starts running on the statute of limitations (Section 1113(2)) when a plaintiff first becomes

22  aware of any one of the breaches, since awareness of later breaches does not impart anything

23  materially new. *Id.*; *accord Pisciotta v. Teledyne Indus.*, 91 F.3d 1326, 1332 (9th Cir. 1996) (noting

24  the Circuit has "expressly rejected the continuing violation theory" under Section 1113(a)(2)).

25  Applying this same logic, Plaintiffs' theory that a "failure to remedy" a breach creates a continuing

26  violation should be rejected with respect to the six-year statute of repose.

27       Indeed, in his concurring opinion in *Phillips*, Judge O'Scannlain rejected the "failure to

28  remedy" rationale put forth by the plaintiffs and found the claims barred by the six-year statute of

-11-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  repose. *Phillips*, 944 F.2d at 522-23 ("If the 'continuing violation' rationale that we have applied in

2  other contexts were as broad as the plaintiffs and the district court suggest, the 'actual knowledge'

3  provision in the statute would be superfluous and virtually no breach would ever grow stale so long

4  as it remained unremedied."). Judge O'Scannlain noted the difference between "the failure to

5  *remedy* the alleged breach of an obligation" and "the commission of an alleged *second* breach,

6  which, as an overt act of its own, recommences the limitations period." *Id.* at 523 (emphasis in

7  original). Because, as here, the *Phillips* plaintiffs did not identify a series of successive, overt acts,

8  the "failure to remedy" an original breach did not recommence the limitations period. *Id.*[33]

9       Not surprisingly, Plaintiffs' theory of an unexpiring statute of repose has been rejected by

10  courts across the country. *See, e.g., Christensen v. Northrop Grumman Corp.*, No. 97-1096, 1997

11  U.S. App. LEXIS 28565, *10 (4th Cir. 1997) (rejecting a characterization of the defendant's action

12  of not purchasing annuities as an omission giving rise to "a continuous opportunity to 'cure'" as

13  such approach would eviscerate Section 1113(1)(A)'s six-year limitation by allowing participants to

14  recast a failure to provide a benefit as an omission rather than an affirmative decision); *Keen*, 486 F.

15  Supp. 2d at 492 (E.D. Pa. 2007) (holding Section 1113(1)(A)'s six-year statute of repose barred

16  claim on defendants' decision not to provide benefits to contingent workers, and their failure to

17  correct plaintiffs' belief they were ineligible for benefits did "not transform that initial act into an

18  ongoing omission"); *Angell v. John Hancock Life Ins. Co*, 421 F. Supp. 2d 1168, 1175-76 (E.D. Mo.

19  2006) (finding suit by plan participant against a plan fiduciary more than six years after the failure to

20  send the correct payment amounts was barred under Section 1113(1), despite the continued sending

21  of the wrong amount), *aff'd*, 2007 U.S. App. LEXIS 6918 (8th Cir. 2007); *Bergmann v. BMC Indus.*,

22  No. 05-963 (JNE/SRN), 2006 U.S. Dist. LEXIS 4847, *13 (D. Minn. 2006) (refusing to extend

23  statute of repose where misrepresentations about the SERP were made at the time of its creation and

24  ongoing failure to correct such misrepresentations and fund the SERP were not new and independent

25  acts); *Edes v. Verizon Communs., Inc.*, 288 F. Supp. 2d 55, 61 (D. Mass. 2003) (refusing to accept

---

[33] Since its decision in *Phillips*, the Ninth Circuit has dealt with this issue at least twice in unpublished cases, which may not be cited under 9th Cir. R. 36-3.

-12-

1   "continuing breach" theory to extend statute of limitations to time-barred action); *Larson v.*

2   *Women's Health Pension Plan*, 971 F. Supp. 398, 400 (D. Minn. 1997) (holding the failure to pay a

3   demanded distribution does not constitute a continuing violation under Section 1113 because the

4   "plain language of the statute" rejects such approach and to rule otherwise "would eviscerate

5   ERISA's finely-crafted limitations scheme"); *McChesney v. Pension Plan of Bethlehem Steel Corp.*,

6   No. 92-7457, 1994 U.S. Dist. LEXIS 3967, *35 (E.D. Pa 1994) (finding the failure to remedy an

7   initial breach of fiduciary duty in denying credit does not qualify as a continuous violation

8   recommencing the limitations period); *International Union of Elec. Workers v. Murata Erie N.A.*

9   *Inc.*, 980 F.2d 889, 899 (3d Cir. 1992) (finding where the initial breach of fiduciary duty was

10  grounded in a plan amendment, the fiduciary's subsequent transfers of assets pursuant to such

11  amendment did not constitute a "continuing breach" for purposes of extending the statute of

12  limitations under Section 1113); *Hunt v. Magnell*, 758 F. Supp. 1292, 1299 (D. Minn. 1991)

13  (holding "breaches of fiduciary duty allegedly occurring after the purchase of a trust asset do not toll

14  the statute of limitations for claims of fiduciary breach arising out of a trustee's failure to adequately

15  investigate the merits of an asset prior to purchase"); *Masengill v. Rye*, 747 F. Supp. 362, 366 (E.D.

