1  **HENNIGAN, BENNETT & DORMAN LLP**
   **J. Michael Hennigan (SBN 59491)**
2  **Robert L. Palmer (SBN 181462)**
   **Lauren A. Smith (SBN 94343)**
3  **Allison Chock (SBN 206015)**
   **Caroline Walters (SBN 239054)**
4  **865 South Figueroa Street, Suite 2900**
   **Los Angeles, California 90017**
5  **Telephone: (213) 694-1200**
   **Fax: (213) 694-1234**
6  **Email:**  hennigan@hbdlawyers.com
            palmer@hbdlawyers.com
7            smithl@hbdlawyers.com
            chocka@hbdlawyers.com
8            waltersc@hbdlawyers.com

9  Attorneys for Defendants William E. and Desiree B. Moore
   Revocable Trust; Trustees of The William E. and Desiree B. Moore
10 Revocable Trust; Desiree B. Moore Revocable Trust;
   William E. Moore Marital Trust; William E. Moore
11 Generation-Skipping Trust; and Desiree Moore

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14            SAN FRANCISCO AND OAKLAND DIVISION

15 THOMAS FERNANDEZ, LORA SMITH and          ) Case No. C 06-07339 CW
   TOSHA THOMAS, individually and on behalf of a )
16 class of all other persons similarly situated,  )
                                                 )
17                          Plaintiff,           ) **[REDACTED] DECLARATION**
                                                 ) **OF CAROLINE M. WALTERS IN**
18             vs.                               ) **SUPPORT OF MOTION FOR**
                                                 ) **SUMMARY JUDGMENT BY**
19 K-M INDUSTRIES HOLDING CO., INC.; K-M        ) **DEFENDANTS WILLIAM E. AND**
   INDUSTRIES HOLDING CO., INC. ESOP PLAN       ) **DESIREE B. MOORE**
20 COMMITTEE; WILLIAM E. AND DESIREE B.         ) **REVOCABLE TRUST,**
   MOORE REVOCABLE TRUST; TRUSTEES OF           ) **TRUSTEES OF THE WILLIAM E.**
21 THE WILLIAM E. AND DESIREE B. MOORE          ) **AND DESIREE B. MOORE**
   REVOCABLE TRUST; CIG ESOP PLAN              ) **REVOCABLE TRUST, DESIREE**
22 COMMITTEE; NORTH STAR TRUST COMPANY;         ) **B. MOORE REVOCABLE TRUST,**
   DESIREE B. MOORE REVOCABLE TRUST;            ) **WILLIAM E. MOORE MARITAL**
23 WILLIAM E. MOORE MARITAL TRUST;              ) **TRUST, WILLIAM E. MOORE**
   WILLIAM E. MOORE GENERATION-SKIPPING         ) **GENERATION-SKIPPING TRUST**
24 TRUST; and DESIREE MOORE, BOTH IN HER        ) **AND DESIREE B. MOORE**
   INDIVIDUAL CAPACITY AND AS TRUSTEE OF        )
25 THE WILLIAM E AND DESIREE B. MOORE           )
   REVOCABLE TRUST'S SUCCESSOR TRUSTS           ) **DATE:**     July 31, 2008
26 NAMED ABOVE,                                 ) **TIME:**     2:00 p.m.
                                                 ) **CTRM:**     2, 4th Floor
27                          Defendants.          ) **JUDGE:**    Hon. Claudia Wilkin
   _____ )
28 Case No. C 06-07339 CW                          DECL OF CAROLINE WALTERS IN SUPP OF
                                                    MOTION FOR SUMMARY JUDGMENT

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

I, Caroline M. Walters, declare and state as follows:

1.      I am an attorney admitted to practice before the Courts of the State of California.  I am an associate of the law firm of Hennigan, Bennett & Dorman LLP, counsel of record for William E. and Desiree B. Moore Revocable Trust, Trustee of the William E. and Desiree B. Moore Revocable Trust, Desiree B. Moore Revocable Trust, William E. Moore Marital Trust, William E. Moore Generation-Skipping Trust, and Desiree B. Moore.

2.      Attached hereto as Exhibit A is a true and correct copy of the Unanimous Written Consent of the Board of Directors of Kelly-Moore Paint Company, Inc. dated September 30, 1998, bates stamped KMH 003119 – KMH 003120.

3.      Attached hereto as Exhibit B is a true and correct copy of the ESOP Stock Purchase Agreement dated October 13, 1998, bates stamped MK001589 – MK001598, and introduced as Deposition Exhibit 3.

4.      Attached hereto as Exhibit C is a true and correct copy of the Evaluation of the Common Stock of Kelly-Moore Paint Company, Inc. as of July 31, 1998 by B. J. Brooks, bates stamped KMH 001439 – KMH 001476, and introduced as Deposition Exhibit 9.

5.      Attached hereto as Exhibit D is a true and correct copy of a letter dated October 12, 1998 from B. J. Brooks updating the evaluation of the common stock of Kelly Moore Paint Company, Inc., bates stamped KMH 001367 – KMH 001370, and introduced as Deposition Exhibit 55.

6.      Attached hereto as Exhibit E is a true and correct copy of the ESOP Stock Purchase Agreement dated October 18, 1999, bates stamped CIG 001870 – CIG 001878, and introduced as Deposition Exhibit 25.

7.      Attached hereto as Exhibit F is a true and correct copy of the K-M Industries Holding Co., Inc. Class I Stock Valuation as of June 30, 1999 by Duff & Phelps, LLC, bates stamped KMH 005817 – KMH 005870, and introduced as Deposition Exhibit 18.

Case No. C 06-07339 CW

DECL OF CAROLINE WALTERS IN SUPP OF MOTION FOR SUMMARY JUDGMENT

8.      Attached hereto as Exhibit G is a true and correct copy of a letter dated October 18, 1999 from Duff & Phelps, LLC updating the valuation of the K-M Industries Holding Co., Inc. I-Stock, bates stamped CIG 008319 – CIG 008320, and introduced as Deposition Exhibit 139.

9.      Attached hereto as Exhibit H is a true and correct copy of the Trustee Engagement Agreement between North Star Trust Company and K-M Industries Holding Co., Inc., dated April 22, 2003, bates stamped MT 000543 – MT 000551, and introduced as Deposition Exhibit 255.

10.      On Friday, June 6, 2008, Lauren Smith and I called Plaintiffs' counsel, Todd Jackson, to confirm that Plaintiffs were no longer alleging breach of fiduciary duty claims against Desiree Moore based on Plaintiffs' responses to contention interrogatories and their class certification motion. Plaintiffs' supplemental responses to both K-M Industries Holding Co, Inc. and K-M Industries Holding Co., Inc. ESOP Committee's contention interrogatories, and Plaintiffs' response to North Star Trust Company's contention interrogatory did not identify any factual basis for alleging a breach of fiduciary duty claim against Mrs. Moore. Plaintiffs' motion for class certification also did not mention Mrs. Moore in connection with their allegations relating to breach of fiduciary duty. Mr. Jackson indicated to us that he would review the interrogatories and respond to our request for confirmation. Subsequently, Plaintiffs supplemented their already-supplemented responses to the Committee's interrogatories and supplemented their response to North Star's interrogatory. Attached hereto as Exhibit I is a true and correct copy of a letter from Lauren Smith to Todd Jackson, dated June 11, 2008, regarding Plaintiffs' second supplemental discovery responses.

11.      Attached hereto as Exhibit J is a true and correct copy of Plaintiffs' Supplemental Responses to Defendant K-M Industries Holding Co., Inc.'s First Set of Interrogatories to Plaintiffs.

12.      Attached hereto as Exhibit K is a true and correct copy of Plaintiffs' Second Supplemental Responses to Defendant K-M Industries Holding Co., Inc. ESOP Plan Committee's First Set of Interrogatories to Plaintiffs.

///

///

///

Case No. C 06-07339 CW

DECL OF CAROLINE WALTERS IN SUPP OF
MOTION FOR SUMMARY JUDGMENT

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1        13.    Attached hereto as Exhibit L is a true and correct copy of Plaintiffs' Supplemental

2    Response to Interrogatory No. 24 of Defendant North Star Trust Company's First Set of

3    Interrogatories to Plaintiffs.

4        I declare under penalty of perjury under the laws of the United States of America that the

5    foregoing is true and correct.

6        Executed this 26th day of June, 2008 at Los Angeles, California.

7

8                        Caroline M. Walters

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-4-

DECL OF CAROLINE WALTERS IN SUPP OF
MOTION FOR SUMMARY JUDGMENT

# EXHIBIT A

# UNANIMOUS WRITTEN CONSENT
## OF THE BOARD OF DIRECTORS OF
### KELLY-MOORE PAINT COMPANY, INC.

We, the undersigned, constituting the entire Board of Directors of Kelly-Moore Paint Company, Inc., a California corporation ("Corporation"), unanimously adopt, approve and consent to the following resolutions:

*WHEREAS*, the directors have reviewed and approved the President's proposal for the recapitalization of the authorized shares of the Corporation in accordance with a plan for the establishment of Employee Stock Ownership Plans related to the first tier wholly-owned subsidiaries of the Corporation, the existing subsidiary known as California Capital Insurance Company and a newly formed subsidiary that will own the paint and paint-related operations of the Corporation and bear the corporate name currently held by the Corporation, Kelly-Moore Paint Company, Inc., and the renaming of the Corporation as "K-M Industries Holding Company, Inc." Therefore, it is hereby

*RESOLVED*, the officers and directors of the corporation are authorized take all action and prepare all documents necessary to form a subsidiary to which the paint and paint-related operations of the Corporation will be transferred, including the preparation and filing of Articles of Incorporation, the preparation of appropriate Bylaws and the issuance of shares. In particular, among the assets to be transferred to the new subsidiary will be the Corporation's name, "Kelly-Moore Paint Company, Inc." Further, the officers and directors of the Corporation are authorized to take all action and prepare all documents necessary to complete the transfer of the assets of the paint and paint-related operations of the Corporation to the new subsidiary in exchange for the issuance of 10,000 of no par value common stock pursuant to the Agreement referred to below.

*RESOLVED FURTHER*, that the following Amended and Restated Articles of Incorporation and Amended Bylaws of the Corporation are approved in the form set forth in Exhibits A and B, respectively, attached hereto.

*RESOLVED FURTHER*, that, subject to approval by the required vote of the shareholders of the Corporation, the officers and directors of the corporation are authorized to take all action and to sign all documents necessary to execute the Amended and Restated Articles of Incorporation and Amended Bylaws of the Corporation.

*RESOLVED FURTHER,* that the officers of this Corporation and/or their successors, shall execute any and all necessary documents to effectuate the plan and the transfer of assets under the terms of the Asset Purchase Agreement, attached hereto as Exhibit C.

s:\mmaier\kmp\542Pcg40261.doc (Ted Hannig)

**RESOLVED FURTHER,** that the directors approve and consent to the entering into the agreements by its subsidiary, to then be known as "Kelly-Moore Paint Company, Inc.", to facilitate the financing of an ESOP, including those documents prepared by Prudential Insurance Company of America, including without implied limitation, documents pertaining to the Note Purchase, Private Shelf and Revolving Credit Agreement.

**RESOLVED FURTHER**, that effective October 1, 1998, the Officers of the Corporation, then to be known as K-M Industries Holding Co., Inc. shall be:

William E. Moore, President (and Chairman of the Board)
Desiree B. Moore, Vice President
Stephen A. Ferrari, Secretary and Chief Financial Officer (Treasurer)

This consent is executed pursuant to Section 307(b) of the California Corporations Code and Article 3, Section 13, of the Bylaws of this Corporation, which authorize taking action by the Board of Directors by unanimous written consent without a meeting and is effective September 30, 1998.   This Consent may be executed in counterpart.


William E. Moore, Director/Chairman


Desiree B. Moore


Christine M.  McCall


Joseph P. Cristiano


Stephen A. Ferrari

x:\casac\kmp3829\cp0162.doc (Ted Hannig)

# EXHIBIT B

## ESOP STOCK PURCHASE AGREEMENT

THIS AGREEMENT, entered into this thirteenth day of October, 1998, by and among William E. Moore as trustee of the Kelly-Moore Paint Company, Inc. Employee Stock Ownership Trust (hereinafter referred to as the "Trustee"), the William E. and Desiree B. Moore 1990 Revocable Trust, as Amended, William E. Moore and Desiree B. Moore, Trustees (hereinafter referred to as the "Seller" or "Selling Shareholder"), and Kelly-Moore Paint Company, Inc., a California corporation (hereinafter referred to as the "Company"),

## WITNESSETH:

WHEREAS, Trustee is the trustee of the Kelly-Moore Paint Company, Inc. Employee Stock Ownership Plan and related Trust (hereinafter referred to as "Plan") established by the Company to be effective as of January 1, 1998, and intended to be qualified as an employee stock ownership plan as defined in Section 4975(e)(7) of the Internal Revenue Code, a stock bonus plan under Section 401(a) of the Internal Revenue Code, and exempt from income tax under Section 501(a) of the Internal Revenue Code; and

WHEREAS, Selling Shareholder owns all of the issued and outstanding shares of K-M Industries Holding Co., Inc., a California corporation (the "Parent"); and

WHEREAS, Selling Shareholder desires to sell Thirty-three Million Seven Hundred Forty-five Four Hundred Fifty-five (33,745,455) shares of the Parent's Class P-B Stock (the "Shares") to the Trustee; and

1

EXHIBIT
3
Stritmatter  3-12-08

MK001589

WHEREAS, Trustee wishes to purchase from Selling Shareholder, and Selling Shareholder wishes to sell to Trustee the Shares for the benefit of the employees of the Company who are participants in the Plan; and

WHEREAS, the parties desire to design said purchase and sale so that the Selling Shareholder will be entitled to the benefits of Section 1042 of the Internal Revenue Code; and

WHEREAS, the Company desires to provide a means for its employees to acquire a proprietary interest in it as an incentive for them to advance the business and affairs of the Company;

NOW, THEREFORE, in consideration of the promises and the respective agreements hereinafter set forth, Selling Shareholder and Trustee hereby agree as follows:

1.    Sale of Stock. As of this date and subject to the terms and conditions of this Agreement, Selling Shareholder does hereby sell and deliver to Trustee, and Trustee does hereby purchase from the Selling Shareholder, the Shares.

2.    Purchase Price.7

(a)    In consideration for the transfer of the Shares as provided in Section 1, Trustee shall pay to Selling Shareholder an amount equal to Six and Eight Hundred Seventy-Five Thousandths Dollars ($6.875) per share, or a total of Two Hundred Thirty-two Million and 00/100 Dollars ($232,000,000.00). The Purchase Price shall be paid to Selling Shareholder in cash at the closing.

(b)    The purchase price in Section 2(a) hereof is not more than the fair market valuation established as of the date of this Agreement. In the event that there is a final determination by the Internal Revenue Service, a court of competent jurisdiction or otherwise that the

2



MK001590

fair market value of the Shares as of this date is less than the Purchase Price paid by the Trustee, then Selling Shareholder shall transfer to the Trustee an amount of cash, or transfer to the Trustee shares of the Parent's Class P-B Stock, or any combination thereof, equal in value to the difference between the Purchase Price and said fair market value for all such Shares. In the event that cash and/or shares of the Parent's Class P-B Stock are paid and/or transferred to the Trustee under this provision, such shares shall be valued at their fair market value as of the date hereof and interest at a reasonable rate from the date hereof to the date of payment shall be paid by Selling Shareholder on the amount of cash paid.

3.    Representations and Warranties of Selling Shareholder. The Selling Shareholder, to induce the Trustee to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties.

(a)    On the date hereof, the Shares being sold hereunder will be validly issued and outstanding, fully paid and nonassessable without any liens or encumbrances whatsoever upon or against such shares; and there will be in existence no limitations or restrictions of any kind (other than restrictions under a buy/sell agreement among Company shareholders) on the right of Selling Shareholder to sell such Shares in accordance with the terms hereof. No options, warrants, agreements, or similar rights created by the Company for the issue or sale of any stock or securities of any kind or for the purchase thereof by any person other than pursuant to or as disclosed by this Agreement will then be in existence.

(b)    Selling Shareholder is the owner, free and clear of any encumbrances, of the Shares being sold hereunder and has the power and authority to enter into this Agreement and

3

MK001591

to perform the same, and is not a party to or obligated under or restricted by any contract or other provision which might be violated by making and performing this Agreement.

(c)    Selling Shareholder has been the owner of the Shares for more than three (3) years from the date hereof (including any tacking period under Section 1041 of the Internal Revenue Code) and did not receive the Shares as a distribution from a plan qualified under Section 401(a) of the Internal Revenue Code or pursuant to an option or other right to acquire stock to which Sections 83, 422, 422A, 423 or 424 of the Internal Revenue Code applies.

(d)    Selling Shareholder will file with the Internal Revenue Service the appropriate elections to have Section 1042 of the Internal Revenue Code apply to all or a portion of the sale of Shares contemplated hereby. Said elections shall be filed not later than the last day prescribed by law (including extensions thereof) for filing Selling Shareholder's federal income tax return for the taxable year in which the sale occurs and Selling Shareholder shall deliver to the Company a copy of such elections not later than the date on which the Selling Shareholder files its federal income tax return for such taxable year. Selling Shareholder shall advise Trustee in writing as to the number of Shares with respect to which it then intends to elect the provisions of said Section 1042.

4.    Representations and Warranties of Trustee. Trustee, to induce Selling Shareholder to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties:

(a)    Trustee is trustee of the Plan pursuant to an Agreement validly created and existing under the laws of the State of California.

4

MK001592

(b)     Trustee has ful' power and is duly authorized by law and the Trust Agreement to obligate itself to pay moneys for lawful trust purposes, including specifically but not in limitation thereof, for the purpose of acquiring shares of the Parent.

(c)     Proper action has been taken by Trustee to authorize the execution of this Agreement and of any and all agreements or instruments necessary to effectuate the transactions contemplated hereby.

5.     Representations and Warranties of Company.  Company, to induce the Selling Shareholder to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties:

(a)     The Company is a corporation duly organized and existing and in good standing under the laws of the State of California having the corporate power to carry on its business as it is now being conducted and is duly qualified to do business and is in good standing in all other states where it is doing business.

(b)     Immediately after the purchase of the Shares by Trustee as contemplated hereby, Trustee will own at least thirty percent (30%) of the total value of the then outstanding stock of the Parent.

(c)     None of the Shares to be purchased by Trustee hereunder will be allocated under the Plan to the accounts of or for the benefit of the Selling Shareholder, any person who is a member of the family of the Selling Shareholder (within the meaning of Section 267(c)(4) of the Internal Revenue Code), or any other person who owns (after application of Section 318(a) of the Internal Revenue Code) more than twenty-five percent (25%) in value of any class of

5

MK001593

outstanding "employer securities" of the Parent. In the administration of the Plan, the Company will comply with the requirements of Section 409(n) of the Internal Revenue Code.

(d)    Upon execution of this Agreement or as soon thereafter as is reasonably practical, the Company shall execute and deliver to the Selling Shareholder the verified written statements required by Section 1042(b)(3) of the Internal Revenue Code pursuant to which the Company consents to the application of Section 4978(a) and 4979A of the Internal Revenue Code in the event that either (i) the Trustee disposes of any of the Shares during the three (3) year period from the date of purchase, other than as a distribution to Participants or otherwise as described in said Section 4978(a) or (ii) there is a prohibited allocation, as defined in Section 4979A of the Internal Revenue Code.

6.    <u>Obligations of Trustee</u>. Selling Shareholder understands and agrees that the execution by the Trustee of this Agreement and of any other instrument or agreement in connection herewith is done in Trustee's capacity as Trustee of the Plan and under and pursuant to the instructions and authorization provided for under the Trust Agreement pursuant to which the Trust was created and that the obligations and liabilities of Trustee in connection therewith are limited to the assets of the Trust.

7.    <u>Indemnification</u>. Selling Shareholder agrees to indemnify and hold harmless Trustee, and Trustee agrees to hold Selling Shareholder harmless, from any and all claims, actions and suits, whether groundless or otherwise, and from and against any and all liabilities, losses, damages, costs, charges, counsel fees and other expenses of every nature and character resulting or arising therefrom or resulting from or arising out of the breach of any representation, agreement or warranty made under or pursuant to this Agreement.

6

MK001594

8.    <u>Survival of Representations, Warranties and Agreements</u>.  All statements contained in any certificate, opinion or other instrument delivered by or on behalf of any party pursuant hereto or in connection with the transactions and warranties by said party herein shall survive the execution of this Agreement.  All representations and warranties shall survive the execution of this Agreement and any investigation at any time made by or on behalf of any party hereto.  Any party against whom a claim shall arise after the execution hereof shall be notified promptly in writing of any such claim.

9.    <u>Notices, etc</u>.  All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered or mailed by registered or certified mail to the addresses herein designated or at such other address as may be designated in writing by notice given by registered or certified mail to the other parties:

If to Selling Shareholder, at:

> 303 Olive Hill Lane
> Woodside, CA  94062
> Attn:  William E. Moore

If to Trustee, at:

> Kelly-Moore Paint Company, Inc. Employee Stock Ownership
> Plan and Trust
> Attn.: Trustee
> 987 Commercial Street
> San Carlos, CA  94070

If to the Company, at:

> Kelly-Moore Paint Company, Inc.
> Attn.: President
> 987 Commercial Street
> San Carlos, CA  94070

7

MK001595

10.     <u>Amendments and Entire Agreement</u>. This instrument contains the entire agreement between the parties hereto with respect to the transactions contemplated hereby, and may be changed or modified only by an instrument duly executed by the parties hereto.

11.     <u>Parties in Interest</u>. This Agreement shall inure to the benefit of and be binding upon the parties named herein and their respective successors and assigns; nothing in this Agreement, expressed or implied, is intended to confer upon any other person any rights or remedy under or by reason of this Agreement.

12.     <u>Law to Govern</u>. This Agreement shall be construed and governed in accordance with the laws of the State of California.

13.     <u>Section and Other Headings</u>. The section and other headings contained in this Agreement are for reference purposes only and shall not affect the interpretation or meaning of this Agreement.

14.     <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

8

MK001596

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

WILLIAM E. AND DESIREE B. MOORE 1990
REVOCABLE TRUST, AS AMENDED:


_____
William E. Moore, Trustee


_____
Desiree B. Moore, Trustee


TRUSTEE OF THE KELLY-MOORE PAINT
COMPANY, INC. EMPLOYEE STOCK
OWNERSHIP TRUST:


_____
William E. Moore, Trustee


KELLY-MOORE PAINT COMPANY, INC.


_____
Joseph P. Cristiano, President


_____
Stephen A. Ferrari, Secretary


9

MK001597

10/08/98  14:36 FAX 415 362 3268      Menke & Associates. Inc.                      ☑002/004

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**WILLIAM E. AND DESIREE B. MOORE 1990 REVOCABLE TRUST, AS AMENDED:**

_____

William E. Moore, Trustee

_____

Desiree B. Moore, Trustee

**TRUSTEE OF THE KELLY-MOORE PAINT COMPANY, INC. EMPLOYEE STOCK OWNERSHIP TRUST:**

_____

William E. Moore, Trustee

**KELLY-MOORE PAINT COMPANY, INC.**

_____

Joseph P. Cristiano, President

_____

Stephen A. Ferrari, Secretary

9

MK001598

# EXHIBIT C

B.J. BROOKS
114 Sansome Street, Suite 808
San Francisco, California 94104
(415) 362-9900
Fax: (415) 362-6492

Evaluation
of the
Common Stock
of

KELLY-MOORE PAINT COMPANY, INC.

as of
July 31, 1998

Prepared by:
B. J. BROOKS, ASA
August 1998



EXHIBIT
9
Stritmatter    3-12-08

Corporate Valuations                                    Financial Consulting

KMH 001439

**CONFIDENTIAL**

REDACTED

KMH 001440

**CONFIDENTIAL**

REDACTED

KMH 001441

**CONFIDENTIAL**

REDACTED

-1-

KMH 001442

CONFIDENTIAL

REDACTED

KMH 001443

CONFIDENTIAL

REDACTED

-3-

KMH 001444

B.J. BROOKS

## DESCRIPTION AND HISTORY OF THE COMPANY

### Summary

Kelly-Moore Paint Company, Inc., of San Carlos, California, designs and manufactures a complete line of architectural paints. The paints and purchased paint-related products are marketed through Company stores, primarily to professional painting contractors. The Company also currently owns two insurance companies: California Insurance Group (CIG) and K-M Insurance Company; and also owns Montana Operations, a cattle ranch in Montana. The proposed recapitalization anticipates that CIG and the Montana operations will be spun out of the Company. Consequently, the following paragraphs concern only the paint operations, referred to as Kelly-Moore Paints (KMP), and K-M Insurance Company (KMI), a captive insurer providing automobile, general liability and workers' compensation coverage for KMP.

The Company was founded as a partnership in 1946 by Mr. William Moore and Mr. William Kelly and incorporated in 1952. The Company has grown and prospered over the years. At the present time, the Company owns and operates four manufacturing plants and markets through approximately 145 company stores (some owned, some leased) throughout the Southwest and West Coast states. Total revenues during 1997 were almost $270 million. KMP is the largest privately held paint company in the United States.

The Company has operated profitably and has financed its growth with retained earnings. The Company has no funded debt. KMP is privately held by one shareholder.

### Products and Services

KMP manufactures and markets water-based and oil based exterior and interior paints; available in gloss, semi-gloss and flat finishes. The Company also manufactures and markets a limited range of stain and varnish products. The Company purchases and markets a wide variety of paint related products, such as Rustoleum, solvents, varnishes, spray equipment, masking tape, ladders, brushes, rollers, buckets, gloves, drop cloths, wallpaper and others. An estimated 80% of the total sales volume derives from paint products manufactured in-house.

The Company considers its products to be of the highest quality, and is continually alert to the need to maintain and improve quality and service. An important competitive advantage is the ability and willingness to match colors provided by customers — and the ability to guarantee that any batch of a given color will match previous batches. The corporate ability to manufacture and deliver specified colors rapidly is an important service provided to customers.

The Company does not manufacture private label products for mass marketers or others. All paint products are sold under the Company names.

-4-

KMH 001445

**CONFIDENTIAL**

REDACTED

-5-

KMH 001446

B.J. BROOKS

#### Operations

The Company operates from four plants, as shown below:

| Location | Size | Comment |
|----------|------|---------|
| San Carlos, CA | 350M sq.ft. | Full line |
| Hurst, TX | 340M sq.ft. | Full line |
| Tempe, AZ | 44M sq.ft. | Full line |
| Seattle, WA | 47M sq.ft. | Limited line |

San Carlos was the original location of the Company. The Company began manufacturing paint in Texas in 1962, and the present Texas plant was finished in 1971. Hurst is between Dallas and Fort Worth and the plant serves the Southwest and Colorado. The Preservative Paint Co. in Seattle was purchased in 1994 and the Universal Paint Corporation in Tempe, Arizona was purchased in 1995. Both acquisitions were acquired as a way to acquire market presence in these two markets.

The Company has the ability to increase production, as may be required. Consequently, production capacity is not considered to be a constraint on the Company's growth.

Operations consist of standard paint-making processes: receiving and storing raw materials, mixing the raw materials into a wide variety of colors and types of paint, using additives when appropriate, testing for trueness and consistency of color and other variables, packaging, labeling, warehousing and shipping. The principal raw material is titanium dioxide, available from a number of suppliers. Other raw materials include a wide variety of extenders, pigments and other items. The Company has no "single vendor" problems due to the wide availability of standard raw materials.

The Company's stores typically vary in size from 5,000 to 8,000 square feet, and are generally larger than those of competitors. The extra space allows the stores to carry more inventory and is considered to provide a definite competitive advantage. Annual sales value per store varies from approximately $1 million to $3 million. $1 million is considered the threshold sales volume for profitable ongoing operations.

#### Other

The Company's corporate headquarters are in San Carlos, California, approximately 25 miles south of San Francisco.

The Company considers itself to be people-oriented and is continually conscious of the contribution of its employees to its continued success and prosperity. The individual store managers, for instance, are given considerable authority, and responsibility, for the operation of each location. There are approximately 2,200 employees, including 300 who are union members.

KMP has kept its manufacturing facilities up-to-date, and believes it is not unduly exposed to any EPA or similar contingencies.

-6-

KMH 001447

CONFIDENTIAL

REDACTED

-7-

KMH 001448

CONFIDENTIAL

REDACTED

-8-

KMH 001449

CONFIDENTIAL

REDACTED

-9-

KMH 001450

**CONFIDENTIAL**

REDACTED

-10-

KMH 001451

B.J. Brooks

CONFIDENTIAL

REDACTED

-11-

KMH 001452

**CONFIDENTIAL**

REDACTED

-12-

KMH 001453

CONFIDENTIAL

REDACTED

-13-

KMH 001454

CONFIDENTIAL

REDACTED

-14-

KMH 001455

**CONFIDENTIAL**

REDACTED

-15-

KMH 001456

**CONFIDENTIAL**

REDACTED

-16-

KMH 001457

CONFIDENTIAL

REDACTED

-17-

KMH 001458

**CONFIDENTIAL**

REDACTED

-18-

KMH 001459

**CONFIDENTIAL**

REDACTED

KMH 001460

CONFIDENTIAL

REDACTED

KMH 001461

**CONFIDENTIAL**

REDACTED

KMH 001462

CONFIDENTIAL

REDACTED

KMH 001463

**CONFIDENTIAL**

REDACTED

KMH 001464

**CONFIDENTIAL**

REDACTED

KMH 001465

**CONFIDENTIAL**

REDACTED

KMH 001466

CONFIDENTIAL

REDACTED

KMH 001467

**CONFIDENTIAL**

REDACTED

KMH 001468

**CONFIDENTIAL**

REDACTED

KMH 001469

**CONFIDENTIAL**

REDACTED

KMH 001470

**CONFIDENTIAL**

REDACTED

KMH 001471

CONFIDENTIAL

REDACTED

KMH 001472

**CONFIDENTIAL**

REDACTED

KMH 001473

**CONFIDENTIAL**

REDACTED

KMH 001474

B. J. BROOKS
114 Sansome Street, Suite 808
San Francisco, California 94104
(415) 362-9900
Fax: (415) 362-6492

EXPERIENCE

| | |
|---|---|
| 1975 to Present | Independent Financial Consultant – San Francisco |

Primary emphasis of consulting practice has been on the evaluation of the common stock and other securities of private companies for Employee Stock Ownership Trusts and Stock Bonus Plans, gift taxes, death taxes, mergers and acquisitions, issuance of stock options and restricted stock, litigation, marriage dissolution, partnership dissolution and other purposes. More than 900 written reports have been prepared for more than 250 individual clients.

Assignments have involved expert witness testimony at depositions and trial, as well as representation of clients before taxing authorities.

| | |
|---|---|
| 1972 to 1974 | BAY EQUITIES, INC. – San Francisco
President |

Managed Bay Equities, Inc., a private venture capital corporation owned by 16 pension fund clients of the Trust Department of the First National Bank of Chicago. BEI was founded to purchase BCIC's assets. At the end of 1974, BEI's $4 million portfolio consisted of investments in 12 technology-oriented companies.

Investigated, negotiated and completed new investments. Monitored and counseled individual investees, with particular emphasis on financial problems. Director of six investee companies.

| | |
|---|---|
| 1968 to 1972 | BOOTHE COMPUTER INVESTMENT CORPORATION – San Francisco
President |

Established and managed BCIC, a wholly-owned venture capital subsidiary of Boothe Computer Corp. Established policies and operating procedures; identified and analyzed appropriate investment opportunities; presented detailed recommendations; negotiated and completed investment transactions; monitored investee operations; terminated investment participations and administered all aspects of BCIC's operations. BCIC invested over $4-1/2 million in 14 companies during four years. Identified, evaluated and negotiated with prospective purchasers of BCIC resulting in the sale of BCIC's total portfolio to Bay Equities in 1972.

| | |
|---|---|
| 1961 to 1968 | CONTINENTAL CAPITAL CORPORATION – San Francisco
Vice President, Treasurer, Secretary |

Participated in all aspects of the management of Continental, a publicly-held Small Business Investment Company, as Continental's portfolio grew from less than $1 million to more than $10 million.

Corporate Valuations                                    Financial Consulting

KMH 001475

B.J. BROOKS

Resume - pg. 2

| | | |
|---|---|---|
| 1957 to 1961 | FIBREBOARD CORPORATION - San Francisco<br>Manager, Market Planning | |

Coordinated information, ideas and interests of the various operating departments - marketing research, sales, production and finance - to develop significant and practical long-range facilities plans.

| | |
|---|---|
| 1955 to 1957 | UNION CHEMICAL & MATERIAL CORPORATION - Chicago<br>Financial Analyst |

Analyzed merger possibilities and performed other staff financial work.

| | |
|---|---|
| 1950 to 1953 | UNION CARBIDE CORPORATION - New York<br>Copywriter |

Wrote advertising copy for the Linde Air Products Division of Union Carbide.

## EDUCATION

| | |
|---|---|
| 1953 to 1955 | Harvard University - M.B.A. in Business Administration,<br>Degree with Distinction |
| 1946 to 1950 | Yale University - B.S. in Economics,<br>Phi Beta Kappa |

## DIRECTORSHIPS AND PROFESSIONAL ACTIVITIES

| | | |
|---|---|---|
| Present | Senior Member: | American Society of Appraisers |
| | Director: | McGrath RentCorp<br>Fair, Isaac and Company, Incorporated<br>Lifetouch Inc. |
| Past | Trustee: | Continental Capital Liquidation Trust |
| | Instructor: | Golden Gate University<br>- Graduate level finance course |
| | Director: | California Tennis Club<br>ICOT Corporation<br>Information Magnetics Corporation<br>Metric Resources Corporation<br>Vector General, Inc. and other small companies |
| | President: | Western Association of SBICs (1964-65) |

## MILITARY EXPERIENCE

| | |
|---|---|
| 1945 to 1946 | U.S. Navy |

KMH 001476

# EXHIBIT  D

CONFIDENTIAL

REDACTED



EXHIBIT
55
Menke   3-21-08

KMH 001367

**CONFIDENTIAL**

REDACTED

KMH 001368

CONFIDENTIAL

REDACTED

KMH 001369

K-M INDUSTRIES HOLDING CO., INC.

Exhibit A

Selected Data
Guideline Companies

|  |  | SW | ICI | VC | PPG | LI | RPM |
|---|---|---|---|---|---|---|---|
| Stock Price: | 12/31/96 | $20 | $52 | $26-5/16 | $56-1/8 | $18-1/4 | $ 8-1/2 |
|  | 12/31/97 | 24-3/4 | 64-15/16 | 31-7/8 | 57-1/8 | 20-5/8 | 15-1/4 |
|  | 6/30/98 | 33-1/8 | 64-1/2 | 39-3/4 | 69-9/16 | 21-5/8 | 17 |
|  | 9/30/98 | 21-3/4 | 31-3/4 | 29-15/16 | 54-9/16 | 17-5/8 | 14-7/16 |
|  | 10/12/98 | 23-9/16 | 38-3/16 | 27-7/8 | 55-5/16 | 14-5/8 | .15 |
| Price/Earnings Multiple: | 12/31/97 | 18.8X | 22.8X | 21.4X | 14.6X | 17.5X | 17.9X |
|  | 6/30/98 | 21.9 | 22.6 | 25.2 | 16.9 | 17.0 | 21.3 |
|  | 9/30/98 | 14.1 | 12.9 | 18.6 | 13.6 | 13.5 | 17.2 |
|  | 10/12/98 | 15 | 12 | 17 | 14 | 12 | 18 |

NOTES:  -- Price/Earnings multiples are based upon figures for latest twelve months (LTM), not
          necessarily latest fiscal year.
        -- SW = The Sherwin Williams Company
           ICI = Imperial Chemical Industries PLC
           VC = Valspar Corporation
           PPG = PPG Industries, Inc.
           LI = Lilly Industries, Inc.
           RPM = RPM, Inc.

SOURCE:  -- Public information, primarily Media General IndustriScope and The Wall Street Journal.

KMH 001370

# EXHIBIT  E

<u>ESOP STOCK PURCHASE AGREEMENT</u>

THIS AGREEMENT, entered into this ___/8___ day of October, 1999, by and among

William E. Moore as trustee of the K-M Industries Holding Co., Inc. Employee Stock Ownership

Trust, formerly known as the Kelly-Moore Paint Company, Inc. Employee Stock Ownership

Trust (hereinafter referred to as the "Trustee"), the William E. and Desiree B. Moore 1990

Revocable Trust, as Amended, William E. Moore and Desiree B. Moore, Trustees (hereinafter

referred to as the "Seller" or "Selling Shareholder"), and K-M Industries Holding Co., Inc., a

California corporation (hereinafter referred to as the "Company"),

<u>W I T N E S S E T H:</u>

WHEREAS, Trustee is the trustee of the amended and restated K-M Industries Holding

Co., Inc. Employee Stock Ownership Plan and related Trust (hereinafter referred to as "Plan")

originally effective as of January 1, 1998, and amended and restated effective as of July 16,

1999, and intended to be qualified as an employee stock ownership plan as defined in Section

4975(e)(7) of the Internal Revenue Code, a stock bonus plan under Section 401(a) of the Internal

Revenue Code, and exempt from income tax under Section 501(a) of the Internal Revenue Code;

and

WHEREAS, Selling Shareholder owns all of the issued and outstanding Class I-B shares

of the Company; and

1

**EXHIBIT**

25

Cazzolla   3-19-08

WHEREAS, Selling Shareholder desires to sell eight million four hundred thousand

(8,400,000) shares of the Company's Class I-B Stock (the "Shares") to the Trustee; and

WHEREAS, Trustee wishes to purchase from Selling Shareholder, and Selling

Shareholder wishes to sell to Trustee the Shares for the benefit of the employees of the Company

who are participants in the Plan; and

WHEREAS, the parties desire to design said purchase and sale so that the Selling

Shareholder will be entitled to the benefits of Section 1042 of the Internal Revenue Code; and

WHEREAS, the Company desires to provide a means for its employees to acquire a

proprietary interest in it as an incentive for them to advance the business and affairs of the

Company;

NOW, THEREFORE, in consideration of the promises and the respective agreements

hereinafter set forth, Selling Shareholder and Trustee hereby agree as follows:

1.    Sale of Stock. As of this date and subject to the terms and conditions of this

Agreement, Selling Shareholder does hereby sell and deliver to Trustee, and Trustee does hereby

purchase from the Selling Shareholder, the Shares.

