1

MORGAN, LEWIS & BOCKIUS LLP
Nicole A. Diller (State Bar No. 154842)

2

Donald P. Sullivan (State Bar No. 191080)
Andrew C. Sullivan (State. Bar No. 226902)

3

One Market, Spear Street Tower
San Francisco, California 94105

4

Telephone: (415) 442-1000
Facsimile: (415) 442-1001

5

6

Attorneys for North Star Trust Company

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

11

THOMAS FERNANDEZ, LORA SMITH,
and TOSHA THOMAS,

12

Plaintiffs,

13

14

vs.

15

K-M INDUSTRIES HOLDING CO., INC.;
K-M INDUSTRIES HOLDING CO., INC.

16

ESOP PLAN COMMITTEE; WILLIAM
E. AND DESIREE B. MOORE

17

REVOCABLE TRUST; TRUSTEES OF
THE WILLIAM E. AND DESIREE B.

18

MOORE REVOCABLE TRUST;
ADMINISTRATOR OF THE ESTATE OF

19

WILLIAM E. MOORE, DECEASED; CIG

20

ESOP PLAN COMMITTEE; and NORTH
STAR TRUST COMPANY,

21

Defendants.

22

23

24

25

26

27

28

Case No. C06-07339 CW

**NORTH STAR TRUST COMPANY'S NOTICE OF MOTION, MOTION AND SUPPORTING MEMORANDUM FOR SUMMARY JUDGMENT RE STATUTE OF LIMITATIONS**

Date:       July 31, 2008
Time:       2:00 p.m.
Dept.:      Courtroom 2, 4th Floor
Judge:      Hon. Claudia Wilken

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................................. 2

II.     FACTUAL BACKGROUND ......................................................................................... 3

    A.      Establishment of the Kelly-Moore ESOP and Disclosure of the Transaction ........ 4

    B.      Establishment and Disclosure of the CIG ESOP ...................................................... 6

    C.      Herbert R. Giffins Succeeds Bill Moore as Trustee in 2002 ................................... 8

    D.      Kelly-Moore Becomes Targeted by Asbestos Litigants ........................................... 9

        1.      History of Kelly-Moore Asbestos Litigation ................................................. 9

        2.      Disclosure of the Asbestos Threat ................................................................. 9

        3.      Resolution of the Asbestos Litigation .......................................................... 12

    E.      North Star's Conduct as the ESOP's Discretionary Trustee ................................... 12

III.    PLAINTIFFS' CLAIMS AGAINST NORTH STAR ARISING OUT OF THE
       1998 AND 1999 TRANSACTIONS ARE TIME-BARRED ......................................... 14

    A.      Standard of Review Governing Motion ................................................................... 14

    B.      ERISA Section 413 Applies to Both Claims for Relief .......................................... 15

    C.      Plaintiffs Had Actual Knowledge of the Alleged 1998 and 1999
        Transactions More Than Three Years Before They Filed This Action ................ 16

    D.      Plaintiffs' Claims Relating to the 1998 and 1999 Transactions Are Time-
        Barred by the Six-Year Repose Period ................................................................... 18

    E.      The Limitations Period Cannot Be Tolled as to North Star on the Grounds
        of Fraud or Concealment ......................................................................................... 19

IV.     CONCLUSION .............................................................................................................. 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

i

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1996) ............................................................................................. 15

*Barker v. American Mobil Power Corp.*,
64 F.3d 1397 (9th Cir. 1995) ................................................................... 15, 19, 20

*Blanton v. Anzalone*,
760 F.2d 989 (9th Cir. 1985) ......................................................... 15, 16, 17, 18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................. 14

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993) ................................................................................. 15

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ................................................................................. 6

*Landwehr v. DuPree*,
72 F.3d 726 (9th Cir. 1995) ................................................................................. 15

*Larson v. Northrop Corp.*,
21 F.3d 1164(D.C. Cir. 1994) ............................................................................. 19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ..................................................................................... 14, 15

*Phillips v. Alaska Hotel and Restaurant Employees Pension Fund*,
944 F.2d 509 (9th Cir. 1991) ............................................................................. 18

*Radford v. General Dynamics Corp.*,
151 F.3d 396 (5th Cir. 1998) ............................................................................. 15

*Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*,
919 F.2d 1216 (7th Cir. 1990) ........................................................................... 19

*Schaefer v. Arkansas Medical Soc.*,
853 F.2d 1487 (8th Cir. 1988) ........................................................................... 19

*Unisys Corp. Retiree Medical Benefit ERISA Litigation*,
242 F.3d 497 (3d Cir. 2001) ............................................................................. 16

*Ziegler v. Connecticut Gen. Life Ins. Co.*,
916 F.2d 548 (9th Cir. 1990) ....................................................................... 16, 17

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

# TABLE OF AUTHORITIES
### (continued)

Page

**Statutes**

29 U.S.C. § 1113 ............................................................................................................... 15

29 U.S.C. § 1113(1) ........................................................................................................... 18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1  TO PLAINTIFFS THOMAS FERNANDEZ, LORA SMITH, TOSHA THOMAS,

2  AND THEIR COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE that on July 31, 2008 at 2:00 p.m. or as soon after that time as

4  counsel may be heard, in Courtroom 2 of the above-entitled Court, located at 1301 Clay Street,

5  Oakland, California, Defendant North Star Trust Company will, and hereby does, move this

6  Court, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and this Court's March 5,

7  2008 Order regarding motions relating to the statute of limitations (Docket No. 95), for summary

8  judgment on all claims based on the applicable statute of limitation, ERISA Section 413, 29

9  U.S.C. § 1113, and related governing case law.

10      This motion is based upon this Notice of Motion and Motion, the accompanying

11  memorandum of points and authorities, the Declaration of Nicole A. Diller and its attachments,

12  all records on file with the Court relating to this matter, and any and all argument provided by

13  counsel at the hearing.

