1  Daniel Feinberg – CA State Bar No. 135983
   Todd F. Jackson – CA State Bar No. 202598
2  Margaret E. Hasselman – CA State Bar No. 228529
   Nina R. Wasow – CA State Bar No. 242047
3  Kirsten Gibney Scott – CA State Bar No. 253464
   LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
4  1330 Broadway, Suite 1800
   Oakland, CA  94612
5  Telephone: (510) 839-6824
   Facsimile: (510) 839-7839
6  Email: dfeinberg@lewisfeinberg.com
   Email: tjackson@lewisfeinberg.com
7  Email: mhasselman@lewisfeinberg.com
   Email: nwasow@lewisfeinberg.com
8  Email: kscott@lewisfeinberg.com

9  *Attorneys for Plaintiffs and the Proposed Class*

10

11              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
12            SAN FRANCISCO AND OAKLAND DIVISION

13

14  THOMAS FERNANDEZ, LORA SMITH, and     )  Case No. C-06-07339 CW
    TOSHA THOMAS, individually and on behalf  )
15  of a class of all other persons similarly situated,  )

16                 Plaintiffs,          )  **EXHIBITS 2, 4, 5, 9, AND 12**
                                        )  **TO THE DECLARATION OF**
17                                      )  **KIRSTEN SCOTT IN SUPPORT OF**
          vs.                           )  **PLAINTIFFS' MOTION FOR**
18                                      )  **CLASS CERTIFICATION (DOCKET**
    K-M INDUSTRIES HOLDING CO., INC.;    )  **NO. 104)**
    K-M INDUSTRIES HOLDING CO., INC.     )
19  ESOP PLAN COMMITTEE; WILLIAM E.      )
    AND DESIREE B. MOORE REVOCABLE       )
20  TRUST; TRUSTEES OF THE WILLIAM E.    )
    AND DESIREE B. MOORE REVOCABLE       )
21  TRUST; CIG ESOP PLAN COMMITTEE;      )
    NORTH STAR TRUST COMPANY;            )
22  DESIREE B. MOORE REVOCABLE TRUST;    )
    WILLIAM E. MOORE MARITAL TRUST;      )
23  WILLIAM E. MOORE GENERATION-         )
    SKIPPING TRUST; and DESIREE MOORE,   )
24  BOTH IN HER INDIVIDUAL CAPACITY      )
    AND AS TRUSTEE OF THE WILLIAM E.     )
25  AND DESIREE B. MOORE REVOCABLE       )
    TRUST'S SUCCESSOR TRUSTS NAMED       )
26  ABOVE,                               )
                                         )
27                 Defendants.           )
    ————————————————————————————————     )

28

1        Pursuant to the Court's Order Granting in Part Plaintiffs' Motion for Leave to File Under

2  Seal (Docket No. 108) dated June 12, 2008, (Docket No. 118) plaintiffs herewith submit Exhibits

3  2, 4, 5, 9 and 12, redacted in compliance with such Order.

Dated:  July 9, 2008              Respectfully submitted,

LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.

By:      /s/
                 Margaret E. Hasselman
LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA  94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839

Peter Rukin – CA State Bar No. 178336
RUKIN HYLAND DORIA
& TINDALL LLP
100 Pine Street, Suite 725
San Francisco, CA
Telephone: (415) 421-1800
Facsimile: (415) 421-1700
Email:  peterrukin@rhddlaw.com

*Attorneys for Plaintiffs*
*and the Class*

Exhs. 2, 4, 5, 9, 12 to Declaration of Kirsten Scott In Support of Plaintiffs' Motion for
Class Certification (Docket No. 104)
[Case No. C-06-07339 CW ]                    Page 2

# EXHIBIT 2

## ESOP STOCK PURCHASE AGREEMENT

THIS AGREEMENT, entered into this thirteenth day of October, 1998, by and among William E. Moore as trustee of the Kelly-Moore Paint Company, Inc. Employee Stock Ownership Trust (hereinafter referred to as the "Trustee"), the William E. and Desiree B. Moore 1990 Revocable Trust, as Amended, William E. Moore and Desiree B. Moore, Trustees (hereinafter referred to as the "Seller" or "Selling Shareholder"), and Kelly-Moore Paint Company, Inc., a California corporation (hereinafter referred to as the "Company"),

## WITNESSETH:

WHEREAS, Trustee is the trustee of the Kelly-Moore Paint Company, Inc. Employee Stock Ownership Plan and related Trust (hereinafter referred to as "Plan") established by the Company to be effective as of January 1, 1998, and intended to be qualified as an employee stock ownership plan as defined in Section 4975(e)(7) of the Internal Revenue Code, a stock bonus plan under Section 401(a) of the Internal Revenue Code, and exempt from income tax under Section 501(a) of the Internal Revenue Code; and

WHEREAS, Selling Shareholder owns all of the issued and outstanding shares of K-M Industries Holding Co., Inc., a California corporation (the "Parent"); and

WHEREAS, Selling Shareholder desires to sell Thirty-three Million Seven Hundred Forty-five Four Hundred Fifty-five (33,745,455) shares of the Parent's Class P-B Stock (the "Shares") to the Trustee; and

1

EXHIBIT

3

Stritmatter  3-12-08

MK001589

WHEREAS, Trustee wishes to purchase from Selling Shareholder, and Selling Shareholder wishes to sell to Trustee the Shares for the benefit of the employees of the Company who are participants in the Plan; and

WHEREAS, the parties desire to design said purchase and sale so that the Selling Shareholder will be entitled to the benefits of Section 1042 of the Internal Revenue Code; and

WHEREAS, the Company desires to provide a means for its employees to acquire a proprietary interest in it as an incentive for them to advance the business and affairs of the Company;

NOW, THEREFORE, in consideration of the promises and the respective agreements hereinafter set forth, Selling Shareholder and Trustee hereby agree as follows:

1.  <u>Sale of Stock</u>.  As of this date and subject to the terms and conditions of this Agreement, Selling Shareholder does hereby sell and deliver to Trustee, and Trustee does hereby purchase from the Selling Shareholder, the Shares.

2.  <u>Purchase Price</u>.7

(a)     In consideration for the transfer of the Shares as provided in Section 1, Trustee shall pay to Selling Shareholder an amount equal to               REDACTED

REDACTED               per share, or a total of               REDACTED

REDACTED               The Purchase Price shall be paid to Selling Shareholder in cash at the closing.

