# EXHIBIT 55

PILLSBURY, LEVINSON & MILLS, LLP

ATTORNEYS AT LAW

CHERYL RAE MILLS                        February 16, 1998

Ernst & Young
Mr. Jerrod Myer
55 Almaden Boulevard
San Jose, California 95113

EXHIBIT
76
Ferrari 3-26-08

Re:    Audit: Kelly-Moore Paint Company, Inc.

Ernst & Young:

        We represent Kelly-Moore Paint Company in numerous legal matters.
Kelly-Moore requested that we provide you with information concerning
pending litigation.  We will follow the same order that we address in our
February 13, 1997 correspondence to your company for the 1996 audit.

        1.    Lorentz Superfund Site.  There has not been any action on this
file for some time.  We are waiting for the EPA to settle out with the smaller
players.  Kelly-Moore's liability at the site is estimated at between $750,000 and
$1,000,000.  It's share of the clean-up costs is completely dependent on the
amount the EPA recovers from the smaller PRP's and, therefore, difficult to
assess with any precision.  We are hoping to see this matter resolved in 1998.

        2.    Salmon v. Kelly-Moore:  We are currently litigating a matter
involving a non-employee who claims he was injured unloading a Kelly-
Moore trailer.  We do not believe the plaintiff will prevail.  We have
informed Kelly-Moore that the company should prevail nine times out of ten
(over 90%).  The claimed damages for past and future wages is approximately
$600,000.  No figure has been given for pain & suffering.  The trial should be
over by February 27, 1998.

        3.    Miscellaneous.  It is our understanding that unless a matter
affects a consolidated financial statement by more than $200,000 individually,
or there are enough matters that impact more than $200,000 in the aggregate,
they need not be reported.  The remaining matters that we have for Kelly-
Moore Paint Company are small and we do not anticipate that any on its own,
or in the aggregate, will impact the consolidated financial statement by the
sum of $200,000 or more.

KMH 007204

Ernst & Young
February 16, 1998
Page 2

    4.    <u>Statements</u>:  All billings to Kelly-Moore through December 31, 1997 have been paid in full.

If you require further information, please feel free to contact us.

Sincerely,

Cheryl Rae Mills

KMH 007205

EXHIBIT 56

MINUTES OF SPECIAL MEETING OF THE BOARD OF DIRECTORS
OF
K-M INDUSTRIES HOLDING CO., INC.
HELD OCTOBER 13, 1998

REDACTED

KMH 007557
Confidential

REDACTED

KMH 007558
Confidential

## EMPLOYER CONSENT

REDACTED

KMH 007559
Confidential

Amendment No. 2 to the
Kelly-Moore Paint Company
Employee Retirement Savings Plan

**REDACTED**

KMH 007560
Confidential

# EXHIBIT 57

REDACTED

MT 000292
Confidential

# EXHIBIT 58

# PILLSBURY, LEVINSON & MILLS

### ATTORNEYS AT LAW

## FACSIMILE TRANSMITTAL

REDACTED

KMH_ESI00006668
Confidential

12/11/98  FRI 12:27 FAX 415 4( 4816    PILLSBURY LEVINSON   LS    002

# PILLSBURY, LEVINSON & MILLS, LLP

### ATTORNEYS AT LAW



KMH_ESI00006668.002
Confidential

12/11/98  FRI 12:28 FAX 415 4   4816      PILLSBURY LEVINSON    LS                    ☒003

REDACTED

KMH_ESI00006668.003
Confidential



KMH_ESI00006668.004
Confidential

12/11/98  FRI 12:30 FAX 415 4;  4816      PILLSBURY LEVINSON & 'LS                    Ø005

REDACTED

KMH_ESI00006668.005
Confidential



KMH_ESI00006668.006
Confidential

# EXHIBIT 59

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


THOMAS FERNANDEZ et al.,        )
                                )
            Plaintiffs,         )
                                )
      vs.                       )  No. C 06-07339 MJJ
                                )
K-M INDUSTRIES HOLDING CO.,     )
INC, et al.                     )
                                )
            Defendants.         )
_____)




