HENNIGAN, BENNETT & DORMAN LLP
J. Michael Hennigan (SBN 59491) hennigan@hbdlawyers.com
Robert L. Palmer (SBN 181462) palmer@hbdlawyers.com
Lauren A. Smith (SBN 94343) smithl@hbdlawyers.com
Allison Chock (SBN 206015) chocka@hbdlawyers.com
Caroline Walters (SBN 239054) waltersc@hbdlawyers.com
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200, Facsimile: (213) 694-1234
Attorneys for Defendants William E. and Desiree B. Moore
Revocable Trust; Trustees of The William E. and Desiree B. Moore
Revocable Trust; Desiree B. Moore Revocable Trust;
William E. Moore Marital Trust; William E. Moore
Generation-Skipping Trust; and Desiree Moore

LOVITT & HANNAN, INC.
Ronald Lovitt, (SBN 40921) rl@lh-sf.com
J. Thomas Hannan (SBN 39140) jth@lh-sf.com
Henry I. Bornstein (SBN 75885) hib@lh-sf.com
Terence F. Young (SBN 69943) tfylaw@earthlink.net
900 Front Street, Suite 300
San Francisco, California 94111
Telephone: (415) 362-8769, Facsimile: (415) 362-7528
Attorneys for Defendants K-M Industries Holding Co. Inc.;
K-M Industries Holding Co. Inc. ESOP Plan Committee; and
CIG ESOP Plan Committee

MORGAN, LEWIS & BOCKIUS LLP
Nicole A. Diller (SBN 154842)
Donald P. Sullivan (SBN 191080)
Andrew C. Sullivan (SBN 226902)
One Market, Spear Street Tower
San Francisco, California 94105
Telephone: (415) 442-1000, Facsimile: (415) 442-1001
Attorneys for Defendants North Star Trust Company

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO AND OAKLAND DIVISION

| | |
|---|---|
| THOMAS FERNANDEZ, LORA SMITH and TOSHA THOMAS, individually and on behalf of a class of all other persons similarly situated,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>K-M INDUSTRIES HOLDING CO., INC.; K-M INDUSTRIES HOLDING CO., INC. ESOP PLAN COMMITTEE; WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; TRUSTEES OF THE WILLIAM E. AND | Case No. C 06-07339 CW<br><br>**(REDACTED) COMBINED REPLY IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Date:       July 31, 2008<br>Time:      2:00 p.m.<br>Ctrm:      2, 4th Floor<br>Judge:    Hon. Claudia Wilken |

1  DESIREE B. MOORE REVOCABLE TRUST;     )
   CIG ESOP PLAN COMMITTEE; NORTH STAR   )
2  TRUST COMPANY; DESIREE B. MOORE       )
   REVOCABLE TRUST; WILLIAM E. MOORE     )
3  MARITAL TRUST; WILLIAM E. MOORE       )
   GENERATION-SKIPPING TRUST; and        )
4  DESIREE MOORE, BOTH IN HER            )
   INDIVIDUAL CAPACITY AND AS TRUSTEE    )
5  OF THE WILLIAM E AND DESIREE B.       )
   MOORE REVOCABLE TRUST'S SUCCESSOR     )
6  TRUSTS NAMED ABOVE,                   )
                                         )
7           Defendants.                  )
                                         )
8  _____   )

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................ 1

II. PLAINTIFFS FAIL TO CITE SPECIFIC EVIDENCE OF POST-
    TRANSACTION FRAUDULENT ACTIVITY OR CONCEALMENT BY
    ANY DEFENDANT .................................................................................. 2

  A.  Plaintiffs Fail to Meet the Legal Standard for Section 1113's "Fraud
      or Concealment" Exception.................................................................. 2

    1.  Plaintiffs Offer No Evidence Of Any Affirmative Steps
        Taken To Hide The Alleged Initial Breaches............................. 3

    2.  Plaintiffs Offer No Evidence Of Any Separate Steps
        Defendants Took To Hide The Alleged Initial Breaches. .......... 4

    3.  The Alleged Failure to Disclose Asbestos Information to the
        Company's Auditors Does Not Prove Fraud or Concealment. ... 6

    4.  Plaintiffs Have No Evidence That Any Nondisclosures of
        Asbestos Information By Defendants Were Devised to
        Conceal Anything. ..................................................................... 7

  B.  Plaintiffs' Non-Compliance With Rule 9(b) Provides An Additional
      Basis For Granting Summary Judgment On Plaintiffs' Claims. ........... 8

III. PLAINTIFFS PRODUCE NO EVIDENCE OF FRAUDULENT
     CONCEALMENT OF NON-ASBESTOS CLAIMS, WHICH ARE
     THEREFORE TIME-BARRED ............................................................... 9

IV. SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR OF
    NORTH STAR, AS PLAINTIFFS' CLAIMS AGAINST IT ARE TIME-
    BARRED ................................................................................................. 10

  A.  The Complaint Alleges Only Two Claims Against North Star, Both
      of Which Relate to the 1998 and 1999 Transactions............................. 10

    1.  The Appointment of a Successor Trustee Does Not Extend
        the Period of Repose Embodied in the Six-Year Statute.......... 11

    2.  As the Complaint Does Not Allege a Claim Against North
        Star for Failure to Investigate and Remedy the Dated
        Transactions, Plaintiffs Needed to Timely Seek Leave to
        Assert Such a Claim. ................................................................ 11

1

**TABLE OF CONTENTS (CONT.)**

2

**Page**

B.    In Any Event, Plaintiffs Had Actual Knowledge of North Star's
      Appointment More Than Three Years Before Filing Their Original
      Complaint. .........................................................................................................12

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Case No. C 06-07339 CW

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aikens v. U.S. Transformer Inc.*
  No. CV-07-138-E-EJL-LMB, 2008 U.S. Dist. LEXIS 19285, *35-36 (D. Idaho March 11, 2008)
  ................................................................................................................................................................10

*AmerisourceBergen Corp. v. Dialysist West, Inc.*
  465 F.3d 946 (9th Cir. 2006) ..................................................................................................................12

*AMEX v. Mopex, Inc.*
  215 F.R.D. 87 (S.D.N.Y. 2002) ................................................................................................................9

*Armbruster v. K-H Corp.*
  206 F. Supp. 2d 870 (E.D. Mich. 2002) ....................................................................................................5

*Barker v. American Mobil Power Corp.*
  64 F.3d 1397 (9th Cir. 1995) ....................................................................................................................2

*Blanton* ................................................................................................................................................13, 14

