Daniel Feinberg – CA Bar No. 135983
Todd F. Jackson – CA Bar No. 202598
Margaret E. Hasselman – CA Bar No. 228529
Nina Wasow – CA Bar No. 202047
Kirsten G. Scott – CA Bar No. 253464
LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, California 94612
Telephone: (510) 839-6824
Facsimile:  (510) 839-7839
Email:  dfeinberg@lewisfeinberg.com
Email:  tjackson@lewisfeinberg.com
Email:  mhasselman@lewisfeinberg.com
Email:  nwasow@lewisfeinberg.com
Email: kscott@lewisfeinberg.com

*Attorneys for Plaintiffs and the Class*
(Additional counsel on signature page)

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO AND OAKLAND DIVISION

| | |
|---|---|
| THOMAS FERNANDEZ, LORA SMITH, and TOSHA THOMAS, individually and on behalf of a class of all other persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> K-M INDUSTRIES HOLDING CO., INC.; K-M INDUSTRIES HOLDING CO., INC. ESOP PLAN COMMITTEE; WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; TRUSTEES OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; CIG ESOP PLAN COMMITTEE; NORTH STAR TRUST COMPANY; DESIREE B. MOORE REVOCABLE TRUST; WILLIAM E. MOORE MARITAL TRUST; WILLIAM E. MOORE GENERATION-SKIPPING TRUST; and DESIREE MOORE, BOTH IN HER INDIVIDUAL CAPACITY AND AS TRUSTEE OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST'S SUCCESSOR TRUSTS NAMED ABOVE, <br><br> Defendants. | Case No. C-06-07339 CW <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT, AWARD OF ATTORNEYS' FEES AND COSTS, AND APPROVAL OF SERVICE PAYMENTS** <br><br> Date:　　　　May 7, 2009 <br> Time:　　　　2:00 p.m. <br> Courtroom:　　2, 4th Floor <br> Judge:　　　　Hon. Claudia Wilken |

1    NOTICE IS HEREBY GIVEN that on May 7, 2009, at 2:00 p.m., or as soon thereafter as

2    the matter may be heard in the above-entitled Court, Plaintiffs Thomas Fernandez, Lora Smith,

3    and Tosha Thomas ("Class Plaintiffs") will and hereby do move the Court as follows:

4        1.      To grant final approval of the Amended & Restated Stipulation and Agreement of

5    Settlement ("Settlement" or "Settlement Agreement") between Class Plaintiffs, on behalf of

6    themselves and the Class, and Defendants K-M Industries Holding Co., Inc., K-M Industries

7    Holding Co., Inc. ESOP Plan Committee, CIG ESOP Plan Committee ("K-M Defendants"),

8    William E. and Desiree B. Moore Revocable Trust, Trustees of the William E. and Desiree B.

9    Moore Revocable Trust, Desiree B. Moore Revocable Trust, William E. Moore Marital Trust,

10   William E. Moore Generation-Skipping Trust, Desiree B. Moore ("Moore Trust Defendants"),

11   (the KMH Defendants and Moore Trust Defendants are collectively referred to as the "Settling

12   Defendants") (collectively the "Settling Parties"), by and through their respective counsel.

13       2.      To approve an award of attorneys' fees and reimbursement of litigation costs to

14   Class Counsel.

15       3.      To approve the service payment of $15,000 each to the Class Plaintiffs.

16       This motion is based on the Memorandum of Points and Authorities filed herewith and in

17   support of this Motion, the Declarations of Todd Jackson, Peter Rukin and Mark Patton in

18   support of this Motion, the executed Settlement Agreement preliminarily approved by the Court

19   on January 23, 2009, and all other papers filed in this action.

20

21   Dated:   March 27, 2009                          Respectfully submitted,

22                                                     LEWIS, FEINBERG, LEE,
                                                       RENAKER & JACKSON, P.C.
23

24                                           By:    ___/s/_____
                                                       Todd Jackson
25

26                                                     Peter Rukin – CA State Bar No. 178336
                                                       RUKIN HYLAND DORIA
27                                                     & TINDALL LLP
                                                       100 Pine Street, Suite 725
28                                                     San Francisco, CA 94111
                                                       Telephone: (415) 421-1800

Facsimile: (415) 421-1700
Email: peterrukin@rhddlaw.com

*Attorneys for Plaintiffs and the Class*

1

## TABLE OF CONTENTS

Page No.

2

I.      INTRODUCTION .................................................................................. 1

3

II.     BACKGROUND .................................................................................... 2

4

     A.    The Claims .................................................................................. 2

5

     B.    Discovery and Motion Practice .................................................. 2

6

III.    SETTLEMENT ...................................................................................... 3

7

     A.    Terms of the Settlement Agreement .......................................... 3

8

     B.    Notice… ...................................................................................... 5

9

IV.     FINAL APPROVAL OF SETTLEMENT IS APPROPRIATE ............. 5

10

     A.    The $40 Million Settlement is Fair Considering the Strength of Plaintiffs' Case, the Risks and Complexity Involved, the Stage of the Proceeding, and the Amount Offered in Settlement. .............................................. 6

11

12

     B.    The Settlement Reflects the Informed Views of Experienced Counsel and Is the Product of Serious, Arm's-Length Negotiations Conducted After Extensive Discovery and Investigation.......................................................... 7

13

14

     C.    The Lack of Opposition By the Class and the Independent Fiduciary's Approval Support Approval of the Settlement.......................................... 8

15

16

     D.    The Payment to the Named Representatives for Their Service to the Class Is Reasonable and of the Type Routinely Awarded…………………………9

