**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7        IN THE UNITED STATES DISTRICT COURT

8

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                          No. C 06-7339 CW

THOMAS FERNANDEZ; LORA SMITH; and
11   TOSHA THOMAS, individually and on
     behalf of a class of all other       ORDER DENYING NORTH
12   persons similarly situated,          STAR'S MOTION FOR
                                          JUDGMENT ON THE
13            Plaintiffs,                  PLEADINGS AND GRANTING
                                          THE SETTLING PARTIES'
14       v.                               CROSS-MOTION FOR
                                          JUDGMENT ON THE
15   K-M INDUSTRIES HOLDING CO., INC.; K-M PLEADINGS
     INDUSTRIES HOLDING CO., INC. ESOP
16   PLAN COMMITTEE; WILLIAM E. AND
     DESIREE B. MOORE REVOCABLE TRUST;
17   TRUSTEES OF THE WILLIAM E. AND
     DESIREE B. MOORE REVOCABLE TRUST; CIG
18   ESOP PLAN COMMITTEE; NORTH STAR TRUST
     COMPANY; DESIREE B. MOORE REVOCABLE
19   TRUST; WILLIAM E. MOORE MARITAL
     TRUST; WILLIAM E. MOORE GENERATION-
20   SKIPPING TRUST; and DESIREE MOORE,
     both in her individual capacity and
21   as trustee of the William E. and
     Desiree B. Moore Revocable Trust's
22   successor trusts named above,

23            Defendants.
     _____/
24

25       Plaintiffs Thomas Fernandez, Lora Smith and Tosha Thomas

26   brought this action under the Employee Retirement Income Security

27   Act (ERISA).  They allege, among other things, that Defendant North

28   Star Trust Company breached its fiduciary duties as the trustee of

United States District Court
For the Northern District of California

an employee stock ownership plan (ESOP) in which they participate. North Star now moves for judgment on the pleadings on its cross-claims for contractual indemnity against Defendant K-M Industries Holding Co., Inc. (KMH) and against Defendants William E. and Desiree B. Moore Revocable Trust, Trustees of the William E. and Desiree B. Moore Revocable Trust, Desiree B. Moore Revocable Trust, William E. Moore Marital Trust, William E. Moore Generation-Skipping Trust and Desiree Moore (collectively, the Moore Trust Defendants). These Defendants oppose the motion jointly with Plaintiffs (together, the Settling Parties) and cross-move for judgment on the pleadings on North Star's cross-claims. The matter was heard on August 6, 2009. Having considered oral argument and all of the papers submitted by the parties, the Court denies North Star's motion and grants the Settling Parties' cross-motion.

BACKGROUND

I.   Plaintiffs' Claims Against North Star

Plaintiffs are former employees of either Kelly-Moore Paint Company or Capital Insurance Group (CIG). Kelly-Moore was founded in 1946 by William Moore, who served as the company's president until 1984 and effectively exercised control over the company until shortly before his death in 2004. Kelly-Moore acquired CIG in 1985. Kelly-Moore and CIG continued to be wholly owned by Mr. Moore and his family through a trust, the successor trusts of which are the Moore Trust Defendants, until 1998.

This lawsuit arises from Mr. Moore's establishment of an ESOP for Kelly-Moore and CIG employees in 1998. In connection with the establishment of the ESOP, Kelly-Moore was restructured. KMH was

created as a holding company, all of whose shares were owned by the Moore Trust. Kelly-Moore and CIG became wholly-owned subsidiaries of KMH. KMH's shares were organized into two groups of "tracking stock," each intended to track the performance of its associated subsidiary: the "series P" stock tracked Kelly-Moore and the "series I" stock tracked CIG.

In October, 1998, Mr. Moore sold forty-two percent of the Moore Trust's interest in KMH's series P stock to the ESOP for $232 million. In October, 1999, Mr. Moore sold forty-two percent of the Moore Trust's interest in KMH's series I stock to the ESOP for $55 million. Mr. Moore was the sole trustee for the ESOP in connection with both of these transactions. He was therefore both the buyer and the seller in the transactions. The gist of the complaint is that the ESOP purchased KMH shares from the Moore Trust for more than they were worth because Mr. Moore failed to provide valuation experts with complete and accurate information about Kelly-Moore's exposure to liability from asbestos litigation.

