1 | Daniel Feinberg – CA Bar No. 135983
Todd F. Jackson – CA Bar No. 202598
2 | Margaret E. Hasselman – CA Bar No. 228529
Nina Wasow – CA Bar No. 202047
3 | Kirsten G. Scott – CA Bar No. 253464
LEWIS, FEINBERG, LEE,
4 | RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
5 | Oakland, California 94612
Telephone: (510) 839-6824
6 | Facsimile:  (510) 839-7839
Email:  dfeinberg@lewisfeinberg.com
7 | Email:  tjackson@lewisfeinberg.com
Email:  mhasselman@lewisfeinberg.com
8 | Email:  nwasow@lewisfeinberg.com
Email: kscott@lewisfeinberg.com

*Attorneys for Plaintiffs and the Class*
(Additional counsel on signature page)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO AND OAKLAND DIVISION

| | |
|---|---|
| THOMAS FERNANDEZ, LORA SMITH, and TOSHA THOMAS, individually and on behalf of a class of all other persons similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>K-M INDUSTRIES HOLDING CO., INC.; K-M INDUSTRIES HOLDING CO., INC. ESOP PLAN COMMITTEE; WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; TRUSTEES OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; CIG ESOP PLAN COMMITTEE; NORTH STAR TRUST COMPANY; DESIREE B. MOORE REVOCABLE TRUST; WILLIAM E. MOORE MARITAL TRUST; WILLIAM E. MOORE GENERATION-SKIPPING TRUST; and DESIREE MOORE, BOTH IN HER INDIVIDUAL CAPACITY AND AS TRUSTEE OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST'S SUCCESSOR TRUSTS NAMED ABOVE,<br><br>Defendants. | Case No. C-06-07339 CW<br><br>**PLAINTIFFS AND SETTLING DEFENDANTS' OPPOSITION TO NORTH STAR TRUST COMPANY'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, FOR ENTRY OF JUDGMENT**<br><br>Date:       October 22, 2009<br>Time:       2:00 p.m.<br>Courtroom:  2, 4th Floor<br>Judge:      Hon. Claudia Wilken |

Opp. to Mot. for Leave to File Mot. for Reconsideration & Entry of Judgment
[Case No. C-06-07339 CW]

## I. INTRODUCTION

In its Motion for Leave to File Motion for Reconsideration or for Entry of Judgment ("Motion"), North Star[1] merely repackages arguments previously rejected by the Court. North Star contends that this Court misconstrued its Section 2(b) argument by treating it as one for indemnification. However, as this Court has already recognized, North Star's argument under Section 2(b) of the Stock Purchase Agreements ("Section 2(b)") is a claim for indemnification because it seeks to have another party cover its own liability. North Star admits as much by referring to it as indemnity in prior briefs. *See* North Star's Reply and Opp. to Plaintiffs' Mot. for Judgment on the Pleadings, Docket No. 307, pp. 14-16.

North Star's argument is also a straw man; Plaintiffs have never contended that North Star is liable for any breach or prohibited transaction that might have occurred at the time of the original transactions. Rather, Plaintiffs allege that North Star is liable for its *own* breach of fiduciary duties for failing to investigate and remedy any overpayment from the original transactions. Indeed, Plaintiffs have always asserted that, as successor trustee of the ESOP, North Star could have brought a claim against the Moore Trust on behalf of the ESOP for reimbursement of any overpayment in the original transactions under Section 2(b). In contrast, North Star seeks relief under Section 2(b) on its *own* behalf, to cover its *own* breach.

Further, under the guise of seeking reconsideration of the August 21, 2009 Order, North Star attacks the Settlement Agreement yet again by arguing that Plaintiffs cannot compromise the rights of plan participants under Section 2(b). However, the Court already considered and rejected this argument when it approved the Settlement – a decision which was not part of the August 21, 2009 Order for which North Star has requested reconsideration.

Finally, North Star's request for entry of final judgment on all claims against Settling Defendants is inappropriate because of the considerable overlap between the resolved claims and the remaining claims against North Star. In short, North Star seeks to appeal multiple decisions of the Court against it. There is a strong possibility that entry of 54(b) judgment would result in multiple appeals and the Appellate Court being obligated to consider the same issues more than

---

[1] Defendant North Star Trust Company.

