MORGAN, LEWIS & BOCKIUS LLP
D. Ward Kallstrom (State Bar No. 76937)
Nicole A. Diller (State Bar No. 154842)
Donald P. Sullivan (State Bar No. 191080)
One Market, Spear Street Tower
San Francisco, California  94105
Telephone:  (415) 442-1000
Facsimile:  (415) 442-1001

Attorneys for North Star Trust Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS FERNANDEZ, LORA SMITH, and TOSHA THOMAS<br><br>　　　　　　　　Plaintiffs,<br><br>　　　vs.<br><br>K-M INDUSTRIES HOLDING CO., INC.; K-M INDUSTRIES HOLDING CO., INC. ESOP PLAN COMMITTEE; WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; TRUSTEES OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; CIG ESOP PLAN COMMITTEE; NORTH STAR TRUST COMPANY; DESIREE B. MOORE REVOCABLE TRUST; WILLIAM E. MOORE MARITAL TRUST; WILLIAM E. MOORE GENERATION-SKIPPING TRUST; and DESIREE MOORE, BOTH IN HER INDIVIDUAL CAPACITY AND AS TRUSTEE OF THE WILLIAM E AND DESIREE B. MOORE REVOCABLE TRUST'S SUCCESSOR TRUSTS NAMED ABOVE,<br><br>　　　　　　　　Defendants. | Case No. C06-07339 CW<br><br>**NORTH STAR TRUST COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, FOR ENTRY OF JUDGMENT** |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NSTC'S REPLY MEM. ISO ITS MOT. FOR LEAVE TO FILE MOT. FOR
RECONSIDERATION OR, ALT., FOR ENTRY OF JUDGMENT
CASE NO. C06-07339 CW

## I. INTRODUCTION

Section 2(b) of the Stock Purchase Agreements that established the ESOP obligates the Moore Trust to reimburse the ESOP, upon a determination by a court that the ESOP overpaid the Moore Trust for the stock the ESOP holds, for the amount of that overpayment plus interest. For Plaintiffs to succeed in their case against North Star Trust Company ("NSTC"), this Court must find that the ESOP overpaid the Moore Trust for the stock the ESOP holds; Plaintiffs in their opposition do not contend otherwise. NSTC seeks leave to file a motion for reconsideration of the Court's August 21, 2009 Order because the Court's ruling that section 2(b) is an "indemnification" of NSTC by the Moore Trust in violation of ERISA, amounts to a manifest failure by the Court to consider the plain contractual obligations of the Moore Trust to the ESOP contained in the Stock Purchase Agreements. Section 2(b) is not an indemnification of NSTC, and it does not relieve NSTC of any liability for alleged breaches of fiduciary duties. Rather, it is a separate contractual obligation of the Moore Trust that will be triggered the moment (if ever) that the Court finds that the ESOP overpaid for the K-M stock, as the Court must find for the Plaintiffs to be successful in their litigation against NSTC. Plaintiffs provide no authority, or logical explanation, why the Court should not enforce section 2(b) of the Stock Purchase Agreements.

Should the Court decide not to permit NSTC to file a motion for reconsideration of the ruling on the enforceability of Section 2(b), the Court should nevertheless certify the judgment as final under Rule 54(b). The Settling Defendants, who previously requested certification but now reverse their position for what can only be tactical reasons, provide no convincing reason not to certify. They rely upon out of circuit authority and ignore applicable Ninth Circuit guidance. They identify no issue that would be presented on an immediate appeal and would be readjudicated before this Court and presented again in a later appeal. They assert no reason at all why a delayed appeal would be just. The Court should certify as final the judgment as to the Settling Defendants.

## II. THE COURT SHOULD GRANT NSTC LEAVE TO FILE A MOTION FOR RECONSIDERATION

### A. Leave to File a Motion to Reconsider Should Not be Denied Based on Noncompliance with Local Rule 7-9

The Settling Parties argue that the Court should deny leave to file a motion to reconsider because, they say, NSTC has flouted Local Rule 7-9, which sets forth the pertinent procedure. This argument should be rejected.

