Daniel Feinberg – CA Bar No. 135983
Todd F. Jackson – CA Bar No. 202598
Margaret E. Hasselman – CA Bar No. 228529
Nina Wasow – CA Bar No. 202047
Kirsten G. Scott – CA Bar No. 253464
LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, California 94612
Telephone: (510) 839-6824
Facsimile:  (510) 839-7839
Email:  dfeinberg@lewisfeinberg.com
Email:  tjackson@lewisfeinberg.com
Email:  mhasselman@lewisfeinberg.com
Email:  nwasow@lewisfeinberg.com
Email: kscott@lewisfeinberg.com

*Attorneys for Plaintiffs and the Class*
(Additional counsel on signature page)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO AND OAKLAND DIVISION

| | |
|---|---|
| THOMAS FERNANDEZ, LORA SMITH, and TOSHA THOMAS, individually and on behalf of a class of all other persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> K-M INDUSTRIES HOLDING CO., INC.; K-M INDUSTRIES HOLDING CO., INC. ESOP PLAN COMMITTEE; WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; TRUSTEES OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST; CIG ESOP PLAN COMMITTEE; NORTH STAR TRUST COMPANY; DESIREE B. MOORE REVOCABLE TRUST; WILLIAM E. MOORE MARITAL TRUST; WILLIAM E. MOORE GENERATION-SKIPPING TRUST; and DESIREE MOORE, BOTH IN HER INDIVIDUAL CAPACITY AND AS TRUSTEE OF THE WILLIAM E. AND DESIREE B. MOORE REVOCABLE TRUST'S SUCCESSOR TRUSTS NAMED ABOVE, <br><br> Defendants. | Case No. C-06-07339 CW <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARD OF ATTORNEYS' FEES AND COSTS, AND APPROVAL OF SERVICE PAYMENTS** <br><br> Date:          April 22, 2010 <br> Time:          2:00 p.m. <br> Courtroom:  2, 4th Floor <br> Judge:        Hon. Claudia Wilken |

1    NOTICE IS HEREBY GIVEN that on April 22, 2010, at 2:00 p.m., or as soon thereafter

2    as the matter may be heard in the above-entitled Court, Plaintiffs Thomas Fernandez, Lora Smith,

3    and Tosha Thomas ("Class Plaintiffs") will and hereby do move the Court as follows:

4        1.    To grant final approval of the Stipulation and Agreement of Settlement

5    ("Settlement" or "Settlement Agreement") between Class Plaintiffs, on behalf of themselves and

6    the Class (as certified by the Court's order dated June 26, 2008) and Defendant North Star Trust

7    Company ("NSTC"), as well as the Moore Trust Defendants and the KMH Defendants

8    (collectively the "Settling Parties"), by and through their respective counsel.

9        2.    To approve an award of attorneys' fees and reimbursement of litigation costs to

10   Class Counsel.

11       3.    To approve the service payment of $5,000 each to the Class Plaintiffs.

12       This motion is based on the Memorandum of Points and Authorities filed herewith and in

13   support of this Motion, the Declarations of Todd Jackson, Peter Rukin and Loree Kovach in

14   support of this Motion, the executed Settlement Agreement preliminarily approved by the Court

15   on January 22, 2010, and all other papers filed in this action.

16

17   Dated:    March 18, 2010                        Respectfully submitted,

18                                                   LEWIS, FEINBERG, LEE,
19                                                   RENAKER & JACKSON, P.C.

20                                           By:    ___/s/ Todd Jackson_____
                                                    Todd Jackson
21

22                                                  Peter Rukin – CA State Bar No. 178336
                                                    RUKIN HYLAND DORIA
23                                                  & TINDALL LLP
                                                    100 Pine Street, Suite 725
24                                                  San Francisco, CA 94111
                                                    Telephone: (415) 421-1800
25                                                  Facsimile: (415) 421-1700
                                                    Email: peterrukin@rhddlaw.com
26
                                                    *Attorneys for Plaintiffs and the Class*
27

28

## TABLE OF CONTENTS

Page No.

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

     A.    The Claims .............................................................................................. 2

     B.    Discovery and Motion Practice ............................................................... 3

III.    SETTLEMENT ................................................................................................... 4

     A.    Terms of the Settlement Agreement ....................................................... 4

     B.    Notice… ................................................................................................... 5

IV.     FINAL APPROVAL OF SETTLEMENT IS APPROPRIATE ......................... 6

     A.    The $15 Million Settlement is Fair Considering the Strength of Plaintiffs' Case, the Risks and Complexity Involved, the Stage of the Proceeding, and the Amount Offered in Settlement. ..................................................... 7

     B.    The Settlement Reflects the Informed Views of Experienced Counsel and Is the Product of Serious, Arm's-Length Negotiations Conducted After Extensive Discovery and Investigation .......................................................... 8

     C.    The Lack of Opposition By the Class and the Independent Fiduciary's Approval Support Approval of the Settlement .......................................... 9

     D.    The Payment to the Named Representatives for Their Service to the Class Is Reasonable and of the Type Routinely Awarded ............................... 10

V.      THE FEE MOTION SHOULD BE GRANTED .......................................... 11

     A.    Counsel Are Entitled to an Award of Attorneys' Fees Out of the Common Fund .................................................................................................... 12

          1.    The Equitable Common Fund Doctrine Applies When, as in This Case, the Litigation Has Recovered a Certain and Calculable Fund on Behalf of a Group of Beneficiaries. ................................................ 12

          2.    The Fee Award Should Be Calculated as a Percentage of the Common Fund. ............................................................................................ 12

          3.    The Requested Fee Award Meets the 25-Percent Benchmark Established by the Ninth Circuit. .................................................... 14

     B.    The Requested Fee Award Is Fair and Reasonable .............................. 14

     C.    Class Counsel Are Entitled to Recover Costs ....................................... 15

VII.    CONCLUSION ............................................................................................... 16

1

## TABLE OF AUTHORITIES

2

**Page No.**

3

**FEDERAL CASES**

4

*In re Activision Sec. Litig.*,

5

723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................................ 13, 14