16  Kan. 1990) (finding trustee's continued failure to relinquish control over converted plan assets was

17  not itself a breach of fiduciary duty, and did not extend the statute of repose past original conversion

18  date as "ongoing breach notion would render the limitations provision [of Section 1131(1)(A)]

19  completely nugatory"), *rev'd as to other parties in* 1992 U.S. App. LEXIS 5278 (6th Cir. 1992). *Cf.*

20  *Meagher v. International Assoc. of Machinists & Aerospace Workers' Pension Plan*, 856 F.2d 1418,

21  1422-23 (9th Cir. 1988) (finding the mailing/receipt of each benefits check commenced its own

22  limitations period on a fresh set of damages where an improper amendment to the plan was

23  repeatedly applied to reduce the plaintiff's benefits, though claims on checks received more than

24  three years prior to plaintiff's suit—outside the three-year statute of limitations—were untimely).

25       Here, the alleged breaches under Sections 1104 and 1106 were completed in 1998 and 1999.

26  Any subsequent failures to remedy such alleged breaches, whether they be characterized as "part of

27  the 1998 and 1999 transactions," subsequent "failures to cure," or "omissions," cannot save

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-13-

1  Plaintiffs' claims from the bar of Section 1113(1)(A)'s six-year statute of repose.[34]

2          **3.  The "Fraud or Concealment" Exception to the Statute of Repose Does Not Apply.**

3

4        Section 1113's "fraud or concealment" exception, which provides "in the case of fraud or

5  concealment, such action may be commenced not later than six years after the date of discovery of

6  such breach or violation," does not apply here because Plaintiffs have no evidence that Desiree

7  Moore or the Trust Defendants took any affirmative steps taken by to hide their alleged breaches or

   violations of Sections 1104 and 1106.

8        The Ninth Circuit affirms that Section 1113's "fraud and concealment" exception only

9  applies "when *the defendant himself* has taken steps to hide *his* breach," by fraud or by concealment

10 so that the beneficiary never becomes aware of the breach. *Barker v. American Mobil Power Corp.*,

11 64 F. 3d 1397, 1402 (9th Cir. 1995) (emphasis added). Thus, Plaintiffs may not use fraudulent

12 concealment by one defendant as a means to toll the statue of limitations against any other

13 defendant. *Id.* To qualify for the exception, Plaintiffs must set forth specific facts demonstrating that

14 Desiree Moore and each of the Trust Defendants "made knowingly false misrepresentations with

15 intent to defraud the plaintiffs," or took "affirmative steps" to conceal their own alleged breaches.

16 *Id.* at 1401. "Concealment by mere silence is not enough." *Larson v. Northrop Corp.*, 21 F.3d 1164,

17 1173 (D.C.Cir. 1994); *Barker,* 64 F. 3d at 1401-02 (finding the "fraud or concealment" exception

18 inapplicable because plaintiffs failed to produce any evidence of affirmative steps by the specific

19 defendants to conceal any alleged fiduciary breaches); *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d

20 197, 204 (3rd Cir. 2006) (holding defendants' "failures to notify their beneficiaries of any change in

21 the method of calculating retirement benefits or warn them of any misconception regarding their

22 benefits are not 'affirmative steps,' and cannot on their own bring the 'fraud or concealment'

23 exception into play").

---

26 [34] Indeed, a "failure to remedy" or "continuing violation" theory, even if accepted in the Ninth

27 Circuit (which it is not), could not save Plaintiffs' claims against the Trust Defendants and Desiree Moore-Trustee, because their alleged liability is based on their status as non-fiduciary "parties in interest" to the 1998 and 1999 transactions. As non-fiduciaries, they had no continuing duties to the

28 Plan; thus, alleged post-transaction failures can have no application to them at all.

                              MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    Plaintiffs cannot save their barred claims with the fraud or concealment exception because

2    the record is devoid of any evidence that Mrs. Moore or the Trust Defendants engaged in any

3    affirmative acts of fraud or concealment. Plaintiffs did not depose Mrs. Moore or the Moore Trust,

4    and they did not adduce any evidence by any other means concerning any affirmative acts of fraud

5    or concealment by them.

6    In fact, Section 1113's "fraud or concealment" exception was never properly pleaded in this

7    case, and for that reason alone should not be recognized as a theory to rescue Plaintiffs' claims.

8    Reliance on the fraud or concealment exception triggers the heightened pleading requirements of

9    Rule 9(b): "a plaintiff must plead with particularity the facts giving rise to the fraudulent

10   concealment claim." *Larson*, 21 F.3d at 1173.[35] Other than to mention them as defendants, the

11   Complaint does not allege any particular facts or acts regarding Mrs. Moore or the Trust Defendants

12   that could constitute "fraud or concealment" under the Ninth Circuit standard.

13   Accordingly, the six-year statute of repose of Section 1113(1)(A) applies here, and Plaintiffs'

14   claims are time-barred.