2.    Purchase Price.7

(a)    In consideration for the transfer of the Shares as provided in Section 1,

Trustee shall pay to Selling Shareholder an amount equal to Six and 55/100 Dollars ($6.55) per

share rounded, or a total of Fifty-five Million and 00/100 Dollars ($55,000,000.00).  Purchase

Price shall be paid to Selling Shareholder in cash at the closing.

(b)    The purchase price in Section 2(a) hereof is not more than the fair market

valuation established as of the date of this Agreement.  In the event that there is a final determi-

2

CIG 001871

nation by the Internal Revenue Service, a court of competent jurisdiction or otherwise that the fair market value of the Shares as of this date is less than the Purchase Price paid by the Trustee, then Selling Shareholder shall transfer to the Trustee an amount of cash, or transfer to the Trustee shares of the Company's Class P-B Stock, or any combination thereof, equal in value to the difference between the Purchase Price and said fair market value for all such Shares. In the event that cash and/or shares of the Company's Class P-B Stock are paid and/or transferred to the Trustee under this provision, such shares shall be valued at their fair market value as of the date hereof and interest at a reasonable rate from the date hereof to the date of payment shall be paid by Selling Shareholder on the amount of cash paid.

3.    <u>Representations and Warranties of Selling Shareholder</u>. The Selling Shareholder, to induce the Trustee to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties.

(a)    On the date hereof, the Shares being sold hereunder will be validly issued and outstanding, fully paid and nonassessable without any liens or encumbrances whatsoever upon or against such shares; and there will be in existence no limitations or restrictions of any kind (other than restrictions under a buy/sell agreement among Company shareholders) on the right of Selling Shareholder to sell such Shares in accordance with the terms hereof. No options, warrants, agreements, or similar rights created by the Company for the issue or sale of any stock or securities of any kind or for the purchase thereof by any person other than pursuant to or as disclosed by this Agreement will then be in existence.

(b)    Selling Shareholder is the owner, free and clear of any encumbrances, of the Shares being sold hereunder and has the power and authority to enter into this Agreement and

3

CIG 001872

to perform the same, and is not a party to or obligated under or restricted by any contract or other provision which might be violated by making and performing this Agreement.

(c)    Selling Shareholder has been the owner of the Shares for more than three (3) years from the date hereof (including any tacking period under Section 1041 of the Internal Revenue Code) and did not receive the Shares as a distribution from a plan qualified under Section 401(a) of the Internal Revenue Code or pursuant to an option or other right to acquire stock to which Sections 83, 422, 422A, 423 or 424 of the Internal Revenue Code applies.

(d)    Selling Shareholder will file with the Internal Revenue Service the appropriate elections to have Section 1042 of the Internal Revenue Code apply to all or a portion of the sale of Shares contemplated hereby.  Said elections shall be filed not later than the last day prescribed by law (including extensions thereof) for filing Selling Shareholder's federal income tax return for the taxable year in which the sale occurs and Selling Shareholder shall deliver to the Company a copy of such elections not later than the date on which the Selling Shareholder files its federal income tax return for such taxable year.  Selling Shareholder shall advise Trustee in writing as to the number of Shares with respect to which it then intends to elect the provisions of said Section 1042.

4.    Representations and Warranties of Trustee.  Trustee, to induce Selling Shareholder to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties:

(a)    Trustee is trustee of the Plan pursuant to an Agreement validly created and existing under the laws of the State of California.

4

CIG 001873

(b)     Trustee has full power and is duly authorized by law and the Trust Agreement to obligate itself to pay moneys for lawful trust purposes, including specifically but not in limitation thereof, for the purpose of acquiring shares of the Parent.

(c)     Proper action has been taken by Trustee to authorize the execution of this Agreement and of any and all agreements or instruments necessary to effectuate the transactions contemplated hereby.

5.     <u>Representations and Warranties of Company</u>.  Company, to induce the Selling Shareholder to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties:

(a)     The Company is a corporation duly organized and existing and in good standing under the laws of the State of California having the corporate power to carry on its business as it is now being conducted and is duly qualified to do business and is in good standing in all other states where it is doing business.

(b)     Immediately after the purchase of the Shares by Trustee as contemplated hereby, Trustee will own at least thirty percent (30%) of the total value of the then outstanding stock of the Company.

(c)     None of the Shares to be purchased by Trustee hereunder will be allocated under the Plan to the accounts of or for the benefit of the Selling Shareholder, any person who is a member of the family of the Selling Shareholder (within the meaning of Section 267(c)(4) of the Internal Revenue Code), or any other person who owns (after application of Section 318(a) of the Internal Revenue Code) more than twenty-five percent (25%) in value of any class of

5

CIG 001874

outstanding "employer securities" of the Company. In the administration of the Plan, the Company will comply with the requirements of Section 409(n) of the Internal Revenue Code.

(d)     Upon execution of this Agreement or as soon thereafter as is reasonably practical, the Company shall execute and deliver to the Selling Shareholder the verified written statements required by Section 1042(b)(3) of the Internal Revenue Code pursuant to which the Company consents to the application of Section 4978(a) and 4979A of the Internal Revenue Code in the event that either (i) the Trustee disposes of any of the Shares during the three (3) year period from the date of purchase, other than as a distribution to Participants or otherwise as described in said Section 4978(a) or (ii) there is a prohibited allocation, as defined in Section 4979A of the Internal Revenue Code.

6.     Obligations of Trustee. Selling Shareholder understands and agrees that the execution by the Trustee of this Agreement and of any other instrument or agreement in connection herewith is done in Trustee's capacity as Trustee of the Plan and under and pursuant to the instructions and authorization provided for under the Trust Agreement pursuant to which the Trust was created and that the obligations and liabilities of Trustee in connection therewith are limited to the assets of the Trust.

7.     Indemnification. Selling Shareholder agrees to indemnify and hold harmless Trustee, and Trustee agrees to hold Selling Shareholder harmless, from any and all claims, actions and suits, whether groundless or otherwise, and from and against any and all liabilities, losses, damages, costs, charges, counsel fees and other expenses of every nature and character resulting or arising therefrom or resulting from or arising out of the breach of any representation, agreement or warranty made under or pursuant to this Agreement.

6

CIG 001875

8.    _Survival of Representations. Warranties and Agreements_.  All statements contained in any certificate, opinion or other instrument delivered by or on behalf of any party pursuant hereto or in connection with the transactions and warranties by said party herein shall survive the execution of this Agreement.  All representations and warranties shall survive the execution of this Agreement and any investigation at any time made by or on behalf of any party hereto.  Any party against whom a claim shall arise after the execution hereof shall be notified promptly in writing of any such claim.

9.    _Notices. etc_.  All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered or mailed by registered or certified mail to the addresses herein designated or at such other address as may be designated in writing by notice given by registered or certified mail to the other parties:

If to Selling Shareholder, at:

    303 Olive Hill Lane
    Woodside, CA  94062
    Attn:  William E. Moore

If to Trustee, at:

    K-M Industries Holding Co., Inc. Employee Stock Ownership Plan
    and Trust
    Attn.: Trustee
    987 Commercial Street
    San Carlos, CA  94070

If to the Company, at:

    K-M Industries Holding Co., Inc.
    Attn.: President
    987 Commercial Street
    San Carlos, CA  94070

7

CIG 001876

10.    <u>Amendments and Entire Agreement</u>.  This instrument contains the entire agreement between the parties hereto with respect to the transactions contemplated hereby, and may be changed or modified only by an instrument duly executed by the parties hereto.

11.    <u>Parties in Interest</u>.  This Agreement shall inure to the benefit of and be binding upon the parties named herein and their respective successors and assigns; nothing in this Agreement, expressed or implied, is intended to confer upon any other person any rights or remedy under or by reason of this Agreement.

12.    <u>Law to Govern</u>.  This Agreement shall be construed and governed in accordance with the laws of the State of California.

13.    <u>Section and Other Headings</u>.  The section and other headings contained in this Agreement are for reference purposes only and shall not affect the interpretation or meaning of this Agreement.

14.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

8

CIG 001877

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly

executed as of the day and year first above written.

WILLIAM E. AND DESIREE B. MOORE 1990
REVOCABLE TRUST, AS AMENDED:


_William E. Moore_____
William E. Moore, Trustee


_Desiree B. Moore_____
Desiree B. Moore, Trustee


TRUSTEE OF THE K-M INDUSTRIES
HOLDING CO., INC. EMPLOYEE STOCK
OWNERSHIP TRUST:


_William E. Moore_____
William E. Moore, Trustee


K-M INDUSTRIES HOLDING CO., INC.


_William E. Moore_____
William E. Moore, President


9

CIG 001878

# EXHIBIT  F

# DUFF&PHELPS, LLC

2029 CENTURY PARK EAST, SUITE 820  •  LOS ANGELES, CA 90067
310/284-8008  •  FAX 310/284-8130

## K-M INDUSTRIES HOLDING CO., INC.
## CLASS I STOCK

### VALUATION AS OF

### JUNE 30, 1999

*The information contained herein is of a confidential nature and is intended for the exclusive use of the persons or firm to whom it is furnished by us. Reproduction, publication, or dissemination of portions hereof may not be made without prior approval of Duff & Phelps, LLC.*

EXHIBIT

*18*

Cazzolla     3-19-08

KMH 005817

# K-M Industries Holding Co., Inc.
## Table of Contents

I.      Engagement Overview

II.     Business Overview and Risk Analysis

III.    Economic Overview

IV.     Financial Overview

V.      CCIC Valuation
        Comparable Company Analysis

VI.     KMI's Classes P and I Tracking Stock

VII.    Discount for Lack of Marketability

VIII.   Overview on Tracking Stock

IX.     Value Conclusion

KMH 005818

CONFIDENTIAL

REDACTED

- 1 -

KMH 005819

CONFIDENTIAL

REDACTED

- 2 -

KMH 005820

CONFIDENTIAL

REDACTED

- 3 -

KMH 005821

K-M INDUSTRIES HOLDING CO., INC.
BUSINESS OVERVIEW & RISK ANALYSIS

| | |
|---|---|
| Employees | The Company has approximately 274 employees. Approximately 170 of these employees are located at the Company's headquarters in Monterey. |
| Claims | Whenever possible, the Company utilizes internal staff in claims operations. Each branch is staffed with a claims manager and at least one adjuster. To meet unusual demand requirements, however, independent adjusters are often utilized. The Company has also outsourced all legal counsel since in-house counsel was eliminated in July 1997. |
| Management | The Company and its subsidiaries are all under the same general management. There have been no recent changes in the Company's directors or senior management. Key managers and directors are listed below. |

| Manager | Title |
|---|---|
| William E. Moore | Chairman of the Board |
| Peter M. Cazzolla | President and CEO |
| Thomas H. Scherff | VP, Claims |
| Robert D. Winn | VP, Underwriting/Field Operations |
| Edward T. Mines | VP, Chief Financial Officer |

| Directors |
|---|
| William E. Moore |
| Peter M. Cazzolla |
| Desiree B. Moore |

| | |
|---|---|
| Property | As of the valuation date, the Company owned no real estate. CCIC's headquarter facility, located in Monterey California, is leased from the Kelly-Moore Paint Company. |

- 4 -

KMH 005822

CONFIDENTIAL

REDACTED

- 5 -

KMH 005823

CONFIDENTIAL

REDACTED

- 6 -

KMH 005824

## K-M INDUSTRIES HOLDING CO., INC.
### BUSINESS OVERVIEW & RISK ANALYSIS

*Industry consolidation*
The insurance industry is undergoing a period of rapid consolidation. Competitors are attempting to maintain or grow market share, and as a consequence, price competition has been particularly severe.

- 7 -

KMH 005825

## K-M INDUSTRIES HOLDING CO., INC.
### ECONOMIC OVERVIEW

---

*The purpose of this economic overview is to provide a review of the current condition of the national economy and the outlook for the year to come. The overview reflects the consensus forecast of the Blue Chip Economic Indicators panel (the "Consensus") and our examination of other pertinent economic analyses. As these sources are generally published midmonth, this overview reflects the economic outlook as of that time.*

### Overall Economic Growth

Numbers for the first quarter of 1999 surpassed analysts' expectations. Inflation-adjusted (real) GDP rose at an annual rate of 4.5%, more than a percentage point faster than Consensus forecasts. Surging domestic demand offset the drag from trade, wherein a sharp widening of the net export deficit subtracted 2.5 percentage points from overall growth. Personal consumption expenditures (PCE) expanded at a 6.7% real annual rate, faster than any quarter in 1998. While durable goods continued to do well, it was primarily home furniture, appliances and household equipment that provided the boost. As a percentage of total GDP, household expenditures rose to a near-record level of 73.2% in the first quarter of 1999. Retail sales grew at an impressive annual rate of nearly 15%.

Additionally, home buying produced a 15.6% annualized increase in residential investment, spending on information technology rose at a 21% annual rate, residential construction did well, rising at a 16% annual rate, and total gross private domestic investment rose at a 10% rate, its best quarterly gain since the first quarter of last year.

The Consensus forecast of 1999 real GDP growth rose 0.3 of a percentage point from last month to 3.8%, while that of nominal GDP growth rose an identical 0.3 of a point to 5.1%, which would exceed 1998's growth rate of 4.9%. Real GDP is now expected to grow at an annual rate of 3.0% in the second quarter of 1999, 2.8% in the third quarter and 3.0% in the fourth, all higher than last month's estimates. This would produce a fourth-quarter-over-fourth-quarter gain in real GDP of 3.3% in 1999 compared with 4.3% in 1998.

Consensus forecasts of economic activity in 2000 also registered increases this month. Analysts now estimate real GDP will grow 2.5% next year and nominal GDP will rise by 4.2%, increases of 0.2 of a percentage point and 0.1 of a point, respectively. The GDP price index is expected to increase 1.7% next year, 0.1 of a point less than a month ago.

The Consensus forecast of the real next export deficit rose sharply to $312.2 billion; it is expected to reach $-323.5 billion in 2000. As Asia and Latin America rebound, U.S. exports will grow and the trade gap will shrink.

- 8 -

DUFF & PHELPS, LLC

KMH 005826

## K-M INDUSTRIES HOLDING CO., INC.
### ECONOMIC OVERVIEW

*Consumption and Investment*

In addition to May's upward revisions in Consensus estimates of 1999 GDP growth, forecasts of growth this year also rose in real disposable personal income (from 3.3% to 3.6%), PCE (from 3.9% to 4.4%) and corporate profits (from 1.8% to 3.1%). The estimate of 1999 growth in nonresidential investment remained at 7.6%. The Consensus now puts total 1999 housing starts at 1.65 million, compared to 1.62 million last month. PCE and disposable personal income (DPI) are expected to grow 2.8% and 2.7%, respectively; both estimates are up 0.2 of a point from last month. The 1999 forecast of the Consumer Price Index (CPI) remained at 1.9%, but sharply rising gasoline prices threaten an upward revision of that estimate next month.

The Consensus currently believes tight labor markets, solid wage and salary growth, high levels of confidence and the wealth effects of the sharp rebound in stock prices since last fall likely preclude a sharp, sustained cutback in spending. The CPI estimate for 2000 remained at 2.3% for a fourth consecutive month.

*Inflation and Unemployment*

The unemployment rate is expected to average 4.3% in 1999, unchanged from last month's estimate, and 4.5% in 2000.

*Interest Rates*

The Fed made no change in interest rates or monetary policy at the May 18 meeting, after which the Fed funds rate was 4.75%, T-bills were trading at 4.50%, 10-year T-notes at 5.60%, and 30-year Treasury bonds at 5.85%. Analysts expect rates to remain close to current levels going forward, with the long bond in a range of 5.40% to 6.00%, the 10-year between 5.00% and 5.80%, and Fed funds at 4.75%. In the foreign exchange markets, the euro has slightly recovered from the weakness seen at the start of NATO's Yugoslavian campaign. A rate of $1.05 to $1.08 against the euro is expected through the end of the summer. The Japanese yen, recently near 120, could weaken to about 125 by late summer.

---

Sources:     *Blue Chip Economic Indicators*, April 10, 1999
            *Standard & Poor's Trends & Projections*, April 15, 1999

DUFF & PHELPS, LLC

KMH 005827

CONFIDENTIAL

REDACTED

- 10 -

KMH 005828

CONFIDENTIAL

REDACTED

- 11 -

KMH 005829

CONFIDENTIAL

REDACTED

- 12 -

KMH 005830

CONFIDENTIAL

REDACTED

- 13 -

KMH 00!

CONFIDENTIAL

REDACTED

- 14 -

KMH 005832

CONFIDENTIAL

REDACTED

- 15 -

KMH 005833

CONFIDENTIAL

REDACTED

- 16 -

KMH 005834

## K-M INDUSTRIES HOLDING CO., INC.
### KMI'S CLASSES P AND I STOCK

The Articles of Incorporation of the Kelly-Moore Paint Company, Inc., a California Corporation, were amended and restated in September of 1998 to cause the following changes to the Articles of Incorporation:

- The Kelly-Moore Paint Company, Inc. was renamed K-M Industries Holding Co., Inc. ("KMI"). The paint operations of the Kelly-Moore Paint Company and CCIC became wholly-owned subsidiaries of KMI.

- The Company is authorized to issue 100 million shares of common stock, 80 million to be designated as "Class P Stock" and 20 million to be designated as "Class I Stock".

- Both Class P Stock and Class I Stock will be treated as Tracking Stock, where each class is intended to reflect operations of different subsidiaries of the parent company. The Class P Stock will track the performance of KMI's paint subsidiary (the Kelly-Moore Paint Company) and the Class I Stock will track the performance of KMI's insurance subsidiary (CCIC).

- Each class of stock is entitled to one vote per share in all matters to be voted upon by shareholders of KMI. Class I Stock and Class P Stock will vote together as one class in such matters.

- Restrictions on the sale or other transfer of 10% or greater of either company's stock require a 70% passing vote of Class P shareholders if the transfer or sale relates to the Paint subsidiary and a 70% passing vote by the Class I shareholders if such transfer or sale relates to KMI's insurance subsidiary.

- Each class of stock is to be further divided into two series of stock: a Series A stock and a Series B stock. Both series shall vote together as one class and are entitled to receive dividends as a whole.

- Dividends to shareholders of Class P Stock will be limited to the sum of: (1) all dividends received by KMI from KMI's paint subsidiary; (2) the proceeds received by KMI from the sale of any capital of the paint subsidiary; and (3) a pro rata amount (taking into account all classes of common stock in KMI and Class P Stock as a portion of that amount) x KMI's retained earnings and surplus available for distribution from sources other than (1) or (2).

- Dividends to shareholders of Class I Stock will be limited to the sum of (1) all dividends received by KMI from KMI's insurance subsidiary; (2) the proceeds received by KMI from the sale of any capital of the insurance subsidiary; and (3) a pro rata amount (taking into account all classes of common stock in KMI and Class I

DUFF & PHELPS, LLC

KMH 005835

# K-M INDUSTRIES HOLDING CO., INC.
## KMI'S CLASSES P AND I STOCK

Stock as a portion of that amount) x KMI's retained earnings and surplus available for distribution from sources other than (1) or (2).

- Shareholders of Class P-A Stock or Class I-A Stock have the option to convert, at any time, each share of Class P-A Stock or Class I-A Stock into one share of Class P-B Stock or Class I-B Stock, respectively. Each share of Class P-B Stock and Class I-B Stock will be automatically converted into one fully paid and nonassessable share of Class P-A Stock and Class I-A Stock, respectively, upon the effectiveness of a registration statement covering the first underwritten offer and sale of KMI's Common Stock.

- In the event of a liquidation, dissolution or winding up of KMI, whether involuntary or voluntary, Class P shareholders are entitled to the common stock of the paint subsidiary and Class I shareholders are entitled to the common stock of the insurance subsidiary. Each class of stock is also entitled to cash or other property equal to the amount of any accrued dividends, provided there is sufficient cash or other property to also repay all Class P Stock and Class I Stock accrued dividends.

  In the case where there are insufficient assets to repay all Class P Stock and Class I Stock accrued dividends, each class shall receive in lieu thereof the pro rata portion (based on the proportion which each class' accrued dividends bears to the total accrued dividends of both classes) of KMI's net assets.

  In the case where there are remaining net assets of KMI after payment of all accrued dividends, the remaining assets shall be distributed ratably to the holders of Class P Stock and Class I Stock on a share-for-share basis without distinction as to class shares.

In summary, KMI's Class P Stock and Class I Stock were developed to "track" solely the operations of KMI's paint subsidiary and KMI's insurance subsidiary, respectively. This capital structure is intended to provide holders with securities that would represent the value of either KMI's paint subsidiary or its insurance subsidiary, independent of one another.

DUFF & PHELPS, LLC

KMH 005836

## K-M INDUSTRIES HOLDING CO., INC.
### COMPARABLE PUBLIC COMPANY ANALYSIS

---

### Overview of Methodology

**Determine representative levels of revenue, earnings, etc.**

- Representative of company's revenues or earnings generating capability going forward.

- Adjusted for unusual and nonrecurring items, if necessary.

- Completed on a minority interest basis.

**Select market multiples to apply to representative levels**

- Comparable public companies were used as a guide.

- Investment attributes of subject company were contrasted to the comparable companies.

**Multiples of:**

- Total revenue

- Net premiums earned

- Pretax income

- Earnings or net income

- Book value

- 19 -                                        DUFF & PHELPS, LLC

KMH 005837

CONFIDENTIAL

REDACTED

- 20 -

KMH 005838

K-M INDUSTRIES HOLDING CO., INC.
COMPARABLE PUBLIC COMPANY ANALYSIS

Comparative Analysis

**Size**

With premiums earned of $121 million for the twelve months ended May 31, 1999 and total assets of $254 million at May 31, 1999, CCIC is smaller than most of the comparable companies (when taken as a single group) but is similar to the Tier 1 subset of companies. The Tier 1 companies have annual premiums earned ranging from $88 to $189 million and total assets ranging from $222 to $409 million.

**Growth**

Since 1998, CCIC has exhibited negative growth rates (in terms of premiums earned). Additionally, CCIC has lower growth rates than those exhibited by the comparable companies. While many of the comparable companies have grown through acquisitions, CCIC's growth has been entirely internally driven.

**Profitability**

CCIC's profitability has declined since 1997, due primarily to a highly competitive pricing environment. In comparison to the comparable companies, CCIC has recently been at the middle to higher end in terms of profitability margins exhibited.

**Returns**

CCIC's return on average assets has been at the higher end of the range of comparable companies. CCIC's return on invested capital, however, has been near the middle and lower end of the range of comparable companies.

**Leverage**

The Company exhibits generally similar levels of financial leverage relative to the comparable companies. With regards to operating leverage (in terms of net premiums earned to equity) the Company is at the lower end of the range.

**Risk**

CCIC is relatively small when compared to the comparable companies. Because of this, the Company is relatively more vulnerable to certain risks including: (i) the loss of a key manager, (ii) adverse regional political or economic developments, (iii) adverse regional weather events, and (iv) downward pricing pressure from larger competitors. While these risks are present at many companies, any one of the listed events has the potential to cause CCIC significant hardship. It is our opinion that the added risk

- 21 -

KMH 005839

## K-M INDUSTRIES HOLDING CO., INC.
### COMPARABLE PUBLIC COMPANY ANALYSIS

involved with an investment in CCIC would warrant lower capitalization multiples for the Company.

**Future Growth**

Net premiums earned can be expected to grow at low single digit rates in the future. Profitability, however, is not expected to grow at the same pace as increasing pricing pressure from stiff competition in California can be expected to keep CCIC's margins relatively narrow. Although none are currently planned, an acquisition made by CCIC could result in more rapid growth in premiums and potentially improved profitability (through cost savings from the elimination of duplicative overhead) over what may be generated internally.

**Conclusion**

Based on the Company's historical growth and profitability, in light of its current risk profile and prospects for future growth, we believe that an investment in the Company offers slightly lower growth prospects and slightly higher risk than the comparable public companies.

DUFF & PHELPS, LLC

KMH 005840

CONFIDENTIAL

REDACTED

- 23 -

KMH 005841

CONFIDENTIAL

REDACTED

- 24 -

KMH 005842

CALIFORNIA CAPITAL INSURANCE COMPANY
ANALYSIS OF PUBLICLY TRADED COMPARABLE COMPANIES
VALUATION MULTIPLES
June 30, 1999

| | Price as a Multiple of Earnings Per Share(1) | | | LTM Relative to S&P 500 (%) | Capitalized Value as a Multiple of(1) | | | | Price as a Multiple of Book Value |
| | | | | | Pretax Income(1) | | LTM Premium Earned | LTM Total Revenue | |
| | LTM | Projected Fiscal Year | 3-Year Average | | LTM | 3-Year Average | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Tier 1** | | | | | | | | | |
| Donegal Group | 12.0x | 9.5x | 9.6x | 33.8 | 11.1x | 8.8x | 0.87x | 0.78x | 0.9x |
| Farm Family Holdings | 11.6 | 10.7 | 12.2 | 32.8 | 8.2 | 8.9 | 0.96 | 0.86 | 1.2 |
| Gainsco | DEF | 12.8 | 22.1 | NM | DEF | 25.5 | 1.54 | 1.34 | 1.2 |
| Merchants Group | 10.4 | 10.9 | 21.7 | 29.3 | 6.2 | 15.2 | 0.58 | 0.50 | 0.7 |
| Meridian Insurance Group | 11.7 | 16.8 | 14.9 | 33.0 | 9.1 | 13.2 | 0.70 | 0.61 | 0.9 |
| Penn-America Group | 11.8 | 12.4 | 10.0 | 33.3 | 7.8 | 8.4 | 1.05 | 0.94 | 1.0 |
| | | | | | | | | | |
| Range - High | 12.0 | 16.8 | 22.1 | 33.8 | 11.1 | 25.5 | 1.54 | 1.34 | 1.2 |
| Low | 10.4 | 9.5 | 9.6 | 29.3 | 6.2 | 8.4 | 0.58 | 0.50 | 0.7 |
| | | | | | | | | | |
| Mean | 11.5 | 12.2 | 15.1 | 32.4 | 8.5 | 13.3 | 0.95 | 0.84 | 1.0 |
| Median | 11.7 | 11.6 | 13.5 | 33.0 | 8.2 | 11.0 | 0.91 | 0.82 | 0.9 |
| | | | | | | | | | |
| **Tier 2** | | | | | | | | | |
| Commerce Group | 10.2x | 11.9x | 9.9x | 28.8 | 7.8x | 7.4x | 1.12x | 0.99x | 1.3x |
| Harleysville Group | 9.1 | 10.5 | 12.1 | 25.8 | 8.6 | 11.5 | 1.04 | 0.88 | 1.1 |
| Mercury General Corp. | 11.4 | 11.1 | 12.9 | 32.2 | 9.0 | 10.0 | 1.70 | 1.57 | 2.0 |
| Ohio Casualty Corp. | 20.3 | 22.2 | 12.2 | 57.3 | 20.3 | 10.8 | 1.02 | 0.90 | 0.9 |
| Progressive Corp. | 24.7 | 23.6 | 27.9 | 69.7 | 18.3 | 20.7 | 2.27 | 2.14 | 3.9 |
| State Auto Financial Corp. | 15.7 | 12.6 | 16.8 | 44.4 | 11.2 | 13.4 | 1.55 | 1.37 | 1.6 |
| 20th Century Industries | 14.7 | 13.4 | 15.6 | 41.6 | 10.5 | 11.8 | 2.23 | 1.97 | 2.1 |
| | | | | | | | | | |
| Range - High | 24.7 | 23.6 | 27.9 | 69.7 | 20.3 | 20.7 | 2.27 | 2.14 | 3.9 |
| Low | 9.1 | 10.5 | 9.9 | 25.8 | 7.8 | 7.4 | 1.02 | 0.88 | 0.9 |
| | | | | | | | | | |
| Mean | 15.2 | 15.0 | 15.3 | 42.8 | 12.2 | 12.2 | 1.56 | 1.40 | 1.8 |
| Median | 14.7 | 12.6 | 12.9 | 41.6 | 10.5 | 11.5 | 1.55 | 1.37 | 1.6 |

S & P 500   35.4
Dow Jones Industrial Avg   26.7

(1) Special items have been excluded from all calculations.

Sources: Standard & Poor's Compustat Services, Inc., Illuminating Financial and First Call Corporation.

-25-

DUFF & PHELPS, LLC

KMH 005843

# CALIFORNIA CAPITAL INSURANCE COMPANY
## ANALYSIS OF PUBLICLY TRADED COMPARABLE COMPANIES
### MARKET DATA
($ In Millions except Per Share)
June 30, 1999

| | Common Stock Data | | | | Dividend Data | | Capital Structure Data | | | | |
| | Common Stock Price | 52 - Week Range High | Low | Primary Market | Indicated Dividend | Current Yield | Shares Outstanding | Equity Value | Total Debt | Capitalized Value* | % Debt to Capitalized Value |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Tier 1** | | | | | | | | | | | |
| Donegal Group | 11.375 | 19.875 | 10.063 | NSDQ | $0.26 | 3.2% | 8,249 | $94 | $15 | $109 | 13.8% |
| Farm Family Holdings | 34.188 | 40.563 | 28.000 | NYSE | 0.00 | 0.0 | 5,254 | 180 | 0 | 180 | 0.0 |
| Guinsco | 5.875 | 7.938 | 3.938 | NYSE | 0.07 | 1.2 | 20,897 | 123 | 18 | 141 | 12.8 |
| Merchants Group | 22.375 | 24.375 | 18.500 | ASE | 0.40 | 1.8 | 2,410 | 54 | 0 | 54 | 0.0 |
| Meridian Insurance Group | 16.750 | 20.250 | 14.547 | NSDQ | 0.32 | 1.9 | 7,260 | 122 | 10 | 131 | 7.4 |
| Penn-America Group | 10.375 | 13.250 | 8.250 | NYSE | 0.21 | 2.0 | 8,736 | 91 | 2 | 93 | 2.1 |
| **Tier 2** | | | | | | | | | | | |
| Commerce Group | 24.375 | 38.750 | 21.875 | NYSE | $1.12 | 4.6% | 34,857 | $850 | $0 | $853 | 0.0% |
| Harleysville Group | 20.500 | 27.063 | 17.625 | NSDQ | 0.50 | 2.4 | 29,271 | 600 | 97 | 697 | 13.9 |
| Mercury General Corp. | 34.000 | 69.438 | 31.938 | NYSE | 0.84 | 2.5 | 54,686 | 1,859 | 78 | 1,937 | 4.0 |
| Ohio Casualty Corp. | 36.125 | 47.875 | 34.125 | NSDQ | 1.84 | 5.1 | 30,761 | 1,111 | 255 | 1,366 | 18.7 |
| Progressive Corp. | 145.000 | 170.750 | 95.938 | NYSE | 0.26 | 0.2 | 72,800 | 10,556 | 1,071 | 11,627 | 9.2 |
| State Auto Financial Corp. | 13.500 | 16.500 | 9.375 | NSDQ | 0.10 | 0.7 | 42,058 | 568 | 0 | 568 | 0.0 |
| 20th Century Industries | 18.500 | 29.125 | 16.000 | NYSE | 0.64 | 3.5 | 87,635 | 1,621 | 101 | 1,723 | 0.1 |

S & P 500          1,372,710
Dow Jones Industrial Avg   10,970.800

* Equity value plus debt, preferred stock, and minority interest.

Sources: Standard & Poor's Compustat Services, Inc., Bloomberg Financial and First Call Corporation.

- 26 -

DUFF & PHELPS, LLC

KMH 005844

CALIFORNIA CAPITAL INSURANCE COMPANY
ANALYSIS OF PUBLICLY TRADED COMPARABLE COMPANIES
OPERATING PERFORMANCE
($ in Millions except Per Share)
June 30, 1999

| | Earnings Per Share(1) | | | Pretax Income(1) | | Book Value Per Share | LTM Premium Earned | LTM Total Revenue | LTM Ended | Projected EPS for Year Ending |
|---|---|---|---|---|---|---|---|---|---|---|
| | LTM | Projected Fiscal Year | 3-Year Average | LTM | 3-Year Average | | | | | |
| **Tier 1** | | | | | | | | | | |
| Donegal Group | $0.95 | $1.20 | $1.18 | $9.8 | $12.4 | $12.64 | $125 | $140 | Mar99 | Dec99 |
| Farm Family Holdings | 2.94 | 3.19 | 2.81 | 21.8 | 20.2 | 27.59 | 187 | 208 | Mar99 | Dec99 |
| Gainsco | (0.01) | 0.46 | 0.27 | (1.2) | 5.5 | 5.10 | 51 | 105 | Mar99 | Dec99 |
| Merchants Group | 2.16 | 2.05 | 1.03 | 8.7 | 3.5 | 20.97 | 94 | 107 | Mar99 | Dec99 |
| Meridian Insurance Group | 1.44 | 1.00 | 1.12 | 14.5 | 10.0 | 19.27 | 189 | 214 | Mar99 | Dec99 |
| Penn-America Group | 0.88 | 0.84 | 1.04 | 11.9 | 11.0 | 10.74 | 88 | 99 | Mar99 | Dec99 |
| **Tier 2** | | | | | | | | | | |
| Commerce Group | $2.39 | $2.05 | $2.46 | $109.1 | $114.7 | $18.90 | $762 | $865 | Mar99 | Dec99 |
| Harleysville Group | 2.24 | 1.95 | 1.70 | 81.4 | 60.7 | 18.45 | 672 | 788 | Mar99 | Dec99 |
| Mercury General Corp. | 2.98 | 3.05 | 2.64 | 215.1 | 193.0 | 17.13 | 1,138 | 1,234 | Mar99 | Dec99 |
| Ohio Casualty Corp. | 1.78 | 1.63 | 2.96 | 67.2 | 126.5 | 41.29 | 1,344 | 1,521 | Mar99 | Dec99 |
| Progressive Corp. | 5.88 | 6.15 | 5.20 | 635.7 | 560.4 | 36.89 | 5,124 | 5,441 | Mar99 | Dec99 |
| State Auto Financial Corp. | 0.86 | 1.07 | 0.80 | 50.8 | 42.3 | 8.30 | 367 | 414 | Mar99 | Dec99 |
| 20th Century Industries | 1.26 | 1.38 | 1.19 | 163.4 | 146.5 | 8.90 | 774 | 875 | Mar99 | Dec99 |

S & P 500                     38.79
Dow Jones Industrial Avg      410.88

(1) Special items have been excluded from all calculations.

Sources: Standard & Poor's Compustat Services, Inc., Bloomberg Financial and First Call Corporation.

- 27 -

DUFF & PHELPS, LLC

KMH 005845



CALIFORNIA INSURANCE GROUP
Comparable Public Companies - Tier 1
5-Year Stock Price Performance

June 1994 = 100

Conseco
Penn-American Group
Farm Family Holdings
Meridian Insurance
Donegal Group
Merchants Group

- 28 -

DUFF & PHELPS, LLC

KMH 005846



CALIFORNIA INSURANCE GROUP
Comparable Public Companies – Tier 2
5-year Stock Price Performance

June 1994 = 100

- 29 -

DUFF & PHELPS, LLC

KMH 005847



CALIFORNIA INSURANCE GROUP
Comparable Public Companies vs. S&P 500
5-Year Stock Price Performance

June 1994 = 100

- 30 -

DUFF & PHELPS, LLC

KMH 005848

CONFIDENTIAL

REDACTED

- 31 -

KMH 005849

REDACTED

CONFIDENTIAL

- 32 -

KMH 005850

CONFIDENTIAL

REDACTED

- 33 -

KMH 005851

CONFIDENTIAL

REDACTED

- 34 -

KMH 005852

CONFIDENTIAL

REDACTED

- 35 -

KMH 005853

CONFIDENTIAL

REDACTED

KMH 005854

CONFIDENTIAL

REDACTED

KMH 005855

## CALIFORNIA CAPITAL INSURANCE COMPANY
### Analysis of Comparable Companies

**TIER 1 Group of Comparable Companies**

| | Donegal Group | Penn Fidelity Holdings | Gainsco, Inc. | Medium Insurance Credits | Merchants Group Inc. | Penn-American Group |
|---|---|---|---|---|---|---|
| **Ticker** | DGIC | PFH | GNA | MIGI | MGP | PNG |
| LTM Net Premiums Earned ($MM) | $125.8 | $187.0 | $91.0 | $180.0 | $90.0 | $59.0 |
| LTM Pre-Tax Income ($MM) | $9.8 | $21.8 | ($1.2) | $14.5 | $8.7 | $11.9 |
| 699 Equity Mkt Cap ($MM) | $94.0 | $180.0 | $123.0 | $122.0 | $54.0 | $91.0 |
| Capitalized Value ($MM) | $100.0 | $180.0 | $141.0 | $131.0 | $54.0 | $93.0 |
| **Type of Company** | Property & casualty insurance provider | Parent company of two subsidiaries providing casualty and life insurance. | Vertically integrated property and casualty insurance holding company specializing in underwriting excess and surplus lines. | Underwriter of property and casualty insurance. | Insurance holding company offering property and casualty insurance through its wholly-owned subsidiary Merchants Insurance Co. of New Hampshire, Inc. | Underwriter of commercial property, general liability and nonstandard personal automobile insurance. |
| **Services and Products** | The company provides automobile, homeowners, commercial multi-peril, workers' compensation and other lines of insurance | The company sells principally individual whole life, term and universal life products, as well as single and flexible premium deferred annuities and disability income insurance products. | Through its subsidiaries, the company provides property and casualty insurance, and also focuses on certain specialty and nonstandard markets within the commercial auto, auto garage, general liability, property and personal nonstandard insurance lines. | The company underwrites property and casualty insurance, including personal and commercial automobile, homeowners, fire/ocean marine, commercial multi-peril and workers' compensation. | The company offers personal automobile and homeowners' insurance, for commercial business it principally retail and mercantile in nature, small to medium-sized businesses, low hazard commercial risks. | The company underwrites commercial property, general liability and nonstandard personal automobile insurance, on an excess and surplus lines or nonstandard basis. |
| **Target Market** | The Company provides insurance primarily in the following states: PA, MD, DE, VA and OH. | Subsidiaries include specialized, property and casualty insurers of farms, agricultural related businesses and residents and businesses of rural and suburban communities in the U.S. Northeast | The company is approved to write insurance in 48 states and the District of Columbia. | The company offers its products in 13 mid-western states. | The company offers its products to preferred risk individuals and small to medium size businesses in thirteen states, primarily in the Northeast, but also in the Mid-Atlantic and Midwest. Businesses targeted include primarily retail and service operations, artisan contractors, and light manufacturing establishments. | |
| **Capitalized Value as a multiple of:** | | | | | | |
| Net Premiums Earned | 0.8x | 1.0x | 1.5x | 0.7x | 0.6x | 1.1x |
| Total Revenue | 0.8x | 0.9x | 1.3x | 0.6x | 0.5x | 0.9x |
| Pre-Tax Income | 11.1x | 8.2x | def | 9.1x | 6.2x | 7.8x |
| **Price as a multiple of:** | | | | | | |
| Earnings | 12.0x | 12.0x | def | 11.2x | 10.0x | 11.8x |
| Projected Earnings | 9.5x | 10.7x | 12.8x | 16.8x | 10.0x | 12.4x |
| Book Value | 0.9x | 1.2x | 1.2x | 0.9x | 0.7x | 1.0x |

*Capitalized Value = Equity value plus debt, preferred stock, and minority interest, less cash and equivalents.*

KMH 005856

CALIFORNIA CAPITAL INSURANCE COMPANY
Analysis of Comparable Companies

## TIER 2 Group of Comparable Companies

| | The Commerce Group, Inc. | Harleysville Group, Inc. | Mercury General Corporation | Ohio Casualty Corporation |
|---|---|---|---|---|
| Ticker | CGI | HGIC | MCY | OCAS |
| LTM Net Premiums Earned ($MM) | $762.0 | $672.0 | $1,136.0 | $1,244.0 |
| LTM Pre-Tax Income ($MM) | $109.1 | $81.1 | $215.1 | $67.2 |
| 6/99 Equity Mkt Cap ($MM) | $850.0 | $600.0 | $1,859.0 | $1,111.0 |
| Capitalized Value ($MM) | $853.0 | $697.0 | $1,937.0 | $1,900.0 |
| Type of Company | Parent of two property and casualty insurance subsidiaries. | Regional holding company for property and casualty insurance companies. | Insurance holding company whose subsidiaries operate primarily in California. | Property and casualty insurer; underwrites personal and commercial insurance and engaged in insurance premium financing. |
| Services and Products | The company writes property and casualty insurance including commercial automobile, homeowners, inland marine, fire, general liability and commercial multi-peril insurance. | Personal auto insurance is the company's single biggest segment although total commercial business dominates personal lines. The company's commercial lines include auto, workers' compensation and multi-peril. Personal lines include primarily auto and homeowners insurance. | The company's subsidiaries write a full line of automobile coverage for all classifications of risk. The company also writes a small amount of homeowners insurance, mechanical breakdown insurance, commercial and dwelling fire insurance and commercial property insurance. Non-automobile lines of insurance accounted for 5.2% of premiums written in 1997. | The company underwrites most forms of property-casualty insurance including auto insurance (personal and commercial), homeowners, commercial multi-peril, workers' compensation, general liability, fidelity and surety insurance. |
| Target Market | The company is the leading provider of personal automobile insurance in Massachusetts. The company also writes personal automobile insurance in California and automobile and commercial mortgages on a limited basis within Massachusetts and Connecticut. Through a new subsidiary the company also writes automobile and homeowners insurance in 28 states through 28 AAA automobile club offices. | The company's subsidiaries' marketing territories are in the eastern and midwestern US. The company's product are marketed primarily in 31 states in the eastern and midwestern U.S. through approx. 3,000 independent insurance agencies. The company has regional offices in the states of GA, IL, MN, MO, MN, NJ, NY, NC, OH, PA, TN and VA. | The company's subsidiaries operate primarily in California, with a smaller amount of auto insurance written in the states of GA, IL, TX, OK, KS and FL. The company sells auto insurance through more than 1,600 independent agents, with about 900 in California, and 650 in Oklahoma, Kansas and Texas. | The company is represented by more than 4,400 independent agents in 39 states. In 1997 the company's four largest markets were New Jersey, Ohio, Kentucky and Pennsylvania. |
| Capitalized Value as a multiple of: | | | | |
| Net Premiums Earned | 1.1x | 1.0x | 1.7x | 1.0x |
| Total Revenue | 1.0x | 0.9x | 1.6x | 0.9x |
| Pre-Tax Income | 7.8x | 8.6x | 9.0x | 20.3x |
| Price as a multiple of: | | | | |
| Earnings | 10.2x | 9.1x | 11.4x | 20.3x |
| Projected Earnings | 11.9x | 10.5x | 11.1x | 22.2x |
| Book Value | 1.3x | 1.1x | 2.0x | 0.9x |

*Capitalized Value = Equity value plus debt, preferred stock, and minority interest, less cash and equivalents.*

DUFF & PHELPS, LLC

KMH 005857

CALIFORNIA CAPITAL INSURANCE COMPANY
Analysis of Comparable Companies

**TIER 2 Group of Comparable Companies, Continued**

| Ticker | The Progressive Corporation | State Auto Financial | 20th Century Industries |
|---|---|---|---|
| | PGR | STFC | TW |
| LTM Net Premiums Earned ($MM) | $5,124.0 | $362.0 | $774.0 |
| LTM Pre-Tax Income ($MM) | $615.7 | $59.8 | $163.4 |
| 6/99 Equity Mkt Cap ($MM) | $10,556.0 | $568.0 | $1,631.0 |
| Capitalized Value ($MM) | $11,627.0 | $568.0 | $1,721.0 |
| Type of Company | Leading underwriter of nonstandard auto and other specialty personal lines coverages. | Writer of property and casualty insurance in 26 states. | Insurance holding company with subsidiaries that market auto insurance. |
| Services and Products | The company's core business consists of underwriting private passenger auto, recreational vehicle and small commercial vehicle insurance - primarily nonstandard insurance policies. The company also provides motorcycle and boat insurance as well as credit-related insurance to lending institutions. | The company offers personal and commercial automobile, homeowners, commercial multi-peril, workers' compensation and fire insurance. | The company's subsidiary markets full-coverage private passenger auto insurance directly to consumers. Subsidiary also markets and writes personal excess liability insurance. |
| Target Market | The company operates in 43 states with Florida, Texas, New York and Ohio accounting for over 41% of the company's written premiums. | The company targets 26 states, primarily in the central and eastern U.S., excluding New York, New Jersey and the New England states. | The company's market mainly targets the California market but has expanded into Nevada, Oregon, Washington and Arizona in the past two years. |
| Capitalized Value as a multiple of: | | | |
| Net Premiums Earned | 2.3x | 1.6x | 2.1x |
| Total Revenue | 2.1x | 1.4x | 2.0x |
| Pre-Tax Income | 18.3x | 11.2x | 10.5x |
| Price as a multiple of: | | | |
| Earnings | 24.7x | 15.7x | 14.7x |
| Projected Earnings | 23.6x | 13.6x | 13.4x |
| Book Value | 3.9x | 1.6x | 2.1x |

Capitalized Value = Equity value plus debt, preferred stock, and minority interest, less cash and equivalents.

- 40 -                                      DUFF & PHELPS, LLC

KMH 005858

# K-M INDUSTRIES HOLDING CO., INC.
## DISCOUNT FOR LACK OF MARKETABILITY

The methods we have used to value the Company's common stock results in values representative of the price at which the stock would trade if there were an active, seasoned public market for the stock (the marketable minority interest value). The comparative company method is based on the prices at which minority interest blocks of common stocks trade in the public equity markets. The stocks we examined in applying this method have had public markets for considerable periods, are traded daily in significant volumes, and are seasoned by past trading and the fact that the operations, finances and conditions surrounding the companies which issued the stocks are regularly followed by a community of securities analysts and investors.

The Company's common stock has never traded in any public market nor is there any reasonable prospect of the stock being registered in the foreseeable future for trading in a public market. Absent a price set in a public market; extensive, widely circulated information about a company; a following of security analysts and investors; or the prospect of a sale of a company or an initial public offering of its stock in the near term, it is difficult to find parties interested and willing to buy a minority holding of stock in a closely-held company. It would be extremely difficult under these circumstances to find a buyer willing to pay a price based on what the stock's value would be if it had an active, seasoned public market. In recognition of the difficulties of selling a minority holding of stock in a closely-held company where all these circumstances prevail, a discount for lack of marketability is often applied in valuing such a stock interest.

There is no definitive body of generally available information on the prices at which trades of minority holdings of stocks in closely-held companies have occurred. Even if such information were available, it would not provide a basis for calculating discounts for lack of marketability since there would be no public market prices to refer to on the closely-held stocks. In the absence of actual data on discounts for lack of marketability for closely-held stock, valuation analysts have devised several models for estimating appropriate levels of such discounts. These models fall into two general categories: (1) stock sales prior to an initial public offering ("IPO"); and (2) the restricted stock model. These models are presented in further detail on the following pages.

DUFF & PHELPS, LLC

KMH 005859

K-M INDUSTRIES HOLDING CO., INC.
DISCOUNT FOR LACK OF MARKETABILITY

### Stock Sales Prior to an IPO

Analyzing stock sales prior to an IPO is method to estimate discounts for lack of marketability. This is done by examining the relationship between prices paid in private transactions for stocks in companies prior to initial public offerings with the prices at which the stocks were offered to the public. The following table summarizes the results of two of these studies.

| Study | Years Covered | Marketability Discounts | | |
| | | Range | Mean | Median |
| --- | --- | --- | --- | --- |
| Emory (Baird Company) | 1980 – 1995 | (6%) to 94% | 44% | 43% |
| Willamette Mgmt. Assoc. | 1975 – 1993 | NA | 41% | 52% |

### Emory Studies

John Emory of Robert W. Baird & Company has conducted a series of pre-IPO studies covering 206 IPOs from 1985 to 1995. The mean and median discounts for all transactions were 44% and 43%, respectively. The mean and median discounts were also fairly consistent across all periods studied.

Source:    Emory, John D., "The Value of Marketability as Illustrated in Initial Public Offerings of Common Stock." *Business Valuation News*, September 1985, pp. 21-4; Business Valuation Review, December 1992, Pp. 208-212; March 1994, pp. 3-7; and December 1995, pp. 155-60.

### Willamette Study

Willamette Management Associates, Inc. has performed a series of pre-IPO studies covering 827 transactions, involving 432 companies, occurring between 1975 and 1993. The mean and median discounts found in this study were 41% and 52%, respectively.

Source:    Willamette Management Associates, Pre-IPO Studies, in Christopher Z. Mercer, *Quantifying Marketability Discounts*. Memphis, TN: Peabody Publishing, LP, 1997. PP 82-85.

DUFF & PHELPS, LLC

KMH 005860

K-M INDUSTRIES HOLDING CO., INC.
DISCOUNT FOR LACK OF MARKETABILITY

### Restricted Stock Model

The restricted stock model is based on the differences observed between the prices paid for restricted stock in private placements and the prices at which the unrestricted stock of the same companies were trading in public markets. The restricted stock involved in the private placements generally were unregistered "letter" stock which were not marketable except as provided under the Securities and Exchange Commission's Rule 144. Under this rule, the stocks were restricted from transfer to other owners (except in a subsequent private placement) for a period of at least two years. The restricted stock were identical in every way except marketability, to common stock traded on recognized public exchanges or in the over-the-counter market.

The differences in prices on the same dates observed between restricted and unrestricted common stock of the same companies can be attributed to the restricted stock's lack of immediate marketability, analogous in certain respects to the lack of marketability of stock of closely-held companies. The discounts observed in the prices of restricted stock reflect the fact that a holder of such securities may sustain losses or forgo profits because of the inability to sell them at a time of his own choosing. He is forced to hold the stock while the prices of the unrestricted stock fluctuate as a result of changes in the issuing companies' businesses or operations, in their financial conditions as the use of debt financing goes up or down, in the demand for the individual companies' stock or in general stock market conditions.

Numerous studies of the discounts attached to restricted stocks have been published and we have periodically conducted our own studies of such discounts. It should be noted that in most of the transactions analyzed in these studies, the buyer generally expected to be able to resell the stock in the public market in the foreseeable future. The following table summarizes the results of some of these studies.

| Study | Years Covered | Marketability Discounts | | |
|---|---|---|---|---|
| | | Range | Mean | Median |
| SEC Institutional Investor | 1966 - 1969 | (15%) to 80% | 26% | 24% |
| Gelman | 1968 - 1970 | <15% to >40% | 33% | 33% |
| Moroney | 1968 - 1972 | (30%)to 90% | 36% | 33% |
| Maher | 1969 - 1973 | 3% to 76% | 35% | 33% |
| Trout | 1968 - 1972 | NA | 34% | NA |
| Standard Research Consultants | 1978 - 1982 | 7% to 91% | NA | 45% |
| Willamette Mgmt. Assoc. | 1981 - 1984 | NA | NA | 31% |
| Silber | 1981 - 1988 | (13%) to 84% | 34% | 35% |
| Management Planning | 1980 - 1995 | 0% to 58% | 28% | 29% |
| Duff & Phelps | 1992 - 1997 | (13%) to 90% | 24% | 18% |

DUFF & PHELPS, LLC

KMH 005861

## K-M INDUSTRIES HOLDING CO., INC.
### DISCOUNT FOR LACK OF MARKETABILITY

#### Securities and Exchange Commission Study

In 1971, the Securities and Exchange Commission published the Institutional Investor Study Report ("SEC Study") to serve as a basis for the Internal Revenue Service Revenue Ruling 77-287. Revenue Ruling 77-287 sets forth valuation guidelines to determine discounts for lack of marketability for securities restricted under Rule 144. The SEC Study empirically examined discounts in transactions involving securities that are restricted under Rule 144. Based on more than 300 transactions, the SEC Study found the following relationships:

| By Sales (in millions): | Average Discount Range |
|---|---|
| $ 100 ÷ | 10.1 - 20% |
| $ 20 - 100 | 10.1 - 20% |
| $ 5 - 20 | 30.1 - 40% |
| $ 1 - 5 | 30.1 - 40% |
| $ 0 - 1 | 40.1 - 50% |

| By Earnings (in millions): | |
|---|---|
| $ 10 ÷ | 10.1 - 20% |
| $ 1 - 10 | 10.1 - 20% |
| $ 0 - 1 | 20.1 - 30% |

| By Exchange: | |
|---|---|
| NYSE | 10.1 - 20% |
| ASE | 20.1 - 30% |
| OTC Reporting | 20.1 - 30% |
| OTC Non reporting | 30.1 - 40% |

Source:    "Discounts Involved in Purchases of Common Stock," in *Institutional Investor Study Report of the Securities and Exchange Commission*. Washington, D.C.: U.S. Government Printing Office, March 10, 1971. Vol. 5:2444-2456, Document No. 92-64, Part 5.

DUFF & PHELPS, LLC

KMH 005862

K-M INDUSTRIES HOLDING CO., INC.
DISCOUNT FOR LACK OF MARKETABILITY

---

### Management Planning Study

Management Planning, Inc. ("Management Planning") has conducted an ongoing restricted stock study over a period of years that updates the SEC study. Management Planning analyzed all private placements which were reported from 1980 through 1995 which met the following criteria:

- The company selling stock in a private placement must have common stock, which is equal in all other respects except marketability to the registered stock that is publicly held and actively traded.

- Sufficient data on the private transaction must be readily available to enable analysis.

- Sufficient data on the private transaction must be readily available.

- The publicly-traded common stock counterpart must be selling at a price of at least $2.00 per share.

- The company must be a domestic corporation.

- The company must not have been characterized in public disclosure documents as being in a "developmental" stage.

Based on this criteria, 200 private transactions were identified and analyzed. Subsequent elimination of start-up companies with revenues less than $3 million, companies which had suffered a deficit in the fiscal year preceding the transaction and transactions that were known to have registration rights resulted in 49 transactions meeting the final criteria.

The average and median discounts for the group of issues analyzed were 28% and 29%, respectively, with a range of 0% to 58%.

Source:    Management Planning, Inc., "The Management Planning Study, " in Christopher Z. Mercer, *Quantifying Marketability Discounts*. Memphis, TN: Peabody Publishing, LP, 1997. PP 345-70.

DUFF & PHELPS, LLC

KMH 005863

K-M INDUSTRIES HOLDING CO., INC.
DISCOUNT FOR LACK OF MARKETABILITY

Duff & Phelps Study

On June 30, 1997, Duff & Phelps completed a study involving private placements of Rule 144 stock by public companies which had essentially the same common stock publicly trading on an exchange or over the counter. The purpose of the study was to examine discounts associated with Rule 144 stock relative to the price of freely traded equivalent common stock.

Safe harbor provisions under Rule 144 allow for the resale of restricted securities and control securities without registration, subject to certain resale limitations. Restricted securities are securities acquired from the issuer or an affiliate of the issuer (controlling shareholders, certain directors, and officers) in a private transaction. Control securities are securities owned by affiliates of the issuer, whether acquired in the open market or in private transactions.

For affiliates of the issuer, the safe harbor provisions of Rule 144 restrict the sale of unregistered stock after a one year holding period as follows. The amount of stock sold in any three month period, together with any stock sold by such person within the preceding three months, cannot exceed the greater of: 1) one percent of the outstanding shares of the issuer; or 2) the average weekly trading volume for the four week period immediately preceding the proposed sale. The sale must be conducted in a brokerage transaction or through a market maker, and a notice on Form 144 must be filed with the SEC concurrently with the sale.

For non-affiliates of the issuer, the safe harbor provisions of Rule 144(k) allow the sale of unregistered stock after a two-year holding period without being subject to any of the other Rule 144 requirements.

Duff & Phelps used the Securities Data Corporation database to identify private placement issues of Rule 144 stock by public companies which have identical freely traded securities. The study analyzed 62 private placements between January 1992 to June 1997.

The average and median discounts for the group of issues analyzed were 24% and 18%, respectively, with a range of -13% (a premium) to 90%.

DUFF & PHELPS, LLC

KMH 005864

## K-M INDUSTRIES HOLDING CO., INC.
### DISCOUNT FOR LACK OF MARKETABILITY

---

### Other Studies

#### Gelman Study

Gelman analyzed the prices paid for restricted securities by four closed-end investment companies founded in 1968 and specializing in restricted securities. In total, Gelman used public disclosure documents of the issuing companies to analyze 89 transactions which occurred between 1968 and 1970. Gelman found that the average discount was 33% and that nearly 60% of the transactions reflected discounts of 30% or more.

Source:    Gelman, Milton, "An Economist-Financial Analyst's Approach to Valuing Stock of a Closely Held Company." *Journal of Taxation*, June 1972, pp. 353-4.

#### Moroney Study

Moroney analyzed 146 purchases of restricted equity securities (common stocks, convertible preferred stocks, convertible debt securities, warrants) by ten registered investment companies. Moroney found mean and median discounts of 36% and 33%, respectively. Additionally, in 55% of the transactions, the discounts were 30% or greater.

In comparing these discounts to those of a minority interest in a closely held corporation, Moroney offers the following reasons for even higher discounts in the later:

> "...in the late 1960 and early 1970s, many buyers of restricted securities felt confident they would be able to market them to the public in two or three years either by registration and public sale as a block, or by feeding them slowly into the market without registration. By contrast, most hypothetical buyers of most minority interests in closely held companies involved in tax cases haven't the foggiest idea as to when or how they will be able to sell... Literally, in many instances the buyer must prepare himself to hold the stock for an indeterminable period of time, maybe for as long as a generation."

> "Before a registered investment company buys restricted securities, the investment company's staff and investment committee have rated the investment a good risk and promising... On the other hand, a considerable number of companies whose stocks must be valued for tax purposes are palpably without promise."

Source:    Moroney, Robert E., "Most Courts Overvalue Closely Held Stocks." *Taxes*, March 1973, pp. 144-55.

DUFF & PHELPS, LLC

KMH 005865

K-M INDUSTRIES HOLDING CO., INC.
DISCOUNT FOR LACK OF MARKETABILITY

### Maher Study

Maher analyzed 34 purchases of restricted common stock by four mutual funds between 1969 and 1973. Maher found that the mean discount for lack of marketability was 35%. After eliminating the top 10% and bottom 10% of purchases in an effort to remove especially high and low risk situations, the mean discount was unchanged at 35%. Maher further noted that the discount for lack of marketability even exceeded the cost of making the stock marketable via a public offering. This was potentially due to several factors: "...by committing funds to restricted common stock, the willing buyer (a) would be denied the opportunity to take advantage of other investments, and (b) would continue to have his investment at the risk of the business until the shares could be offered to the public or another buyer is found."

Source:     Maher, J. Michael, "Discounts for Lack of Marketability for Closely-Held Business Interests." *Taxes*, September 1976, pp. 562-71.

### Trout Study

Trout analyzed the prices paid for restricted securities by six investment companies between 1968 and 1972. Utilizing data from 60 transactions with an average discount of 33%, Trout constructed economic models to estimate the discount that should be accorded a transfer of restricted securities. The variables and assumptions included in the models are described below.

- Exchange listing* - major exchange listing was associated with lower discounts
- Number of shares outstanding - a large number of shares outstanding was associated with lower discounts
- Shares purchased as % of share outstanding - control effects were associated with lower discounts while blockage effects were associated with higher discounts
- Purchases of less than 1%* - small purchases were associated with lower discounts
- Value of purchase - larger purchases were associated with higher discounts

    * Indicator variable

While the models accounted for approximately 24% of the variation in discounts observed in the subject transactions, much of the variation remained unexplained due to the nature of the purchase agreements, differences in relative bargaining power and the lack of an auction market for restricted securities. Thus, other relevant information, if any, should be used to adjust the results derived from applying these models.

Source:     Trout, Robert R., "Estimation of the Discount Associated with the Transfer of Restricted Securities." *Taxes*, June 1977, pp. 381-5.

DUFF & PHELPS, LLC

KMH 005866

K-M INDUSTRIES HOLDING CO., INC.
DISCOUNT FOR LACK OF MARKETABILITY

**Standard Research Consultants Study**

In an update to the SEC Study, Standard Research Consultants analyzed 28 private placements of restricted common stock from October 1978 through June 1982. The discounts ranged from 7% to 91% with median discount of 45%. This study found support for higher discounts for smaller companies as well as for inconsistently profitable companies.

Source:    Pittock, William F. and Stryker, Charles H., "Revenue Ruling 77-287 Revisited." *SRC Quarterly Reports*, Spring 1983, pp. 1-3.

**Willamette Study**

Willamette Management Associates, Inc. performed an analysis of 33 restricted stock transactions occurring between January 1981 and May 1984. The median discount found in this study was 31%.

Source:    Willamette Management Associates, Private Placements of Restricted Stocks, January 1981 through May 1984, in Shannon P. Pratt, *Valuing a Business: The Analysis and Appraisal of Closely Held Companies*, Third Edition. Chicago, IL: Irwin Professional Publishing, 1996.

**Silber Study**

Silber reviewed 310 private placements of common stock of publicly traded companies between 1981 and 1988. After eliminating issues that had warrants or other special provisions, 69 private placements were analyzed. The average discount for the 69 transactions was 33.75% and the range was a premium of 12.7% to a discount of 84%. Dividing the sample at the median discount of 35%, Silber found that firms with lower revenues, earnings and market capitalizations were associated with higher discounts. The results of the study are presented below:

| Discount | >35% | <35% | All |
|---|---|---|---|
| Number of companies | 34 | 35 | 69 |
| | | | |
| Percentage discount | 53.9% | 14.1% | 33.75% |
| Revenues | $13.9 | $65.4 | $40.0 |
| Earnings | ($1.4) | $3.2 | $0.9 |
| Market Capitalization | $33.3 | $74.6 | $54.0 |
| Dollar size of issue | $2.7 | $5.8 | $4.3 |
| Restricted share / total shares | 16.3% | 10.9% | 13.6% |

Source:    Silber, William L. "Discounts on Restricted Stock: The Impact of Illiquidity on Stock Prices." *Financial Analysts Journal*, July-August 1991, pp. 60-4.

KMH 005867

## K-M INDUSTRIES HOLDING CO., INC.
### DISCOUNT FOR LACK OF MARKETABILITY

**Summary of Factors Affecting the Discount for Lack of Marketability**

| Factor | Effect on Discount for Lack of Marketability | |
| --- | --- | --- |
| | Higher | Lower |
| Public markets | No foreseeable public offering | Imminent public offering |
| Other markets | No other markets | Limited market (e.g. ESOP) |
| Sale of the company | No foreseeable sale of company | Imminent sale of company |
| Dividend Policy | No foreseeable dividends | Imminent large dividends |
| Transfer restrictions | Significant transfer restrictions | No transfer restrictions |
| Pricing information | No trading activity | Recent trading activity |
| Options | Not applicable | Put option |
| Financial status | Small, weak and volatile | Large, strong and stable |
| Industry status | Unattractive for investment purposes | Attractive for investment purposes |
| Management | Weak management | Strong management |
| Other | Size of block (depends on size and circumstances)  Buy-sell agreement (depends on provisions) | |

DUFF & PHELPS, LLC

KMH 005868

## K-M INDUSTRIES HOLDING CO., INC.
### OVERVIEW ON TRACKING STOCK

Tracking stocks are being developed with greater frequency as companies seek a method of allowing investors to focus on the performance of a subsidiary or division that operates in a specific industry. Typically, a company will issue a tracking stock out of concern that the investment markets will undervalue an entire company because the markets do not understand how to allocate value to one or more of a company's major businesses.

Many believe that tracking stocks "unlock the value" of a company's divisions without the need for a spin-off or Initial Public Offering ("IPO") of that division. There are, however, several factors which must be considered in the valuation of tracking stock. These include, but are not limited to, the following:

1) The ownership interest represented by the tracking stock issue, relative to the Company's non-tracking common stock;

2) Who the shareholders of the tracking stock will be, and their relative interest in the class of tracking stock;

3) The industry in which the company being "tracked" by the stock operates in;

4) The relative voting rights of the classes of tracking stock; and

5) Tracking stocks are more likely to trade at a discount to their comparable, peer, non-tracking stock issues due to:

   - Lack of specific voting rights related to the targeted group or operation
   - Difficulty in achieving acquisition premiums in valuation
   - Potential double taxation on the sale of a targeted group
   - Ability of parent to unwind the tracking stock at predetermined formula which may not fully reflect current value
   - Market focus on product instead of underlying investment themes
   - Notwithstanding the allocation of assets and liabilities and shareholders' equity among targeted groups, holders of one group's tracking stock will be subject to all of the risks associated with the others
   - Potential divergence of interests between targeted groups and the issues that could arise in resolving such conflicts

DUFF & PHELPS, LLC

KMH 005869

REDACTED

- 52 -

KMH 005870

# EXHIBIT  G

· 2029 CENTURY PARK EAST, SUITE 820 · LOS ANGELES, CA 90067 · 310-284-8008 · FAX 310-284-8130

··KENNETH A. BODENSTEIN, CFA
*Managing Director*

## DUFF&PHELPS

October 18, 1999

Mr. William E. Moore
Trustee
K-M Industries Holding Co. Inc. Employee Stock Ownership Plan
2300 Garden Road
Monterey, CA 93940

Dear Mr. Moore:

Duff & Phelps, LLC ("Duff & Phelps") has been retained as an independent financial advisor to the Trustee of the K-M Industries Holding Co. Inc. Employee Stock Ownership Plan (the "ESOP") to provide an opinion (the "Opinion") as to the fair market value, on a non-marketable minority interest basis, of a 42% interest in the Series "I" Tracking Stock ("Tracking Stock") of K-M Industries Holding Co. ("K-M Industries"). Generally, the Tracking Stock tracks the inherent economic value of the underlying common shares of California Capital Insurance Company ("California Capital" or the "Company"). The full terms of the Tracking Stock are contained in the Amended and Restated Articles of Incorporation of Kelly-Moore Paint Company, Inc., a California Corporation dated September 30, 1998. We understand that this Opinion will be used by the Trustee in connection with a proposed transaction to purchase a 42% interest in the Tracking Stock on October 18, 1999. Duff & Phelps has previously provided financial advisory services to California Capital.

The term "fair market value" is defined as the amount at which the Tracking Stock would change hands between a willing buyer and a willing seller, each having reasonable knowledge of all relevant facts, neither being under any compulsion to act, with equity to both.

California Capital, located in Monterey, California, and its wholly owned subsidiaries, Eagle West Insurance Company and Monterey Insurance Company, write property and casualty insurance policies in California and Nevada. Principal direct lines of business are commercial multiple peril, private passenger automobile, homeowners and farmowners coverage. The Company writes all lines of business through independent agents and brokers. As of the valuation date, 100 percent of the Company's common stock was owned by K-M Industries.

In the course of our assignment, we held discussions with Company management at their offices in Monterey and reviewed the Company's recent performance and future outlook. Our financial analysis was based on audited financial statements for the six fiscal years ended December 31, 1998 and unaudited, internally prepared interim financial statements for the eight month period ended August 31, 1999. We also reviewed the Company's

*Corporate Advisors Since 1932*

DEPOSITION
EXHIBIT
*139*
4.11.8        *MN*
PENGAD 800-631-8989

CIG 008319

REDACTED

CONFIDENTIAL

CIG 008320

# EXHIBIT  H

## TRUSTEE ENGAGEMENT AGREEMENT

This Trustee Engagement Agreement is made and entered into this 2⁴ day of April, 2003 by and between North Star Trust Company ("North Star"), and K-M Industries Holdings Co., Inc. a California corporation (the "Company") and, solely for purposes of Sections 5, 12, and 14, its subsidiaries.

### RECITALS

The Company has established the K-M Industries Holdings Co., Inc. Employee Stock Ownership Plan, (the "Plan") (which is a part of the K-M Industries Holdings Co., Inc. Employee Stock Ownership Trust (the "Trust", together with the Plan referred to as the "ESOP")) for the benefit of its employees. All contributions made by the Company to the Plan are held in the Trust that was created by the Company under a separate trust agreement, with individual trustees serving as trustees of the Trust.

The Company desires to retain North Star as successor trustee of the Trust, and North Star is willing to serve as the successor trustee of the Trust, on the terms and subject to the conditions set forth in this Agreement.

### AGREEMENT

In consideration of the mutual covenants and agreements set forth in this Agreement, the parties agree to amend and restate the Trust Agreement to reflect the following:

## APPOINTMENT AND DUTIES

1.    Appointment of Trustee.  The Company hereby appoints North Star to serve as the successor trustee of the Trust, and North Star hereby accepts this appointment.  The Company acknowledges that North Star is a successor trustee of the Trust and is not liable for any actions of the prior trustee or trustees.  Concurrent with the appointment of North Star as trustee of the Trust, the Company has accepted the resignation of the prior trustees.

2.    Continuing Service.   North Star will continue to serve as the trustee of the Trust until it resigns or is removed by the Company.  North Star may resign at any time by providing 30 days' advance written notice to the Company.  The Company may remove North Star by providing North Star with 30 days' advance written notice, subject to providing North Star with satisfactory written evidence of the appointment of a successor trustee and of the acceptance by the successor trustee.

3.    Duties of Trustee.  (a) North Star shall hold and manage all contributions made by the Company to the Plan in accordance with the terms of the Plan and of the Trust Agreement, to the extent that they are consistent with the provisions of the Employee Retirement Income

DALLAS3 858718v7 53313-00006



EXHIBIT
255
Hommel   5-08-08

MT 000543
Confidential

Security Act of 1974 ("ERISA"). North Star will exercise its independent discretionary judgment in connection with the acquisition, custody and disposal of Trust assets in accordance with the requirements of part 4 of Title I of ERISA and the Plan. The parties agree to amend in restated form the Trust Agreement to provide North Star with such independent discretionary authority.

(b)     North Star will maintain accurate records regarding the acquisition and holding of Company stock and of any other Trust investments and regarding distributions to Plan participants. North Star will provide quarterly reports of such activities. North Star will not provide participant recordkeeping, accounting, or tax or other reporting services for the Plan. These services will be provided by the Plan Administrator or its agent; and the Company or the Plan Administrator will provide periodic reports to North Star demonstrating that these services are being provided by the Plan Administrator or its agent. If requested by the Company, North Star will prepare IRS Forms 1099 for delivery to participants in the Plan when their benefits are distributed.

4.     Valuation Preparation. To the extent necessary for completing the annual valuation of the common stock for administrative purposes and as otherwise agreed to among the parties, the Company: (i) shall reasonably cooperate with North Star and its advisors to provide information reasonably requested by North Star and its advisors relevant to such valuation; and (ii) shall reasonably grant to North Star and its advisors reasonable access to the officers and directors of the Company with respect to such valuation.

5.     Retention of Financial Advisor. North Star will engage the services of a qualified independent financial advisor, who will report directly to North Star and not to the Company. North Star or the financial advisor will be entitled to timely periodic payment by the Company of all reasonable fees and expenses of the financial advisor. The Company and its subsidiaries shall pay all reasonable fees and expenses of the financial advisor that are incurred by North Star. If North Star pays such fees and expenses of its financial advisor, the Company shall immediately reimburse North Star for such expenses.

6.     Retention of Legal Counsel. North Star will engage its own independent legal counsel. North Star or its legal counsel shall be entitled to timely payments on a monthly basis by the Company for all reasonable fees and expenses of North Star's legal counsel. The Company shall pay all reasonable legal fees and expenses that are incurred by North Star. If North Star pays such fees and expenses of its financial advisor, the Company shall immediately reimburse North Star for such expenses.

7.     Confidentiality. North Star shall use the information disclosed to it by the Company only for the purpose of performing services as trustee. North Star shall restrict disclosure of the information that it obtains from the Company to those persons who require knowledge of information in order to help North Star perform its services as trustee (including, but not limited to, officers, directors, employees, and professional advisors of North Star).

MT 000544
Confidential

## COMPENSATION

8.    _Acceptance Fee_.  The Company shall pay to North Star the sum of $15,000 as compensation for accepting the fiduciary responsibility in connection with the Trust.  Such fees shall compensate North Star for its time and expense to review the existing documentation and setup of accounts for the Plan.

9.    _Annual Fees_.  In consideration for North Star's ongoing service as trustee of the Trust and as custodian of the assets of the Trust, the Company shall pay to North Star an annual fee as set forth in the  Trustee Fee Addendum (which is incorporated by reference) payable as follows:  (i) semi-annually during the first year of the engagement with the first payment due on the date hereof and the next payment due on the first day of the sixth month thereafter; and (ii) quarterly thereafter, which shall be subject to change on January 1, 2005 and from time to time thereafter, and any reasonable expenses incurred on behalf of  (such as, but not limited to, expenses relating to its financial advisor and legal counsel) or by North Star (such as, but not limited to, travel, postage, long distance telephone, and copying charges).

10.    _Fees for Transactions and Extraordinary Services_.  In addition to the fees due and payable to North Star under Sections 8 and 9, the Company agrees to pay additional fees to North Star for any services performed by North Star in addition to those provided for in this Agreement. Examples of additional services that may be provided by North Star from time to time include: (1) Involvement in a transaction involving the Company and/or the ESOP; (2) Involvement in providing counsel or testimony in connection with, or other involvement in, litigation relating to the ESOP; (3) Involvement in responding to hostile, contested, or unsolicited tender offers for shares of the Company's stock held by the ESOP and/or assets of the Company; and (4) Involvement in exercising fiduciary responsibilities in connection with proposed mergers, acquisitions, divestitures, public offerings, reorganizations, or similar transactions involving the Company.  The scope of such  services shall be agreed upon with the Company prior to providing such services; provided that North Star is not required to take immediate action.    Unless otherwise agreed, North Star will charge for such   services based size and complexity of a transaction or based on the time spent on a particular matter by officers or employees of North Star, charged at their normal hourly rates then in effect (currently $350.00 per hour).

11.    _Reimbursement of Expenses_.  The Company shall immediately reimburse North Star for all reasonable expenses incurred by North Star in connection with the performance of its services pursuant to this Agreement.    Expenses for which North Star shall be entitled to reimbursement shall include reasonable charges for fees and expenses of North Star's financial advisors and legal counsel and reasonable out-of-pocket expenses incurred by officers or employees of North Star, such as charges for travel, lodging, and private express mail deliveries.

12.    _Reimbursement from the Trust_.  Notwithstanding any provision herein for the payment of costs and expenses by the Company or its subsidiaries, the parties acknowledge that the Trust is and shall continue to be liable for the payment of all costs and expenses of administering the Plan, unless such costs and expenses are paid by the Company or its

DALLAS3 858718v7 53313-00006

MT 000545
Confidential

subsidiaries. To the extent that the Company shall fail to pay the fees due to North Star or to reimburse North Star for its expenses on a timely basis, the Company agrees that North Star shall be paid the amounts due to it from the Trust. If there is not sufficient cash in the Trust to pay the amounts due to North Star, then North Star shall have the right to offset the amounts due to it against the assets of the Trust, and North Star shall be authorized to either sell assets of the Trust, or put such shares to the Company (and the Company agrees to immediately purchase such shares for fair market value as of the date of the transaction) to the extent necessary to obtain sufficient cash to pay the amounts due to North Star.

## TAX QUALIFICATION PLAN

13.    <u>Representations and Warranties of the Company</u>. The Company hereby represents and warrants to North Star as follows:

(a)    The Plan is qualified under Section 401(a) of the Internal Revenue Code of 1986 (the "Code") and is qualified as an "employee stock ownership plan" within the meaning of Section 4975 (e)(7) of the Code and Section 407(d)(6) of ERISA;

(b)    The Trust is exempt from taxation under Section 501(a) of the Code; and

(c)    The Company has received from the Internal Revenue Service a letter of determination that: (a) the Plan constitutes an "employee stock ownership plan" within the meaning of Section 4975(e)(7) of the Code; (b) the Plan is qualified under Section 401(a) of the Code; and (c) the Trust is exempt from taxation under Section 501(a) of the Code.

## INDEMNIFICATION

14.    <u>Indemnification</u>. For purposes of this Section 14, the term "Indemnitees" shall mean North Star and its officers, directors, employees, and agents. Subject to the applicable provisions of ERISA, the Company shall indemnify the Indemnitees for any loss, cost, expense, or other damage, including reasonable attorney's fees, suffered by any of the Indemnitees resulting from or incurred with respect to any legal proceedings related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement. The indemnification provided for in this Section 14 shall extend to: (a) any action taken or not taken by any of the Indemnitees at the direction or request of the Plan Administrator or of any agent of the Plan Administrator; (b) any action taken or not taken by the prior trustee or trustees, and (c) all reasonable costs and expenses incurred by the Indemnitees in enforcing the indemnification provisions of this Section 14, including reasonable attorney's fees and court costs. However, these indemnification provisions shall not apply to the extent that any loss, cost, expense, or damage with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from the gross negligence of one or more of the Indemnitees or from the willful misconduct of one or more of the Indemnitees.

DALLAS3 858718v7 53313-00006

MT 000546
Confidential

15.    Defense of Actions. (a) Notice and Assumption of Defense. If one or more of the Indemnitees receives notice of any legal proceeding with respect to which indemnification may be sought against the Company pursuant to Section 14 (a "Proceeding"), the Indemnitees shall notify the Company of the Proceeding in writing within 10 days of the commencement of the Proceeding. However, failure by the Indemnitees to so notify the Company shall not relieve the Company from any liability, except to the extent that the failure to notify the Company shall actually have prejudiced the defense of any Proceeding. The Company will be entitled to assume the defense of the Proceeding with counsel reasonably satisfactory to the Indemnitees or to otherwise participate in the Proceeding. If the Company elects to assume the defense of the Proceeding, it then shall pay all reasonable costs of defense.

(b)    Reimbursement of Expenses. The Company shall reimburse the Indemnitees for all reasonable costs of investigation, of testifying at any hearing, of responding to discovery proceedings, and of consulting with the Company or the attorneys for the Company. The Indemnitees shall have the right to employ their own counsel in any Proceeding, and the reasonable fees and expenses of the Indemnitees' counsel shall be paid by the Company as they are incurred, if any one or more of the following conditions are satisfied:

(i) the employment by the Indemnitees of their own counsel shall be authorized by the Company;

(ii) the Indemnitees are advised by their counsel that there may  be one or more legal defenses available to them which are different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees);

(iii) the Company fails to assume the defense of the Proceeding and to employ counsel satisfactory to the Indemnitees within 14 days after being notified of the commencement of the Proceeding; or

(iv) the Indemnitees shall be informed by their counsel that a conflict exists with the counsel selected by the Company.

16.    Governmental Investigations. The provisions of this Section 16 shall apply if any governmental or private commission or regulatory authority shall investigate any of the Indemnitees, or shall require any of the Indemnitees to testify at any hearing or in connection with any investigation, regarding the performance of services by the Indemnitees pursuant to this Agreement. Investigations covered by this Section 16 shall include, but shall not be limited to, investigations conducted by any agency of the United States or of the legislature of any state, or by a stock exchange or other entity having authority to investigate or regulate similar to that of a stock exchange. In the case of any investigation, the Indemnitees shall have the right to employ separate counsel to represent them, and the Company shall pay the reasonable fees and expenses of the Indemnitees' counsel as they are incurred. North Star agrees that it shall reasonably cooperate with the Company in connection with any investigation.

DALLAS3 858718v7 53313-00006

MT 000547
Confidential

17.    Limitation.  If a court of competent jurisdiction shall hold that any payment or award of indemnification pursuant to the terms of this Agreement shall be unavailable to any one or more of the Indemnitees from the Company for any reason other than their gross negligence or willful misconduct, the Company then shall reimburse the affected Indemnitees, as required by Section 14, but taking into account the basis for the denial of full indemnification by the court.

**MISCELLANEOUS**

18.    Successors and Assigns.  The provisions of this Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of the Company and of North Star.  Neither termination nor completion of the engagement of North Star or of any of the Indemnitees shall affect the indemnification provisions of this Agreement, which shall remain operative and in full force and effect after the termination or completion of the engagement. The Company shall not merge or consolidate with any other corporation or entity in a transaction after which the Company is not the surviving entity, and the Company shall not sell all or substantially all of its assets to any other person, corporation, or entity, unless the other person, corporation, or entity expressly assumes the duties and obligations of the Company as set forth in this Agreement.

19.    Notice.  Any notice required or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by certified or by private express mail, postage prepaid, and properly addressed as follows:

| | |
|---|---|
| To the Company: | K-M Industries Holdings Co., Inc.<br>987 Commercial Street<br>San Carlos, California  94070<br>Attention:  Steve Ferrari |
| Copies to: | Pillsbury Winthrop, LLP<br>50 Fremont Street<br>San Francisco, California  94105<br>Attention:  Cindy Schlaefer |
| To North Star: | North Star Trust Company<br>500 West Madison Street, Suite 3800<br>Chicago, IL  60661<br>Attention:  John G. Hommel, Senior Vice President<br>Trust Officer |
| Copies to: | Jenkens & Gilchrist, P.c.<br>1445 Ross Avenue, Suite 3200<br>Dallas, Texas  75202<br>Attention:  John A. Kober |

21.    Partial Invalidity.  If any portion of this Agreement shall be determined to be unenforceable, the remaining provisions shall remain in full force and effect.

-6-

MT 000548
Confidential

21.    Partial Invalidity.  If any portion of this Agreement shall be determined to be unenforceable, the remaining provisions shall remain in full force and effect.

22.    Waivers.  Either the Company or North Star may, by written notice to the other party: (a) extend the time for the performance of any of the obligations or other actions of the other party under this Agreement; or (b) waive or modify performance of any of the obligations of the other party under this Agreement.  Except as provided in the preceding sentence, no action taken pursuant to this Agreement shall be deemed to constitute a waiver by that party of compliance with any of the obligations contained in this Agreement.  The waiver by either party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

23.    Governing Law.  This Agreement shall be interpreted and enforced in accordance with, and governed by, the laws of the State of Illinois.

24.    Entire Agreement.  This Agreement supersedes all prior agreements (including the existing Trust Agreement, but not the Trust Agreement adopted after this engagement with respect to the duties of the Trustee unless otherwise incorporated by reference) and understandings between the parties and may not be changed or terminated orally.  No attempted change, termination, or waiver of any of the provisions of this Agreement shall be binding, unless in writing and signed by the party against whom the change, termination, or waiver is sought to be enforced.

IN WITNESS WHEREOF, the Company and North Star have caused this Agreement to be signed as of the day and year first written above.

*North Star Trust Company*

By: _____

John G. Hommel, Senior Vice President
and Trust Officer

*K-M Industries Holdings Co., Inc.*

By: _____

Print Name:    William E. Moore

Its:    Chairman of the Board

MT 000549
Confidential

*Subsidiaries (Solely for Purposes of Sections 5, 12, and 14):*

*Kelly-Moore Paint Company, Inc.*

By: ~~J.Den Emora~~

Print Name:    William E. Moore

Its:    Chairman of the Board

*California Capital Insurance Company*

By: ~~William Emora~~

Print Name:    William E. Moore

Its:    Chairman of the Board

DALLAS3 858718v7 53313-00006

MT 000550
Confidential

**TRUSTEE FEE ADDENDUM**
**ANNUAL FEES**

| | Asset Range | Basis Points | Annual Fee |
|---|---|---|---|
| | | | $75,000 |
| Annual Fee | | | |
| Pass Through Voting | Each Participant and Beneficiary | $3.00 plus out-of-pocket expenses | |
| Stock Distributions (Incl. 1099) | Each Participant and Beneficiary | $50.00 | |

DALLAS3 858718v7 53313-00006

MT 000551
Confidential

# EXHIBIT I

HENNIGAN, BENNETT & DORMAN LLP

LAWYERS
865 SOUTH FIGUEROA STREET
SUITE 2900
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 694-1200
FACSIMILE (213) 694-1234

DIRECT PHONE (213) 694-1008
SMITHL@HBDLAWYERS.COM

June 11, 2008

**VIA ELECTRONIC AND U.S. MAIL**

Todd F. Jackson, Esq.
Lewis, Feinberg, Renaker & Jackson, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612

> Re:    **Kelly Moore**

Dear Todd:

As you know, Desiree Moore is not mentioned in Plaintiffs' responses to the contention interrogatories aimed to gather the factual basis for Plaintiffs' breach of fiduciary duty claim, as set forth in Plaintiffs' Supplemental Responses to the First Set of Interrogatories, which Responses were served after the close of discovery on May 29, 2008, pursuant to the parties' agreement. In a June 4 email, Margo Hasselman of your office confirmed that "no facts have been withheld on the basis of the work-product objection we articulated…[W]e have attempted to disclose the primary and material facts supporting the particular contentions you have identified." Mrs. Moore was also not mentioned in the allegations relating to breach of fiduciary duty in Plaintiffs' recent motion for class certification.

Accordingly, Caroline Walters and I called you on Friday, June 6, to confirm that Plaintiffs were no longer asserting a breach of fiduciary claim against Mrs. Moore. You indicated that you would review the Interrogatories and respond to our request for confirmation. Yesterday, you called to inform us that Plaintiffs do intend to assert a breach of fiduciary claim against Desiree Moore, and that you would again be supplementing the Interrogatory Responses to include references to her, along with relevant facts underlying the claim for breach of fiduciary against Desiree Moore.

Your decision to add additional facts at this late juncture (which facts plainly are *not* newly discovered) is improper, and violates the agreement reached between the parties relating to the extension of discovery. Moreover, your justification for these belated amendments, that "you can supplement your responses at any time," is ill-conceived and contrary to the spirit of discovery, which requires that responses be amended in a *timely* fashion. *See, e.g., United States*

HENNIGAN, BENNETT & DORMAN LLP

Todd F. Jackson, Esq.
June 11, 2008
Page 2


*v. Boyce*, 148 F. Supp. 2d 1069, 1085-86 (S.D. Cal. 2001) (noting it is improper to rely upon
FRCP 26(e) to delay responding to contention interrogatories until the eve of trial); *Shelak v.
White Motor Co.*, 581 F.2d 1155, 1160 (5th Cir. 1978) (discussing the impropriety of delay in
revealing plaintiff's contentions under modern discovery rules).

As you know, summary judgment motions are due on June 26, only two weeks away. Our
ability to brief those motions is being unjustly and severely prejudiced by Plaintiffs' refusal to
disclose to us all material facts underlying their claims. Instead, Plaintiffs' claims are a moving
target. Thus, while we reserve all rights to object to these late responses, we request that you
send to us your proposed *second* set of Supplemental Interrogatory Responses no later than
tomorrow, and that you abide by the June 4 representations made to us concerning Plaintiffs'
disclosure of all material facts underlying their claims. Moreover, we request that you redline
any additions or changes made in such Interrogatory Responses.

We look forward to an expeditious response.

Sincerely,

Lauren A. Smith


LAS/ocs

# EXHIBIT J

1  Daniel Feinberg – CA State Bar No. 135983
   Todd F. Jackson – CA State Bar No. 202598
2  Margaret E. Hasselman – CA State Bar No. 228529
   Nina R. Wasow – CA State Bar No. 242047
3  Kirsten G. Scott – CA State Bar No.253464
   LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
4  1330 Broadway, Suite 1800
   Oakland, CA  94612
5  Telephone: (510) 839-6824
   Facsimile: (510) 839-7839
6  Email:  dfeinberg@lewisfeinberg.com
   Email:  tjackson@lewisfeinberg.com
7  Email:  mhasselman@lewisfeinberg.com
   Email:  nwasow@lewisfeinberg.com
8  Email:  kscott@lewisfeinberg.com

9  *Attorneys for Plaintiffs and the Proposed Class*
   (Additional counsel listed within)

10

11              IN THE UNITED STATES DISTRICT COURT

12             FOR THE NORTHERN DISTRICT OF CALIFORNIA

13               SAN FRANCISCO AND OAKLAND DIVISION

14  THOMAS FERNANDEZ et al.,            )  Case No. C-06-07339 CW
                                        )
15                     Plaintiffs,      )  **PLAINTIFFS' SUPPLEMENTAL**
                                        )  **RESPONSES TO DEFENDANT K-M**
16         vs.                          )  **INDUSTRIES HOLDING CO., INC.'S**
                                        )  **FIRST SET OF INTERROGATORIES**
17  K-M INDUSTRIES HOLDING CO., INC.;   )  **TO PLAINTIFFS**
    et al.,                             )
18                                      )
                       Defendants.      )
19  _____ )

20

21  PROPOUNDING PARTY:   Defendant K-M INDUSTRIES HOLDING CO., INC.

22  RESPONDING PARTY:    Plaintiffs THOMAS FERNANDEZ, LORA SMITH, AND TOSHA
                         THOMAS
23
    SET NUMBER:          ONE
24
                         PRELIMINARY STATEMENT
25
         All of these responses are based only upon the information that is presently available to
26
    and specifically known by Plaintiffs, except as to those matters stated on their information and
27
    belief, and as to those matters they believe them to be true.  Independent investigation, legal
28

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                    Page 1

1   research, and analysis may supply additional facts and add meaning to the known facts, as well as

2   establish entirely new factual conclusions and legal contentions, all of which may lead to the

3   discovery of additional information, thereby resulting in additions to, changes in, and variations

4   from, these responses.

5          These responses are given without prejudice to Plaintiffs' right to produce evidence of any

6   subsequently discovered documents or compiled facts or determinations thereof that Plaintiffs

7   may later locate or discover.  Accordingly, Plaintiffs reserve the right to change any and all of

8   these responses as additional facts are ascertained, analyses are made, legal research is completed,

9   contentions are made, and documents are located.  Moreover, all information is being produced

10  only for the purpose of this litigation.

11         With regard to each interrogatory, Plaintiffs reserve the right, notwithstanding these

12  responses, to employ at trial or in any pre-trial proceeding, information subsequently obtained or

13  discovered, information the materiality of which is not presently ascertained, or information

14  Plaintiffs do not regard as coming within the scope of these interrogatories as Plaintiffs

15  understand them.

16         Any information within the scope of the attorney-client privilege, the attorney work

17  product doctrine, or any other privilege or protection that is inadvertently disclosed herein is not

18  intended to be and should not be construed to be a waiver of any applicable privilege or immunity

19  from disclosure, except where such privilege is expressly waived by Plaintiffs in writing.  Plaintiffs

20  reserve the right to assert these privileges at any time in these proceedings and further reserves the

21  right to request the return of all privileged information, including copies of the responses

22  themselves.  In addition, all evidentiary objections are reserved and no waiver of any objection is

23  to be implied from any response.  To the extent that a response might arguably waive an

24  otherwise assertable objection or claim of privilege, such waiver shall be limited to the specific

25  response only and shall not extend to any other discovery.

26         Plaintiffs make no incidental or implied admissions with regard to the contents of these

27  responses.  The fact that Plaintiffs have responded or objected to any interrogatory or any part

28  thereof should not be taken as an admission that Plaintiffs accept or admit the existence of any

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                    Page 2

1  facts set forth or assumed by Propounding Party's interrogatory, or that such response or

2  objection constitutes admissible evidence. The fact that Plaintiffs have answered part or all of any

3  interrogatory is not intended and shall not be construed to be a waiver by Plaintiffs of any

4  objections to any interrogatory or to further inquiry into the subject matter of any interrogatory.

5  These responses are made solely for the purpose of this action. Each response is subject to all

6  objections as to competence, relevance, materiality, propriety, admissibility, privacy, privilege,

7  and any and all other objections that would require exclusion of any statement contained here if

8  any such requests were asked of, or any statement contained here were made by, a witness

9  present and testifying in court, all of which objections and grounds are reserved and may be

10  interposed at the time of trial.

11       This preliminary statement is incorporated into each response by this reference.

12                              **GENERAL OBJECTIONS**

13       The following objections apply to the entire set of responses and are incorporated by

14  reference as though fully set forth in each response to each individual interrogatory listed below:

15       1.    Plaintiffs object to each interrogatory to the extent it calls for disclosure of

16  communications, information, or documents that are protected by the attorney-client privilege, the

17  attorney work product doctrine, Federal Rule of Civil Procedure 26(b)(4)(B), Plaintiffs' privacy

18  rights, the privacy rights of others, or any other constitutional, statutory or common law privilege

19  or protection.

20       2.    Plaintiffs object to each interrogatory to the extent it calls for premature disclosure

21  of expert testimony.

22       3.    Plaintiffs object to each interrogatory to the extent it calls for the disclosure of

23  privileged communication with consulting experts.

24       4.    Plaintiffs object to each interrogatory as unduly burdensome, oppressive,

25  harassing, and abusive of the discovery process to the extent that they, individually or

26  cumulatively, purport to seek to impose obligations upon Plaintiffs beyond those authorized by

27  the Federal Rules of Civil Procedure, the Local Rules of the Court, and/or the Court's orders in

28  this action.

1    5.    Plaintiffs object to the entire set of interrogatories, and to each interrogatory

2    individually, to the extent it is overly broad, vague, ambiguous, unduly burdensome, harassing,

3    oppressive, abusive of the discovery process, or generally non-specific as to indicate what a full

4    and complete response would be.  Such vagueness appears frequently in undefined terms and

5    phrases.  Where possible, however, Plaintiffs will make reasonable assumptions as to Defendant's

6    intended meaning and will respond accordingly, while preserving their objections as to vagueness,

7    ambiguity, and uncertainty.

8    6.    Plaintiffs object to each interrogatory as unduly burdensome, oppressive,

9    harassing, and abusive of the discovery process to the extent it requires the production of

10    information and/or documents already produced to Defendant or by Defendant in this action, or

11    within the possession, custody or control of third parties or public records, and therefore equally

12    available to Defendant.

13    7.    Plaintiffs object to each interrogatory as unduly burdensome, oppressive,

14    harassing, and abusive of the discovery process to the extent it requires the production of

15    information and/or documents within the possession, custody or control of the Defendant.

16    8.    Plaintiffs object to each interrogatory as unduly burdensome, oppressive,

17    harassing, and abusive of the discovery process to the extent it seeks information and/or the

18    production of documents and/or things which are not in Plaintiffs' possession, control, or custody.

19    9.    Plaintiffs object to Defendant's definition of the word "CONCERNING" as

20    overbroad and unduly burdensome because the definition "related in any way to the matter in

21    question" and the additional defining terms, including "reflecting, referring to, referencing,

22    identifying, explaining, summarizing, documenting, recording, constituting, discussing,

23    quantifying, and describing" potentially encompasses information far beyond that relevant to the

24    claims at issue in this action.  In the context of the Interrogatories, which relate to certain

25    allegations set forth in the Second Amended Complaint, such a definition is unreasonably

26    overbroad and unduly burdensome.  Therefore Plaintiffs interpret each use of the word

27    CONCERNING in the Interrogatories as though it were the word SUPPORTING.

28    10.    Plaintiffs object to the definition "STATE ALL FACTS" as overbroad and unduly

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                                    Page 4

1  burdensome because it requests a "full and complete statement of all facts and application of facts

2  to law relating to the subject matter of the interrogatory including the IDENTITY of any

3  PERSON having knowledge of any such fact and the IDENTITY of any DOCUMENT which

4  concerns, refers, relates, or evidences such facts." Such a definition potentially encompasses

5  information far beyond that relevant to the claims at issue in this action because "related to" is

6  vague and potentially limitless. Plaintiffs further object to this definition as compound by virtue of

7  requiring three separate responses to each interrogatory. Plaintiffs further object to this definition

8  as calling for production of protected attorney work product because it requests "application of

9  facts to law," which requires the revelation of attorneys' opinions and mental impressions relating

10 to the claims in the case. Plaintiffs will respond to each interrogatory to the extent possible

11 without revealing protected attorney work product.

12       11.    Plaintiffs object to each interrogatory as unduly burdensome, oppressive,

13 harassing, and abusive of the discovery process because they impose a high burden on Plaintiffs to

14 respond, but the benefit to Defendants of receiving answers from Plaintiffs is minimal, because the

15 interrogatories request facts to which Defendants already have access because they within the

16 knowledge of Defendants or within the documents produced by Defendants. Thus, the burden on

17 Plaintiffs vastly outweighs any possible benefit to Defendants, rendering the interrogatories

18 inappropriate.

19       12.    Plaintiffs assert these objections without waiving or intending to waive any

20 objections as to competency, relevancy, materiality, or privilege.

21       13.    Without waiving any of the foregoing General Objections, each of which is hereby

22 expressly incorporated into each individual response as if fully restated therein, Plaintiff responds,

23 as set forth below, subject to the following additional reservations:

24            a.     The right to object on any permissible ground whatsoever, including, but

25 not limited to, competency, vagueness, relevance, and materiality, to the admission into evidence

26 or any other use of any of these responses at the trial of this action or at any other proceeding in

27 this action or by any other action;

28            b.     The right to object on any permissible ground whatsoever to any demand

1    for further responses to the interrogatories or any other discovery procedures involving or relating

2    to the subject matter of the responses; and

3                    c.    The right at any time to revise, correct, add to, or clarify any of the

4    responses set forth herein.

5            14.    These General Objections and Limitations apply to each interrogatory as though

6    restated in full therein. The failure to mention any of the foregoing General Objections and

7    Limitations in the specific responses set forth below shall not be deemed a waiver of such

8    objection or limitation.

9            Subject to and without waiving the foregoing objections, and incorporating them by

10    reference into each of the responses provided below, Plaintiffs respond to Defendant K-M

11    Industries Holding Co. Inc.'s First Set of Interrogatories to Plaintiffs as follows:

12                            **INTERROGATORIES**

13    **INTERROGATORY NO. 1:**

14            STATE ALL FACTS CONCERNING any COMMUNICATION at any time between

15    YOU and DEFENDANTS CONCERNING the value of the KMH ESOP.

16    **RESPONSE TO INTERROGATORY NO. 1:**

17            Plaintiffs incorporate their general objections by reference. Plaintiffs further object to this

18    Interrogatory on the ground that it is vague and ambiguous and fails to describe with reasonable

19    particularity the information sought, and requires Plaintiffs to speculate as to the meaning of the

20    undefined term "value." Plaintiffs further object to this interrogatory as compound, overbroad

21    and unduly burdensome by virtue of its inclusion of the terms "STATE ALL FACTS" and

22    "CONCERNING," to which Plaintiffs object as compound, overbroad and unduly burdensome, as

23    described in the General Objections above. Plaintiffs further object to this Interrogatory as

24    duplicative of Interrogatory No. 25 and of Interrogatory No. 1 served by the KMH ESOP

25    Committee and therefore particularly burdensome, harassing, oppressive, and abusive of the

26    discovery process. Plaintiffs further object to this Interrogatory as premature, unduly

27    burdensome, harassing, oppressive, and abusive of the discovery process on the grounds that it

28    constitutes an improper contention interrogatory and that investigation and discovery in this case

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                          Page 6

1   are ongoing. Plaintiffs further object to this Interrogatory on the ground that it seeks

2   communications, information, or documents that are protected by the attorney-client privilege

3   and/or the attorney work product doctrine. Plaintiffs further object to this Interrogatory on the

4   grounds that it is unduly burdensome, harassing, oppressive, and abusive of the discovery process

5   because it requests production of information and documents equally available to Defendant

6   because Defendant has equal access to all documents produced by all parties to this action and by

7   third parties, and has equal access to all transcripts of depositions taken by any party in this

8   action. Any further description of the documents and information responsive to this Interrogatory

9   would require revelation of attorneys' mental impressions, strategies, analysis of documents and

10  testimony, and opinions regarding those materials' role in the proof of Plaintiffs' case, which is

11  protected by the attorney work product doctrine. Plaintiffs do not waive any other objection that

12  may apply.

13          Subject to and without waiving the foregoing objections and their right to supplement any

14  answers as further facts are discovered or to rely upon facts not described in this response,

15  Plaintiffs provide the following response: Plaintiffs each testified regarding communications with

16  their former employers, and with Defendant North Star Trust Co., in their depositions, some of

17  which related to the purported value of Plaintiffs' accounts in the ESOP. Smith Dep. 35:3-37:4,

18  38:19-40:24, 53:19-56:2, 81:10-82:22, 84:12-87:21, 109:23-117:20, 125:18-130:19, 133:8-

19  135:9, 142:15-146:17, 150:5-157:7, 160:13-172:4, 173:24-174:16, 175:1-176:3. Thomas Dep.

20  12:22-13:16, 75:23-76:18, 81:3-89:9, 91:19-96:7, 97:5-101:15, 104:15-117:10, 119:12-126:3,

21  132:3-134:6, 135:7-150:12, 156:22-168:3, 172:1-173:8, 177:13-187:14, 199:2-9, 209:14-210:14.

22  Fernandez Dep. 31:16-36:18, 40:6-12, 85:18-89:12, 93:3-94:16, 95:25-99:24, 102:7-14, 118:16-

23  119:8, 121:14-123:10, 130:12-132:20, 134:14-146:10, 154:1-156:7, 157:19-163:10, 181:4-

24  182:18, 187:1-188:18. Plaintiffs further identify Deposition Exhs 9, 27, 28, 55, 59, 60, 83, 95-97,

25  116-120, 137, 147-150, 153-166, 168-179, 183, 187-211, 217, 219-221, 223, 228-235.

26  Furthermore, Messrs. Stritmatter, Cazzolla, Mines, and Cristiano also testified regarding

27  communications with employees and former employees regarding the value of the KMH ESOP.

28  Stritmatter Dep. 103:17-104:8, 177:16-178:18, 198:1-15, 237:7-241:13. Cazzolla Dep. 24:24-

1    25:1, 93:21-97:25, 169:24-175:4.  Mines Dep. 61:19-62:15, 231:1-231:15, 234:13-235:3.

2    Cristiano Dep. 165:15-173:1, 205:20-212:7.  Plaintiffs further identify Deposition Exhibits 83,

3    116, 117, and 118.  Plaintiffs are unable to state further facts and identify further documents

4    without revealing information protected by the attorney work-product doctrine, and on that basis

5    will not further respond.

6    **INTERROGATORY NO. 2:**

7        STATE ALL FACTS CONCERNING YOUR contention in paragraph 28 of the

8    COMPLAINT that "the Defendant Fiduciaries failed to ensure that they secured an independent

9    expert assessment of the fair market value of the KMH Series P stock purchased by the Paint Plan

10   on October 13, 1998."

11   **RESPONSE TO INTERROGATORY NO. 2:**

12       Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to this

13   interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of the

14   terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound,

15   overbroad and unduly burdensome, as described in the General Objections above.  Plaintiffs

16   further object to this Interrogatory on the ground that it seeks the identity of, facts known by, and

17   opinions held by Plaintiffs' consulting, non-testifying experts.  Such information is shielded from

18   disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work product privilege.  Plaintiffs

19   further object to this Interrogatory as duplicative of Interrogatories Nos. 2 and 5 and of

20   Interrogatory No. 7 served by the KMH ESOP Committee and therefore particularly burdensome,

21   harassing, oppressive, and abusive of the discovery process.  Plaintiffs further object to this

22   Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the

23   discovery process on the grounds that it constitutes an improper contention interrogatory and that

24   investigation and discovery in this case are ongoing.  Plaintiffs further object to this Interrogatory

25   on the ground that it seeks communications, information, or documents that are protected by the

26   attorney-client privilege and/or the attorney work product doctrine.  Plaintiffs further object to

27   this Interrogatory on the grounds that it is unduly burdensome, harassing, oppressive, and abusive

28   of the discovery process because it requests production of information and documents equally

1  available to Defendant because Defendant has equal access to all documents produced by all

2  parties to this action and by third parties, and has equal access to all transcripts of depositions

3  taken by any party in this action.  Any further description of the documents and information

4  responsive to this Interrogatory would require revelation of attorneys' mental impressions,

5  strategies, analysis of documents and testimony, and opinions regarding those materials' role in

6  the proof of Plaintiffs' case, which is protected by the attorney work product doctrine.  Plaintiffs

7  do not waive any other objection that may apply.

8          Subject to and without waiving the foregoing objections and their right to supplement any

9  answers as further facts are discovered or to rely upon facts not described in this response,

10 Plaintiffs provide the following response:  Messrs. Stritmatter, Cristiano, Ferrari, Ireland, and

11 Menke all testified with regard to the qualifications of and process used to hire Mr. B.J. Brooks to

12 perform a valuation of the KMH Series P stock purchased by the Paint Plan on October 13, 1998.

13 Stritmatter Dep. 201:3-202:13, 205:3-206:18, 208:14-210:13.  Cristiano Dep. 173:2-177:4.

14 Ireland Dep. 23:1-28:25.  Menke Dep. 232:5-239:14.  Ferrari Dep. 224:9-234:6.  Plaintiffs further

15 identify Deposition Exhibits 9 and 55.  Plaintiffs further incorporate by reference their responses

16 to Interrogatories Nos. 3 and 5 and to Interrogatory No. 7 served by the KMH ESOP Committee.

17 Plaintiffs are unable to state further facts and identify further documents without revealing

18 information protected by the attorney work-product doctrine, and on that basis will not further

19 respond.

20 **INTERROGATORY NO. 3:**

21          STATE ALL FACTS CONCERNING YOUR contention in paragraph 29 of the

22 COMPLAINT that "the Defendant Fiduciaries failed to investigate adequately the qualifications of

23 any valuation expert retained to prepare the valuation of KMH in connection with the October 13,

24 1998 purchase of KMH series P stock by the Paint Plan."

25 **RESPONSE TO INTERROGATORY NO. 3:**

26          Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to this

27 interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of the

28 terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound,

1  overbroad and unduly burdensome, as described in the General Objections above. Plaintiffs

2  further object to this Interrogatory on the ground that it seeks the identity of, facts known by, and

3  opinions held by Plaintiffs' consulting, non-testifying experts. Such information is shielded from

4  disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs

5  further object to this Interrogatory as duplicative of Interrogatories Nos. 2 and 5 and of

6  Interrogatory No. 7 served by the KMH ESOP Committee and therefore particularly burdensome,

7  harassing, oppressive, and abusive of the discovery process. Plaintiffs further object to this

8  Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the

9  discovery process on the grounds that it constitutes an improper contention interrogatory and that

10  investigation and discovery in this case are ongoing. Plaintiffs further object to this Interrogatory

11  on the ground that it seeks communications, information, or documents that are protected by the

12  attorney-client privilege and/or the attorney work product doctrine. Plaintiffs further object to

13  this Interrogatory on the grounds that it is unduly burdensome, harassing, oppressive, and abusive

14  of the discovery process because it requests production of information and documents equally

15  available to Defendant because Defendant has equal access to all documents produced by all

16  parties to this action and by third parties, and has equal access to all transcripts of depositions

17  taken by any party in this action. Any further description of the documents and information

18  responsive to this Interrogatory would require revelation of attorneys' mental impressions,

19  strategies, analysis of documents and testimony, and opinions regarding those materials' role in

20  the proof of Plaintiffs' case, which is protected by the attorney work product doctrine. Plaintiffs

21  do not waive any other objection that may apply.

22      Subject to and without waiving the foregoing objections and their right to supplement any

23  answers as further facts are discovered or to rely upon facts not described in this response,

24  Plaintiffs provide the following response: Messrs. Stritmatter, Cristiano, Ferrari, Ireland, and

25  Menke all testified with regard to the qualifications of and process used to hire Mr. B.J. Brooks to

26  perform a valuation of the KMH Series P stock purchased by the Paint Plan on October 13, 1998.

27  Stritmatter Dep. 201:3-202:13, 205:3-206:18, 208:14-210:13. Cristiano Dep. 173:2-177:4.

28  Ireland Dep. 23:1-28:25. Menke Dep. 232:5-239:14. Ferrari Dep. 224:9-234:6. Plaintiffs further

1    identify Deposition Exhibits 9 and 55. Plaintiffs further incorporate by reference their responses

2    to Interrogatories Nos. 2 and 5 and to Interrogatory No. 7 served by the KMH ESOP Committee.

3    Plaintiffs are unable to state further facts and identify further documents without revealing

4    information protected by the attorney work-product doctrine, and on that basis will not further

5    respond.

6    **INTERROGATORY NO. 4:**

7        STATE ALL FACTS CONCERNING YOUR contention in paragraph 30 of the

8    COMPLAINT THAT "the Defendant Fiduciaries failed to provide complete and accurate

9    information regarding KMH to any valuation expert for use in the valuation prepared in

10   connection with the purchase of KMH Series P stock by the Paint Plan."

11   **RESPONSE TO INTERROGATORY NO. 4:**

12       Plaintiffs incorporate their general objections by reference. Plaintiffs further object to this

13   interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of the

14   terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound,

15   overbroad and unduly burdensome, as described in the General Objections above. Plaintiffs

16   further object to this Interrogatory on the ground that it seeks the identity of, facts known by, and

17   opinions held by Plaintiffs' consulting, non-testifying experts. Such information is shielded from

18   disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs

19   further object to this Interrogatory as duplicative of Interrogatory No. 5 and of Interrogatories

20   No. 7 and 9 served by the KMH ESOP Committee and therefore particularly burdensome,

21   harassing, oppressive, and abusive of the discovery process. Plaintiffs further object to this

22   Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the

23   discovery process on the grounds that it constitutes an improper contention interrogatory and that

24   investigation and discovery in this case are ongoing. Plaintiffs further object to this Interrogatory

25   on the ground that it seeks communications, information, or documents that are protected by the

26   attorney-client privilege and/or the attorney work product doctrine. Plaintiffs further object to

27   this Interrogatory on the grounds that it is unduly burdensome, harassing, oppressive, and abusive

28   of the discovery process because it requests production of information and documents equally

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                    Page 11

1  available to Defendant because Defendant has equal access to all documents produced by all

2  parties to this action and by third parties, and has equal access to all transcripts of depositions

3  taken by any party in this action.  Any further description of the documents and information

4  responsive to this Interrogatory would require revelation of attorneys' mental impressions,

5  strategies, analysis of documents and testimony, and opinions regarding those materials' role in

6  the proof of Plaintiffs' case, which is protected by the attorney work product doctrine.  Plaintiffs

7  do not waive any other objection that may apply.

8    Subject to and without waiving the foregoing objections and their right to supplement any

9  answers as further facts are discovered or to rely upon facts not described in this response,

10  Plaintiffs provide the following response:  Messrs. Stritmatter, Ferrari, Menke, Ireland and

11  Cristiano testified regarding the provision of information to Mr. Brooks for preparation of the

12  valuation report prepared in connection with the purchase of KMH Series P stock by the Paint

13  Plan.  Stritmatter Dep. 203:14-205:2, 210:14-217:18.  Cristiano Dep. 70:8-20, 151:6-14, 162:16-

14  165:10, 180:18-181:18.  Ireland Dep. 46:23-55:22, 62:18-62:22.  Menke Dep. 230:17-232:4,

15  234:16-239:14.  Ferrari Dep. 242:10-242:24, 243:11-263:13.  Plaintiffs further identify

16  Deposition Exhs 9, 55, 74, 75, and 78-81.  Plaintiffs further incorporate by reference their

17  responses to Interrogatory No. 5 and to Interrogatories Nos. 7 and 9 served by the KMH ESOP

18  Committee.  Plaintiffs are unable to state further facts and identify further documents without

19  revealing information protected by the attorney work-product doctrine, and on that basis will not

20  further respond.

21  **INTERROGATORY NO. 5:**

22    STATE ALL FACTS CONCERNING YOUR contention in paragraph 31 of the

23  COMPLAINT that "the Defendant Fiduciaries failed to make certain that reliance on any

24  valuation expert's advice was reasonably justified under the circumstances of the purchase of

25  KMH Series P stock by the Paint Plan."

26  **RESPONSE TO INTERROGATORY NO. 5:**

27    Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to this

28  interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of the

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]            Page 12

1    terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound,

2    overbroad and unduly burdensome, as described in the General Objections above. Plaintiffs

3    further object to this Interrogatory on the ground that it seeks the identity of, facts known by, and

4    opinions held by Plaintiffs' consulting, non-testifying experts. Such information is shielded from

5    disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs

6    further object to this Interrogatory as duplicative of Interrogatories Nos. 2, 3, and 4 and of

7    Interrogatories Nos. 7, 9, and 10 served by the KMH ESOP Committee and therefore particularly

8    burdensome, harassing, oppressive, and abusive of the discovery process. Plaintiffs further object

9    to this Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the

10    discovery process on the grounds that it constitutes an improper contention interrogatory and that

11    investigation and discovery in this case are ongoing. Plaintiffs further object to this Interrogatory

12    on the ground that it seeks communications, information, or documents that are protected by the

13    attorney-client privilege and/or the attorney work product doctrine. Plaintiffs further object to

14    this Interrogatory on the grounds that it is unduly burdensome, harassing, oppressive, and abusive

15    of the discovery process because it requests production of information and documents equally

16    available to Defendant because Defendant has equal access to all documents produced by all

17    parties to this action and by third parties, and has equal access to all transcripts of depositions

18    taken by any party in this action. Any further description of the documents and information

19    responsive to this Interrogatory would require revelation of attorneys' mental impressions,

20    strategies, analysis of documents and testimony, and opinions regarding those materials' role in

21    the proof of Plaintiffs' case, which is protected by the attorney work product doctrine. Plaintiffs

22    do not waive any other objection that may apply.

23        Subject to and without waiving the foregoing objections and their right to supplement any

24    answers as further facts are discovered or to rely upon facts not described in this response,

25    Plaintiffs provide the following response: Messrs. Stritmatter, Ferrari, and Cristiano all testified

26    regarding the analysis, or lack thereof, made by the Plan's fiduciaries of Mr. Brooks's valuation

27    report prepared in connection with the purchase of KMH Series P stock by the Paint Plan.

28    Stritmatter Dep. 216:9-217:3. Ferrari Dep. 235:5-244:11. Cristiano Dep. 162:14-15, 178:4-

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                    Page 13

1    180:12, 184:5-186:4, 191:10-195:20.  Mr. Hommel testified regarding the analysis, or lack

2    thereof, made by North Star of Mr. Brooks's valuation report prepared in connection with the

3    purchase of KMH Series P stock by the Paint Plan.  Hommel Dep. 222:24-224:22.  Plaintiffs

4    further incorporate by reference their responses to Interrogatories Nos. 2, 3, and 4 and to

5    Interrogatories Nos. 7, 9, and 10 served by the KMH ESOP Committee.  Plaintiffs are unable to

6    state further facts and identify further documents without revealing information protected by the

7    attorney work-product doctrine, and on that basis will not further respond.

8    **INTERROGATORY NO. 6:**

9         STATE ALL FACTS CONCERNING YOUR contention in paragraph 32 of the

10   COMPLAINT that "the valuation report of Kelly-Moore Paint Co. prepared in connection with

11   the October 13, 1998 transaction failed to take into account KMH's potential liability in asbestos-

12   related litigation, even though information that the company faced significant liability was known

13   to KMH management, including Moore and other fiduciaries at the time."

14   **RESPONSE TO INTERROGATORY NO. 6:**

15        Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to this

16   interrogatory on the ground that it is compound.  Plaintiffs further object to this interrogatory as

17   compound, overbroad and unduly burdensome by virtue of its inclusion of the terms "STATE

18   ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound, overbroad and

19   unduly burdensome, as described in the General Objections above.  Plaintiffs further object to this

20   Interrogatory on the ground that it seeks the identity of, facts known by, and opinions held by

21   Plaintiffs' consulting, non-testifying experts.  Such information is shielded from disclosure by Fed.

22   R. Civ. P.26(b)(4)(B) and the attorney work product privilege.  Plaintiffs further object to this

23   Interrogatory as duplicative of Interrogatory No. 15 and of Interrogatories Nos. 9 and 10 served

24   by the KMH ESOP Committee and therefore particularly burdensome, harassing, oppressive, and

25   abusive of the discovery process.  Plaintiffs further object to this Interrogatory as premature,

26   unduly burdensome, harassing, oppressive, and abusive of the discovery process on the grounds

27   that it constitutes an improper contention interrogatory and that investigation and discovery in this

28   case are ongoing. Plaintiffs further object to this Interrogatory on the ground that it seeks

1  communications, information, or documents that are protected by the attorney-client privilege
2  and/or the attorney work product doctrine.  Plaintiffs further object to this Interrogatory on the
3  grounds that it is unduly burdensome, harassing, oppressive, and abusive of the discovery process
4  because it requests production of information and documents equally available to Defendant
5  because Defendant has equal access to all documents produced by all parties to this action and by
6  third parties, and has equal access to all transcripts of depositions taken by any party in this
7  action.  Any further description of the documents and information responsive to this Interrogatory
8  would require revelation of attorneys' mental impressions, strategies, analysis of documents and
9  testimony, and opinions regarding those materials' role in the proof of Plaintiffs' case, which is
10  protected by the attorney work product doctrine.   Plaintiffs do not waive any other objection that
11  may apply.

12         Subject to and without waiving the foregoing objections and their right to supplement any
13  answers as further facts are discovered or to rely upon facts not described in this response,
14  Plaintiffs provide the following response:  Plaintiffs identify Deposition Exhs 9, 55, 68, 69, 70,
15  and 75.  Plaintiffs further identify all documents showing asbestos sales or liability of Kelly Moore
16  Paint Co. or KMH in the period before October 13, 1998.  Further, Messrs. Stritmatter, Ferrari,
17  Cristiano, Giffins, and Ireland testified regarding the knowledge possessed by Mr. Moore and
18  other executives of Kelly-Moore Paint Co. regarding the extent of the company's potential
19  asbestos liabilities in 1998 and 1999.  Stritmatter Dep. 34:3-35:17, 125:4-130:18, 143:13-23,
20  211:8-217:18, 249:19-251:4, 253:14-254:1.  Ferrari Dep. 156:24-173:6, 173:11-187:25, 193:12-
21  215:19.  Cristiano Dep. 26:8-40:3, 46:14-48:13, 53:9-64:20, 107:11-111:7, 113:8-20, 114:12-
22  115:19, 116:9-15, 119:12-120:24, 149:22-151:4.  Giffins Dep. 41:23-42:22, 79:21-80:19.
23  Ireland Dep. 73:23-79:19.  Mr. Hommel testified about the information that North Star received
24  regarding the extent of the company's asbestos liabilities in 1998 and 1999 and about whether
25  these liabilities were taken into account in valuation reports.  Hommel Dep. 167:11-168:10,
26  179:3-185:7, 199:16-209:25, 238:1-241:4.  Plaintiffs further incorporate by reference their
27  responses to Interrogatory No. 15 and to Interrogatories Nos. 9 and 10 served by the KMH
28  ESOP Committee.  Plaintiffs are unable to state further facts and identify further documents

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                        Page 15

1    without revealing information protected by the attorney work-product doctrine, and on that basis

2    will not further respond.

3    **INTERROGATORY NO. 7:**

4          STATE ALL FACTS CONCERNING YOUR contention in paragraph 33 of the

5    COMPLAINT that "the valuation report also failed to discount the purchase price of the stock to

6    account for the fact that the stock purchased by the Paint Plan was tracking stock, which

7    generally trades at a discount relative to ordinary common stock."

8    **RESPONSE TO INTERROGATORY NO. 7:**

9          Plaintiffs incorporate their general objections by reference. Plaintiffs further object to this

10    interrogatory on the ground that it is compound. Plaintiffs further object to this interrogatory as

11    compound, overbroad and unduly burdensome by virtue of its inclusion of the terms "STATE

12    ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound, overbroad and

13    unduly burdensome, as described in the General Objections above. Plaintiffs further object to this

14    Interrogatory on the ground that it seeks the identity of, facts known by, and opinions held by

15    Plaintiffs' consulting, non-testifying experts. Such information is shielded from disclosure by Fed.

16    R. Civ. P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs further object to this

17    Interrogatory as duplicative of Interrogatory No. 10 served by the KMH ESOP Committee and

18    therefore particularly burdensome, harassing, oppressive, and abusive of the discovery process.

19    Plaintiffs further object to this Interrogatory as premature, unduly burdensome, harassing,

20    oppressive, and abusive of the discovery process on the grounds that it constitutes an improper

21    contention interrogatory and that investigation and discovery in this case are ongoing. Plaintiffs

22    further object to this Interrogatory on the ground that it seeks communications, information, or

23    documents that are protected by the attorney-client privilege and/or the attorney work product

24    doctrine. Plaintiffs further object to this Interrogatory on the grounds that it is unduly

25    burdensome, harassing, oppressive, and abusive of the discovery process because it requests

26    production of information and documents equally available to Defendant because Defendant has

27    equal access to all documents produced by all parties to this action and by third parties, and has

28    equal access to all transcripts of depositions taken by any party in this action. Any further

1  description of the documents and information responsive to this Interrogatory would require
2  revelation of attorneys' mental impressions, strategies, analysis of documents and testimony, and
3  opinions regarding those materials' role in the proof of Plaintiffs' case, which is protected by the
4  attorney work product doctrine.  Plaintiffs do not waive any other objection that may apply.

5      Subject to and without waiving the foregoing objections and their right to supplement any
6  answers as further facts are discovered or to rely upon facts not described in this response,
7  Plaintiffs provide the following response:  Plaintiffs identify Deposition Exhs. 9 and 55.  Further,
8  Messrs. Ireland and Bodenstein and Ms. Daly testified regarding the treatment of tracking stock in
9  valuation reports.  Ireland Dep. 93:8-95:11.  Bodenstein Dep. 117:21-120:6.  Daly Dep. 61:6-
10  62:12, 73:4-74:2.  Plaintiffs further incorporate by reference their response to Interrogatory No.
11  10 served by the KMH ESOP Committee.  Plaintiffs are unable to state further facts and identify
12  further documents without revealing information protected by the attorney work-product
13  doctrine, and on that basis will not further respond.

14  **INTERROGATORY NO. 8:**

15      If YOU contend that the share price for the October 13, 1999 transaction described in
16  paragraph 34 of the COMPLAINT was not established by a valuation report valuing CIG as of
17  October 13, 1999, STATE ALL FACTS CONCERNING said contention.

18  **RESPONSE TO INTERROGATORY NO. 8:**

19      This interrogatory was withdrawn on May 5, 2008, pursuant to agreement of the parties.
20  On that basis, Plaintiffs will not respond to this interrogatory.

21  **INTERROGATORY NO. 9:**

22      STATE ALL FACTS CONCERNING YOUR contention in paragraph 36 of the
23  COMPLAINT that "the Defendant Fiduciaries failed to ensure that they secured an independent
24  expert assessment of the fair market value of the KMH Series I stock purchased by the KMH Plan
25  on October 13, 1999."

26  **RESPONSE TO INTERROGATORY NO. 9:**

27      Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to this
28  interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of the

1    terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound,

2    overbroad and unduly burdensome, as described in the General Objections above. Plaintiffs

3    further object to this Interrogatory on the ground that it seeks the identity of, facts known by, and

4    opinions held by Plaintiffs' consulting, non-testifying experts. Such information is shielded from

5    disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs

6    further object to this Interrogatory as duplicative of Interrogatory No. 10 and of Interrogatory

7    No. 7 served by the KMH ESOP Committee and therefore particularly burdensome, harassing,

8    oppressive, and abusive of the discovery process. Plaintiffs further object to this Interrogatory as

9    premature, unduly burdensome, harassing, oppressive, and abusive of the discovery process on

10    the grounds that it constitutes an improper contention interrogatory and that investigation and

11    discovery in this case are ongoing. Plaintiffs further object to this Interrogatory on the ground that

12    it seeks communications, information, or documents that are protected by the attorney-client

13    privilege and/or the attorney work product doctrine. Plaintiffs further object to this Interrogatory

14    on the grounds that it is unduly burdensome, harassing, oppressive, and abusive of the discovery

15    process because it requests production of information and documents equally available to

16    Defendant because Defendant has equal access to all documents produced by all parties to this

17    action and by third parties, and has equal access to all transcripts of depositions taken by any

18    party in this action. Any further description of the documents and information responsive to this

19    Interrogatory would require revelation of attorneys' mental impressions, strategies, analysis of

20    documents and testimony, and opinions regarding those materials' role in the proof of Plaintiffs'

21    case, which is protected by the attorney work product doctrine. Plaintiffs do not waive any other

22    objection that may apply.

23          Subject to and without waiving the foregoing objections and their right to supplement any

24    answers as further facts are discovered or to rely upon facts not described in this response,

25    Plaintiffs provide the following response: Plaintiffs believe the transaction referenced in the

26    interrogatory was completed on October 18, 1999. Plaintiffs identify Deposition Exhs. 18, 24,

27    and 139. Further, Messrs. Mines, Cazzolla and Bodenstein and Ms. Daly testified regarding the

28    manner of choosing a valuator to perform a valuation for purposes of the Plan's purchase of

1    KMH Series I stock. Mines Dep. 100:15-105:11, 117:25-121:8. Cazzolla Dep. 45:5-47:22,

2    80:7-81:2, 88:23-89:16, 90:22-91:5. Bodenstein Dep. 39:20-48:1. Daly Dep. 17:8-24:1.

3    Plaintiffs further incorporate by reference their responses to Interrogatory No. 10 and to

4    Interrogatory No. 7 served by the KMH ESOP Committee. Plaintiffs are unable to state further

5    facts and identify further documents without revealing information protected by the attorney

6    work-product doctrine, and on that basis will not further respond.

7    **INTERROGATORY NO. 10:**

8          STATE ALL FACTS CONCERNING YOUR contention in paragraph 37 of the

9    COMPLAINT that "the Defendant Fiduciaries failed to investigate adequately the qualifications of

10   any valuation expert retained to prepare the valuation of KMH in connection with the October 13,

11   1999 purchase of KMH Series I stock by the KMH Plan.

12   **RESPONSE TO INTERROGATORY NO. 10:**

13         Plaintiffs incorporate their general objections by reference. Plaintiffs further object to this

14   interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of the

15   terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound,

16   overbroad and unduly burdensome, as described in the General Objections above. Plaintiffs

17   further object to this Interrogatory on the ground that it seeks the identity of, facts known by, and

18   opinions held by Plaintiffs' consulting, non-testifying experts. Such information is shielded from

19   disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs

20   further object to this Interrogatory as duplicative of Interrogatory No. 9 and of Interrogatory No.

21   7 served by the KMH ESOP Committee and therefore particularly burdensome, harassing,

22   oppressive, and abusive of the discovery process. Plaintiffs further object to this Interrogatory as

23   premature, unduly burdensome, harassing, oppressive, and abusive of the discovery process on

24   the grounds that it constitutes an improper contention interrogatory and that investigation and

25   discovery in this case are ongoing. Plaintiffs further object to this Interrogatory on the ground

26   that it seeks communications, information, or documents that are protected by the attorney-client

27   privilege and/or the attorney work product doctrine. Plaintiffs further object to this Interrogatory

28   on the grounds that it is unduly burdensome, harassing, oppressive, and abusive of the discovery

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                      Page 19

1   process because it requests production of information and documents equally available to

2   Defendant because Defendant has equal access to all documents produced by all parties to this

3   action and by third parties, and has equal access to all transcripts of depositions taken by any

4   party in this action. Any further description of the documents and information responsive to this

5   Interrogatory would require revelation of attorneys' mental impressions, strategies, analysis of

6   documents and testimony, and opinions regarding those materials' role in the proof of Plaintiffs'

7   case, which is protected by the attorney work product doctrine. Plaintiffs do not waive any other

8   objection that may apply.

9        Subject to and without waiving the foregoing objections and their right to supplement any

10   answers as further facts are discovered or to rely upon facts not described in this response,

11   Plaintiffs provide the following response: Plaintiffs believe the transaction referenced in the

12   interrogatory was completed on October 18, 1999. Plaintiffs identify Deposition Exhs. 18, 24,

13   and 139. Further, Messrs. Mines, Cazzolla, and Bodenstein and Ms. Daly testified regarding the

14   manner of choosing a valuator to perform a valuation for purposes of the Plan's purchase of

15   KMH Series I stock. Mines Dep. 100:15-105:11, 117:25-121:8. Cazzolla Dep. 45:5-47:22,

16   80:7-81:2, 88:23-89:16, 90:22-91:5. Bodenstein Dep. 39:20-48:1. Daly Dep. 17:8-24:1.

17   Plaintiffs further incorporate by reference their responses to Interrogatory No. 9 and to

18   Interrogatory No. 7 served by the KMH ESOP Committee. Plaintiffs are unable to state further

19   facts and identify further documents without revealing information protected by the attorney

20   work-product doctrine, and on that basis will not further respond.

21   **INTERROGATORY NO. 11:**

22        STATE ALL FACTS CONCERNING YOUR contention in paragraph 38 of the

23   COMPLAINT that "the Defendant Fiduciaries failed to provide complete and accurate

24   information regarding KMH to any valuation expert for use in the valuation prepared in

25   connection with the purchase of KMH Series I stock by the KMH Plan."

26   **RESPONSE TO INTERROGATORY NO. 11:**

27        Plaintiffs incorporate their general objections by reference. Plaintiffs further object to this

28   interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of the

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                      Page 20

1    terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound,

2    overbroad and unduly burdensome, as described in the General Objections above.  Plaintiffs

3    further object to this Interrogatory on the ground that it seeks the identity of, facts known by, and

4    opinions held by Plaintiffs' consulting, non-testifying experts.  Such information is shielded from

5    disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work product privilege.  Plaintiffs

6    further object to this Interrogatory as duplicative of Interrogatories Nos. 13 and 15 and of

7    Interrogatories No. 7 and 9 served by the KMH ESOP Committee and therefore particularly

8    burdensome, harassing, oppressive, and abusive of the discovery process.  Plaintiffs further object

9    to this Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the

10    discovery process on the grounds that it constitutes an improper contention interrogatory and that

11    investigation and discovery in this case are ongoing.  Plaintiffs further object to this Interrogatory

12    on the ground that it seeks communications, information, or documents that are protected by the

13    attorney-client privilege and/or the attorney work product doctrine.  Plaintiffs further object to

14    this Interrogatory on the grounds that it is unduly burdensome, harassing, oppressive, and abusive

15    of the discovery process because it requests production of information and documents equally

16    available to Defendant because Defendant has equal access to all documents produced by all

17    parties to this action and by third parties, and has equal access to all transcripts of depositions

18    taken by any party in this action.  Any further description of the documents and information

19    responsive to this Interrogatory would require revelation of attorneys' mental impressions,

20    strategies, analysis of documents and testimony, and opinions regarding those materials' role in

21    the proof of Plaintiffs' case, which is protected by the attorney work product doctrine.  Plaintiffs

22    do not waive any other objection that may apply.

23         Subject to and without waiving the foregoing objections and their right to supplement any

24    answers as further facts are discovered or to rely upon facts not described in this response,

25    Plaintiffs provide the following response:  Plaintiffs identify Deposition Exhs. 18, 24, and 139.

26    Further, Messrs. Mines, Cazzolla, and Bodenstein and Ms. Daly testified regarding the

27    information provided to valuators for use in preparation of valuation reports in 1999.  Mines Dep.

28    130:1-137:8, 150:1-150:20.  Cazzolla Dep. 33:8-38:6, 54:6-55:24, 85:23-87:12, 103:16-104:16.

1    Bodenstein Dep. 48:22-53:3, 68:8-78:7, 108:25-109:24.  Daly Dep. 42:11-45:14, 48:25-52:10.

2    Plaintiffs further incorporate by reference their responses to Interrogatories Nos. 13 and 15 and of

3    Interrogatories Nos. 7 and 9 served by the KMH ESOP Committee.  Plaintiffs are unable to state

4    further facts and identify further documents without revealing information protected by the

5    attorney work-product doctrine, and on that basis will not further respond.

6    **INTERROGATORY NO. 12:**

7        STATE ALL FACTS CONCERNING YOUR contention in paragraph 39 of the

8    COMPLAINT that "the Defendant Fiduciaries failed to make certain that reliance on any

9    valuation expert's advice was reasonably justified under the circumstances of the purchase of

10    KMH Series I stock by the KMH Plan."

11    **RESPONSE TO INTERROGATORY NO. 12:**

12        Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to this

13    interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of the

14    terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound,

15    overbroad and unduly burdensome, as described in the General Objections above.  Plaintiffs

16    further object to this Interrogatory on the ground that it seeks the identity of, facts known by, and

17    opinions held by Plaintiffs' consulting, non-testifying experts.  Such information is shielded from

18    disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work product privilege.  Plaintiffs

19    further object to this Interrogatory as duplicative of Interrogatories Nos. 7, 9, and 10 served by

20    the KMH ESOP Committee and therefore particularly burdensome, harassing, oppressive, and

21    abusive of the discovery process.  Plaintiffs further object to this Interrogatory as premature,

22    unduly burdensome, harassing, oppressive, and abusive of the discovery process on the grounds

23    that it constitutes an improper contention interrogatory and that investigation and discovery in this

24    case are ongoing.  Plaintiffs further object to this Interrogatory on the ground that it seeks

25    communications, information, or documents that are protected by the attorney-client privilege

26    and/or the attorney work product doctrine.  Plaintiffs further object to this Interrogatory on the

27    grounds that it is unduly burdensome, harassing, oppressive, and abusive of the discovery process

28    because it requests production of information and documents equally available to Defendant

1    because Defendant has equal access to all documents produced by all parties to this action and by

2    third parties, and has equal access to all transcripts of depositions taken by any party in this

3    action.  Any further description of the documents and information responsive to this Interrogatory

4    would require revelation of attorneys' mental impressions, strategies, analysis of documents and

5    testimony, and opinions regarding those materials' role in the proof of Plaintiffs' case, which is

6    protected by the attorney work product doctrine.  Plaintiffs do not waive any other objection that

7    may apply.

8           Subject to and without waiving the foregoing objections and their right to supplement any

9    answers as further facts are discovered or to rely upon facts not described in this response,

10    Plaintiffs provide the following response:  Plaintiffs identify Deposition Exhs. 18, 24, and 139.

11    Further, Messrs. Mines, Cazzolla, and Bodenstein and Ms. Daly all testified regarding the

12    analysis, or lack thereof, made by the Plan's fiduciaries of Deposition Exhibit 18 (Duff & Phelps'

13    June 30, 1999 report); the analysis, or lack thereof, made by the Plan's fiduciaries of Deposition

14    Exhibit 139 (Duff & Phelps' October 18, 1999 letter); and the analysis, or lack thereof, of

15    Deposition Exhibit 24 (Columbia Financial Advisors Inc.'s report).  Mines Dep. 143:6-149:21,

16    154:1-158:24.  Cazzolla Dep. 106:19-121:10, 147:6-149:11, 159:4-166:21, 202:7-203:15.

17    Bodenstein Dep. 123:7-128:10, 142:11-142:18.  Daly Dep. 65:20-66:6, 69:14-69:25.  Plaintiffs

18    further incorporate by reference their responses to Interrogatories Nos. 7, 9, and 10 served by the

19    KMH ESOP Committee.  Plaintiffs are unable to state further facts and identify further documents

20    without revealing information protected by the attorney work-product doctrine, and on that basis

21    will not further respond.

22    **INTERROGATORY NO. 13:**

23           STATE ALL FACTS CONCERNING YOUR contention in paragraph 40 of the

24    COMPLAINT that "the valuation report of CIG prepared in connection with the October 13,

25    1999 transaction failed to take into account KMH's potential liability in asbestos-related litigation,

26    even though information that the company faced significant liability was known to KMH

27    management, including Moore and other fiduciaries at the time."

28    **RESPONSE TO INTERROGATORY NO. 13:**

1  Plaintiffs incorporate their general objections by reference. Plaintiffs further object to this

2  interrogatory on the ground that it is compound. Plaintiffs further object to this interrogatory as

3  compound, overbroad and unduly burdensome by virtue of its inclusion of the terms "STATE

4  ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound, overbroad and

5  unduly burdensome, as described in the General Objections above. Plaintiffs further object to this

6  Interrogatory on the ground that it seeks the identity of, facts known by, and opinions held by

7  Plaintiffs' consulting, non-testifying experts. Such information is shielded from disclosure by Fed.

8  R. Civ. P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs further object to this

9  Interrogatory as duplicative of Interrogatory No. 15 and of Interrogatory No. 9 served by the

10  KMH ESOP Committee therefore particularly burdensome, harassing, oppressive, and abusive of

11  the discovery process. Plaintiffs further object to this Interrogatory as premature, unduly

12  burdensome, harassing, oppressive, and abusive of the discovery process on the grounds that it

13  constitutes an improper contention interrogatory and that investigation and discovery in this case

14  are ongoing. Plaintiffs further object to this Interrogatory on the ground that it seeks

15  communications, information, or documents that are protected by the attorney-client privilege

16  and/or the attorney work product doctrine. Plaintiffs further object to this Interrogatory on the

17  grounds that it is unduly burdensome, harassing, oppressive, and abusive of the discovery process

18  because it requests production of information and documents equally available to Defendant

19  because Defendant has equal access to all documents produced by all parties to this action and by

20  third parties, and has equal access to all transcripts of depositions taken by any party in this

21  action. Any further description of the documents and information responsive to this Interrogatory

22  would require revelation of attorneys' mental impressions, strategies, analysis of documents and

23  testimony, and opinions regarding those materials' role in the proof of Plaintiffs' case, which is

24  protected by the attorney work product doctrine. Plaintiffs do not waive any other objection that

25  may apply.

26  Subject to and without waiving the foregoing objections and their right to supplement any

27  answers as further facts are discovered or to rely upon facts not described in this response,

28  Plaintiffs provide the following response: Plaintiffs believe the transaction referenced in the

1 interrogatory was completed on October 18, 1999. Plaintiffs identify Deposition Exh. 18 and

2 testimony regarding Exh. 18 by Mr. Bodenstein. Bodenstein Dep. 52:22-54:25; 111:3-123:6.

3 Further, Messrs. Stritmatter, Ferrari, Giffins, Cristiano, and Ireland testified regarding the

4 knowledge possessed by Mr. Moore and other executives of Kelly-Moore Paint Co. regarding the

5 extent of the company's potential asbestos liabilities in 1998 and 1999. Stritmatter Dep. 34:3-

6 35:17, 125:4-130:18, 143:13-23, 211:8-217:18, 249:19-251:4, 253:14-254:1. Ferrari Dep.

7 156:24-173:6, 173:11-187:25, 193:12-215:19. Crisitano Dep. 26:8-40:3, 46:14-48:13, 53:9-

8 64:20, 107:11-111:7, 113:8-20, 114:12-115:19, 116:9-15, 119:12-120:24, 149:22-151:4. Giffins

9 Dep. 41:23-42:22, 79:21-80:19. Ireland Dep. 73:23-79:19. In addition, Mr. Cazzolla testified

10 about the knowledge possessed by Mr. Moore and other executives of CIG regarding the extent

11 of Kelly-Moore Paint Co.'s potential asbestos liabilities in 1998 and 1999. Cazzolla Dep. 31:7-

12 32:19, 53:2-54:2, 93:3-17, 100:12-101:16. Mr. Hommel testified about the information that

13 North Star received regarding the extent of the company's asbestos liabilities in 1998 and 1999,

14 and about whether these liabilities were taken into account in valuation reports. Hommel Dep.

15 167:11-168:10, 179:3-185:7, 199:16-209:25, 238:1-241:4. Plaintiffs further identify all

16 documents showing asbestos sales or liability of Kelly Moore Paint Co. or KMH in the period

17 before October 13, 1998. Plaintiffs further identify Deposition Exhs. 9, 55, 68, 69, 70, and 75.

18 Plaintiffs further incorporate by reference their responses to Interrogatory No. 15 and to

19 Interrogatory No. 9 served by the KMH ESOP Committee. Plaintiffs are unable to state further

20 facts and identify further documents without revealing information protected by the attorney

21 work-product doctrine, and on that basis will not further respond.

22 **INTERROGATORY NO. 14:**

23    STATE ALL FACTS CONCERNING YOUR contention in paragraph 41 of the

24 COMPLAINT that "the valuation report of CIG also failed to discount the purchase price of the

25 stock to account for the fact that the stock purchased by the Plan was tracking stock, which

26 generally trades at a discount relative to ordinary common stock."

27 **RESPONSE TO INTERROGATORY NO. 14:**

28    Plaintiffs incorporate their general objections by reference. Plaintiffs further object to this

1    interrogatory on the ground that it is compound.  Plaintiffs further object to this interrogatory as

2    compound, overbroad and unduly burdensome by virtue of its inclusion of the terms "STATE

3    ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound, overbroad and

4    unduly burdensome, as described in the General Objections above.   Plaintiffs further object to this

5    Interrogatory on the ground that it seeks the identity of, facts known by, and opinions held by

6    Plaintiffs' consulting, non-testifying experts.  Such information is shielded from disclosure by Fed.

7    R. Civ. P.26(b)(4)(B) and the attorney work product privilege.  Plaintiffs further object to this

8    Interrogatory as duplicative of Interrogatory No. 10 served by the KMH ESOP Committee

9    therefore particularly burdensome, harassing, oppressive, and abusive of the discovery process.

10   Plaintiffs further object to this Interrogatory as premature, unduly burdensome, harassing,

11   oppressive, and abusive of the discovery process on the grounds that it constitutes an improper

12   contention interrogatory and that investigation and discovery in this case are ongoing. Plaintiffs

13   further object to this Interrogatory on the ground that it seeks communications, information, or

14   documents that are protected by the attorney-client privilege and/or the attorney work product

15   doctrine.  Plaintiffs further object to this Interrogatory on the grounds that it is unduly

16   burdensome, harassing, oppressive, and abusive of the discovery process because it requests

17   production of information and documents equally available to Defendant because Defendant has

18   equal access to all documents produced by all parties to this action and by third parties, and has

19   equal access to all transcripts of depositions taken by any party in this action.  Any further

20   description of the documents and information responsive to this Interrogatory would require

21   revelation of attorneys' mental impressions, strategies, analysis of documents and testimony, and

22   opinions regarding those materials' role in the proof of Plaintiffs' case, which is protected by the

23   attorney work product doctrine.  Plaintiffs do not waive any other objection that may apply.

24        Subject to and without waiving the foregoing objections and their right to supplement any

25   answers as further facts are discovered or to rely upon facts not described in this response,

26   Plaintiffs provide the following response:  Plaintiffs identify Deposition Exh. 18 and testimony

27   regarding Exh. 18 by Mr. Bodenstein.  Bodenstein Dep. 111:3-123:6.  Further, Messrs. Ireland

28   and Bodenstein and Ms. Daly testified regarding the treatment of tracking stock in valuation

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                    Page 26

1   reports.  Ireland Dep. 93:8-95:11.  Bodenstein Dep. 117:21-120:6.  Daly Dep. 61:6-62:12, 73:4-

2   74:2.  Plaintiffs further incorporate by reference their responses to Interrogatory No. 10 served by

3   the KMH ESOP Committee.  Plaintiffs are unable to state further facts and identify further

4   documents without revealing information protected by the attorney work-product doctrine, and

5   on that basis will not further respond.

6   **INTERROGATORY NO. 15:**

7       STATE ALL FACTS CONCERNING YOUR contention in paragraph 43 of the

8   COMPLAINT that "at the time of the Plans' purchases of KMH Series P and Series I stock from

9   the Defendant Moore Trust, KMH management, including William Moore and the other

10  Defendant Fiduciaries, was aware of the potential liabilities facing the company as a result of

11  asbestos-related litigation."

12  **RESPONSE TO INTERROGATORY NO. 15:**

13      Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to this

14  interrogatory on the ground that it is compound.  Plaintiffs further object to this interrogatory as

15  compound, overbroad and unduly burdensome by virtue of its inclusion of the terms "STATE

16  ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound, overbroad and

17  unduly burdensome, as described in the General Objections above.  Plaintiffs further object to this

18  Interrogatory as duplicative of Interrogatories Nos. 6, 11, and 13 and therefore particularly

19  burdensome, harassing, oppressive, and abusive of the discovery process.  Plaintiffs further object

20  to this Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the

21  discovery process on the grounds that it constitutes an improper contention interrogatory and that

22  investigation and discovery in this case are ongoing.  Plaintiffs further object to this Interrogatory

23  on the ground that it seeks communications, information, or documents that are protected by the

24  attorney-client privilege and/or the attorney work product doctrine.  Plaintiffs further object to

25  this Interrogatory on the grounds that it is unduly burdensome, harassing, oppressive, and abusive

26  of the discovery process because it requests production of information and documents equally

27  available to Defendant because Defendant has equal access to all documents produced by all

28  parties to this action and by third parties, and has equal access to all transcripts of depositions

1   taken by any party in this action. Any further description of the documents and information

2   responsive to this Interrogatory would require revelation of attorneys' mental impressions,

3   strategies, analysis of documents and testimony, and opinions regarding those materials' role in

4   the proof of Plaintiffs' case, which is protected by the attorney work product doctrine. Plaintiffs

5   do not waive any other objection that may apply.

6          Subject to and without waiving the foregoing objections and their right to supplement any

7   answers as further facts are discovered or to rely upon facts not described in this response,

8   Plaintiffs provide the following response: Plaintiffs identify Deposition Exhs 9, 55, 68, 69, 70, 74,

9   and 75. Plaintiffs further identify all documents showing asbestos sales or liability of Kelly Moore

10  Paint Co. or KMH in the period before October 13, 1998. Further, Messrs. Stritmatter, Ferrari,

11  Giffins, Cristiano, and Ireland testified regarding the knowledge possessed by Mr. Moore and

12  other executives of Kelly-Moore Paint Co. regarding the extent of the company's potential

13  asbestos liabilities in 1998 and 1999. Stritmatter Dep. 34:3-35:17, 125:4-130:18, 143:13-23,

14  211:8-217:18, 249:19-251:4, 253:14-254:1. Ferrari Dep. 156:24-173:6, 173:11-187:25, 193:12-

15  215:19. Giffins Dep. 41:23-42:22, 79:21-80:19. Crisitano Dep. 26:8-40:3, 46:14-48:13, 53:9-

16  64:20, 107:11-111:7, 113:8-20, 114:12-115:19, 116:9-15, 119:12-120:24, 149:22-151:4. Ireland

17  Dep. 73:23-79:19. In addition, Mr. Cazzolla testified about the knowledge possessed by Mr.

18  Moore and other executives of CIG regarding the extent of Kelly-Moore Paint Co.'s potential

19  asbestos liabilities in 1998 and 1999. Cazzolla Dep. 31:7-32:19, 53:2-54:2, 93:3-17, 100:12-

20  101:16. Plaintiffs further incorporate by reference their responses to Interrogatories Nos. 6, 11,

21  and 13. Plaintiffs are unable to state further facts and identify further documents without

22  revealing information protected by the attorney work-product doctrine, and on that basis will not

23  further respond.

24  **INTERROGATORY NO. 16:**

25          STATE ALL FACTS CONCERNING YOUR contention in paragraph 43 of the

26  COMPLAINT that "KMH management, including Moore and other fiduciaries of the Plans,

27  withheld information about KMH's potential asbestos liability from the valuators retained to

28  determine the value of KMH stock for purposes of the Plan transactions until in or about late

1   2002 or early 2003."

2   **RESPONSE TO INTERROGATORY NO. 16:**

3        This interrogatory was withdrawn on May 5, 2008, pursuant to agreement of the parties.

4   On that basis, Plaintiffs will not respond to this interrogatory.

5   **INTERROGATORY NO. 17:**

6        STATE ALL FACTS CONCERNING YOUR contention in paragraph 44 of the

7   COMPLAINT that "the Defendant Fiduciaries failed to make an honest, objective effort to read

8   the valuation reports, understand them, and question the methods and assumptions that did not

9   make sense."

10  **RESPONSE TO INTERROGATORY NO. 17:**

11       This interrogatory was withdrawn on May 5, 2008, pursuant to agreement of the parties.

12  On that basis, Plaintiffs will not respond to this interrogatory.

13  **INTERROGATORY NO. 18:**

14       STATE ALL FACTS CONCERNING YOUR contention in paragraph 46 of the

15  COMPLAINT that "[v]aluations of KMH's Series I stock as of December 31, 2003, and

16  December 31, 2004, performed in 2005, failed to consider the impact of KMH's asbestos liability

17  on Series I stock of KMH."

18  **RESPONSE TO INTERROGATORY NO. 18:**

19       Plaintiffs incorporate their general objections by reference. Plaintiffs further object to this

20  interrogatory on the ground that it is compound. Plaintiffs further object to this interrogatory as

21  compound, overbroad and unduly burdensome by virtue of its inclusion of the terms "STATE

22  ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound, overbroad and

23  unduly burdensome, as described in the General Objections above. Plaintiffs further object to this

24  Interrogatory on the ground that it seeks the identity of, facts known by, and opinions held by

25  Plaintiffs' consulting, non-testifying experts. Such information is shielded from disclosure by Fed.

26  R. Civ. P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs further object to this

27  Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the

28  discovery process on the grounds that it constitutes an improper contention interrogatory and that

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                          Page 29

1    investigation and discovery in this case are ongoing. Plaintiffs further object to this Interrogatory

2    on the ground that it seeks communications, information, or documents that are protected by the

3    attorney-client privilege and/or the attorney work product doctrine. Plaintiffs further object to

4    this Interrogatory on the grounds that it is unduly burdensome, harassing, oppressive, and abusive

5    of the discovery process because it requests production of information and documents equally

6    available to Defendant because Defendant has equal access to all documents produced by all

7    parties to this action and by third parties, and has equal access to all transcripts of depositions

8    taken by any party in this action. Any further description of the documents and information

9    responsive to this Interrogatory would require revelation of attorneys'.mental impressions,

10   strategies, analysis of documents and testimony, and opinions regarding those materials' role in

11   the proof of Plaintiffs' case, which is protected by the attorney work product doctrine. Plaintiffs

12   do not waive any other objection that may apply.

13        Subject to and without waiving the foregoing objections and their right to supplement any

14   answers as further facts are discovered or to rely upon facts not described in this response,

15   Plaintiffs provide the following response: Plaintiffs identify the valuation reports prepared by

16   Stout, Risius & Ross in 2005 for plan years 2003 and 2004. Plaintiffs are unable to state further

17   facts and identify further documents without revealing information protected by the attorney

18   work-product doctrine, and on that basis will not further respond.

19   **INTERROGATORY NO. 19:**

20        STATE ALL FACTS CONCERNING YOUR contention in paragraph 49 of the

21   COMPLAINT that "[w]hen Plaintiff Smith contacted CIG regarding her put option in 2006, she

22   was informed by CIG that KMH would not be able to repurchase her shares until 2014 because of

23   new loan terms," including, but not limited to how, when and where Plaintiff Smith contacted

24   CIG and was informed that KMH would not be able to repurchase her shares until 2014.

25   **RESPONSE TO INTERROGATORY NO. 19:**

26        Plaintiffs incorporate their general objections by reference. Plaintiffs further object to this

27   interrogatory on the ground that it is compound. Plaintiffs further object to this interrogatory as

28   compound, overbroad and unduly burdensome by virtue of its inclusion of the terms "STATE

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                      Page 30

1    ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound, overbroad and
2    unduly burdensome, as described in the General Objections above. Plaintiffs further object to this
3    Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the
4    discovery process on the grounds that it constitutes an improper contention interrogatory and that
5    investigation and discovery in this case are ongoing. Plaintiffs further object to this Interrogatory
6    on the ground that it seeks communications, information, or documents that are protected by the
7    attorney-client privilege and/or the attorney work product doctrine. Plaintiffs further object to
8    this Interrogatory on the grounds that it is unduly burdensome, harassing, oppressive, and abusive
9    of the discovery process because it requests production of information and documents equally
10   available to Defendant because Defendant has equal access to all documents produced by all
11   parties to this action and by third parties, and has equal access to all transcripts of depositions
12   taken by any party in this action. Any further description of the documents and information
13   responsive to this Interrogatory would require revelation of attorneys' mental impressions,
14   strategies, analysis of documents and testimony, and opinions regarding those materials' role in
15   the proof of Plaintiffs' case, which is protected by the attorney work product doctrine. Plaintiffs
16   do not waive any other objection that may apply.

17       Subject to and without waiving the foregoing objections and their right to supplement any
18   answers as further facts are discovered or to rely upon facts not described in this response,
19   Plaintiffs provide the following response: Plaintiff Smith testified regarding her contact with CIG
20   with respect to her put option in 2006 during her deposition. Smith Dep. 22:13-29:15, 51:11-
21   52:20, 69:7-23, 79:6-15, 150:5-151:3. Plaintiffs further identify Deposition Exh. 169. Plaintiffs
22   are unable to state further facts and identify further documents without revealing information
23   protected by the attorney work-product doctrine, and on that basis will not further respond.

24   **INTERROGATORY NO. 20:**

25       STATE ALL FACTS CONCERNING YOUR contention in paragraph 50 of the
26   COMPLAINT that "Defendant Fiduciaries have not informed Plan participants that re-negotiated
27   loan terms impair their put option rights."

28   **RESPONSE TO INTERROGATORY NO. 20:**

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                    Page 31

1    Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to this

2  interrogatory on the ground that it is compound.  Plaintiffs further object to this interrogatory as

3  compound, overbroad and unduly burdensome by virtue of its inclusion of the terms "STATE

4  ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound, overbroad and

5  unduly burdensome, as described in the General Objections above. Plaintiffs further object to this

6  Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the

7  discovery process on the grounds that it constitutes an improper contention interrogatory and that

8  investigation and discovery in this case are ongoing.  Plaintiffs further object to this Interrogatory

9  on the ground that it seeks communications, information, or documents that are protected by the

10  attorney-client privilege and/or the attorney work product doctrine.  Plaintiffs further object to

11  this Interrogatory on the grounds that it is unduly burdensome, harassing, oppressive, and abusive

12  of the discovery process because it requests production of information and documents equally

13  available to Defendant because Defendant has equal access to all documents produced by all

14  parties to this action and by third parties, and has equal access to all transcripts of depositions

15  taken by any party in this action.  Any further description of the documents and information

16  responsive to this Interrogatory would require revelation of attorneys' mental impressions,

17  strategies, analysis of documents and testimony, and opinions regarding those materials' role in

18  the proof of Plaintiffs' case, which is protected by the attorney work product doctrine.  Plaintiffs

19  do not waive any other objection that may apply.

20    Subject to and without waiving the foregoing objections and their right to supplement any

21  answers as further facts are discovered or to rely upon facts not described in this response,

22  Plaintiffs provide the following response:  Plaintiff Smith testified regarding her contact with CIG

23  with respect to her put option in 2006 during her deposition.  Smith Dep. 22:13-29:15, 51:11-

24  52:20, 69:7-23, 79:6-15, 150:5-151:3.  Plaintiffs further identify Deposition Exh. 169.  Plaintiffs

25  Fernandez and Thomas have not had contact with their prior employers specifically regarding

26  impairment of put option rights due to re-negotiated loan terms.  Plaintiffs are unable to state

27  further facts and identify further documents without revealing information protected by the

28  attorney work-product doctrine, and on that basis will not further respond.

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                    Page 32

1 | **INTERROGATORY NO. 21:**

2 | STATE ALL FACTS CONCERNING YOUR contention in paragraph 51 of the

3 | COMPLAINT that "The Plan paid substantially more than fair market value for the KMH stock

4 | purchased from the Moore Family Trust in 1998 and 1999."

5 | **RESPONSE TO INTERROGATORY NO. 21:**

6 | Plaintiffs incorporate their general objections by reference. Plaintiffs further object to this

7 | interrogatory on the ground that it is compound. Plaintiffs further object to this interrogatory as

8 | compound, overbroad and unduly burdensome by virtue of its inclusion of the terms "STATE

9 | ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound, overbroad and

10 | unduly burdensome, as described in the General Objections above. Plaintiffs further object to this

11 | Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the

12 | discovery process on the grounds that it constitutes an improper contention interrogatory and that

13 | investigation and discovery in this case are ongoing. Plaintiffs further object to this Interrogatory

14 | on the ground that it seeks communications, information, or documents that are protected by the

15 | attorney-client privilege and/or the attorney work product doctrine. Plaintiffs further object to

16 | this Interrogatory on the ground that it seeks the identity of, facts known by, and opinions held by

17 | Plaintiffs' consulting, non-testifying experts. Such information is shielded from disclosure by Fed.

18 | R. Civ. P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs further object to this

19 | Interrogatory as duplicative of Interrogatory No. 11 served by the KMH ESOP Committee

20 | therefore particularly burdensome, harassing, oppressive, and abusive of the discovery process.

21 | Plaintiffs further object to this Interrogatory on the grounds that it is unduly burdensome,

22 | harassing, oppressive, and abusive of the discovery process because it requests production of

23 | information and documents equally available to Defendant because Defendant has equal access to

24 | all documents produced by all parties to this action and by third parties, and has equal access to all

25 | transcripts of depositions taken by any party in this action. Any further description of the

26 | documents and information responsive to this Interrogatory would require revelation of attorneys'

27 | mental impressions, strategies, analysis of documents and testimony, and opinions regarding those

28 | materials' role in the proof of Plaintiffs' case, which is protected by the attorney work product

1    doctrine.  Plaintiffs do not waive any other objection that may apply.

2          Subject to and without waiving the foregoing objections and their right to supplement any

3    answers as further facts are discovered or to rely upon facts not described in this response,

4    Plaintiffs provide the following response:  Plaintiffs further incorporate by reference their

5    responses to Interrogatory No. 11 served by the KMH ESOP Committee.  Plaintiffs are unable to

6    respond further to this interrogatory without revealing attorney work product or prematurely

7    disclosing expert testimony, and on that ground will not respond.  Plaintiffs will disclose expert

8    reports in accordance with the Court's pre-trial scheduling order.  After meeting and conferring

9    on this issue, the parties agree that Plaintiffs need not supplement their response to this

10   Interrogatory because it would involve premature disclosure of expert testimony.

11   **INTERROGATORY NO. 22:**

12          STATE ALL FACTS CONCERNING YOUR contention in paragraph 51 of the

13   COMPLAINT that "Defendant Fiduciaries could have corrected the Plans' overpayment for

14   KMH stock at any time since October 13, 1998, by obtaining an independent valuation based on

15   all relevant information, including but not limited to full disclosure of KMH's financial state,

16   including KMH's potential asbestos liabilities, and then seeking a refund from the Moore Trust of

17   any amount by which such a valuation demonstrated that the Plans had overpaid for KMH stock."

18   **RESPONSE TO INTERROGATORY NO. 22:**

19          This interrogatory was withdrawn on May 5, 2008, pursuant to agreement of the parties.

20   On that basis, Plaintiffs will not respond to this interrogatory.

21   **INTERROGATORY NO. 23:**

22          STATE ALL FACTS CONCERNING YOUR contention in paragraph 51 of the

23   COMPLAINT that "Defendant Fiduciaries failed to take any action to cure the breaches of

24   fiduciary duty and prohibited transactions...."

25   **RESPONSE TO INTERROGATORY NO. 23:**

26          Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to this

27   interrogatory on the ground that it is unintelligible and incomplete in itself by virtue of its use of

28   an ellipsis to indicate unspecified additional information and due to the fact that it requires

1  Plaintiffs to state affirmative facts supporting a negative proposition. Plaintiffs further object to

2  this interrogatory on the ground that it is overbroad and unduly burdensome because it requests a

3  complete statement of all facts concerning a negative, which is both practically and conceptually

4  impossible. Plaintiffs further object to this interrogatory as compound, overbroad and unduly

5  burdensome by virtue of its inclusion of the terms "STATE ALL FACTS" and "CONCERNING,"

6  to which Plaintiffs object as compound, overbroad and unduly burdensome, as described in the

7  General Objections above. Plaintiffs further object to this Interrogatory as premature, unduly

8  burdensome, harassing, oppressive, and abusive of the discovery process on the grounds that it

9  constitutes an improper contention interrogatory and that investigation and discovery in this case

10  are ongoing. Plaintiffs further object to this Interrogatory on the ground that it seeks

11  communications, information, or documents that are protected by the attorney-client privilege

12  and/or the attorney work product doctrine. Plaintiffs further object to this Interrogatory on the

13  ground that it seeks the identity of, facts known by, and opinions held by Plaintiffs' consulting,

14  non-testifying experts. Such information is shielded from disclosure by Fed. R. Civ.

15  P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs further object to this

16  Interrogatory as duplicative of Interrogatories Nos. 18 and 20 served by the KMH ESOP

17  Committee therefore particularly burdensome, harassing, oppressive, and abusive of the discovery

18  process. Plaintiffs further object to this Interrogatory on the grounds that it is unduly

19  burdensome, harassing, oppressive, and abusive of the discovery process because it requests

20  production of information and documents equally available to Defendant because Defendant has

21  equal access to all documents produced by all parties to this action and by third parties, and has

22  equal access to all transcripts of depositions taken by any party in this action. Any further

23  description of the documents and information responsive to this Interrogatory would require

24  revelation of attorneys' mental impressions, strategies, analysis of documents and testimony, and

25  opinions regarding those materials' role in the proof of Plaintiffs' case, which is protected by the

26  attorney work product doctrine. Plaintiffs do not waive any other objection that may apply.

27       Subject to and without waiving the foregoing objections and their right to supplement any

28  answers as further facts are discovered or to rely upon facts not described in this response,

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                     Page 35

1    Plaintiffs provide the following response:  Mr. Mines testified regarding the actions, or lack

2    thereof, taken by the Plan's fiduciaries to cure the breaches of fiduciary duty and prohibited

3    transactions by seeking a refund of amounts overpaid by the Plan.  Mines Dep. 236:1-236:4.

4    Messrs. Hommel, Stritmatter, and Cazzolla testified regarding the actions, or lack thereof, taken

5    by North Star Trust to investigate and cure the breaches of fiduciary duty and prohibited

6    transactions.  Hommel Dep. 261:24-286:2.  Stritmatter Dep. 146:22-147:10.  Cazzolla Dep.

7    184:1-25.  Plaintiffs further incorporate by reference their responses to Interrogatories Nos. 18

8    and 20 served by the KMH ESOP Committee.  Plaintiffs are unable to state further facts and

9    identify further documents without revealing information protected by the attorney work-product

10   doctrine, and on that basis will not further respond.

11   **INTERROGATORY NO. 24:**

12         STATE ALL FACTS CONCERNING YOUR contention in paragraph 51 of the

13   COMPLAINT that Defendant Fiduciaries "continued to intentionally withhold information about

14   KMH's potential asbestos liabilities from valuators, thereby continuing the breaches of fiduciary

15   duty that began in 1998."

16   **RESPONSE TO INTERROGATORY NO. 24:**

17         Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to this

18   interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of the

19   terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound,

20   overbroad and unduly burdensome, as described in the General Objections above.  Plaintiffs

21   further object to this Interrogatory as premature, unduly burdensome, harassing, oppressive, and

22   abusive of the discovery process on the grounds that it constitutes an improper contention

23   interrogatory and that investigation and discovery in this case are ongoing.  Plaintiffs further

24   object to this Interrogatory on the ground that it seeks communications, information, or

25   documents that are protected by the attorney-client privilege and/or the attorney work product

26   doctrine.  Plaintiffs further object to this Interrogatory on the grounds that it is unduly

27   burdensome, harassing, oppressive, and abusive of the discovery process because it requests

28   production of information and documents equally available to Defendant because Defendant has

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                    Page 36

1   equal access to all documents produced by all parties to this action and by third parties, and has

2   equal access to all transcripts of depositions taken by any party in this action. Any further

3   description of the documents and information responsive to this Interrogatory would require

4   revelation of attorneys' mental impressions, strategies, analysis of documents and testimony, and

5   opinions regarding those materials' role in the proof of Plaintiffs' case, which is protected by the

6   attorney work product doctrine. Plaintiffs do not waive any other objection that may apply.

7       Subject to and without waiving the foregoing objections and their right to supplement any

8   answers as further facts are discovered or to rely upon facts not described in this response,

9   Plaintiffs provide the following response: Plaintiffs identify Deposition Exhs. 9, 18, 24, 55, 74,

10   75, and 139. Plaintiffs further identify all documents showing asbestos sales or liability of Kelly

11   Moore Paint Co. or KMH in the period before October 13, 1998. Further, Messrs. Stritmatter,

12   Cazzolla, Cristiano, Ferrari, Mines, Ireland, and Bodenstein and Ms. Daly all testified regarding

13   what information relating to Kelly-Moore's asbestos litigation liabilities was provided to valuators

14   and when such information was provided. Stritmatter 109:25-117:1, 203:14-205:2, 210:14-

15   217:18, 218:25-221:2, 224:3-19, 226:22-228:18, 229:10-22, 266:13-267:1. Cazzolla Dep. 33:8-

16   38:6, 54:6-55:24, 85:23-87:12, 103:16-105:17. Cristiano Dep. 70:8-20, 151:6-14, 162:16-

17   165:10, 180:18-181:18, 189:10-190:7, 198:21-199:13, 201:7-10, 202:6-9, 203:21-204:3. Ferrari

18   Dep. 243:16-246:11, 259:1-262:19. Mines Dep. 56:11-58:18, 132:6-133:3, 227:16-230:3.

19   Ireland Dep. 62:18-62:22, 73:20-80:3, 120:18-125:24, 134:24-137:2, 147:7-156:12, 170:24-

20   178:19, 180:12-180:25. Bodenstein Dep. 52:22-67:22, 173:2-179:5. Daly Dep. 52:1-52:10.

21   Plaintiffs are unable to state further facts and identify further documents without revealing

22   information protected by the attorney work-product doctrine, and on that basis will not further

23   respond.

24   **INTERROGATORY NO. 25:**

25       STATE ALL FACTS CONCERNING YOUR contention in paragraph 52 of the

26   COMPLAINT that "Defendant Fiduciaries and KMH management intentionally withheld

27   information about the extent of KMH's potential asbestos liability from participants who were

28   active employees, including PLAINTIFFS Fernandez and Thomas, that would have shown them

1 | and other participants that the Plans overpaid for KMH stock."

2 | **RESPONSE TO INTERROGATORY NO. 25:**

3 | Plaintiffs incorporate their general objections by reference. Plaintiffs further object to this

4 | interrogatory on the ground that it is vague, ambiguous, unduly burdensome, and overbroad by

5 | virtue of forcing Plaintiffs to speculate as to the meaning of the undefined term "intentionally" and

6 | show facts demonstrating Defendants' own state of mind, which is within the knowledge of

7 | Defendants, not Plaintiffs. Plaintiffs further object to this interrogatory as compound, overbroad

8 | and unduly burdensome by virtue of its inclusion of the terms "STATE ALL FACTS" and

9 | "CONCERNING," to which Plaintiffs object as compound, overbroad and unduly burdensome, as

10 | described in the General Objections above. Plaintiffs further object to this Interrogatory as

11 | premature, unduly burdensome, harassing, oppressive, and abusive of the discovery process on

12 | the grounds that it constitutes an improper contention interrogatory and that investigation and

13 | discovery in this case are ongoing. Plaintiffs further object to this Interrogatory on the ground

14 | that it seeks communications, information, or documents that are protected by the attorney-client

15 | privilege and/or the attorney work product doctrine. Plaintiffs further object to this Interrogatory

16 | on the ground that it seeks the identity of, facts known by, and opinions held by Plaintiffs'

17 | consulting, non-testifying experts. Such information is shielded from disclosure by Fed. R. Civ.

18 | P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs further object to this

19 | Interrogatory on the grounds that it is unduly burdensome, harassing, oppressive, and abusive of

20 | the discovery process because it requests production of information and documents equally

21 | available to Defendant because Defendant has equal access to all documents produced by all

22 | parties to this action and by third parties, and has equal access to all transcripts of depositions

23 | taken by any party in this action. Any further description of the documents and information

24 | responsive to this Interrogatory would require revelation of attorneys' mental impressions,

25 | strategies, analysis of documents and testimony, and opinions regarding those materials' role in

26 | the proof of Plaintiffs' case, which is protected by the attorney work product doctrine. Plaintiffs

27 | further object to this Interrogatory as duplicative of Interrogatory No. 1 served by the KMH

28 | ESOP Committee and therefore particularly burdensome, harassing, oppressive, and abusive of

1   the discovery process. Plaintiffs do not waive any other objection that may apply.

2        Subject to and without waiving the foregoing objections and their right to supplement any

3   answers as further facts are discovered or to rely upon facts not described in this response,

4   Plaintiffs provide the following response: Plaintiffs Smith, Thomas, and Fernandez all testified in

5   their depositions regarding the information they received from their former employers regarding

6   Kelly-Moore Paint Co.'s and KMH's potential asbestos liabilities. Smith Dep. 35:3-37:4, 38:19-

7   40:24, 53:19-56:2, 81:10-82:22, 84:12-87:21, 109:23-117:20, 125:18-130:19, 133:8-135:9,

8   142:15-146:17, 150:5-157:7, 160:13-172:4, 173:24-174:16, 175:1-176:3. Thomas Dep. 12:22-

9   13:16, 75:23-76:18, 81:3-89:9, 91:19-96:7, 97:5-101:15, 104:15-117:10, 119:12-126:3, 132:3-

10  134:6, 135:7-150:12, 156:22-168:3, 172:1-173:8, 177:13-187:14, 199:2-9, 209:14-210:14.

11  Fernandez Dep. 31:16-36:18, 40:6-12, 85:18-89:12, 93:3-94:16, 95:25-99:24, 102:7-14, 118:16-

12  119:8, 121:14-123:10, 130:12-132:20, 134:14-146:10, 154:1-156:7, 157:19-163:10, 181:4-

13  182:18, 187:1-188:18. Plaintiffs further incorporate by reference their responses to Interrogatory

14  No. 1 served by the KMH ESOP Committee. Plaintiffs further identify Deposition Exhs 9, 27,

15  28, 55, 59, 60, 83, 95-97, 116-120, 137, 147-150, 153-166, 168-179, 183, 187-211, 217, 219-

16  221, 223, 228-235. Plaintiffs further identify all documents showing asbestos sales or liability of

17  Kelly Moore Paint Co. or KMH in the period before October 13, 1998. Further, Messrs.

18  Stritmatter, Ferrari, Cristiano, Giffins, and Ireland testified regarding the knowledge possessed by

19  Mr. Moore and other executives of Kelly-Moore Paint Co. regarding the extent of the company's

20  potential asbestos liabilities in 1998 and 1999. Stritmatter Dep. 34:3-35:17, 125:4-130:18,

21  143:13-23, 211:8-217:18, 249:19-251:4, 253:14-254:1. Ferrari Dep. 156:24-173:6, 173:11-

22  187:25, 193:12-215:19. Crisitano Dep. 26:8-40:3, 46:14-48:13, 53:9-64:20, 107:11-111:7,

23  113:8-20, 114:12-115:19, 116:9-15, 119:12-120:24, 149:22-151:4. Giffins Dep. 41:23-42:22,

24  79:21-80:19. Ireland Dep. 73:23-79:19. In addition, Mr. Cazzolla testified about the knowledge

25  possessed by Mr. Moore and other executives of CIG regarding the extent of Kelly-Moore Paint

26  Co.'s potential asbestos liabilities in 1998 and 1999. Cazzolla Dep. 31:7-32:19, 53:2-54:2, 93:3-

27  17, 100:12-101:16. Mr. Hommel testified about the information that North Star received

28  regarding the extent of the company's asbestos liabilities in 1998 and 1999 and about whether

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES' FIRST INTERROGATORIES
[CASE NO. C-06-07339 CW]                                                    Page 39

1    these liabilities were taken into account in valuation reports. Hommel Dep. 167:11-168:10,

2    179:3-185:7, 199:16-209:25, 238:1-241:4. Plaintiffs further identify all documents showing

3    asbestos sales or liability of Kelly Moore Paint Co. or KMH in the period before October 13,

4    1998. Plaintiffs further incorporate by reference their responses to Interrogatories Nos. 6, 13, and

5    15. Further, Messrs. Giffins, Cristiano, Ferrari, Stritmatter, and Cazzolla testified about

6    communications with participants, including communications (or lack thereof) about asbestos

7    liabilities. Giffins Dep. 165:12-181:21. Cristiano Dep. 165:15-173:1, 205:20-212:7. Ferrari

8    Dep. 174:18-175:3, 211:25-212:19, 222:10-20. Stritmatter Dep. 103:17-104:8, 177:16-178:18,

9    198:1-15, 237:7-241:13. Cazzolla Dep. 24:24-25:1, 93:21-97:25, 169:24-175:4. Plaintiffs are

10    unable to state further facts and identify further documents without revealing information

11    protected by the attorney work-product doctrine, and on that basis will not further respond.

12

13

14    Dated: _5/29/08_                               LEWIS, FEINBERG, LEE,
                                                     RENAKER & JACKSON, P.C.
15
                              By:    _Kirsten Scott_
16                                   Kirsten G. Scott

17                                   Daniel Feinberg
                                     Todd F. Jackson
18                                   Margaret E. Hasselman
                                     Nina R. Wasow
19                                   Kirsten G. Scott
                                     LEWIS, FEINBERG, LEE,
20                                   RENAKER & JACKSON, P.C.
                                     1330 Broadway, Suite 1800
21                                   Oakland, CA 94612
                                     Telephone: (510) 839-6824
22                                   Facsimile: (510) 839-7839

23                                   Peter Rukin – CA State Bar No. 178336
                                     RUKIN HYLAND DORIA
24                                   & TINDALL LLP
                                     100 Pine Street, Suite 725
25                                   San Francisco, CA
                                     Telephone: (415) 421-1800
26                                   Facsimile: (415) 421-1700
                                     Email: peterrukin@rhddlaw.com
27
                                     *Attorneys for Plaintiffs*
28                                   *and the Proposed Class*

1

**PROOF OF SERVICE**

2      I, Candice Elder, declare:

3      My business address is 1330 Broadway, Suite 1800, Oakland, California 94612.  I am

4  over the age of 18 years and not a party to the above-entitled action.

5      On May 29, 2008, I served:

6  **PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT K-M
   INDUSTRIES HOLDING CO., INC.'S FIRST SET OF INTERROGATORIES TO**

7  **PLAINTIFFS**

8  on the persons listed below by facsimile and by placing a true and correct copy thereof in a United

9  States Postal Service Mail Box, with First Class with postage prepaid, addressed as follows:

10

11  Ronald Lovitt                                    Nicole A. Diller
    J. Thomas Hannan                                 Don Sullivan
12  Henry I. Bornstein                               Andrew C. Sullivan
    LOVITT & HANNAN, INC.                            MORGAN, LEWIS & BOCKIUS LLP
13  900 Front Street, Suite 300                      One Market, Spear Street Tower
    San Francisco, CA 94111                          San Francisco, CA 94105
14  Telephone: 415-362-8769                          Telephone: 415-442-1000
    Facsimile: 415-362-7528                          Facsimile: 415-442-1001
15
    Robert L. Palmer
16  Lauren A. Smith
    Caroline Walters
17  Paul B. Derby
    Allison K. Chock
18  HENNIGAN, BENNETT & DORMAN LLP
    865 South Figueroa Street
19  Suite 2900
    Los Angeles, CA 90017
20  Telephone: 213-694-1200
    Facsimile: 213-694-1234
21
    **Attorneys for Defendants**
22

23

24      I declare under penalty of perjury that the foregoing is true and correct.  Executed on May

25  29, 2008, at Oakland, California.

26                                    _____
                                      Candice Elder
27

28

# EXHIBIT  K

1  Daniel Feinberg – CA State Bar No. 135983
   Todd F. Jackson – CA State Bar No. 202598
2  Margaret E. Hasselman – CA State Bar No. 228529
   Nina R. Wasow – CA State Bar No. 242047
3  Kirsten G. Scott – CA State Bar No.253464
   LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
4  1330 Broadway, Suite 1800
   Oakland, CA  94612
5  Telephone: (510) 839-6824
   Facsimile: (510) 839-7839
6  Email: dfeinberg@lewisfeinberg.com
   Email: tjackson@lewisfeinberg.com
7  Email: mhasselman@lewisfeinberg.com
   Email: nwasow@lewisfeinberg.com
8  Email: kscott@lewisfeinberg.com

9  *Attorneys for Plaintiffs and the Proposed Class*
   (Additional counsel listed within)

10

IN THE UNITED STATES DISTRICT COURT

11

FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

SAN FRANCISCO AND OAKLAND DIVISION

13

14

| | |
|---|---|
| THOMAS FERNANDEZ et al., | Case No. C-06-07339 CW |
| Plaintiffs, | **PLAINTIFFS' SECOND SUPPLEMENTAL RESPONSES TO DEFENDANT K-M INDUSTRIES HOLDING CO., INC. ESOP PLAN COMMITTEE'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS** |
| vs. | |
| K-M INDUSTRIES HOLDING CO., INC.; et al., | |
| Defendants. | |

15

16

17

18

19

20

21

PROPOUNDING PARTY:    Defendant K-M INDUSTRIES HOLDING CO., INC. ESOP
22                                              PLAN COMMITTEE

23  RESPONDING PARTY:    Plaintiffs THOMAS FERNANDEZ, LORA SMITH, AND
                                              TOSHA THOMAS
24

25  SET NUMBER:                  ONE

26

PRELIMINARY STATEMENT

27

All of these responses are based only upon the information that is presently available to

28  and specifically known by Plaintiffs, except as to those matters stated on their information and

1    belief, and as to those matters they believe them to be true. Independent investigation, legal

2    research, and analysis may supply additional facts and add meaning to the known facts, as well as

3    establish entirely new factual conclusions and legal contentions, all of which may lead to the

4    discovery of additional information, thereby resulting in additions to, changes in, and variations

5    from, these responses.

6        These responses are given without prejudice to Plaintiffs' right to produce evidence of

7    any subsequently discovered documents or compiled facts or determinations thereof that

8    Plaintiffs may later locate or discover. Accordingly, Plaintiffs reserve the right to change any and

9    all of these responses as additional facts are ascertained, analyses are made, legal research is

10   completed, contentions are made, and documents are located. Moreover, all information is being

11   produced only for the purpose of this litigation.

12       With regard to each interrogatory, Plaintiffs reserve the right, notwithstanding these

13   responses, to employ at trial or in any pre-trial proceeding, information subsequently obtained or

14   discovered, information the materiality of which is not presently ascertained, or information

15   Plaintiffs do not regard as coming within the scope of these interrogatories as Plaintiffs

16   understand them.

17       Any information within the scope of the attorney-client privilege, the attorney work

18   product doctrine, or any other privilege or protection that is inadvertently disclosed herein is not

19   intended to be and should not be construed to be a waiver of any applicable privilege or

20   immunity from disclosure, except where such privilege is expressly waived by Plaintiffs in

21   writing. Plaintiffs reserve the right to assert these privileges at any time in these proceedings and

22   further reserves the right to request the return of all privileged information, including copies of

23   the responses themselves. In addition, all evidentiary objections are reserved and no waiver of

24   any objection is to be implied from any response. To the extent that a response might arguably

25   waive an otherwise assertable objection or claim of privilege, such waiver shall be limited to the

26   specific response only and shall not extend to any other discovery.

27       Plaintiffs make no incidental or implied admissions with regard to the contents of these

28   responses. The fact that Plaintiffs have responded or objected to any interrogatory or any part

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES ESOP PLAN COMMITTEE'S FIRST
INTERROGATORIES [CASE NO. C-06-07339 CW]                                    Page 2

1   thereof should not be taken as an admission that Plaintiffs accept or admit the existence of any

2   facts set forth or assumed by Propounding Party's interrogatory, or that such response or

3   objection constitutes admissible evidence.  The fact that Plaintiffs have answered part or all of

4   any interrogatory is not intended and shall not be construed to be a waiver by Plaintiffs of any

5   objections to any interrogatory or to further inquiry into the subject matter of any interrogatory.

6   These responses are made solely for the purpose of this action.  Each response is subject to all

7   objections as to competence, relevance, materiality, propriety, admissibility, privacy, privilege,

8   and any and all other objections that would require exclusion of any statement contained here if

9   any such requests were asked of, or any statement contained here were made by, a witness

10  present and testifying in court, all of which objections and grounds are reserved and may be

11  interposed at the time of trial.

12      This preliminary statement is incorporated into each response by this reference.

13                                **GENERAL OBJECTIONS**

14      The following objections apply to the entire set of responses and are incorporated by

15  reference as though fully set forth in each response to each individual interrogatory listed below:

16      1.    Plaintiffs object to each interrogatory to the extent it calls for disclosure of

17  communications, information, or documents that are protected by the attorney-client privilege,

18  the attorney work product doctrine, Federal Rule of Civil Procedure 26(b)(4)(B), Plaintiffs'

19  privacy rights, the privacy rights of others, or any other constitutional, statutory or common law

20  privilege or protection.

21      2.    Plaintiffs object to each interrogatory to the extent it calls for premature disclosure

22  of expert testimony.

23      3.    Plaintiffs object to each interrogatory to the extent it calls for the disclosure of

24  privileged communication with consulting experts.

25      4.    Plaintiffs object to each interrogatory as unduly burdensome, oppressive,

26  harassing, and abusive of the discovery process to the extent that they, individually or

27  cumulatively, purport to seek to impose obligations upon Plaintiffs beyond those authorized by

28  the Federal Rules of Civil Procedure, the Local Rules of the Court, and/or the Court's orders in

1  this action.

2      5.    Plaintiffs object to the entire set of interrogatories, and to each interrogatory

3  individually, to the extent it is overly broad, vague, ambiguous, unduly burdensome, harassing,

4  oppressive, abusive of the discovery process, or generally non-specific as to indicate what a full

5  and complete response would be.  Such vagueness appears frequently in undefined terms and

6  phrases.  Where possible, however, Plaintiffs will make reasonable assumptions as to

7  Defendant's intended meaning and will respond accordingly, while preserving their objections as

8  to vagueness, ambiguity, and uncertainty.

9      6.    Plaintiffs object to each interrogatory as unduly burdensome, oppressive,

10  harassing, and abusive of the discovery process to the extent it requires the production of

11  information and/or documents already produced to Defendant or by Defendant in this action, or

12  within the possession, custody or control of third parties or public records, and therefore equally

13  available to Defendant.

14      7.    Plaintiffs object to each interrogatory as unduly burdensome, oppressive,

15  harassing, and abusive of the discovery process to the extent it requires the production of

16  information and/or documents within the possession, custody or control of the Defendant.

17      8.    Plaintiffs object to each interrogatory as unduly burdensome, oppressive,

18  harassing, and abusive of the discovery process to the extent it seeks information and/or the

19  production of documents and/or things which are not in Plaintiffs' possession, control, or

20  custody.

21      9.    Plaintiffs object to Defendant's definition of the word "CONCERNING" as

22  overbroad and unduly burdensome because the definition "related in any way to the matter in

23  question" and the additional defining terms, including "reflecting, referring to, referencing,

24  identifying, explaining, summarizing, documenting, recording, constituting, discussing,

25  quantifying, and describing" potentially encompasses information far beyond that relevant to the

26  claims at issue in this action.  In the context of the Interrogatories, which relate to certain

27  allegations set forth in the Second Amended Complaint, such a definition is unreasonably

28  overbroad and unduly burdensome.  Therefore Plaintiffs interpret each use of the word

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES ESOP PLAN COMMITTEE'S FIRST
INTERROGATORIES [CASE NO. C-06-07339 CW]                      Page 4

1  CONCERNING in the Interrogatories as though it were the word SUPPORTING.

2      10.    Plaintiffs object to the definition "STATE ALL FACTS" as overbroad and unduly

3  burdensome because the definition because it requests a "full and complete statement of all facts

4  and application of facts to law relating to the subject matter of the interrogatory including the

5  IDENTITY of any PERSON having knowledge of any such fact and the IDENTITY of any

6  DOCUMENT which concerns, refers, relates, or evidences such facts." Such a definition

7  potentially encompasses information far beyond that relevant to the claims at issue in this action

8  because "related to" is vague and potentially limitless. Plaintiffs further object to this definition

9  as compound by virtue of requiring three separate responses to each interrogatory. Plaintiffs

10 further object to this definition as calling for production of protected attorney work product

11 because it requests "application of facts to law," which requires the revelation of attorneys'

12 opinions and mental impressions relating to the claims in the case. Plaintiffs will respond to each

13 interrogatory to the extent possible without revealing protected attorney work product.

14     11.    Plaintiffs object to each interrogatory as unduly burdensome, oppressive,

15 harassing, and abusive of the discovery process because they impose a high burden on Plaintiffs

16 to respond, but the benefit to Defendants of receiving answers from Plaintiffs is minimal,

17 because the interrogatories request facts to which Defendants already have access because they

18 within the knowledge of Defendants or within the documents produced by Defendants. Thus, the

19 burden on Plaintiffs vastly outweighs any possible benefit to Defendants, rendering the

20 interrogatories inappropriate.

21     12.    Plaintiffs assert these objections without waiving or intending to waive any

22 objections as to competency, relevancy, materiality, or privilege.

23     13.    Without waiving any of the foregoing General Objections, each of which is hereby

24 expressly incorporated into each individual response as if fully restated therein, Plaintiff

25 responds, as set forth below, subject to the following additional reservations:

26         a.    The right to object on any permissible ground whatsoever, including, but

27 not limited to, competency, vagueness, relevance, and materiality, to the admission into evidence

28 or any other use of any of these responses at the trial of this action or at any other proceeding in

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES ESOP PLAN COMMITTEE'S FIRST
INTERROGATORIES [CASE NO. C-06-07339 CW]                                              Page 5

1  this action or by any other action;

2          b.      The right to object on any permissible ground whatsoever to any demand

3  for further responses to the interrogatories or any other discovery procedures involving or

4  relating to the subject matter of the responses; and

5          c.      The right at any time to revise, correct, add to, or clarify any of the

6  responses set forth herein.

7      14.     These General Objections and Limitations apply to each interrogatory as though

8  restated in full therein.  The failure to mention any of the foregoing General Objections and

9  Limitations in the specific responses set forth below shall not be deemed a waiver of such

10  objection or limitation.

11      Subject to and without waiving the foregoing objections, and incorporating them by

12  reference into each of the responses provided below, Plaintiffs respond to Defendant K-M

13  Industries Holding Co. Inc.'s First Set of Interrogatories to Plaintiffs as follows:

14                          **INTERROGATORIES**

15  **INTERROGATORY NO. 1:**

16      STATE ALL FACTS CONCERNING YOUR contention in paragraph 52 of the

17  COMPLAINT that "Defendant Fiduciaries have intentionally withheld information about the

18  extent of KMH's potential asbestos liabilities from participants who are terminated employees,

19  including Plaintiff Smith."

20  **RESPONSE TO INTERROGATORY NO. 1:**

21      Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to

22  this interrogatory on the ground that it is vague, ambiguous, unduly burdensome, and overbroad

23  by virtue of forcing Plaintiffs to speculate as to the meaning of the undefined term "intentionally"

24  and show facts demonstrating Defendants' own state of mind, which is within the knowledge of

25  Defendants, not Plaintiffs.  Plaintiffs further object to this interrogatory as compound, overbroad

26  and unduly burdensome by virtue of its inclusion of the terms "STATE ALL FACTS" and

27  "CONCERNING," to which Plaintiffs object as compound, overbroad and unduly burdensome,

28  as described in the General Objections above.  Plaintiffs further object to this Interrogatory as

1 premature, unduly burdensome, harassing, oppressive, and abusive of the discovery process on

2 the grounds that it constitutes an improper contention interrogatory and that investigation and

3 discovery in this case are ongoing.  Plaintiffs further object to this Interrogatory on the ground

4 that it seeks communications, information, or documents that are protected by the attorney-client

5 privilege and/or the attorney work product doctrine.  Plaintiffs further object to this Interrogatory

6 as duplicative of Interrogatory No. 25 served by KMH and therefore particularly burdensome,

7 harassing, oppressive, and abusive of the discovery process.  Plaintiffs further object to this

8 Interrogatory on the grounds that it is unduly burdensome, harassing, oppressive, and abusive of

9 the discovery process because it requests production of information and documents equally

10 available to Defendant because Defendant has equal access to all documents produced by all

11 parties to this action and by third parties, and has equal access to all transcripts of depositions

12 taken by any party in this action.  Any further description of the documents and information

13 responsive to this Interrogatory would require revelation of attorneys' mental impressions,

14 strategies, analysis of documents and testimony, and opinions regarding those materials' role in

15 the proof of Plaintiffs' case, which is protected by the attorney work product doctrine.  Plaintiffs

16 do not waive any other objection that may apply.

17        Subject to and without waiving the foregoing objections and their right to supplement any

18 answers as further facts are discovered or to rely upon facts not described in this response,

19 Plaintiffs provide the following response:  Plaintiffs Smith, Thomas, and Fernandez all testified

20 in their depositions regarding the information they received from their former employers

21 regarding Kelly-Moore Paint Co.'s and KMH's potential asbestos liabilities.  Smith Dep. 35:3-

22 37:4, 38:19-40:24, 53:19-56:2, 81:10-82:22, 84:12-87:21, 109:23-117:20, 125:18-130:19, 133:8-

23 135:9, 142:15-146:17, 150:5-157:7, 160:13-172:4, 173:24-174:16, 175:1-176:3.  Thomas Dep.

24 12:22-13:16, 75:23-76:18, 81:3-89:9, 91:19-96:7, 97:5-101:15, 104:15-117:10, 119:12-126:3,

25 132:3-134:6, 135:7-150:12, 156:22-168:3, 172:1-173:8, 177:13-187:14, 199:2-9, 209:14-210:14.

26 Fernandez Dep. 31:16-36:18, 40:6-12, 85:18-89:12, 93:3-94:16, 95:25-99:24, 102:7-14, 118:16-

27 119:8, 121:14-123:10, 130:12-132:20, 134:14-146:10, 154:1-156:7, 157:19-163:10, 181:4-

28 182:18, 187:1-188:18.  Plaintiffs further identify Deposition Exhs 9, 27, 28, 55, 59, 60, 83, 95-

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES ESOP PLAN COMMITTEE'S FIRST
INTERROGATORIES [CASE NO. C-06-07339 CW]                                                              Page 7

1    97, 116-120, 137, 147-150, 153-166, 168-179, 183, 187-211, 217, 219-221, 223, 228-235.

2    Plaintiffs further identify all documents showing asbestos sales or liability of Kelly Moore Paint

3    Co. or KMH in the period before October 13, 1998. Further, Messrs. Stritmatter, Ferrari,

4    Cristiano, Giffins, and Ireland testified regarding the knowledge possessed by Mr. Moore and

5    other executives of Kelly-Moore Paint Co. regarding the extent of the company's potential

6    asbestos liabilities in 1998 and 1999. Stritmatter Dep. 34:3-35:17, 125:4-130:18, 143:13-23,

7    211:8-217:18, 249:19-251:4, 253:14-254:1. Ferrari Dep. 156:24-173:6, 173:11-187:25, 193:12-

8    215:19. Crisitano Dep. 26:8-40:3, 46:14-48:13, 53:9-64:20, 107:11-111:7, 113:8-20, 114:12-

9    115:19, 116:9-15, 119:12-120:24, 149:22-151:4. Giffins Dep. 41:23-42:22, 79:21-80:19. Ireland

10   Dep. 73:23-79:19. In addition, Mr. Cazzolla testified about the knowledge possessed by Mr.

11   Moore and other executives of CIG regarding the extent of Kelly-Moore Paint Co.'s potential

12   asbestos liabilities in 1998 and 1999. Cazzolla Dep. 31:7-32:19, 53:2-54:2, 93:3-17, 100:12-

13   101:16. Mr. Hommel testified about the information that North Star received regarding the

14   extent of the company's asbestos liabilities in 1998 and 1999 and about whether these liabilities

15   were taken into account in valuation reports. Hommel Dep. 167:11-168:10, 179:3-185:7,

16   199:16-209:25, 238:1-241:4. Plaintiffs further incorporate by reference their responses to

17   Interrogatories Nos. 6, 13, and 15. Further, Messrs. Giffins, Cristiano, Ferrari, Stritmatter, and

18   Cazzolla testified about communications with participants, including communications (or lack

19   thereof) about asbestos liabilities. Giffins Dep. 165:12-181:21. Cristiano Dep. 165:15-173:1,

20   205:20-212:7. Ferrari Dep. 174:18-175:3, 211:25-212:19, 222:10-20. Stritmatter Dep. 103:17-

21   104:8, 177:16-178:18, 198:1-15, 237:7-241:13. Cazzolla Dep. 24:24-25:1, 93:21-97:25, 169:24-

22   175:4. Plaintiffs further incorporate by reference their response to Interrogatories No. 6, 13, 15,

23   and 25 served by KMH. Plaintiffs are unable to state further facts and identify further documents

24   without revealing information protected by the attorney work-product doctrine, and on that basis

25   will not further respond.

26   **INTERROGATORY NO. 2:**

27        STATE ALL FACTS CONCERNING how YOU gained actual knowledge that the Plans'

28   purchases of KMH stock may have been for more than fair market value, as alleged in the

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES ESOP PLAN COMMITTEE'S FIRST
INTERROGATORIES [CASE NO. C-06-07339 CW]                                      Page 8

1   COMPLAINT.

2   **RESPONSE TO INTERROGATORY NO. 2:**

3          Plaintiffs incorporate their general objections by reference. Plaintiffs further object to

4   this interrogatory on the ground that it is vague and ambiguous by virtue of its inclusion of the

5   undefined terms "actual knowledge" and "fair market value," which are legal terms of art but for

6   which Defendants have not provided a definition for purposes of these responses. Plaintiffs

7   further object to this interrogatory on the ground that it is unintelligible because it requests

8   information regarding actual knowledge of a mere possibility. Plaintiffs further object to this

9   interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of the

10  terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound,

11  overbroad and unduly burdensome, as described in the General Objections above. Plaintiffs

12  further object to this Interrogatory as premature, unduly burdensome, harassing, oppressive, and

13  abusive of the discovery process on the grounds that it constitutes an improper contention

14  interrogatory and that investigation and discovery in this case are ongoing. Plaintiffs further

15  object to this Interrogatory on the ground that it seeks communications, information, or

16  documents that are protected by the attorney-client privilege and/or the attorney work product

17  doctrine. Plaintiffs further object to this Interrogatory on the ground that it seeks the identity of,

18  facts known by, and opinions held by Plaintiffs' consulting, non-testifying experts. Such

19  information is shielded from disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work

20  product privilege. Plaintiffs further object to this Interrogatory on the grounds that it is unduly

21  burdensome, harassing, oppressive, and abusive of the discovery process because it requests

22  production of information and documents equally available to Defendant because Defendant has

23  equal access to all documents produced by all parties to this action and by third parties, and has

24  equal access to all transcripts of depositions taken by any party in this action. Any further

25  description of the documents and information responsive to this Interrogatory would require

26  revelation of attorneys' mental impressions, strategies, analysis of documents and testimony, and

27  opinions regarding those materials' role in the proof of Plaintiffs' case, which is protected by the

28  attorney work product doctrine. Plaintiffs further object to this interrogatory on the ground that it

1  calls for the production of communications between Plaintiffs and their counsel. Plaintiffs do not

2  waive any other objection that may apply.

3        Subject to and without waiving the foregoing objections and their right to supplement any

4  answers as further facts are discovered or to rely upon facts not described in this response,

5  Plaintiffs provide the following response: Plaintiffs Smith, Thomas, and Fernandez all testified

6  in their depositions regarding the information they received from their former employers

7  regarding Kelly-Moore Paint Co.'s and KMH's potential asbestos liabilities. Smith Dep. 35:3-

8  37:4, 38:19-40:24, 53:19-56:2, 81:10-82:22, 84:12-87:21, 109:23-117:20, 125:18-130:19, 133:8-

9  135:9, 142:15-146:17, 150:5-157:7, 160:13-172:4, 173:24-174:16, 175:1-176:3. Thomas Dep.

10  12:22-13:16, 75:23-76:18, 81:3-89:9, 91:19-96:7, 97:5-101:15, 104:15-117:10, 119:12-126:3,

11  132:3-134:6, 135:7-150:12, 156:22-168:3, 172:1-173:8, 177:13-187:14, 199:2-9, 209:14-210:14.

12  Fernandez Dep. 31:16-36:18, 40:6-12, 85:18-89:12, 93:3-94:16, 95:25-99:24, 102:7-14, 118:16-

13  119:8, 121:14-123:10, 130:12-132:20, 134:14-146:10, 154:1-156:7, 157:19-163:10, 181:4-

14  182:18, 187:1-188:18. Plaintiffs further identify Deposition Exhs 9, 27, 28, 55, 59, 60, 83, 95-

15  97, 116-120, 137, 147-150, 153-166, 168-179, 183, 187-211, 217, 219-221, 223, and 228-235.

16  Plaintiffs are unable to state further facts and identify further documents without revealing

17  information protected by the attorney-client privilege and attorney work-product doctrine, and on

18  that basis will not further respond.

19  **INTERROGATORY NO. 3:**

20        STATE ALL FACTS CONCERNING YOUR contention in paragraph 57 of the

21  COMPLAINT that "PLAINTIFFS, like other Plan participants in the Plaintiff Class, suffered a

22  diminution in the values of their KMH and predecessor plan accounts when the Plans purchased

23  KMH stock owned by Defendant Moore Trust for more than fair market value, and continue to

24  suffer such losses in the present because Defendant Fiduciaries have failed to correct the

25  overpayment by the KMH Plan and its predecessor plans."

26  **RESPONSE TO INTERROGATORY NO. 3:**

27        Plaintiffs incorporate their general objections by reference. Plaintiffs further object to

28  this interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of

1  the terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as

2  compound, overbroad and unduly burdensome, as described in the General Objections above.

3  Plaintiffs further object to this Interrogatory as premature, unduly burdensome, harassing,

4  oppressive, and abusive of the discovery process on the grounds that it constitutes an improper

5  contention interrogatory and that investigation and discovery in this case are ongoing.  Plaintiffs

6  further object to this Interrogatory on the ground that it seeks communications, information, or

7  documents that are protected by the attorney-client privilege and/or the attorney work product

8  doctrine.  Plaintiffs further object to this Interrogatory on the ground that it seeks the identity of,

9  facts known by, and opinions held by Plaintiffs' consulting, non-testifying experts.  Such

10 information is shielded from disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work

11 product privilege.  Plaintiffs further object to this Interrogatory on the grounds that it is unduly

12 burdensome, harassing, oppressive, and abusive of the discovery process because it requests

13 production of information and documents equally available to Defendant because Defendant has

14 equal access to all documents produced by all parties to this action and by third parties, and has

15 equal access to all transcripts of depositions taken by any party in this action.  Any further

16 description of the documents and information responsive to this Interrogatory would require

17 revelation of attorneys' mental impressions, strategies, analysis of documents and testimony, and

18 opinions regarding those materials' role in the proof of Plaintiffs' case, which is protected by the

19 attorney work product doctrine.  Plaintiffs do not waive any other objection that may apply.

20     Subject to and without waiving the foregoing objections and their right to supplement any

21 answers as further facts are discovered or to rely upon facts not described in this response,

22 Plaintiffs provide the following response:  Plaintiffs are unable to respond to this interrogatory

23 without revealing attorney work product or prematurely disclosing expert testimony, and on that

24 ground will not respond further.  Plaintiffs will disclose expert reports in accordance with the

25 Court's pre-trial scheduling order.

26 **INTERROGATORY NO. 4:**

27     If YOU contend that the value of YOUR KMH and predecessor plan accounts was greater

28 prior to the Plans purchasing KMH stock owned by the Defendant Moore Trust, STATE ALL

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES ESOP PLAN COMMITTEE'S FIRST
INTERROGATORIES [CASE NO. C-06-07339 CW]                                              Page 11

1 FACTS CONCERNING YOUR contention.

2 **RESPONSE TO INTERROGATORY NO. 4:**

3      Plaintiffs incorporate their general objections by reference. Plaintiffs further object to

4 this interrogatory on the ground that it is unintelligible. Plaintiffs further object to this

5 interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of the

6 terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound,

7 overbroad and unduly burdensome, as described in the General Objections above. Plaintiffs

8 further object to this Interrogatory as premature, unduly burdensome, harassing, oppressive, and

9 abusive of the discovery process on the grounds that it constitutes an improper contention

10 interrogatory and that investigation and discovery in this case are ongoing. Plaintiffs further

11 object to this Interrogatory on the ground that it seeks communications, information, or

12 documents that are protected by the attorney-client privilege and/or the attorney work product

13 doctrine. Plaintiffs further object to this Interrogatory on the ground that it seeks the identity of,

14 facts known by, and opinions held by Plaintiffs' consulting, non-testifying experts. Such

15 information is shielded from disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work

16 product privilege. Plaintiffs further object to this Interrogatory on the grounds that it is unduly

17 burdensome, harassing, oppressive, and abusive of the discovery process because it requests

18 production of information and documents equally available to Defendant because Defendant has

19 equal access to all documents produced by all parties to this action and by third parties, and has

20 equal access to all transcripts of depositions taken by any party in this action. Any further

21 description of the documents and information responsive to this Interrogatory would require

22 revelation of attorneys' mental impressions, strategies, analysis of documents and testimony, and

23 opinions regarding those materials' role in the proof of Plaintiffs' case, which is protected by the

24 attorney work product doctrine. Plaintiffs further object to this interrogatory as vague as to the

25 time frame referenced. Plaintiffs do not waive any other objection that may apply.

26      Subject to and without waiving the foregoing objections and their right to supplement any

27 answers as further facts are discovered or to rely upon facts not described in this response,

28 Plaintiffs provide the following response: Plaintiffs find this interrogatory so unintelligible and

1   confusing as to render it nearly impossible to provide an answer. If Defendants mean, by this
2   interrogatory, to ask if Plaintiffs contend that the value of their ESOP plan accounts was greater
3   before the plans received (from loans) the cash that was used to purchase KMH tracking stock,
4   Plaintiffs do not so contend. However, Plaintiffs do contend that the value of the cash received
5   from loans to the ESOP was greater than the value of the KMH tracking stock for which that
6   cash was exchanged. Plaintiffs are unable to state further facts and identify further documents
7   without revealing information protected by the attorney-client privilege and attorney work-
8   product doctrine, or prematurely disclosing expert testimony, and on that basis will not further
9   respond.

10  **INTERROGATORY NO. 5:**

11      STATE ALL FACTS CONCERNING YOUR contention in paragraph 58 of the
12  COMPLAINT that "PLAINTIFFS will fairly and adequately represent and protect the interests of
13  the Plaintiff Class."

14  **RESPONSE TO INTERROGATORY NO. 5:**

15      Plaintiffs incorporate their general objections by reference. Plaintiffs further object to
16  this interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of
17  the terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as
18  compound, overbroad and unduly burdensome, as described in the General Objections above.
19  Plaintiffs further object to this Interrogatory as premature, unduly burdensome, harassing,
20  oppressive, and abusive of the discovery process on the grounds that it constitutes an improper
21  contention interrogatory and that investigation and discovery in this case are ongoing. Plaintiffs
22  further object to this interrogatory on the ground that it calls for the production of
23  communications between Plaintiffs and their counsel. Plaintiffs further object to this
24  Interrogatory on the ground that it seeks communications, information, or documents that are
25  protected by the attorney-client privilege and/or the attorney work product doctrine. Plaintiffs
26  further object to this Interrogatory on the grounds that it is unduly burdensome, harassing,
27  oppressive, and abusive of the discovery process because it requests production of information
28  and documents equally available to Defendant because Defendant has equal access to all

1  documents produced by all parties to this action and by third parties, and has equal access to all

2  transcripts of depositions taken by any party in this action. Any further description of the

3  documents and information responsive to this Interrogatory would require revelation of

4  attorneys' mental impressions, strategies, analysis of documents and testimony, and opinions

5  regarding those materials' role in the proof of Plaintiffs' case, which is protected by the attorney

6  work product doctrine. Plaintiffs do not waive any other objection that may apply.

7           Subject to and without waiving the foregoing objections and their right to supplement any

8  answers as further facts are discovered or to rely upon facts not described in this response,

9  Plaintiffs provide the following response: Plaintiffs are participants in the KMH Plan. The relief

10  sought primarily consists of declaratory and injunctive relief and restoration of losses to the

11  plans, so participant status is all that is necessary. Defendants have acted or refused to act on

12  grounds generally applicable to the Class, making appropriate declaratory and injunctive relief

13  with respect to Plaintiffs and the Class as a whole. The prosecution of separate actions by

14  individual Class members would create a risk of inconsistent or varying adjudications which

15  would establish incompatible standards of conduct for Defendants, or adjudications with respect

16  to individual Class members would as a practical matter be dispositive of the interests of non-

17  party Class members. Plaintiffs have also retained counsel experienced in litigating complex

18  ERISA fiduciary matters and class actions. Plaintiffs are unable to state further facts and identify

19  further documents without revealing information protected by the attorney-client privilege and

20  attorney work-product doctrine, and on that basis will not further respond.

21  **INTERROGATORY NO. 6:**

22           STATE ALL FACTS CONCERNING YOUR contention in paragraph 67 of the

23  COMPLAINT that "Defendant Fiduciaries have breached their duties of loyalty and prudence

24  under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1)."

25  **RESPONSE TO INTERROGATORY NO. 6:**

26           Plaintiffs incorporate their general objections by reference. Plaintiffs further object to

27  this interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of

28  the terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES ESOP PLAN COMMITTEE'S FIRST
INTERROGATORIES [CASE NO. C-06-07339 CW]                                    Page 14

1  compound, overbroad and unduly burdensome, as described in the General Objections above.

2  Plaintiffs further object to this Interrogatory as premature, unduly burdensome, harassing,

3  oppressive, and abusive of the discovery process on the grounds that it constitutes an improper

4  contention interrogatory and that investigation and discovery in this case are ongoing.  Plaintiffs

5  further object to this Interrogatory on the ground that it seeks the identity of, facts known by, and

6  opinions held by Plaintiffs' consulting, non-testifying experts.  Such information is shielded from

7  disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work product privilege.  Plaintiffs

8  further object to this Interrogatory on the ground that it seeks communications, information, or

9  documents that are protected by the attorney-client privilege and/or the attorney work product

10 doctrine.  Plaintiffs further object to this Interrogatory on the grounds that it is unduly

11 burdensome, harassing, oppressive, and abusive of the discovery process because it requests

12 production of information and documents equally available to Defendant because Defendant has

13 equal access to all documents produced by all parties to this action and by third parties, and has

14 equal access to all transcripts of depositions taken by any party in this action.  Any further

15 description of the documents and information responsive to this Interrogatory would require

16 revelation of attorneys' mental impressions, strategies, analysis of documents and testimony, and

17 opinions regarding those materials' role in the proof of Plaintiffs' case, which is protected by the

18 attorney work product doctrine.  Plaintiffs further object to this interrogatory on the ground that it

19 is overbroad, unduly burdensome, harassing, and abusive of the discovery process because it

20 requests that Plaintiffs state every fact concerning their entire First Claim for Relief.  As such, it

21 is also objectionable as unduly burdensome, harassing, and abusive of the discovery process

22 because it is duplicative of Interrogatories Nos. 1-25 served by Defendant K-M Industries

23 Holding Co., Inc., of Interrogatories Nos. 1-5 and 7-22 of the instant set of Interrogatories, and of

24 Interrogatory No. 24 served by Defendant North Star Trust Co., which the parties have agreed

25 Plaintiffs will answer at a later date.  Plaintiffs do not waive any other objection that may apply.

26      Subject to and without waiving the foregoing objections and their right to supplement any

27 answers as further facts are discovered or to rely upon facts not described in this response,

28 Plaintiffs provide the following response:  Plaintiffs contend that Defendants breached their

1  duties of loyalty and prudence by causing the Plans to pay more than fair market value for KMH

2  stock; failing to conduct a thorough and independent review and adequately consider whether the

3  October 1998 purchase of KMH Series P stock, and the October 1999 purchase of KMH Series I

4  stock from Defendant Moore Trust were in the best interests of the Plan participants; failing to

5  undertake an adequate and independent valuation of the KMH stock prior to those transactions;

6  failing to ensure that they secured an independent expert assessment of the fair market value of

7  KMH stock prior to those transactions; failing to investigate adequately the qualifications of any

8  and all valuation experts retained to prepare the valuations of KMH stock in connection with the

9  transactions; failing to provide complete and accurate information regarding KMH to such

10 valuation experts for use in the valuations prepared in connection with the transactions; failing to

11 make certain that reliance on any and all valuation experts' advice was reasonably justified under

12 the circumstances of the transactions; failing adequately to consider how KMH's potential

13 asbestos liabilities affected the value of KMH Series I and Series P stock; failing adequately to

14 consider that the status of KMH Series I and Series P stock as "tracking stock" affected its

15 value; failing to make an honest, objective effort to read the valuation reports, understand them,

16 and question the methods and assumptions that did not make sense; failing to seek a refund of

17 the KMH Plan's overpayment for KMH stock at any time between 1998 and the present;

18 overvaluing the KMH stock purchased from Defendant Moore Trust by the KMH Plan in

19 October 1998 and October 1999; withholding information about KMH's potential asbestos

20 liabilities from valuators; and violating the terms of the plan document of the KMH Plan by

21 refusing to redeem Plaintiff Smith's put option on the schedule established by the KMH Plan.

22 Plaintiffs further incorporate by reference their responses to Interrogatory No. 7. Plaintiffs are

23 unable to state further facts and identify further documents without revealing information

24 protected by the attorney work-product doctrine, and on that basis will not further respond.

25 **INTERROGATORY NO. 7:**

26      STATE ALL FACTS CONCERNING YOUR contention in paragraph 67 of the

27 COMPLAINT that the Fiduciary DEFENDANTS failed "to conduct a thorough and independent

28 review and adequately consider whether the October 13, 1998 purchase of KMH Series P stock,

1   and the October 13, 1999 purchase of KMH Series I stock from Defendant Moore Trust was in

2   the best interests of the Plan participants."

3   **RESPONSE TO INTERROGATORY NO. 7:**

4          Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to

5   this interrogatory on the ground that it is compound.  Plaintiffs further object to this interrogatory

6   as compound, overbroad and unduly burdensome by virtue of its inclusion of the terms "STATE

7   ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound, overbroad and

8   unduly burdensome, as described in the General Objections above.  Plaintiffs further object to

9   this Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the

10  discovery process on the grounds that it constitutes an improper contention interrogatory and that

11  investigation and discovery in this case are ongoing.  Plaintiffs further object to this Interrogatory

12  on the ground that it seeks the identity of, facts known by, and opinions held by Plaintiffs'

13  consulting, non-testifying experts.  Such information is shielded from disclosure by Fed. R. Civ.

14  P.26(b)(4)(B) and the attorney work product privilege.  Plaintiffs further object to this

15  Interrogatory on the ground that it seeks communications, information, or documents that are

16  protected by the attorney-client privilege and/or the attorney work product doctrine.  Plaintiffs

17  further object to this Interrogatory on the grounds that it is unduly burdensome, harassing,

18  oppressive, and abusive of the discovery process because it requests production of information

19  and documents equally available to Defendant because Defendant has equal access to all

20  documents produced by all parties to this action and by third parties, and has equal access to all

21  transcripts of depositions taken by any party in this action.  Any further description of the

22  documents and information responsive to this Interrogatory would require revelation of

23  attorneys' mental impressions, strategies, analysis of documents and testimony, and opinions

24  regarding those materials' role in the proof of Plaintiffs' case, which is protected by the attorney

25  work product doctrine.  Plaintiffs further object to this Interrogatory as duplicative of

26  Interrogatory No. 6 and of Interrogatories Nos. 2-5 and 9-12 served by the KMH ESOP

27  Committee and therefore particularly burdensome, harassing, oppressive, and abusive of the

28  discovery process.  Plaintiffs do not waive any other objection that may apply.

1        Subject to and without waiving the foregoing objections and their right to supplement any

2   answers as further facts are discovered or to rely upon facts not described in this response,

3   Plaintiffs provide the following response:  As to the October 1998 transaction, Messrs.

4   Stritmatter, Cristiano, Ireland, Ferrari, and Menke all testified with regard to the qualifications of

5   and process used to hire Mr. B.J. Brooks to perform a valuation of the KMH Series P stock

6   purchased by the Paint Plan on October 13, 1998; regarding the provision of information to Mr.

7   Brooks for preparation of the valuation report prepared in connection with the purchase of KMH

8   Series P stock by the Paint Plan; and regarding the analysis, or lack thereof, made by the Plan's

9   fiduciaries of the Mr. Brooks's valuation report prepared in connection with the purchase of

10  KMH Series P stock by the Paint Plan.  Stritmatter Dep. 201:3-202:13, 203:14-206:18, 208:14-

11  217:18, 216:9-217:3.  Cristiano Dep. 70:8-20, 151:6-14, 162:14-15, 173:2-177:4, 178:4-180:12,

12  180:18-181:18, 184:5-186:4, 191:10-195:20.  Ireland Dep. 23:1-28:25, 46:23-55:22, 62:18-

13  62:22.  Menke Dep. 230:17-232:4, 232:5-239:14, 251:13-251:24.  Ferrari Dep. 224:9-234:6,

14  242:10-242:24, 243:11-263:13, 235:5-244:11.  Plaintiffs further identify Deposition Exhibits 9,

15  55, 74, and 75.  As to the October 1999 transaction, Plaintiffs identify Deposition Exhs. 18, 24,

16  and 139.  Further, Messrs. Mines, Cazzolla, and Bodenstein and Ms. Daly testified regarding the

17  manner of choosing Duff & Phelps to perform a valuation for purposes of the Plan's purchase of

18  KMH Series I stock on October 18, 1999; regarding the information provided to Duff & Phelps

19  for use in its preparation of its valuation report dated 6/30/99 (Deposition Exh. 18); and

20  regarding the analysis, or lack thereof, made by the Plan's fiduciaries of Deposition Exhibit 18;

21  the analysis, or lack thereof, made by the Plan's fiduciaries of Deposition Exhibit 139; and the

22  analysis, or lack thereof, of Deposition Exhibit 24.  Mines Dep.100:15-105:11, 117:25-121:8,

23  130:1-137:8, 150:1-150:20, 143:6-149:21, 154:1-158:24.  Cazzolla Dep. 33:8-38:6, 45:5-47:22,

24  54:6-55:24, 80:7-81:2, 85:23-87:12, 88:23-89:16, 90:22-91:5, 103:16-104:16, 106:19-121:10,

25  147:6-149:11, 159:4-166:21, 202:7-203:15.  Bodenstein Dep. 39:20-48:1, 48:22-53:3, 68:8-78:7,

26  108:25-109:24, 123:7-128:10, 142:11-142:18.  Daly Dep. 65:20-66:6, 69:14-69:25.  Plaintiffs

27  further incorporate by reference their responses to Interrogatory No. 6 and to Interrogatories Nos.

28  2-5 and 9-12 served by KMH.  Plaintiffs are unable to state further facts and identify further

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES ESOP PLAN COMMITTEE'S FIRST
INTERROGATORIES [CASE NO. C-06-07339 CW]                                                    Page 18

1   documents without revealing information protected by the attorney work-product doctrine, and

2   on that basis will not further respond.

3   **INTERROGATORY NO. 8:**

4        STATE ALL FACTS CONCERNING YOUR contention in paragraph 67 of the

5   COMPLAINT that the Fiduciary DEFENDANTS failed "to undertake an adequate and

6   independent valuation of the KMH stock prior to" the October 13, 1998 purchase of KMH Series

7   P stock, and the October 13, 1999 purchase of KMH Series I stock from Defendant Moore

8   Trust."

9   **RESPONSE TO INTERROGATORY NO. 8:**

10       This interrogatory was withdrawn on May 5, 2008, pursuant to agreement of the parties.

11  On that basis, Plaintiffs will not respond to this interrogatory.

12  **INTERROGATORY NO. 9:**

13       STATE ALL FACTS CONCERNING YOUR contention in paragraph 67 of the

14  COMPLAINT that the Fiduciary DEFENDANTS failed "adequately to consider how KMH's

15  potential asbestos liabilities affected the value of KMH Series I and Series P stock."

16  **RESPONSE TO INTERROGATORY NO. 9:**

17       Plaintiffs incorporate their general objections by reference. Plaintiffs further object to

18  this interrogatory on the ground that it is compound. Plaintiffs further object to this interrogatory

19  as compound, overbroad and unduly burdensome by virtue of its inclusion of the terms "STATE

20  ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound, overbroad and

21  unduly burdensome, as described in the General Objections above. Plaintiffs further object to

22  this Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the

23  discovery process on the grounds that it constitutes an improper contention interrogatory and that

24  investigation and discovery in this case are ongoing. Plaintiffs further object to this Interrogatory

25  on the ground that it seeks the identity of, facts known by, and opinions held by Plaintiffs'

26  consulting, non-testifying experts. Such information is shielded from disclosure by Fed. R. Civ.

27  P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs further object to this

28  Interrogatory on the ground that it seeks communications, information, or documents that are

1    protected by the attorney-client privilege and/or the attorney work product doctrine. Plaintiffs

2    further object to this Interrogatory on the grounds that it is unduly burdensome, harassing,

3    oppressive, and abusive of the discovery process because it requests production of information

4    and documents equally available to Defendant because Defendant has equal access to all

5    documents produced by all parties to this action and by third parties, and has equal access to all

6    transcripts of depositions taken by any party in this action. Any further description of the

7    documents and information responsive to this Interrogatory would require revelation of

8    attorneys' mental impressions, strategies, analysis of documents and testimony, and opinions

9    regarding those materials' role in the proof of Plaintiffs' case, which is protected by the attorney

10   work product doctrine. Plaintiffs further object to this Interrogatory as duplicative of

11   Interrogatories Nos. 4-6 and 11-13 served by the KMH ESOP Committee and therefore

12   particularly burdensome, harassing, oppressive, and abusive of the discovery process. Plaintiffs

13   do not waive any other objection that may apply.

14          Subject to and without waiving the foregoing objections and their right to supplement any

15   answers as further facts are discovered or to rely upon facts not described in this response,

16   Plaintiffs provide the following response: As to the Series P stock purchased by the Plan,

17   Messrs. Stritmatter, Ferrari, Menke, and Cristiano testified regarding the provision of

18   information to Mr. Brooks for preparation of the valuation report prepared in connection with the

19   purchase of KMH Series P stock by the Paint Plan; and regarding the analysis, or lack thereof,

20   made by the Plan's fiduciaries of the Mr. Brooks's valuation report prepared in connection with

21   the purchase of KMH Series P stock by the Paint Plan. Stritmatter Dep. 203:14-205:12, 210:14-

22   217:18. Ferrari Dep. 242:10-242:24, 243:11-263:13, 235:5-244:11. Menke Dep. 230:17-232:4,

23   232:5-239:14, 251:13-251:24. Cristiano Dep. 70:8-20, 151:6-14, 162:14-15, 178:4-180:12,

24   180:18-181:18, 184:5-186:4, 191:10-195:20. Plaintiffs further identify Deposition Exh. 9, 55,

25   74, and 75. As to the Series I stock purchased by the Plans, Plaintiffs identify Deposition Exhs.

26   18, 24, and 139. Further, Messrs. Mines, Cazzolla, and Bodenstein, and Ms. Daly testified

27   regarding the information provided to Duff & Phelps for use in its preparation of its valuation

28   report dated 6/30/99 (Deposition Exh. 18); and regarding the analysis, or lack thereof, made by

1    the Plan's fiduciaries of Deposition Exhibit 18; the analysis, or lack thereof, made by the Plan's

2    fiduciaries of Deposition Exhibit 139; and the analysis, or lack thereof, of Deposition Exhibit 24.

3    Mines Dep. 130:1-137:8, 150:1-150:20, 143:6-149:21, 154:1-158:24. Cazzolla Dep. 33:8-38:6,

4    54:6-55:24, 85:23-87:12, 103:16-104:16, 106:19-121:10, 147:6-149:11, 159:4-166:21, 202:7-

5    203:15. Bodenstein Dep. 48:22-53:3, 68:8-78:7, 108:25-109:24, 123:7-128:10, 142:11-142:18.

6    Daly Dep. 65:20-66:6, 69:14-69:25. Mr. Hommel testified about the information that North Star

7    received regarding the extent of the company's asbestos liabilities in 1998 and 1999, and about

8    whether these liabilities were taken into account in valuation reports. Hommel Dep. 167:11-

9    168:10, 179:3-185:7, 199:16-209:25, 238:1-241:4. Plaintiffs further incorporate by reference

10    their responses to Interrogatories Nos. 4-6 and 11-13 served by KMH. Plaintiffs are unable to

11    state further facts and identify further documents without revealing information protected by the

12    attorney work-product doctrine, and on that basis will not further respond.

13    **INTERROGATORY NO. 10:**

14        STATE ALL FACTS CONCERNING YOUR contention in paragraph 67 of the

15    COMPLAINT that the Fiduciary DEFENDANTS failed "adequately to consider that the status of

16    KMH Series I and Series P stock as "tracking stock" affected its value."

17    **RESPONSE TO INTERROGATORY NO. 10:**

18        Plaintiffs incorporate their general objections by reference. Plaintiffs further object to

19    this interrogatory on the ground that it is compound. Plaintiffs further object to this interrogatory

20    as compound, overbroad and unduly burdensome by virtue of its inclusion of the terms "STATE

21    ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound, overbroad and

22    unduly burdensome, as described in the General Objections above. Plaintiffs further object to

23    this Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the

24    discovery process on the grounds that it constitutes an improper contention interrogatory and that

25    investigation and discovery in this case are ongoing. Plaintiffs further object to this Interrogatory

26    on the ground that it seeks the identity of, facts known by, and opinions held by Plaintiffs'

27    consulting, non-testifying experts. Such information is shielded from disclosure by Fed. R. Civ.

28    P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs further object to this

1  Interrogatory on the ground that it seeks communications, information, or documents that are

2  protected by the attorney-client privilege and/or the attorney work product doctrine. Plaintiffs

3  further object to this Interrogatory on the grounds that it is unduly burdensome, harassing,

4  oppressive, and abusive of the discovery process because it requests production of information

5  and documents equally available to Defendant because Defendant has equal access to all

6  documents produced by all parties to this action and by third parties, and has equal access to all

7  transcripts of depositions taken by any party in this action. Any further description of the

8  documents and information responsive to this Interrogatory would require revelation of

9  attorneys' mental impressions, strategies, analysis of documents and testimony, and opinions

10  regarding those materials' role in the proof of Plaintiffs' case, which is protected by the attorney

11  work product doctrine. Plaintiffs further object to this Interrogatory as duplicative of

12  Interrogatories Nos. 5, 7, 12, and 14 served by the KMH ESOP Committee and therefore

13  particularly burdensome, harassing, oppressive, and abusive of the discovery process. Plaintiffs

14  do not waive any other objection that may apply.

15        Subject to and without waiving the foregoing objections and their right to supplement any

16  answers as further facts are discovered or to rely upon facts not described in this response,

17  Plaintiffs provide the following response: As to the Series P stock, Plaintiffs identify Deposition

18  Exhs. 9 and 55. Further, Messrs. Stritmatter, Ferrari, and Cristiano all testified regarding the

19  analysis, or lack thereof, made by the Plan's fiduciaries of the Mr. Brooks's valuation report

20  prepared in connection with the purchase of KMH Series P stock by the Paint Plan. Stritmatter

21  Dep. 216:9-217:3. Ferrari Dep. 235:5-244:11. Cristiano Dep. 162:14-15, 178:4-180:12, 184:5-

22  186:4, 191:10-195:20. As to the Series I stock, Plaintiffs identify Deposition Exh. 18 and

23  testimony regarding Exh. 18 by Mr. Bodenstein. Bodenstein Dep. 111:3-123:6. Further, Messrs.

24  Mines, Cazzolla, and Bodenstein, and Ms. Daly all testified regarding the analysis, or lack

25  thereof, made by the Plan's fiduciaries of Deposition Exhibit 18; the analysis, or lack thereof,

26  made by the Plan's fiduciaries of Deposition Exhibit 139; and the analysis, or lack thereof, of

27  Deposition Exhibit 24. Mines Dep. 143:6-149:21, 154:1-158:24. Cazzolla Dep. 106:19-121:10,

28  147:6-149:11, 159:4-166:21, 202:7-203:15. Bodenstein Dep. 123:7-128:10, 142:11-142:18.

1  Daly Dep. 65:20-66:6, 69:14-69:25.  Plaintiffs further incorporate by reference their responses to

2  Interrogatories Nos. 5, 7, 12, and 14 served by KMH.  Plaintiffs are unable to state further facts

3  and identify further documents without revealing information protected by the attorney work-

4  product doctrine, and on that basis will not further respond.

5  **INTERROGATORY NO. 11:**

6        STATE ALL FACTS CONCERNING YOUR contention in paragraph 67 of the

7  COMPLAINT that the Fiduciary DEFENDANTS overvalued "the KMH stock purchased from

8  Defendant Moore Trust by the KMH Plan in October 1998 and October 1999."

9  **RESPONSE TO INTERROGATORY NO. 11:**

10        Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to

11  this interrogatory on the ground that it is compound.  Plaintiffs further object to this interrogatory

12  as compound, overbroad and unduly burdensome by virtue of its inclusion of the terms "STATE

13  ALL FACTS" and "CONCERNING," to which Plaintiffs object as compound, overbroad and

14  unduly burdensome, as described in the General Objections above.   Plaintiffs further object to

15  this Interrogatory as premature, unduly burdensome, harassing, oppressive, and abusive of the

16  discovery process on the grounds that it constitutes an improper contention interrogatory and that

17  investigation and discovery in this case are ongoing.  Plaintiffs further object to this Interrogatory

18  on the ground that it seeks the identity of, facts known by, and opinions held by Plaintiffs'

19  consulting, non-testifying experts.  Such information is shielded from disclosure by Fed. R. Civ.

20  P.26(b)(4)(B) and the attorney work product privilege.  Plaintiffs further object to this

21  Interrogatory on the ground that it seeks communications, information, or documents that are

22  protected by the attorney-client privilege and/or the attorney work product doctrine.  Plaintiffs

23  further object to this Interrogatory on the grounds that it is unduly burdensome, harassing,

24  oppressive, and abusive of the discovery process because it requests production of information

25  and documents equally available to Defendant because Defendant has equal access to all

26  documents produced by all parties to this action and by third parties, and has equal access to all

27  transcripts of depositions taken by any party in this action.  Any further description of the

28  documents and information responsive to this Interrogatory would require revelation of

1  attorneys' mental impressions, strategies, analysis of documents and testimony, and opinions
2  regarding those materials' role in the proof of Plaintiffs' case, which is protected by the attorney
3  work product doctrine.  Plaintiffs further object to this Interrogatory as duplicative of
4  Interrogatory No. 21 served by the KMH ESOP Committee and therefore particularly
5  burdensome, harassing, oppressive, and abusive of the discovery process. Plaintiffs do not waive
6  any other objection that may apply.

7         Subject to and without waiving the foregoing objections and their right to supplement any
8  answers as further facts are discovered or to rely upon facts not described in this response,
9  Plaintiffs provide the following response:  Plaintiffs incorporate by reference their response to
10  Interrogatory No. 21 served by KMH.  Plaintiffs are unable to respond to this interrogatory
11  without revealing attorney work product or prematurely disclosing expert testimony, and on that
12  ground will not respond further.  Plaintiffs will disclose expert reports in accordance with the
13  Court's pre-trial scheduling order.  After meeting and conferring on this issue, the parties agree
14  that Plaintiffs need not supplement their response to this Interrogatory because it would involve
15  premature disclosure of expert testimony.

16  **INTERROGATORY NO. 12:**

17         STATE ALL FACTS CONCERNING YOUR contention in paragraph 67 of the
18  COMPLAINT that the Fiduciary DEFENDANTS violated "the terms of the plan DOCUMENT
19  of the KMH Plan by refusing to redeem Plaintiff Smith's put option on the schedule established
20  by the Plan."

21  **RESPONSE TO INTERROGATORY NO. 12:**

22         Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to
23  this interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of
24  the terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as
25  compound, overbroad and unduly burdensome, as described in the General Objections above.
26  Plaintiffs further object to this Interrogatory as premature, unduly burdensome, harassing,
27  oppressive, and abusive of the discovery process on the grounds that it constitutes an improper
28  contention interrogatory and that investigation and discovery in this case are ongoing.  Plaintiffs

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES ESOP PLAN COMMITTEE'S FIRST
INTERROGATORIES [CASE NO. C-06-07339 CW]                                               Page 24

1 further object to this Interrogatory on the ground that it seeks communications, information, or

2 documents that are protected by the attorney-client privilege and/or the attorney work product

3 doctrine.  Plaintiffs further object to this Interrogatory on the grounds that it is unduly

4 burdensome, harassing, oppressive, and abusive of the discovery process because it requests

5 production of information and documents equally available to Defendant because Defendant has

6 equal access to all documents produced by all parties to this action and by third parties, and has

7 equal access to all transcripts of depositions taken by any party in this action.  Any further

8 description of the documents and information responsive to this Interrogatory would require

9 revelation of attorneys' mental impressions, strategies, analysis of documents and testimony, and

10 opinions regarding those materials' role in the proof of Plaintiffs' case, which is protected by the

11 attorney work product doctrine.  Plaintiffs do not waive any other objection that may apply.

12      Subject to and without waiving the foregoing objections and their right to supplement any

13 answers as further facts are discovered or to rely upon facts not described in this response,

14 Plaintiffs provide the following response:  Plaintiffs identify Deposition Exhs. 65, 66, 67, and

15 152, various versions of the KMH Plan document and Summary Plan Description, which speak

16 for themselves.  Plaintiff Smith testified at her deposition to the facts surrounding her attempt to

17 exercise her put option and the company's refusal to do so.  Smith Dep. 22:13-29:15, 51:11-

18 52:20, 69:7-23, 79:6-15, 150:5-151:3.  Plaintiffs further identify Deposition Exh. 169.  Plaintiffs

19 are unable to state further facts and identify further documents without revealing information

20 protected by the attorney work-product doctrine, and on that basis will not further respond.

21 **INTERROGATORY NO. 13:**

22      STATE ALL FACTS CONCERNING YOUR contention in paragraph 67 of the

23 COMPLAINT that the "DEFENDANTS' repeated failures to seek a refund of the Paint Plan's

24 overpayment for KMH Series P stock at any time between 1998 and the present constitute part of

25 the 1998 prohibited transaction."

26 **RESPONSE TO INTERROGATORY NO. 13:**

27      Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to

28 this interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of

1  the terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as

2  compound, overbroad and unduly burdensome, as described in the General Objections above.

3  Plaintiffs further object to this Interrogatory as premature, unduly burdensome, harassing,

4  oppressive, and abusive of the discovery process on the grounds that it constitutes an improper

5  contention interrogatory and that investigation and discovery in this case are ongoing.  Plaintiffs

6  further object to this Interrogatory on the ground that it seeks communications, information, or

7  documents that are protected by the attorney-client privilege and/or the attorney work product

8  doctrine.  Plaintiffs further object to this Interrogatory on the grounds that it is unduly

9  burdensome, harassing, oppressive, and abusive of the discovery process because it requests

10  production of information and documents equally available to Defendant because Defendant has

11  equal access to all documents produced by all parties to this action and by third parties, and has

12  equal access to all transcripts of depositions taken by any party in this action.  Any further

13  description of the documents and information responsive to this Interrogatory would require

14  revelation of attorneys' mental impressions, strategies, analysis of documents and testimony, and

15  opinions regarding those materials' role in the proof of Plaintiffs' case, which is protected by the

16  attorney work product doctrine.  Plaintiffs do not waive any other objection that may apply.

17         Subject to and without waiving the foregoing objections and their right to supplement any

18  answers as further facts are discovered or to rely upon facts not described in this response,

19  Plaintiffs provide the following response:  Plaintiffs incorporate by reference their response to

20  Interrogatory No. 23 served by KMH.  Mr. Hommel, Mr. Stritmatter and Mr. Cazzolla testified

21  regarding the actions, or lack thereof, taken by North Star Trust to investigate and cure the

22  breaches of fiduciary duty and prohibited transactions.  Hommel Dep. 261:24-286:2.  Stritmatter

23  Dep. 146:22-147:10.  Cazzolla Dep. 184:1-25.

24  **INTERROGATORY NO. 14:**

25         STATE ALL FACTS CONCERNING YOUR contention in paragraph 67 of the

26  COMPLAINT that the "DEFENDANTS' repeated failures to seek a refund of the KMH Plan's

27  overpayment for KMH Series I stock at any time between 1999 and the present constitute part of

28  the 1999 prohibited transaction."

1 **RESPONSE TO INTERROGATORY NO. 14:**

2      Plaintiffs incorporate their general objections by reference. Plaintiffs further object to

3 this interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of

4 the terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as

5 compound, overbroad and unduly burdensome, as described in the General Objections above.

6 Plaintiffs further object to this Interrogatory as premature, unduly burdensome, harassing,

7 oppressive, and abusive of the discovery process on the grounds that it constitutes an improper

8 contention interrogatory and that investigation and discovery in this case are ongoing. Plaintiffs

9 further object to this Interrogatory on the ground that it seeks communications, information, or

10 documents that are protected by the attorney-client privilege and/or the attorney work product

11 doctrine. Plaintiffs further object to this Interrogatory on the grounds that it is unduly

12 burdensome, harassing, oppressive, and abusive of the discovery process because it requests

13 production of information and documents equally available to Defendant because Defendant has

14 equal access to all documents produced by all parties to this action and by third parties, and has

15 equal access to all transcripts of depositions taken by any party in this action. Any further

16 description of the documents and information responsive to this Interrogatory would require

17 revelation of attorneys' mental impressions, strategies, analysis of documents and testimony, and

18 opinions regarding those materials' role in the proof of Plaintiffs' case, which is protected by the

19 attorney work product doctrine. Plaintiffs do not waive any other objection that may apply.

20      Subject to and without waiving the foregoing objections and their right to supplement any

21 answers as further facts are discovered or to rely upon facts not described in this response,

22 Plaintiffs provide the following response: Plaintiffs incorporate by reference their response to

23 Interrogatory No. 23 served by KMH. Messrs. Hommel, Stritmatter, and Cazzolla testified

24 regarding the actions, or lack thereof, taken by North Star Trust to investigate and cure the

25 breaches of fiduciary duty and prohibited transactions. Hommel Dep. 261:24-286:2. Stritmatter

26 Dep. 146:22-147:10. Cazzolla Dep. 184:1-25.

27 **INTERROGATORY NO. 15:**

28      If YOU contend that any Defendant Fiduciary is "liable as a co-fiduciary" under any of

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES ESOP PLAN COMMITTEE'S FIRST
INTERROGATORIES [CASE NO. C-06-07339 CW]                                    Page 27

1  the circumstances provided for in paragraphs 68 and 82 of the COMPLAINT, STATE ALL

2  FACTS CONCERNING YOUR contention.

3  **RESPONSE TO INTERROGATORY NO. 15:**

4        Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to

5  this interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of

6  the terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as

7  compound, overbroad and unduly burdensome, as described in the General Objections above.

8  Plaintiffs further object to this Interrogatory as premature, unduly burdensome, harassing,

9  oppressive, and abusive of the discovery process on the grounds that it constitutes an improper

10 contention interrogatory and that investigation and discovery in this case are ongoing.  Plaintiffs

11 further object to this Interrogatory on the ground that it seeks communications, information, or

12 documents that are protected by the attorney-client privilege and/or the attorney work product

13 doctrine.  Plaintiffs further object to this interrogatory on the ground that it is unintelligible

14 because it asks for Plaintiffs' contentions regarding an excerpt of the COMPLAINT that contains

15 a pure quote of ERISA.  Plaintiffs further object to this interrogatory on the ground that it is

16 compound.  Plaintiffs further object to this interrogatory on the ground that it is compound

17 because it asks Plaintiffs to identify contentions and every single fact concerning any such

18 contentions with respect to several different subsections of the statute quoted in the referenced

19 paragraphs.  Plaintiffs further object to this interrogatory on the ground that it improperly calls

20 for a statement of pure law.

21        Subject to and without waiving the foregoing objections and their right to supplement any

22 answers as further facts are discovered or to rely upon facts not described in this response,

23 Plaintiffs provide the following response: KMH's breaches of fiduciary duty and prohibited

24 transactions are set forth in Interrogatory No. 6, and in Interrogatory No. 24 served by North Star,

25 and KMH is a co-fiduciary because the company was knowledgeable through its officers about

26 the acts or failure to act stated therein.  The company participated knowingly in the breaches and

27 prohibited transactions; the company enabled its officers to commit a breach; and the company

28 did not prevent or make reasonable efforts to remedy the breach.

1    North Star is liable as a successor fiduciary, as expressed in Interrogatory No. 24 served

2  by North Star.  KMH is also liable as a co-fiduciary for North Star's breaches of fiduciary duty

3  because the company knowingly participated in the breaches, and did not prevent or make

4  reasonable efforts to remedy the breach.  <u>Desiree Moore is also liable as a co-fiduciary for the</u>

5  <u>breaches of fiduciary duty committed by Mr. Moore and the other fiduciaries of the ESOP as</u>

6  <u>described in response to Interrogatory No. 6 above, because she knowingly participated in the</u>

7  <u>breaches, enabled the other fiduciaries to commit the breaches, and did not prevent or make</u>

8  <u>reasonable efforts to remedy the breaches.</u>

9  **INTERROGATORY NO. 16:**

10    STATE ALL FACTS CONCERNING YOUR contention in paragraph 74 of the

11  COMPLAINT that "DEFENDANTS engaged in a prohibited transaction in violation of ERISA

12  §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b) by failing to ensure that the Paint Plan paid fair market

13  value for the Series P stock of KMH held by the Moore Trust on October 13, 1998."

14  **RESPONSE TO INTERROGATORY NO. 16:**

15    This interrogatory was withdrawn on May 5, 2008, pursuant to agreement of the parties.

16  On that basis, Plaintiffs will not respond to this interrogatory.

17  **INTERROGATORY NO. 17:**

18    STATE ALL FACTS CONCERNING YOUR contention in paragraph 74 of the

19  COMPLAINT that "DEFENDANTS failed to conduct an independent and prudent investigation

20  into the fair market price before entering into the stock purchase agreement with Defendant

21  Moore Trust" in regard to the October 13, 1998 transaction."

22  **RESPONSE TO INTERROGATORY NO. 17:**

23    This interrogatory was withdrawn on May 5, 2008, pursuant to agreement of the parties.

24  On that basis, Plaintiffs will not respond to this interrogatory.

25  **INTERROGATORY NO. 18:**

26    STATE ALL FACTS CONCERNING YOUR contention in paragraph 74 of the

27  COMPLAINT that "DEFENDANTS could have cured the prohibited transaction at any time

28  since October 13, 1998, by securing an independent valuation of KMH Series P stock as of

1    October 13, 1998, and seeking a refund from the Moore Trust and the Successor Trusts of any

2    amount by which such valuation determined the Paint Plan overpaid the Moore Trust."

3    **RESPONSE TO INTERROGATORY NO. 18:**

4          Plaintiffs incorporate their general objections by reference. Plaintiffs further object to

5    this interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of

6    the terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as

7    compound, overbroad and unduly burdensome, as described in the General Objections above.

8    Plaintiffs further object to this Interrogatory as premature, unduly burdensome, harassing,

9    oppressive, and abusive of the discovery process on the grounds that it constitutes an improper

10   contention interrogatory and that investigation and discovery in this case are ongoing. Plaintiffs

11   further object to this Interrogatory on the ground that it seeks communications, information, or

12   documents that are protected by the attorney-client privilege and/or the attorney work product

13   doctrine. Plaintiffs further object to this Interrogatory on the ground that it seeks the identity of,

14   facts known by, and opinions held by Plaintiffs' consulting, non-testifying experts. Such

15   information is shielded from disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work

16   product privilege. Plaintiffs further object to this Interrogatory as duplicative of Interrogatory

17   No. 23 served by the KMH ESOP Committee and therefore particularly burdensome, harassing,

18   oppressive, and abusive of the discovery process. Plaintiffs further object to this Interrogatory on

19   the grounds that it is unduly burdensome, harassing, oppressive, and abusive of the discovery

20   process because it requests production of information and documents equally available to

21   Defendant because Defendant has equal access to all documents produced by all parties to this

22   action and by third parties, and has equal access to all transcripts of depositions taken by any

23   party in this action. Any further description of the documents and information responsive to this

24   Interrogatory would require revelation of attorneys' mental impressions, strategies, analysis of

25   documents and testimony, and opinions regarding those materials' role in the proof of Plaintiffs'

26   case, which is protected by the attorney work product doctrine. Plaintiffs further object to this

27   interrogatory as vague and ambiguous, overbroad, and unduly burdensome because it purports to

28   require Plaintiffs to provide each and every fact concerning a hypothetical ability of Defendants.

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES ESOP PLAN COMMITTEE'S FIRST
INTERROGATORIES [CASE NO. C-06-07339 CW]                                                    Page 30

1 Such a complete statement is impossible and would encompass information far beyond that
2 relevant to any claim or defense in this action. Plaintiffs do not waive any other objection that
3 may apply.

4         Subject to and without waiving the foregoing objections and their right to supplement any
5 answers as further facts are discovered or to rely upon facts not described in this response,
6 Plaintiffs provide the following response: Messrs. Stritmatter, Cazzolla, Mines and Hommel
7 testified regarding the actions, or lack thereof, taken by the Plan's fiduciaries to cure the breaches
8 of fiduciary duty and prohibited transactions by seeking a refund of amounts overpaid by the
9 Plan. Stritmatter Dep. 216:9-217:3. Cazzolla Dep. 184:1-25. Mines Dep. 236:1-236:4.
10 Hommel Dep. 261:24-286:2. Plaintiffs further incorporate by reference their response to
11 Interrogatory No. 23 served by KMH. Plaintiffs are unable to state further facts and identify
12 further documents without revealing information protected by the attorney work-product
13 doctrine, and on that basis will not further respond.

14 **INTERROGATORY NO. 19:**

15         STATE ALL FACTS CONCERNING YOUR contention in paragraph 75 of the
16 COMPLAINT that "DEFENDANTS engaged in a prohibited transaction in violation of ERISA
17 §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b) by failing to ensure that the KMH Plan paid fair market
18 value for the Series I stock of KMH held by the Moore Trust on October 13, 1999."

19 **RESPONSE TO INTERROGATORY NO. 19:**

20         This interrogatory was withdrawn on May 5, 2008, pursuant to agreement of the parties.
21 On that basis, Plaintiffs will not respond to this interrogatory.

22 **INTERROGATORY NO. 20:**

23         STATE ALL FACTS CONCERNING YOUR contention in paragraph 75 of the
24 COMPLAINT that "DEFENDANTS could have cured the prohibited transaction at any time
25 since October 13, 1999, by securing an independent valuation of KMH Series I stock as of
26 October 13, 1999, and seeking a refund from the Moore Trust and the Successor Trusts of any
27 amount by which such valuation determined the KMH Plan overpaid the Moore Trust."

28 **RESPONSE TO INTERROGATORY NO. 20:**

1          Plaintiffs incorporate their general objections by reference. Plaintiffs further object to

2     this interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of

3     the terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as

4     compound, overbroad and unduly burdensome, as described in the General Objections above.

5     Plaintiffs further object to this Interrogatory as premature, unduly burdensome, harassing,

6     oppressive, and abusive of the discovery process on the grounds that it constitutes an improper

7     contention interrogatory and that investigation and discovery in this case are ongoing. Plaintiffs

8     further object to this Interrogatory on the ground that it seeks communications, information, or

9     documents that are protected by the attorney-client privilege and/or the attorney work product

10    doctrine. Plaintiffs further object to this Interrogatory on the ground that it seeks the identity of,

11    facts known by, and opinions held by Plaintiffs' consulting, non-testifying experts. Such

12    information is shielded from disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work

13    product privilege. Plaintiffs further object to this Interrogatory on the grounds that it is unduly

14    burdensome, harassing, oppressive, and abusive of the discovery process because it requests

15    production of information and documents equally available to Defendant because Defendant has

16    equal access to all documents produced by all parties to this action and by third parties, and has

17    equal access to all transcripts of depositions taken by any party in this action. Any further

18    description of the documents and information responsive to this Interrogatory would require

19    revelation of attorneys' mental impressions, strategies, analysis of documents and testimony, and

20    opinions regarding those materials' role in the proof of Plaintiffs' case, which is protected by the

21    attorney work product doctrine. Plaintiffs further object to this Interrogatory as duplicative of

22    Interrogatory No. 23 served by the KMH ESOP Committee and therefore particularly

23    burdensome, harassing, oppressive, and abusive of the discovery process. Plaintiffs further

24    object to this interrogatory as vague and ambiguous, overbroad, and unduly burdensome because

25    it purports to require Plaintiffs to provide each and every fact concerning a hypothetical ability of

26    Defendants. Such a complete statement is impossible and would encompass information far

27    beyond that relevant to any claim or defense in this action. Plaintiffs do not waive any other

28    objection that may apply.

1    Subject to and without waiving the foregoing objections and their right to supplement any

2    answers as further facts are discovered or to rely upon facts not described in this response,

3    Plaintiffs provide the following response:  Plaintiffs believe the transaction referenced in the

4    interrogatory was completed on October 18, 1999.  Messrs. Stritmatter,, Cazzolla, Mines and

5    Hommel testified regarding the actions, or lack thereof, taken by the Plan's fiduciaries to cure the

6    breaches of fiduciary duty and prohibited transactions by seeking a refund of amounts overpaid

7    by the Plan.  Stritmatter Dep. 146:22-147:10.  Cazzolla Dep. 184:1-25.  Mines Dep. 236:1-236:4.

8    Hommel Dep. 261:24-286:2.  Plaintiffs further incorporate by reference their response to

9    Interrogatory No. 23 served by KMH.  Plaintiffs are unable to state further facts and identify

10    further documents without revealing information protected by the attorney work-product

11    doctrine, and on that basis will not further respond.

12    **INTERROGATORY NO. 21:**

13    STATE ALL FACTS CONCERNING YOUR contention in paragraphs 69 and 81 of the

14    COMPLAINT that "Defendant Fiduciaries' actions caused millions of dollars of losses to the

15    Plan...."

16    **RESPONSE TO INTERROGATORY NO. 21:**

17    Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to

18    this interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of

19    the terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as

20    compound, overbroad and unduly burdensome, as described in the General Objections above.

21    Plaintiffs further object to this Interrogatory as premature, unduly burdensome, harassing,

22    oppressive, and abusive of the discovery process on the grounds that it constitutes an improper

23    contention interrogatory and that investigation and discovery in this case are ongoing.    Plaintiffs

24    further object to this interrogatory on the ground that it is vague and ambiguous and incomplete

25    in itself by virtue of its incomplete quote of the sentences it references from the COMPLAINT,

26    which state that the amount will be proven more specifically at trial.  Plaintiffs further object to

27    this Interrogatory on the ground that it seeks communications, information, or documents that are

28    protected by the attorney-client privilege and/or the attorney work product doctrine.  Plaintiffs

1  further object to this Interrogatory on the ground that it seeks the identity of, facts known by, and

2  opinions held by Plaintiffs' consulting, non-testifying experts.  Such information is shielded from

3  disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work product privilege.  Plaintiffs

4  further object to this Interrogatory on the grounds that it is unduly burdensome, harassing,

5  oppressive, and abusive of the discovery process because it requests production of information

6  and documents equally available to Defendant because Defendant has equal access to all

7  documents produced by all parties to this action and by third parties, and has equal access to all

8  transcripts of depositions taken by any party in this action.  Any further description of the

9  documents and information responsive to this Interrogatory would require revelation of

10  attorneys' mental impressions, strategies, analysis of documents and testimony, and opinions

11  regarding those materials' role in the proof of Plaintiffs' case, which is protected by the attorney

12  work product doctrine.  Plaintiffs do not waive any other objection that may apply.

13       Subject to and without waiving the foregoing objections and their right to supplement any

14  answers as further facts are discovered or to rely upon facts not described in this response,

15  Plaintiffs provide the following response:  Plaintiffs are unable to respond to this interrogatory

16  without revealing attorney work product or prematurely disclosing expert testimony, and on that

17  ground will not respond further.  Plaintiffs will disclose expert reports in accordance with the

18  Court's pre-trial scheduling order.

19  **INTERROGATORY NO. 22:**

20       STATE ALL FACTS CONCERNING YOUR contention in paragraphs 69 and 81 of the

21  COMPLAINT that "Defendant Moore Trust and DEFENDANTS Successor Trusts have profited

22  . . . from the prohibited transactions by receiving more than fair market value for the KMH stock.

23  . . ."

24  **RESPONSE TO INTERROGATORY NO. 22:**

25       Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to

26  this interrogatory as compound, overbroad and unduly burdensome by virtue of its inclusion of

27  the terms "STATE ALL FACTS" and "CONCERNING," to which Plaintiffs object as

28  compound, overbroad and unduly burdensome, as described in the General Objections above.

1    Plaintiffs further object to this Interrogatory as premature, unduly burdensome, harassing,

2    oppressive, and abusive of the discovery process on the grounds that it constitutes an improper

3    contention interrogatory and that investigation and discovery in this case are ongoing. Plaintiffs

4    further object to this interrogatory on the ground that it is vague and ambiguous and incomplete

5    in itself by virtue of its incomplete quote of the sentence it references from the COMPLAINT,

6    which states that the amount will be proven more specifically at trial. Plaintiffs further object to

7    this Interrogatory on the ground that it seeks communications, information, or documents that are

8    protected by the attorney-client privilege and/or the attorney work product doctrine. Plaintiffs

9    further object to this Interrogatory on the ground that it seeks the identity of, facts known by, and

10   opinions held by Plaintiffs' consulting, non-testifying experts. Such information is shielded from

11   disclosure by Fed. R. Civ. P.26(b)(4)(B) and the attorney work product privilege. Plaintiffs

12   further object to this Interrogatory on the grounds that it is unduly burdensome, harassing,

13   oppressive, and abusive of the discovery process because it requests production of information

14   and documents equally available to Defendant because Defendant has equal access to all

15   documents produced by all parties to this action and by third parties, and has equal access to all

16   transcripts of depositions taken by any party in this action. Any further description of the

17   documents and information responsive to this Interrogatory would require revelation of

18   attorneys' mental impressions, strategies, analysis of documents and testimony, and opinions

19   regarding those materials' role in the proof of Plaintiffs' case, which is protected by the attorney

20   work product doctrine. Plaintiffs do not waive any other objection that may apply.

21       Subject to and without waiving the foregoing objections and their right to supplement any

22   answers as further facts are discovered or to rely upon facts not described in this response,

23   Plaintiffs provide the following response: When Defendant Moore Trust received more than fair

24   market value for KMH stock, it profited at the expense of the Plan, because it unfairly received

25   more value in the transaction than the Plan did. The Moore Trust profited further by investing

26   the extra money received in corporate bonds, which have increased in value. Upon Mr. Moore's

27   death, the Moore Trust's assets received from the Plan transaction were transferred to the

28   Successor Trusts, thereby transferring the profit as well. On information and belief, the

1  Successor Trusts have continued to earn further profits on the investment in corporate bonds of

2  the additional amounts over fair market value that the Plans paid.  Plaintiffs are unable to

3  respond further to this interrogatory without revealing attorney work product or prematurely

4  disclosing expert testimony, and on that ground will not respond further.  Plaintiffs will disclose

5  expert reports in accordance with the Court's pre-trial scheduling order.

6

7

8  Dated:    June 12, 2008          LEWIS, FEINBERG, LEE,
                                            RENAKER & JACKSON, P.C.
9
                                      By:      _Margo Hasselman_
10                                         Margo Hasselman

11                                         Daniel Feinberg
                                           Todd F. Jackson
12                                         Margaret E. Hasselman
                                           Nina R. Wasow
13                                         Kirsten G. Scott
                                           LEWIS, FEINBERG, LEE,
14                                         RENAKER & JACKSON, P.C.
                                           1330 Broadway, Suite 1800
15                                         Oakland, CA  94612
                                           Telephone: (510) 839-6824
16                                         Facsimile: (510) 839-7839

17                                         Peter Rukin – CA State Bar No. 178336
                                           RUKIN HYLAND DORIA
18                                         & TINDALL LLP
                                           100 Pine Street, Suite 725
19                                         San Francisco, CA
                                           Telephone: (415) 421-1800
20                                         Facsimile: (415) 421-1700
                                           Email: peterrukin@rhddlaw.com
21
                                           *Attorneys for Plaintiffs*
22                                         *and the Proposed Class*

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

I, Vickie Martin, declare:

3

My business address is 1330 Broadway, Suite 1800, Oakland, California 94612. I am

4

over the age of 18 years and not a party to the above-entitled action.

5

On June 12, 2008, I served:

6

**PLAINTIFFS' SECOND SUPPLEMENTAL RESPONSES TO DEFENDANT K-M INDUSTRIES HOLDING CO., INC. ESOP PLAN COMMITTEE'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS**

7

8

on the persons listed below by electronic mail and by placing a true and correct copy thereof in a

9

United States Postal Service Mail Box, with First Class with postage prepaid, addressed as

10

follows:

11

Ronald Lovitt
J. Thomas Hannan

12

Henry I. Bornstein
LOVITT & HANNAN, INC.

13

900 Front Street, Suite 300
San Francisco, CA 94111

14

Telephone: 415-362-8769
Facsimile: 415-362-7528

15

E-mail:rl@lh-sf.com, jth@lh-sf.com, hib@lh-sf.com

16

Robert L. Palmer

17

Lauren A. Smith
Caroline Walters

18

Paul B. Derby
Allison K. Chock

19

HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900

20

Los Angeles, CA 90017
Telephone: 213-694-1200

21

Facsimile: 213-694-1234
E-mail: Palmer@hbdlawyers.com,

22

SmithL@hbdlawyers.com,
WaltersC@hbdlawyers.com,

23

DerbyP@hbdlawyers.com,
ChockA@hbdlawyers.com

Nicole A. Diller
Don Sullivan
Andrew C. Sullivan
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 415-442-1000
Facsimile: 415-442-1001
E-mail:ndiller@morganlewis.com,
dpsullivan@morganlewis.com,
asullivan@morganlewis.com

24

**Attorneys for Defendants**

25

I declare under penalty of perjury that the foregoing is true and correct. Executed on June

26

12, 2008, at Oakland, California.

27

28

_____
Vickie Martin

PLAINTIFFS' SUPPLEMENTAL RESPONSES TO K-M INDUSTRIES ESOP PLAN COMMITTEE'S FIRST INTERROGATORIES [CASE NO. C-06-07339 CW]

# EXHIBIT  L

1 | Daniel Feinberg (CA State Bar No. 135983)
Todd F. Jackson (CA State Bar No. 202598)
2 | Margaret Hasselman (CA State Bar No. 228529)
Nina Wasow (CA State Bar No. 242047)
3 | Kirsten G. Scott (CA State Bar No. 253464)
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
4 | 1330 Broadway, Suite 1800
Oakland, CA 94612
5 | Telephone: (510) 839-6824
Facsimile: (510) 839-7839
6 | Email: dfeinberg@lewisfeinberg.com
Email: tjackson@lewisfeinberg.com
7 | Email: mhasselman@lewisfeinberg.com
Email: nwasow@lewisfeinberg.com
8 | Email: kscott@lewisfeinberg.com

9

10 | Peter Rukin (CA State Bar No. 178336)
RUKIN HYLAND DORIA & TINDALL LLP
11 | 100 Pine Street , Suite 725
San Francisco, CA  94111
12 | Telephone: (415) 421-1800
Facsimile: (415) 421-1700
13 | Email: peterrukin@rhdtlaw.com

14 | *Attorneys for Plaintiffs and the Proposed Class*

15 | IN THE UNITED STATES DISTRICT COURT
16 | FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO AND OAKLAND DIVISION

17

18 | THOMAS FERNANDEZ, et al.,                    **CASE NO.:** C-06-07339 CW

19

20 |               Plaintiffs,               **PLAINTIFFS' SUPPLEMENTAL RESPONSE**
vs.                              **TO INTERROGATORY NO. 24 OF**
21 |                                          **DEFENDANT NORTH STAR TRUST**
**COMPANY'S FIRST SET OF**
22 | K-M INDUSTRIES HOLDING CO.,              **INTERROGATORIES TO PLAINTIFFS**
INC., et al.,
23

24 |               Defendants.

25

26

27

28

PLAINTIFFS' SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 24 OF DEFENDANT NORTH STAR TRUST
COMPANY'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS

PROPOUNDING PARTY:       Defendant North Star Trust Company

RESPONDING PARTY:        Plaintiffs Thomas Fernandez, Lora Smith and Tosha
                          Thomas

SET NUMBER:              One

## PLAINTIFFS' PRELIMINARY STATEMENT

Plaintiffs respond to Interrogatory No. 24 served by Defendant North Star Trust Company

("North Star") pursuant to an agreement of the parties in which Defendants agreed to withdraw

certain other interrogatories, and Plaintiffs agreed to provide one response on behalf of all three

named Plaintiffs. Therefore, although North Star served separate, identical interrogatories on

each Plaintiff, this response is made jointly on behalf of all three Plaintiffs listed above.

Plaintiffs' response is based only upon the information that is presently available to and

specifically known by Plaintiffs, except as to those matters stated on their information and belief,

and as to those matters they believe them to be true. Independent investigation, legal

research, and analysis may supply additional facts and add meaning to the known facts, as well as

establish entirely new factual conclusions and legal contentions, all of which may lead to the

discovery of additional information, thereby resulting in additions to, changes in, and variations

from, this response.

This response is given without prejudice to Plaintiffs' right to produce evidence of any

subsequently discovered documents or compiled facts or determinations thereof that Plaintiffs

may later locate or discover. Accordingly, Plaintiffs reserve the right to change this response as

additional facts are ascertained, analyses are made, legal research is completed, contentions are

made, and documents are located. Moreover, all information is being produced only for the

purpose of this litigation.

- 2 -

1    Plaintiffs reserve the right, notwithstanding this response, to employ at trial or in any pre-

2    trial proceeding, information subsequently obtained or discovered, information the materiality of

3    which is not presently ascertained, or information Plaintiffs do not regard as coming within the

4    scope of this interrogatory as Plaintiffs understands it. Any information within the scope of the

5    attorney-client privilege, the attorney work product doctrine, or any other privilege or protection

6

7    that is inadvertently disclosed herein is not intended to be and should not be construed to be a

8    waiver of any applicable privilege or immunity from disclosure, except where such privilege is

9    expressly waived by Plaintiffs in writing. Plaintiffs reserve the right to assert these privileges at

10    any time in these proceedings and further reserves the right to request the return of all privileged

11    information, including copies of the responses themselves. In addition, all evidentiary objections

12    are reserved and no waiver of any objection is to be implied from any response. To the extent that

13

14    a response might arguably waive an otherwise assertable objection or claim of privilege, such

15    waiver shall be limited to the specific response only and shall not extend to any other discovery.

16    Plaintiffs make no incidental or implied admissions with regard to the contents of this response.

17    The fact that Plaintiffs have responded or objected to any interrogatory or any part thereof should

18    not be taken as an admission that Plaintiffs accept or admit the existence of any facts set forth or

19    assumed by Propounding Party's interrogatory, or that such response or objection constitutes

20    admissible evidence. The fact that Plaintiffs have answered part or all of any interrogatory is not

21    intended and shall not be construed to be a waiver by Plaintiffs of any objections to any

22    interrogatory or to further inquiry into the subject matter of any interrogatory.

23

24    This response is made solely for the purpose of this action. It is subject to all objections as

25    to competence, relevance, materiality, propriety, admissibility, privacy, privilege, and any and all

26    other objections that would require exclusion of any statement contained here if any such requests

27

28

- 3 -

1  were asked of, or any statement contained here were made by, a witness present and testifying in

2  court, all of which objections and grounds are reserved and may be interposed at the time of trial.

3

4  **SPECIAL INTERROGATORY NO. 24:**

5       Please state each and every fact upon which YOU base YOUR allegations in the SAC that

6  DEFENDANT breached a fiduciary duty to YOU or engaged in a prohibited transaction, as the

7  terms "fiduciary duty" and "prohibited transaction" are defined in the SAC.

8  **OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 24:**

9       Plaintiffs incorporate their general objections by reference.  Plaintiffs further object to

10  this interrogatory as compound, overbroad and unduly burdensome by virtue of its direction to

11  "state each and every fact" upon which Plaintiffs base their allegations.  Plaintiffs will state the

12  principal and material facts on which they base their claims against each group of Defendants as

13  agreed at the meet-and-confer session on May 20, 2008. *See Lucero v. Valdez*, 240 F.R.D. 591

14  (D. N.M. 2007).  Plaintiffs further object to this Interrogatory as premature, unduly burdensome,

15  harassing, oppressive, and abusive of the discovery process on the grounds that it constitutes an

16  improper contention interrogatory to the extent it is not narrowly tailored but rather seeks all facts

17  supporting Plaintiffs' entire claims.  Plaintiffs further object to this Interrogatory on the ground

18  that it seeks the identity of, facts known by, and opinions held by Plaintiffs' consulting, non-

19  testifying experts.  Such information is shielded from disclosure by Fed. R. Civ. P. 26(b)(4)(B)

20  and the attorney work product privilege.  Plaintiffs further object to this Interrogatory on the

21  ground that it seeks communications, information, or documents that are protected by the

22  attorney-client privilege and/or the attorney work product doctrine.  Plaintiffs further object to

23  this Interrogatory on the grounds that it is unduly burdensome, harassing, oppressive, and abusive

24  of the discovery process because it requests production of information and documents equally

25  available to Defendant because Defendant has equal access to all documents produced by all

26  parties to this action and by third parties, and has equal access to all transcripts of depositions

27  taken by any party in this action.  Any further description of the information responsive to this

28  Interrogatory would require revelation of attorneys' mental impressions, strategies, analysis of

- 4 -

1  documents and testimony, and opinions regarding those materials' role in the proof of Plaintiffs'

2  case, which is protected by the attorney work product doctrine. Plaintiffs further object to this

3  interrogatory on the ground that it is overbroad, unduly burdensome, harassing, and abusive of the

4  discovery process because it requests that Plaintiffs state every fact concerning their entire First

5  and Second Claims for Relief. It is also objectionable as unduly burdensome, harassing, and

6  abusive of the discovery process because it is duplicative of Interrogatories Nos. 1-25 served by

7  Defendant K-M Industries Holding Co., Inc., and of Interrogatories Nos. 1-22 served by

8  Defendant K-M Industries Holding Co., Inc. ESOP Plan Committee. Plaintiffs do not waive any

9  other objection that may apply.

10      Subject to and without waiving the foregoing objections and their right to supplement any

11  answers as further facts are discovered or to rely upon facts not described in this response,

12  Plaintiffs provide the following response with respect to each Defendant:

13  **_KM Defendants_** _(K-M Industries Holding Co., Inc.; K-M Industries Holding Co. Inc. ESOP Plan_

14  _Committee; CIG ESOP Plan Committee)_

15      Plaintiffs contend that the KM Defendants and William E. Moore, and each of them,

16  breached their fiduciary duties of loyalty and prudence and engaged in a prohibited transaction by

17  causing the Plans to pay more than fair market value for KMH stock; failing to conduct a

18  thorough and independent review and adequately consider whether the October 1998 purchase of

19  KMH Series P stock and the October 1999 purchase of KMH Series I stock from Defendant

20  Moore Trust were in the best interests of the Plan participants; failing to undertake an adequate

21  and independent valuation of the KMH stock prior to those transactions; failing to ensure that

22  they secured an independent expert assessment of the fair market value of KMH stock prior to

23  those transactions; failing to investigate adequately the qualifications of any and all valuation

24  experts retained to prepare the valuations of KMH stock in connection with the transactions;

25  failing to provide complete and accurate information regarding KMH to such valuation experts

26  for use in the valuations prepared in connection with the transactions; failing to make certain that

27  reliance on any and all valuation experts' advice was reasonably justified under the circumstances

28  of the transactions; failing adequately to consider how KMH's potential asbestos liabilities

- 5 -

1  affected the value of KMH Series I and Series P stock; failing adequately to consider that the

2  status of KMH Series I and Series P stock as "tracking stock" affected its value; failing to make

3  an honest, objective effort to read the valuation reports, understand them, and question the

4  methods and assumptions that did not make sense; failing to seek a refund of the KMH Plan's

5  overpayment for KMH stock at any time between 1998 and the present; overvaluing the KMH

6  stock purchased from Defendant Moore Trust by the KMH Plan in October 1998 and October

7  1999; withholding information about KMH's potential asbestos liabilities from valuators; and

8  violating the terms of the plan document of the KMH Plan by refusing to redeem Plaintiff Smith's

9  put option on the schedule established by the KMH Plan. Plaintiffs further incorporate by

10  reference their responses to Interrogatory No. 6 of the K-M Industries Holding Co., Inc. ESOP

11  Plan Committee's First Set of Interrogatories. Plaintiffs are unable to state further facts and

12  identify further documents without revealing information protected by the attorney work-product

13  doctrine, and on that basis will not further respond.

14  ***_Moore Trust Defendants_*** *(William E. and Desiree B. Moore Revocable Trust and the trustees*

15  *thereof; Desiree B. Moore Revocable Trust; William E. Moore Marital Trust; William E. Moore*

16  *Generation-Skipping Trust; and Desiree B. Moore)*

17  Plaintiffs contend that the Moore Trust Defendants engaged in a prohibited transaction

18  under ERISA because the William E. and Desiree B. Moore Revocable Trust was a party in

19  interest to the Plan, and the Plan paid more than adequate consideration for the shares of KMH

20  purchased in 1998 and 1999 as described above. The William E. and Desiree B. Moore

21  Revocable Trust and Desiree B. Moore also knowingly participated in the breaches of fiduciary

22  duty described above committed by William E. Moore and the KM Defendants, and Desiree B.

23  Moore is also liable as a co-fiduciary because she enabled the breaches described above and did

24  not prevent or make reasonable efforts to remedy the breaches described above. Plaintiffs are

25  unable to respond further without revealing attorney work product or prematurely disclosing

26  expert testimony. Plaintiffs will disclose expert reports in accordance with the Court's pre-trial

27  scheduling order.

28

- 6 -

1

2

***Defendant North Star Trust Company***

Plaintiffs contend that Defendant North Star Trust Company breached its fiduciary duty to Plan beneficiaries by failing to: (1) adequately investigate whether the Plan paid more than fair market value for KMH stock in the October 1998 and October 1999 transactions; (2) adequately investigate whether the prior fiduciaries breached their fiduciary duties to the Plan, including by failing to adequately investigate whether the prior fiduciaries committed the breaches outlined above as committed by William E. Moore and the KM Defendants; and (3) take reasonable steps to remedy such breaches. Plaintiffs are unable to respond further without revealing attorney work product or prematurely disclosing expert testimony.

1    Dated: June 12, 2008

2                                    LEWIS, FEINBERG, LEE
                                     RENAKER & JACKSON, P.C.

3
4                        By:    _Margo Hasselman_
                                   Margo Hasselman

5
6                               Daniel Feinberg (CA State Bar No. 135983)
                                Todd F. Jackson (CA State Bar No. 202598)
                                Margaret Hasselman (CA State Bar No. 228529)
7                               Nina Wasow (CA State Bar No. 242047)
                                Kirsten G. Scott (CA State Bar No. 253464)
8                               LEWIS, FEINBERG, LEE, RENAKER &
                                JACKSON, P.C.
9                               1330 Broadway, Suite 1800
                                Oakland, CA 94612
10                              Telephone: (510) 839-6824
                                Facsimile: (510) 839-7839
11
                                Peter Rukin (CA State Bar No. 178336)
12                              RUKIN HYLAND DORIA & TINDALL LLP
                                100 Pine Street , Suite 725
13                              San Francisco, CA  94111
                                Telephone: (415) 421-1800
14                              Facsimile: (415) 421-1700

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    - 8 -

1

**PROOF OF SERVICE**

2

I, Vickie Martin, declare:

3

My business address is 1330 Broadway, Suite 1800, Oakland, California 94612.  I am

4

over the age of 18 years and not a party to the above-entitled action.

5

On June 12, 2008 I served:

6

7

**PLAINTIFFS' <u>SUPPLEMENTAL</u> RESPONSE TO INTERROGATORY NO. 24 OF
DEFENDANT NORTH STAR TRUST COMPANY'S FIRST SET OF
INTERROGATORIES TO PLAINTIFFS**

8

9

on the persons listed below by electronic mail and by placing a true and correct copy thereof in a

10

United States Postal Service Mail Box, with First Class with postage prepaid, addressed as

11

follows:

12

Ronald Lovitt
J. Thomas Hannan

13

Henry I. Bornstein
LOVITT & HANNAN, INC.

14

900 Front Street, Suite 300
San Francisco, CA 94111

15

Telephone: 415-362-8769
E-mail: rl@lh-sf.com, jth@lh-sf.com, hib@lh-sf.com

16

17

Robert L. Palmer
Lauren A. Smith
Caroline Walters

18

Paul B. Derby
Allison K. Chock

19

HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900

20

Los Angeles, CA 90017
Telephone: 213-694-1200

21

E-mail: Palmer@hbdlawyers.com, SmithL@hbdlawyers.com, WaltersC@hbdlawyers.com,

22

DerbyP@hbdlawyers.com, ChockA@hbdlawyers.com

23

Nicole A. Diller
Don Sullivan

24

Andrew C. Sullivan
MORGAN, LEWIS & BOCKIUS LLP

25

One Market, Spear Street Tower
San Francisco, CA 94105

26

Telephone: 415-442-1000
E-mail: ndiller@morganlewis.com, dpsullivan@morganlewis.com, asullivan@morganlewis.com

27

*Attorneys for Defendants*

28

PROOF OF SERVICE
CASE NO. C-06-07339    CW

1

2          I declare under penalty of perjury that the foregoing is true and correct.  Executed on

3    June 12, 2008, at Oakland, California.

4                                              Vickie Martin

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28