14  Dated:  June 26, 2008               Respectfully submitted,

15                                     MORGAN, LEWIS & BOCKIUS LLP

16

17                                   _____

18                                   Nicole A. Diller
                                 Donald P. Sullivan

19                                   Andrew C. Sullivan

20                                   Attorneys for Defendant North Star Trust
                                 Company

21

22

23

24

25

26

27

28

                                 1                               NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1   Defendant North Star Trust Company ("North Star") submits the following memorandum

2   of points and authorities in support of its Motion for Summary Judgment re Statute of

3   Limitations.

4   **I.    INTRODUCTION**

5          Plaintiffs commenced this litigation on November 29, 2006 to address alleged

6   overpayments made by their employee stock ownership plan ("ESOP") in two separate

7   transactions. The first transaction occurred in 1998, when the ESOP purchased an interest in

8   Kelly-Moore Paint Company ("Kelly-Moore"), and the second occurred in 1999 in connection

9   with the purchase of an interest in Kelly-Moore's sister corporation, California Insurance Group

10  ("CIG"). The complaint asserts that both transactions involved breaches of fiduciary duty and

11  prohibited transactions under the Employee Retirement Income Security Act of 1974, as amended

12  ("ERISA"), 29 U.S.C. §§1001, *et seq.*

13         ERISA contains limitations provisions that bar both claims. The relevant provision,

14  ERISA Section 413, precludes actions brought after the earlier of three years from the date on

15  which the plaintiff obtained actual knowledge of the conduct allegedly constituting the breach, or

16  six years after the breach occurred. The statute tolls these time periods for claims against a

17  fiduciary who fraudulently conceals his or her wrongdoing.

18         On its face, because more than six years elapsed between both transactions and the filing

19  of the complaint, the repose period bars Plaintiffs' claims absent proof of fraud or concealment.

20  In an attempt to address this issue, the complaint attempts to allege fraud and concealment by

21  asserting that the former owner of the stock knew that Kelly-Moore faced serious asbestos

22  liability, but hid that information from the company's participants, auditors, and valuators.

23  Without knowledge of the lurking liability, the Complaint alleges, the worth of both companies

24  was overestimated at the time of the purchase transactions.

25         These allegations are not enough to toll the statute under the law of this Circuit or Section

26  413 of ERISA. Moreover, the undisputed facts refute Plaintiffs' allegations of concealment. The

27  evidence demonstrates that Kelly-Moore and CIG disclosed the asbestos litigation to Plaintiffs,

28  the companies' auditors, and the valuation experts retained to assess the companies' worth for

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1    purposes of the initial transactions.  In addition, the companies disclosed the facts constituting the

2    alleged breaches and prohibited transactions—the sale of the ownership interests in the

3    companies to the ESOP and the price paid in exchange for those holdings—to Plaintiffs

4    contemporaneously with the transactions, giving Plaintiffs actual knowledge of the conduct

5    sufficient to trigger the three-year prong of ERISA's limitations provision.  Finally, when the

6    asbestos liability appeared to threaten the financial viability of the Kelly-Moore, and potentially

7    impact the value of CIG through the companies' holding company, K-M Industries Holding Co.,

8    Inc. ("KMH" or the "Company"), both Kelly-Moore and CIG disclosed the situation to their

9    employee-owners.

10    Even in the absence of all these facts establishing that no fraud or concealment ever tolled

11    the limitations period, Plaintiffs have not alleged, and cannot show, any fraud or concealment on

12    the part of North Star, the Plan's successor trustee.  The lack of any such possible conduct by

13    North Star means that any claims Plaintiffs may believe they have against North Star relating to

14    the 1998 and 1999 transactions expired, at the latest, in 2005.  The complaint's assertions that

15    Defendants failed to remedy the ostensible overpayments cannot extend the limitations period, as

16    the Ninth Circuit has rejected that end-run around the limitations period.  The Court should

17    therefore dismiss Plaintiffs' claims against North Star with prejudice.

18    **II.    FACTUAL BACKGROUND**

19    Kelly-Moore is a Bay Area-based company that specializes in providing paint products to

20    homeowners and paint professionals.  Declaration of Nicole A. Diller in Support of Defendant

21    North Star Trust Company's Motion for Summary Judgment re Statute of Limitations, Exh. 1.[1]

22    CIG provides insurance products to businesses and families throughout California and Nevada.

23    Exh. 2.  The two unrelated subsidiary companies are solely owned by KMH, which, in turn, is

24    owned by the employees of Kelly-Moore and CIG and a trust established by the companies'

25    founder, William E. Moore (the "Moore Trust").  *See* Exh. 3 at SRR 10782.

26    Prior to 1998, the Moore Trust owned all of KMH, and Mr. Moore served as the person in

27

28    [1] All subsequent references to exhibits refer to the exhibits attached to the Diller Declaration.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
3
NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1   charge of the Company's strategy and development.  Exh. 4.  In May 1998, Kelly-Moore and CIG

2   both established ESOPs, effective January 1, 1998.  Exhs. 5, 6.  The ESOPs were merged into a

3   single plan the following year.[2]

4       **A.    Establishment of the Kelly-Moore ESOP and Disclosure of the Transaction**

5           Prior to selecting an independent valuation firm to appraise the fair market value of Kelly-

6   Moore, the Company reviewed the qualifications of several appraisers.  Exh. 9 at 225:7-226:19.

7   The Company explored each candidate's education, experience, and understanding of the

8   challenges and opportunities facing Kelly-Moore.  Exh. 9 at 225:7-226:19, 231:20-232:16.  After

9   interviewing numerous candidates, Kelly-Moore selected B.J. Brooks of Sansome Street

10  Appraisers to prepare a valuation for ESOP purposes.  Exhs. 1, 9 at 225:24-226:9.  Mr. Brooks

11  received his B.S. in Economics from Yale University and his M.B.A., with distinction, from

12  Harvard University.  Exh. 10 at KMH1313.  He had over twenty years of experience valuing

13  privately-held companies, including past work appraising paint companies.  Exh. 9 at 232:2-16;

14  *see also* Exh. 1.

15          In connection with his appraisal of Kelly-Moore, Mr. Brooks conducted extensive due

16  diligence.  He reviewed several years of audited financial statements, the prior 10 years of

17  historical operations, the Company's history, market trends and forecasts, and relevant statistical

18  data.  Exh. 9A.  Mr. Brooks interviewed Kelly-Moore's officers and directors, who, among other

19  things, disclosed the Company's pending asbestos litigation and insurance coverages.  Exh. 9 at

20  242:14-24.  In sum, the record establishes that Mr. Brooks' engaged in the following due

21  diligence:

22          Brooks researched the history of the Company, the condition and outlook of the
            industry, the book value and overall financial condition of the Company, the
23          earnings and dividends history and prospects of the Company, and pertinent IRS
            regulations.
24

            **Filed Under Seal**
25  [2] Exh. 7.

26                                      Exh. 7.  Thus, on July 16, 1999, KMH merged the Kelly-Moore
    ESOP and the CIG ESOP.  Exh. 8 at NS00019508-09.  The resulting plan and trust were renamed
27  as the K-M Industries Holding Co., Inc. ESOP and Trust, respectively.  *Id.*  For ease of reference,
    this memorandum references both ESOP components as a single plan regardless of the time
28  period except as otherwise noted.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4                    NORTH STAR TRUST CO.'S MOTION FOR
                     SUMMARY JUDGMENT RE LIMITATIONS
                     CASE NO. C06-07339 CW

1
2
> Brooks reviewed more than six years of audited financial statements for Kelly-Moore, recent internal financial statements, documentation related to Kelly-Moore's history and operations, and press related to the industry.

3
4
> Brooks interviewed Kelly-Moore management to review the aforementioned information and to discuss the Company's history, status, and future outlook with the management team.

5    Exh. 1.

6

7    Mr. Brooks concluded that the fair market value of Kelly-Moore as of October 12, 1998

8    was $550 million. Exh. 9 at 236:5-237:13. Prior to accepting the valuation, Kelly-Moore

9    management and the ESOP's trustee reviewed the report to ensure its accuracy and completeness.

10   Exh. 9 at 243:1-15. Using Mr. Brook's determination to set the price, on October 13, 1998, the

11   Moore Trust sold the ESOP 33,745,455 shares of KMH  Class P-B common stock to the ESOP

12   for $232 million ($6.875 per share), which represented a 42 percent interest in Kelly-Moore.[3]

     Exhs. 4, 5, 14.

13   Kelly-Moore disclosed the details of the transaction to its now employee-owners through

14   briefings at all major worksites, at which the ESOP's third party administrator explained the

15   terms and structure of the ESOP transaction and responded to inquiries in an open Q&A session.

16   Exhs. 15, 16 at 269:17-270:3.

17   Following the valuation process for the first plan year, Kelly-Moore sent each participant

18   a statement showing the results for 1998. Exh. 17. On July 31, 1999, correspondence recapped

19   the transaction details for the participants and explicitly alerted them to an approximate 28

20   percent decline in the value of the ESOP's holdings between the purchase date of October 13,

21   1998 and the end of the first plan year. Exh. 18. The following year, in October 2000, Kelly-

22   Moore informed Plan participants of a further decrease of $2,040,101 in the value of the shares

23   held in the Plan when it provided participants copies of the Plan's Summary Annual Report for

24

25
26
27
28
---
[3] To finance the transaction, the ESOP Trustee received a $232 million loan from Kelly-Moore, Exh. 4 , which Kelly-Moore financed through $96 million of its own funds and $136 million of external financing. Exh. 11. In exchange, the ESOP granted Kelly-Moore a security interest in the ESOP's unallocated stock through a Pledge Agreement. Exh. 4. The ESOP Trustee allocates the Kelly-Moore stock to the accounts of the Plan's participants as Kelly-Moore makes annual contributions to the ESOP, which pay down the debt. Exh. 12 at P069-P070, P072-P073, P089. The employees do not contribute any money to the ESOP. Exh. 13.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1    the 1999 Plan year.  Exh. 19.

2

3

4                                          **Filed Under Seal**

5

6

7                    To help participants read the Plan statements, participants received a

8    glossary explaining each of the terms used on the statement and describing what each term

9    represented.  *See, e.g.*, Exhs. 24-28.  These statements put each participant on notice of the facts

10   underlying the complaint's claims.  Thus, within the first two years of the Plan's history—all

11   before the year 2001—participants were informed verbally and in writing about the purchase

12   transaction, consideration paid by the Plan to the Moore Trust, and the declines in the stock about

13   which Plaintiffs protest in the complaint filed eight years after the transaction.  While Plaintiff

14   Tosha Thompson – the only class representative who ever worked at Kelly-Moore – did not start

15   working at Kelly-Moore until 2001, the undisputed facts show that the ESOP's participants

16   received the above-described multiple notices of the terms of the transaction that underlie

17   Plaintiffs' claims.[4]

18   **B.     Establishment and Disclosure of the CIG ESOP**

19                    CIG established its ESOP through a similar process.  Members of CIG management met

20   with representatives of various valuation firms and compared the firms' capabilities and

21   experience.  Exh. 29 at 46:24-47:14.  The ESOP trustee retained Duff & Phelps, which was a

22   nationally-recognized valuation firm used for ESOP transaction purposes and had prior

23   experience in the valuation of insurance companies.  See Exh. 30 at 101:9-16, 102:1-20; Exh. 31.

24   _____

25   [4] Ms. Thomas' lack of employment during this critical period provides yet another grounds for
     the Court to find her an unsuitable class representative, as it makes her uniquely situated as to
26   Defendants' statute of limitations defense.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th
     Cir. 1992).  However, as discussed in Section II.D.2.b, *infra*, Ms. Thomas admits that she had
27   actual knowledge of the events constituting the alleged breach more than three years before the
     filing of the complaint.  As a result, Ms. Thomas' belated start with Kelly-Moore does not serve
28   to avoid the statute's application to this case.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1    In order to determine the fair market value of CIG, Duff & Phelps reviewed CIG's audited

2    financial statements, operations, historical performance, and projected growth. Exh. 29 at 196:7-

3    197:5; Exh. 2. It researched relevant economic and industry information, analyzed comparable

4    companies' performance, and interviewed CIG's senior management. Exh. 29 at 196:7-197:5;

5    Exh. 2. CIG's management team, like the Kelly-Moore managers, disclosed Kelly-Moore's

6    asbestos litigation during this due diligence phase. Exh. 29 at 35:2-18, 39:1-6; Exh. 2.

7    Duff & Phelps concluded that, as of June 30, 1999, the fair market value of a 42% interest

8    in CIG was $55 million. Exh. 2. CIG management reviewed the Duff & Phelps report to confirm

9    it included all material information, including appropriate comparable companies, and the ESOP

10    trustee spoke with Duff & Phelps about the report's assumptions and methodology. Exh. 29 at

11    109:1-10, 63:6-16.

12    Prior to accepting the Duff & Phelps valuation, the ESOP's trustee sought a second

13    opinion from another top valuation firm, Columbia Financial Advisors, Inc. ("Columbia"). Exh.

14    32. Columbia, without the benefit of Duff & Phelps' opinion, independently concluded that a

15    42% interest in CIG was worth $55 million. Exh. 33.

16    Having received two appraisals of CIG that independently reached the same valuation

17    conclusion, the ESOP trustee determined that the valuation was fair and reasonable. Exh. 34 at

18    D&P 000790. However, because the transaction did not take place immediately following the

19    issuance of Duff & Phelps' report, the ESOP trustee asked for an updated valuation opinion. Exh.

20    35. Duff & Phelps reviewed interim financial statements, considered further industry and CIG

21    developments and determined that, as of October 18, 1999, the fair market value of a 42% interest

22    in CIG's remained at $55 million. Exhs. 2, 35. The ESOP trustee relied upon the updated

23    valuation to set the purchase price, and on October 18, 1999, the ESOP purchased 8.4 million

24    shares of KMH Series I stock from the Moore Trust for $55 million ($6.55 per share).[5] Exh. 36;

25    Exh. 29 at 196:7-197:5.

26

27    _____

    [5] The Trustee financed the ESOP's purchase through loans from KMH amounting to
    $54,096,230. Exh. 34 at D&P 000790, D&P 000793. As collateral for the loan, the KMH ESOP
28    Trustee pledged the unallocated shares. Exh. 34 at D&P 000797.

1    As with the Kelly-Moore ESOP, CIG informed its new employee-owners of the essential

2  terms of the transaction.  CIG sent participants a letter explaining that the purchase price,

3  percentage interest in CIG and other details of the ESOP transaction.  Exh. 37 at 103:7-19; Exh.

4  38.  Plaintiffs Fernandez and Smith admit they received this information.  *See, e.g.,* Exhs. 38;

5  Exh. 37 at 71:19-72:10.  CIG reiterated this information at its next quarterly employee meeting on

6  November 9, 1999, with an open Q&A session regarding the ESOP taking place at the end of the

7  meeting.  Exh. 39.

8

9                          **Filed Under Seal**

10

11    In addition, the glossary compared each year's per share valuation with the original

12  transaction.  *See, e.g.,* Exhs. 62, 63.

13      **C.      Herbert R. Giffins Succeeds Bill Moore as Trustee in 2002**

14

15                          **Filed Under Seal**

16

17                       Exh. 65 at 21:16-19.

18

19                    ; *see also* Exh. 65 at 109:22-110:06.

20    At the February 2003 meeting, the Board also directed the commencement of a search for

21  an institutional trustee to serve as a permanent successor trustee.  Exh. 65 at 129:23 - 130:6; 131:

22  14-22; Exh. 66 at 123:15 – 124:10.  The Company reviewed the qualifications of several

23  candidates prior to selecting the successor, including conducting in-person interviews of qualified

24  candidates and calling each service provider's professional references.  Exh. 65 at 129:23 - 130:6;

25  131:17-22, 133: 18-23; Exh. 67, 68.  Management presented the alternatives to the Board at a

26  special meeting held on April 8, 2003, at which the strengths and weaknesses of each candidate

27  were discussed.  *Id.*

                          **Filed Under Seal**

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8                    NORTH STAR TRUST CO.'S MOTION FOR
                     SUMMARY JUDGMENT RE LIMITATIONS
                     CASE NO. C06-07339 CW

Filed Under Seal

1  Exh. 69. The Board concluded that North Star was the

2  most capable candidate and that it demonstrated an ability to act in the best interests of the ESOP

3  and its participants and, on that basis, appointed North Star as the ESOP's trustee effective April

4  22, 2003. Exh. 70 at KMH003144-003146; Exh. 65 at 129:23–130:6, 131:17-22, 133:18-23.

5    **D.    Kelly-Moore Becomes Targeted by Asbestos Litigants**

6    **1.    History of Kelly-Moore Asbestos Litigation**

7    In 1967, Kelly-Moore acquired Paco Corporation, a company that manufactured and sold

8  joint and texture products, some of which contained asbestos. Exh. 3 at SRR 10807. Paco

9  dissolved in January 1982. *Id.*

10

11    **Filed Under Seal**

12

13

14    .. On August 28, 2001, however, a jury rendered a verdict against Kelly-

15  Moore for $ 55.5 million in a case captioned *Hernandez v. Kelly-Moore.* Exh. 72 at 109:12 -

16  110:8. Described as a "watershed" case, the outcome of *Hernandez* signaled for the first time the

17  financial toll asbestos litigation could potentially take upon Kelly-Moore's business. Exh. 9 at

18  171:20 – 172:4.

19    **2.    Disclosure of the Asbestos Threat**

20      **a.    Disclosure of Asbestos Litigation to Valuators and Auditors**

21    Since the inception of the ESOP, management kept the companies' auditors and the

22  ESOP's valuators informed of the asbestos litigation. Exh. 9 at 242:14-24, 246:3-8.

23

24    **Filed Under Seal**

25

26

27    Following the *Hernandez* verdict, management believed the asbestos litigation posed a

28  serious enough threat to the Company that it requested its auditors disclose the litigation in Kelly-

1    Moore's 2001 audited financial statement. Exh. 74.

2        The valuation of Kelly-Moore for ESOP purposes relied on the audited financial reports,

3    which, as discussed above, incorporated the auditors' views as to the materiality of the asbestos

4    litigation. Exh. 75. In addition, as early as 2000, Ireland & Associates independently assessed

5    the number of asbestos cases pending against the Company, settlement projections, and available

6    insurance. Exh. 75 at KMH 001098; Exh. 76 at 75:16 - 76:9, 76:20-24, 79:13-19, 80:14 – 81:2,

7    123:22 – 124:18.

8        Similarly, in valuing CIG for ESOP purposes, Duff & Phelps not only reviewed the

9    audited financial reports, but also conferred with CIG's management regarding, among other

10    things, the possible impact of the asbestos litigation on CIG. Exh. 29 at 37:6-38; Exh. 30 at

11    57:22-58:11. These discussions occurred with the initial valuation of CIG for the 1999

12    transaction and continued year-to-year thereafter. Exh. 29 at 37:6-38:4; Exh. 30 at 54:10-55:9;

13    57:22-58:11.

14                    b.    **Disclosure of the Potential Impact of**
                            **the Litigation to ESOP Participants**
15

16        As soon as management became concerned about the asbestos litigation, Kelly-Moore and

17    CIG informed their employees of the situation. Kelly-Moore distributed quarterly newsletters

18    discussing the status of the litigation and potential impact on the value of the participants' ESOP

19    accounts, which Plaintiff Thomas admits she received. Exhs. 77 at Interrog. Response 1; Exh. 88

20    at 93:15-24.[6] The October 2001 newsletter explained to Thomas and the other Kelly-Moore

21    employees the asbestos suits facing Kelly-Moore and management's concerns about the impact

22    on the value of the Class P-B shares. Exh. 89 ("[t]he Company works very hard to defend itself

23    against asbestos litigation, but such litigation continues to be a concern to the financial health and

_____

24    [6] *See also,* Exh. 19 at KMH 000087-92 (October 2000); Exh. 78 at KMH 000093-94 (December
25    2000); Exh. 79 at KMH 000095-98 (May 2001); Exh. 24 at KMH 010680-83 (June 2001); Exh.
      80 at KMH 010684-89 (October 2001); 81 at KMH 010690 (December 2001); Exh. 82 at KMH
26    010691 (February 2002); Exh. 25 at KMH 010693-96 (June 2002); Exh. 83 at KMH 010697-702
      (October 2002); Exh. 84 at KMH 010703 (December 2002); Exh. 26 at KMH 000127-30 (July
27    2003); Exh. 85 at KMH 010708-09 (September 2003); Exh. 27 at P1126-29 (October 2005); Exh.
      28 at P1121-24 (November 2005); Exh. 86 at KMH 010714-17 (July 2006); Exh. 87 at P1113-16
28    (July 2007).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1  the stock price of the Company"). Ms. Thomas acknowledges that, by April 2002, she knew

2  asbestos was challenging the company based on the publications distributed by Kelly-Moore,

3  including a 2002 newsletter reporting on the asbestos litigation and its potential impact on the

4  ESOP's value. Exh. 88 at 110:24-111:7. As she admits, Kelly-Moore Management specifically

5  apprised Ms. Thomas that asbestos litigation could negatively impact the value of her ESOP

6  account in early 2003. Exh. 88 at 87:12-88:14. Ms. Thomas' admissions refute the allegations in

7  the complaint that she did not have actual knowledge of the relevant events until 2005. *Id.*; *see*

8  *also* Exh. 88 at 76:23-77:18, 95:3-16, 99:3-17.

9      CIG made similar disclosures, which Plaintiffs Fernandez and Smith admit they received.

10  On May 23, 2002, CIG informed Plaintiffs and the other ESOP participants of the potential

11  impact that the asbestos litigation could have on the value of CIG:

> One other factor has been brought to our attention that may have an effect on the
> future value of our CIG stock. K-M Industries Holding Co., Inc., our holding
> company, also owns Kelly-Moore Paint Company. Significant asbestos claims
> have been filed against Kelly-Moore. To date, the costs of these claims have been
> covered by insurance polices. Kelly-Moore is vigorously proceeding against its
> various insurance carries to assured coverage of these asbestos-related claims. As
> the asbestos litigation continues against Kelly-Moore, Kelly-Moore's current
> believe is that the litigation is likely to depress its stock value. As a result of our
> joint ownership by K-M Industries Holding Co., Inc., the asbestos litigation may
> depress the value of our CIG stock, which would affect the value of your ESOP
> account.

18  Exh. 90; Exh. 77 (Interrog. Response 1, 2); *see also* Exh. 37 at 81:13-82:14. At the start of the

19  following year, on January 21, 2003, CIG followed up on this advisement with more facts about

20  the asbestos litigation and reiteration of the potential impact on the participants' ESOP accounts.

21  That communication stated:

> [O]ur sister company, Kelly-Moore, continues to be a defendant in asbestos
> litigation. Currently there are over 30,000 claims pending against Kelly-Moore.
> These claims arise from a product manufactured decades go by a prior subsidiary
> called Paco Textures Corporation....
>
> Although the pending claims have been asserted against Kelly-Moore rather than
> CIG, which are both owned by K-M Holdings, you should be aware that there are
> some circumstances under which the asbestos litigation might adversely affect the
> value of the shares held by your ESOP. These shares—like those held by the
> Kelly-Moore ESOP—are actually 'tracking' shares issued by K-M Holdings,
> itself.... Both sets of tracking shares ... are subject to whatever debts K-M
> Holdings, itself, might have to third parties. Therefore, to the extent that any
> claim—even one arising out of Kelly-Moore's operations—is ultimately satisfied
> by K-M Holdings rather than one of its subsidiaries, the value of the shares held by

11

1    your ESOP may be affected adversely.

2    Exh. 91.  Again, Plaintiffs Fernandez and Smith admit that they contemporaneously received this

3    communication.  Exh. 91; Exh. 77 at Interrog. Responses 1 and 2; *see also* Exh. 37 at 81:13-

4    82:14.

5

**Filed Under Seal**

6

7

8        The undisputed facts therefore belie the Complaint's allegation that "until the Fall of

9    2004, Defendant Fiduciaries intentionally withheld information about the extent of KMH's

10   potential asbestos liability from participants who were active employees."  *See* Complaint ¶ 52.

11   In fact, contrary to the allegations of the complaint, each Plaintiff admits that they know of no

12   facts to support the proposition that any defendants withheld information concerning Kelly-

13   Moore's asbestos liability.  Exhs. 37 at 195:2-13; Exh. 94 at 179:2-6; Exh. 88 at 208:1-12.

14        3.    **Resolution of the Asbestos Litigation**

15

16

17

18

19

**Filed Under Seal**

20

21

22

23

24

25   E.    **North Star's Conduct as the ESOP's Discretionary Trustee**

26        North Star took an active role as trustee following its appointment in April 2003.  It met

27   with members of management and attended board and shareholder meetings to discuss the

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1    financial position and outlook of both CIG and Kelly-Moore.  Exh. 96 at NS00006504.

2

3

4

5

6

7

8

9

10

11

12                         **Filed Under Seal**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

**Filed Under Seal**

17    **III.    PLAINTIFFS' CLAIMS AGAINST NORTH STAR ARISING OUT OF THE 1998
18             AND 1999 TRANSACTIONS ARE TIME-BARRED**

              **A.    Standard of Review Governing Motion**
19
20            The Supreme Court has instructed that courts should regard summary judgment "as an
21    integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and
22    inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)
23    (quoting Fed.R.Civ.P. 1).  Summary judgment will be granted when there is "'no genuine issue as
24    to any material fact and that the moving party is entitled to a judgment as a matter of law.'"
25    *California Architectural Bldg Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468
26    (9th Cir. 1988) (quoting Fed.R.Civ.P. 56(c)).  There are no genuine issues of material fact when
27    "the record taken as a whole could not lead a rational trier of fact to find for the non-moving
28    party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Where the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1   moving party demonstrates the absence of genuine issues of material fact, the burden then shifts

2   to the non-moving party to "come forward with 'specific facts showing that there is a genuine

3   issue for trial.'" *Id.* (quoting Fed.R.Civ.P. 56(e)).  If the opposing party's evidence "is merely

4   colorable or is not significantly probative, summary judgment may be granted." *Anderson v.*

5   *Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1996).

6   **B.      ERISA Section 413 Applies to Both Claims for Relief**

7        Plaintiffs' Second Amended Complaint presents two claims for relief.  The first asserts a

8   claim for breach of fiduciary duty under ERISA Sections 502(a)(2) and (a)(3), 29 U.S.C.

9   §§ 1132(a)(2) and (a)(3).  The second asserts a violation of the prohibited transaction rules found

10  in ERISA Sections 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b).  ERISA Section 413 provides the

11  limitations period applicable to both claims.  29 U.S.C. § 1113; *see also, Barker v. American*

12  *Mobil Power Corp.*, 64 F.3d 1397, 1400-01 (9th Cir. 1995) (Section 413 governs claims for

13  breach of fiduciary duty brought under ERISA Sections 502(a)(2) and (a)(3)); *Blanton v.*

14  *Anzalone*, 760 F.2d 989, 991 (9th Cir. 1985) (Section 413 governs the limitations period for

15  prohibited transaction claims).

16       ERISA Section 413 states that:

17
18  > No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the ***earlier*** of –

19
20  > (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

21
22  > (2) three years after the ***earliest*** date on which the plaintiff had actual knowledge of the breach or violation;

23  > except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

24  29 U.S.C. § 1113 (emphasis added).  Section 413 functions as an absolute bar to untimely claims,

25  and entry of judgment in defendants' favor on a time-barred claim is proper when plaintiffs

26  cannot prove that the limitations period has been tolled.  *Landwehr v. DuPree*, 72 F.3d 726, 733

27  (9th Cir. 1995); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993); *see also*

28  *Radford v. General Dynamics Corp.*, 151 F.3d 396, 400 (5th Cir. 1998).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1    The Plan's alleged payment of excess consideration in both the 1998 and 1999 transaction

2    forms the crux of both of Plaintiffs' claims that Defendants caused the Plan to pay more than fair

3    market value for KMH stock.  SAC, ¶¶ 67, 74-75; *see also* Plaintiffs' Reply Brief in Support of

4    Plaintiffs' Motion for Class Certification and Appointment of Class Counsel (Docket No. 127) at

5    5 ("Plaintiffs . . . all understand the basic allegation in this case:  that the ESOP paid too much for

6    the stock at the time of the initial transactions") and 4 n. 2 (Plaintiffs "all understand that the

7    gravamen of the claims is that the ESOP overpaid for stock").  Allegations that Defendants

8    purportedly failed to conduct a thorough and independent review of the 1998 and 1999

9    transactions, or prudently investigate the qualifications of the persons valuing the stock, also

10    relate to conduct that occurred in 1998 and 1999.  SAC, ¶¶ 27-44, 67, 74-75.  Plaintiffs assert no

11    deficiency with respect to the annual valuations of either Class I-B or Class P-B stock subsequent

12    to the initial valuations.[7]  *See generally* SAC.

13    **C.    Plaintiffs Had Actual Knowledge of the Alleged 1998 and 1999 Transactions
          More Than Three Years Before They Filed This Action**

14

15    ERISA Section 413's three-year limitations period is triggered by Plaintiffs' *knowledge of*

16    *the event* that constitutes the alleged breach, whether or not Plaintiffs then understood that the

17    event amounted to a breach of fiduciary duty.  *Blanton*, 760 F.2d at 992 ("[t]he statute of

18    limitations is triggered by the defendants' knowledge of the transaction that constituted the

19    alleged violation, not by their knowledge of the law").  In other words, Plaintiffs' lack of

20    knowledge of the applicable law will not stop the limitations period from beginning to run.  *Id.*

21    Harm to plaintiffs is also not required to start the statute running.  *In re Unisys Corp. Retiree*

22    *Medical Benefit ERISA Litigation*, 242 F.3d 497, 505-6 (3d Cir. 2001); *Ziegler v. Connecticut*

23    *Gen. Life Ins. Co.*, 916 F.2d 548, 551 (9th Cir. 1990) ("Indeed, the key to the ERISA statute of

24    limitations when applied to these types of violations [*i.e.*, prohibited transactions] is not 'actual

25    harm,' but rather 'actual knowledge' of the ERISA breach or violations").

26    Courts engage in a two-step analysis to determine whether a claim is time-barred by

27

---

[7] Indeed, Plaintiffs did not even bother to depose SRR, the valuator retained by North Star, which has prepared the annual valuations for the Plan years 2003 through 2007.  Diller Decl., ¶ 3.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1    ERISA Section 413's three-year limitations period. *Ziegler*, 916 F.2d at 550. First, the Court

2    must determine when the alleged breach occurred. *Id.* Second, it must determine when the

3    plaintiff learned of actions constituting the breach. *Id.* Analysis of both factors shows that

4    Plaintiffs had actual knowledge within the meaning of ERISA Section 413 of the facts relating to

5    the 1998 and 1999 transactions more than three years before they filed this case in November

6    2006.

7        As discussed in Section II, *supra,* the ESOP purchased interests in Kelly-Moore and CIG

8    in 1998 and 1999. Exhs. 4, 5, 14, 97. All three Plaintiffs admit to having knowledge of the

9    ESOP transactions prior to November 2003. *See* Exhs.15, 17, 18, 38; *see also* Exh. 16 at 269:17-

10   270:3. Further, each Plaintiff understood before November 2003 that asbestos liability could

11   impact the value of his or her ESOP shares. *See* Exh. 88 at 87:12-88-10, 110:24-111:7; Exhs. 90,

12   91; Exh. 77 at Interrog. Responses 1 and 2; Exh. 37 at 81:13-82:14; Exh. 94 at 95:9-16.

13       As Plaintiffs acknowledge, management of both companies circulated frequent updates to

14   the ESOP participants, apprising them of Kelly-Moore and CIG's corporate developments,

15   including negative developments associated with the asbestos litigation. In October 2001, Kelly-

16   Moore disclosed that asbestos litigation was a concern to the financial health and the stock price

17   of the Company, Exh. 89, and Ms. Thomas admits that Kelly-Moore management directly

18   informed with her in early 2003 - more than three years before the filing of the complaint in

19   November 2006 - that asbestos litigation could negatively impact the value of her ESOP shares.

20   Exh. 88 at 87:12-88:10. Despite allegations in her complaint to the contrary, Ms. Thomas admits

21   she had actual knowledge of the transactions and the potential impact of the asbestos litigation on

22   the value of her share price well before November 2003. Exh. 88 at 76:23-77:18, 87:12-88:10,

23   93:15-24, 95:3-16, 99:3-17, 110:24-111:7. Therefore, her actual knowledge bars this lawsuit with

24   respect to Class P-B shares. *Blanton, 760 F.2d at 922.*

25       Similarly, both Ms. Smith and Mr. Fernandez testified that CIG kept them informed of

26   developments at Kelly-Moore and how its asbestos liability could negatively impact their ESOP

27   shares. Exh. 90, 91; Exh. 77 at Interrog. Responses 1 and 2; Exh. 37 at 81:13-82:14; Exh. 94 at

28   95:9-16. Each admits that they received newsletters detailing the nature of the asbestos concerns

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1    at Kelly-Moore as early as 2002. Exh. 90. On-going communications continued to inform Class

2    I-B shareholders of recent developments with respect to the asbestos in early 2003. *See, e.g.,*

3    Exh. 91. Thus, as with Ms. Thomas, CIG's disclosures provided Ms. Smith and Mr. Fernandez

4    with actual knowledge of the facts underlying their current claims as to the Class I-B shares.

5    Because this knowledge was acquired before November 2003, both claims are barred by the

6    three-year statute of limitations. *Blanton, 760 F.2d at 922*

7    **D.    Plaintiffs' Claims Relating to the 1998 and 1999 Transactions Are Time-**
8    **Barred by the Six-Year Repose Period**

9        In the event that the Court for some reason concludes that a material factual dispute

10   precludes finding that Plaintiffs had actual knowledge of the facts on which they base their claims

11   more than three years before filing this case, ERISA Section 413(1) nevertheless bars the claims

12   because the transactions occurred more than six years before they filed this action. *See* Docket

13   No. 1 (Complaint's filing on November 29, 2006). ERISA Section 413(1) functions as a statute

14   of repose, barring an action for breach of fiduciary duty or prohibited transaction if the participant

15   does not file it within six years of the date of the alleged violation, regardless of whether the

16   participant ever learns of the breach. 29 U.S.C. § 1113(1). Because the 1998 and 1999

17   transactions occurred more than six years before Plaintiffs' filed the initial complaint in

18   November 2006, their claims based on the 1998 and 1999 transactions are time barred. *Id.*

19       Plaintiffs' allegations that Defendants committed "additional" breaches of fiduciary duty

20   by failing to cure the alleged wrongdoing cannot, as a matter of law, extend the six-year period

21   for challenging the 1998 and 1999 transactions. In *Phillips v. Alaska Hotel and Restaurant*

22   *Employees Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991), the Ninth Circuit considered and

23   rejected the application of the "continuing violation" theory to claims subject to the limitations

24   period contained in ERISA Section 413. The plaintiffs in *Philips* argued, and the district court

25   ruled, that the period in which plaintiffs had to bring a claim for breach of fiduciary duty ran

26   anew each time the defendants committed a discrete but related breach of fiduciary duty.

27   Reversing the district court, the Ninth Circuit held that the application of a continuing violation

28   theory to an ERISA breach of fiduciary duty claimed contradicted on the plain language of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1  ERISA Section 413. *Phillips*, 944 F.2d at 520 (stating "[t]he earliest date on which a plaintiff

2  became aware of any breach would thus start the limitation period of § 1113(a)(2) running. The

3  district court's application of the continuing violation theory essentially reads the 'actual

4  knowledge' standard out of the statute"). Accordingly, Plaintiffs' allegations that Defendants

5  breached their fiduciary duties after 1999 cannot extend the six-year period in which they had to

6  bring their claims relating to the 1998 and 1999 transactions.

### E.   The Limitations Period Cannot Be Tolled as to North Star on the Grounds of Fraud or Concealment

9  While fraud or concealment tolls Section 413's six-year repose period until the date of

10  discovery of the alleged fiduciary breach, no evidence even remotely suggests any such conduct

11  in this case. Under the governing Ninth Circuit standard, ERISA Section 413 tolls running of the

12  repose period only in cases against the fiduciary who took the affirmative steps to hide his or her

13  breach of fiduciary duty. *Barker*, 64 F.3d at 1402 (under the doctrine of fraudulent concealment,

14  "a statute of limitations may be tolled only if the plaintiff 'establishes affirmative conduct upon

15  the part of the *defendant* which would, under the circumstances of the case, lead a reasonable

16  person to believe that he did not have a claim for relief'") (emphasis in original) (quoting *Volk v.*

17  *D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir. 1987) and *Gibson v. United States*, 781 F.2d

18  1334, 1345 (9th Cir. 1986)); *see also Larson v. Northrop Corp.*, 21 F.3d 1164, 1172-73 (D.C. Cir.

19  1994); *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990);

20  *Schaefer v. Arkansas Medical Soc.*, 853 F.2d 1487, 1491 (8th Cir. 1988).

21  The fraudulent concealment doctrine does not serve to toll the statute against a party who

22  did not act to conceal the alleged fiduciary breach. *Barker*, 64 F.3d at 1402 ("[t]he doctrine of

23  fraudulent concealment tolls the statute of limitations only as to those defendants who committed

24  the concealment," and "Plaintiffs may not generally use the fraudulent concealment by one

25  defendant as a means to toll the statute of limitations against other defendants") (quoting

26  *Greenwald v. Manko*, 840 F. Supp. 198, 203 (E.D.N.Y. 1993) and *Griffin v. McNiff*, 744 F. Supp.

27  1237, 1256 n. 20 (S.D.N.Y. 1990), *aff'd*, 744 F. Supp. 1237 (2d Cir. 1993).

28  Plaintiffs have not alleged—have no evidence to support—that North Star took any steps

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1    to conceal the facts on which Plaintiffs base their claims. *See* Exhs. 37 at 195:2-13; Exh. 94 at

2    179:2-6; Exh. 88 at 206:23-207:9, 208:1-12. As discussed above, the crux of Plaintiffs'

3    allegations is that the Plan paid too much for the Class P-B stock in 1998 and for the Class I-B

4    stock in 1999. *See SAC*, ¶ 51.                    **Filed Under Seal**

5            Because no evidence indicates that North Star attempted to fraudulently conceal

6    any facts regarding the 1998 or 1999 transactions, and because Plaintiffs filed this action more

7    than six years after the latest of the two transactions, their breach of fiduciary duty and prohibited

8    transaction claims are time-barred. *Barker*, 64 F.3d at 1402.

9    **IV.    CONCLUSION**

10           For the reasons discussed above, North Star Trust Company respectfully requests the

11   Court dismiss the Complaint as to North Star with prejudice.

12   Dated: June 26, 2008                    MORGAN, LEWIS & BOCKIUS LLP

13

14                                          By: _____

15                                              Nicole A. Diller
                                                Donald P. Sullivan
16                                              Andrew C. Sullivan

17                                          Attorneys for North Star Trust Company

18   1-SF/7717831.9

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

NORTH STAR TRUST CO.'S MOTION FOR
SUMMARY JUDGMENT RE LIMITATIONS
CASE NO. C06-07339 CW

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10

11   | THOMAS FERNANDEZ, LORA SMITH, | Case No. C06-07339 CW |
     | and TOSHA THOMAS | |

12   | | **[PROPOSED] ORDER GRANTING** |
13   | Plaintiffs, | **NORTH STAR TRUST COMPANY'S** |
     | | **MOTION FOR SUMMARY JUDGMENT** |
14   | vs. | **RE STATUTE OF LIMITATIONS** |

15   K-M INDUSTRIES HOLDING CO., INC.;
     K-M INDUSTRIES HOLDING CO., INC.
16   ESOP PLAN COMMITTEE; WILLIAM
     E. AND DESIREE B. MOORE
17   REVOCABLE TRUST; TRUSTEES OF
     THE WILLIAM E. AND DESIREE B.
18   MOORE REVOCABLE TRUST;
     ADMINISTRATOR OF THE ESTATE OF
19   WILLIAM E. MOORE, DECEASED; CIG
     ESOP PLAN COMMITTEE; and NORTH
20   STAR TRUST COMPANY,

21
                         Defendants.
22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7719829.1

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2          Before the Court is Defendant North Star Trust Company's Motion for Summary

3  Judgment Re Statute of Limitations.  Having considered the papers filed by the parties and the

4  arguments of counsel, the Court finds there is no genuine dispute as to any material fact and

5  Plaintiffs' claims are barred by Section 413 of the Employee Retirement Income Security Act of

6  1974, as amended, 29 U.S.C. § 1113.  Accordingly, pursuant to Rule 56 of the Federal Rules of

7  Civil Procedure, North Star Trust Company's Motion for Summary Judgment Re Statute of

8  Limitations is **GRANTED.**

9          **IT IS THEREFORE ORDERED** that:

10         Plaintiffs' complaint is dismissed with prejudice as to North Star Trust Company.

11

12  Dated: _____, 2008

13                                          _____
                                            The Honorable Claudia Wilken
                                            United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

1-SF/7719829.1                          1                    [PROPOSED] ORDER GRANTING NORTH STAR'S MSJ RE
                                                            STATUTE OF LIMITATIONS
                                                            CASE NO. C06-07339 CW