(b)     The purchase price in Section 2(a) hereof is not more than the fair market valuation established as of the date of this Agreement.  In the event that there is a final determination by the Internal Revenue Service, a court of competent jurisdiction or otherwise that the

2

CONFIDENTIAL

MK001590

fair market value of the Shares as of this date is less than the Purchase Price paid by the Trustee, then Selling Shareholder shall transfer to the Trustee an amount of cash, or transfer to the Trustee shares of the Parent's Class P-B Stock, or any combination thereof, equal in value to the difference between the Purchase Price and said fair market value for all such Shares.  In the event that cash and/or shares of the Parent's Class P-B Stock are paid and/or transferred to the Trustee under this provision, such shares shall be valued at their fair market value as of the date hereof and interest at a reasonable rate from the date hereof to the date of payment shall be paid by Selling Shareholder on the amount of cash paid.

3.      <u>Representations and Warranties of Selling Shareholder</u>.  The Selling Shareholder, to induce the Trustee to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties.

(a)      On the date hereof, the Shares being sold hereunder will be validly issued and outstanding, fully paid and nonassessable without any liens or encumbrances whatsoever upon or against such shares; and there will be in existence no limitations or restrictions of any kind (other than restrictions under a buy/sell agreement among Company shareholders) on the right of Selling Shareholder to sell such Shares in accordance with the terms hereof.  No options, warrants, agreements, or similar rights created by the Company for the issue or sale of any stock or securities of any kind or for the purchase thereof by any person other than pursuant to or as disclosed by this Agreement will then be in existence.

(b)      Selling Shareholder is the owner, free and clear of any encumbrances, of the Shares being sold hereunder and has the power and authority to enter into this Agreement and

3

MK001591

to perform the same, and is not a party to or obligated under or restricted by any contract or other provision which might be violated by making and performing this Agreement.

(c)    Selling Shareholder has been the owner of the Shares for more than three (3) years from the date hereof (including any tacking period under Section 1041 of the Internal Revenue Code) and did not receive the Shares as a distribution from a plan qualified under Section 401(a) of the Internal Revenue Code or pursuant to an option or other right to acquire stock to which Sections 83, 422, 422A, 423 or 424 of the Internal Revenue Code applies.

(d)    Selling Shareholder will file with the Internal Revenue Service the appropriate elections to have Section 1042 of the Internal Revenue Code apply to all or a portion of the sale of Shares contemplated hereby.  Said elections shall be filed not later than the last day prescribed by law (including extensions thereof) for filing Selling Shareholder's federal income tax return for the taxable year in which the sale occurs and Selling Shareholder shall deliver to the Company a copy of such elections not later than the date on which the Selling Shareholder files its federal income tax return for such taxable year.  Selling Shareholder shall advise Trustee in writing as to the number of Shares with respect to which it then intends to elect the provisions of said Section 1042.

4.    <u>Representations and Warranties of Trustee</u>.  Trustee, to induce Selling Shareholder to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties:

(a)    Trustee is trustee of the Plan pursuant to an Agreement validly created and existing under the laws of the State of California.

4

(b)    Trustee has ful' power and is duly authorized by law and the Trust
Agreement to obligate itself to pay moneys for lawful trust purposes, including specifically but
not in limitation thereof, for the purpose of acquiring shares of the Parent.

(c)    Proper action has been taken by Trustee to authorize the execution of this
Agreement and of any and all agreements or instruments necessary to effectuate the transactions
contemplated hereby.

5.    <u>Representations and Warranties of Company</u>.  Company, to induce the Selling
Shareholder to conclude the transaction contemplated hereunder, hereby makes the following
representations and warranties:

(a)    The Company is a corporation duly organized and existing and in good
standing under the laws of the State of California having the corporate power to carry on its
business as it is now being conducted and is duly qualified to do business and is in good standing
in all other states where it is doing business.

(b)    Immediately after the purchase of the Shares by Trustee as contemplated
hereby, Trustee will own at least thirty percent (30%) of the total value of the then outstanding
stock of the Parent.

(c)    None of the Shares to be purchased by Trustee hereunder will be allocated
under the Plan to the accounts of or for the benefit of the Selling Shareholder, any person who is
a member of the family of the Selling Shareholder (within the meaning of Section 267(c)(4) of
the Internal Revenue Code), or any other person who owns (after application of Section 318(a) of
the Internal Revenue Code) more than twenty-five percent (25%) in value of any class of

5

MK001593

outstanding "employer securities" of the Parent. In the administration of the Plan, the Company will comply with the requirements of Section 409(n) of the Internal Revenue Code.

(d)     Upon execution of this Agreement or as soon thereafter as is reasonably practical, the Company shall execute and deliver to the Selling Shareholder the verified written statements required by Section 1042(b)(3) of the Internal Revenue Code pursuant to which the Company consents to the application of Section 4978(a) and 4979A of the Internal Revenue Code in the event that either (i) the Trustee disposes of any of the Shares during the three (3) year period from the date of purchase, other than as a distribution to Participants or otherwise as described in said Section 4978(a) or (ii) there is a prohibited allocation, as defined in Section 4979A of the Internal Revenue Code.

6.     Obligations of Trustee. Selling Shareholder understands and agrees that the execution by the Trustee of this Agreement and of any other instrument or agreement in connection herewith is done in Trustee's capacity as Trustee of the Plan and under and pursuant to the instructions and authorization provided for under the Trust Agreement pursuant to which the Trust was created and that the obligations and liabilities of Trustee in connection therewith are limited to the assets of the Trust.

7.     Indemnification. Selling Shareholder agrees to indemnify and hold harmless Trustee, and Trustee agrees to hold Selling Shareholder harmless, from any and all claims, actions and suits, whether groundless or otherwise, and from and against any and all liabilities, losses, damages, costs, charges, counsel fees and other expenses of every nature and character resulting or arising therefrom or resulting from or arising out of the breach of any representation, agreement or warranty made under or pursuant to this Agreement.

6

MK001594

8.    <u>Survival of Representations, Warranties and Agreements</u>.  All statements contained in any certificate, opinion or other instrument delivered by or on behalf of any party pursuant hereto or in connection with the transactions and warranties by said party herein shall survive the execution of this Agreement.  All representations and warranties shall survive the execution of this Agreement and any investigation at any time made by or on behalf of any party hereto.  Any party against whom a claim shall arise after the execution hereof shall be notified promptly in writing of any such claim.

9.    <u>Notices, etc</u>.  All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered or mailed by registered or certified mail to the addresses herein designated or at such other address as may be designated in writing by notice given by registered or certified mail to the other parties:

> If to Selling Shareholder, at:
>
>> 303 Olive Hill Lane
>> Woodside, CA  94062
>> Attn:  William E. Moore
>
> If to Trustee, at:
>
>> Kelly-Moore Paint Company, Inc. Employee Stock Ownership
>> Plan and Trust
>> Attn.: Trustee
>> 987 Commercial Street
>> San Carlos, CA  94070
>
> If to the Company, at:
>
>> Kelly-Moore Paint Company, Inc.
>> Attn.: President
>> 987 Commercial Street
>> San Carlos, CA  94070

7

MK001595

10. <u>Amendments and Entire Agreement</u>. This instrument contains the entire agreement between the parties hereto with respect to the transactions contemplated hereby, and may be changed or modified only by an instrument duly executed by the parties hereto.

11. <u>Parties in Interest</u>. This Agreement shall inure to the benefit of and be binding upon the parties named herein and their respective successors and assigns; nothing in this Agreement, expressed or implied, is intended to confer upon any other person any rights or remedy under or by reason of this Agreement.

12. <u>Law to Govern</u>. This Agreement shall be construed and governed in accordance with the laws of the State of California.

13. <u>Section and Other Headings</u>. The section and other headings contained in this Agreement are for reference purposes only and shall not affect the interpretation or meaning of this Agreement.

14. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

8

MK001596

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**WILLIAM E. AND DESIREE B. MOORE 1990 REVOCABLE TRUST, AS AMENDED:**

_William E. Moore_
William E. Moore, Trustee

_Desiree B. Moore_
Desiree B. Moore, Trustee

**TRUSTEE OF THE KELLY-MOORE PAINT COMPANY, INC. EMPLOYEE STOCK OWNERSHIP TRUST:**

_William E. Moore_
William E. Moore, Trustee

**KELLY-MOORE PAINT COMPANY, INC.**

_____
Joseph P. Cristiano, President

_Stephen Ferrari_
Stephen A. Ferrari, Secretary

9

MK001597

10/08/98  14:36 FAX 415 362 3268       Menke & Associates, Inc.                     ☒002/004

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**WILLIAM E. AND DESIREE B. MOORE 1990 REVOCABLE TRUST, AS AMENDED:**

_____
William E. Moore, Trustee

_____
Desiree B. Moore, Trustee

**TRUSTEE OF THE KELLY-MOORE PAINT COMPANY, INC. EMPLOYEE STOCK OWNERSHIP TRUST:**

_____
William E. Moore, Trustee

**KELLY-MOORE PAINT COMPANY, INC.**

_____
Joseph P. Cristiano, President

_____
Stephen A. Ferrari, Secretary

9

MK001598

# EXHIBIT 4

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2           FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3             SAN FRANCISCO AND OAKLAND DIVISION
 4
    _____
 5
 6    THOMAS FERNANDEZ, et al.,                )
                                               )
 7                 Plaintiffs,                 )
                                               ) Case No.
 8            vs.                              )
                                               ) C-06-07339 CW
 9    K-M INDUSTRIES HOLDING CO., INC., et al.,)
                                               )
10                 Defendants.                 )
                                               )
11                                             )
                                               )
12
    _____
13
14
              VIDEOTAPED DEPOSITION OF JOHN MENKE
15                   March 21, 2008
                   Oakland, California
16
17
18
19
20
21
22    Reported by:
      EMI ALBRIGHT
23    RPR, CSR No. 13042
      Job No. 79125
24
25
```

1          Q    Do you remember what was talked about at

2     that meeting?

3          A    I don't remember very much of what was

4     talked about.  I think Mr. Moore had a number of

5     questions of which leads me to believe that he had not

6     yet made a final decision.

7               The one thing I remember about the meeting

8     was that we -- I mentioned how growing up as a kid in

9     Amarillo, I had even seen Kelly-Moore stores.  And then

10    he mentioned how that was one of his favorite stores was

11    the one in Amarillo because he bought that store, bought

12    that property years ago, and it was on the old Route 66

13    which used to be the old Chisholm Trail.  And he sort of

14    went off, you know, in fond memories of the good old

15    days.

16         Q    Other than telling you about the Amarillo

17    store, did he tell you why he was considering creating

18    an ESOP?

19         A    I don't -- I don't remember that

20    discussion, no.

21         Q    At some point you came to understand that

22    he was considering establishing an ESOP among other

23    reasons to cash out some of his value in the company on

24    a tax advantage basis; right?

25         A    Right.

# EXHIBIT 5

# CONFIDENTIAL

---

## MINUTES OF ANNUAL COMBINED MEETING OF THE
## BOARD OF DIRECTORS AND SHAREHOLDERS
## OF
## KELLY-MOORE PAINT COMPANY, INC.

### APRIL 21, 1998

---

The Undersigned being all of the Directors and Shareholders of Kelly-Moore Paint Company, Inc., a California Corporation do hereby waive notice and the holding of the annual combined meeting of the Board of Directors and Shareholders of said Corporation at the Corporate Office, 987 Commercial Street San Carlos, California at 11:00 AM on April 21, 1998.

The Chairman of the Board, William E. Moore, announced that there was no prior notice of due call of the meeting; however the Trustees of the William E. and Desiree B. Moore 1990 Revocable Trust as amended, consented to the meeting and waived formal notice.

The Chairman of the Board called the meeting to order. Upon motion duly made, seconded, and unanimously carried, William E. Moore and Stephen A. Ferrari were elected Chairman and Secretary respectively, of the meeting.

The list of common shareholders and the number of shares outstanding was presented to the Chairman of the Board by the Secretary. The Chairman, William E. Moore, announced that a quorum of the common shareholders was present, in person, in accordance with the bylaws of the Corporation.



EXHIBIT
6 2
Ferrari 3-26-08

KMH 000452

# CONFIDENTIAL

Upon motion duly made, seconded and unanimously carried, the Minutes of 1997 were approved as written respectively by the shareholders and the Board of Directors.

The Chairman thereupon introduced the President of Kelly-Moore Paint Company, Inc., Joseph P. Cristiano, who reviewed paint operations during 1997.    **REDACTED**

**REDACTED**

The Southwest Division had    **REDACTED**

**REDACTED**

The Company was pleased with continued strengthening of the personnel with additions to the staff of the Sales Department. There have also been strengthening of the training programs for store operations. In 1997 there was also a significant increase in sales of products to China which should increase even more in 1998.

Stores opened in 1997 include Novato, California; Cedar Park, Texas. In addition, we began operations in Ennis, Texas and Del Rio, Texas. In 1998 we have already opened operations in Dennison, Texas; San Marcos, Texas and Wasilla, Alaska. San Ramon, California will open in a few months. In 1998 we expect to have a relocation of our Berkeley, California store to Albany, California, and we expect to relocate our Reno, Nevada and Georgetown, Texas stores. During 1997, the following stores were closed: Springdale, Arkansas; Emeryville, California; and Federal Way, Washington. In 1997, we also combined the Seattle-Georgetown and Seattle-Airport

KMH 000453

# CONFIDENTIAL

Way stores along with the Seattle spray center operations.  At Anchorage, Alaska, Sacramento-Raley, California, Hurst Texas and San Carlos, California, we also combined the spray center operations with that of the related store.

**REDACTED**

The Chairman thereupon reported on the operations in 1997 of the California Capital Insurance Group and The Broken O Ranch in Montana.     **REDACTED**

**REDACTED**

KMH 000454

# CONFIDENTIAL

Upon a motion duly made, seconded and unanimously carried, the acts of the Directors and Executives for the year 1997 were ratified and approved by the shareholders.

The Chairman thereupon discussed the authorization of Joseph P. Cristiano and Stephen Ferrari to complete certain transactions without a special meeting of the directors. Upon a motion duly made, seconded and unanimously carried, the attached resolution dated April 21, 1998 discussing authorization to open and close bank accounts and authorization to purchase, sell, or lease real property for up to one million dollars ($1,000,000) without a special meeting of the directors is ratified and approved as written.

Nominations were thereupon opened for Directors of the corporation. The names of William E. Moore, Desiree B. Moore, Christine M. McCall, Joseph P. Cristiano and Stephen A. Ferrari were placed in nomination. There were no further nominations. Upon motion duly made, seconded and unanimously carried, William E. Moore, Desiree B. Moore, Christine M. McCall, Joseph P. Cristiano and Stephen A. Ferrari were elected by the shareholders to serve as directors of the Corporation for the year 1998, and until their successors are elected. Special committees of the Board of Directors were discussed and none were created or appointed at the present time.

The Chairman thereupon discussed compensation of directors who are not salaried employees of the Company.     **REDACTED**

**REDACTED**

KMH 000455

# CONFIDENTIAL

The Chairman thereupon stated that the Company was seriously considering implementing an Employee Stock Ownership Plan (ESOP). The Company has already received a couple of proposals. An ESOP may be the best vehicle to make funds available to the owners to pay for estate taxes. In addition, there are other benefits such as potential reduced corporate taxes and motivational benefits to the employees. Further consideration and a potential decision will be made based upon further detailed proposals received.

The Chairman asked if there were any further new business. There being no further business brought forward, upon motion duly made, seconded and unanimously carried, the meeting was thereupon adjourned.

KELLY-MOORE PAINT COMPANY, INC.

By: _William E. Moore_____
     William E. Moore
     Chairman of the Board

_William E. Moore_____
Director
_Jessica B. Moore_____
Director
_Christine McNicoll_____
Director
_Joseph C. Christiano_____
Director
_Stephen Ferrari_____
Director

KMH 000456

# EXHIBIT 9

<u>ESOP STOCK PURCHASE AGREEMENT</u>

THIS AGREEMENT, entered into this ___18___ day of October, 1999, by and among

William E. Moore as trustee of the K-M Industries Holding Co., Inc. Employee Stock Ownership

Trust, formerly known as the Kelly-Moore Paint Company, Inc. Employee Stock Ownership

Trust (hereinafter referred to as the "Trustee"), the William E. and Desiree B. Moore 1990

Revocable Trust, as Amended, William E. Moore and Desiree B. Moore, Trustees (hereinafter

referred to as the "Seller" or "Selling Shareholder"), and K-M Industries Holding Co., Inc., a

California corporation (hereinafter referred to as the "Company"),

<u>WITNESSETH:</u>

WHEREAS, Trustee is the trustee of the amended and restated K-M Industries Holding

Co., Inc. Employee Stock Ownership Plan and related Trust (hereinafter referred to as "Plan")

originally effective as of January 1, 1998, and amended and restated effective as of July 16,

1999, and intended to be qualified as an employee stock ownership plan as defined in Section

4975(e)(7) of the Internal Revenue Code, a stock bonus plan under Section 401(a) of the Internal

Revenue Code, and exempt from income tax under Section 501(a) of the Internal Revenue Code;

and

WHEREAS, Selling Shareholder owns all of the issued and outstanding Class I-B shares

of the Company; and

1

EXHIBIT

25

Cazzolla  3-19-08

CIG 001870

WHEREAS, Selling Shareholder desires to sell eight million four hundred thousand **CONFIDENTIAL**

(8,400,000) shares of the Company's Class I-B Stock (the "Shares") to the Trustee; and

WHEREAS, Trustee wishes to purchase from Selling Shareholder, and Selling

Shareholder wishes to sell to Trustee the Shares for the benefit of the employees of the Company

who are participants in the Plan; and

WHEREAS, the parties desire to design said purchase and sale so that the Selling

Shareholder will be entitled to the benefits of Section 1042 of the Internal Revenue Code; and

WHEREAS, the Company desires to provide a means for its employees to acquire a

proprietary interest in it as an incentive for them to advance the business and affairs of the

Company;

NOW, THEREFORE, in consideration of the promises and the respective agreements

hereinafter set forth, Selling Shareholder and Trustee hereby agree as follows:

1. <u>Sale of Stock</u>.  As of this date and subject to the terms and conditions of this

Agreement, Selling Shareholder does hereby sell and deliver to Trustee, and Trustee does hereby

purchase from the Selling Shareholder, the Shares.

2. <u>Purchase Price</u>.7

(a) In consideration for the transfer of the Shares as provided in Section 1,

Trustee shall pay to Selling Shareholder an amount equal to       **REDACTED**

**REDACTED**                                               Purchase

Price shall be paid to Selling Shareholder in cash at the closing.

(b) The purchase price in Section 2(a) hereof is not more than the fair market

valuation established as of the date of this Agreement.  In the event that there is a final determi-

2

CIG 001871

nation by the Internal Revenue Service, a court of competent jurisdiction or otherwise that the fair market value of the Shares as of this date is less than the Purchase Price paid by the Trustee, then Selling Shareholder shall transfer to the Trustee an amount of cash, or transfer to the Trustee shares of the Company's Class P-B Stock, or any combination thereof, equal in value to the difference between the Purchase Price and said fair market value for all such Shares. In the event that cash and/or shares of the Company's Class P-B Stock are paid and/or transferred to the Trustee under this provision, such shares shall be valued at their fair market value as of the date hereof and interest at a reasonable rate from the date hereof to the date of payment shall be paid by Selling Shareholder on the amount of cash paid.

3.  <u>Representations and Warranties of Selling Shareholder</u>.  The Selling Shareholder, to induce the Trustee to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties.

(a)  On the date hereof, the Shares being sold hereunder will be validly issued and outstanding, fully paid and nonassessable without any liens or encumbrances whatsoever upon or against such shares; and there will be in existence no limitations or restrictions of any kind (other than restrictions under a buy/sell agreement among Company shareholders) on the right of Selling Shareholder to sell such Shares in accordance with the terms hereof. No options, warrants, agreements, or similar rights created by the Company for the issue or sale of any stock or securities of any kind or for the purchase thereof by any person other than pursuant to or as disclosed by this Agreement will then be in existence.

(b)  Selling Shareholder is the owner, free and clear of any encumbrances, of the Shares being sold hereunder and has the power and authority to enter into this Agreement and

3

CIG 001872

to perform the same, and is not a party to or obligated under or restricted by any contract or other provision which might be violated by making and performing this Agreement.

(c)    Selling Shareholder has been the owner of the Shares for more than three (3) years from the date hereof (including any tacking period under Section 1041 of the Internal Revenue Code) and did not receive the Shares as a distribution from a plan qualified under Section 401(a) of the Internal Revenue Code or pursuant to an option or other right to acquire stock to which Sections 83, 422, 422A, 423 or 424 of the Internal Revenue Code applies.

(d)    Selling Shareholder will file with the Internal Revenue Service the appropriate elections to have Section 1042 of the Internal Revenue Code apply to all or a portion of the sale of Shares contemplated hereby.  Said elections shall be filed not later than the last day prescribed by law (including extensions thereof) for filing Selling Shareholder's federal income tax return for the taxable year in which the sale occurs and Selling Shareholder shall deliver to the Company a copy of such elections not later than the date on which the Selling Shareholder files its federal income tax return for such taxable year.  Selling Shareholder shall advise Trustee in writing as to the number of Shares with respect to which it then intends to elect the provisions of said Section 1042.

4.    Representations and Warranties of Trustee.  Trustee, to induce Selling Shareholder to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties:

(a)    Trustee is trustee of the Plan pursuant to an Agreement validly created and existing under the laws of the State of California.

4

CIG 001873

(b)     Trustee has full power and is duly authorized by law and the Trust Agreement to obligate itself to pay moneys for lawful trust purposes, including specifically but not in limitation thereof, for the purpose of acquiring shares of the Parent.

(c)     Proper action has been taken by Trustee to authorize the execution of this Agreement and of any and all agreements or instruments necessary to effectuate the transactions contemplated hereby.

5.     Representations and Warranties of Company.  Company, to induce the Selling Shareholder to conclude the transaction contemplated hereunder, hereby makes the following representations and warranties:

(a)     The Company is a corporation duly organized and existing and in good standing under the laws of the State of California having the corporate power to carry on its business as it is now being conducted and is duly qualified to do business and is in good standing in all other states where it is doing business.

(b)     Immediately after the purchase of the Shares by Trustee as contemplated hereby, Trustee will own at least thirty percent (30%) of the total value of the then outstanding stock of the Company.

(c)     None of the Shares to be purchased by Trustee hereunder will be allocated under the Plan to the accounts of or for the benefit of the Selling Shareholder, any person who is a member of the family of the Selling Shareholder (within the meaning of Section 267(c)(4) of the Internal Revenue Code), or any other person who owns (after application of Section 318(a) of the Internal Revenue Code) more than twenty-five percent (25%) in value of any class of

5

CIG 001874

outstanding "employer securities" of the Company. In the administration of the Plan, the

Company will comply with the requirements of Section 409(n) of the Internal Revenue Code.

      (d)      Upon execution of this Agreement or as soon thereafter as is reasonably

practical, the Company shall execute and deliver to the Selling Shareholder the verified written

statements required by Section 1042(b)(3) of the Internal Revenue Code pursuant to which the

Company consents to the application of Section 4978(a) and 4979A of the Internal Revenue

Code in the event that either (i) the Trustee disposes of any of the Shares during the three (3) year

period from the date of purchase, other than as a distribution to Participants or otherwise as

described in said Section 4978(a) or (ii) there is a prohibited allocation, as defined in Section

4979A of the Internal Revenue Code.

      6.   <u>Obligations of Trustee</u>. Selling Shareholder understands and agrees that the

execution by the Trustee of this Agreement and of any other instrument or agreement in

connection herewith is done in Trustee's capacity as Trustee of the Plan and under and pursuant

to the instructions and authorization provided for under the Trust Agreement pursuant to which

the Trust was created and that the obligations and liabilities of Trustee in connection therewith

are limited to the assets of the Trust.

      7.   <u>Indemnification</u>. Selling Shareholder agrees to indemnify and hold harmless

Trustee, and Trustee agrees to hold Selling Shareholder harmless, from any and all claims,

actions and suits, whether groundless or otherwise, and from and against any and all liabilities,

losses, damages, costs, charges, counsel fees and other expenses of every nature and character

resulting or arising therefrom or resulting from or arising out of the breach of any representation,

agreement or warranty made under or pursuant to this Agreement.

6

CIG 001875

8.    <u>Survival of Representations. Warranties and Agreements</u>.  All statements

contained in any certificate, opinion or other instrument delivered by or on behalf of any party

pursuant hereto or in connection with the transactions and warranties by said party herein shall

survive the execution of this Agreement.  All representations and warranties shall survive the

execution of this Agreement and any investigation at any time made by or on behalf of any party

hereto.  Any party against whom a claim shall arise after the execution hereof shall be notified

promptly in writing of any such claim.

9.    <u>Notices, etc</u>.  All notices, requests, demands and other communications hereunder

shall be in writing and shall be deemed to have been duly given if delivered or mailed by

registered or certified mail to the addresses herein designated or at such other address as may be

designated in writing by notice given by registered or certified mail to the other parties:

If to Selling Shareholder, at:

      303 Olive Hill Lane
      Woodside, CA  94062
      Attn:  William E. Moore

If to Trustee, at:

      K-M Industries Holding Co., Inc. Employee Stock Ownership Plan
      and Trust
      Attn.: Trustee
      987 Commercial Street
      San Carlos, CA  94070

If to the Company, at:

      K-M Industries Holding Co., Inc.
      Attn.: President
      987 Commercial Street
      San Carlos, CA  94070

7

CIG 001876

10.   Amendments and Entire Agreement.  This instrument contains the entire agreement between the parties hereto with respect to the transactions contemplated hereby, and may be changed or modified only by an instrument duly executed by the parties hereto.

11.   Parties in Interest.  This Agreement shall inure to the benefit of and be binding upon the parties named herein and their respective successors and assigns; nothing in this Agreement, expressed or implied, is intended to confer upon any other person any rights or remedy under or by reason of this Agreement.

12.   Law to Govern.  This Agreement shall be construed and governed in accordance with the laws of the State of California.

13.   Section and Other Headings.  The section and other headings contained in this Agreement are for reference purposes only and shall not affect the interpretation or meaning of this Agreement.

14.   Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

8

CIG 001877

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

WILLIAM E. AND DESIREE B. MOORE 1990
REVOCABLE TRUST, AS AMENDED:


_William E Moore_
William E. Moore, Trustee


_Desiree B. Moore_
Desiree B. Moore, Trustee


TRUSTEE OF THE K-M INDUSTRIES
HOLDING CO., INC. EMPLOYEE STOCK
OWNERSHIP TRUST:


_William E Moore_
William E. Moore, Trustee


K-M INDUSTRIES HOLDING CO., INC.


_William E Moore_
William E. Moore, President


9

CIG 001878

# EXHIBIT 12

## TRUSTEE ENGAGEMENT AGREEMENT

This Trustee Engagement Agreement is made and entered into this $\mathcal{U}$ day of April, 2003 by and between North Star Trust Company ("North Star"), and K-M Industries Holdings Co., Inc. a California corporation (the "Company") and, solely for purposes of Sections 5, 12, and 14, its subsidiaries.

### RECITALS

The Company has established the K-M Industries Holdings Co., Inc. Employee Stock Ownership Plan, (the "Plan") (which is a part of the K-M Industries Holdings Co., Inc. Employee Stock Ownership Trust (the "Trust", together with the Plan referred to as the "ESOP")) for the benefit of its employees. All contributions made by the Company to the Plan are held in the Trust that was created by the Company under a separate trust agreement, with individual trustees serving as trustees of the Trust.

The Company desires to retain North Star as successor trustee of the Trust, and North Star is willing to serve as the successor trustee of the Trust, on the terms and subject to the conditions set forth in this Agreement.

### AGREEMENT

In consideration of the mutual covenants and agreements set forth in this Agreement, the parties agree to amend and restate the Trust Agreement to reflect the following:

## APPOINTMENT AND DUTIES

1.     Appointment of Trustee.  The Company hereby appoints North Star to serve as the successor trustee of the Trust, and North Star hereby accepts this appointment.  The Company acknowledges that North Star is a successor trustee of the Trust and is not liable for any actions of the prior trustee or trustees.  Concurrent with the appointment of North Star as trustee of the Trust, the Company has accepted the resignation of the prior trustees.

2.     Continuing Service.   North Star will continue to serve as the trustee of the Trust until it resigns or is removed by the Company.  North Star may resign at any time by providing 30 days' advance written notice to the Company.  The Company may remove North Star by providing North Star with 30 days' advance written notice, subject to providing North Star with satisfactory written evidence of the appointment of a successor trustee and of the acceptance by the successor trustee.

3.     Duties of Trustee.  (a) North Star shall hold and manage all contributions made by the Company to the Plan in accordance with the terms of the Plan and of the Trust Agreement, to the extent that they are consistent with the provisions of the Employee Retirement Income

DALLAS3 858718v7 53313-00006

MT 000543
Confidential

Security Act of 1974 ("ERISA"). North Star will exercise its independent discretionary judgment in connection with the acquisition, custody and disposal of Trust assets in accordance with the requirements of part 4 of Title I of ERISA and the Plan. The parties agree to amend in restated form the Trust Agreement to provide North Star with such independent discretionary authority.

(b)     North Star will maintain accurate records regarding the acquisition and holding of Company stock and of any other Trust investments and regarding distributions to Plan participants. North Star will provide quarterly reports of such activities. North Star will not provide participant recordkeeping, accounting, or tax or other reporting services for the Plan. These services will be provided by the Plan Administrator or its agent; and the Company or the Plan Administrator will provide periodic reports to North Star demonstrating that these services are being provided by the Plan Administrator or its agent. If requested by the Company, North Star will prepare IRS Forms 1099 for delivery to participants in the Plan when their benefits are distributed.

4.     Valuation Preparation. To the extent necessary for completing the annual valuation of the common stock for administrative purposes and as otherwise agreed to among the parties, the Company: (i) shall reasonably cooperate with North Star and its advisors to provide information reasonably requested by North Star and its advisors relevant to such valuation; and (ii) shall reasonably grant to North Star and its advisors reasonable access to the officers and directors of the Company with respect to such valuation.

5.     Retention of Financial Advisor. North Star will engage the services of a qualified independent financial advisor, who will report directly to North Star and not to the Company. North Star or the financial advisor will be entitled to timely periodic payment by the Company of all reasonable fees and expenses of the financial advisor. The Company and its subsidiaries shall pay all reasonable fees and expenses of the financial advisor that are incurred by North Star. If North Star pays such fees and expenses of its financial advisor, the Company shall immediately reimburse North Star for such expenses.

6.     Retention of Legal Counsel. North Star will engage its own independent legal counsel. North Star or its legal counsel shall be entitled to timely payments on a monthly basis by the Company for all reasonable fees and expenses of North Star's legal counsel. The Company shall pay all reasonable legal fees and expenses that are incurred by North Star. If North Star pays such fees and expenses of its financial advisor, the Company shall immediately reimburse North Star for such expenses.

7.     Confidentiality. North Star shall use the information disclosed to it by the Company only for the purpose of performing services as trustee. North Star shall restrict disclosure of the information that it obtains from the Company to those persons who require knowledge of information in order to help North Star perform its services as trustee (including, but not limited to, officers, directors, employees, and professional advisors of North Star).

MT 000544
Confidential

## COMPENSATION

8.    Acceptance Fee.  The Company shall pay to North Star the sum of $15,000 as compensation for accepting the fiduciary responsibility in connection with the Trust.  Such fees shall compensate North Star for its time and expense to review the existing documentation and setup of accounts for the Plan.

9.    Annual Fees.  In consideration for North Star's ongoing service as trustee of the Trust and as custodian of the assets of the Trust, the Company shall pay to North Star an annual fee as set forth in the  Trustee Fee Addendum (which is incorporated by reference) payable as follows:  (i) semi-annually during the first year of the engagement with the first payment due on the date hereof and the next payment due on the first day of the sixth month thereafter; and (ii) quarterly thereafter, which shall be subject to change on January 1, 2005 and from time to time thereafter, and any reasonable expenses incurred on behalf of  (such as, but not limited to, expenses relating to its financial advisor and legal counsel) or by North Star (such as, but not limited to, travel, postage, long distance telephone, and copying charges).

10.   Fees for Transactions and Extraordinary Services.  In addition to the fees due and payable to North Star under Sections 8 and 9, the Company agrees to pay additional fees to North Star for any services performed by North Star in addition to those provided for in this Agreement. Examples of additional services that may be provided by North Star from time to time include: (1) Involvement in a transaction involving the Company and/or the ESOP; (2) Involvement in providing counsel or testimony in connection with, or other involvement in, litigation relating to the ESOP; (3) Involvement in responding to hostile, contested, or unsolicited tender offers for shares of the Company's stock held by the ESOP and/or assets of the Company; and (4) Involvement in exercising fiduciary responsibilities in connection with proposed mergers, acquisitions, divestitures, public offerings, reorganizations, or similar transactions involving the Company.  The scope of such  services shall be agreed upon with the Company prior to providing such services; provided that North Star is not required to take immediate action.   Unless otherwise agreed, North Star will charge for such  services based size and complexity of a transaction or based on the time spent on a particular matter by officers or employees of North Star, charged at their normal hourly rates then in effect (currently $350.00 per hour).

11.   Reimbursement of Expenses.  The Company shall immediately reimburse North Star for all reasonable expenses incurred by North Star in connection with the performance of its services pursuant to this Agreement.   Expenses for which North Star shall be entitled to reimbursement shall include reasonable charges for fees and expenses of North Star's financial advisors and legal counsel and reasonable out-of-pocket expenses incurred by officers or employees of North Star, such as charges for travel, lodging, and private express mail deliveries.

12.   Reimbursement from the Trust.  Notwithstanding any provision herein for the payment of costs and expenses by the Company or its subsidiaries, the parties acknowledge that the Trust is and shall continue to be liable for the payment of all costs and expenses of administering the Plan, unless such costs and expenses are paid by the Company or its

-3-

MT 000545
Confidential

subsidiaries. To the extent that the Company shall fail to pay the fees due to North Star or to reimburse North Star for its expenses on a timely basis, the Company agrees that North Star shall be paid the amounts due to it from the Trust. If there is not sufficient cash in the Trust to pay the amounts due to North Star, then North Star shall have the right to offset the amounts due to it against the assets of the Trust, and North Star shall be authorized to either sell assets of the Trust, or put such shares to the Company (and the Company agrees to immediately purchase such shares for fair market value as of the date of the transaction) to the extent necessary to obtain sufficient cash to pay the amounts due to North Star.

## TAX QUALIFICATION PLAN

13.     <u>Representations and Warranties of the Company</u>.  The Company hereby represents and warrants to North Star as follows:

(a)     The Plan is qualified under Section 401(a) of the Internal Revenue Code of 1986 (the "Code") and is qualified as an "employee stock ownership plan" within the meaning of Section 4975 (e)(7) of the Code and Section 407(d)(6) of ERISA;

(b)     The Trust is exempt from taxation under Section 501(a) of the Code; and

(c)     The Company has received from the Internal Revenue Service a letter of determination that:  (a) the Plan constitutes an "employee stock ownership plan" within the meaning of Section 4975(e)(7) of the Code; (b) the Plan is qualified under Section 401(a) of the Code; and (c) the Trust is exempt from taxation under Section 501(a) of the Code.

## INDEMNIFICATION

14.     <u>Indemnification</u>.  For purposes of this Section 14, the term "Indemnitees" shall mean North Star and its officers, directors, employees, and agents.  Subject to the applicable provisions of ERISA, the Company shall indemnify the Indemnitees for any loss, cost, expense, or other damage, including reasonable attorney's fees, suffered by any of the Indemnitees resulting from or incurred with respect to any legal proceedings related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement.  The indemnification provided for in this Section 14 shall extend to:  (a) any action taken or not taken by any of the Indemnitees at the direction or request of the Plan Administrator or of any agent of the Plan Administrator; (b) any action taken or not taken by the prior trustee or trustees, and (c) all reasonable costs and expenses incurred by the Indemnitees in enforcing the indemnification provisions of this Section 14, including reasonable attorney's fees and court costs.  However, these indemnification provisions shall not apply to the extent that any loss, cost, expense, or damage with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from the gross negligence of one or more of the Indemnitees or from the willful misconduct of one or more of the Indemnitees.

DALLAS3 858718v7 53313-00006

MT 000546
Confidential

15.    Defense of Actions. (a) Notice and Assumption of Defense. If one or more of the Indemnitees receives notice of any legal proceeding with respect to which indemnification may be sought against the Company pursuant to Section 14 (a "Proceeding"), the Indemnitees shall notify the Company of the Proceeding in writing within 10 days of the commencement of the Proceeding. However, failure by the Indemnitees to so notify the Company shall not relieve the Company from any liability, except to the extent that the failure to notify the Company shall actually have prejudiced the defense of any Proceeding. The Company will be entitled to assume the defense of the Proceeding with counsel reasonably satisfactory to the Indemnitees or to otherwise participate in the Proceeding. If the Company elects to assume the defense of the Proceeding, it then shall pay all reasonable costs of defense.

(b)    Reimbursement of Expenses. The Company shall reimburse the Indemnitees for all reasonable costs of investigation, of testifying at any hearing, of responding to discovery proceedings, and of consulting with the Company or the attorneys for the Company. The Indemnitees shall have the right to employ their own counsel in any Proceeding, and the reasonable fees and expenses of the Indemnitees' counsel shall be paid by the Company as they are incurred, if any one or more of the following conditions are satisfied:

(i)    the employment by the Indemnitees of their own counsel shall be authorized by the Company;

(ii)    the Indemnitees are advised by their counsel that there may  be one or more legal defenses available to them which are different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees);

(iii)    the Company fails to assume the defense of the Proceeding and to employ counsel satisfactory to the Indemnitees within 14 days after being notified of the commencement of the Proceeding; or

(iv)    the Indemnitees shall be informed by their counsel that a conflict exists with the counsel selected by the Company.

16.    Governmental Investigations. The provisions of this Section 16 shall apply if any governmental or private commission or regulatory authority shall investigate any of the Indemnitees, or shall require any of the Indemnitees to testify at any hearing or in connection with any investigation, regarding the performance of services by the Indemnitees pursuant to this Agreement. Investigations covered by this Section 16 shall include, but shall not be limited to, investigations conducted by any agency of the United States or of the legislature of any state, or by a stock exchange or other entity having authority to investigate or regulate similar to that of a stock exchange. In the case of any investigation, the Indemnitees shall have the right to employ separate counsel to represent them, and the Company shall pay the reasonable fees and expenses of the Indemnitees' counsel as they are incurred. North Star agrees that it shall reasonably cooperate with the Company in connection with any investigation.

DALLAS3 858718v7 53313-00006

MT 000547
Confidential

17.    <u>Limitation</u>.  If a court of competent jurisdiction shall hold that any payment or award of indemnification pursuant to the terms of this Agreement shall be unavailable to any one or more of the Indemnitees from the Company for any reason other than their gross negligence or willful misconduct, the Company then shall reimburse the affected Indemnitees, as required by Section 14, but taking into account the basis for the denial of full indemnification by the court.

## MISCELLANEOUS

18.    <u>Successors and Assigns</u>.  The provisions of this Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of the Company and of North Star.  Neither termination nor completion of the engagement of North Star or of any of the Indemnitees shall affect the indemnification provisions of this Agreement, which shall remain operative and in full force and effect after the termination or completion of the engagement.  The Company shall not merge or consolidate with any other corporation or entity in a transaction after which the Company is not the surviving entity, and the Company shall not sell all or substantially all of its assets to any other person, corporation, or entity, unless the other person, corporation, or entity expressly assumes the duties and obligations of the Company as set forth in this Agreement.

19.    <u>Notice</u>.  Any notice required or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by certified or by private express mail, postage prepaid, and properly addressed as follows:

| | |
|---|---|
| To the Company: | K-M Industries Holdings Co., Inc.<br>987 Commercial Street<br>San Carlos, California  94070<br>Attention:  Steve Ferrari |
| Copies to: | Pillsbury Winthrop, LLP<br>50 Fremont Street<br>San Francisco, California  94105<br>Attention:  Cindy Schlaefer |
| To North Star: | North Star Trust Company<br>500 West Madison Street, Suite 3800<br>Chicago, IL  60661<br>Attention:  John G. Hommel, Senior Vice President<br>Trust Officer |
| Copies to: | Jenkens & Gilchrist, P.c.<br>1445 Ross Avenue, Suite 3200<br>Dallas, Texas  75202<br>Attention:  John A. Kober |

21.    <u>Partial Invalidity</u>.  If any portion of this Agreement shall be determined to be unenforceable, the remaining provisions shall remain in full force and effect.

DALLAS3 858718v7 53313-00006

MT 000548
Confidential

21. **Partial Invalidity.** If any portion of this Agreement shall be determined to be unenforceable, the remaining provisions shall remain in full force and effect.

22. **Waivers.** Either the Company or North Star may, by written notice to the other party: (a) extend the time for the performance of any of the obligations or other actions of the other party under this Agreement; or (b) waive or modify performance of any of the obligations of the other party under this Agreement. Except as provided in the preceding sentence, no action taken pursuant to this Agreement shall be deemed to constitute a waiver by that party of compliance with any of the obligations contained in this Agreement. The waiver by either party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

23. **Governing Law.** This Agreement shall be interpreted and enforced in accordance with, and governed by, the laws of the State of Illinois.

24. **Entire Agreement.** This Agreement supersedes all prior agreements (including the existing Trust Agreement, but not the Trust Agreement adopted after this engagement with respect to the duties of the Trustee unless otherwise incorporated by reference) and understandings between the parties and may not be changed or terminated orally. No attempted change, termination, or waiver of any of the provisions of this Agreement shall be binding, unless in writing and signed by the party against whom the change, termination, or waiver is sought to be enforced.

IN WITNESS WHEREOF, the Company and North Star have caused this Agreement to be signed as of the day and year first written above.

*North Star Trust Company*

By: _____

John G. Hommel, Senior Vice President
and Trust Officer


*K-M Industries Holdings Co., Inc.*

By: _____

Print Name: <u>William E. Moore</u>
Its: <u>Chairman of the Board</u>

DALLAS3 858718v7 55313-00006

MT 000549
Confidential

*Subsidiaries (Solely for Purposes of Sections 5, 12, and 14):*

**Kelly-Moore Paint Company, Inc.**

By: _William Moore_____

Print Name: __William E. Moore_____

Its: ___Chairman of the Board_____


**California Capital Insurance Company**

By: _____William Moore_____

Print Name: __William E. Moore_____

Its: ___Chairman of the Board_____

MT 000550
Confidential

**TRUSTEE FEE ADDENDUM**
**ANNUAL FEES**

| | Asset Range | Basis Points | Annual Fee |
|---|---|---|---|
| Annual Fee | | | $75,000 |
| Pass Through Voting | Each Participant and Beneficiary | $3.00 plus out-of-pocket expenses | |
| Stock Distributions (Incl. 1099) | Each Participant and Beneficiary | $50.00 | |

DALLAS3 858718v7 53313-00006

MT 000551
Confidential