VIDEOTAPED DEPOSITION OF KENNETH A. BODENSTEIN

Los Angeles, California

Friday, April 11, 2008




Reported by:
Marceline F. Noble
CSR No. 3024
JOB No. 927672

0a718cfa-6ba0-48a5-a901-7e1f947dee6d

Page 53

         1          MS. WASOW:  Yes.

         2          THE WITNESS:  As I just said, concerning the

         3   insurance company, no.

         4   BY MS. WASOW:

11:48    5      Q   Do you remember discussing anything in your

         6   due diligence meetings in 1998 about pending

         7   litigation against the paint company?

         8      A   I -- we didn't hear anything about any

         9   litigation of a paint company.

11:49   10          We didn't -- in our due diligence, we didn't

        11   really talk about the paint company.

        12      Q   Is that true for years after 1998 as well?

        13          MR. PALMER:  Object to the form.

        14          THE WITNESS:  I -- definitely through

11:49   15   2000 -- up to 2000, we -- we -- in 2000 is when -- to

        16   the best of my recollection is when we first heard

        17   about the asbestos litigation of the paint company.

        18   BY MS. WASOW:

        19      Q   All right.  Who did you discuss asbestos

11:49   20   litigation against the paint company with in 2000?

        21      A   I -- I said we didn't in 2000.  We didn't

        22   discuss that.

        23      Q   I'm sorry.

        24          When did you first discuss asbestos

11:50   25   litigation against the paint company?

0a718cfa-6ba0-48a5-a901-7e1f947dee6d

Page 54

1          A    To the -- my best recollection was 2002.

2          Q    Okay.  I think you testified that you first

3    heard about asbestos litigation against the company

4    in 2000; is that incorrect?

11:50   5          A    That's incorrect.

6          Q    Okay.

7          A    I said 2002.

8          Q    All right.  Sorry.  My mistake.

9               In 2002, how did you hear about asbestos

11:50  10    litigation against Kelly-Moore Paint?

11          A    During our due diligence talk.

12          Q    Okay.  Who was that meeting with?

13          A    Well, it was usually at the time, if

14    Ed Mines was still there, Ed Mines and Pete Cazzolla.

11:50  15          Q    Do you remember hearing about asbestos

16    litigation in 2002 in a face-to-face meeting with

17    Mr. Mines and Mr. Cazzolla?

18          A    Yes.

19          Q    Was anyone else present at that meeting?

11:51  20          A    Lisa Arias.

21          Q    Okay.

22          A    And again, it could be Steve Moon, if he was

23    on the team at the time or he came on in 2003.

24    Again, I don't remember when he came on the team.

11:51  25          Q    Okay.  Anyone else?

Page 57

1            THE WITNESS:  We're talking about in 2002?

2    BY MS. WASOW:

3        Q    I -- I'm asking about the conversation --

4        A    Yeah.

11:54   5        Q    -- that you had --

6        A    Right.  No.  No.

7        Q    Okay.

8        A    I don't think we got into details, but that

9    it was -- that there was -- was a problem, and I

11:54   10   think what we requested, if I'm not mistaken, that we

11   asked what the auditors of Kelly-Moore were saying.

12   That was a focus of mine, I know.  That's --

13       Q    Okay.

14       A    We were valuing the insurance company and --

11:54   15   and -- at the time.  That was our first focus.  Only

16   focus was the -- the tracking stock of the -- of the

17   insurance company.

18       Q    So you asked what the auditors of

19   Kelly-Moore were saying?

11:54   20       A    Somewhere in 2000 on, we -- I would -- oh, I

21   know.  I wanted to know what the auditors -- what the

22   statement -- what the audited statement said, what

23   the auditors were saying in their notes about the --

24   the -- the lawsuits.

11:55   25       Q    I'm sorry.  You were finished?

0a718cfa-6ba0-48a5-a901-7e1f947dee6d

Page 58

1         A    Yes.

2         Q    You said sometime in 2000 on.  Do you mean

3    you want --

4         A    You keep saying 2000 on.  It's 2002.

11:55    5    Q    Okay.

6         A    That's the second time.

7         Q    Okay.  Just to explain it, it is showing up

8    on the transcript as 2000, so I'm just asking --

9         A    Okay.

11:55   10    Q    -- to clarify for the record.

11        A    All right.  I'm sorry.

12        Q    So -- I'm sorry.  Now I'm a little bit

13   confused.

14             Are you -- are you saying that in 2002, in

11:55   15   your discussion with Ed Mines and Pete Cazzolla, you

16   asked what the paint company's auditors were saying

17   about the asbestos litigation in 2002?

18        A    I can't tell you whether it was 2002 or

19   2003.  But at one point that was my focus.

11:56   20   Q    So do you recall whether you talked about

21   the paint company's auditors in the meeting that you

22   were referring to in 2002?

23        A    No.  I -- I can't say whether it was at that

24   time, but -- once we started look at -- looking at

11:56   25   the asbestos of when we -- I say -- in terms of our

Page 59

1    valuation of CIG, I know I -- I had asked, whether it

2    was Lisa or whoever was working on the assignment,

3    that what we should see is what the auditors of

4    Kelly-Moore were saying in their -- their notes in

11:56    5    the financial statements.

6        Q    Okay.  But you don't recall specifically

7    when you asked for those -- those audit --

8        A    Exactly.

9        Q    -- reports?

11:56    10        A    As I sit here, I don't remember.

11        Q    Okay.  In the conversation that we've been

12    discussing in 2002 with Peter Cazzola and Ed Mines,

13    what questions did you ask about Kelly-Moore's

14    asbestos liability?

11:57    15        A    It wasn't -- I don't think I was doing a

16    grilling here.  It came up and -- and they -- they

17    told us that there's -- there's a significant

18    litigation exposure there.  And I said, I don't think

19    it was an extended conversation, and I know I

11:57    20    would -- as I sit here, reflecting back then, would

21    say, well, what does -- what does the Kelly -- are

22    they still getting an audited statement?  What does

23    the statement say?

24        Q    Okay.  Were you provided with any

11:57    25    information in that conversation about Kelly-Moore's

1    about the valuation?

2         A    Yes.

3         Q    And when did you have discussions with

4    Mr. Mines about the valuation?

02:05  5         A    I couldn't tell you what -- after we gave

6    him our report, I know Mr. Mines called.

7         Q    What did he say when he called?

8         A    That Mr. Moore wanted to talk to us.

9         Q    And did you talk to Mr. Moore at that point?

02:05  10        A    Yes.

11        Q    Did you ask Mr. Mines why Mr. Moore wanted

12   to talk to you?

13        A    Well, he wanted to talk about our

14   conclusions.

02:05  15        Q    And do you remember when you talked to

16   Mr. Moore?

17        A    Soon after that.  I mean, I can't tell you

18   datewise.

19        Q    And was that a phone conversation?

02:06  20        A    Yes.

21        Q    Was anyone else on the call other than you

22   and Mr. Moore?

23        A    I would assume if -- again, I -- '99

24   probably Casey Sakamoto was still working on -- was

02:06  25   working here and working with me, he was part of that

0a718cfa-6ba0-48a5-a901-7e1f947dee6d

Page 125

1       conversation.

2               Q    And what did Mr. Moore say?

3               A    He wanted to know why we came up with

4       55 million.

02:06   5               Q    Did he ask you why you hadn't come up with a

6       higher number?

7               A    I don't think he ever said it in that way,

8       but it was a clear indication he was unsatisfied with

9       the $55 million number.

02:06   10              Q    And what did you say to Mr. Moore in

11      response?

12              A    I -- I just sat -- I just led him through

13      our -- our analysis.

14              Q    Um-hmm.

02:07   15              And was it your understanding that he was

16      unsatisfied with the valuation conclusion because it

17      was too low?

18              A    Well, I would -- I would -- I would think

19      so, yes.

02:07   20              Q    And how did he respond after you led him

21      through your analysis?

22              A    I can't answer that.  I mean, as far as what

23      he responded to me, he just accepted our -- my

24      conversation and I think politely said good-bye.

02:07   25              Q    All right.  As you were talking about it,

1    ever did speak to Mr. Cazzolla after issuing the

2    reports.

3         Q    Okay.  After your conversation with

4    Mr. Moore, did Mr. Mines tell you that CIG wanted to

02:10    5    cancel Duff & Phelps' valuation for June 30th, 1999?

6         A    No.

7         Q    After your conversation with Mr. Moore, did

8    Mr. Cazzolla tell you that CIG wanted to cancel

9    Duff & Phelps' valuation for June 30th, 1999?

02:10    10        A    No.

11        Q    Did you ever consider increasing your

12    valuation conclusion in nineteen ninety- -- as of

13    June 30th, 1999?

14        A    As I sit here, no.

02:10    15        Q    Did you -- did you feel that you were

16    already at the high end of the range of possible

17    values for CIG as of June 30th, 1999?

18             MR. PALMER:  Object to the form.

19             THE WITNESS:  I -- I never had to -- I mean,

02:11    20    I didn't go through that process.  So I don't -- I

21    don't know what I can say from back there.  That was

22    our value, we thought that was a reasonable value,

23    that was the fair value and --

24    BY MS. WASOW:

02:11    25        Q    Okay.

0a718cfa-6ba0-48a5-a901-7e1f947dee6d

1  then a decision where in that range we think that we

2  should value this company.

3      Q    And you did decide that the concluded value

4  was at the higher end --

02:12  5      A    Yes.

6      Q    -- of the range; is that correct?

7      A    That's correct.

8      Q    Are you aware that CIG retained another

9  valuator after receiving your 6/30/99 report?

02:12  10      A    No.

11      Q    So you have no knowledge of

12  Columbia Financial Advisors having evaluated CIG in

13  1999?

14      A    No.

02:13  15      Q    You never received a copy of a valuation

16  report by Columbia Financial Advisors?

17      A    No.

18      Q    You were never asked to send any of your

19  working papers to Columbia --

02:13  20      A    No.

21      Q    -- Financial Advisors?

22      You never talked to anyone from Columbia

23  Financial Advisors about CIG?

24      A    No.

02:13  25      Q    Okay.  How long does a valuation report

0a718cfa-6ba0-48a5-a901-7e1f947dee6d

# EXHIBIT 60

# PILLSBURY, LEVINSON & MILLS, LLP

### ATTORNEYS AT LAW

CHERYL RAE MILLS                          February 13, 1997

Ernst & Young
55 Almaden Boulevard
San Jose, California 95113



CONFIDENTIAL

EY000042

# EXHIBIT 61

RECEIVED
FEB 1 0 1999
V.P./SEC'Y

# MILLS & LARSON
### ATTORNEYS AT LAW

CHERYL RAE MILLS

February 8, 1999

*Via Facsimile (408) 947-4975 & U.S. Mail*

Ernst & Young, LLP
55 Almaden Boulevard, Suite 800
San Jose, California 95113

Attention:   Mr. Jerrod Myer, Audit Department

Re:   *Audit: Kelly-Moore Paint Company, Inc.*

> **EXHIBIT**
> *128*
> Cristiano   4-08-08

Ernst & Young:

   We represent Kelly-Moore Paint Company, Inc. in numerous legal matters. Kelly-Moore requested that we provide you with information concerning the pending litigation. We will follow the same order that we addressed in our February 16, 1998 correspondence to your company for the 1997 audit.

   1.   <u>Lorentz Superfund Site</u>. There has not been any action on this file for some time. The EPA has settled out with numerous smaller players. Kelly-Moore's liability at the site is estimated at $1,000,000. It's share of the clean-up costs is completely dependent on the amount the EPA recovers from the smaller PRP's and, therefore, difficult to assess with any precision. We are hoping to see this matter resolved in 1999.

   2.   <u>Salmon v. Kelly-Moore</u>: Kelly-Moore won this case - a defense verdict.

   3.   <u>Miscellaneous</u>. It is our understanding that unless a matter affects a consolidated financial statement by more than $200,000 individually, or there are enough matters that impact more than $200,000 in the aggregate, they need not be reported. The remaining matters that we have for Kelly-Moore Paint Company, Inc. are small and we do not anticipate that any

*CC: mills Jell*

1333 NORTH CALIFORNIA BOULEVARD · SUITE 190 · WALNUT CREEK · CALIFORNIA 94596
TELEPHONE (925) 937-3363 · FACSIMILE (925) 943-1164

KMH 007206

Ernst & Young
February 8, 1998
Page 2

matters on its own, or in the aggregate, will impact the consolidated financial statement by the sum of $200,000 or more.

    4.   <u>Statements</u>:  All billings to Kelly-Moore through December 31, 1998 have been paid in full.

If you require further information, please feel free to contact us.

Sincerely,

Cheryl Rae Mills

CRM/co

cc:   Mr. Steven Ferrari
    (via facsimile)

MILLS & LARSON

ATTORNEYS AT LAW

KMH 007207

# EXHIBIT 62



# KELLY·MOORE PAINT COMPANY, INC.

*"Quality is Economy"* · 987 Commercial Street · P.O. Box 3016 · San Carlos, California 94070 · (415) 592-8337

April 4, 1997

Ernst & Young L.L.P.
55 Almaden Boulevard
San Jose, California 94113



CONFIDENTIAL

EY000044



CONFIDENTIAL

EY000045

REDACTED

CONFIDENTIAL

EY000046



CONFIDENTIAL

EY000047

REDACTED

CONFIDENTIAL

EY000048

REDACTED

CONFIDENTIAL

EY000049

# EXHIBIT 63

KELLY·MOORE PAINT COMPANY. INC.

"Quality is Economy"    987 Commercial Street • P.O. Box 3016 • San Carlos, California 94070 • (415) 592-8337

March 27, 1998

Ernst & Young LLP
55 Almaden Boulevard
San Jose, CA  95113



KMH 011009
Confidential

REDACTED

KMH 011010
Confidential

REDACTED

KMH 011011
Confidential

REDACTED

KMH 011012
Confidential

REDACTED

KMH 011013
Confidential

REDACTED

KMH 011014
Confidential

# EXHIBIT 64

 KELLY·MOORE PAINT COMPANY. INC.

"Quality is Economy"    987 Commercial Street • P.O. Box 3016 • San Carlos, California 94070 • (650) 592-8337

February 12, 1999

Ernst & Young LLP
55 Almaden Boulevard
San Jose, California 95113



KMH 011022
Confidential

REDACTED

KMH 011023
Confidential

REDACTED

KMH 011024
Confidential

REDACTED

KMH 011025
Confidential

REDACTED

KMH 011026
Confidential

REDACTED

KMH 011027
Confidential

REDACTED

KMH 011028
Confidential

# EXHIBIT 65

A7.1



**KELLY-MOORE PAINT COMPANY, INC.**

*C/Bass 3/20/00*
*W 3/20/00*

"Quality is Economy"    987 Commercial Street ▫ P.O. Box 3016 ▫ San Carlos, California 94070 ▫ (650) 592-8337

February 11, 2000


Ernst & Young LLP
1331 North California Blvd., Suite 200
Walnut Creek, California  94596


REDACTED

CONFIDENTIAL

EY000070

REDACTED

ONFIDENTIAL

EY000071

REDACTED

CONFIDENTIAL

EY000072

REDACTED

CONFIDENTIAL

EY000073

REDACTED

CONFIDENTIAL

EY000074



CONFIDENTIAL

EY000075



CONFIDENTIAL

EY000076



CONFIDENTIAL

EY000077

# EXHIBIT 66

# CONFIDENTIAL

REDACTED

KMH 000432

# CONFIDENTIAL

Kelly-Moore Paint Company, Inc.

Consolidated Financial Statements

Years ended December 31, 2000 and 1999

..................................

**REDACTED**

KMH 000433

**ΞII ERNST & YOUNG LLP**

- 1331 North California Blvd.
  Suite 200
  Walnut Creek, California 94596

- Phone: 925 977 2900
  Fax:   925 977 2994

# CONFIDENTIAL

REDACTED

KMH 000434

**CONFIDENTIAL**

Kelly-Moore Paint Company, Inc.
Consolidated Balance Sheets
*(In thousands, except share data)*

REDACTED

KMH 000435

CONFIDENTIAL

Kelly-Moore Paint Company, Inc.

Consolidated Statements of Income
*(In thousands, except share data)*

**REDACTED**

KMH 000436

**CONFIDENTIAL**

Kelly-Moore Paint Company, Inc.

Consolidated Statements of Shareholder's Equity
*(In thousands, except share data)*

REDACTED

KMH 000437

CONFIDENTIAL

Kelly-Moore Paint Company, Inc.

Consolidated Statements of Cash Flows
*(In thousands)*

**REDACTED**

KMH 000438

**CONFIDENTIAL**

Kelly-Moore Paint Company, Inc.

Notes to Consolidated Financial Statements

December 31, 2000

**REDACTED**

KMH 000439

CONFIDENTIAL

Kelly-Moore Paint Company, Inc.

Notes to Consolidated Financial Statements (continued)

REDACTED

KMH 000440

**CONFIDENTIAL**

Kelly-Moore Paint Company, Inc.

Notes to Consolidated Financial Statements (continued)

REDACTED

KMH 000441

**CONFIDENTIAL**

Kelly-Moore Paint Company, Inc.

Notes to Consolidated Financial Statements (continued)

REDACTED

KMH 000442

**CONFIDENTIAL**

Kelly-Moore Paint Company, Inc.

Notes to Consolidated Financial Statements (continued)

**REDACTED**

KMH 000443

# CONFIDENTIAL

Kelly-Moore Paint Company, Inc.

Notes to Consolidated Financial Statements (continued)

REDACTED

KMH 000444

# CONFIDENTIAL

Kelly-Moore Paint Company, Inc.

Notes to Consolidated Financial Statements (continued)

REDACTED

KMH 000445

# CONFIDENTIAL

Kelly-Moore Paint Company, Inc.

Notes to Consolidated Financial Statements (continued)

REDACTED

KMH 000446

# CONFIDENTIAL

Kelly-Moore Paint Company, Inc.

Notes to Consolidated Financial Statements (continued)

**REDACTED**

KMH 000447

# CONFIDENTIAL

Kelly-Moore Paint Company, Inc.

Notes to Consolidated Financial Statements (continued)

REDACTED

KMH 000448

CONFIDENTIAL

Kelly-Moore Paint Company, Inc.

Notes to Consolidated Financial Statements (continued)

REDACTED

**CONFIDENTIAL**

Kelly-Moore Paint Company, Inc.

Notes to Consolidated Financial Statements (continued)

**REDACTED**

KMH 000450

# CONFIDENTIAL

Kelly-Moore Paint Company, Inc.

Notes to Consolidated Financial Statements (continued)

**REDACTED**

KMH 000451