*Blanton v. Anzalone*
  760 F.2d 989 (9th Cir. 1985) ..................................................................................................................13

*Blanton,*
  760 F.2d at 992 ......................................................................................................................................13

*Brock v. Nellis*
  809 F.2d 753 (11th Cir. 1987) ................................................................................................................13

*California Serv. Employees Health and Welfare Trust Fund v. G.C. Theatre Corp.*
  No. C97-1602 FMS, 1998 U.S. Dist. LEXIS 8890, *14-15 (N.D. Cal. June 15, 1998) ..............5

*Center for Bio-Ethical Reform, Inc. v. City and County of Honolulu*
  345 F. Supp. 2d 1123 (D. Haw. 2004) ....................................................................................................12

*Conley v. Gibson*
  355 U.S. 41 (1957) ..................................................................................................................................12

*Dayco Corp. v. Goodyear Tire & Rubber Co.*
  523 F.2d 389 (6th Cir. 1975) ....................................................................................................................4

*Edes*
  417 F.3d at 142 ......................................................................................................................................13

*Edes v. Verizon Communications, Inc.*
  417 F.3d 133 (1st Cir. 2005) ..................................................................................................................13

iii

**TABLE OF AUTHORITIES (CONT.)**

<u>Page</u>

*Evanson v. Price*
  2:06-cv-0795-GEB-KJM, 2006 U.S. Dist. LEXIS 75029 (E.D. Cal. Sept. 29, 2006) ................. 3

*Fiene v. V & J Foods, Inc.*
  962 F. Supp. 1172 (E.D. Wis. 1997) ........................................................................ 8

*Hemphill v. Personal Rep. of the Estate of James J. Ryskamp, Jr.*
  No. CV-F-05-1319 OWW/SMS, 2006 U.S. Dist. LEXIS 47929 (E.D. Cal. July 5, 2006) ......... 10

*Holgate v. Baldwin*
  425 F.3d 671 (9th Cir. 2005) ................................................................................ 12

*Howard*
  1990 U.S. Dist. LEXIS 7704, *30 .......................................................................... 5

*Howard Electric, Inc. v. American Bank & Trust Co.*
  No. C-88-20399 RFP, 1990 U.S. Dist. LEXIS 7704, *29 (N.D. Cal. April 2, 1990) ................. 3

*Hunt v. Magnell*
  758 F. Supp. 1292 (D. Minn. 1991) ....................................................................... 10

*Ideal Electric Co. v. Flowserve Corp.*
  357 F. Supp. 2d 1248 (D. Nev. 2005) .................................................................... 12

*Jeffries*
  172 F. Supp. 2d at 392 ........................................................................................ 14

*Jeffries v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Electrical*
  *Industry*
  172 F.Supp.2d 389 (S.D.N.Y. 2001) ..................................................................... 14

*Larson v. Northrop Corp.*
  21 F.3d 1164 (1994) ........................................................................................... 3

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*
  507 U.S. 163 (1993) ........................................................................................... 12

*Martin v. Consultants & Administrators, Inc.*
  966 F.2d 1078 (7th Cir. 1992) ............................................................................. 13

*Martin,*
  966 F.2d at 1086 ............................................................................................... 14

*McKeown v. Pacific Bell Directory*
  No. C-97-0427 MHB, 1999 U.S. Dist. LEXIS 2281, *15-16 (N.D. Cal. Feb. 26, 1999) ............. 5

*O'Conner v. Boeing North Am., Inc.*

iv

# TABLE OF AUTHORITIES (CONT.)

**Page**

92 F. Supp. 2d 1026 (C.D. Cal. 2000) ................................................................................... 4

*Oechsner v. Connell Ltd. P'ship*
283 F. Supp. 2d 926 (S.D.N.Y. 2003) ................................................................................ 10

*Payne v. Ken Diepholz Ford Lincoln Mercury, Inc.*
No. 02C 1329, 2004 WL 40631, *8 (January 5, 2004 N.D. Ill.) ....................................... 8

*Phillips v. Alaska Hotel and Restaurant Employees Pension Fund*
944 F.2d 509 (9th Cir. 1991) ............................................................................................ 11

*Pocahontas Supreme Coal Co.*
828 F.2d at 218 ................................................................................................................... 5

*Pocahontas Supreme Coal Co. v. Bethlehem Steel*
No. 84-5380, 1986 U.S. Dist. LEXIS 25591, *27 (S.D. W. Va. May 13, 1986) ............... 4

*Ranke* ................................................................................................................................. 3

*Ranke v. Sanofi-Synthelabo Inc.*
436 F.3d 197 (3rd Cir. 2006) .............................................................................................. 2

*Rush*
83 F.3d at 896 ............................................................................................................ 13, 14

*Rush v. Martin Petersen Co., Inc.*
83 F.3d 894 (7th Cir. 1996) .............................................................................................. 13

*Shaefer v. Arkansas Medical Soc.*
853 F.2d 1487 (8th Cir. 1988) ............................................................................................ 3

*Shelak v. White Motor Co.*
581 F.2d 1155 (5th Cir. 1978) ............................................................................................ 9

*United States Klans of America v. McGovern*
621 F.2d 152 (5th Cir. 1980) .............................................................................................. 4

*Waller* ............................................................................................................................... 13

*Waller v. Blue Cross of California*
32 F.3d 1337 (9th Cir. 1994) ............................................................................................ 13

*Wright v. Heyne*
349 F. 3d 321 (6th Cir. 2003) ........................................................................................... 13

**Statutes**

(REDACTED) COMBINED REPLY IN SUPPORT OF
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

1

**TABLE OF AUTHORITIES (CONT.)**

2

<u>Page</u>

3

ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3)........................................................................11

4

ERISA § 409(b), 29 U.S.C. § 1109 (b)...............................................................................11

5

ERISA § 413, 29 U.S.C. § 1113(2) .....................................................................................14

6

Fed. R. Civ. Proc. 15(a)(2) ..................................................................................................12

7

Fed. R. Civ. Proc. 8(a) ........................................................................................................12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(REDACTED) COMBINED REPLY IN SUPPORT OF
                                                                DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

# I.    INTRODUCTION

Plaintiffs concede that their claims against the KMH and Moore Trust Defendants are based on breaches of fiduciary duty that occurred in 1998 and 1999, and are barred by the six-year statute of repose if they cannot qualify for Section 1113's "fraud or concealment" exception.[1] Plaintiffs attempt to rescue their claims by arguing—for the first time in this case—that Defendants' failures to disclose asbestos liability to valuators, auditors and participants constituted "concealment." Section 1113's "fraud or concealment" exception requires proof that Defendants took affirmative steps to hide their alleged breach. Plaintiffs identify no such affirmative steps, instead pointing to nondisclosures of asbestos information. Such nondisclosures do not rise to the level of "fraud or concealment" required under the statute.[2] In addition, as discussed in the KMH Defendants' separate reply memorandum, the evidence establishes that the Company made disclosures concerning asbestos when that information became relevant, negating any claim of concealment.

Moreover, the asbestos litigation against the Company was a matter of public record. The economic implications of that litigation for the Company, on the other hand, was a matter of subjective opinion. The Company retained Cheryl Mills, now a Contra Costa County Superior Court Judge, to coordinate its response to asbestos litigation and analyze its insurance coverage for the litigation. Plaintiffs acknowledge that immediately prior to the first ESOP transaction in '98, the Company ███████████████████████████████████████████████████████████ ███████████████████████████ (Wasow Decl. Ex. 54.) As there can be no "concealment" of public information, Plaintiffs' concealment theory is thus dependent on evidence showing ███ ███████████████████████████████████████████████████ ██████ Plaintiffs offer no such evidence.

Defendant North Star also is entitled to summary judgment in this case because the only two claims for relief asserted by Plaintiffs in this lawsuit are barred by the six-year statute of repose.

---

[1] All Section references are to sections of Title 29 of the United States Code unless otherwise noted.

[2] Nor are such nondisclosures actionable as breaches of fiduciary duty, but that issue is not relevant to this Reply, which deals solely with Plaintiffs' Section 1113 concealment contentions.

1  Plaintiffs attempt to save their claims against North Star by asserting that the Complaint actually

2  alleges a separate claim against North Star under Section 1105 for failure to correct the breaches of

3  co-fiduciaries.[3] Plaintiffs' argument fails because the Complaint does not assert a Section 1105

4  claim against North Star and Plaintiffs have failed to timely seek leave to amend the Complaint.

5  Moreover, even if the Court were to find that the Complaint adequately alleges a Section 1105 claim

6  against North Star, North Star is still entitled to summary judgment because Plaintiffs had actual

7  knowledge of North Star's appointment as successor trustee and its purported failure to remedy the

8  alleged breaches of its predecessor fiduciaries more than three years before Plaintiffs filed this

9  action on November 29, 2006. Thus, a Section 1105 claim against North Star is barred by Section

10  1113's three-year limitations period.

11  **II.    PLAINTIFFS FAIL TO CITE SPECIFIC EVIDENCE OF POST-TRANSACTION
          FRAUDULENT ACTIVITY OR CONCEALMENT BY ANY DEFENDANT**
12

13      **A.    Plaintiffs Fail to Meet the Legal Standard for Section 1113's "Fraud or
              Concealment" Exception.**

14      Plaintiffs concede their claims aimed at all defendants except North Star are barred by the

15  six-year statute of repose, absent fraudulent concealment. (Opp. pp. 27-28.) So the only question is

16  whether Plaintiffs have shown sufficient facts, as to each defendant other than North Star, to

17  demonstrate fraudulent concealment. *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1401-

18  02 (9th Cir. 1995) (requiring proof that "the defendant himself has taken steps to hide his breach");

19  *see also Ranke v. Sanofi-Synthelabo Inc.,* 436 F.3d 197, 204 (3rd Cir. 2006) (the exception requires

20  "evidence that the defendant took affirmative steps to hide its breach of fiduciary duty").[4] As

21  discussed below, in order to avoid the statute of repose by fraudulent concealment, Plaintiffs must

22  demonstrate (1) affirmative steps—not mere failures to disclose—taken to hide the breach or

23  _____

24  [3] Plaintiffs' Second Amended Complaint (Corrected) is referred to as the "Complaint" or "SAC."

25  [4] The Second Circuit applies the concealment exception if a fiduciary either engaged in acts to
    hinder the discovery of a breach of fiduciary duty *or* breached its duty by making a knowing
26  misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his
    detriment. *See Caputo v. Pfizer, Inc.,* 267 F.3d 181, 190 (2nd Cir. 2001). The Ninth Circuit has
27  rejected this approach, however, instead adopting the majority position. *See Barker*, 64 F.3d at 1402;
    *Radiology Center, S.C. v. Stifel, Nicolaus & Co*, 919 F.2d 1216, 1220 (7th Cir. 1990).

28

Case No. C 06-07339 CW                    (REDACTED) COMBINED REPLY IN SUPPORT OF
                                          DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

1  prevent inquiry, which steps are (2) separate from the alleged initial breach.[5]

### 1. Plaintiffs Offer No Evidence Of Any Affirmative Steps Taken To Hide The Alleged Initial Breaches.

The mere failure to disclose information is not an "affirmative step" sufficient to establish concealment. *Ranke*, 436 F.3d at 204 (failures to notify beneficiaries of changes in benefits calculations were not "affirmative steps" sufficient to bring the "fraud or concealment" exception into play); *Shaefer v. Arkansas Medical Soc.*, 853 F.2d 1487, 1491 (8th Cir. 1988) (failure to investigate and warn about benefits provisions "does not rise to the level of active concealment, which is more than merely a failure to disclose"); *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987) (failure to disclose certain reports did not constitute fraudulent concealment); *Howard Electric, Inc. v. American Bank & Trust Co.*, No. C-88-20399 RFP, 1990 U.S. Dist. LEXIS 7704, *29-30 (N.D. Cal. April 2, 1990) (failure to notify of a lack of diversification of investments does not rise to the level of active fraud or concealment); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1174 (D.C. Cir. 1994) (while a fiduciary's mere silence may be a fraud in the first instance, it "fall[s] short of the fraudulent concealment that courts have required for purposes of § 1113").[6]

All the "concealments" Plaintiffs complain of here are more properly described as (and formerly *were* described by Plaintiffs in the Complaint and Interrogatory Responses as) "failures to disclose," which do not constitute "affirmative steps" that rise to the level of concealment.[7]

---

[5] Plaintiffs misstate the standard by making conclusory arguments and omitting key elements. (*E.g.*, Opp. p.34 "Concealment of asbestos litigation from the valuators by Mssrs. Ferrari, Cristiano and Mines constitutes concealment" This is tantamount to arguing "concealment is concealment.")

[6] *Evanson v. Price*, 2:06-cv-0795-GEB-KJM, 2006 U.S. Dist. LEXIS 75029 (E.D. Cal. Sept. 29, 2006), cited by Plaintiffs, is easily distinguishable. There, the fiduciary defendants received letters from an independent trustee strongly advising them against adopting a contemplated compensation package that would give the fiduciaries up to 50% over market rates. *Id.* at *7. After they adopted it anyway, the defendants hid the letters and kept the advice secret. *Id.* at *8. Here, unlike in *Evanson*, where the hidden letter advised of a breach, the expert advice KM-Paint received from Ms. Mills ████████████████████████████████████████

[7] Plaintiffs' contentions in this category include the alleged failures to: (i) disclose to the auditors, participants, and the valuators Ms. Mills's Dec. 1998 privileged letter analyzing the company's asbestos litigation position and coverage, in which she noted ███████████████████████████ ████████████████████████████████████████████████████████████

Case No. C 06-07339 CW                    (REDACTED) COMBINED REPLY IN SUPPORT OF
                                          DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

1    Moreover, Plaintiffs repeatedly claim Defendants' failure to disclose to various parties at

2    various times the existence, magnitude or severity of the asbestos litigation constituted

3    "concealment." (Opp. pp. 31, 32, 33, 34, 39, 42.) But the failure to disclose such facts cannot, as a

4    matter of law, support a claim of concealment, because the asbestos lawsuits were a matter of public

5    record. *See O'Conner v. Boeing North Am., Inc.,* 92 F. Supp. 2d 1026, 1046 (C.D. Cal. 2000) ("it

6    would be paradoxical to find that a defendant fraudulently concealed information that was at the

7    same time publicly available"), *vacated in part by* 114 F. Supp. 2d 949 (C.D. Cal. 2000);

8    *Pocahontas Supreme Coal Co. v. Bethlehem Steel*, No. 84-5380, 1986 U.S. Dist. LEXIS 25591, *27

9    (S.D. W. Va. May 13, 1986), *aff'd* 828 F. 2d 211 (4th Cir. 1987) (where information was available

10   in public records, plaintiffs at most alleged a "'claim of ignorance' which is insufficient as a matter

11   of law to invoke the doctrine of fraudulent concealment"); *United States Klans of America v.*

12   *McGovern*, 621 F.2d 152 (5th Cir. 1980) (no fraudulent concealment concerning FBI's

13   counterintelligence program where program was discussed at a public press conference and a Senate

14   report stated the KKK was a target of the program); *Dayco Corp. v. Goodyear Tire & Rubber Co.*,

15   523 F.2d 389, 394 (6th Cir. 1975) (abusive practices not fraudulently concealed where Congress

16   held public hearings concerning those practices).

### 2.   Plaintiffs Offer No Evidence Of Any Separate Steps Defendants Took To Hide The Alleged Initial Breaches.

19       Section 1113's "fraud or concealment" exception requires that the acts of "fraud or

(Wasow Decl. Ex. 58); (ii) inform participants of Ms. Daly's valuation;

*(Id.*, Ex. 81); (iv) discuss asbestos in Mr. Ferrari's Oct. 1999 letter to participants explaining that the drop in the ESOP price was due to the ESOP taking on a loan (*Id.*, Ex. 92)—which explanation Plaintiffs do not contend was false; (v) disclose in the May 2001 and October 2001 employee newsletters that the valuations in 1998 and 1999 did not take into account asbestos, though those same letters reveal that pending asbestos litigation could affect the ESOP (*Id.*, Exs. 95 and 96), announce a large asbestos judgment against the Company and discuss concerns regarding the financial health of the Company due to asbestos litigation; and (vi) mention asbestos liability at the time of the ESOP transactions in the CIG memos to its employees in '02 and '03 even though those memos were "very explicit about the scope and possible effect of the asbestos litigation in the future."

-4-

1  concealment" must be separate from the underlying breach itself, and done with the intent to conceal

2  the alleged initial breach. *McKeown v. Pacific Bell Directory*, No. C-97-0427 MHB, 1999 U.S. Dist.

3  LEXIS 2281, *15-16 (N.D. Cal. Feb. 26, 1999). Thus, even if mere failures to disclose were

4  sufficient to constitute "concealment" under Section 1113, all alleged failures to disclose to

5  valuators, auditors, and ESOP participants (which Plaintiffs now call "concealments") that predate

6  or are concurrent with the transactions are facts relating to the alleged initial breach itself, and are

7  irrelevant to analyzing whether there was "concealment" of the alleged breach within the meaning of

8  Section 1113.[8] *See, e.g., id.* at * 16-17 (holding defendants' omission prior to the date of the breach

9  of certain aspects of plaintiffs' pension plan to be "[a]t most… evidence of the underlying breach of

10 misinformation itself, rather than intentional steps to hide the breach."); *California Serv. Employees*

11 *Health and Welfare Trust Fund v. G.C. Theatre Corp.*, No. C97-1602 FMS, 1998 U.S. Dist. LEXIS

12 8890, *14-15 (N.D. Cal. June 15, 1998) (though underreporting hours to trust funds may give rise to

13 breach of fiduciary duty, it was insufficient to constitute "fraud or concealment").

14      Nor can Plaintiffs' argument that Defendants failed to inform participants that Defendants

15 allegedly did not give asbestos information to the original valuators in 1998 and 1999 (Opp. pp.

16 20)—or otherwise put, that Defendants failed to self-report their own alleged breach—constitute

17 concealment. *See Howard,* 1990 U.S. Dist. LEXIS 7704, *30 (because a fiduciary has no duty to

18 disclose its own failures to balance investment portfolios, its failure to inform plaintiffs of its

19 failures was not fraud or concealment); *Armbruster v. K-H Corp.*, 206 F. Supp. 2d 870, 884 (E.D.

20 Mich. 2002) (a successor corporation's failure to disclose its own potential liability was not

21 fraudulent concealment); *see also Pocahontas Supreme Coal Co.*, 828 F.2d at 218-19 (holding in

22 antitrust context, "[t]o permit a claim of fraudulent concealment to rest on no more than an alleged

23

24 _____

[8] Plaintiffs' contentions in this category include the alleged failures to: (i) discuss asbestos in Mr.
25 Cristiano's May 1, 1998 announcement to KM-Paint employees of the ESOP formation; (ii) discuss
asbestos in CIG's announcement to CIG employees of their ESOP; (iii) discuss asbestos in a 1997
26 management letter to auditors; (iv) specifically refer to asbestos in Ms. Mills's February 16, 1998
letter to auditors; (v) disclose the Ferrari/Cristiano call with Mills on October 1, 1998, ████████
27 ████████████████████████████ (vi) inform the valuators (Brooks and Duff & Phelps)
of the potential asbestos liabilities; and (vii) inform Duff & Phelps of Ms. Daly's valuation.

28

(REDACTED) COMBINED REPLY IN SUPPORT OF
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

1    failure to own up to illegal conduct … would effectively nullify the statute of limitations").

2    **3. The Alleged Failure to Disclose Asbestos Information to the Company's**
     **Auditors Does Not Prove Fraud or Concealment.**

3

4    Based on statements in letters to KM-Paint's auditors in 1998-2000, Plaintiffs argue that the

5    KM Defendants concealed the "existence and magnitude" of the asbestos litigation from the auditors

6    until 2001.[9] (Opp. pp. 35-36.) Plaintiffs' theory is that this purported concealment "had the effect of

7    preventing Plaintiffs from discovering the K-M and Moore Trust Defendants' fiduciary violations."

8    (Opp. at pp 36-37.) As the alleged misstatements or nondisclosures were not directed to Plaintiffs,

9    but instead to KM Paint's auditors, this theory of concealment requires a threshold assumption for

10   which Plaintiffs can cite no evidence. Plaintiffs' theory assumes that if the auditors had been told the

11   "existence and magnitude" of KM Paint's potential asbestos liability prior to 2000, the auditors

12   would have altered their audit reports in a way that would have alerted participants to the

13   Defendants' initial alleged breach. But Plaintiffs cite no evidence that the auditors, if provided

14   additional information on the Company's potential asbestos liability ███████████████████

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ███████████████████████ believed they had properly accounted for the Company's potential

20   asbestos liabilities in the past. (Wasow Decl., Ex. 53 at p. 15 n.10.)

21   _____

22   [9] To the extent this argument rests on a mere failure to disclose (and a failure to disclose public facts
     at that), it must fail, as discussed above. Plaintiffs add a new twist here, however, arguing that the

23   company not only failed to disclose, but made "untrue" statements to the auditors. (Opp. p 35.)
     Plaintiffs argue the statement in the February 12, 1999 letter ██████████████████████

24   █████████████████████████████████████████████████████████████

25   █████████████████████████████████████████████████████████████

26   █████████████████████████████████████████████████████████████

27   █████████████████████████████████████████████████████████████

28

Case No. C 06-07339 CW                    (REDACTED) COMBINED REPLY IN SUPPORT OF
                                          DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

1    Accordingly, Plaintiffs cannot demonstrate Section 1113 concealment by allegations of

2  nondisclosures or misrepresentations by the KMH Defendants to the KM-Paint auditors.

3          **4.   Plaintiffs Have No Evidence That Any Nondisclosures of Asbestos
               Information By Defendants Were Devised to Conceal Anything.**

4
5          Once Plaintiffs' brief is stripped of the arguments relating to publicly-available facts and

6  arguments relating to a failure to disclose the initial alleged breach, they are left with alleged failures

7  to disclose Ms. Mills's and the Company's assessments of the adequacy of the Company's insurance

8  coverage for potential asbestos claims. Even if these nondisclosures could rise to the level of

9  affirmative acts (which, as discussed above, they do not), the nondisclosures themselves evidence

10 nothing improper on the part of Defendants absent evidence that either (a) Defendants actually did

11 *not* believe there was sufficient insurance coverage, ███████████████████████

12 ███████████████████████████████████████

13 ███████████████████[11] Plaintiffs have no such evidence.

14 ███████████████████████████████████████

15 ███████████████████████████████████████

16 ███████████████████████████████████████

17 ███████████████████████████████████████

18 ███████████████████████████████████████

19 ████████████████████████

20 [10] To the contrary, the Kelly-Moore executives Plaintiffs contend were involved in acts of fraudulent
21 concealment testified they relied on ████████████████████████████████

22 ███████████████████████████████████████

23 ███████████████████████████████████████

24 ███████████████████████████████ Cristiano Dep. pp. 128:21-24,
25 132:15-20. Declaration of Caroline M. Walters ("Walters Supp. Decl.") Exs. 1-2. Plaintiffs present
   no evidence to rebut this testimony.

26 [11] Plaintiffs argue that Judge Mills "concealed" the Company's asbestos liability from the auditors.
27 (Opp. pp. 35-36.) Yet Plaintiffs sought no discovery from Judge Mills, despite her integral role in
   their newly-minted concealment theory.

28
                                          -7-

**B.    Plaintiffs' Non-Compliance With Rule 9(b) Provides An Additional Basis For Granting Summary Judgment On Plaintiffs' Claims.**

Plaintiffs' non-compliance with Rule 9(b) provides an additional basis for granting summary judgment on Plaintiffs' claims.[12] An ERISA plaintiff cannot completely fail to plead concealment and "put off making particularized allegations of fraud until summary judgment" because "[s]uch an approach would thwart the underlying purpose of Rule 9(b) and render it a nullity." *Fiene v. V & J Foods, Inc.*, 962 F. Supp. 1172, 1183-84 (E.D. Wis. 1997) (granting summary judgment); *Larson*, 21 F.3d at 1173 (rejecting the fraudulent concealment theory of plaintiff, who "apparently did not see this as a 'case of fraud or concealment' until he was faced with the very real possibility that his case might be barred by § 1113"); *see also Payne v. Ken Diepholz Ford Lincoln Mercury, Inc.*, No. 02C 1329, 2004 WL 40631, *8 (January 5, 2004 N.D. Ill.) (court may decline to consider arguments based on concealment where plaintiff failed to comply with Rule 9(b) and alleged fraud or concealment for the first time in response to a summary judgment motion).

Although Plaintiffs accuse Defendants of "gamesmanship" in not raising this issue earlier, their Complaint makes no mention of "fraud" or "concealment."[13] A sentence in the Joint Case Management Statement stating "defendants intentionally concealed facts relevant to plaintiffs' claims" is no substitute for the particularized facts required by Rule 9(b).

Plaintiffs do not contend that they met the requirements of Rule 9(b); they argue instead they should be given leave to amend. (Opp. pp. 41-42.) But leave should not be granted, particularly since Plaintiffs' response to an Interrogatory seeking the facts supporting any claim of

---

[12] All references to "Rules" are to the Federal Rules of Civil Procedure.

[13] Plaintiffs also argue that Defendants should have moved to dismiss based on Rule 9(b) instead of raising this issue on summary judgment. Given Plaintiffs' complete lack of notice to Defendants in the Complaint that Plaintiffs were asserting fraud or concealment at all, this argument is absurd. As is apparent from the moving briefs, Defendants had no idea how Plaintiffs intended to save their claims from the repose statute until Plaintiffs filed their Opposition. Obviously, had Defendants known Plaintiffs intended to rely on the "fraud or concealment" exception, Defendants' moving briefs would have been devoted primarily to that issue rather than to other theories Defendants guessed Plaintiffs might assert.

1    "concealment" merely identified seven deposition exhibits (without explanation) and "all documents

2    showing asbestos sales or liability of Kelly-More Paint Co. or KMH in the period before October

3    13, 1998," and stated that eight witnesses "all testified regarding what information relating to Kelly-

4    Moore's asbestos litigation was provided to valuators and when such information was provided."

5    (Walters Decl. Ex. J at No. 24.) This response in no way provided "particularized" information to

6    put Defendants on notice of a fraudulent concealment claim, and for this additional reason,

7    Plaintiffs' concealment defense to the statute of repose should be rejected.[14]

8    **III.    PLAINTIFFS PRODUCE NO EVIDENCE OF FRAUDULENT CONCEALMENT OF**
9         **NON-ASBESTOS CLAIMS, WHICH ARE THEREFORE TIME-BARRED**

10            Plaintiffs allege multiple breaches of fiduciary duty. Some are based on alleged non-

11    disclosures of asbestos information, while others are not (the "Non-Asbestos Claims").[15] Plaintiffs'

12    concealment arguments, however, relate solely to the alleged breaches based on nondisclosures of

13    asbestos information—Plaintiffs do not argue that the Non-Asbestos Claims were concealed. Rather,

14    Plaintiffs seek to avoid Section 1113's time-bar of those claims by arguing that if Defendants

15    concealed the alleged asbestos-related breach, "then the statute of limitations for all of Plaintiffs'

16    claims against them is extended to six years after Plaintiffs' discovery of the fiduciary violations."

17    (Opp. pp. 28-29.) Plaintiffs' position, however, is unsupported in the law and should be rejected.

18            Courts applying Section 1113 have been counseled to isolate and define the underlying

19    violation upon which the plaintiff's claim is founded and analyze whether the alleged "concealment"

20    acted to prevent the discovery of that alleged breach. *See Aikens v. U.S. Transformer Inc.*, No. CV-

21    ────────────────

22    [14] Plaintiffs' stealth litigation approach is entirely improper. *See, e.g., Shelak v. White Motor Co.*,
      581 F.2d 1155, 1160 (5th Cir. 1978) (discussing the impropriety of delay in revealing plaintiff's
23    contentions under modern discovery rules); *AMEX v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y.
      2002) (discussing the "automatic" preclusionary sanction of Rule 37(c), as "[t]he purpose of these
      rules is to avoid 'surprise' or 'trial by ambush'" (citation omitted)).

24
25    [15] The Non-Asbestos Claims include, without limitation, the alleged breaches and any attendant
      damages for failure to: (i) secure an independent expert assessment of the fair market value of the
26    stock (SAC ¶¶ 28, 36); (ii) adequately investigate the qualifications the valuators (SAC ¶¶ 29, 37);
      (iii) provide complete and accurate information to the valuators (SAC ¶¶ 30, 38); (iv) make certain
27    that reliance on the valuations was justified (SAC ¶¶ 31, 39); and (v) discount the purchase price of
      the stock to account for the fact that the stock purchased was tracking stock (SAC ¶¶ 33, 41). *See
      also* KMH Defendants Moving Brief at pp. 14-17.

28
                                              -9-

1  07-138-E-EJL-LMB, 2008 U.S. Dist. LEXIS 19285, *35-36 (D. Idaho March 11, 2008) (requiring

2  that the particular breach at issue be covered up by the alleged fraud or concealment); *Oechsner v.*

3  *Connell Ltd. P'ship*, 283 F. Supp. 2d 926, 934 (S.D.N.Y. 2003) (rejecting finding of concealment

4  when information did not concern facts underlying breach); *Hunt v. Magnell*, 758 F. Supp. 1292,

5  1298 (D. Minn. 1991) (alleged failures to record journal entries in '86 could not demonstrate

6  fraudulent concealment of investment transactions made years before).

7      Plaintiffs rely solely on *Hemphill v. Personal Rep. of the Estate of James J. Ryskamp, Jr.*,

8  No. CV-F-05-1319 OWW/SMS, 2006 U.S. Dist. LEXIS 47929 (E.D. Cal. July 5, 2006), which does

9  not support their position. The *Hemphill* plaintiff repeatedly requested specific information about

10  her benefits, but was actively ignored or passed off, so she had "virtually no idea how her benefits

11  were being handled, how to obtain a distribution of her benefits, or how to make a claim under any

12  of the plans' internal claims and appeals procedures." *Id.* at * 45-46. The *Hemphill* court found that

13  the defendants' active concealment in the face of the plaintiff's inquiries rendered it impossible for

14  her to discover any of the breaches of fiduciary duty she alleged. *Id.* at *50-51.

15      Plaintiffs concede that their claims against the KMH and Moore Trust Defendants are barred

16  by the statute of repose in the absence of fraud or concealment, and do not cite any evidence of

17  concealment of the Non-Asbestos Claims. Accordingly, judgment should be entered against

18  Plaintiffs on all the Non-Asbestos Claims.

19  **IV.    SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR OF NORTH STAR,**

20  **AS PLAINTIFFS' CLAIMS AGAINST IT ARE TIME-BARRED**

21      **A.    The Complaint Alleges Only Two Claims Against North Star, Both of Which Relate to the 1998 and 1999 Transactions.**

22      Plaintiffs' Complaint asserts two claims for relief against Defendants: a claim asserting that

23  the 1998 and 1999 transactions in which the ESOP purchased KMH stock violated Defendants'

24  fiduciary duties under ERISA, and a second claim that those events constituted transactions

25  prohibited under ERISA. Contrary to Plaintiffs' assertions, the Complaint does not assert a separate

26  claim against North Star for violation of Section 1105. Finally, for the reasons discussed below and

27  in North Star's companion memorandum, North Star never had notice of such a claim, as the

28

-10-

(REDACTED) COMBINED REPLY IN SUPPORT OF
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

1    Complaint's passing reference to Section 1105 cannot reasonably be construed to assert a claim

2    against North Star.

### 1. The Appointment of a Successor Trustee Does Not Extend the Period of Repose Embodied in the Six-Year Statute.

Plaintiffs concede in their Opposition that the six-year period for them to sue based on the

1998 and 1999 transactions expired in October 2004 and October 2005. (Opp. p. 48 ("under the 'last

action' prong of ERISA § 413, North Star had until at least six years after the 1998 and 1999 ESOP

transactions, i.e., until at least October 2004 and October 2005, respectively, to file suit against Mr.

Moore or his estate").) North Star's assumption of the role of successor trustee in April 2003 does

not restart the limitations period on Plaintiffs' claims that the ESOP paid too much for the KMH

stock in 1998 and 1999. Plaintiffs cite no authority supporting the proposition that the appointment

of a successor trustee somehow re-starts the limitations period running, and ERISA and related

Ninth Circuit law provides to the contrary.  ERISA § 409(b), 29 U.S.C. § 1109 (b); *Phillips v.*

*Alaska Hotel and Restaurant Employees Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991). Because

the 1998 and 1999 transactions Plaintiffs now challenge occurred more than six years before

Plaintiffs filed this lawsuit, and because Plaintiffs' fraudulent concealment argument fails for the

reasons stated in Sections II and III, *supra*, Plaintiffs' claims are untimely under Section 1113.

### 2. As the Complaint Does Not Allege a Claim Against North Star for Failure to Investigate and Remedy the Dated Transactions, Plaintiffs Needed to Timely Seek Leave to Assert Such a Claim.

The Opposition asserts that the Complaint alleges that "North Star violated ERISA §

405(a)(3), 29 U.S.C. § 1105(a)(3)" by failing "to investigate or remedy the 1998 and 1999

overpayments."  (Opp. pp. 46-47.)  Plaintiffs cite a single paragraph of the Complaint—Paragraph

68—to support this contention. *Id.* Paragraph 68 does not even mention North Star by name, but

instead rotely alleges that each Defendant "is also liable as a co-fiduciary with respect to each

fiduciary violation by each other fiduciary of the Plan...." (SAC ¶ 68.) The paragraph, which falls

towards the end of the paragraphs constituting the First Claim for Relief, fails to provide North Star

notice that Plaintiffs seek to assert a separate claim against North Star arising from alleged acts or

omissions occurring at a different time period from the claims asserted against the other Defendants.

-11-

1    As such, the Complaint fails to give North Star notice of the claim purportedly asserted against it.

2    *See* Fed. R. Civ. Proc. 8(a) (requiring complaint or other pleading to give defendants notice of all

3    claims against them);[16] *Leatherman v. Tarrant County Narcotics Intelligence and Coordination*

4    *Unit*, 507 U.S. 163, 168 (1993), *citing Conley v. Gibson*, 355 U.S. 41, 47 (1957) (the Federal Rules

5    require "'a short and plain statement of the claim' that will give the defendant fair notice of what the

6    plaintiff's claim is and the grounds upon which it rests"); *Holgate v. Baldwin*, 425 F.3d 671, 677

7    (9th Cir. 2005) (same).

8         Allowing Plaintiffs to proceed after the close of discovery with a claim outlined in their

9    memorandum opposing North Star's motion for summary judgment contravenes even the most

10   liberal of pleading standards, requiring dismissal of the Complaint. *See Ideal Electric Co. v.*

11   *Flowserve Corp.*, 357 F. Supp. 2d 1248, 1252-53 (D. Nev. 2005) (dismissing purported claim that

12   party introduced in opposition to motion for summary judgment); *Center for Bio-Ethical Reform,*

13   *Inc. v. City and County of Honolulu*, 345 F. Supp. 2d 1123, 1138-39 (D. Haw. 2004) (finding

14   minimal standard of notice of a new claim not met where claim arose for the first time in

15   memorandum for summary judgment).[17]

16         **B.    In Any Event, Plaintiffs Had Actual Knowledge of North Star's Appointment
              More Than Three Years Before Filing Their Original Complaint.**

17

18         Plaintiffs' Opposition admits that each named Plaintiff had actual knowledge of the 1998 and

19   1999 transactions at the core of the Complaint contemporaneously with those transactions or, in the

20   ──────────────────────────

21   [16] Plaintiffs claim that they are "puzzled" by North Star's reading of the Complaint because their
     counsel purportedly clarified Plaintiffs' claims in a brief telephone call (occurring the day prior to

22   the close of discovery) and a supplemental interrogatory response (served two weeks after discovery
     closed). Feinberg Decl., ¶ 2 and Exh. 1; Docket No. 81 (close of discovery). Neither a telephone call

23   nor an interrogatory response constitutes sufficient notice of the putative claim against North Star.
     Rule 7(a) lists allowable pleadings; phone calls and discovery responses are not among the

24   referenced items. Moreover, the telephone call was not "detailed" but rather consisted of a brief
     discussion of a single Ninth Court case relating to the statute of limitations, not successor trustee

25   liability. *See* Decl. of Donald P. Sullivan in Support of Reply at ¶ 2.

26   [17] To be sure, leave to amend is freely granted under the Federal Rules. However, courts do not
     permit amendment where doing so would prejudice the opposing party, and leave to amend

27   following the close of discovery would cause extreme prejudice to North Star. Fed. R. Civ. Proc.
     15(a)(2); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

28

-12-

1    case of Ms. Thomas, following her first year of employment in 2001. (Opp. pp. 30-31.) In addition,

2    the Company informed participants of North Star's appointment as successor trustee of the ESOP in

3    July 2003—more than three years before the filing of the original complaint in November 2006.

4    (Decl. of S. Ferrari in Support of Motion for Summary Judgment ("Ferrari Decl."), ¶22, Exh. 12.) In

5    seeking to nonetheless avoid entry of judgment for Defendants, Plaintiffs assert that knowledge of

6    these events alone is insufficient to trigger Section 1113's three-year statute of limitations, absent

7    Plaintiffs having the additional knowledge of the alleged breaches of fiduciary duty. The governing

8    law contradicts Plaintiffs' argument.

9         The Ninth Circuit—in agreement with the First, Sixth, Seventh and Eleventh Circuits—holds

10   that a plaintiff has "actual knowledge" sufficient to trigger the three-year limitations period when he

11   or she learns of the facts of an event or transaction that constitutes the alleged violation. *Blanton v.*

12   *Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985); *see also Edes v. Verizon Communications, Inc.*, 417

13   F.3d 133, 142 (1st Cir. 2005); *Wright v. Heyne*, 349 F. 3d 321, 328 (6th Cir. 2003); *Rush v. Martin*

14   *Petersen Co., Inc.*, 83 F.3d 894, 896 (7th Cir. 1996); *Martin v. Consultants & Administrators, Inc.*,

15   966 F.2d 1078, 1086 (7th Cir. 1992); *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987). A

16   plaintiff's alleged lack of knowledge of all of the facts regarding the breach does ***not*** prevent the

17   limitations from running. *Rush*, 83 F.3d at 896 ("actual knowledge" means knowledge of the

18   essential facts and it is "not necessary for a potential plaintiff to have knowledge of every last detail

19   of a transaction, or knowledge of its illegality" to trigger the running of the statute of limitations);

20   *Martin*, 966 F.2d at 1086 (same). Instead, the limitations period begins to run when a plaintiff learns

21   of the occurrence of the relevant event, rather than knowledge of the alleged unlawfulness. *Blanton*,

22   760 F.2d at 992;[18] *Edes*, 417 F.3d at 142 (actual knowledge requires knowledge of basic fact of an

23

---

24   [18] The Ninth Circuit's holding in *Waller v. Blue Cross of California*, 32 F.3d 1337 (9th Cir. 1994),

25   does not supersede or contradict its holding in *Blanton*. *Waller* addressed the defendants' alleged
     imprudent purchase of annuities on a motion to dismiss. In that case, the plaintiffs alleged that they
     did not have actual knowledge of the defendants' conduct more than three years before they filed

26   suit, and that allegation had to be taken as true under the standards governing the Rule 12 motion.
     32 F.3d at 1341. Nowhere in *Waller* does the Ninth Circuit retreat from *Blanton's* holding that a

27   plaintiff need not have knowledge of the applicable law in order for the statute of limitations to
     begin to run.

28

(REDACTED) COMBINED REPLY IN SUPPORT OF
                                    DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

1    event's existence); *Rush,* 83 F.3d at 896 (same); *Martin,* 966 F.2d at 1086 (holding that it is "not

2    necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or

3    knowledge of its illegality" to start the limitations period running).

4          In their declarations, Plaintiffs aver only that they "did not know what steps defendant North

5    Star had (or had not) taken to remedy the fiduciary violations alleged against Mr. Moore and the

6    other ESOP fiduciaries." *See* Dec. of T. Thomas at ¶ 3; Dec. of T. Fernandez at 3. But Plaintiffs

7    simultaneously contend that North Star's breaches consisted of acts of *omission,* not commission,

8    and started immediately at the time of its appointment: "Plaintiffs allege that beginning in 2003,

9    North Star failed to take appropriate steps to investigate and remedy breaches of duty by Mr. Moore

10   and his co-fiduciaries." (Opp. at 1:20-2:1; *see also* Opp. at 47:8-15 (Plaintiffs' contention that North

11   Star should have taken action immediately upon its appointment to remedy the alleged breaches).)

12   Where a breach is in the nature of an alleged omission, the accrual of the claim runs from the date

13   on which the fiduciary should have undertaken the action. *See, e.g., Jeffries v. Pension Trust Fund of*

14   *the Pension, Hospitalization and Benefit Plan of the Electrical Industry,* 172 F.Supp.2d 389, 392

15   (S.D.N.Y. 2001). As Plaintiffs have produced no material fact contesting their knowledge of North

16   Star's appointment in April 2003, and Plaintiffs contend that North Star should have taken

17   immediate action to address the alleged breaches, the statute of limitations on Plaintiffs' supposed

18   claim that North Star failed to correct its predecessor breaches ran in April 2006—three years

19   following the date that Plaintiffs knew of North Star's appointment and the date it allegedly began to

20   fail to remedy the breaches. *Blanton,* 760 F.2d at 992; *Jeffries,* 172 F. Supp. 2d at 392.

21         Plaintiffs also attempt to invert the statute and argue that the statute begins to run three years

22   from the date that *North Star* gained actual knowledge of the other Defendants' alleged breaches.

23   Opposition at 48:12-14. In addition to misapplying the plain language of the statute (which runs the

24   three years from "the earliest date on which *the plaintiff* had actual knowledge"), Plaintiffs have not

25   established a material fact demonstrating such knowledge on the part of North Star. ERISA § 413,

26   29 U.S.C. § 1113(2) (emphasis added). As discussed in North Star's opening papers, the evidence

27   proves otherwise. Specifically, the record establishes that North Star investigated the original

28

-14-

1    transactions, including conducting interviews with the valuation firms that originally valued the

2    stock for both transactions, meetings with Company management, interviews of the Company's

3    asbestos and insurance recovery attorneys, and undertaking an independent analysis of the

4    Company's asbestos liability. (Diller Decl., Exh. 66.) North Star asked its independent counsel and

5    independent financial advisors to review the underlying transactions for any impropriety, and both

6    sets of professionals concluded that no evidence suggested illegality in either transaction. (Diller

7    Decl., Exhs. 2, 66, and 75.) North Star accordingly concluded that no evidence indicated that the

8    ESOP paid more than reasonable consideration for the KMH stock. (*Id.*) While Plaintiffs assert that

9    no corroboration of North Star's testimony exists, Plaintiffs themselves admit that North Star

10   produced notes memorializing its review of these precise issues. (Opp. p. 22 (referencing North Star

11   note stating "Initial ESOP Purchase—we need to figure out how far along the asbestos litigation was

12   when the initial purchase took place—was it factored into the valuation?").) Given these

13   considerations, Plaintiffs' claims (both those asserted in the Complaint and those identified for the

14   first time in Plaintiffs' Opposition) have expired under Section 1113's three-year statute of

15   limitations.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2    DATED:  July 17, 2008                    HENNIGAN, BENNETT & DORMAN

3

4
                                            By:_____/S/_____
5                                              J. Michael Hennigan
                                            Attorneys for Defendants
6                                           WILLIAM E. AND DESIREE B. MOORE
                                            REVOCABLE TRUST; TRUSTEES OF THE
7                                           WILLIAM E. AND DESIREE B. MOORE
                                            REVOCABLE TRUST; DESIREE B. MOORE
8                                           REVOCABLE TRUST; WILLIAM E. MOORE
                                            MARITAL TRUST; WILLIAM E. MOORE
9                                           GENERATION-SKIPPING TRUST; and
                                            DESIREE MOORE
10
     DATED:  July 17, 2008                    LOVITT & HANNAN, INC.
11

12

13                                          By:_____/S/_____
                                               Henry I. Bornstein
14                                          Attorneys for Defendants
                                            K-M INDUSTRIES HOLDING CO. INC.; K-M
15                                          INDUSTRIES HOLDING CO. INC. ESOP
                                            PLAN COMMITTEE; AND CIG ESOP PLAN
16                                          COMMITTEE

17   DATED:  July 17, 2008                    MORGAN, LEWIS & BOCKIUS LLP

18

19
                                            By:_____/S/_____
20                                             Nicole A. Diller
                                            Attorneys for Defendant
21                                          NORTH STAR TRUST COMPANY

22

23

24

25

26

27

28
                                     -16-