17

V.      THE FEE MOTION SHOULD BE GRANTED .................................. 9

18

     A.    Counsel Are Entitled to an Award of Attorneys' Fees Out of the Common Fund…………………………………………………………………10

19

20

          1.    The Equitable Common Fund Doctrine Applies When, as in This Case, the Litigation Has Recovered a Certain and Calculable Fund on Behalf of a Group of Beneficiaries. ...................................... 10

21

22

          2.    The Fee Award Should Be Calculated as a Percentage of the Common Fund. ...................................................................... 11

23

          3.    The Requested Fee Award Meets the 25-Percent Benchmark Established by the Ninth Circuit. ................................................... 12

24

25

     B.    The Requested Fee Award Is Fair and Reasonable............................................. 13

26

     C.    Class Counsel Are Entitled to Recover Costs. ..................................................... 14

27

VII.    CONCLUSION……………………………………………………..15

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page No.</u>

**FEDERAL CASES**

3

Barker v. Am. Mobil Power Corp., 64 F.3d 1397 (9th Cir. 1995)..............................13

4

Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp., 480 F. Supp. 1195
  (S.D.N.Y. 1979) ............................................................................................13

5

Blum v. Stenson, 465 U.S. 886 (1984) ...............................................................9, 10

6

Boeing Co. v . Van Gemert, 444 U.S. 472 (1980) ...............................................10, 11

7

Browning v. Yahoo, Inc., 2006 WL 3826714 at *8 (N.D. Cal. Dec. 27, 2006) ...........7

8

Central R.R. & Banking Co. v. Pettus, 113 U.S. 116 (1885)......................................10

Class Plaintiffs v. City of Seattle, 955 F.2d 1268 (9th Cir. 1992) ...........................1, 5

9

Cullen v. Whitman Medical Corp., 197 F.R.D. 136 (E.D. Pa 2000)............................14

10

Glass v. UBS Financial Services, Inc., 2007 WL 221862 at *3 (N.D. Cal. Jan. 26, 2007) ..........1

11

Harris v. Marhoefer, 24 F.3d 16 (9th Cir. 1994)....................................................15

In re Activision Sec. Litig., 723 F. Supp. 1373 (N.D. Cal. 1989).............................12

12

In re Ampicillin Antitrust Litig., 526 F. Supp. 494 (D.D.C. 1981) ...........................13

13

In re Crazy Eddie Sec. Litig., 824 F. Supp. 320 (E.D.N.Y. 1993)............................14

14

In re Heritage Bond Litig., 2005 WL 1594389, at *15 (C.D. Cal., June 10, 2005)....................14

In re Omnivision Tech., Inc., 2007 WL 4293467, at *8 (N.D. Cal. 2007) ................10

15

In re Pacific Enterprises Sec. Litig., 47 F.3d 373 (9th Cir. 1995) ...........................12

16

In re S. Ohio Correctional Facility, 175 F.R.D. 270 (S.D. Ohio 1997).......................9

Ingram v. The Coca-Cola Co., 200 F.R.D. 685 (N.D. Ga. 2001) ...............................9

17

Morganstein v. Esber, 768 F. Supp. 725 (C.D. Cal. 1991) .....................................12

18

Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc., 221 F.R.D. 523 (C.D. Cal. 2004) ..........6, 7, 8

19

Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615 (9th Cir. 1982) ..................5

Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989) ......................10, 11, 12

20

Six Mex. Workers v. Ariz. Citrus Growers, 904 F.2d 1301 (9th Cir. 1990) ....................passim

21

Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003) ..............................................10

22

Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261 (D.C. Cir. 1993) .........................11, 12

23

Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370 (9th Cir. 1983)................................6

Trustees v. Greenough, 105 U.S. 527 (1881).......................................................14

24

Van Bronkhorst v. Safeco Corp., 529 F.2d 943 (9th Cir. 1976)................................5

25

Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294 (N.D. Cal. 1995) ........................9

Vincent v. Hughes Air West. Inc., 557 F.2d 759 (9th Cir. 1977) .............................10

26

Vizcaino v. Microsoft Corp., 290 F.3d 1043 (9th Cir. 2002) ...........................1, 10, 12

27

**FEDERAL STATUTES**

28

ERISA § 408, 29 U.S.C. § 1108 ............................................................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FEDERAL RULES**

Fed. R. Civ. P. 23(e)..............................................................................................1, 5

**FEDERAL REGULATIONS**

68 Fed. Reg. 75632 (2003)...........................................................................................8

**OTHER AUTHORITIES**

1 Alba Conte, Attorney Fee Awards § 2:8………………………………………………...14

Newberg on Class Actions § 11:50 at 155 (4th ed. 2002)………………………………………….6

5 Moore's Federal Practice § 23.85 [2][d]………………………………………………….8

1                          **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.     INTRODUCTION**

3        Plaintiffs Thomas Fernandez, Lora Smith, and Tosha Thomas, on behalf of all participants

4 in the K-M Industries Holding Co., Inc. Employee Stock Ownership Plan ("ESOP"), seek final

5 approval of a proposed settlement of their claims against the K-M Defendants[1] and the Moore

6 Trust Defendants[2] (collectively referred to as the "Settling Defendants").  The Amended &

7 Restated Stipulation and Agreement of Settlement ("Settlement") resolves the named Plaintiffs'

8 and the Class Members' stated ERISA claims against the Settling Defendants, in exchange for the

9 payment by Settling Defendants of $40,000,000.

10        This settlement is "fair, reasonable, and adequate."  *See* Fed. R. Civ. P. 23(e); *see also*

11 *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *Glass v. UBS Financial*

12 *Services, Inc*., 2007 WL 221862 at *3 (N.D. Cal. Jan. 26, 2007).  Among the relevant factors

13 indicating such fairness and reasonableness are: (1) the settlement is commensurate with the

14 strengths of the Plaintiffs' case, and $40 million falls well within the range of reasonableness

15 given the risk, expenses, and complexity of further litigation; (2) sufficient discovery and

16 investigation have been conducted to enable Class Counsel to evaluate the claims and defenses in

17 the action and to recommend this settlement; and (3) of the approximately 3,700 Class Members,

18 not one has objected to the Settlement as of the date of this filing.[3]  *See, e.g.*, *Glass*, 2007 WL

19 221862 at *3-5.  Final approval should therefore be granted.

20        In addition, Class Counsel seek approval of an attorney's fee award of $10,000,000, which

21 represents 25 percent of the Settlement Amount, this Circuit's benchmark for awards from a

22 common fund.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The

23 requested award is fair, reasonable, and appropriate under the common fund doctrine.  *See Six*

---

[1] "The K-M Defendants" refers to Defendants K-M Industries Holding Co., Inc., K-M Industries Holding Co., Inc. ESOP Plan Committee, and CIG ESOP Plan Committee.

[2] "The Moore Trust Defendants" refers to Defendants William E. and Desiree B. Moore Revocable Trust, Trustees of the William E. and Desiree B. Moore Revocable Trust, Desiree B. Moore Revocable Trust, William E. Moore Marital Trust, William E. Moore Generation-Skipping Trust, and Desiree B. Moore.

[3] Any objections were required to be postmarked by March 27, 2009.  If any objections are later received by Class Counsel or the Settlement administrator, they will be forwarded to the Court.

*Mex. Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).[4]

## II.   BACKGROUND

### A.   The Claims

Plaintiffs originally filed this class action lawsuit on November 29, 2006, bringing claims against the K-M Defendants, the Moore Trust Defendants, and Defendant North Star Trust Company for violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), including claims for prohibited transactions and breach of fiduciary duty. Plaintiffs requested injunctive, declaratory, and monetary relief.

The claims against the K-M Defendants and the Moore Trust Defendants arise from the October 13, 1998 sale of 33,745,455 shares of KMH Class P-B stock (tracking the performance of Kelly-Moore Paint, a KMH subsidiary) to the KMH ESOP, for $232 million, and the October 18, 1999 sale of 8,400,000 shares of KMH Series I stock (tracking the performance of California Capital Insurance Company, now renamed Capital Insurance Group, also a KMH subsidiary) to the ESOP for $55 million. Because KMH is not a publicly-traded company, valuation firms prepared valuation reports for the 1998 and 1999 transactions. Plaintiffs allege that the valuations were not done properly because, *inter alia*, the valuations failed to consider the effect of the asbestos litigation pending against Kelly-Moore Paint on the value of the stock, and that the share price in both transactions was too high. The K-M and Moore Trust Defendants deny these allegations, and assert that the price established by the valuations and paid by the ESOP for the stock was fair.

### B.   Discovery and Motion Practice

Class Counsel has conducted a thorough investigation into the facts of this action during over two years of hard-fought litigation, and has diligently pursued Plaintiffs' and the Class' claims against Settling Defendants. Plaintiffs propounded multiple discovery requests to Defendants, including Requests for Production, Requests for Admission, and Interrogatories.

---

[4] The Court's approval of the Settlement is not contingent on its approval of Class Counsel's application for attorneys' fees. The Settlement provides that "[t]he substance of Class Counsel's application for attorneys' fees and costs is not part of this Stipulation, and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action." *See* Preliminary Approval Order, Exhibit A (Dkt. 271).

During discovery, Defendants produced, and Class Counsel reviewed, hundreds of thousands of pages of documents responsive to Plaintiffs' discovery requests.  Further, Class Counsel deposed eleven witnesses who had knowledge of facts relevant to Plaintiffs' claims, including three corporate representatives (one for each of KMH's subsidiaries, and one for North Star), and defended the depositions of the three named Plaintiffs.  Class counsel also filed several motions to compel discovery.  *See* Declaration of Todd Jackson In Support of Plaintiffs' Motion for Final Approval ("Jackson Dec.") ¶¶ 14-16.

After the close of discovery, Plaintiffs moved for class certification.  Dkt. 103.  The Court granted class certification and appointed class counsel by order dated June 26, 2008.  Dkt. 145.  The parties fully briefed Defendants' motions for summary judgment on the statute of limitations, but Plaintiffs settled their claims with the K-M Defendants and the Moore Trust Defendants prior to the hearing on those motions.[5]  Settlement was reached after a mediation, conducted on October 18, 2008, by an experienced mediator, Antonio Piazzza, of Gregorio, Haldeman, Piazza, Rotman, Frank & Feder.  Jackson Dec. ¶ 17.

Following Plaintiffs' Motion for Preliminary Approval, the Court issued an order (1) preliminarily approving the proposed settlement, (2) approving the form and content of notice to class members, (3) directing the mailing of notice, and (4) scheduling the final fairness hearing.  Dkt. 271.

**III.   SETTLEMENT**

    **A.   <u>Terms of the Settlement Agreement</u>**

The terms of the Proposed Settlement Agreement are set forth in the Amended & Restated Stipulation and Agreement of Settlement.  *See* Preliminary Approval Order, Exhibit A (Dkt. 271).  In short, the Settlement Agreement provides for a payment of $40,000,000 in return for a release that extinguishes the claims against the Settling Defendants.

The Settlement Amount is inclusive of attorneys' fees, which shall not exceed 25% of the total Settlement Amount, and attorneys' costs and expenses, including settlement administration, which shall not exceed $200,000.  *See id.*, § 6(a).  The Settlement Amount is also inclusive of

---

[5] The Court denied North Star's Motion for Summary Judgment, *see* Dkt. 237.

1    incentive awards which are sought for Class Plaintiffs Fernandez, Thomas, and Smith for their

2    service to the Class, in an amount of $15,000 per person.  *See id.*, § 6(b).  Finally, $5,500,000 of

3    the Settlement Amount will be placed into a Contingent Cost Fund for the payment of North

4    Star's Court-approved reasonable attorneys' fees and costs, to the extent such fees and costs are

5    incurred after October 30, 2008, and are adjudged to be recoverable from any Settling Defendant.

6    *See id.*, § 3(b).  The remainder of the Settlement Amount, which will be at least $24,300,000,[6]

7    will be paid into the ESOP for the benefit of Plaintiffs.

8         In exchange for this valuable consideration, Plaintiffs and the Class release all claims

9    against Settling Defendants that arise out of the facts, transactions and allegations in this Action,

10    including any claims that could be brought on their behalf by an ESOP fiduciary.  In addition, the

11    named Plaintiffs in their individual capacities release all other claims against the Settling

12    Defendants.  *See id.*, §§ 1(p), 7.  Class Members were not entitled to opt out of this Settlement.

13    *See id.*, § 10.

14         Settling Defendants retained an Independent Fiduciary to review the Settlement in light of

15    Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632 (2003).  As discussed below, the

16    Independent Fiduciary has determined that releases set forth in the Settlement Agreement meet

17    the requirements of the Prohibited Transaction Exemption.  The Independent Fiduciary has also

18    provided a release of the "Settled Claims," which include claims held by the trustee of the ESOP

19    on behalf of or for the benefit of Class Plaintiffs and Class Members.  In addition, the

20    Independent Fiduciary will determine the allocation of the settlement funds among the ESOP

21    participants, according to the terms of the ESOP Plan.

22         Finally, the Settlement contemplates that the Court will enter the following Bar Order

23    upon final approval of the Settlement:  "The Court hereby dismisses with prejudice and equitably

24    bars all claims arising out of or relating to the facts, transactions or allegations of this Action,

25    including but not limited to claims for equitable contribution and/or indemnity, that are or could

26    be asserted, now or in the future, against any Settling Defendant by any person or entity,

27

28    [6] The amount could be up to $29,800,000 if much or all of the $5,500,000 from the Contingent Cost Fund is not used.  This calculation is derived using $155,000 for costs, rather than $200,000, because as noted, Plaintiffs' now request reimbursement of up to $155,000 in costs.

1   including but not limited to North Star Trust Company and its successors and assigns.  However,

2   this Bar Order does not dismiss or bar claims for alleged contractual indemnity by North Star."

3   The proposed order granting final approval provides that North Star is entitled to a pro tanto

4   judgment reduction of $40 million in the event of any finding of liability against North Star.  *See*

5   Plaintiffs' Reply Brief in Support of Motion for Preliminary Approval (Dkt. 261) at 10-12.

6       **B.**    <u>**Notice**</u>

7       Pursuant to the Court's January 23, 2009, Order, the Notice was mailed to Class Members

8   on February 10, 2009.  *See* Declaration of Mark Patton ("Patton Dec.") ¶ 4.  When Notices were

9   returned undeliverable, Class Members were traced and the Notices were re-mailed.  *Id*. ¶¶ 5-6.

10  No class member has objected to the proposed settlement as of the date of this filing.  *Id*. ¶ 7.

11  **IV.**    <u>**FINAL APPROVAL OF SETTLEMENT IS APPROPRIATE**</u>

12      The law favors settlement, particularly in class actions and other complex cases where

13  substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.

14  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Final approval of a proposed

15  class action settlement will be granted where it is established that the proposed settlement is "fair,

16  reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(C).  In determining whether to grant final

17  approval, the Court does not "reach any ultimate conclusions on the contested issues of fact and

18  law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation

19  and avoidance of wasteful and expensive litigation that induce consensual settlements."  *Class*

20  *Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

21  625 (9th Cir. 1982).

22          In the Ninth Circuit, the district court determines the fairness, reasonableness and
        adequacy of the settlement through a balancing test that considers

23          several factors which may include, among others, some or all of the following:  the
        strength of plaintiffs' case; the risk, expense, complexity, and likely duration of

24          further litigation; the risk of maintaining class action status throughout the trial;
        the amount offered in settlement; the extent of discovery completed, and the stage

25          of the proceedings; the experience and views of counsel; the presence of a

26          governmental participant; and the reaction of the class members to the proposed

27          settlement.[7]

28  ───────────────

[7]  As no governmental participant is involved, this factor is not discussed below.

1  *Id.*  The relative importance of any particular factor will depend upon the nature of the claims, the

2  types of relief sought, and the unique facts and circumstances presented by the individual case.

3  *Id.*  Furthermore, "[n]ot all of these factors will apply to every class action settlement.  Under

4  certain circumstances, one factor alone may prove determinative in finding sufficient grounds for

5  court approval."  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-62 (C.D.

6  Cal. 2004) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1983).

7  As explained below, the relevant factors support granting final approval to this Settlement.

8  **A.    The $40 Million Settlement is Fair Considering the Strength of Plaintiffs'**
**Case, the Risks and Complexity Involved, the Stage of the Proceeding, and**
9  **the Amount Offered in Settlement.**

10

11  Among the factors that support final approval of this settlement are the strength of

12  Plaintiffs' case, the risks and complexity of continued litigation, the stage of the litigation, and the

13  amount offered in settlement.  While Plaintiffs believe they have a strong case and would

14  ultimately prevail, Settling Defendants at all times have indicated they will vigorously contest

15  Plaintiffs' claims.  Settling Defendants assert that Plaintiffs' claims are barred by ERISA's statute

16  of limitations, and deny that they breached their fiduciary duties.  Additionally, in settlement

17  discussions, Settling Defendants disputed the amount of damages payable to the Class, or that any

18  damages were payable at all.  Continuing with the litigation against Settling Defendants thus

19  poses risks and uncertainties, and would involve significant expenses and delays.  In comparison,

20  the Settlement commits Settling Defendants to pay $40 million which will compensate Class

21  Members now.

22  It is well accepted that a settlement is evaluated in light of the risks and costs of litigation.

23  "The Court shall consider the vagaries of litigation and compare the significance of immediate

24  recovery by way of the compromise to the mere possibility of relief in the future, after protracted

25  and expensive litigation."  *Nat'l Rural Telecomm.*, 221 F.R.D. at 526.  Thus, "'unless the

26  settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

27  expensive litigation with uncertain results.'"  *Id.* (quoting 4 A. Conte 7 H. Newberg, *Newberg on*

28  *Class Actions* § 11:50 at 155 (4th ed. 2002)).

1       The relief obtained is substantial, and well within the range of reasonableness.  Assuming

2  that the Court awards attorneys' fees of 25 percent of the Settlement Fund, litigation costs of up

3  to $155,000[8] (including anticipated future litigation costs relating to the Final Approval hearing

4  and settlement administration process), the Class Representative service payments of $15,000

5  each, and the contingent cost fund of $5.5 million, the Net Settlement Fund will be $24,255,000,

6  to be divided pro rata among approximately 3,700 class members.  This results in an average

7  (mean) settlement of approximately $6,500 per class member.  Depending on each individual

8  class member's ESOP account and whether the class member worked for Kelly-Moore Paint or

9  CIG, the payment to that individual class member may be substantially higher or lower than

10  $6,500; $6,500 is simply the average distribution.

     **B.**    **The Settlement Reflects the Informed Views of Experienced Counsel and Is the Product of Serious, Arm's-Length Negotiations Conducted After Extensive Discovery and Investigation.**

13       "'Great weight' is accorded to the recommendation of counsel, who are most closely

14  acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm.*, 221 F.R.D. at 528

15  (quotations and citations omitted).  For more than two years, experienced Class Counsel has

16  vigorously litigated the claims asserted against Defendants through extensive written discovery

17  and depositions as well as motion practice.  Jackson Dec. ¶¶ 14-16.  This process has allowed

18  Counsel to assess the strengths and weaknesses of the claims against Settling Defendants and

19  determine that the benefits of the proposed Settlement outweigh the benefits that could be

20  achieved through further litigation of this case.  Jackson Dec. ¶ 20.

21       The Settlement resulted only after arm's-length settlement negotiations that were

22  conducted after rigorous discovery regarding the merits and damages of the disputed claims, and

23  under the supervision of experienced mediator Antonio Piazza.  Jackson Dec. ¶ 17.  The

24  mediation itself lasted more than ten hours and the parties engaged in protracted negotiations

25  thereafter.  *Id*.  The proposed Settlement is the non-collusive product of hard-fought litigation.

26  "A settlement following sufficient discovery and genuine arm's-length negotiation is presumed

---

[8] Plaintiffs' current costs are $124,193.65.  *See* Jackson Dec. ¶¶ 25-26 and Exh. B.  Plaintiffs anticipate that the costs of settlement administration will be approximately $25,000 to $30,000. Accordingly, Plaintiffs request that the Court approve reimbursement of costs of up to $155,000.

1   fair."  *Browning v. Yahoo, Inc.*, 2006 WL 3826714 at *8 (N.D. Cal. Dec. 27, 2006) (quoting *Nat'l*

2   *Rural Telecomm.*, 221 F.R.D. at 528).

3       In sum, the factors relating to the views of counsel, as well as the depth of discovery and

4   the arm's-length nature of settlement, support settlement in this case.

5       **C.**     **The Lack of Opposition By the Class and the Independent Fiduciary's**
                    **Approval Support Approval of the Settlement.**

6

7       As described above, pursuant to the Court's preliminary approval order, the Claims

8   Administrator mailed the Notice of Proposed Partial Class Action Settlement on February 10,

9   2009, to all putative Class Members identified through the data provided by KMH.  Jackson Dec.

10  ¶ 17; Patton Dec. ¶ 4.

11      As the notice states, the deadline to object to the Settlement was March 27, 2009.  As of

12  that date, the Claims Administrator has received no objections to the settlement.  Jackson Dec. ¶

13  17; Patton Dec. ¶ 7.  The absence of objections demonstrates support for the Settlement

14  Agreement.  "'The reactions of the members of a class to a proposed settlement is a proper

15  consideration for the trial court.'"  *Nat'l Rural Telecomm.*, 221 F.R.D. at 528 (quoting 5 *Moore's*

16  *Federal Practice* § 23.85[2][d]).  Here, the fairness, reasonableness, and adequacy of the

17  settlement are well supported by the absence of any objections to the Settlement, as well as the

18  factors discussed above.

19      Moreover, Department of Labor regulations establishing a class exemption under ERISA

20  § 408, 29 U.S.C. § 1108, require that where a plan releases claims against its fiduciaries, an

21  independent fiduciary must be engaged by the plan to review the settlement and determine

22  whether the settlement constitutes reasonable compensation for the plan's claims.  Prohibited

23  Transaction Exemption 2003-39 enables a class to settle and release prohibited transaction claims

24  against a party in interest in exchange for consideration given by, or on behalf of, a party in

25  interest to the plan in settlement of the claims.  68 Fed. Reg. 75632 (2003).  To meet the

26  exemption, a fiduciary (such as an independent fiduciary hired for this purpose) must determine

27  that the settlement is "reasonable given the likelihood of full recovery, the costs and risks of

28  litigation, and the value of claims foregone."  *Id.*  Here, that review was performed by U.S. Trust.

On March 26, 2009, counsel for KMH notified Class Counsel that he had received from U.S. Trust a release on behalf of the Plan and a determination that the class exemption's requirements have been met.  Jackson Dec. ¶ 18.  The independent fiduciary's approval provides further assurance of the fairness and reasonableness of the settlement.

### D.   The Payment to the Named Representatives for Their Service to the Class Is Reasonable and of the Type Routinely Awarded.

The payment of $15,000 each to the Class Representatives is intended to recognize the time and effort they expended on behalf of the Class.  Indeed, "[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)).  In *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995), the court approved incentive awards of $50,000 to the named plaintiff in recognition of the services he provided to the class by participating in numerous telephone conferences and meetings with class counsel, attending several hearings, and having his deposition taken, as well as testifying at trial.  In this case, the Class Representatives have similarly performed important services for the benefit of the class:  they provided information regarding the ESOP during interviews, produced relevant documents, sat for depositions, and worked with Plaintiffs' counsel throughout the case.  *See Van Vranken*, 901 F. Supp. at 299; *see also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving incentive awards of $300,000 to each named Plaintiff in recognition of the services they provided to the class).  No member of the class has objected to payment of incentive awards to the Class Representatives.  Patton Dec. Exh. 7. Accordingly, the payment to the Class Representative is appropriate and justified as part of the overall Settlement, in light of their services to and risks taken on behalf of the Class.  Jackson Dec. ¶ 20.

## V.   THE FEE MOTION SHOULD BE GRANTED

Class Counsel's requested fee award is fair, reasonable, and appropriate under well-established principles of recovery from a common fund.  *Six Mex. Workers*, 904 F.2d at 1311

1    (citing *Blum*, 465 U.S. at 900 n.16).  "It is well established that 'a private plaintiff, or his attorney,

2    whose efforts create, discover, increase or preserve a fund to which others also have a claim is

3    entitled to recover from the fund the costs of his litigation, including attorneys' fees.'"  *In re*

4    *Omnivision Tech., Inc.*, 2007 WL 4293467, at *8 (N.D. Cal. 2007) (quoting *Vincent v. Hughes*

5    *Air West. Inc.* 557 F.2d 759, 769 (9th Cir. 1977)).

6          In *Blum*, 465 U.S. at 900 n.16, the Supreme Court stated that reasonable fees under the

7    common fund doctrine are determined as a percentage of the fund.  The Ninth Circuit has

8    likewise approved the use of fund percentages as a reasonable manner to determine attorneys'

9    fees.  *See Vizcaino*, 290 F.3d at 1047; *Six Mex. Workers*, 904 F.2d at 1311; *see also Omnivision*,

10   2007 WL 4293467, at *8 (observing that "use of the percentage method in common fund cases

11   appears to be dominant").  In the Ninth Circuit, 25 percent of the common fund is the

12   "benchmark" for an attorneys' fees award.  *See Paul, Johnson, Alston & Hunt v. Graulty,* 886

13   F.2d 268, 272 (9th Cir. 1989).  Here, the requested award of $10,000,000 meets the Ninth

14   Circuit's benchmark for an award of attorneys' fees under the percentage of the common fund

15   method.  Additionally, reimbursement of litigation costs of up to $155,000 incurred in pursuing

16   this matter is reasonable, as explained below.

17        **A.      Counsel Are Entitled to an Award of Attorneys' Fees Out of the Common**
             **Fund.**

18

19             **1.      The Equitable Common Fund Doctrine Applies When, as in This Case,**
                  **the Litigation Has Recovered a Certain and Calculable Fund on Behalf**

20                 **of a Group of Beneficiaries.**

21        It is a long-standing principle that when counsel's efforts result in the creation of a

22   common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right

23   to be compensated from that fund as a whole for their successful efforts in creating it.  *See, e.g.,*

24   *Boeing Co. v . Van Gemert*, 444 U.S. 472, 478 (1980) (stating that the Court "has recognized

25   consistently that a litigant or a lawyer who recovers a common fund . . .  is entitled to a

26   reasonable attorney's fee from the fund as a whole"); *Central R.R. & Banking Co. v. Pettus*, 113

27   U.S. 116 (1885) (recognizing common fund doctrine); *Staton v. Boeing Co.*, 327 F.3d 938, 967

28   (9th Cir. 2003) (same).

1   The common fund doctrine rests on the understanding that attorneys should normally be

2   paid by their clients, and that when the attorneys' unnamed class member "clients" have no

3   express retainer agreement, it would result in unjust enrichment not to pay attorneys' fees out of

4   the common fund.  *Boeing*, 444 U.S. at 478.

5   In this case, the litigation has resulted in a Settlement Fund of $40,000,000 (less attorney's

6   fees, costs, and the contingent cost fund) to be distributed to all participants in the ESOP.

7   Because none of these individuals has paid Plaintiffs' counsel fees for their efforts during the

8   litigation, equity requires them to pay a fair and reasonable fee, based on what the market would

9   traditionally require, no less than if they had hired private counsel to litigate their cases

10  individually.  *See id.* at 479-81.

11  **2.     The Fee Award Should Be Calculated as a Percentage of the Common
            Fund.**

12

13  When contingency fee litigation has produced a common fund, the Ninth Circuit has held

14  that it is appropriate to calculate a reasonable fee by awarding a percentage of the total fund.  *See,*

15  *e.g., Six Mex. Workers*, 904 F.2d at 1311 (common fund fee is generally "calculated as a

16  percentage of the recovery"); *see also Paul, Johnson, Alston & Hunt,* 886 F.2d at 272 .

17  The percentage of the fund method is appropriate for a number of well-recognized

18  reasons.  Importantly, the percentage method accomplishes fee spreading in a manner that

19  comports with the legal marketplace, where counsel's success is frequently measured in terms of

20  the results achieved.  *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in

21  common fund cases "the monetary amount of the victory is often the true measure of [counsel's]

22  success").  By assessing the amount of the fee in terms of the amount of the benefit conferred on

23  the class, the percentage method "more accurately reflects the economics of litigation practice"

24  which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented."  *Id.*

25  (internal quotation marks and citation omitted).

26  Further, when clients do not pay an ongoing hourly fee to their counsel, they typically

27  negotiate an agreement in which counsel's fee is based upon a percentage of any recovery.  The

28  percentage of the fund approach mirrors this aspect of the market and, accordingly, reflects the

1  fee that would have been negotiated by the class members in advance, had such negotiations been

2  feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation.

3  *See, e.g., Paul, Johnson, Alston & Hunt*, 886 F.2d at 271.

4       The percentage approach helps incentivize highly qualified attorneys to bring large,

5  complex class actions, even though it is impossible in such cases to negotiate a fee with the

6  unnamed class members in advance.  Basing the common fund fee award on a percentage of the

7  fund also encourages counsel to spend time efficiently and to focus on maximizing the size of the

8  class's recovery, rather than their own lodestar hours.  *Swedish Hospital*, 1 F.3d at 1269.  Finally,

9  the percentage method is far easier for courts to calculate than any alternative method.  *Id*.; *In re*

10  *Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).

11       In light of these benefits, courts have resoundingly approved the percentage of the fund

12  method to calculate a reasonable fee award in common fund cases.  *See Activision*, 723 F. Supp.

13  at 1378 (collecting cases and describing the benefits of a percentage method over the lodestar

14  method for awarding attorneys' fees in common fund settlements).  Thus, in this case, counsels'

15  common fund fees should be determined as a percentage of the total fund that will be distributed

16  to the class.

17              **3.**     **The Requested Fee Award Meets the 25-Percent Benchmark**
                      **Established by the Ninth Circuit.**

18

19       In determining what constitutes a fair and reasonable percentage of a settlement fund for

20  purposes of calculating common fund fees, the Ninth Circuit has stated that courts look to a

21  "benchmark" percentage of 25 percent of the total fund.  *Vizcaino*, 290 F.3d at 1047; *Six Mex.*

22  *Workers*, 904 F.2d at 1311; *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272; *see also Morganstein*

23  *v. Esber*, 768 F. Supp. 725, 728 (C.D. Cal. 1991) (stating that "*Paul, Johnson* establishes 25

24  percent as the benchmark for common fund cases").[9]

25  _____

26  [9] In approving an award of 28 percent of the $96,885,000 settlement fund, the *Vizcaino* court
surveyed attorneys' fees awards in so-called "megafund" cases—that is, common fund
settlements of $50-200 million—found in the Westlaw ALLCASES database and Class Action

27  Reports' attorneys' fees section from Jan. 1, 1996 through Dec. 31, 2001.  *Vizcaino*, 290 F.3d at
1046 n.1, & Appendix.  Even where the common funds fell into this megafund range, the

28  *Vizcaino* court noted that a majority of fee awards were "clustered in the 20-30 percent range."
*Id*. at 1050 n.4, & Appendix.  In common fund settlements of less than $50 million, such as this

1     **B.     The Requested Fee Award Is Fair and Reasonable.**

2          The requested 25-percent common fund award is justified by the financial risks

3     undertaken by Class Counsel in this litigation.  Counsel accepted and litigated this class action

4     solely on a contingency fee basis.  Counsel has received no compensation for attorney time to

5     date, nor for any of the considerable expenses incurred.  Moreover, there has never been any

6     guarantee that counsel would be reimbursed for the costs, or paid for their time.  The case

7     involved significant risk and complexity.

8          The fairness of this fee award is further supported by the high quality of Class Counsel's

9     legal representation.  The efforts expended by Class Counsel in this case are described above and

10    are described in the accompanying Declarations of Todd Jackson and Peter Rukin.  As these

11    declarations reflect, Class Counsel's diligent, efficient, and creative pursuit of this matter

12    positioned Plaintiffs to successfully settle this case for $40,000,000, and so achieve redress for the

13    entire Class, and thus avoid the inevitable expense and risk attendant to protracted litigation.  *See*

14    *generally* Jackson Dec. ¶¶ 14-17; Rukin Dec ¶ 8.

15         Aside from the general risks and complexity associated with protracted class action

16    litigation, this case had specific risks and complexity.  The transactions around which Plaintiffs'

17    claims against Settling Defendants revolve took place in 1998 and 1999, so the case was filed

18    outside of the 6-year ERISA statute of limitations.  In order to proceed to the merits, Plaintiffs

19    would have had to show that Settling Defendants engaged in fraud or concealment to warrant

20    tolling the statute of limitations.  Although Plaintiffs believe they would have prevailed, there is

21    little law in the Ninth Circuit on the fraud or concealment exception.  *See, e.g.*, *Barker v. Am.*

22    *Mobil Power Corp.*, 64 F.3d 1397, 1401 (9th Cir. 1995).  Further, discovery was particularly

23    complex because seeking to prove that Settling Defendants engaged in fraud or concealment and

24

25    one, courts have awarded a higher percentage of the common fund as attorneys' fees.  *See, e.g.*, *In*
      *re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming an award equal to

26    33 percent of the common fund); *In re Activision*, 723 F. Supp. at 1375 (awarding plaintiffs'
      counsel 32.8 percent of the common fund created to settle the litigation); *In re Ampicillin*

27    *Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (awarding 45 percent of $7.3 million
      settlement fund); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F. Supp. 1195,

28    1199 (S.D.N.Y. 1979), *aff'd* 622F.2d 1106 (2nd Cir. 1980) (approximately 53 percent of
      settlement fund awarded).

1   that they breached their fiduciary duties required Plaintiffs to develop an extensive record not

2   only about the two ESOP transactions and the subsequent performance of the company, but also

3   about the more than twenty-year history of asbestos litigation against Kelly-Moore Paint Co. and

4   the multiple lawsuits between KMH and its insurers regarding coverage for asbestos claims.

5        Finally, the requested amount of attorneys' fees and costs was stated explicitly in the

6   Notice of Proposed Class Action Settlement.  Preliminary Approval Order, Exhibit B (Dkt. 271).

7   Class Members had until March 27, 2009, to raise any objections.  No objections to either the

8   percentage of the common fund sought as attorneys' fees or to the award of costs sought by Class

9   Counsel have been received.  Patton Dec. ¶ 7.  Courts have observed that the absence of any

10  objections to the fees and costs requested supports the conclusion that the requested award is fair,

11  adequate, and reasonable.  *See In re Heritage Bond Litig.*, 2005 WL 1594389, at *15 (C.D. Cal.,

12  June 10, 2005) (citing *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 148-49 (E.D. Pa.

13  2000); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326-8 (E.D.N.Y. 1993)).

14       Finally, the Independent Fiduciary reviewed Class Counsel's requested attorney's fees and

15  expressed no objection.  Jackson Dec. Exh. A.

16       **C.    Class Counsel Are Entitled to Recover Costs**.

17       Class Counsel request reimbursement from the fund of out-of-pocket expenses they

18  incurred during this litigation.  Reimbursement for these expenses from the common fund is

19  appropriate for the same reasons attorneys' fees should be paid out of the fund:  all beneficiaries

20  should bear their fair share of the costs of the litigation, and these are the normal costs of

21  litigation that counsel traditionally bill their paying clients.  *See* 1 Alba Conte, *Attorney Fee*

22  *Awards* § 2:8 at 50-51 (3d ed. 2004) ("The prevailing view is that expenses are awarded in

23  addition to the fee percentage.")).  As one commentator has written,

24          [A]n attorney who creates or preserves a common fund by judgment or settlement
            for the benefit of a class is entitled to receive reimbursement of reasonable fees
25          and expenses involved.  The equitable principle that all reasonable expenses
            incurred in the creation of a fund for the benefit of a class are reimbursable
26          proportionately by those who accept benefits from the fund authorizes
            reimbursement of full reasonable litigation expenses as costs of the suit
27

28  Conte, *supra*, § 2.19 (citing *Trustees v. Greenough*, 105 U.S. 527 (1881)).  The expenses that may

1  be reimbursed from the common fund are not limited to those taxed in a judgment against an

2  opponent, but instead, encompass "all reasonable expenses." *Id.  See also Harris v. Marhoefer*,

3  24 F.3d 16, 19 (9th Cir. 1994) (attorneys may be reimbursed for reasonable out-of-pocket

4  expenses that were "incidental and necessary to the representation of those clients").

5      To date, Class Counsel have incurred $124,193.65 in litigation costs and expenses, and

6  will incur additional costs through the conclusion of this matter (specifically, the costs of

7  settlement administration are not reflected in the current costs).  Jackson Dec. ¶¶ 25-25.  These

8  costs include deposition-related expenses, photocopying and mailing expenses, and other

9  reasonable litigation-related costs including the costs of hiring an expert to assist with damages

10  analysis prior to mediation. *See id*.  All costs incurred here were necessary to the prosecution of

11  this litigation and would normally have been billed to a client paying for counsel's services on a

12  regular basis.  These costs are quite reasonable for a case of this duration and complexity and

13  should be compensated in full.  To provide for additional expenditures in the continued

14  administration of the settlement, Plaintiffs hereby request that the Court now approve costs of up

15  to $155,000 total.

16  **VI.    CONCLUSION**

17      For all of the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant

18  final approval of the proposed class action settlement and plan of distribution; (2) enter a final

19  judgment consistent with the terms of the settlement; (3) approve the service payment of $15,000

20  to Named Plaintiffs and Class Representatives Thomas Fernandez, Lora Smith, and Tosha

21  Thomas; (4) approve the payment of $10 million as reasonable attorneys' fees and the payment of

22  up to $155,000 as reasonable costs; (5) enter the Bar Order; and (6) reserve jurisdiction for

23  purposes of supervising the implementation, enforcement, construction, and interpretation of the

24  Settlement Agreement.

25

26  DATED: March 27, 2009                          Respectfully submitted,

27                                                 LEWIS, FEINBERG, LEE,
                                                   RENAKER & JACKSON, P.C.
28

1

2         By:  ____/s/_____
                 Todd Jackson

3               Peter Rukin – CA State Bar No. 178336
               RUKIN HYLAND DORIA

4               & TINDALL LLP
               100 Pine Street, Suite 725

5               San Francisco, CA 94111
               Telephone: (415) 421-1800

6               Facsimile: (415) 421-1700
               Email: peterrukin@rhddlaw.com

7

8               *Attorneys for Plaintiffs and the Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28