In 2003, Mr. Moore's deteriorating health necessitated his resignation as the ESOP trustee. North Star was appointed to replace him in April of that year. As North Star began familiarizing itself with KMH's potential asbestos liability, it realized that the initial stock valuation raised some concerns. However, North Star ultimately decided not to take any action to challenge the price for which the ESOP purchased the KMH shares.

Plaintiffs assert a claim against North Star for breach of fiduciary duty in violation of ERISA. See 29 U.S.C. §§ 1104(a)(1), 1109, 1132(a)(2), 1132(a)(3). Specifically, Plaintiffs charge

North Star with liability under 29 U.S.C. § 1105(a)(3), which provides that a fiduciary "shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." Plaintiffs claim that, despite clear warning signs, North Star did not take adequate steps to investigate whether the ESOP paid more than fair market value for the KMH shares it purchased from the Moore Trust and to remedy the overpayment. As discussed in more detail below, North Star has asserted cross-claims for contractual indemnification against the Settling Defendants.

On May 8, 2009, the Court granted final approval of a settlement of Plaintiffs' claims against KMH and the Moore Trust Defendants. The settlement agreement provides that, if Plaintiffs prevail against North Star but North Star prevails against the Settling Defendants on its claim for indemnification, Plaintiffs will accept a reduction in the judgment against North Star in the amount by which the Settling Defendants are required to indemnify North Star. Accordingly, if North Star prevails against either KMH or the Moore Trust Defendants on its claim for total indemnification, Plaintiffs will not recover any funds beyond the amount for which they have already settled.

II.  North Star's Claims for Indemnity

North Star bases its claim for indemnity against the Moore Trust Defendants on the agreements that governed the ESOP's initial stock purchases in 1998 and 1999. It bases its claim for indemnity

4

against KMH on the agreement that governed its engagement as the ESOP trustee in 2003.

A.   The Stock Purchase Agreements

The terms of the ESOP's 1998 and 1999 purchases of KMH stock from the Moore Trust are set out in separate stock purchase agreements.  The two agreements are identical in all respects relevant to the present motion.

North Star asserts that its indemnification rights are spelled out in sections 2(b) and 7 of the agreements.  Section 2(b) provides:

> The purchase price in Section 2(a) hereof is not more than the fair market valuation established as of the date of this Agreement.  In the event that there is a final determination by the Internal Revenue Service, a court of competent jurisdiction or otherwise that the fair market value of the Shares as of this date is less than the Purchase Price paid by the Trustee, then Selling Shareholder shall transfer to the Trustee an amount of cash, or transfer to the Trustee shares of [KMH's] Class P-B Stock, or any combination thereof, equal in value to the difference between the Purchase Price and said fair market value for all such Shares.

Diller Dec. Ex. 1 at 2-3; Ex. 2 at 2-3.[1]  Section 7 provides:

> Selling Shareholder agrees to indemnify and hold harmless Trustee, and Trustee agrees to hold Selling Shareholder harmless, from any and all claims, actions and suits, whether groundless or otherwise, and from and against any and all liabilities, losses, damages, costs, charges, counsel fees and other expenses of every nature and character resulting or arising therefrom or resulting from or arising out of the breach of any representation, agreement or warranty made under or pursuant to this Agreement.

Id. Ex. 1 at 6; Ex. 2 at 6.

---

[1]The contents of the agreements on which North Star relies are alleged in the pleadings and are not disputed.  They are therefore appropriately considered on this motion.

5

North Star also relies on section 11 of the agreements, which provides that the agreements "shall inure to the benefit of and be binding upon the parties named herein and their successors and assigns." Id. Ex. 1 at 8; Ex. 2 at 8.

B.   The Trustee Engagement Agreement

North Star's appointment as the ESOP trustee is governed by a Trustee Engagement Agreement between North Star and KMH.  The agreement contains an indemnification provision that states:

> Indemnification.  For purposes of this Section 14, the term "Indemnitees" shall mean North Star and its officers, directors, employees, and agents.  Subject to the applicable provisions of ERISA, the Company [(KMH)] shall indemnify the Indemnitees for any loss, cost, expense, or other damage, including reasonable attorney's fees, suffered by any of the Indemnitees resulting from or incurred with respect to any legal proceedings related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement.  The indemnification provided for in this Section 14 shall extend to: (a) any action taken or not taken by any of the Indemnitees at the direction or request of the Plan Administrator or of any agent of the Plan Administrator; (b) any action taken or not taken by the prior trustee or trustees; and (c) all reasonable costs and expenses incurred by the Indemnitees in enforcing the indemnification provisions of this Section 14, including reasonable attorney's fees and court costs.  However, these indemnification provisions shall not apply to the extent that any loss, cost, expense or damage with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from the gross negligence of one or more of the Indemnitees or from the willful misconduct of one or more of the Indemnitees.

Diller Dec. Ex. 3 at 4.

LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

6

Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1990).

DISCUSSION

I.  North Star's Claim for Indemnification against KMH

Section 410(a) of ERISA provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). The Settling Parties argue that, even assuming the scope of the Trustee Engagement Agreement's indemnification provision extends to the claims asserted against North Star in this action,[2] the provision is invalid under section 410(a).

Section 410(b) states that nothing in section 410(a) precludes:

(1) a plan from purchasing insurance for its fiduciaries or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary, if such insurance permits recourse by the insurer against the fiduciary in the case of a breach of a fiduciary obligation by such fiduciary;

(2) a fiduciary from purchasing insurance to cover liability under this part from and for his own account; or

(3) an employer or an employee organization from purchasing insurance to cover potential liability of one

---

[2]The Settling Parties argue that the claims asserted against North Star do not fall within the categories of claims covered by the indemnification provision. Because the Court concludes that the provision is invalid, it need not reach this issue.

7

United States District Court
For the Northern District of California

or more persons who serve in a fiduciary capacity with regard to an employee benefit plan.

29 U.S.C. § 1110(b).

The Department of Labor (DOL) has issued a regulation interpreting section 410(a)'s application to indemnification agreements.  The regulation provides in relevant part:

> The Department of Labor interprets this section to permit indemnification agreements which do not relieve a fiduciary of responsibility or liability under Part 4 of Title I.  Indemnification provisions which leave the fiduciary fully responsible and liable, but merely permit another party to satisfy any liability incurred by the fiduciary in the same manner as insurance purchased under section 410(b)(3), are therefore not void under section 410(a).
>
> Examples of such indemnification provisions are:
>
> (1) Indemnification of a plan fiduciary by (a) an employer, any of whose employees are covered by the plan, or an affiliate (as defined in section 407(d)(7) of the Act) of such employer, or (b) an employee organization, any of whose members are covered by the plan; and
>
> (2) Indemnification by a plan fiduciary of the fiduciary's employees who actually perform the fiduciary services.
>
> The Department of Labor interprets section 410(a) as rendering void any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan.  Such an arrangement would have the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations.

29 C.F.R. § 2509.75-4.

Although the indemnification provision in the Trustee Engagement Agreement does not require the ESOP itself to indemnify North Star -- an arrangement that would clearly be void under section 410(a) -- it would impose liability on the company whose

8

shares constitute the ESOP's sole asset.  The price of those shares is determined annually by a valuation of KMH.  If KMH were forced to indemnify North Star against a sizeable judgment for breach of fiduciary duty, it would almost certainly decrease the value of KMH and, by extension, the ESOP shares.[3]  The ESOP, which owns forty-two percent of KMH, would thus shoulder a large part of the burden of indemnification.  While the DOL's regulation provides, as an example, that indemnification of a plan fiduciary by the employer may be permissible, ESOP plans differ from other plans governed by ERISA in that a judgment against the employer will negatively affect the plan itself.  Because the Trustee Engagement Agreement's indemnification provision would indirectly impose on the ESOP the cost of any breach of fiduciary duty by North Star, the provision is invalid under section 410(a).

This conclusion is supported by a recent Ninth Circuit case, Johnson v. Couturier, ___ F.3d ___, 2008 WL 4443085 (9th Cir. 2009).  In Johnson, the district court had granted a preliminary injunction prohibiting the company in which an ESOP plan held shares from advancing individual defendants, who were trustees of the ESOP, the cost of defending against claims for breach of fiduciary duty.  Advancement of such costs was required by an indemnification provision between the company and the defendants. The district court agreed with "a number of federal courts" that "have held that under ERISA § 410, where an ESOP owns a substantial

---

[3]KMH considers its value to be confidential.  The Court notes, however, that the amount Plaintiffs seek for North Star's alleged breach of fiduciary duty is significant in relation to KMH's total value.

United States District Court
For the Northern District of California

portion of the sponsoring company's stock, it would be inconsistent with the intentions of ERISA to allow a trustee who has breached his fiduciary duties to the ESOP to be indemnified by the sponsoring company where the ESOP would indirectly bear the financial burden." Johnson v. Couturier, 2008 WL 4443085, at *5 (E.D. Cal.) (internal quotation marks omitted).

The Ninth Circuit affirmed. In doing so, it rejected the defendants' argument -- an argument that North Star advances here -- that section 410(a) did not apply "because advancement would be made from corporate, not plan, assets." 2009 WL 2216805 at *9. The court recognized that any proceeds taken from the corporation to pay for the defendants' defense costs would reduce the funds available for distribution to ESOP participants. "In other words," the court stated, advancement was "tantamount to asking ESOP participants to pay for Defendants' defense costs," an arrangement that was impermissible under section 410(a). 2009 WL 2216805 at *9.

North Star attempts to distinguish Johnson on the basis that the ESOP in that case owned 100 percent of the company against which indemnification was sought, and that the company was in the process of liquidating its assets, such that any funds used to pay the costs of the individual defendants would be unavailable for distribution to plan participants. However, while the financial damage to the ESOP participants in Johnson may have been more closely linked to the challenged indemnification than in the present case, the court's decision did not turn on this point. The rationale underlying the court's holding supports the conclusion

10

United States District Court
For the Northern District of California

1   that indemnification agreements are invalid any time an ESOP would

2   bear the financial burden of indemnification, whether directly or

3   indirectly.

4       Even if <u>Johnson</u> did not govern this case, the lower court

5   decisions on which North Star relies do not support the conclusion

6   that the Trustee Engagement Agreement's indemnification provision

7   is valid.  The first of these cases is <u>Wells Fargo Bank v. Bourns,</u>

8   <u>Inc.</u>, 860 F. Supp. 709 (N.D. Cal. 1994).  In <u>Bourns</u>, the court

9   addressed the validity of an indemnification agreement between the

10  trustee of an employee profit-sharing plan and the employer, which

11  was also a fiduciary of the plan.  The DOL had previously found

12  that the company had breached its fiduciary duty when it directed

13  the trustee to invest plan assets in a real estate venture that

14  later failed.  The trustee incurred significant expenses in

15  successfully defending against the DOL's investigation into whether

16  it had also breached its fiduciary duty by following the company's

17  direction and, subsequently, against a lawsuit brought against it

18  by the company for breach of fiduciary duty.  The trustee then sued

19  the company for indemnification, seeking reimbursement for the

20  costs of its defense.  The court held that the indemnification

21  provision was valid under section 410(a) of ERISA and the DOL's

22  interpretive regulation.  In reaching this conclusion, the court

23  noted that "ERISA § 410 seeks to avoid provisions which circumvent

24  express statutory requirements to the detriment of Plan

25  beneficiaries."  <u>Id.</u> at 716.  Such an effect was not the case in

26  <u>Bourns</u>, however, because -- as the parties agreed -- there was "no

27  possibility that the beneficiaries themselves would suffer as a

28                                  11

result of enforcement of the Agreement." Id. Here, in contrast, enforcement of the indemnification clause would cause Plaintiffs to suffer. Thus, Bourns does not support North Star's position.

North Star also cites Pudela v. Swanson, 1995 WL 77137 (N.D. Ill.), in which the court addressed the validity of a corporate bylaw that, under certain circumstances, provided indemnification for corporate officers and directors sued in connection with the performance of their duties. The plaintiffs argued that the provision was invalid because it would permit ESOP assets to be used for the indemnification. The provision, however, only applied to officers and directors who had acted in good faith and in a manner they reasonably believed was not opposed to the best interests of the company. Id. at *3. Because the bylaw "could be interpreted as leaving plan fiduciaries fully responsible and liable for any breach of fiduciary duties," the court could not determine that the provision was invalid as a matter of law. Id. at *5.[4] Here, in contrast, the Trustee Engagement Agreement would leave KMH responsible and liable for North Star's breach of fiduciary duty unless the breach involved gross negligence or willful misconduct.

Other district courts, in cases more similar to this one than Bourns and Pudela, have held that indemnification of an ESOP

---

[4]At the same time, the defendants had not established that any of the corporate directors had provided the corporation with an undertaking to repay legal expenses if their defense was unsuccessful. The court therefore found that the potential existed that the directors would not bear the financial burden of a finding that they breached their fiduciary duties. For this reason, the court deferred ruling on the validity of the indemnification clause. Id.

United States District Court
For the Northern District of California

12

United States District Court
For the Northern District of California

trustee by the company whose shares the ESOP owns is invalid under section 410(a).  In <u>Donovan v. Cunningham</u>, 541 F. Supp. 276 (S.D. Tex. 1982), <u>rev'd in part on other grounds</u>, 716 F.2d 1455 (5th Cir. 1983), for example, the court stated:

> In the instant case, of course, the ESOP owns a substantial portion of MCS stock.  It is inconsonant with the intentions of section 410 of ERISA, 29 U.S.C. 1110, and the regulations quoted above [(29 C.F.R. § 2509.75-4)], to permit indemnification by MCS where the ESOP would indirectly bear the financial burden.  Such situation is not a mere shifting of liability incurred by a fiduciary in the same manner as insurance.  Further that there is no adjudication of Allied's status as fiduciary does not affect the court's ruling on this question.  The goal is to protect the ESOP from suffering any expense of this suit -- that goal cannot be met by requiring MCS to indemnify any part [sic] to this suit.

<u>Id.</u> at 289.  The only basis North Star identifies for distinguishing <u>Donovan</u> is the fact that the indemnification agreement in that case was set forth in the ESOP plan documents, not a separate agreement between the fiduciary and the company. But the document in which the indemnification agreement is contained does not bear on the question of its validity.  The question is whether the <u>nature</u> of the agreement renders it invalid. In addition, neither section 410(a) nor the DOL's implementing regulation contains any reference to the location of the indemnification agreement.

<u>Delta Star, Inc. v. Patton</u>, 76 F. Supp. 2d 617 (W.D. Pa. 1999), also dealt with the validity of an indemnification agreement under section 410(a) when an ESOP trustee is alleged to have committed a breach of fiduciary duty.  The agreement in <u>Delta Star</u> provided that the sponsoring company would indemnify any member of the ESOP board of trustees "against any personal liability or

13

**United States District Court**
For the Northern District of California

expense resulting from his service on the ESOP Board . . . , except such liability or expense as may result from his own willful misconduct." Id. at 640.  The court stated that indemnification was "prohibited by law in this case" because "ERISA prohibits, as being against public policy, any agreement that purports to relieve a fiduciary of responsibility or liability under ERISA for either breach of fiduciary duty or self-dealing." Id. (citing Moore v. Williams, 902 F. Supp. 957, 966 (N.D. Iowa 1995); Donovan, 541 F. Supp. at 289).  As North Star points out, this conclusion could be considered dictum because the court found that the trustee defendant had engaged in willful misconduct, and thus his actions did not fall within the scope of the indemnification provision. Nonetheless, the court in Delta Star was clearly of the view that the indemnification provision was invalid on its face.

North Star also notes that, because of the settlement agreement between Plaintiffs and the Settling Defendants, KMH will not actually be forced to pay any additional sums if North Star prevails on its claim for indemnification against KMH. Accordingly, there is no possibility that the value of the ESOP shares will actually decrease if KMH is held liable for indemnification.  While this is true, the validity of an indemnification agreement under ERISA must be determined from the face of the agreement.  Moreover, the Settling Parties correctly point out that, even though the value of the ESOP shares would not actually decrease if North Star succeeded on its indemnification against KMH, Plaintiffs nonetheless would suffer a financial detriment; Plaintiffs would be forced to forego a potentially

14

significant recovery against North Star.

In sum, the Court agrees with Plaintiffs that the Ninth Circuit's decision in <u>Johnson</u> compels the conclusion that the indemnification provision in the Trustee Engagement Agreement is invalid.  Even if <u>Johnson</u> were distinguishable, the Court agrees with the other district courts that have concluded that any indemnification provision, such as the one here, that imposes the burden of an ESOP trustee's breach of fiduciary duty on the company that sponsors the ESOP is invalid under section 410(a) of ERISA. Accordingly, North Star cannot recover against KMH.

II.  North Star's Claim for Indemnification against the Moore Trust Defendants

A.   Section 2(a) of the Stock Purchase Agreements

As noted above, section 2(a) of the stock purchase agreements provided that the Moore Trust would transfer to Mr. Moore, as trustee for the ESOP, any amounts that the ESOP was found by a court to have overpaid for the stock.  North Star argues that, because Plaintiffs' claim against it is based on its alleged failure to investigate and rectify the original overpayment for the ESOP shares, and because it succeeded to Mr. Moore's rights under the stock purchase agreements when assumed the role of trustee, if Plaintiffs were to prevail, this provision would be triggered and North Star would be entitled to recover the amount of overpayment from the Moore Trust.

North Star's interpretation of section 2(a) stretches reason. A straightforward reading of the text indicates that the provision exists for the benefit of ESOP participants.  It requires the Moore

**United States District Court**
For the Northern District of California

Trust Defendants to return to the ESOP any amounts they are found to have wrongfully received as a result of the plan's overpayment. The fact that the provision requires the Moore Trust Defendants to transfer funds to the trustee does not suggest that the trustee may keep the funds for itself; the trustee must hold the funds in trust for the plan beneficiaries.  It is inconceivable that the parties to the agreements would have intended the trustee itself to benefit financially from an overpayment.  To the extent North Star argues that section 2(a) provides that the Moore Trust, and no one else, can be called upon to compensate the ESOP for an overpayment, nothing in the text suggests as much.  Moreover, North Star is not being charged with liability for the overpayment but for breaching its fiduciary duty by failing to investigate and take appropriate action to remedy the overpayment.  Section 2(a) does not require the Moore Trust Defendants to indemnify North Star for this breach.

B.   Section 7 of the Stock Purchase Agreements

Pursuant to section 7 of the stock purchase agreements, the Moore Trust agreed "to indemnify and hold harmless" Mr. Moore, who at the time was the trustee of the ESOP, and Mr. Moore agreed to hold the Moore Trust harmless (but not to indemnify it) "from any and all claims, actions and suits . . . and from and against any and all liabilities, losses, damages, costs, charges, counsel fees and other expenses . . . resulting from or arising out of the breach of any representation, agreement or warranty made under or

16

pursuant to this Agreement."[5]

The fact that section 7 imposes reciprocal obligations on the parties makes it difficult to assign the provision a meaning. There are three possible interpretations: 1) Mr. Moore and the Moore Trust each agreed not to sue the other for breach of representations he or it made in connection with the agreements; 2) Mr. Moore and the Moore Trust agreed not to seek indemnity from each other if either was sued by a third party for breach of representations he or it made in connection with the agreements; or 3) Mr. Moore and the Moore Trust each agreed to indemnify the other in the event that one was sued for the other's breach of representations made in connection with the agreements. None of these interpretations is entirely satisfactory but, as explained below, the Court concludes that the second interpretation is the most reasonable.

Plaintiffs advance the first interpretation: that section 7 imposes a mutual promise not to sue for breach of representations

---

[5]The Court will assume for the purpose of this discussion that Plaintiffs' claim against North Star arises out of the breach of a representation made under the stock purchase agreements. This matter, however, is disputed. As Plaintiffs point out, North Star is being charged with liability for its own breach of fiduciary duty, which took place after it assumed its position as the ESOP trustee in 2003. Even though its alleged breach relates to the stock purchase agreements in that it is being charged with liability for failing to investigate and rectify Mr. Moore's earlier breach, it does not appear that the claims against North Star "arise out of" the earlier breach. Moreover, section 7 extends only to liability arising out of the breach of a "representation, agreement or warranty" made pursuant to the stock purchase agreements. North Star has pointed to no representation, agreement or warranty in the stock purchase agreements that it is alleged to have breached. Because the Court concludes that North Star may not recover under section 7 of the stock purchase agreements in any event, it need not decide these issues.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

made in connection with the stock purchase agreements.  Such an interpretation would convert the provision from one requiring indemnification, which contemplates a lawsuit by a third party, into a two-party exculpatory clause.  See Queen Villas Homeowners Ass'n v. TCB Prop. Mgmt., 149 Cal. App. 4th 1, 5 (2007).  If section 7 were interpreted this way, it would prevent the ESOP trustee from attempting to recover any overpayment from the Moore Trust.  Because such a provision would relieve the trustee from its fiduciary duties -- and, in fact, would prohibit the trustee from discharging those duties -- it would be void under section 410(a) of ERISA.  Because an interpretation that gives effect to a contractual provision is preferred to one that makes the provision void, see Cal. Civ. Code § 3541, the Court will not interpret the contract as prohibiting the parties to the stock purchase agreements from suing each other for breaches of representations made in connection with the agreements.  In addition, to be effective, an exculpatory clause must contain "clear, unambiguous and explicit language" releasing one side from liability to the other.  Queen Villa, 149 Cal. App. 4th at 5 (citation omitted).  Section 7 contains no such language.

North Star favors the third interpretation: that Mr. Moore agreed, as the ESOP trustee, to indemnify the Moore Trust for any third-party liability it incurred as a result of Mr. Moore's conduct, and that the Moore Trust agreed to indemnify Mr. Moore against any third-party liability he incurred as a result of the Moore Trust's conduct.  North Star's interpretation overlooks the fact that section 7 contains no promise on Mr. Moore's part to

18

United States District Court
For the Northern District of California

indemnify the Moore Trust.  In addition, this interpretation makes
little sense given that Mr. Moore was, in reality, both the buyer
and the seller in the ESOP transaction.  Moreover, to the extent
certain representations could be attributed to Mr. Moore as trustee
of the Moore Trust and other representations could be attributed to
Mr. Moore as trustee of the ESOP, North Star's claim for indemnity
under the stock purchase agreements is premised on its succession
to Mr. Moore's rights as trustee of the <u>ESOP</u>.  Under North Star's
own interpretation of section 7, it would therefore only be
entitled to indemnity from the Moore Trust if it incurred third-
party liability as a result of the <u>Moore Trust's</u> conduct.  North
Star is not even arguably being charged with liability for a
"representation, agreement or warranty" made by the Moore Trust.
It is being charged with liability for breaching its fiduciary duty
by failing to investigate and remedy Mr. Moore's previous breach as
<u>trustee of the ESOP</u>.  Thus, even under North Star's interpretation
of the reciprocal nature of section 7, its indemnity claim fails.

The second interpretation of the reciprocal indemnification
provision is the most reasonable: the provision prevents the
parties from seeking indemnity from each other where, as here, a
third party charges one or both of them with a breach.  This
interpretation finds support in <u>Queen Villas</u>, which addresses the
meaning of the term "hold harmless":

> Are the words "indemnify" and "hold harmless" synonymous?
> No.  One is offensive and the other is defensive -- even
> though both contemplate third-party liability situations.
> "Indemnify" is an offensive right -- a sword -- allowing
> an indemnitee to seek indemnification.  "Hold harmless"
> is defensive: The right not to be bothered by the other
> party itself seeking indemnification.

1

Let us illustrate: As every veteran of construction
defect litigation and every judge who ever picked up a
hefty construction defect file knows, in third-party
situations there is usually a blizzard of cross-
complaints seeking indemnity for the cross-complainant's
possible liability for indemnity.  Consider this
hypothetical: Homeowner sues general contractor.  General
contractor sues Subs 1 and 2 for indemnity, that is, to
make both subcontractors cover the general's prospective
liability to the homeowner.  Now suppose Sub 1 has an
agreement with Sub 2 which requires Sub 2 to "indemnify
and hold harmless" Sub 1.  Sub 1 can use the word
"indemnify" in the agreement as a basis to sue Sub 2 for
indemnity for the possible liability Sub 1 may incur to
the general.  And Sub 1 can use the phrase "hold
harmless" as a basis to prevent Sub 2 from suing it for
the liability that Sub 2 might incur to the general.

149 Cal. App. 4th at 9.

The fact that Mr. Moore, as the ESOP trustee, agreed to hold

the Moore Trust harmless for breach of any representations

indicates a promise not to seek indemnification in the event of a

lawsuit against him arising from the breach.  North Star takes the

position that it succeeded to all of the ESOP trustee's rights and

obligations contained in the section 7.  Accordingly, under this

interpretation of the provision, North Star may not seek

indemnification from the Moore Trust if North Star is held liable

for a breach arising out of the agreement.[6]  Nor may the Moore

Trust seek indemnification from North Star if the Moore Trust is

held liable for a breach arising out of the agreement.

North Star argues that the reciprocal agreement between Mr.

---

[6]Under the second interpretation, section 7 is not a
prohibited exculpatory clause.  The provision would be exculpatory
only if it excused North Star from discharging its fiduciary
duties.  Under the second interpretation, North Star is not
prohibited from suing the Moore Trust to assert the ESOP's
interest.  It is merely prohibited from seeking indemnification
from the Moore Trust if it is held personally liable for breach of
its fiduciary duties.

Moore and the Moore Trust to hold each other harmless should not be interpreted as cancelling out the Moore Trust's promise to indemnify Mr. Moore.   North Star notes that, under California law, "repugnant" contractual terms -- in other words, contradictory or inconsistent terms -- should be "reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract."   Cal. Civ. Code § 1652.

It is true that Mr. Moore's promise to hold the Moore Trust harmless renders the Moore Trust's promise to indemnify Mr. Moore illusory.   However, the two promises cannot be reconciled in any meaningful way.   Moreover, North Star's interpretation would not only cancel out the reciprocal obligation to hold harmless, it would also impose a mutual promise to indemnify where none exists. The most reasonable interpretation of the reciprocal indemnification agreement is that each party agreed not to seek indemnification from the other in the event of a lawsuit by a third party arising from representations made in connection with the stock purchase agreements.   Because North Star is prohibited by section 7 from pursuing its claim for indemnification against the Moore Trust, Plaintiffs' motion must be granted and North Star's denied.[7]

---

[7]The Court need not reach Plaintiffs' argument that the stock purchase agreements do not provide any personal rights, such as the right to indemnification, to North Star.   Nor need the Court reach Plaintiffs' argument that North Star may not rely on any promises in the stock purchase agreements because the later Trustee Engagement Agreement is a fully integrated writing.

CONCLUSION

For the foregoing reasons, the Court DENIES North Star's motion for judgment on the pleadings (Docket No. 274) and GRANTS the Settling Parties' cross-motion for judgment on the pleadings (Docket No. 304).

IT IS SO ORDERED.

Dated: 8/21/09

_____
CLAUDIA WILKEN
United States District Judge