OPP. TO MOT. FOR LEAVE TO FILE MOT. FOR RECONSIDERATION & ENTRY OF JUDGMENT                 1
[CASE NO. C-06-07339 CW]

once. For these reasons, as further discussed below, the Court should deny North Star's motion in full.

## II. ARGUMENT

### A. North Star's Motion for Leave to File Motion for Reconsideration Should Be Denied

The Court should deny North Star's Motion for Leave to File Motion for Reconsideration for two reasons. First, North Star has failed to comply with the local rule that governs a request for leave to file a motion for reconsideration. Second, in finding that North Star has no rights under Section 2(b) in its Order of August 21, 2009, the Court did not fail to consider material facts or a dispositive legal argument.

#### 1. North Star Failed to Comply with Local Rule 7-9(a).

North Star's Motion for Leave to File a Motion for Reconsideration should be denied because North Star concurrently filed its Motion for Reconsideration with its Motion for Leave without waiting for the Court's permission. Local Rule 7-9(a) explicitly provides that "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." Under this rule, "[t]hat [the requesting party] did not obtain leave of court to file her motion for reconsideration is reason enough to deny it." *Oleszko v. State Compensation Ins. Fund*, 1999 WL 33436, at *3 (N.D. Cal. Jan. 20, 1999). As the *Oleszko* court noted,

> Civil LR 7-9(a) makes clear, however, that a party must obtain leave of court *before* noticing the motion for reconsideration, not simultaneously with the motion for reconsideration. Plaintiff's interpretation would eviscerate the rule. Accordingly, plaintiff's failure to obtain leave of court before noticing her motion for reconsideration is an independent and sufficient ground for denying her motion.

*Id.* at *2 (emphasis in original). Likewise, here, North Star's violation of Local Rule 7-9(a) through its concurrent filing of its Motion for Leave and its Motion for Reconsideration is an adequate reason for the Court to deny the Motion for Leave.

#### 2. There Was No Manifest Failure to Consider Material Facts or a Dispositive Legal Argument in the Court's Order.

The Court should also deny North Star's Motion because reconsideration is not warranted.

North Star asks this Court to find that its August 21, 2009 Order constitutes a "manifest failure by the Court to consider material facts or dispositive legal arguments" pursuant to Local Rule 7-9(b)(3)[2] for two reasons. First, North Star argues that the Court erred by treating North Star's claim under Section 2(b) as a claim for indemnification. Second, North Star says the Court ignored North Star's right to collect under Section 2(b) on behalf of the ESOP. However, far from failing to consider these points, the Court has heard North Star's arguments on these issues on multiple occasions. *See* North Star's Mot. for Judgment on the Pleadings, Docket No. 274, pp. 7-9 (seeking relief on its own behalf under 2(b)); North Star's Reply & Opp. to Plaintiffs' Mot. for Judgment on the Pleadings, Docket No. 307, 5/28/09, pp. 14-17 (seeking relief under 2(b) and arguing Settling Parties cannot waive North Star's rights under 2(b)); North Star's Opp. to Final Approval of Settlement, Docket No. 294, 4/16/09, pp. 1-3 (arguing Settlement impairs North Star's rights under 2(b)). In fact, by rearguing these same points in this Motion, North Star violates the prohibition against repetition of argument in Local Rule 7-9(c), conduct which is sanctionable under that Rule.

      **a.**      **North Star Improperly Attempts to Turn Section 2(b) Into a Contract Provision that Indemnifies North Star for its Own Breach of Fiduciary Duty.**

North Star argues that "the Court plainly misconstrued [North Star's] arguments, and misread the text of Section 2(b), when it treated the provision as an indemnity clause, and refused to enforce it on the basis that the Court believed [North Star] intended to benefit financially from Section 2(b)." Motion, at p. 4. The Court did not misconstrue North Star's arguments. It correctly considered, and rejected, North Star's claim under Section 2(b) as one for indemnification. This is true regardless of whether North Star intended to keep any reimbursement from the Moore Trust for itself or to pass it along to the ESOP because, either

---

[2] There are three grounds under which a party can seek reconsideration: (1) the existence of a material difference in fact or law which the party was unaware of earlier; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or a dispositive legal argument. Local Rule 7-9(b)(1)-(3). North Star raises arguments only under Local Rule 7-9(b)(3), so Plaintiffs and Settling Defendants respond accordingly. Reconsideration is also not proper under Local Rule 7-9(b)(1) or (2), which North Star concedes by making no attempt to satisfy those subsections of the rule.

OPP. TO MOT. FOR LEAVE TO FILE MOT. FOR RECONSIDERATION & ENTRY OF JUDGMENT    3
[CASE NO. C-06-07339 CW]

way, the effect would be to improperly indemnify North Star for its own breach of fiduciary duty.

North Star's argument that Section 2(b) can be used to pay for North Star's breach of fiduciary duties can be contrasted with the claim Plaintiffs assert that North Star *could* have brought on behalf of the ESOP under Section 2(b). Plaintiffs assert that, as successor trustee, North Star could have brought a claim against the Moore Trust under Section 2(b) on behalf of the ESOP participants, seeking recovery of any overpayment in the original ESOP transactions. As Plaintiffs have previously noted, such a claim under Section 2(b) would not have been one for indemnification, but instead would have been a claim asserted on behalf of participants to enforce the contract by its plain terms. *See* Plaintiffs and Settling Defendants' Judgment on the Pleadings Reply Brief, Docket No. 309, pp. 13-14. However, despite serving as successor trustee of the ESOP for over five years, North Star never brought a claim on behalf of the ESOP alleging any overpayment in the original transaction, under Section 2(b) or otherwise. To the contrary, North Star has stated that bringing such a claim would have been "frivolous." Summary Judgment Hearing Transcript, 10/30/08, Docket No. 262-2, at 22:12-23:3.

Instead, North Star seeks to use Section 2(b) to obtain indemnification for its own breach of fiduciary duties arising from its failure to investigate and seek a remedy for the alleged overpayment in the original transactions. This is precisely the argument that North Star presented to the Court when it sought judgment on the pleadings, where it referred to its argument under Section 2(b) as seeking indemnification. *See* North Star's Reply and Opp. to Plaintiffs' Mot. for Judgment on the Pleadings, Docket No. 307, pp. 14-16; *see also* North Star's Mot. for Judgment on the pleadings, Docket No. 274, at p. 7. Thus, whether North Star has any right to assert protection under Section 2(b) for its own benefit is precisely the issue that the Court considered in its August 21, 2009 Order, when it stated that "North Star is not being charged with liability for the overpayment but for breaching its fiduciary duty by failing to investigate and take appropriate action to remedy the overpayment. Section [2(b)] does not require the Moore Trust Defendants to indemnify North Star for this breach." Order Denying North Star's Mot. and Granting Settling Parties' Mot. for Judgment on the Pleadings, Docket No. 330, at p. 16.[3] Accordingly, North Star

---

[3] The Order mistakenly refers to section 2(a) instead of 2(b), but the Court corrected this error in

is incorrect in stating that the Court "misconstrued" North Star's argument for relief under Section 2(b) by treating it as an indemnity provision, and it is being disingenuous in stating that it "does not contend that Section 2(b) is an indemnity clause." Motion at p. 4.

In addition, by now stating that its argument under Section 2(b) is a contract claim for something other than indemnification, North Star conflates the two possible arguments under Section 2(b) discussed above: by a successor trustee on behalf of the ESOP for the alleged overpayment in the original transactions, and by North Star for indemnification for its own breaches. Under the Section 2(b) claim advanced by North Star, the Moore Trust would be liable only if and when Plaintiffs obtain a judgment against North Star for its own breach for failing to investigate and remedy an overpayment from the original transactions. The fact that the Moore Trust's liability would be triggered only if North Star is found liable demonstrates that such a claim is for indemnification. North Star further demonstrates that its claim under Section 2(b) is one for indemnification by stating that "[b]ecause of Section 2(b), even if [North Star] had failed to fulfill a duty to investigate, its failure could not, as a matter of law, have caused harm to the ESOP." *See* Motion at p. 4. Presumably North Star means that even if it did breach its fiduciary duties, the Moore Trust would pay for North Star's breach by providing make whole relief to the ESOP. While it is true, as North Star points out, that Section 2(b) does not use the word "indemnify," this does not change the nature of North Star's claim and is merely a game of semantics. *See* Motion, at p. 2. Having a third party pay the price for North Star's breach is the definition of indemnification.

Further, contrary to North Star's contention, the fact that the measure of damages for North Star's breach necessarily involves a determination of how much, if any, the ESOP overpaid for the stock in the original transactions does not mean that Plaintiffs are suing North Star over the original transactions. North Star's breach is distinct from the breach, or prohibited transaction, that Plaintiffs alleged against the Moore Trust or KMH for the original transactions. *Fernandez v. K-M Industries Holding Co., Inc.*, 585 F. Supp. 2d 1177, 1186 (N.D. Cal. 2008) ("North Star's failure to remedy breaches made by other fiduciaries in connection with the 1998

---

its September 8, 2009 Order, Docket No. 333.

and 1999 transactions...is independently actionable under 29 U.S.C. § 1105(a)(3)....").

North Star is also incorrect when it states that enforcing Section 2(b) "will end this litigation." *See* Motion at p. 2. First, regardless of whether the Court reconsiders its decision on Section 2(b), Plaintiffs would still have the right to a liability determination, equitable and injunctive relief, and an award of attorneys' fees against North Star. Second, still pending is the question of North Star's payment on KMH's counter-claim in which KMH contends that it never had an obligation to pay any of North Star's legal fees under the Trustee Engagement Agreement, requiring North Star to pay back the approximately $2 Million in fees already advanced by KMH in this litigation.[4] *See* KMH's Answer to North Star's Crossclaim & Counterclaim, Docket No. 368.

Finally, North Star argues that the Court erred by refusing to enforce Section 2(b) on the basis that it believed North Star intended to benefit financially from Section 2(b), while North Star asserts it never intended to keep the money for itself. Motion at p. 4. However, avoiding paying a judgment *is* a financial benefit North Star seeks for itself. In the case of a judgment against North Star, whether North Star intends to pay the ESOP for the assessed damages and then recover this amount from the Moore Trust, or to seek to have the Moore Trust pay that amount directly to the ESOP, the effect would be the same: for Section 2(b) to improperly indemnify North Star for its own breach.

### b.  Plaintiffs Can Compromise the Rights of Plan Participants Under Section 2(b).

North Star also argues that the Court erred because, although the Settlement Agreement includes an agreement that Plaintiffs may not collect additional money from the Moore Trust, the right to collect against the Moore Trust under Section 2(b) was not Plaintiffs' to give away. Motion at pp. 3, 5. For this reason, North Star contends, the August 21, 2009 Order ignores North Star's right to collect under Section 2(b) on behalf of the ESOP. *Id.* However, this is the same argument that North Star raised on numerous occasions in objecting to the Settlement,

---

[4] In the Settlement Agreement, KMH assigned to Plaintiffs, on behalf of the ESOP, the right to seek reimbursement of these previously advanced fees. *See* Settlement Agreement, Docket No. 244-2, §3(d).

OPP. TO MOT. FOR LEAVE TO FILE MOT. FOR RECONSIDERATION & ENTRY OF JUDGMENT        6
[CASE NO. C-06-07339 CW]

which the Court has already considered and rejected. *See, e.g.*, North Star's Opp. to Final Approval of Settlement, Docket No. 294, 4/16/09, pp. 1-3.

In the Settlement Agreement, Plaintiffs released all claims against Settling Defendants that arise from the allegations in this case, including any claims that could be brought on behalf of Plaintiffs and the Class by an ESOP fiduciary. *See* Mot. for Final Approval of Settlement, Docket No. 285, at pp. 4, 8-9 (citing Settlement Agreement, § 1(p), Docket No. 271-2). In doing so, Plaintiffs released any claims that an ESOP fiduciary might have brought on behalf of the ESOP against the Moore Trust, including, but not limited to, any claim under Section 2(b) based on the theory that the Moore Trust is liable for any overpayment in the original transactions. For all of the reasons discussed in the Motion for Final Approval of the Settlement, it was proper and fair for Plaintiffs, on behalf of the Class, to give up such rights. *See id.* This was confirmed by the Independent Fiduciary who determined that the Settlement, including this release, was fair and reasonable. *Id.* at pp. 8-9. This was also confirmed by the Court when it granted final approval of the Settlement. *See* Order Granting Final Approval of Settlement, Docket No. 299. And, as discussed above, North Star never made this claim on behalf of the ESOP in its five years as trustee.

While the release did relinquish North Star's right to bring a claim under Section 2(b) on behalf of the ESOP, the Settlement and Bar Order expressly did not bar North Star from attempting to bring contractual indemnity claims under Section 2(b), *i.e.* arguing that the Moore Trust is contractually liable to indemnify North Star for North Star's own breach, as successor trustee, for failing to investigate and remedy any overpayment in the original transactions. *See* Settlement Agreement, § 8, Docket No. 271-2; Order Granting Final Approval of Settlement, Docket No. 299, at p. 3 (Bar Order). This is precisely the argument North Star brought in its Motion for Judgment on the Pleadings, and that the Court rejected when it held that "Section [2(b)] does not require the Moore Trust Defendants to indemnify North Star for [its own] breach." Order Denying North Star's Mot. and Granting Settling Parties' Mot. for Judgment on the Pleadings, Docket No. 330, at p. 16.

For these reasons, in finding North Star has no right to indemnification under Section 2(b)

in its Order of August 21, 2009, the Court considered all material facts and legal arguments, and should therefore deny North Star's Motion for Leave to File a Motion for Reconsideration.

### B. The Court Should Deny North Star's Motion for Final Judgment

Rule 54(b) states, in relevant part, that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). In order for 54(b) judgment to be appropriate, the decision must be a final judgment, and the court must decide that there is no reason to delay appeal of the claim(s). *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7-8 (1980); *see also Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, Nos. C-04-2000, C-06-2929, 2007 WL 2070275, at *1 (N.D. Cal., July 16, 2007). A judgment is final for purposes of Rule 54(b) if it is "an ultimate disposition" of a claim in a multi-claim action. *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956); *Micro Int'l.*, 2007 WL 2070275, at *1 (quoting same).

It is up to the "sound judicial discretion of the district court" to determine whether reason for delay exists, and "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Curtiss-Wright*, 446 U.S. at 8. In exercising its discretion, a court should keep in mind the objective of "preserv[ing] the historic federal policy against piecemeal appeals." *Id.* (quoting *Sears, Roebuck & Co.*, 351 U.S. at 438). Rule 54(b) judgment "must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by the pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Morrison-Knudsen Co., Inc. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981). If the issues and claims in a case are not truly separable, they should not be separated artificially for purposes of Rule 54(b), and a similarity or overlap of legal or factual issues "will weigh heavily against" entry of 54(b) judgment. *Wood v. GCC Bend, LLC*, 422 F.3d 873, 880-82 (9th Cir. 2005) (quoting *Morrison-Knudsen*, 655 F.2d at 965); *see also Micro Int'l*, 2007 WL 2070275, at *2 (finding overlap of issues "weighs against granting partial judgment," and denying motion for 54(b) judgment because "the more efficient course of action

is to wait until all [related claims and defenses] have been adjudicated before entering final judgment.").

In assessing whether a reason to delay exists, the Ninth Circuit has set forth the following list of factors for a court to consider:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous facts such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1030 (9th Cir. 1994). North Star argues that the Court should enter final judgment on all claims against the Settling Defendants because "no reason exists to delay the appeal of these rulings." Motion at p. 8. However, consideration of the relevant factors demonstrates that Rule 54(b) judgment is inappropriate.

According to North Star, "[t]he claims against the Settling Defendants, which have been settled or finally adjudicated by the Court, are distinct from the remaining issues in the case, which focus exclusively on the conduct of [North Star]." *Id.* This is simply untrue. Although Plaintiffs' claims against North Star are distinct, the underlying facts overlap. North Star argues this in its Motion, stating that in order for Plaintiffs to prevail against North Star, "they must prove first that the ESOP overpaid for the stock it received in the [original] transactions." *Id.* at p. 4. Due to the overlap between the resolved and unresolved claims, entry of 54(b) judgment would mean the Ninth Circuit would likely need to consider the same issues twice. This strongly supports delay of entry of final judgment. *See General Acquisition*, 23 F.3d at 1030. As this Court decided in *Micro International*, the more efficient course of action would be to wait until all claims have been adjudicated before entering final judgment. *See* 2007 WL 2070275, at *2.

Furthermore, North Star's motion suggests that if the Court were to enter final judgment on all claims against the Settling Defendants, North Star would not only appeal the Court's decision on Section 2(b), but also the Court's rejection of North Star's other claims for indemnification by the Moore Trust and KMH, as well as the Court's final approval of the

Settlement Agreement. If North Star is given the chance to appeal these issues and loses on appeal, it is likely to appeal other later determinations in this case, such as the Court's decision on the statute of limitations, and any other future rulings against it that this Court may enter. In furtherance of the "federal policy against piecemeal appeals," the Court should wait until all claims have been resolved before entering final judgment. *See Curtiss-Wright*, 446 U.S. at 8. At that point, the record will be fully developed, and only one appeal will be necessary.

In addition, the possibility exists that the need for review might be mooted by future developments in the case. For example, if the Court were to find that North Star did not breach its fiduciary duties, or if it found that North Star's breach did not cause any loss to Plaintiffs, then North Star would owe no damages to Plaintiffs, mooting North Star's claims for indemnification. The potential of an issue becoming moot is yet another reason why the Court should deny North Star's request for entry of 54(b) judgment. *See General Acquisition*, 23 F.3d at 1030.

The only other argument North Star makes in support of entry of 54(b) judgment is that it will be "severely prejudiced" economically if it cannot immediately appeal the Court's ruling on the indemnification agreement between KMH and North Star because that agreement provides that KMH will advance North Star's defense costs as they are incurred, and without it, North Star "will be forced to bear the financial burden of litigation itself." Motion at pp. 8-9. However, North Star's statement that it will be financially prejudiced is disingenuous because North Star has $25 million in insurance, and Plaintiffs understand that the insurers are currently paying for North Star's defense costs. Finally, even if this is not the case, North Star's preference for an immediate appeal for its own economic reasons does not outweigh the costs and risks of multiple proceedings and overcrowding the appellate docket. *See Morrison-Knudsen*, 655 F.2d at 965.

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs and Settling Defendants respectfully request that the Court deny North Star's Request for Reconsideration, and its Request for Entry of 54(b) Judgment.

//

//

| | | |
|---|---|---|
| Dated: October 1, 2009 | | Respectfully submitted, |
| | | LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C. |
| | By: | /s/ _____ |
| | | Todd Jackson |
| | | LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C. |
| | | 1330 Broadway, Suite 1800 |
| | | Oakland, CA  94612 |
| | | Telephone: (510) 839-6824 |
| | | Facsimile: (510) 839-7839 |

Peter Rukin – CA State Bar No. 178336
RUKIN HYLAND DORIA
& TINDALL LLP
100 Pine Street, Suite 725
San Francisco, CA
Telephone: (415) 421-1800
Facsimile: (415) 421-1700
Email: peterrukin@rhddlaw.com

*Attorneys for Plaintiffs and the Class*

Henry I. Bornstein – CA Bar No. 75885
LOVITT & HANNAN, INC.
900 Front Street, Suite 300
San Francisco, CA 94111
Telephone:  (415) 362-8769
Facsimile:  (415) 362-7528
Email: hib@lh-sf.com

*Attorneys for Defendants K-M Industries Holding Co. Inc.; K-M Industries Holding Co. Inc. ESOP Plan Committee; and CIG ESOP Plan Committee*

Robert L. Palmer (SBN 181462)
Lauren A. Smith (SBN 94343)
Allison Chock (SBN 206015)
HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Fax: (213) 694-1234
Email:  palmer@hbdlawyers.com
           smithl@hbdlawyers.com
           chocka@hbdlawyers.com

*Attorneys for Defendants William E. and*

*Desiree B. Moore Revocable Trust; Trustee of The William E. and Desiree B. Moore Revocable Trust; Desiree B. Moore Revocable Trust; William E. Moore Marital Trust; William E. Moore Generation-Skipping Trust; and Desiree Moore*