First, the Settling Parties assert that NSTC violated Local Rule 7-9 because it filed a motion for reconsideration concurrently with its Motion for Leave to File a Motion for Reconsideration. Settling Parties' Opposition to Motion for Leave to File Motion for Reconsideration and Entry of Judgment [Dkt. # 337] ("Opp.") at 2:11-25. This assertion is manifestly false. NSTC's motion for leave is clearly styled as such; and in its memorandum in support of its motion for leave, NSTC briefly set forth the reasons it believes the Court should grant NSTC the opportunity to brief fully a motion for reconsideration. NSTC did not concurrently file any separate motion for reconsideration. Indeed, the Settling Parties' argument stands Local Rule 7-9 on its head, because their logic is that no party seeking leave to file a motion to reconsider should be permitted to explain why.

Second, the Settling Parties assert that NSTC offended Local Rule 7-9 by repeating argument. Opp. at 2:26-3:14. This assertion too ignores the language of the Rule, which provides that leave for a motion for reconsideration may be granted upon a "specific[] show[ing]" of "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court." Local Rule 7-9(b)(3). Obviously, NSTC can make the requisite showing only by demonstrating that the Court failed to consider material facts or dispositive arguments that were previously presented. The showing that the Rule itself requires cannot be rejected as "repetition."

### B. The Settling Parties Do Not Deny That Section 2(b) Would Be Triggered by A Finding That NSTC Breached Its Fiduciary Duty

Plaintiffs allege in this case that NSTC breached its fiduciary duties in 2003 by failing to

take action to recover from the Moore Trust the overpayments that Plaintiffs allege the Moore Trust received from the ESOP in 1998 and 1999.  As Plaintiffs also allege, such overpayments would have been prohibited transactions, and breaches of fiduciary duty, by the ESOP's then trustee.  It appears to be undisputed that a determination by the Court that the ESOP overpaid the Moore Trust in 1998 and/or 1999 would trigger the contractual promise made by the Moore Trust in section 2(b),[1] to transfer to the ESOP the overpaid amount, with interest.

The Settling Parties attempt to distract the Court from this contract analysis of the Stock Purchase Agreements by framing NSTC's counterclaim to enforce section 2(b) as one for indemnification.  The Settling Parties argue that "[t]he fact that the Moore Trust's liability would be triggered only if [NSTC] is found liable demonstrates that such a claim is for indemnification" and that any claim to the contrary is "merely a game of semantics."  Opp. at 5:10-19.  Settling Parties' argument is flawed for several reasons.

First, it is simply not true that "the Moore Trust's liability would be triggered only if [NSTC] is found liable" – the converse is true.  For example, the Court could find that NSTC was not imprudent and did not breach its fiduciary duties (*e.g.*, because it followed a prudent process in its 2003 investigation) but that the Moore Trust did in fact receive more than adequate consideration from the ESOP.   If the Court were to conclude that the Moore Trust did receive more than adequate consideration, section 2(b) would require the Moore Trust to repay the ESOP *whether or not NSTC breached its duties.* On the other hand, a finding that the ESOP did not overpay would mean that NSTC's conduct did not cause a loss to the ESOP.  *See Fernandez v. K-*

---

[1] Section 2(b) of the Stock Purchase Agreements provides, in pertinent part:

"In the event that there is a final determination by the Internal Revenue Service, a court of competent jurisdiction or otherwise that the fair market value of the Shares as of this date is less than the Purchase Price paid by the Trustee, then Selling Shareholder [the Moore Trust] shall transfer to the Trustee an amount . . . equal in value to the difference between the Purchase Price and said fair market value for all such Shares. . . .  [S]uch shares shall be valued at their fair market value as of the date hereof and interest at a reasonable rate from the date hereof to the date of payment shall be paid by Selling Shareholder on the amount of cash paid."

This provision is triggered by any "determination" that the ESOP overpaid – whether made by a court, the IRS, the DOL, a successor trustee, or otherwise -- but NSTC could not enforce the provision absent such a determination.  Where the provision is triggered, the trustee is a conduit for the return to the ESOP of the overpayment (plus interest).

*M Indus. Holding Co.*, 585 F. Supp. 2d 1177, 1184 (N.D. Cal. 2008) (finding that NSTC's potential liability is dependent upon "the alleged breaches of fiduciary duty that took place before it was appointed the ESOP trustee"). Regardless of whether NSTC's alleged breach is, as the Settling Parties state, "independently actionable," the Settling Parties have not identified any way in which NSTC's conduct harmed, or could have harmed, the ESOP unless the Moore Trust received more than adequate consideration thus triggering section 2(b).

Second, the Settling Parties' argument fails because it is based on the false assertion that section 2(b) is an indemnity clause. The Settling Parties conclude that because this Court has rejected any claim by NSTC for indemnification against the Moore Trust Defendants, then the Court must also reject the enforcement of section 2(b) against the Moore Trust. Opp. at 4:15-5:20. But, as NSTC stated in its request for leave, section 2(b) manifestly is not an indemnity clause; it does not use the word "indemnity," and NSTC does not contend that section 2(b) is an indemnity[2] or that section 2(b) requires the Moore Trust to reimburse NSTC for losses caused by NSTC's actions – the definition of an indemnity. "Indemnify" means "to reimburse (another) for a loss suffered because of a third party's . . . act or default." BLACK'S LAW DICTIONARY (8th ed. 2004). Section 2(b) does not create an indemnity. Section 2(b) will not reimburse the ESOP for a loss suffered because of NSTC's actions; instead, section 2(b) creates an enforceable contractual obligation between the Moore Trust and the ESOP for a loss caused by the actions of the Moore Trust and the original trustee in 1998 and 1999. It is the Settling Parties who base their argument on semantics by calling section 2(b) an indemnification.

Indeed, the Settling Parties admit as much. They concede that NSTC's claim "under 2(b)

---

[2] The Settling Parties attempt to mischaracterize NSTC's prior arguments on the cross-motions for judgment as explicitly claiming that section 2(b) created rights to indemnity from the Moore Trust Defendants. Opp. at 4:17-21. A careful read of NSTC's opening memorandum in support of its motion for judgment reveals that NSTC referenced only section 7 of the Stock Purchase Agreements as a "broad indemnification provision" and cited section 2(b) as merely one of the Moore Trust's covenants under those same agreements. *See* Dkt. #274 at 7. In the reply brief in support of its motion for judgment, NSTC clearly referred to section 2(b) as a provision "to make the Plan whole for any overpayment" in the Stock Purchase transactions. Dkt. # 307 at 16.

Section 7 is manifestly different from section 2(b). In section 7, the Moore Trust and the trustee agreed to cross-indemnify each other. Section 2(b) is not an indemnity provision and obligates only the Moore Trust.

would not have been one for indemnification, but instead would have been a claim asserted on behalf of participants to enforce the contract by its plain terms" had it been brought earlier. Opp. at 4:7-9. The Settling Parties provide no authority, or even explanation, for why the timing of the interpretation and enforcement of section 2(b) converts it into an indemnity clause.[3] As noted above, section 2(b) cannot be enforced until a determination of an overpayment is made.

### C.  ERISA Does Not Prohibit Enforcement of Section 2(b)

The Settling Parties argue, without citation to any authority, that the Court should not require the Moore Trust to satisfy its obligation to the ESOP should the Court determine the ESOP overpaid for its stock because NSTC should not benefit from the operation of section 2(b). This argument fails for three reasons. First, as noted in the preceding paragraph, the Settling Parties concede that section 2(b) was and is enforceable – they are simply playing a word-game with the timing of section 2(b)'s enforceability. Second, the Settling Parties offer no legal support for the proposition that a contract is unenforceable merely because it may benefit a third party, such as NSTC. Third, even if there were a benefit to NSTC from the operation of section 2(b) (which NSTC disputes) by the Court enforcing the Moore Trust's obligation to pay to the ESOP any overpayment the Moore Trust received, it is an incidental benefit. The Settling Parties do not dispute that ERISA permits a fiduciary to receive an incidental benefit from an action that benefits an ERISA plan. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 445-46 (9th Cir. 1999) (fiduciary does not breach its duty if it is incidentally benefited by administration of pension plan); *Morse v. Stanley*, 732 F.2d 1139 (2d Cir. 1984) (it is not a fiduciary violation to take a course of action that promotes interests of plan participants simply because it incidentally benefits a fiduciary). If the ESOP is made whole through the operation of section 2(b), then Plaintiffs' claim against NSTC, a claim that triggers section 2(b), is rendered moot as to the harm that Plaintiffs allege was caused to the ESOP. The Court's enforcement of a contractual

---

[3] To the extent that the Settling Parties argue that this Court's final approval of the partial class action settlement alters the enforceability of section 2(b), this argument directly conflicts with the Court's unqualified holding, subsequent to the final order approving the class action settlement, that Section 2(b) "requires the Moore Trust Defendants to return to the ESOP any amounts they are found to have wrongfully received as a result of the plan's overpayment." Order [Dkt. # 330] at 15-16.

provision for the benefit of the ESOP cannot be deemed an improper benefit to NSTC.

### D. Enforcement of Section 2(b) Will, as a Practical Matter, End the Litigation

Finally, the Settling Parties assert that enforcing section 2(b) will not end this litigation because Plaintiffs will "still have the right to a liability determination, equitable and injunctive relief, and an award of attorneys' fees against [NSTC]" as well as the right to pursue legal fees that KMH has already advanced. Opp. at 6:2-10. This assertion is erroneous. As discussed above, the Plaintiffs' right to a liability determination would be moot as to damages because Plaintiffs would recover the ESOP's losses plus interest under section 2(b). Because NSTC is no longer trustee, any demand for equitable or injunctive relief is likewise moot. And any claim for attorneys' fees or reimbursement of fees already advanced is ancillary to the merits.

## III. IN THE ALTERNATIVE, THE COURT SHOULD ENTER JUDGMENT FOR THE SETTLING DEFENDANTS BECAUSE THE CLAIMS AGAINST THEM HAVE BEEN FINALLY RESOLVED AND THERE IS NO JUST REASON FOR DELAY

In considering whether entry of judgment is appropriate under Rule 54(b), the Ninth Circuit takes a "pragmatic approach focusing on severability and efficient judicial administration." *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987). "The Rule 54(b) claims do not have to be separate from and independent of the remaining claims." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797 (9th Cir. 1991), *quoting Sheehan v. Atlanta Int'l Ins. Co.* 812 F.2d 465, 468 (9th Cir. 1987); *Alcan Aluminum Corp. v. Carlsberg Fin. Corp.*, 689 F.2d 815, 817 (9th Cir. 1982). Entry of final judgment for a party under Rule 54(b) is proper if all of the claims against that party have been finally adjudicated, or if the nature of the claims already determined is such that an appellate court would not have to decide the same issue more than once even if there were subsequent appeals. *Continental Airlines, Inc.*, 819 F.2d at 1525; *Alcan Aluminum Corp.*, 689 F.2d at 817; *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, Case No. C 04-2000 CW, C 06-2929 CW, 2007 WL 2070275 (N.D. Cal. July 16, 2007). [4]

---

[4] Indeed, the Ninth Circuit has stated that the case upon which Plaintiffs chiefly rely, *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962 (9th Cir. 1981), contains an "outdated and overly restrictive view of the appropriateness of Rule 54(b) certification." *Texaco, Inc.*, 939 F.2d at 798.

The Settling Parties urge that the Court must consider a specific list of factors in deciding whether entry of judgment under Rule 54(b) is appropriate. Opp. at 9:3-13, *citing General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1030 (6th Cir. 1994). This argument misses the mark because it relies on a Sixth Circuit case that the Settling Parties incorrectly identify as a Ninth Circuit case. Opp. at 9:10. As noted above, the Ninth Circuit does not apply the Sixth Circuit's test. Moreover, the Sixth Circuit describes its list of factors as "non-exhaustive." *General Acquisition, Inc.*, 23 F.3d at 1030.

### A. The Legal Issues Remaining in the Case Are Distinct From Those Asserted Against and Decided in Favor of the Settling Defendants, Such That The Ninth Circuit Would Not Have To Consider The Same Issues More than Once

In its motion, NSTC pointed out that the Court has finally adjudicated and disposed of all of the claims against the Settling Defendants. NSTC's Brf. at 8. Plaintiffs acknowledge that their claims against NSTC are distinct from those against the Settling Defendants, but assert that the remaining and dismissed claims overlap factually. Opp. at 9:16-17. And as the Settling Parties concede, there are no claims pending against the Settling Defendants. Entry of final judgment under Rule 54(b) for a party no longer subject to any claims in a lawsuit is proper. *Continental Airlines, Inc.*, 819 F.2d at 1525; *Alcan Aluminum Corp.*, 689 F.2d at 817.

The Settling Parties also have acknowledged that the legal issues remaining in the case are distinct from those that have been adjudicated. Opp. at 9:16-17. The claims that have been dismissed from the case focused on the liability of the Settling Defendants, including the Moore Trust Defendants' liability for breaching their fiduciary duties in the 1998 and 1999 transactions. As the Court has previously held, the remaining claims focus exclusively on the liability of NSTC as the successor fiduciary to Mr. Moore.[5] Because the legal issues that have been decided are

---

[5] The Court has held that Plaintiffs' claims against NSTC do not attempt to hold NSTC vicariously liable for the acts of the Settling Defendants but rather focus on NSTC's own alleged acts or omissions. *See* Order Denying North Star's Motion for Summary Judgment, 12:7-13; 17:25-18:3 [Dkt. No. 237]. As the Court stated in its Order Denying NSTC's Motion for Summary Judgment, "Plaintiffs are not directly challenging the 1998 and 1999 transactions through their claims against North Star; they are challenging North Star's failure to remedy breaches made by other fiduciaries in connection with the 1998 and 1999 transaction. This failure, which is independently actionable under 29 U.S.C. § 1105(a)(3) [sic], took place long after the dates of the transactions themselves." Order Denying North Star's Motion for Summary Judgment, 17:25-18:3 [Dkt. No. 237] (emphasis in original).

distinct from those that remain to be decided, an appeal filed before the ultimate resolution of this case would necessarily address different legal issues than a later appeal. The Settling Parties have simply failed to identify any legal issues that will have to be considered more than once if the Court enters judgment for the Settling Defendants.

The same is true of factual issues. In support of their argument, the Settling Parties note that they must prove that the Moore Trust Defendants were overpaid for their shares in the company in order to establish that NSTC breached its fiduciary duty. Opp. at 9:17-19. As this issue has not yet been decided, however, it would not be the subject of any appeal NSTC might bring after the Court enters final judgment for the Settling Defendants. The Ninth Circuit, therefore, would not have to consider this factual issue more than once.[6]

**B.  The Settling Parties Present No Just Reason for Delaying Entry of Judgment in Favor of the Settling Defendants**

The Settling Parties argue that the Court should delay entry of final judgment for the Settling Defendants because a decision favoring NSTC would moot the need for an appeal. This argument ignores that NSTC's claim for indemnity from K-M Industries Holding Co. ("KMH") relates to attorneys' fees that NSTC did (and continues to) incur. As the legal fees incurred do not disappear even if the Court enters judgment in NSTC's favor, nothing about the indemnification dispute becomes moot in the event of a favorable resolution for NSTC.

Without citation to any authority, the Settling Parties also contend that because NSTC has insurance coverage, it has little interest in enforcing the indemnification agreement with KMH. Opp. at 10:13-20. This argument fails to recognize the wasting nature of the insurance policies at issue, in which policy limits are reduced by legal fees expended. Every dollar spent on legal fees reduces the amount available for disposition of the case. In addition, the Settling Parties' argument ignores that insurance companies set rates based on claims history, causing NSTC potentially to sustain future insurance premium increases commensurate with policy

---

[6] The Settling Parties have not cited a single case holding that it is improper to enter final judgment for a dismissed party in a case where the remaining issues are legally distinct from the decided issue, but there may be some factual overlap between the remaining and decided claims. NSTC is aware of no such case.

disbursements. NSTC's interests in having KMH indemnify it for ongoing legal fees are very real.

For these reasons, the Settling Parties have failed to show that there is any reason, let alone a just reason, to delay the entry of final judgment in favor of the Settling Defendants. The Court should enter judgment for the Settling Defendants.

## IV. CONCLUSION

For the reasons discussed above, NSTC respectfully requests that the Court grant it leave to file a motion for reconsideration of its Order Denying North Star's Motion for Judgment on the Pleadings and Granting the Settling Parties' Cross-Motion for Judgment on the Pleadings on the sole issue of the enforceability of Sections 2(b) of the Stock Purchase Agreements. In the alternative, NSTC respectfully requests that the Court enter final judgment as to all claims asserted against KMH and the Moore Trust Defendants.

DATED: October 8, 2009

MORGAN, LEWIS & BOCKIUS LLP

By: _____
D. Ward Kallstrom
Nicole A. Diller
Attorneys for Defendant North Star Trust Company

DB2/21368871.1