*In re Ampicillin Antitrust Litig.*,

6

526 F. Supp. 494 (D.D.C. 1981) .................................................................................... 14

7

*Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*,

8

480 F. Supp. 1195 (S.D.N.Y. 1979), aff'd 622F.2d 1106 (2nd Cir. 1980)............................ 14

*Blum v. Stenson*,

9

465 U.S. 886 (1984) ...................................................................................................... 11

10

*Boeing Co. v. Van Gemert*,

11

444 U.S. 472 (1980) ...................................................................................................... 12

*Browning v. Yahoo, Inc.*,

12

2006 WL 3826714 at *8 (N.D. Cal. Dec. 27, 2006) ........................................................... 9

13

*Central R.R. & Banking Co. v. Pettus*,

14

113 U.S. 116 (1885) ...................................................................................................... 12

*Class Plaintiffs v. City of Seattle*,

15

955 F.2d 1268 (9th Cir. 1992) ...................................................................................... 1, 6

16

*In re Crazy Eddie Sec. Litig.*,

17

824 F. Supp. 320 (E.D.N.Y. 1993) ................................................................................. 15

18

*Cullen v. Whitman Medical Corp.*,

197 F.R.D. 136 (E.D. Pa. 2000) ..................................................................................... 15

19

*Glass v. UBS Financial Services, Inc.*,

20

2007 WL 221862 at *3 (N.D. Cal. Jan. 26, 2007) ............................................................... 1

21

*Harris v. Marhoefer*,

24 F.3d 16 (9th Cir. 1994)............................................................................................. 16

22

*In re Heritage Bond Litig.*,

23

2005 WL 1594389, at *15 (C.D. Cal., June 10, 2005) ....................................................... 15

24

*Ingram v. The Coca-Cola Co.*,

200 F.R.D. 685 (N.D. Ga. 2001) .................................................................................... 10

25

*Morganstein v. Esber*,

26

768 F. Supp. 725 (C.D. Cal. 1991).................................................................................. 14

27

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,

221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................6, 7, 8, 9

28

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982)............................................................................6

*In re Omnivision Tech., Inc.*,
  2007 WL 4293467, at *8 (N.D. Cal. 2007)..................................................11

*In re Pacific Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995)............................................................................14

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989)..........................................................11, 12, 13, 14

*Six Mex. Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990)..................................................1, 11, 12, 14

*In re S. Ohio Correctional Facility*,
  175 F.R.D. 270 (S.D. Ohio 1997) ..............................................................10

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)..........................................................................12

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ........................................................................13

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1983)..............................................................................6

*Trustees v. Greenough*,
  105 U.S. 527 (1881) ........................................................................................16

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976)............................................................................6

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ..............................................................10

*Vincent v. Hughes Air West. Inc.*,
  557 F.2d 759 (9th Cir. 1977)..........................................................................11

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)..............................................................1, 11, 14

**FEDERAL STATUTES**

ERISA § 408, 29 U.S.C. § 1108 ........................................................................9

**FEDERAL RULES**

Fed. R. Civ. P. 23(e)............................................................................................1

Fed. R. Civ. P. 23(e)(2)......................................................................................6

**FEDERAL REGULATIONS**

68 Fed. Reg. 75632 (2003)..........................................................................5, 9

**OTHER AUTHORITIES**

4 A. Conte 7 H. Newberg, *Newberg on Class Actions* § 11:50 (4th ed. 2002)..........................7

5 *Moore's Federal Practice* § 23.85[2][d] ................................................................................ 9

1 Alba Conte, *Attorney Fee Awards* § 2:8 (3d ed. 2004) ...................................................... 15, 16

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.      INTRODUCTION**

3           Plaintiffs Thomas Fernandez, Lora Smith, and Tosha Thomas, on behalf of themselves

4    and the class of all participants in the K-M Industries Holding Co., Inc. Employee Stock

5    Ownership Plan ("ESOP"), seek final approval of a proposed settlement of their claims against

6    Defendant North Star Trust Company ("NSTC").  The settlement agreement ("Settlement")

7    resolves the named Plaintiffs' and the Class Members' stated ERISA claims against NSTC, in

8    exchange for the payment by NSTC of $15,000,000.  See Settlement, attached to the Preliminary

9    Approval Order as Exh. A (Dkt. 390).  In addition, the Moore Trust Defendants and KMH

10   Defendants have executed the settlement agreement and have entered into the releases set forth

11   therein.  *See id*. at 18.

12          This settlement is "fair, reasonable, and adequate."  *See* Fed. R. Civ. P. 23(e); *see also*

13   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *Glass v. UBS Financial*

14   *Services, Inc*., 2007 WL 221862 at *3 (N.D. Cal. Jan. 26, 2007).  Among the relevant factors

15   indicating such fairness and reasonableness are: (1) the settlement is commensurate with the

16   strength of the Plaintiffs' case, and $15 million falls well within the range of reasonableness

17   given the risk, expenses, and complexity of further litigation; (2) sufficient discovery and

18   investigation have been conducted to enable Class Counsel to evaluate the claims and defenses in

19   the action and to recommend this settlement; and (3) of the approximately 3,700 Class Members,

20   not one has objected to the Settlement as of the date of this filing.[1]  *See, e.g.*, *Glass*, 2007 WL

21   221862 at *3-5.  The Court should therefore grant final approval.

22          In addition, Class Counsel seek approval of an attorney's fee award of $3,750,000, which

23   represents 25 percent of the Settlement Amount, this Circuit's benchmark for awards from a

24   common fund.  *See Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002).  The

25   requested award is fair, reasonable, and appropriate under the common fund doctrine.  *See Six*

26   *Mex. Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).[2]

27   _____

28   [1] Any objections were required to be postmarked by March 18, 2010.  If any objections are later
     received by Class Counsel or the Settlement administrator, they will be forwarded to the Court.
     [2] The Court's approval of the Settlement is not contingent on its approval of Class Counsel's

1    II.    **BACKGROUND**

2         A.    **The Claims**

3         Plaintiffs filed this class action lawsuit on November 29, 2006.  The operative complaint,

4    the Second Amended Complaint (Corrected), was filed on January 18, 2008.  Plaintiffs brought

5    claims against the KMH Defendants,[3] the Moore Trust Defendants,[4] and NSTC for violations of

6    the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), including claims

7    for prohibited transactions and breach of fiduciary duty.  Plaintiffs requested injunctive,

8    declaratory, and monetary relief.

9         Plaintiffs reached a settlement agreement with the KMH and Moore Trust Defendants on

10   October 30, 2008, wherein the KMH and Moore Trust Defendants paid $40 million in return for a

11   release of claims against them.  The Court granted final approval of that settlement on May 8,

12   2009.  *See* Order, Dkt. No. 299.  The claims against the KMH and Moore Trust Defendants arose

13   from the October 13, 1998 sale of 33,745,455 shares of KMH Series P-B stock (tracking the

14   performance of Kelly-Moore Paint Company, Inc., a KMH subsidiary) to the KMH Employee

15   Stock Ownership Plan ("ESOP"), for $232 million, and the October 18, 1999 sale of 8,400,000

16   shares of KMH Series I-B stock (tracking the performance of California Capital Insurance

17   Company, now renamed Capital Insurance Group, also a KMH subsidiary) to the ESOP for $55

18   million.  Because KMH is not a publicly-traded company, valuation firms prepared valuation

19   reports for the 1998 and 1999 transactions.  Plaintiffs alleged that the valuations were not done

20   properly because, among other things, the valuations failed to consider the effect of the asbestos

21   litigation pending against Kelly-Moore Paint on the value of the stock, and that the share price in

22   both transactions was too high.  The KMH and Moore Trust Defendants denied these allegations.

23   _____

24   application for attorneys' fees.  The Settlement provides that "[t]he substance of Class Counsel's
     application for attorneys' fees and costs is not part of this Stipulation, and is to be considered
     separately from the Court's consideration of the fairness, reasonableness, adequacy, and good

25   faith of the settlement of the Action."  *See* Preliminary Approval Order, Exhibit A (Dkt. 390).
     [3] The KMH Defendants are K-M Industries Holding Co., Inc., K-M Industries Holding Co., Inc.

26   ESOP Plan Committee, and CIG ESOP Plan Committee.

     [4] The Moore Trust Defendants are the William E. and Desiree B. Moore Revocable Trust, the

27   Trustees of the William E. and Desiree B. Moore Revocable Trust, the Desiree B. Moore
     Revocable Trust, the William E. Moore Marital Trust, the William E. Moore Generation-

28   Skipping Trust, and Desiree Moore, both in her individual capacity and as trustee of the William
     E. and Desiree B. Moore Revocable Trust's successor trusts named above.

1   The claims against the Moore Trust and KMH Defendants are no longer at issue in this case.

2       As for the claims against NSTC, Plaintiffs allege that NSTC breached its fiduciary duties

3   after it was appointed as successor trustee to the ESOP in 2003 by failing to take appropriate steps

4   to investigate and remedy breaches of fiduciary duty by Mr. Moore and his co-fiduciaries at the

5   time of the original transactions.  North Star denies these allegations.

6       **B.       Discovery and Motion Practice**

7       Class Counsel has conducted a thorough investigation into the facts of this action during

8   over three years of hard-fought litigation, and has diligently pursued Plaintiffs' and the Class'

9   claims against NSTC.  During fact discovery, Plaintiffs propounded multiple discovery requests

10  to Defendants, including Requests for Production, Requests for Admission, and Interrogatories.

11  During fact discovery, Defendants produced, and Class Counsel reviewed, hundreds of thousands

12  of pages of documents responsive to Plaintiffs' discovery requests.  Further, Class Counsel

13  deposed eleven witnesses, excluding experts, who had knowledge of facts relevant to Plaintiffs'

14  claims, including three corporate representatives (one for each of KMH's subsidiaries, and one

15  for North Star), and defended the depositions of the three named Plaintiffs.  Class counsel also

16  filed several motions to compel discovery.  *See* Declaration of Todd Jackson In Support of

17  Plaintiffs' Motion for Final Approval ("Jackson Dec.") ¶¶ 14-15.

18      After the close of fact discovery, Plaintiffs moved for class certification.  Dkt. 103.  The

19  Court granted class certification and appointed class counsel by order dated June 26, 2008.  Dkt.

20  145.  The parties fully briefed Defendants' motions for summary judgment on the statute of

21  limitations, but Plaintiffs settled their claims with the KMH Defendants and the Moore Trust

22  Defendants prior to the hearing on those motions.  *See* Jackson Dec. ¶ 14.  The Court denied

23  NSTC's Motion for Summary Judgment on the statute of limitations on November 14, 2008.

24  Dkt. 237.

25      NSTC and Plaintiffs filed cross-motions for judgment on the pleadings on the issue of

26  whether NSTC was indemnified by the KMH and Moore Trust Defendants for any liability

27  arising from Plaintiffs' claims.  Dkts. 274, 304.  The Court granted Plaintiffs' motion and denied

28  NSTC's motion on August 21, 2009.  Dkt. 330.  NSTC requested reconsideration of that decision,

1  and the Court denied its request.  Dkts. 334, 339.  After engaging in expert discovery – including

2  exchange of expert reports and rebuttal expert reports and depositions of all five experts – NSTC

3  moved for summary judgment on the merits.  Dkt. 341.

4       After the motion was fully briefed but prior to the hearing on the motion, Plaintiffs and

5  NSTC participated in a mediation with Layn Phillips, a former federal judge, on November 18,

6  2009.[5]  Jackson Dec. ¶ 17.  On November 25, 2009, with Mr. Phillips's assistance, the parties

7  entered into a short-form settlement agreement.  Plaintiffs and NSTC executed a more formal

8  Settlement Agreement on December 23, 2009.  Plaintiffs moved for preliminary approval of this

9  Settlement on January 4, 2010.

10       Following Plaintiffs' Motion for Preliminary Approval, which was unopposed, the Court

11  issued an order (1) preliminarily approving the proposed settlement, (2) approving the form and

12  content of notice to class members, (3) directing the mailing of notice, and (4) scheduling the

13  final fairness hearing.  Dkt. 390.

14  **III.    SETTLEMENT**

15       **A.    Terms of the Settlement Agreement**

16       The terms of the Proposed Settlement Agreement are set forth in the Stipulation and

17  Agreement of Settlement, a true and correct copy of which was attached to the Order granting

18  preliminary approval as Exhibit A.  Dkt. 390.  In short, the Settlement Agreement provides for a

19  payment of $15,000,000 by NSTC, inclusive of payments to the Class, attorneys' fees, and

20  incentive awards, in return for a release that extinguishes all remaining claims in this Action, as

21  well as all other claims and cross-claims that arise out of the facts, transactions and allegations in

22  the Action that were or could have been asserted in this lawsuit.

23       The Settlement Amount is inclusive of attorneys' fees, which shall not exceed 25% of the

24  total Settlement Amount ($3,750,000), and attorneys' costs and expenses, including settlement

25  administration, which shall not exceed $200,000.  *See id.*, § 4(a).  The Settlement Amount is also

26

27  ─────────────────
[5] In addition to the first mediation which resulted in the settlement with the KMH and Moore
Trust Defendants (which all parties participated in), Plaintiffs and NSTC engaged in a prior
28  mediation with Gary McGowan in July 2009; however, that mediation did not result in a
settlement between Plaintiffs and NSTC.  Jackson Dec. ¶ 16.

1   inclusive of incentive awards which are sought for Class Plaintiffs Fernandez, Thomas, and Smith

2   for their service to the Class, in an amount of $5,000 per person.  *See id.*, § 4(b).  The remainder

3   of the Settlement Amount, which will be at least $11,035,000, will be paid into the ESOP for the

4   benefit of Plaintiffs.

5        In exchange for this valuable consideration, the Class releases all claims against NSTC

6   that arise out of the facts, transactions and allegations in this Action.  *See id.*, §§ 1(u), 5(a).  The

7   Settlement also provides that the parties release each other from all claims and cross claims

8   arising out of or related to the Action that were or could be asserted against any other party to the

9   Action.  *See id.*, §§ 1(c), 5(b).  Additionally, the KMH Defendants and Moore Trust Defendants

10  release all claims and cross claims arising out of the Action that were or could be asserted by

11  those Defendants against NSTC.  *See id.*, §§ 1(w), 5(c).  Finally, the Class Plaintiffs, Class

12  Counsel, and Class Plaintiffs and Class Members acting for the benefit of the ESOP and the Class

13  Members themselves, on one hand, and the KMH and Moore Trust Defendants, on the other,

14  release one another from any claims arising out of the assignment of claims set forth in Sections

15  3(c) and 3(d) of the earlier settlement agreement that were or could be asserted against one

16  another.  *See id.*, §§ 1(b), 5(d).  Class Members were not entitled to opt out of this Settlement.

17  *See id.*, § 7.

18       As set forth in Section 3 of the Settlement Agreement, K-M Industries Holding Co., Inc.

19  retained, and NSTC paid for, an Independent Fiduciary to review the Settlement in light of

20  Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632 (2003).  As discussed below, the

21  Independent Fiduciary has determined that the releases set forth in the Settlement Agreement

22  meet the requirements of the Prohibited Transaction Exemption.  The Independent Fiduciary also

23  provided a release of the "Settled Claims." Dkt. 390, Exh. A at § 3(c).  In addition, the

24  Independent Fiduciary will determine the allocation of the settlement funds among the ESOP

25  participants, according to the terms of the ESOP Plan.

26  **B.**   **Notice**

27       Pursuant to the Court's January 22, 2010, Order, the Notice was mailed to Class Members

28  on February 1, 2010.  *See* Declaration of Loree Kovach ("Kovach Dec.") ¶ 4.  When Notices were

1    returned undeliverable, Class Members were traced and the Notices were re-mailed.  *Id*. ¶¶ 5-6.

2    No class member has objected to the proposed settlement as of the date of this filing.  *Id*. ¶ 7.

3    **IV.      FINAL APPROVAL OF SETTLEMENT IS APPROPRIATE**

4            The law favors settlement, particularly in class actions and other complex cases where

5    substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.

6    *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Final approval of a proposed

7    class action settlement will be granted where it is established that the proposed settlement is "fair,

8    reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In determining whether to grant final

9    approval, the Court does not "reach any ultimate conclusions on the contested issues of fact and

10   law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation

11   and avoidance of wasteful and expensive litigation that induce consensual settlements."  *Class*

12   *Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

13   625 (9th Cir. 1982).

14           In the Ninth Circuit, the district court determines the fairness, reasonableness and
15           adequacy of the settlement through a balancing test that considers
             several factors which may include, among others, some or all of the following:  the
16           strength of plaintiffs' case; the risk, expense, complexity, and likely duration of
             further litigation; the risk of maintaining class action status throughout the trial;
17           the amount offered in settlement; the extent of discovery completed, and the stage
             of the proceedings; the experience and views of counsel; the presence of a
18           governmental participant; and the reaction of the class members to the proposed
             settlement.[6]
19

20   *Id.*  The relative importance of any particular factor will depend upon the nature of the claims, the

21   types of relief sought, and the unique facts and circumstances presented by the individual case.

22   *Id*.  Furthermore, "[n]ot all of these factors will apply to every class action settlement.  Under

23   certain circumstances, one factor alone may prove determinative in finding sufficient grounds for

24   court approval."  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-62 (C.D.

25   Cal. 2004) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1983).

26           As explained below, the relevant factors support granting final approval to this Settlement.

27

28   ──────────────────
     [6]  As no governmental participant is involved, this factor is not discussed below.

**A.    The $15 Million Settlement Is Fair Considering the Strength of Plaintiffs' Case, the Risks and Complexity Involved, the Stage of the Proceeding, and the Amount Offered in Settlement.**

Among the factors that support final approval of this settlement are the strength of Plaintiffs' case, the risks and complexity of continued litigation, the stage of the litigation, and the amount offered in settlement.  While Plaintiffs believe they have a strong case and would ultimately prevail, NSTC vigorously denied that it breached its fiduciary duties, and if it had not prevailed on its motion for summary judgment, the case would have proceeded to trial.  NSTC and its experts disputed the amount of damages payable to the Class, or that any damages were payable at all.  In addition, NSTC indicated its intention to appeal this Court's rulings on the statute of limitations and indemnification issues.  Continuing with the litigation against NSTC thus poses risks and uncertainties, and would involve significant expenses and delays.  In comparison, the Settlement commits NSTC to pay $15 million which will compensate Class Members now.

It is well accepted that a settlement is evaluated in light of the risks and costs of litigation. "The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."  *Nat'l Rural Telecomm.*, 221 F.R.D. at 526.  Thus, "'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'"  *Id.* (quoting 4 A. Conte 7 H. Newberg, *Newberg on Class Actions* § 11:50 at 155 (4th ed. 2002)).

The relief obtained is substantial, and well within the range of reasonableness.  Assuming that the Court awards attorneys' fees of 25 percent of the Settlement Fund, litigation costs of up to $200,000[7] (including anticipated future costs relating to the Final Approval hearing and

---

[7] As of March 27, 2009, the date of their Motion for Attorneys' Fees and Costs in connection with the first settlement in this case, Plaintiffs had incurred $124,193.65 in costs.  The Court approved an award of $155,000 in costs.  Dkt. 300.  Plaintiffs' costs from March 28, 2009 through the present are $177.612.88.  *See* Jackson Dec. ¶¶ 26-27 and Exh. B.  Plaintiffs anticipate that the costs of settlement administration will be approximately $20,000 to $25,000.  Accordingly, Plaintiffs request that the Court approve reimbursement of costs of up to $200,000.

1  settlement administration process), and the Class Representative service payments of $5,000

2  each, the Net Settlement Fund will be $11,035,000, to be divided pro rata among approximately

3  3,700 class members.  This results in an average (mean) settlement of approximately $2,930 per

4  class member.  Depending on each individual class member's ESOP account and whether the

5  class member worked for Kelly-Moore Paint or CIG, the payment to that individual class member

6  may be substantially higher or lower than $2,930; $2,930 is simply the average distribution.

7        **B.**    **The Settlement Reflects the Informed Views of Experienced Counsel and Is the Product of Serious, Arm's-Length Negotiations Conducted After**

8              **Extensive Discovery and Investigation.**

9       "'Great weight' is accorded to the recommendation of counsel, who are most closely

10  acquainted with the facts of the underlying litigation."  *Nat'l Rural Telecomm.*, 221 F.R.D. at 528

11  (quotations and citations omitted).  For more than three years, experienced Class Counsel has

12  vigorously litigated the claims asserted against Defendants through extensive written discovery

13  and depositions as well as motion practice.  Jackson Dec. ¶¶ 14-15, 23.  Given the well developed

14  record created during almost three years of hard fought litigation, Counsel has a solid basis upon

15  which to assess the risks faced in the future.  Among the risks of ongoing litigation were risks

16  inherent in NSTC's pending motion for summary judgment on the merits, liability risks at trial,

17  risks that the damages owed the class (essentially the amount of overpayment for company stock)

18  could be diminished at trial, apportionment risks, and risks regarding liability, damages, and

19  indemnification on appeal.  Three years of litigation has allowed Counsel to assess the strengths

20  and weaknesses of the claims against NSTC and determine that the benefits of the proposed

21  Settlement outweigh the benefits that likely could be achieved through further litigation of this

22  case.  Jackson Dec. ¶ 20.

23       The Settlement resulted only after arm's-length settlement negotiations that were

24  conducted after rigorous discovery regarding the merits and damages of the disputed claims, and

25  under the supervision of experienced mediator Layne Phillips.  Jackson Dec. ¶¶ 14-17.  The final

26  mediation with Layne Phillips was the third formal mediation between these parties, lasted a full

27  day, and was followed by protracted negotiations thereafter.  Jackson Dec. ¶¶ 16-17.[8]  The

28

---

[8] Plaintiffs and NSTC previously mediated on October 18, 2008, with Anthony Piazza, and on

1  proposed Settlement is the non-collusive product of hard-fought litigation.  "A settlement

2  following sufficient discovery and genuine arm's-length negotiation is presumed fair."  *Browning*

3  *v. Yahoo, Inc.*, 2006 WL 3826714 at *8 (N.D. Cal. Dec. 27, 2006) (quoting *Nat'l Rural*

4  *Telecomm.*, 221 F.R.D. at 528).

5       In sum, the factors relating to the views of counsel, as well as the depth of discovery and

6  the arm's-length nature of settlement, support settlement in this case.

7      C.    **The Lack of Opposition By the Class and the Independent Fiduciary's Approval Support Approval of the Settlement.**

8

9       As described above, pursuant to the Court's preliminary approval order, the Claims

10  Administrator mailed the Notice of Proposed Partial Class Action Settlement on February 1,

11  2010, to all putative Class Members identified through the data provided by KMH.  Jackson Dec.

12  ¶ 18; Kovach Dec. ¶ 4.

13       As the notice states, the deadline to object to the Settlement was March 18, 2010.  As of

14  the date of this filing, the Claims Administrator has received no objections to the settlement.

15  Jackson Dec. ¶ 18; Kovach Dec. ¶ 7.  The absence of objections demonstrates support for the

16  Settlement Agreement.  "'The reactions of the members of a class to a proposed settlement is a

17  proper consideration for the trial court.'"  *Nat'l Rural Telecomm.*, 221 F.R.D. at 528 (quoting 5

18  *Moore's Federal Practice* § 23.85[2][d]).  Here, the fairness, reasonableness, and adequacy of the

19  settlement are well supported by the absence of any objections to the Settlement, as well as the

20  factors discussed above.

21       Moreover, Department of Labor regulations establishing a class exemption under ERISA

22  § 408, 29 U.S.C. § 1108, require that where a plan releases claims against its fiduciaries, an

23  independent fiduciary must be engaged by the plan to review the settlement and determine

24  whether the settlement constitutes reasonable compensation for the plan's claims.  Prohibited

25  Transaction Exemption 2003-39 enables a class to settle and release prohibited transaction claims

26  against a party in interest in exchange for consideration given by, or on behalf of, a party in

27  interest to the plan in settlement of the claims.  68 Fed. Reg. 75632 (2003).  To meet the

28

July 9, 2009, with Gary McGowan.  Jackson Dec. ¶ 16.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT    9
[CASE NO. C-06-07339 CW]

1    exemption, a fiduciary (such as an independent fiduciary hired for this purpose) must determine

2    that the settlement is "reasonable given the likelihood of full recovery, the costs and risks of

3    litigation, and the value of claims foregone." *Id.*  Here, that review was performed by Evercore

4    Trust Company, N.A. ("Evercore").  On March 17, 2010, counsel for NSTC notified Class

5    Counsel that she had received from Evercore a release on behalf of the Plan and a determination

6    that the class exemption's requirements have been met.  Jackson Dec. ¶ 19.  The independent

7    fiduciary's approval provides further assurance of the fairness and reasonableness of the

8    settlement.

9          **D.**    <u>**The Payment to the Named Representatives for Their Service to the Class Is**</u>
     <u>**Reasonable and of the Type Routinely Awarded.**</u>

10

11         The payment of $5,000 each to the Class Representatives is intended to recognize the time

12   and effort they expended on behalf of the Class.  Indeed, "[c]ourts routinely approve incentive

13   awards to compensate named plaintiffs for the services they provided and the risks they incurred

14   during the course of the class action litigation."  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685,

15   694 (N.D. Ga. 2001) (quoting *In re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D.

16   Ohio 1997)).  In *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995), the

17   court approved incentive awards of $50,000 to the named plaintiff in recognition of the services

18   he provided to the class by participating in numerous telephone conferences and meetings with

19   class counsel, attending several hearings, and having his deposition taken, as well as testifying at

20   trial.  In this case, the Class Representatives have similarly performed important services for the

21   benefit of the class:  they provided information regarding the ESOP during interviews, produced

22   relevant documents, sat for depositions, assisted with the mediations, and worked with Plaintiffs'

23   counsel throughout the case.[9]  *See Van Vranken*, 901 F. Supp. at 299; *see also Ingram*, 200

24   F.R.D. at 694 (approving incentive awards of $300,000 to each named Plaintiff in recognition of

25   the services they provided to the class).  No member of the class has objected to payment of

26   incentive awards to the Class Representatives.  Kovach Dec. ¶ 7. Accordingly, the payment to the

27

28   _____
     [9] In addition, the Class Representatives have provided a broader release to NSTC:  in their
     individual capacities, they have released any and all claims, known or unknown, against NSTC.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT          10
[CASE NO. C-06-07339 CW]

1   Class Representatives is appropriate and justified as part of the overall Settlement, in light of their

2   services to and risks taken on behalf of the Class.  Jackson Dec. ¶ 21.

3   **V.    THE FEE MOTION SHOULD BE GRANTED**

4        Class Counsel also request an award of fees for their service to the class.[10]  Class

5   Counsel's requested fee award is fair, reasonable, and appropriate under well-established

6   principles of recovery from a common fund.  *Six Mex. Workers*, 904 F.2d at 1311 (citing *Blum v.*

7   *Stenson*, 465 U.S. 886, 900 n.16 (1984)).  "It is well established that 'a private plaintiff, or his

8   attorney, whose efforts create, discover, increase or preserve a fund to which others also have a

9   claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'"  *In*

10   *re Omnivision Tech., Inc.*, 2007 WL 4293467, at *8 (N.D. Cal. 2007) (quoting *Vincent v. Hughes*

11   *Air West. Inc*. 557 F.2d 759, 769 (9th Cir. 1977)).

12        In *Blum*, 465 U.S. at 900 n.16, the Supreme Court stated that reasonable fees under the

13   common fund doctrine are determined as a percentage of the fund.  The Ninth Circuit has

14   likewise approved the use of fund percentages as a reasonable manner to determine attorneys'

15   fees.  *See Vizcaino*, 290 F.3d at 1047; *Six Mex. Workers*, 904 F.2d at 1311; *see also Omnivision*,

16   2007 WL 4293467, at *8 (observing that "use of the percentage method in common fund cases

17   appears to be dominant").  In the Ninth Circuit, 25 percent of the common fund is the

18   "benchmark" for an attorneys' fees award.  *See Paul, Johnson, Alston & Hunt v. Graulty,* 886

19   F.2d 268, 272 (9th Cir. 1989).  Here, the requested award of $3,750,000 meets the Ninth Circuit's

20   benchmark for an award of attorneys' fees under the percentage of the common fund method.

21   Additionally, reimbursement of litigation costs of up to $200,000 incurred in pursuing this matter

22   is reasonable, as explained below.

23   //

24   //

25   //

26   //

27

28

---

[10] Class Counsel's request for an award fees is separate from the request for final approval of the Settlement and approval of the Settlement is not contingent on approval of the fee request.  *See* Dkt. 390, Exh. A at § 4(a).

1

**A.** **Counsel Are Entitled to an Award of Attorneys' Fees Out of the Common Fund.**

2

3

> **1.** **The Equitable Common Fund Doctrine Applies When, as in This Case, the Litigation Has Recovered a Certain and Calculable Fund on Behalf of a Group of Beneficiaries.**

4

5       It is a long-standing principle that when counsel's efforts result in the creation of a

6   common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right

7   to be compensated from that fund as a whole for their successful efforts in creating it.  *See, e.g.,*

8   *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (stating that the Court "has recognized

9   consistently that a litigant or a lawyer who recovers a common fund . . .  is entitled to a

10  reasonable attorney's fee from the fund as a whole"); *Central R.R. & Banking Co. v. Pettus*, 113

11  U.S. 116 (1885) (recognizing common fund doctrine); *Staton v. Boeing Co.*, 327 F.3d 938, 967

12  (9th Cir. 2003) (same).

13      The common fund doctrine rests on the understanding that attorneys should normally be

14  paid by their clients, and that when the attorneys' unnamed class member "clients" have no

15  express retainer agreement, it would result in unjust enrichment not to pay attorneys' fees out of

16  the common fund.  *Boeing*, 444 U.S. at 478.

17      In this case, the litigation against NSTChas resulted in a Settlement Fund of $15,000,000

18  (less attorney's fees and costs) to be distributed to all participants in the ESOP.  Because none of

19  these individuals has paid Plaintiffs' counsel fees for their efforts during the litigation, equity

20  requires them to pay a fair and reasonable fee, based on what the market would traditionally

21  require, no less than if they had hired private counsel to litigate their cases individually.  *See id.* at

22  479-81.

23      **2.** **The Fee Award Should Be Calculated as a Percentage of the Common Fund.**

24

25      When contingency fee litigation has produced a common fund, the Ninth Circuit has held

26  that it is appropriate to calculate a reasonable fee by awarding a percentage of the total fund.  *See,*

27  *e.g., Six Mex. Workers*, 904 F.2d at 1311 (common fund fee is generally "calculated as a

28  percentage of the recovery"); *see also Paul, Johnson, Alston & Hunt,* 886 F.2d at 272 .

1    The percentage of the fund method is appropriate for a number of well-recognized

2    reasons.  Importantly, the percentage method accomplishes fee spreading in a manner that

3    comports with the legal marketplace, where counsel's success is frequently measured in terms of

4    the results achieved.  *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in

5    common fund cases "the monetary amount of the victory is often the true measure of [counsel's]

6    success").  By assessing the amount of the fee in terms of the amount of the benefit conferred on

7    the class, the percentage method "more accurately reflects the economics of litigation practice"

8    which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented."  *Id.*

9    (internal quotation marks and citation omitted).

10    Further, when clients do not pay an ongoing hourly fee to their counsel, they typically

11    negotiate an agreement in which counsel's fee is based upon a percentage of any recovery.  The

12    percentage of the fund approach mirrors this aspect of the market and, accordingly, reflects the

13    fee that would have been negotiated by the class members in advance, had such negotiations been

14    feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation.

15    *See, e.g., Paul, Johnson, Alston & Hunt*, 886 F.2d at 271.

16    The percentage approach helps incentivize highly qualified attorneys to bring large,

17    complex class actions, even though it is impossible in such cases to negotiate a fee with the

18    unnamed class members in advance.  Basing the common fund fee award on a percentage of the

19    fund also encourages counsel to spend time efficiently and to focus on maximizing the size of the

20    class's recovery, rather than their own lodestar hours.  *Swedish Hospital*, 1 F.3d at 1269.  Finally,

21    the percentage method is far easier for courts to calculate than any alternative method.  *Id.*; *In re*

22    *Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).

23    In light of these benefits, courts have resoundingly approved the percentage of the fund

24    method to calculate a reasonable fee award in common fund cases.  *See Activision*, 723 F. Supp.

25    at 1378 (collecting cases and describing the benefits of a percentage method over the lodestar

26    method for awarding attorneys' fees in common fund settlements).  Thus, in this case, counsels'

27    common fund fees should be determined as a percentage of the total fund that will be distributed

28    to the class.

1

2

**3.     The Requested Fee Award Meets the 25-Percent Benchmark Established by the Ninth Circuit.**

3

4

5

6

7

8

In determining what constitutes a fair and reasonable percentage of a settlement fund for purposes of calculating common fund fees, the Ninth Circuit has stated that courts look to a "benchmark" percentage of 25 percent of the total fund.  *Vizcaino*, 290 F.3d at 1047; *Six Mex. Workers*, 904 F.2d at 1311; *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272; *see also Morganstein v. Esber*, 768 F. Supp. 725, 728 (C.D. Cal. 1991) (stating that "*Paul, Johnson* establishes 25 percent as the benchmark for common fund cases").[11]

9

**B.     The Requested Fee Award Is Fair and Reasonable.**

10

11

12

13

14

15

16

17

The requested award of 25 percent of the common fund is justified by the financial risks undertaken by Class Counsel in this litigation.  Counsel accepted and litigated this class action solely on a contingency fee basis.  At the outset of this litigation, there was no guarantee that Counsel would be paid for their time, and although there was a fee award associated with the first settlement, Class Counsel was not guaranteed to actually receive it.  Moreover, there was no guarantee that Counsel would be paid for the continued litigation against North Star.  As described herein, and as borne out by litigation to date, the case involved significant risk and complexity.

18

19

20

The fairness of this fee award is further supported by the high quality of Class Counsel's legal representation.  The efforts expended by Class Counsel in this case are described above and are described in the accompanying Declarations of Todd Jackson and Peter Rukin.  As these

21

22

23

24

25

26

27

28

[11] In approving an award of 28 percent of the $96,885,000 settlement fund, the *Vizcaino* court surveyed attorneys' fees awards in so-called "megafund" cases—that is, common fund settlements of $50-200 million—found in the Westlaw ALLCASES database and Class Action Reports' attorneys' fees section from Jan. 1, 1996 through Dec. 31, 2001.  *Vizcaino*, 290 F.3d at 1046 n.1, & Appendix.  Even where the common funds fell into this megafund range, the *Vizcaino* court noted that a majority of fee awards were "clustered in the 20-30 percent range." *Id.* at 1050 n.4, & Appendix.  In common fund settlements of less than $50 million, such as this one, courts have awarded a higher percentage of the common fund as attorneys' fees.  *See, e.g., In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming an award equal to 33 percent of the common fund); *In re Activision*, 723 F. Supp. at 1375 (awarding plaintiffs' counsel 32.8 percent of the common fund created to settle the litigation); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (awarding 45 percent of $7.3 million settlement fund); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F. Supp. 1195, 1199 (S.D.N.Y. 1979), *aff'd* 622F.2d 1106 (2nd Cir. 1980) (approximately 53 percent of settlement fund awarded).

1   declarations reflect, Class Counsel's diligent, efficient, and creative pursuit of this matter

2   positioned Plaintiffs to successfully settle this case for $15,000,000, and so achieve redress for the

3   entire Class, and thus avoid the inevitable expense and risk attendant to protracted litigation.  *See*

4   *generally* Jackson Dec. ¶¶ 13-17; Rukin Dec ¶ 8.

5        Aside from the general risks and complexity associated with protracted class action

6   litigation, this case had specific risks and complexity.  Litigation involving ESOPs in closely held

7   companies is a complex sub-area within the already complex area of ERISA class action

8   litigation.  Further, the protracted litigation against North Star raised issues about the scope of

9   ERISA's indemnification prohibition, the scope of successor trustees' fiduciary duties, and proper

10  valuation of a closely held company with contingent asbestos liabilities.

11       Finally, the requested amount of attorneys' fees and costs was stated explicitly in the

12  Notice of Proposed Class Action Settlement.  Preliminary Approval Order, Exhibit B (Dkt. 390).

13  Class Members had until March 18, 2010, to raise any objections.  No objections to either the

14  percentage of the common fund sought as attorneys' fees or to the award of costs sought by Class

15  Counsel have been received.  *See* Kovach Dec. ¶ 7.  Courts have observed that the absence of any

16  objections to the fees and costs requested supports the conclusion that the requested award is fair,

17  adequate, and reasonable.  *See In re Heritage Bond Litig.*, 2005 WL 1594389, at *15 (C.D. Cal.,

18  June 10, 2005) (citing *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 148-49 (E.D. Pa.

19  2000); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326-8 (E.D.N.Y. 1993)).

20       Finally, the Independent Fiduciary reviewed Class Counsel's requested attorney's fees and

21  expressed no objection.  Jackson Dec.  Jackson Dec. Exh. A.

22       **C.      Class Counsel Are Entitled to Recover Costs**.

23       Class Counsel request reimbursement from the fund of out-of-pocket expenses they

24  incurred in this litigation since final approval of the first settlement.  Reimbursement for these

25  expenses from the common fund is appropriate for the same reasons attorneys' fees should be

26  paid out of the fund:  all beneficiaries should bear their fair share of the costs of the litigation, and

27  these are the normal costs of litigation that counsel traditionally bill their paying clients.  *See* 1

28  Alba Conte, *Attorney Fee Awards* § 2:8 at 50-51 (3d ed. 2004) ("The prevailing view is that

1  expenses are awarded in addition to the fee percentage.")).  As one commentator has written,

2      [A]n attorney who creates or preserves a common fund by judgment or settlement
3      for the benefit of a class is entitled to receive reimbursement of reasonable fees
       and expenses involved.  The equitable principle that all reasonable expenses
4      incurred in the creation of a fund for the benefit of a class are reimbursable
       proportionately by those who accept benefits from the fund authorizes
5      reimbursement of full reasonable litigation expenses as costs of the suit

6  Conte, *supra*, § 2.19 (citing *Trustees v. Greenough*, 105 U.S. 527 (1881)).  The expenses that may

7  be reimbursed from the common fund are not limited to those taxed in a judgment against an

8  opponent, but instead, encompass "all reasonable expenses."  *Id.  See also Harris v. Marhoefer*,

9  24 F.3d 16, 19 (9th Cir. 1994) (attorneys may be reimbursed for reasonable out-of-pocket

10 expenses that were "incidental and necessary to the representation of those clients").

11     Since filing their Motion for Final Approval of the first settlement in this case (on March

12 27, 2009), Class Counsel have incurred $177,612.88 in litigation costs and expenses, and will

13 incur additional costs through the conclusion of this matter (specifically, the costs of settlement

14 administration are not reflected in the current costs).  Jackson Dec. ¶¶ 26-27.[12]  These costs

15 include deposition-related expenses, expert witness fees, travel expenses for an out-of-town

16 expert deposition, photocopying and mailing expenses, and other reasonable litigation-related

17 costs including the costs of hiring an expert to assist with damages analysis prior to mediation.

18 *See id.*  All costs incurred here were necessary to the prosecution of this litigation and would

19 normally have been billed to a client paying for counsel's services on a regular basis.  These costs

20 are quite reasonable for a case of this duration and complexity and should be compensated in full.

21 To provide for additional expenditures in the continued administration of the settlement, Plaintiffs

22 hereby request that the Court now approve costs of up to $200,000 total.

23 **VI.     CONCLUSION**

24     For all of the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant

25 final approval of the proposed class action settlement and plan of distribution; (2) approve the

26 service payment of $5,000 to Named Plaintiffs and Class Representatives Thomas Fernandez,

27

28 _____

[12] As noted above, in this Motion Plaintiffs request reimbursement only for costs incurred since the first settlement in this case (and the corresponding award of costs) was approved.  *See supra* n.7.

1    Lora Smith, and Tosha Thomas; (3) approve the payment of $3.75 million as reasonable

2    attorneys' fees and the payment of up to $200,000 as reasonable costs; (4) reserve jurisdiction for

3    purposes of supervising the implementation, enforcement, construction, and interpretation of the

4    Settlement Agreement; and (5) dismiss all claims with prejudice.

5

6

7    DATED: March 18, 2010                              Respectfully submitted,

8                                                       LEWIS, FEINBERG, LEE,
                                                        RENAKER & JACKSON, P.C.

9                                         By:    ___/s/ Todd Jackson_____

10                                                      Todd Jackson

11                                                      Peter Rukin – CA State Bar No. 178336
                                                        RUKIN HYLAND DORIA
12                                                      & TINDALL LLP
                                                        100 Pine Street, Suite 725
13                                                      San Francisco, CA 94111
                                                        Telephone: (415) 421-1800
14                                                      Facsimile: (415) 421-1700
                                                        Email: peterrukin@rhddlaw.com
15

16                                                      *Attorneys for Plaintiffs and the Class*

17

18

19

20

21

22

23

24

25

26

27

28