15   **4.    Plaintiffs' Conclusory Contentions that Desiree Moore-Individual Is**
       **Liable as a Co-Fiduciary Are Unsupported By Evidence and Cannot**
16     **Save Their Claims From the Statute of Repose.**

17   Plaintiffs' co-fiduciary allegations do not add any basis on which their claims can withstand

18   summary judgment. No admissible evidence suggests that Mrs. Moore meets the requirements for

19   co-fiduciary liability, specifically, that she (1) participated knowingly in any act or omission of any

20   other fiduciary, knowing it was breach; (2) failed to comply with Section 1104(a)(1) in the

21   administration of responsibilities that give rise to her status as a fiduciary and thereby enabled

22   another fiduciary to commit a breach; or (3) has knowledge of a breach by another fiduciary and has

23

24   ---

[35] *See also DeFazio v. Hollister*, No. S-04-1358 WBS GGH, 2007 U.S. Dist. LEXIS 84706, *29
25   (E.D. Cal. Nov. 1, 2007) ("To avoid dismissal for inadequacy under Rule 9(b), a[n ERISA]
     complaint would need to state the time, place, and specific content of the false representations as
26   well as the identities of the parties to the misrepresentation.") quoting *Edwards v. Marin Park, Inc.*,
     356 F.3d 1058, 1066 (9th Cir. 2004); *Aikens v. U.S. Transformer, Inc.*, No. CV-07-138-E-EJL-
27   LMB, 2008 U.S. Dist. LEXIS 19285, *36 (D. Idaho March 11, 2008) (holding that the 'fraud or
     concealment' exception does not apply because "[t]here are no allegations in the Complaint that
28   such actions were concealed or covered up in any fashion.").

-15-

1    not taken reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

2    There is simply no support in the record for a claim for co-fiduciary liability. None of the

3    Plaintiffs testified to facts supporting such liability. Plaintiffs provided a second set of amended

4    interrogatory responses after the close of discovery,[36] and still Plaintiffs have no factual support for

5    their co-fiduciary liability claims against Mrs. Moore; they instead merely allege legal conclusions:

6    > Desiree Moore is also liable as a co-fiduciary for the breaches of fiduciary duty
   > committed by Mr. Moore and the other fiduciaries of the ESOP as described in
7    > response to Interrogatory No. 6 above, because she knowingly participated in the
   > breaches, enabled the other fiduciaries to commit the breaches, and did not prevent or
8    > make reasonable efforts to remedy the breaches.[37]

9    Particularly now, after the close of discovery, these conclusory allegations should be found

10   insufficient to defeat this motion for summary judgment. *See, e.g., In re Sprint Corp. ERISA Litig.*,

11   No. 03-2202-JWL, 2004 U.S. Dist. LEXIS 19125 * 32-33 (D. Kan. September 24, 2004)

12   (dismissing plaintiffs' co-fiduciary claim that "simply parrots the statutory language of the co-

13   fiduciary liability statute and conclusorily alleges without any factual detail that all of the Sprint

14   defendants are liable under this statute for the other defendants' breaches of fiduciary"").

15   Accordingly, Plaintiffs' claims of co-fiduciary liability must fail.[38]

---

[36] Plaintiffs' second supplemental responses to the Committee Rogs and supplemental responses to North Star's interrogatory were served after the close of discovery and only after counsel for the moving parties called Plaintiffs' counsel to inquire—based on Plaintiffs' prior interrogatory responses and Plaintiffs' motion for class certification, neither of which mentioned Mrs. Moore at all—whether Plaintiffs were still pursuing a breach of fiduciary duty claim against Desiree Moore. Walters Decl. at ¶ 10; Ex. I (L. Smith letter to Plaintiffs' counsel re: second supplemental discovery responses).

[37] Walters Dec. Ex. K (Responses to Committee Rogs), Response No. 15; *see also* Ex. L (Plaintiffs' Supplemental Response to North Star Trust Company's Interrogatory No. 24) ("Desiree B. Moore is also liable as a co-fiduciary because she enabled the breaches described above and did not prevent or make reasonable efforts to remedy the breaches described above.").

[38] *See* Fed. R. Civ. Proc. 8(a); *see e.g. In re McKesson HBOC, Inc., ERISA Litig.*, No. C00-20030 RMW, 2002 U.S. Dist. LEXIS 19473 *56 (N.D. Cal. Sept. 30, 2002) (dismissing plaintiffs' co-fiduciary claim because their "allegation is insufficient to put each defendant on notice of what it is that he, she, or it has done that allegedly gives rise to liability").

-16-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    **IV.    CONCLUSION**

2           For the foregoing reasons, the Trust Defendants and Desiree B. Moore respectfully request

3    this Court grant their Motion for Summary Judgment on all claims asserted against them.

4

5    Dated:  June 26, 2008                          HENNIGAN, BENNETT & DORMAN LLP

6

7

8    By: _____
                                                          J. Michael Hennigan

9    Attorneys for Defendant William E. and Desiree

10   B. Moore Revocable Trust, Trustees of the
     William E. and Desiree B. Moore Revocable

11   Trust, Desiree B. Moore Revocable Trust,
     William E. Moore Marital Trust, William E.

12   Moore Generation-Skipping Trust and Desiree
     B. Moore

13

14   682794

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA